# Exhibit "A"

COPY

| | | |
|---|---|---|
| HENRY MOLDED PRODUCTS, INC.<br>Plaintiff | : | IN THE COURT OF COMMON PLEAS<br>OF LEBANON COUNTY,<br>PENNSYLVANIA |
| v. | : | |
| | : | DOCKET NO. |
| THE CINCINNATI INSURANCE<br>COMPANY<br>Defendants | : | |

ENTERED & FILED
PROTHONOTARY OFFICE
LEBANON. PA

2023 JUN 20 P 12: 44

## PRAECIPE FOR WRIT OF SUMMONS

TO THE PROTHONOTARY:

Kindly issue a writ of summons against the Defendant in the above-captioned action.

Respectfully Submitted,

SAXTON & STUMP

Date: June 19, 2023      By: _____

Ronald H. Pollock, Esquire
Attorney I.D. No. 52586
280 Granite Run Drive, Suite 300
Lancaster, PA 17601
Telephone: (717) 556-1030
Facsimile: (717) 441-3810
Email: rhp@saxtonstump.com

*Counsel for Plaintiff*

## CERTIFICATE OF COMPLIANCE

I certify that this filing complies with the provisions of the *Case Records Public Access Policy of the Unified Judicial System of Pennsylvania* that require filing confidential information and documents differently than non-confidential information and documents.

Submitted By: <u>Saxton & Stump, LLC</u>

Signature: _____

Name: <u>Ronald H. Pollock, Esquire</u>

Attorney No. (if applicable): <u>52586</u>

HENRY MOLDED PRODUCTS, INC.     :    IN THE COURT OF COMMON PLEAS FILED
             Plaintiff                    :    OF LEBANON COUNTY, ROTHONOTARY OFFICE
                                     :    PENNSYLVANIA         LEBANON, PA

          v.                       :

                                     :    DOCKET NO. 2023-00835   P 12: 44

THE CINCINNATI INSURANCE       :
COMPANY                             :
          Defendants             :

## WRIT OF SUMMONS

To:    Cincinnati Insurance Company
       P.O. Box 145496
       Cincinnati, OH 45250-5496

You are hereby notified that Plaintiff, Henry Molded Products, Inc. has commenced an

action against you.

Dated: 02/20/2023

                                     _Barbara A. Smith_
                                     Prothonotary
                                     by Cassidy Knopp, Deputy

**HORST KREKSTEIN & RUNYON LLC**
By: William O. Krekstein, Esquire
Pa. Id. No.: 69149
610 W. Germantown Pike, Suite 350
Plymouth Meeting, PA 19462
484-243-6868
484-351-8214 (fax)
wkrekstein@hkr.law

RECEIVED & FILED
PROTHONOTARY OFFICE

2024 JAN -8 ☐ 2: 44

Attorneys for Defendant,
The Cincinnati Insurance Company

| | |
|---|---|
| Henry Molded Products, Inc.,<br>Plaintiff, | COURT OF COMMON PLEAS OF<br>LEBANON COUNTY |
| v | No. 2023-00-835 |
| The Cincinnati Insurance Company,<br>Defendant. | |

## PRAECIPE FOR RULE TO FILE COMPLAINT

TO THE PROTHONOTARY:

Please enter a Rule upon Plaintiff to file a Complaint against Defendant within twenty (20)

days hereof or suffer the entry of a Judgment of Non Pros.

**HORST KREKSTEIN & RUNYON LLC**

Dated: January 4. 2024                    By: _____
                                              William O. Krekstein, Esquire
                                              Attorneys for Defendant,
                                              The Cincinnati Insurance Company

## RULE TO FILE COMPLAINT

AND NOW, this ____8ᵗʰ____ day of ____January____. 2024, a Rule is hereby granted

upon Plaintiff to file a Complaint in the above-captioned matter within twenty (20) days after

service hereof or suffer the entry of a Judgment of Non-Pros.

_____
Prothonotary

**HORST KREKSTEIN & RUNYON LLC**
By: William O. Krekstein, Esquire
Pa. Id. No.: 69149
610 W. Germantown Pike, Suite 350
Plymouth Meeting, PA 19462
484-243-6868
484-351-8214 (fax)
wkrekstein@hkr.law

Attorneys for Defendant,
The Cincinnati Insurance Company

| | |
|---|---|
| Henry Molded Products, Inc.,<br>              Plaintiff,<br><br>          v.<br><br>The Cincinnati Insurance Company,<br>              Defendant. | COURT OF COMMON PLEAS OF<br>LEBANON COUNTY<br><br>No. 2023-00-835 |

## CERTIFICATE OF SERVICE

I, William Krekstein, Esquire, hereby certify that a true and correct copy of the foregoing

was served upon the party listed below by United States Mail, postage prepaid.

Ronald H. Pollock, Esquire
Saxton & Stump
280 Granite Run Drive, Suite 300
Lancaster, PA  17601

HORST KREKSTEIN & RUNYON LLC

Dated: January 4, 2024                    By

William O. Krekstein, Esquire

# ORIGINAL

Ronald H. Pollock, Esquire
Attorney I.D. No. 52586
Aaron M. Scheibelhut, Esquire
Attorney I.D. No. 330775
SAXTON & STUMP, LLC
280 Granite Run Drive, Suite 300
Lancaster, PA 17601
Telephone:     (717) 556-1030
Facsimile:     (717) 441-3810
Email:         rhp@saxtonstump.com
               ams@saxtonstump.com

ENTERED & FILED
PROTHONOTARY OFFICE
LEBANON, PA

2024 APR 19  P 12: 37

*Attorneys for Plaintiff*

| | |
|---|---|
| HENRY MOLDED PRODUCTS, INC.<br>        Plaintiff<br><br>        v.<br><br>THE CINCINNATI INSURANCE<br>COMPANY<br>        Defendants | : IN THE COURT OF COMMON PLEAS<br>: OF LEBANON COUNTY,<br>: PENNSYLVANIA<br>:<br>:<br>: CIVIL ACTION – LAW<br>: JURY TRIAL DEMANDED<br>:<br>: DOCKET NO. 2023-00-835<br>:<br>:<br>:<br>: |

## **NOTICE**

YOU HAVE BEEN SUED IN COURT. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this Complaint and Notice are served, by entering a written appearance personally or by attorney and filing in writing with the Court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the Court without further notice for any money claimed in the Complaint or for any other claim or relief requested by the Plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE:

Mid-Penn Legal Services
513 Chestnut Street
Lebanon, PA 17042
Phone: (717) 274-2834

1

Respectfully submitted,

SAXTON & STUMP, LLC

Date: April 19, 2024

By: _____

Ronald H. Pollock, Esquire
Attorney I.D. No. 52586
Aaron M. Scheibelhut, Esquire
Attorney I.D. No. 330775
280 Granite Run Drive, Suite 300
Lancaster, PA 17601
Telephone:     (717) 556-1030
Facsimile:     (717) 441-3810
Email:         rhp@saxtonstump.com
               ams@saxtonstump.com
*Attorneys for Plaintiff*

2

HENRY MOLDED PRODUCTS, INC.    :    IN THE COURT OF COMMON PLEAS
       Plaintiff             :    OF LEBANON COUNTY,                  :    PENNSYLVANIA
       v.                 :              2024 APR 19 P 12: 37
                                       :    CIVIL ACTION – LAW
THE CINCINNATI INSURANCE       :    JURY TRIAL DEMANDED
COMPANY                    :
       Defendants       :    DOCKET NO. 2023-00-835
                                           :
                                           :

## COMPLAINT

NOW COMES the Plaintiff, Henry Molded Products, Inc, LLC, by and through its undersigned counsel, Saxton & Stump, LLC, and files this Complaint and, in support thereof, avers as follows:

## INTRODUCTION

1. This dispute arises from Defendant's excessive payment delays and failure to fully compensate Plaintiff on an insurance claim for losses Plaintiff sustained as a result of a catastrophic fire at its business on June 27, 2021.

2. Defendant's failure to fulfill its promises and obligations under the insurance policy constitutes breach of contract, bad faith, and breach of the implied covenant of good faith and fair dealing.

3. As a result of Defendant's conduct described herein, Plaintiff has been significantly damaged, both by being improperly denied payment under its insurance policy and by having to borrow additional funds to recover and maintain business operations.

## PARTIES

4. Plaintiff, Henry Molded Products, Inc. ("HMP"), is a Pennsylvania corporation with a principal place of business at 71 N. 16th St, Lebanon, Pennsylvania 17042.

3

5.    Defendant, the Cincinnati Insurance Company ("**CIC**"), is an Ohio corporation with a principal place of business at 6200 S. Gilmore Road, Fairfield, Ohio 45014, and a mailing address at P.O. Box 145496, Cincinnati, Ohio 45250.

**JURISDICTION AND VENUE**

6.    CIC is subject to the personal jurisdiction of Pennsylvania Courts pursuant to 42 Pa.C.S.A. § 5301 because it conducts continuous and systematic business within the state.

7.    Venue is appropriate in the Court of Common Pleas of Lebanon County under Pa.R.C.P. 2179 because CIC regularly conducts business in Lebanon County, and HMP's cause of action arose in Lebanon County.

**FACTUAL BACKGROUND**

8.    HMP is in the business of designing, engineering, manufacturing, and selling molded pulp fiber packaging products to a worldwide customer base.

9.    HMP's headquarters and main manufacturing plant is located at 71 N. 16th Street, Lebanon, Pennsylvania 17042 (hereinafter referred to as the "**Lebanon Plant**").

10.    HMP's Lebanon Plant contains production lines utilized for the product manufacturing process (the "**Production Lines**" or "**Lines**").

11.    The product manufacturing process involves combining recycled paper and special additives to form "pulp," product items in molds, extracting moisture from the items, and then drying and curing the items in specialized gas curing ovens.

12.    HMP's curing ovens were manufactured approximately thirty-seven (37) years ago by a company that is no longer in business, and include numerous custom-fabricated modifications.

13.    CIC is in the business of, among other things, providing property and casualty insurance.

4

14. In CIC's own words:

> We are in the business of helping when disaster strikes – helping policyholders recover financially; helping families and businesses restore their lives and livelihoods; helping communities regain a sense of stability. We look to pay all that is due under your policy after a covered loss. You'll appreciate the prompt and personal service our local field claims representatives deliver to help you get back on track.[1]

15. On July 1, 2020, HMP entered into an agreement with CIC for a commercial insurance policy, which included a "Commercial Property Coverage Part" (the "**Policy**"). A true and correct copy of the Commercial Property Coverage Part of the Policy is attached as Exhibit A.

16. The effective period of the Policy ran from July 1, 2020, to July 1, 2023.

17. HMP paid all premiums due under the Policy.

18. The Policy included, but was not limited to, the following coverage categories and respective policy limits:

    a. Blanket Building:                                       $21,795,114

    b. Blanket Business Personal Property:         $7,917,054

    c. Blanket Business Income w/ Extra Expense:   $7,055,500

19. The Blanket Building category included coverage for loss of, *inter alia*, the HMP Lebanon Plant, and its additions, fixtures, permanently installed machinery and equipment, personal property owned by HMP used to maintain the property, and sudden and accidental breakdowns of production machinery. *See* Ex. A, Section A, ¶1.a., and "Equipment Breakdown Coverage" Endorsement, Section E, ¶1.a.

20. The Blanket Business Personal Property category covered loss of, *inter alia*, HMP's property located in or on the building, including but not limited to, furniture, machinery

---

[1] https://www.cinfin.com/about-us.

and equipment, stock,[2] personal property used in the business, and leased and insured personal property, as well as personal effects of HMP or its employees, including tools. *See* Ex. A, Section A, ¶1.d, and "Manufacturer's Optional Coverage" Endorsement, Section A.

21. The Blanket Business Income with Extra Expenses covered, *inter alia*, actual loss of "Business Income" and "Rental Value," and "Extra Expenses" HMP sustained due to the necessary "suspension[3]" of HMP's operations during the "period of restoration" *See* Ex. A, Section A, ¶¶5.b(1) – (2).

22. Loss of "Business Income" and "Rental Value" was to be determined based on, *inter alia*, the net income of the business prior to the loss, the likely net income had no loss occurred, the operating expenses, including payroll expenses, necessary to resume operations to the same level as before the loss, financial records, bills, invoices, liens, and contracts. *See* Ex. A, Section D, ¶4.j.(1).

23. Loss of "Extra Expense" was to be determined based on, *inter alia*, all expenses that exceeded normal operating expenses that would have been incurred during the "period of restoration" if no loss had occurred, and necessary expenses that reduced the Business Income and Rental Value loss that otherwise would have been incurred. *See* Ex. A, Section D, ¶4.j.2.

24. The "period of restoration" is defined in the Policy as the period of time that begins at the time of the loss and ends on the earlier of (1) the date when the property at the premises should be repaired, rebuilt, or replaced with reasonable speed and similar quality; or (2) the date when business is resumed at a new permanent location. *See* Ex. A, Section G, ¶11.

---

[2] "Stock" is defined as "merchandise held in storage or for sale, raw materials and in-process or finished goods, including supplies used in their packing or shipping." *See* Ex. A, Section G, ¶18.
[3] "Suspension" is defined as: "(a) the slowdown or cessation of [HMP's] business activities; and (b) that a part or all of the 'premises' is rendered untenantable." *See* Ex. A, Section G, ¶19.

25.     In the event of HMP suffering a "covered cause of loss," CIC was obligated to either: (1) pay the value of the lost or damaged property; (2) pay the cost of repairing or replacing the lost or damaged property; (3) take all or any part of the property at an agreed or appraised value; or (4) repair, rebuild or replace the property with other property of like kind and quality. *See* Ex. A, Section D, ¶4.a.

26.     Accidental fire is a covered cause of loss under the Policy. *See* Ex. A, Section A, ¶3.a – b.

27.     On June 27, 2021, a catastrophic accidental fire caused damage to, among other things, the Lebanon Plant's building/structure, the Production Lines, Stock, networked electrical equipment, IT systems infrastructure/services, and business personal property.

28.     HMP promptly filed an insurance claim with CIC.

29.     CIC, however, has only partially reimbursed HMP for losses sustained as a result of the fire.

30.     HMP disputes CIC's calculation of the amounts paid and CIC's conduct throughout the claims process.

31.     First, CIC incorrectly determined that Production Line Numbers 4 and 5 could be repaired rather than replaced with like kind and quality machinery, despite HMP providing documented expert contractor opinions to the contrary.

32.     Repair of the Production Lines was impracticable, if not impossible because the fire caused damage to the Lines' critical structural and electrical components and custom fabricated parts that were required to operate the machines in a safe and productive manner.

33.     The critical components damaged by the fire include:

7

a.  linear seals and bearings that support and guide the "Z" axis motion destroyed by heat from the fire and pressurized water used by firefighting apparatus;

b.  "X" axis drive components, including wheel bearings, timing belts, gearboxes, and drive motors, were damaged by heat from the fire;

c.  main structural framing, including steel frame tubing, warped from exposure to the fire's heat; and

d.  Vacuum and air valves damaged by pressurized water from firefighting apparatus.

34.  Notably, damage to the main structural components were compromised to the point that the wall strength and thickness of the steel was no longer to the original specifications.

35.  Operating the Production Lines with damage to the main structural components could have resulted in structural failure and, in turn, a significant safety condition.

36.  The damage to Production Lines 4 and 5 was confirmed upon inspection by Purcell Machine Company, Inc. ("Purcell").

37.  Purcell recommended a full replacement of both machines.

38.  Despite the extensive damage caused to Production Lines 4 and 5, CIC determined that the machines did not need to be replaced, but instead could be repaired.

39.  HMP paid for the replacement of the Production Lines, but CIC only reimbursed HMP for the amount CIC determined to be the cost of repair and delayed that payment for over a year and a half.

40.  The difference between CIC's payment for repair of Production Lines 4 and 5, and the actual cost to replace the Lines was $2,264,689.95.

8

41. Second, CIC set an unreasonable timeframe for the Period of Restoration without considering all relevant factors that could contribute to delay, including but not limited to global supply chain issues and work delays stemming from the COVID-19 pandemic.

42. Pursuant to the terms of the Policy, the Period of Restoration began at the time of the fire – June 27, 2021.

43. CIC initially set the end of the Period of Restoration at January 1, 2022.

44. As it turned out, the work for replacing the Production Lines was significantly delayed as a result of the global supply chain issues stemming from the effects of the COVID-19 pandemic.

45. Specifically, the following factors and more combined to increase the Production Line replacement from an initially estimated completion track of twenty-two (22) weeks (for the ovens only) to an actual completion track of nearly two (2) years:

   a. Costs for parts and materials were often determined only after delivery, which frequently occurred months after placing orders;

   b. Vendors were accepting purchase orders despite having no inventory and being incapable of keeping up with demand; and

   c. Critical parts necessary for the replacement of Production Lines 4 and 5 were delayed for several months, including but not limited to the oven's Honeywell Burners, which were projected by the manufacturer to be delivered six (6) months after ordering.

46. As early as December 16, 2021, HMP challenged the initial Period of Restoration set by CIC. A true and correct copy of a letter sent by HMP's prior counsel to CIC on December 16, 2021, is attached as Exhibit B (the "Claim Letter").

47. In the Claim Letter, HMP requested that the Period of Restoration be reconsidered because it was "unilaterally set without regard to the supply chain and logistics issues which have impacted virtually every sector of the economy." *See* Ex. B.

48. HMP also requested in the Claim Letter that CIC identify the basis for its determination of the Period of Restoration. *See* Ex. B.

49. CIC did not acknowledge the requests in the Claim Letter.

50. Later, CIC notified HMP that its accounting team made an error causing the deadline to be extended to April 30, 2022, but that CIC would honor the extension.

51. Regardless, even CIC's inadvertently extended deadline provided an unreasonably short timeframe for HMP to restore operations.

52. Despite HMP bringing the delay issues to CIC's attention, CIC refused to provide a basis for the Period of Restoration, or otherwise extend the Period of Restoration beyond April 30, 2022.

53. CIC did not provide any explanation for the basis of the Period of Restoration until almost *two years after* the Claim Letter, despite HMP following up on its request numerous times.

54. On November 8, 2023, for the first time, CIC claimed that the initial Period of Restoration was based on the estimated time to repair Production Lines 4 and 5 that was provided by Mahan Oven and Engineering Company ("Mahan").

55. The Mahan estimate, however, was an estimate for delivery of the parts and components only, and was dependent upon several variable factors that were each capable of drastically affecting the actual completion time, and in turn, HMP's restoration to normal operations.

10

56.     Mahan's estimate for delivery did not include time for installation, startup, and process component integration, and was dependent on parts sourcing, delivery, material availability, and labor availability.

57.     As noted above, the replacement of the Production Lines was significantly delayed as a result of the global supply chain issues stemming from the effects of the COVID-19 pandemic.

58.     CIC ceased issuing payments to HMP once the Period of Restoration deadline passed, and refused to communicate any justification.

59.     Predictably, HMP sustained additional Business Losses, Extra Expenses, and costs for the replacement of its machinery and other personal property, that extended well-beyond the Period of Restoration deadline established by CIC.

60.     Replacement of Lines 4 and 5 has still not reached total completion as of the date of this Complaint.

61.     Third, CIC failed to account for proven productivity gains when it calculated the loss of Business Income that HMP sustained due to the necessary suspension of operations during the Period of Restoration.

62.     Prior to the fire, HMP increased the productivity of the manufacturing process by approximately 12.54% at its South Carolina manufacturing plant by incorporating a special additive called "ARMA" into the product pulp.

63.     ARMA is described by its manufacturer, Babco Chemicals Inc. ("Babco"), as a "high-performance dry strength additive for paper & board manufacture."[4]

---

[4] According to a 2020 product data sheet that is accessible on Babco's website at: https://babcochemical.com/wp-content/uploads/2019/05/Arma-2020-PDS.pdf.

11

64. Babco claims that it has demonstrated through trial studies that ARMA increases machine speed, increases pulp drainage, and dramatically reduces dry time, all of which contribute to increases in manufacturing productivity.

65. Prior to the fire, HMP was in the process of implementing the ARMA additive into the manufacturing process at the Lebanon Plant by July 1, 2021.

66. Had HMP implemented the additive into the process at the Lebanon Plant by July 1, 2021, business productivity would have increased immediately.

67. Indeed, HMP has been utilizing ARMA in the Lebanon Plant since January 2022 and has achieved a peak productivity increase of **28.68%** over pre-ARMA rates.

68. HMP has provided CIC with expert certification and explanation of the productivity gains achieved at the South Carolina plant prior to the fire, as well as production reports showing productivity gains in Lebanon since implementing ARMA in January 2022.

69. CIC, however, only considered pre-ARMA production rates when it calculated the payout of HMP's loss of Business Income despite having received documented customer purchase orders.

70. Fourth, CIC has refused to reimburse HMP for the full inventory of finished Stock that was destroyed during the fire.

71. The total value of finished Stock destroyed by the fire was $758,537.54.

72. To date, CIC has reimbursed HMP only $342,944.64 for finished Stock and refuses to reimburse HMP the remaining principal balance of $415,592.90.

73. CIC has also refused to reimburse HMP for several other covered losses, including multiple invoices submitted by HMP for costs incurred in the process of restoration of its business operations.

12

74.     To date, CIC has disbursed a total of $7,812,001.30 to HMP for losses caused by the fire, which breaks down into the following general categories: $4,699,473.61 for building losses; $1,092,701.36 for business personal property losses; $1,221,731.00 for loss of business income and extra expenses sustained due to the necessary suspension of operations during the Period of Restoration; and $793,752.90.00 for reimbursement of recoverable depreciation and additional approved expenses.

75.     The total remaining amount due HMP for covered losses sustained as a result of the fire is $7,904,448.14, which includes but is not limited to:

| | | |
|---|---|---|
| a. | HMP Business Income Loss: | $4,489,828.19 |
| b. | Building Repair: | $2,228,336.31 |
| c. | Finished Stock Inventory: | $415,592.90 |
| d. | Roof Repair: | $92,214.75 |
| e. | Servpro Final Cleaning: | $305,358.01 |
| f. | Demolition & Removal of Lines 4 & 5: | $104,051.00 |
| g. | Mold Shop Relocation: | $22,030.40 |
| h. | ERP Replacement: | $247,036.58 |

76.     The amount above does not include interest for delayed payment, which continues to accrue and is no less than $1,300,000.00 as of the date of filing.

77.     CIC has also been routinely slow to respond and has often refused to even acknowledge HMP's communications relating to its claim, including communications that enclosed documentation supporting HMP's losses.

13

78. CIC has refused to follow up on their own inspection visit requests and HMP invitations that would provide additional transparency and verification of the HMP repair and restoration work.

79. The first paragraph of the Claim Letter provides one example of CIC's delays in handling HMP's claim. *See* Ex. B.

80. Lastly, CIC's Claims Specialist responsible for managing HMP's claim, Christine A. Snyder ("Snyder"), has leveled unsubstantiated charges against HMP personnel and HMP's president, Douglass Henry ("Henry"), alleging business misconduct and attacking their credibility and moral character.

81. Snyder's disparaging remarks were made in the presence of another insurance agent, HMP's accountant, and HMP's prior counsel.

82. Snyder was also generally hostile toward HMP's prior counsel during meetings on September 2, 2021, October 22, 2021, and November 12, 2021.

83. HMP's former counsel raised Snyder's conduct with CIC in January 2022, citing the specific times and dates of the above-described interactions.

84. HMP's former counsel requested that a new Claims Specialist be assigned to HMP's claim, given the apparent bias and animosity Snyder had developed toward HMP and Henry was coloring the claim.

85. CIC, however, refused to assign a new Claims Specialist.

86. To date, Snyder remains the Claims Specialist assigned to HMP's claim.

87. To date, CIC continues to request additional documentation and evidence to support HMP's claim.

88. HMP continues to provide such documentation and evidence in support of its claim.

14

89. HMP was compelled to initiate this lawsuit to prevent the statute of limitations on its claims from expiring.

90. Before initiating the action, however, HMP attempted to negotiate an agreement with CIC to toll the statute of limitations while the parties continued to process HMP's claim.

91. CIC denied HMP's request to toll the statute of limitations.

92. After initiating the action by writ of summons, CIC filed a Rule to File Complaint, despite HMP consistently presenting a cooperative posture and advising CIC of HMP's preference to handle the matter without litigation.

93. In furtherance of HMP's cooperative mindset and obvious intention to resolve this matter without litigation, HMP has requested several extensions for the deadline to file this Complaint while the parties continue to exchange communications regarding the claim.

94. CIC has consented to several extensions, but only for a few weeks each time.

95. Most recently, CIC granted HMP an extension to April 19, 2024, but stated that it "will not agree to any further extension."

96. CIC now files this Complaint despite its best efforts to resolve the claim without the need for litigation.

97. At the same time as CIC has been pushing this litigation forward, it has also been making increasingly more demanding and unreasonable requests for documentation and information from HMP.

98. HMP has nevertheless continued to attempt to satisfy those requests.

99. CIC's conduct described herein constitutes a breach of its obligations under the Policy, breach of the implied duty of good faith and fair dealing, and bad faith.

100. As a result of CIC's conduct, HMP has suffered a loss and damages in the amount of $7,904,448.14, plus interest calculated from the date of loss and all applicable statutory penalties.

**COUNT I**

**BREACH OF CONTRACT**

101. The prior paragraphs of this Complaint are incorporated herein by reference as if set forth fully at length.

102. HMP and CIC entered into a contract (the Policy), wherein CIC agreed to provide commercial insurance coverage to HMP for, among other losses, loss of building and business personal property, and loss of business income and extra expenses that HMP sustained due to the necessary suspension of operations during a Period of Restoration.

103. HMP made all required premium payments to CIC for the insurance coverage and expected to receive the full benefit of the Policy upon the occurrence of a covered cause of loss.

104. HMP suffered extensive covered losses as a result of a fire at Lebanon Plant.

105. HMP timely submitted a claim under its Policy to CIC.

106. To date, however, CIC has refused to fully reimbursed HMP for all covered losses arising from the fire.

107. CIC's failure to fully reimburse HMP for losses covered under the Policy constitutes a breach of the Parties' contract.

108. As a result of CIC's breach of contract, HMP has suffered losses and damages in the amount of $7,904,448.14, plus interest accruing from the date of the loss (June 27, 2021).

16

WHEREFORE, it is respectfully requested that this Honorable Court enter a judgment in favor of the Plaintiff, and against the Defendant, in the amount of $7,904,448.14, prejudgment and post-judgment interest, and any other relief that this Honorable Court deems just. The amount demanded exceeds the compulsory arbitration threshold.

## COUNT II

## BAD FAITH, IN VIOLATION OF 42 Pa.C.S. § 8371

109. The prior paragraphs of this Complaint are incorporated herein by reference as if set forth fully at length.

110. HMP and CIC had a contract wherein CIC agreed to provide commercial insurance coverage to HMP.

111. HMP suffered a covered cause of loss that triggered CIC's obligation under the Policy to pay insurance benefits to HMP for loss of building and business personal property, and loss of business income and extra expenses that HMP sustained due to the necessary suspension of operations during a Period of Restoration.

112. CIC, however, grossly underestimated and underpaid HMP's claim and denied benefits under the Policy without any reasonable basis and knew of or recklessly-disregarded its lack of reasonable basis in denying the claim.

113. CIC lacked a reasonable basis for determining that Production Lines 4 and 5 were repairable because CIC was aware that the machines' critical components (some of which were custom fabricated) were destroyed and/or damaged to a point of disrepair.

17

114.    CIC knew of or recklessly disregarded its lack of reasonable basis because, despite being presented with the information above, it refused to determine that Production Lines needed to be replaced with machines of like kind and quality.

115.    CIC lacked a reasonable basis for initially setting the timeframe for the Period of Restoration, and then also for refusing to extend the deadline, without considering the relevant effects of the COVID-19 pandemic that were impacting the global supply chain.

116.    CIC knew of or recklessly disregarded its lack of reasonable basis regarding its determination of the Period of Restoration because, despite being aware of the delays caused by the effects of the COVID-19 pandemic, it refused to extend the Period of Restoration.

117.    CIC also abused its power to specify terms when it refused to provide an explanation for its determination of the Period of Restoration despite HMP specifically requesting such explanation numerous times.

118.    CIC lacked a reasonable basis for refusing to consider expected productivity increases from the ARMA additive in its calculation for the payout of HMP's loss of Business Income despite the existence of customer purchase orders.

119.    CIC knew of or recklessly disregarded its lack of reasonable basis for refusing to consider the ARMA additive because, despite HMP submitting documentation demonstrating the proven productivity gains achieved by ARMA, and proof that HMP planned to implement the additive into its manufacturing process at the Lebanon Plant by July 1, 2021, had the fire not occurred, CIC calculated loss of Business Income without considering the ARMA additive.

120.    CIC lacked a reasonable basis for refusing to fully reimburse HMP loss of finished Stock because HMP submitted documentation showing loss of finished Stock with a value of $415,592.90 in excess of what CIC actually paid.

18

121. CIC knew of or recklessly disregarded its lack of reasonable basis for failing to fully reimburse HMP for all finished Stock because CIC was made fully aware of the total value of lost Stock, but refused to reimburse HMP for the same.

122. CIC lacked diligence in responding to communications from HMP, including communications that enclosed documentation supporting HMP's claimed losses.

123. CIC has altogether failed to acknowledge several communications from HMP relating to its claim.

124. CIC had no reasonable basis for its dilatory conduct and outright failures to respond to HMP, and knew of or recklessly disregarded its lack of reasonable basis for the same.

125. CIC has also demonstrated bad faith by taking steps to compel HMP to institute and push this litigation forward, including by:

    a. Making seemingly endless, unreasonable follow-up requests for additional documentation and evidence to support HMP's claim;

    b. Waiting weeks and sometimes months to respond after HMP produces such documentation and evidence (or not even respond or acknowledge the communication at all); and

    c. Pressuring HMP to push this litigation forward despite knowing of HMP's intentions to resolve the claim, and the despite the parties still being in the midst of the claim evaluation process.

126. Further, as more fully stated in Count III herein, CIC breached the implied covenant of good faith and fair dealing through motive of self-interest or ill will.

19

127. As a result of CIC's bad faith, HMP has been forced to borrow additional funds in order to keep up with ongoing business operational expenses, as well as initiate this litigation to recover amounts due under the Policy.

128. As a result of CIC's bad faith, HMP has suffered losses and damages in the principal amount of $7,904,448.14.

129. CIC's actions and inactions described herein constitute bad faith in violation of 42 Pa.C.S. § 8371 and warrant an award of interest on the amount of the claim from the date the claim was made in an amount equal to the prime rate of interest plus three (3) percent, as well as punitive damages, costs, and attorneys' fees.

WHEREFORE, it is respectfully requested that this Honorable Court enter a judgment in favor of the Plaintiff, and against the Defendant, in the amount of $7,904,448.14, prejudgment interest calculated from the date of HMP's insurance claim in an amount equal to the prime rate of interest plus three (3) percent, punitive damages, costs, attorneys' fees, post judgment interest, and any other relief that this Honorable Court deems just. The amount demanded exceeds the compulsory arbitration threshold.

**COUNT III**

**BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

130. The prior paragraphs of this Complaint are incorporated herein by reference as if set forth fully at length.

131. HMP and CIC had a contract wherein CIC agreed to provide commercial insurance coverage to HMP.

132. As an insurer, CIC owed HMP a duty of good faith and fair dealing.

133. CIC breached that duty on multiple occasions throughout the claims process.

20

134. CIC was routinely slow to respond and often ignored communications from HMP, including communications which enclosed documentation supporting HMP's claimed losses.

135. CIC, through its employee, Christine Snyder, leveled unsubstantiated personal attacks at HMP's agents throughout the claims process.

136. Despite Snyder's behavior, and HMP's complaints to CIC regarding the same, CIC has refused to replace Snyder with a different Claims Specialist.

137. CIC's refusal to replace Snyder has resulted in a hostile relationship between the parties which continues to color HMP's claim.

138. CIC abused its discretion by failing to acknowledge the state of the global supply chain delays caused by COVID-19 when it arbitrarily set an unreasonable expiration date for the Period of Restoration.

139. CIC acted in bad faith when it refused to reconsider the Period of Restoration in light of the aforementioned supply chain issues.

140. CIC failed to account for proven productivity gains when it calculated the loss of business income that HMP sustained due to the necessary suspension of operations during the Period of Restoration.

141. CIC failed to disburse payment for documented costs submitted by HMP.

142. CIC failed to pay for lost customer revenues.

143. As a whole, CIC refused, without proper cause, to compensate HMP for the actual losses it incurred which were covered under the Policy.

144. CIC's motive of self-interest or ill will toward HMP is self-evident from CIC's actions and inactions described herein.

145.    Particularly, Snyder's conduct and personal attacks against HMP clearly demonstrate ill will.

146.    Due to CIC's breach of the implied covenant of good faith and fair dealing, HMP has suffered losses and damages in the amount of $7,904,448.14.

WHEREFORE, it is respectfully requested that this Honorable Court enter a judgment in favor of the Plaintiff, and against the Defendant, in the amount of $7,904,448.14, prejudgment and post judgment interest, and any other relief that this Honorable Court deems just. The amount demanded exceeds the compulsory arbitration threshold.

Respectfully submitted,

SAXTON & STUMP, LLC

Date: April 19, 2024

By: _____

Ronald H. Pollock, Esquire
Attorney I.D. No. 52586
Aaron M. Scheibelhut, Esquire
Attorney I.D. No. 330775
280 Granite Run Drive, Suite 300
Lancaster, PA 17601
Telephone:     (717) 556-1030
Facsimile:     (717) 441-3810
Email:         rhp@saxtonstump.com
               ams@saxtonstump.com

*Attorneys for Plaintiff*

22

## CERTIFICATE OF COMPLIANCE

I certify that this filing complies with the provisions of the *Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts* that require filing confidential information and documents differently than non-confidential information and documents.

Submitted By: <u>Saxton & Stump, LLC</u>

Signature: *Nk*

Name: <u>Ronald H. Pollock, Esquire</u>

Attorney No. (if applicable): <u>52586</u>

23

## CERTIFICATE OF SERVICE

I hereby certify that I caused the foregoing document(s) to be filed on the date listed below with the Lebanon County Court of Common Pleas, and that this document(s) is available for viewing from Court's system. A copy of the foregoing document was sent via Federal Express overnight delivery to the following:

William Krekstein, Esquire

Horst Krekstein & Runyon, LLC

610 West Germantown Pike, Suite 350

Plymouth Meeting, PA 19462

April 19, 2024

Ronald H. Pollock, Esquire

25

## **VERIFICATION**

I, DOUGLASS C. HENRY , being duly affirmed according to law, depose and say that the facts set forth in the foregoing *Complaint* are true and correct to the best of my knowledge, information and belief. This Verification is made subject to the penalties of 18 Pa.C.S. § 4904, relating to sworn falsifications to authorities.

Henry Molded Products, Inc.

PRESIDENT

Dated: April 18, 2024

_____
Name/Title: Douglass C. Henry

24

A



# The Cincinnati Insurance Company
### A Stock Insurance Company

**Headquarters:** 6200 S. Gilmore Road, Fairfield, OH 45014-5141
**Mailing address:** P.O. Box 145496, Cincinnati, OH 45250-5496
*www.cinfin.com* ■ 513-870-2000

# COMMON POLICY DECLARATIONS

Billing Method: **AGENCY BILL**

| POLICY NUMBER | EPP 026 35 19 / EBA 026 35 19 |
|---|---|

**NAMED INSURED** HENRY MOLDED PRODUCTS INC
71 N 16TH ST
**ADDRESS** LEBANON, PA 17042-4506
(Number & Street,
Town, County,
State & Zip Code)

This is a true and certified copy of the complete policy:

*Jennifer Baker*
Jennifer Baker, Assistant Vice President

**Previous Policy Number:**
EPP0263519

**Policy Period:** At 12:01 A.M., STANDARD TIME AT YOUR MAILING ADDRESS SHOWN ABOVE

**All coverages except Automobile and / or Garage**
Policy number: EPP 026 35 19      FROM: 07-01-2020   TO: 07-01-2023

**Automobile and / or Garage**
Policy number: EBA 026 35 19      FROM: 07-01-2020   TO: 07-01-2021

Agency   HOASTER GEBHARD & CO. 37-039
City   LEBANON, PA

**Legal Entity / Business Description**

ORGANIZATION (ANY OTHER)

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

FORMS APPLICABLE TO ALL COVERAGE PARTS:

| | | |
|---|---|---|
| IA461 | 06/10 | COINSURANCE CONTRACT |
| IL0017 | 11/98 | COMMON POLICY CONDITIONS |
| IA102A | 09/08 | SUMMARY OF PREMIUMS CHARGED |
| IA904 | 04/04 | SCHEDULE OF LOCATIONS |
| IA4236 | 01/15 | POLICYHOLDER NOTICE TERRORISM INSURANCE COVERAGE |
| IA4521 | 03/20 | NOTICE OF PRIVACY PRACTICES |
| IP446 | 08/01 | NOTICE TO POLICYHOLDERS |
| IA4006 | 07/10 | SPECIAL PER OCCURRENCE DEDUCTIBLE ENDORSEMENT |
| IA4111PA | 03/16 | PENNSYLVANIA CHANGES - CANCELLATION AND NONRENEWAL |
| IA4189PA | 04/99 | IMPORTANT NOTICE |
| IA4238 | 01/15 | CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM |
| IA4295PA | 08/06 | PENNSYLVANIA WARNING NOTICE |
| IA4313PA | 07/09 | PENNSYLVANIA CHANGES - ACTUAL CASH VALUE |
| IA4314PA | 07/09 | PENNSYLVANIA CHANGES |
| IA4338 | 05/11 | SIGNATURE ENDORSEMENT |
| IA4450SC | 01/15 | SOUTH CAROLINA NOTICE TO POLICYHOLDERS - POLICY COVERAGES AND LIMITATIONS |
| IA460 | 01/16 | PROTECTIVE SAFEGUARDS |
| IL0022 | 05/87 | EFFECTIVE TIME CHANGES - REPLACEMENT OF 12 NOON |
| IL0194 | 07/02 | SOUTH CAROLINA CHANGES - LEGAL ACTION AGAINST US |
| IL0910 | 07/02 | PENNSYLVANIA NOTICE |

IA 509 01 12

EPP 026 35 19 / EBA 026 35 19

**Page 1 of 2**

FORMS APPLICABLE TO ALL COVERAGE PARTS:

| | | |
|---|---|---|
| IA4087PA | 07/18 | CANCELLATION OR NONRENEWAL BY US NOTIFICATION TO A DESIGNATED ENTITY - PENNSYLVANIA |
| FM502 | 07/08 | COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS |
| GA532 | 07/08 | COMMERCIAL GENERAL LIABILITY COVERAGE PART DECLARATIONS |
| CA519XCP | 03/09 | CINCIPLUS® CRIME XC+® (EXPANDED COVERAGE PLUS) COVERAGE PART DECLARATIONS |
| AA505PA | 03/10 | BUSINESS AUTO COVERAGE PART DECLARATIONS |
| USC513 | 05/10 | COMMERCIAL UMBRELLA LIABILITY COVERAGE PART DECLARATIONS |
| HC502 | 01/18 | CINCINNATI DATA DEFENDER™ COVERAGE PART DECLARATIONS |
| HC503 | 01/18 | CINCINNATI NETWORK DEFENDER™ COVERAGE PART DECLARATIONS |

07-09-2020 08:34

Countersigned _____ By _____
(Date)                                   (Authorized Representative)

## COINSURANCE CONTRACT

The rate charged in this policy is based upon use of a coinsurance clause attached hereto, with the consent of the insured.

**IA-461 (6/10)**

IA 509 01 12

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination of Your Books and Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections and Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer of Your Rights and Duties Under this Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

IL 00 17 11 98          Copyright, Insurance Services Office, Inc., 1998

# SUMMARY OF PREMIUMS CHARGED

Attached to and forming part of
POLICY NUMBER:  EPP 026 35 19 / EBA 026 35 19          Effective Date: 07-01-2020

Named Insured:  HENRY MOLDED PRODUCTS INC

## THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE
## PARTS FOR WHICH A PREMIUM CHARGE IS INDICATED

| | | |
|---|---|---|
| Commercial Property Coverage Part    W/EBC | $ | 53,659 |
| Commercial General Liability Coverage Part | $ | 7,884 |
| Commercial Auto Coverage Part | $ | 4,849 |
| Commercial Umbrella / Excess Liability Coverage Part | $ | 1,871 |
| DATA DEFENDER COVERAGE PART | $ | 87 |
| NETWORK DEFENDER COVERAGE PART | $ | 242 |
| CRIME EXPANDED COVERAGE PLUS | $ | 125 |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| Terrorism Coverage | $ | 489 |
| Installment Charge | $ | 18 |
| ANNUAL TOTAL PAYMENTS | $ | 69,224 |

| | First Installment | Remaining Installment(s) |
|---|---|---|
| QUARTERLY | 17,306 | 17,306 |

Automobile Coverages, Employers Liability, Employment Practices Liability Coverage, Professional Liability Coverage, Terrorism Coverage and / or Wrongful Acts Coverage, if included in the policy, are subject to Annual Adjustment of rates and premium on each anniversary of the policy.

Commercial Umbrella and Excess Liability, if included in the policy, may be subject to Annual Adjustment of premium on each anniversary. Refer to the Commercial Umbrella or Excess Liability Coverage Part Declarations form to see if this is applicable.

## ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

IA 102 A 09 08

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SCHEDULE OF LOCATIONS

| LOC. | STREET ADDRESS | CITY | STATE | ZIP CODE |
|------|----------------|------|-------|----------|
| 1 | 71 N 16TH ST<br>LEBANON, PA 17042-4506 | | | |
| 2 | 1621 WILLOW ST<br>LEBANON, PA 17042-4580 | | | |
| 3 | 125 HOLLOW DR<br>PIEDMONT, SC 29673-7510 | | | |
| 4 | 37 N 16TH ST<br>LEBANON, PA 17042-4501 | | | |

IA 904 04 04

# POLICYHOLDER NOTICE
# TERRORISM INSURANCE COVERAGE

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

Your policy may contain coverage for certain losses caused by terrorism.

## Premium:

In accordance with the federal Terrorism Risk Insurance Act, we are required to notify you of the portion of the premium, if any, attributable to the coverage for terrorist acts certified under the Terrorism Risk Insurance Act.

- Refer to the SUMMARY OF PREMIUMS CHARGED or DECLARATIONS PAGE for the portion of your premium that is attributable to coverage for terrorist acts certified under the Act.

## Federal Participation:

The Act also requires us to provide disclosure of federal participation in payment of terrorism losses.

- Under your policy, any losses caused by certified acts of terrorism would be partially reimbursed by the United States Government, Department of Treasury, under a formula established by federal law. Under this formula, the federal share equals a percentage, as specified in the Schedule below, of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

- **Schedule:**

| Federal Share of Terrorism Losses | |
|---|---|
| **Percentage** | **Calendar Year** |
| 85% | 2015 |
| 84% | 2016 |
| 83% | 2017 |
| 82% | 2018 |
| 81% | 2019 |
| 80% | 2020 |

## Cap on Insurer Participation:

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**NOTE:** **IF YOUR POLICY IS A RENEWAL POLICY, THIS NOTICE IS PROVIDED TO SATISFY THE REQUIREMENTS UNDER THE TERRORISM RISK INSURANCE ACT FOR POLICYHOLDER DISCLOSURE: (1) AT THE TIME OF OUR OFFER TO RENEW THE POLICY AND (2) AT THE TIME THE RENEWAL IS COMPLETED.**

IA 4236 01 15

# NOTICE OF PRIVACY PRACTICES

For additional information on our privacy policies, including state specific information, please visit https://www.cinfin.com/privacy-policy.

# THE **CINCINNATI INSURANCE COMPANY**
# THE **CINCINNATI CASUALTY COMPANY**
# THE **CINCINNATI INDEMNITY COMPANY**

## NOTICE TO POLICYHOLDERS

Please be advised that in your application for insurance you disclosed information to The Cincinnati Insurance Company, The Cincinnati Casualty Company and The Cincinnati Indemnity Company. The information disclosed in the application and all information subsequently collected by any of these companies may be shared among all three.

**IP 446 08 01**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SPECIAL PER OCCURRENCE DEDUCTIBLE ENDORSEMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL PROPERTY COVERAGE PART**
**COMMERCIAL INLAND MARINE COVERAGE PART**
**CRIME AND FIDELITY COVERAGE PART**

**A. Special Per Occurrence Deductible**

1. If an "occurrence" happens to Covered Property under the Commercial Property Coverage Part and to Covered Property under at least one of the following:

   a. The Commercial Inland Marine Coverage Part, and

   b. The Crime and Fidelity Coverage Part;

   the most we will deduct from any loss or damage in any one "occurrence" is the deductible indicated on the **COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS.**

2. This endorsement does not apply to any of the forms listed in Paragraphs **a.** and **b.**:

   a. **\* Electronic Data Processing Coverage Form, Section III, 2. Deductible, a.(2) Specified Losses Deductible**

   **\* Water Backup from Sewers, Drains, Septic Systems or Sump Pumps Endorsement**

   **Windstorm or Hail Percentage Deductible Form**

   **Earthquake and Volcanic Eruption Endorsement**

   **Earthquake and Volcanic Eruption Endorsement (Sub-Limit Form)**

   **Flood Coverage Endorsement**

   **Equipment Breakdown Coverage (Including Production Equipment)**

   **Equipment Breakdown Coverage (Excluding Production Equipment)**

   **\* Temperature Change Coverage Form**

   **Commercial Crime Coverage Form, A. Insuring Agreements, 1. Employee Theft, 2. Forgery or Alteration, 6. Computer Fraud and 7. Funds Transfer Fraud**

   **Crime Expanded Coverage (XC®) Coverage or Expanded Coverage Plus Forms, A. Insuring Agreements, 1. Employee Theft and 2. Forgery or Alteration**

   **Government Crime Coverage Form, A. Insuring Agreements, 1. Employee Theft - Per Loss Coverage, 2. Employee Theft - Per Employee Coverage, 3. Forgery or Alteration, 7. Computer Fraud and 8. Funds Transfer Fraud**

   **\*** Or such coverage as provided in the CinciPlus® Commercial Property or Commercial Property Power Expanded Coverage or Expanded Coverage Plus Forms

   b. ☐ **Other**

IA 4006 07 10

**B. Definition**

For the purpose of this endorsement only, any definition of "occurrence" is deleted in its entirety and the following definition is added to:

1. **COMMERCIAL PROPERTY CONDITIONS,**
2. **COMMERCIAL INLAND MARINE CONDITIONS,**
3. **COMMERCIAL CRIME COVERAGE FORM,**
4. **CRIME EXPANDED COVERAGE (XC®) COVERAGE FORM, and**
5. **GOVERNMENT CRIME COVERAGE FORM:**

**"Occurrence"** means all loss, damage, or a sequence of loss or damage, casualties or disasters arising from a single happening or event.

IA 4006 07 10

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PENNSYLVANIA CHANGES - CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CHEMICAL APPLICATION LIMITED LIABILITY COVERAGE PART
CHEMICAL DRIFT LIMITED LIABILITY COVERAGE PART - CLAIMS-MADE
CINCINNATI CYBER DEFENSE™ COVERAGE PART
CINCINNATI DATA DEFENDER™ COVERAGE PART
CINCINNATI NETWORK DEFENDER™ COVERAGE PART
CLAIMS-MADE EXCESS LIABILITY COVERAGE PART
COMMERCIAL AUTO COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
COMMERCIAL UMBRELLA LIABILITY COVERAGE PART
CONTRACTOR'S ERRORS AND OMISSIONS COVERAGE PART - CLAIMS-MADE
CONTRACTORS' LIMITED POLLUTION LIABILITY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
ELECTRONIC DATA LIABILITY COVERAGE PART
EMPLOYEE BENEFIT LIABILITY COVERAGE PART
EMPLOYMENT PRACTICES LIABILITY COVERAGE PART
EXCESS LIABILITY COVERAGE PART
EXCESS WORKERS COMPENSATION AND EMPLOYERS LIABILITY COVERAGE PART
FARM COVERAGE PART
HOLE-IN-ONE COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MACHINERY AND EQUIPMENT COVERAGE PART
MANUFACTURER'S ERRORS AND OMISSIONS COVERAGE PART - CLAIMS-MADE
POLLUTION LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART
PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART - CLAIMS-MADE
SEPTIC SYSTEMS DESIGN AND INSPECTION ERRORS AND OMISSIONS COVERAGE PART

A. The **Cancellation** Common Policy Condition is deleted in its entirety and replaced by the following:

**CANCELLATION**

1. The first Named Insured shown in the Declarations may cancel this policy by writing or giving notice of cancellation.

2. **Cancellation of Policies in Effect for Less Than 60 Days**

   We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least 30 days before the effective date of cancellation.

3. **Cancellation of Policies in Effect for 60 Days or More**

   If this policy has been in effect for 60 days or more or if this policy is a renewal of a policy we issued, we may cancel this policy only for one or more of the following reasons:

   a. You have made a material misrepresentation which affects the insurability of the risk. Notice of cancellation will be mailed or delivered at least 15 days before the effective date of cancellation.

   b. You have failed to pay a premium when due, whether the premium is payable directly to us or our agents or indirectly under a premium finance

Includes copyrighted material of Insurance Services Office, Inc., with its permission. Includes copyrighted material of ISO Commercial Risk Services, Inc., with its permission.

IA 4111 PA 03 16

plan or extension of credit. Notice of cancellation will be mailed at least 15 days before the effective date of cancellation.

c. A condition, factor or loss experience material to insurability has changed substantially or a substantial condition, factor or loss experience material to insurability has become known during the policy period. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

d. Loss of reinsurance or a substantial decrease in reinsurance has occurred, which loss or decrease, at the time of cancellation, shall be certified to the Insurance Commissioner as directly affecting in-force policies. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

e. Material failure to comply with policy terms, conditions or contractual duties. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

f. Other reasons that the Insurance Commissioner may approve. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

This policy may also be cancelled from inception upon discovery that the policy was obtained through fraudulent statements, omissions or concealment of facts material to the acceptance of the risk or to the hazard assumed by us.

4. We will mail or deliver our notice to the first Named Insured's last mailing address known to us. Notice of cancellation will state the reasons for cancellation.

5. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

6. If this policy is cancelled, we will send the first Named Insured any premium refund due. If the first Named Insured or we cancel, the refund will be pro rata and will be returned within 10 business days after the effective date of cancellation. If the first Named Insured cancels, the refund will be pro rata and will be returned within 30 days after the effective date of cancellation. The cancellation will be effective even if we have not made or offered a refund.

7. If notice is mailed, it will be by registered or first class mail. Proof of mailing will be sufficient proof of notice.

B. The following are added and supersede any provisions to the contrary:

1. **Nonrenewal**

   If we decide not to renew this policy, we will mail or deliver written notice of nonrenewal, stating the specific reasons for nonrenewal, to the first Named Insured at least 60 days before:

   a. The expiration date of this policy; or

   b. The anniversary date of this policy, if the policy is written for a term of more than one year.

2. **Increase of Premium**

   If we increase your renewal premium, we will mail or deliver to the first Named Insured written notice of our intent to increase the premium at least 30 days before the effective date of the premium increase.

Any notice of nonrenewal or renewal premium increase will be mailed or delivered to the first Named Insured's last known address. If notice is mailed, it will be by registered or first class mail. Proof of mailing will be sufficient proof of notice.

Includes copyrighted material of Insurance Services Office, Inc., with its permission. Includes copyrighted material of ISO Commercial Risk Services, Inc., with its permission.

IA 4111 PA 03 16

# IMPORTANT NOTICE

As a policyholder of The Cincinnati Insurance Companies, we are required by state statute to provide you with notice that your renewal/anniversary premium may increase. An increase may be attributed to any number of reasons that may include changes in your sales or payroll, increase in your property values or coverage limits, a rate increase, or a change in the nature and extent of your business. You have the ability to control some of these factors through the use of deductibles, safety and loss prevention measures in your workplace, and through careful selection of your insurance coverages. Prior to your renewal/anniversary, please take the time to contact your agent to review this policy to make sure your coverages reflect your current needs.

IA 4189 PA 04 99

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

**All Commercial Lines Coverage Parts, Coverage Forms, Policies and Endorsements subject to the federal Terrorism Risk Insurance Act and any amendments and extensions thereto**

**A.** The following definition is added with respect to the provisions of this endorsement:

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

1. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**B. Cap On Losses from Certified Acts of Terrorism**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that ex-

ceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**C. Application of Other Exclusions**

The terms and limitations of any terrorism exclusion, or the inapplicability, omission or absence of a terrorism exclusion, does not serve to create coverage for any loss which would otherwise be excluded under this Coverage Part, Coverage Form, Policy or Endorsement such as losses excluded by:

1. Exclusions that address war, warlike action, insurrection, rebellion, revolution, military action, nuclear hazard, nuclear materials, nuclear reaction, radiation, or radioactive contamination;

2. Exclusions that address pollutants, contamination, deterioration, fungi or bacteria; or

3. Any other exclusion,

regardless if the "certified act of terrorism" contributes concurrently or in any sequence to the loss.

**D. Sunset Clause**

If the federal Terrorism Risk Insurance Act expires or is repealed, then this endorsement is null and void for any act of terrorism that takes place after the expiration or repeal of the Act.

Includes copyrighted material of ISO Properties, Inc. and American Association of Insurance Services, with their permission.

IA 4238 01 15

# PENNSYLVANIA WARNING NOTICE

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties. (For auto, upon conviction, shall be subject to imprisonment for up to seven years and payment of a fine of up to $15,000.)

IA 4295 PA 08 06

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PENNSYLVANIA CHANGES - ACTUAL CASH VALUE

This endorsement modifies insurance provided under the following:

**COMMERCIAL INLAND MARINE COVERAGE PART**
**COMMERCIAL PROPERTY COVERAGE PART**
**CRIME AND FIDELITY COVERAGE PART**
**FARM COVERAGE PART**
**MACHINERY AND EQUIPMENT COVERAGE PART**
**STANDARD PROPERTY POLICY**

The following is added to any provision which uses the term actual cash value:

Actual cash value is calculated as the amount it would cost to repair or replace Covered Property at the time of loss or damage, with material of like kind and quality, subject to a deduction for deterioration, depreciation and obsolescence. Actual cash value applies to valuation of Covered Property regardless of whether that property has sustained partial or total loss or damage.

The actual cash value of the lost or damaged property may be significantly less than its replacement cost.

IA 4313 PA 07 09

Includes copyrighted material of ISO
Properties, Inc., with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PENNSYLVANIA CHANGES

This endorsement modifies insurance provided under the following:

**COMMERCIAL INLAND MARINE COVERAGE PART**
**COMMERCIAL PROPERTY COVERAGE PART**
**CRIME AND FIDELITY COVERAGE PART**
**FARM COVERAGE PART**
**MACHINERY AND EQUIPMENT COVERAGE PART**

**A.** For insurance provided under the:

Commercial Inland Marine Coverage Part
Commercial Property Coverage Part
Crime and Fidelity Coverage Part
Machinery and Equipment Coverage Part

The **TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY** Common Policy Condition is replaced by the following:

**F.   TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

If you die, this Coverage Part will remain in effect as provided in **1.** or **2.** below, whichever is later:

**1.**   For 180 days after your death regardless of the policy period shown in the Declarations, unless the insured property is sold prior to that date; or

**2.**   Until the end of the policy period shown in the Declarations, unless the insured property is sold prior to that date.

Coverage during the period of time after your death is subject to all provisions of this policy including payment of any premium due for the policy period shown in the Declarations and any extension of that period.

**B.** For insurance provided under the:

Commercial Inland Marine Coverage Part
Commercial Property Coverage Part
Farm Coverage Part

The following is added to the **LOSS PAYMENT** Loss Condition and supersedes any provision to the contrary:

**NOTICE OF ACCEPTANCE OR DENIAL OF CLAIM**

**1.**   Except as provided in **3.** below, we will give you notice, within 15 working days after we receive a properly executed proof of loss, that we:

**a.**   Accept your claim;

**b.**   Deny your claim; or

**c.**   Need more time to determine whether your claim should be accepted or denied.

If we deny your claim, such notice will be in writing, and will state any policy provision, condition or exclusion used as a basis for the denial.

If we need more time to determine whether your claim should be accepted or denied, the written notice will state the reason why more time is required.

**2.**   If we have not completed our investigation, we will notify you again in writing, within 30 days after the date of the initial notice as provided in **1.c.** above, and thereafter every 45 days. The written notice will state why more time is needed to investigate your claim and when you may expect us to reach a decision on your claim.

**3.**   The notice procedures in **1.** and **2.** above do not apply if we have a reasonable basis, supported by specific information, to suspect that an insured has fraudulently caused or contributed to the loss by arson or other illegal activity. Under such circumstances, we will notify you of the disposition of your claim within a period of time reasonable to allow full investigation of the claim, after we receive a properly executed proof of loss.

**IA 4314 PA 07 09**

Includes copyrighted material of ISO
Properties, Inc., with its permission.

# SIGNATURE ENDORSEMENT

IN WITNESS WHEREOF, this policy has been signed by our President and Secretary in the City of Fairfield, Ohio, but this policy shall not be binding upon us unless countersigned by an authorized representative of ours. The failure to countersign does not void coverage in Arizona, Virginia and Wisconsin.

Secretary

President

The signature on any form, endorsement, policy, declarations, jacket or application other than the signature of the President or Secretary named above is deleted and replaced by the above signatures.

IA 4338 05 11

# SOUTH CAROLINA NOTICE TO POLICYHOLDERS - POLICY COVERAGES AND LIMITATIONS

## DEDUCTIBLES

A deductible is the amount of money you have to pay out-of-pocket for expenses before your insurance kicks in should you have a covered loss. The deductible applies to coverage for your building and personal property. The deductible applies to each claim.

You may be able to reduce your premium by increasing your deductible. For example, a policy with a $1,000 deductible will have a lower premium than the same policy with a $500 deductible. Having a higher deductible can be a good way to save money on your insurance premium, but be sure you can afford to pay the out-of-pocket costs in the event of a covered loss. Your current deductible is listed on your policy Declarations. Contact your agent or insurance company for more information about the deductible options available to you.

In some cases, there may be a separate deductible that applies in case of damage from a specified peril, such as a hurricane. This deductible is specified as a percentage of insured property.

**NOTICE: This policy ☐ includes ☒ does not include a separate deductible for covered losses caused by ☐ hurricane; ☐ wind/hail; ☐ named storm; ☐ tropical cyclone as defined in the policy**

If the policy includes a separate hurricane, wind/hail, named storm, and/or tropical cyclone deductible, refer to Form IA 4216 SC for example of how the deductible might affect you.

## CATASTROPHE SAVINGS ACCOUNTS

Establishing a Catastrophe Savings Account can help you pay for your deductible and other out-of-pocket costs. Similar to health savings accounts, the money can be set aside state income tax-free and used in the future to pay for qualified catastrophe expenses that result from a hurricane, flood, or windstorm event that has been declared an emergency by the Governor. For more information about Catastrophe Savings Accounts, visit the South Carolina Department of Insurance website, www.doi.sc.gov (search for "catastrophe savings accounts"), or call the Department's Office of Consumer Services (1-800-768-3467).

## LIMITATIONS OR EXCLUSIONS UNDER THIS POLICY

*Flood* - Flood damage ☐ is ☒ is not covered under your policy.

The National Flood Insurance Program (NFIP) writes most flood insurance policies, although some private insurance companies also offer this coverage. You may contact the NFIP by calling 1-888-379-9531 or go online to www.floodsmart.gov. If you need more coverage than is available through the NFIP, you may be able to purchase excess flood protection through a private insurance company. For more information, contact your insurance agent, insurance company, or the NFIP.

*Mold* - Mold damage ☐ is ☒ is not covered under your policy.

*Earthquake* - Earthquake damage ☐ is ☒ is not covered under your policy.

Many insurance companies offer earthquake insurance as a separate policy or an endorsement to your current policy. For an additional premium, this coverage will protect you in case your building is damaged as a result of an earthquake.

*Replacement Cost and Actual Cash Value*

You may have the option to insure your building and its contents for either replacement cost or actual cash value. *Actual cash value* is the amount needed to repair or replace the damage minus a deduction for depreciation. *Replacement cost* is the cost to rebuild your building or repair damages using materials of similar kind and quality, without deducting for depreciation. Read your insurance policy carefully for the complete terms and conditions regarding replacement cost coverage.

*\*\*Please refer to your policy for complete details and information regarding all other limitations and exclusions.\*\**

## YOUR RESPONSIBILITIES IN THE EVENT OF A CLAIM

*Contact Your Agent or Company Immediately* - Insurance policies typically place a time limit on the filing of a claim.

*Time Limitations May Apply* - Once the company knows you've had a claim, they are required to send you any necessary forms (commonly referred to as "proof of loss") within 20 days. These forms detail written proof of what caused the loss as well as the character and extent of the loss for which the claim has been made. Read your policy carefully as it may require you to return the completed forms within a specified amount of time. If you have replacement cost coverage, there may also be time limitations for repairing and replacing damaged property that, if not met, could cause the claim to be settled on an actual cash value basis.

*Additional Duties Are Outlined in Your Policy* - In the event of a loss, you and your insurance company are each expected to follow certain procedures as outlined in your policy. Your responsibilities include, for example, reporting any crime to the police and making temporary repairs to protect your property from further damage. Your duties after a loss are outlined fully in your insurance policy.

IA 4450 SC 01 15

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PROTECTIVE SAFEGUARDS

Policy Number  <u>EPP 026 35 19</u>

This endorsement modifies insurance provided under the following:

**COMMERCIAL INLAND MARINE COVERAGE PART**
**COMMERCIAL PROPERTY COVERAGE PART**
**FARM COVERAGE PART**

## SCHEDULE

| Loc. Number | Bldg. Number | Protective Safeguards Symbols Applicable | |
|---|---|---|---|
| 1 | 1 | P-1 | |

**Describe any "P-9":**

A. The following is added to the:

**Commercial Property Conditions**
**Farm Property Coverage Form, General Conditions**
**Commercial Inland Marine Conditions**

**PROTECTIVE SAFEGUARDS**

1.  As a condition of this insurance, you are required to maintain the protective devices or services listed in the **SCHEDULE** of this endorsement.

2.  The protective safeguards to which this endorsement applies are identified by the following symbols:

    **"P-1"  Automatic Sprinkler System,** including related supervisory services.

    Automatic Sprinkler System means:

    a.  Any automatic fire protective or extinguishing system, including connected:

        **(1)** Sprinklers and discharge nozzles;

        **(2)** Ducts, pipes, valves and fittings;

        **(3)** Tanks, their component parts and supports; and

    **(4)** Pumps and private fire protection mains.

    b.  When supplied from an automatic fire protective system:

        **(1)** Non-automatic fire protective systems; and

        **(2)** Hydrants, standpipes and outlets.

    **"P-2"  Automatic Fire Alarm,** protecting the entire building, that is:

    a.  Connected to a central station; or

    b.  Reporting to a public or private fire alarm station.

    **"P-3"  Security Service,** with a recording system or watch clock, making hourly rounds covering the entire building, when the "premises" are not in actual operation.

    **"P-4"  Service Contract** with a privately owned fire department providing fire protection service to the "premises".

    **"P-5"  Automatic Commercial Cooking Exhaust and Extinguishing System** installed on cooking appliances and having the following components:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

a.  Hood;

b.  Grease removal device;

c.  Duct system; and

d.  Wet chemical fire extinguishing equipment.

"P-9"  The protective system described in the **SCHEDULE** of this endorsement.

**B.**  The following is added to the **EXCLUSIONS** section of any Coverage Form within the Commercial Property, Farm or Commercial Inland Marine Coverage Part:

**Failure to Maintain Protective Safeguards**

We will not pay for "loss" caused by or resulting from fire, if prior to the fire, you:

**1)**  Knew of any suspension or impairment in any protective safeguard listed in the **SCHEDULE** of this endorsement and failed to notify us of that fact; or

**2)**  Failed to maintain in complete working order any protective safeguard listed in the **SCHEDULE** of this endorsement over which you had control.

If part of an Automatic Sprinkler System is shut off due to breakage, leakage, freezing conditions or opening of sprinkler heads, notification to us will not be necessary if you can restore full protection within 48 hours.

Date _____        Signature of Insured _____

HOASTER GEBHARD & CO. 37-039
LEBANON, PA

IA 460 01 16

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Page 2 of 2

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PROTECTIVE SAFEGUARDS

Policy Number   EPP 026 35 19

This endorsement modifies insurance provided under the following:

**COMMERCIAL INLAND MARINE COVERAGE PART**
**COMMERCIAL PROPERTY COVERAGE PART**
**FARM COVERAGE PART**

### SCHEDULE

| Loc. Number | Bldg. Number | Protective Safeguards Symbols Applicable | |
|---|---|---|---|
| 3 | 1 | P-1 | |

Describe any "P-9":

**A.** The following is added to the:

**Commercial Property Conditions**
**Farm Property Coverage Form, General Conditions**
**Commercial Inland Marine Conditions**

**PROTECTIVE SAFEGUARDS**

1.  As a condition of this insurance, you are required to maintain the protective devices or services listed in the **SCHEDULE** of this endorsement.

2.  The protective safeguards to which this endorsement applies are identified by the following symbols:

    **"P-1"   Automatic Sprinkler System,** including related supervisory services.

    Automatic Sprinkler System means:

    a.  Any automatic fire protective or extinguishing system, including connected:

        **(1)** Sprinklers and discharge nozzles;

        **(2)** Ducts, pipes, valves and fittings;

        **(3)** Tanks, their component parts and supports; and

        **(4)** Pumps and private fire protection mains.

    b.  When supplied from an automatic fire protective system:

        **(1)** Non-automatic fire protective systems; and

        **(2)** Hydrants, standpipes and outlets.

    **"P-2"   Automatic Fire Alarm,** protecting the entire building, that is:

    a.  Connected to a central station; or

    b.  Reporting to a public or private fire alarm station.

    **"P-3"   Security Service,** with a recording system or watch clock, making hourly rounds covering the entire building, when the "premises" are not in actual operation.

    **"P-4"   Service Contract** with a privately owned fire department providing fire protection service to the "premises".

    **"P-5"   Automatic Commercial Cooking Exhaust and Extinguishing System** installed on cooking appliances and having the following components:

IA 460 01 16

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

a. Hood;

b. Grease removal device;

c. Duct system; and

d. Wet chemical fire extinguishing equipment.

**"P-9"** The protective system described in the **SCHEDULE** of this endorsement.

**B.** The following is added to the **EXCLUSIONS** section of any Coverage Form within the Commercial Property, Farm or Commercial Inland Marine Coverage Part:

**Failure to Maintain Protective Safeguards**

We will not pay for "loss" caused by or resulting from fire, if prior to the fire, you:

**1)** Knew of any suspension or impairment in any protective safeguard listed in the **SCHEDULE** of this endorsement and failed to notify us of that fact; or

**2)** Failed to maintain in complete working order any protective safeguard listed in the **SCHEDULE** of this endorsement over which you had control.

If part of an Automatic Sprinkler System is shut off due to breakage, leakage, freezing conditions or opening of sprinkler heads, notification to us will not be necessary if you can restore full protection within 48 hours.

Date _____

Signature of Insured _____

HOASTER GEBHARD & CO. 37-039
LEBANON, PA

IA 460 01 16      Includes copyrighted material of Insurance Services Office, Inc., with its permission.      Page 2 of 2

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EFFECTIVE TIME CHANGES--REPLACEMENT OF 12 NOON

This endorsement modifies the COMMON POLICY DECLARATIONS.

To the extent that coverage in this policy replaces coverage in other policies terminating noon standard time on the inception date of this policy, coverage under this policy shall not become effective until such other coverage has terminated.

Copyright, Insurance Services Office, Inc., 1987
Copyright, ISO Commercial Risk Services, Inc., 1987

**IL 00 22 05 87**

IL 01 94 07 02

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SOUTH CAROLINA CHANGES -
# LEGAL ACTION AGAINST US

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
FARM COVERAGE PART - FARM LIVESTOCK COVERAGE FORM
FARM COVERAGE PART - FARM MOBILE AGRICULTURAL MACHINERY AND EQUIPMENT
COVERAGE FORM
FARM COVERAGE PART - FARM PROPERTY - OTHER FARM PROVISIONS FORM - ADDITIONAL
COVERAGES, CONDITIONS, DEFINITIONS
STANDARD PROPERTY POLICY

**A.** The **Legal Action Against Us** Condition, in the Commercial Property Conditions, the Standard Property Policy, the Capital Assets Program Coverage Form (Output Policy), and in the Farm Forms listed above, is replaced by the following:

**LEGAL ACTION AGAINST US**

No one may bring a legal action against us under this Coverage Part, Coverage Form or Policy to which this Condition applies unless:

**1.** There has been full compliance with all of the terms of this Coverage Part, Coverage Form or Policy; and

**2.** The action is brought within 3 years after the date on which the direct physical loss ("loss") or damage occurred.

**B.** Under the Commercial Property Coverage Part, Paragraph **a.** of the **Legal Action Against Us** Condition in the Mortgageholders Errors And Omissions Coverage Form is replaced by the following:

**a.** No one may bring a legal action against us under Coverages **A** and **B** unless:

**(1)** There has been full compliance with all of the terms of Coverages **A** and **B**; and

**(2)** The action is brought within 3 years after you discover the error or accidental omission.

IL 01 94 07 02 © ISO Properties, Inc., 2001 Page 1 of 1 ☐

# PENNSYLVANIA NOTICE

An Insurance Company, its agents, employees, or service contractors acting on its behalf, may provide services to reduce the likelihood of injury, death or loss. These services may include any of the following or related services incident to the application for, issuance, renewal or continuation of, a policy of insurance:

1. Surveys;

2. Consultation or advice; or

3. Inspections.

The "Insurance Consultation Services Exemption Act" of Pennsylvania provides that the Insurance Company, its agents, employees or service contractors acting on its behalf, is not liable for damages from injury, death or loss occurring as a result of any act or omission by any person in the furnishing of or the failure to furnish these services.

The Act does not apply:

1. If the injury, death or loss occurred during the actual performance of the services and was caused by the negligence of the Insurance Company, its agents, employees or service contractors;

2. To consultation services required to be performed under a written service contract not related to a policy of insurance; or

3. If any acts or omissions of the Insurance Company, its agents, employees or service contractors are judicially determined to constitute a crime, actual malice, or gross negligence.

| **Instruction to Policy Writers** |
|---|
| Attach the Pennsylvania Notice to all new and renewal certificates insuring risks located in Pennsylvania. |

**IL 09 10 07 02**  © ISO Properties, Inc., 2001

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CANCELLATION OR NONRENEWAL BY US
# NOTIFICATION TO A DESIGNATED ENTITY - PENNSYLVANIA

This endorsement modifies insurance provided under the following:

**BUSINESSOWNERS PACKAGE POLICY
CLAIMS-MADE EXCESS LIABILITY COVERAGE PART
COMMERCIAL AUTO COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL UMBRELLA LIABILITY COVERAGE PART
DENTIST'S PACKAGE POLICY
ELECTRONIC DATA LIABILITY COVERAGE PART
EXCESS LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART
PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART - CLAIMS-MADE
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY**

## SCHEDULE

Name and mailing address of person(s) or organization(s):
AMERICAN BILTRIDE, INC.
105 WHITTENDALE DR
MOORESTOWN, NJ 08057-1364

Number of days notice (other than nonpayment of premium): __60__

A. If we cancel or nonrenew this policy for any statutorily permitted reason other than nonpayment of premium we will mail notice to the person or organization shown in the Schedule. We will mail such notice at least the number of days shown in the Schedule before the effective date of cancellation or nonrenewal.

B. If we cancel this policy for nonpayment of premium, we will mail notice to the person or organization shown in the Schedule. We will mail such notice at least 15 days before the effective date of cancellation.

C. If notice is mailed, proof of mailing to the mailing address shown in the Schedule will be sufficient proof of notice.

D. In no event will coverage extend beyond the actual expiration, termination or cancellation of the policy.

IA 4087 PA 07 18

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CANCELLATION OR NONRENEWAL BY US
# NOTIFICATION TO A DESIGNATED ENTITY - PENNSYLVANIA

This endorsement modifies insurance provided under the following:

**BUSINESSOWNERS PACKAGE POLICY**
**CLAIMS-MADE EXCESS LIABILITY COVERAGE PART**
**COMMERCIAL AUTO COVERAGE PART**
**COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**COMMERCIAL UMBRELLA LIABILITY COVERAGE PART**
**DENTIST'S PACKAGE POLICY**
**ELECTRONIC DATA LIABILITY COVERAGE PART**
**EXCESS LIABILITY COVERAGE PART**
**LIQUOR LIABILITY COVERAGE PART**
**OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART**
**POLLUTION LIABILITY COVERAGE PART**
**PRODUCTS/COMPLETED OPERATIONS COVERAGE PART**
**PRODUCT WITHDRAWAL COVERAGE PART**
**PROFESSIONAL LIABILITY COVERAGE PART**
**PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART**
**PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART - CLAIMS-MADE**
**RAILROAD PROTECTIVE LIABILITY COVERAGE PART**
**UNDERGROUND STORAGE TANK POLICY**

## SCHEDULE

Name and mailing address of person(s) or organization(s):
UNISOURCE WORLDWIDE,INC.
6600 GOVERNORS LAKE PKWY
PEACHTREE CORNERS, GA 30071-1114

Number of days notice (other than nonpayment of premium): __30__

A. If we cancel or nonrenew this policy for any statutorily permitted reason other than nonpayment of premium we will mail notice to the person or organization shown in the Schedule. We will mail such notice at least the number of days shown in the Schedule before the effective date of cancellation or nonrenewal.

B. If we cancel this policy for nonpayment of premium, we will mail notice to the person or organization shown in the Schedule. We will mail such notice at least 15 days before the effective date of cancellation.

C. If notice is mailed, proof of mailing to the mailing address shown in the Schedule will be sufficient proof of notice.

D. In no event will coverage extend beyond the actual expiration, termination or cancellation of the policy.

IA 4087 PA 07 18

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CANCELLATION OR NONRENEWAL BY US
# NOTIFICATION TO A DESIGNATED ENTITY - PENNSYLVANIA

This endorsement modifies insurance provided under the following:

**BUSINESSOWNERS PACKAGE POLICY**
**CLAIMS-MADE EXCESS LIABILITY COVERAGE PART**
**COMMERCIAL AUTO COVERAGE PART**
**COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**COMMERCIAL UMBRELLA LIABILITY COVERAGE PART**
**DENTIST'S PACKAGE POLICY**
**ELECTRONIC DATA LIABILITY COVERAGE PART**
**EXCESS LIABILITY COVERAGE PART**
**LIQUOR LIABILITY COVERAGE PART**
**OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART**
**POLLUTION LIABILITY COVERAGE PART**
**PRODUCTS/COMPLETED OPERATIONS COVERAGE PART**
**PRODUCT WITHDRAWAL COVERAGE PART**
**PROFESSIONAL LIABILITY COVERAGE PART**
**PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART**
**PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART - CLAIMS-MADE**
**RAILROAD PROTECTIVE LIABILITY COVERAGE PART**
**UNDERGROUND STORAGE TANK POLICY**

## SCHEDULE

Name and mailing address of person(s) or organization(s):
SHORR PACKAGING CORP
PO BOX 6800
AURORA, IL 60598-0800

Number of days notice (other than nonpayment of premium):  60

A. If we cancel or nonrenew this policy for any statutorily permitted reason other than nonpayment of premium we will mail notice to the person or organization shown in the Schedule. We will mail such notice at least the number of days shown in the Schedule before the effective date of cancellation or nonrenewal.

B. If we cancel this policy for nonpayment of premium, we will mail notice to the person or organization shown in the Schedule. We will mail such notice at least 15 days before the effective date of cancellation.

C. If notice is mailed, proof of mailing to the mailing address shown in the Schedule will be sufficient proof of notice.

D. In no event will coverage extend beyond the actual expiration, termination or cancellation of the policy.

IA 4087 PA 07 18

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CANCELLATION OR NONRENEWAL BY US
# NOTIFICATION TO A DESIGNATED ENTITY - PENNSYLVANIA

This endorsement modifies insurance provided under the following:

**BUSINESSOWNERS PACKAGE POLICY**
**CLAIMS-MADE EXCESS LIABILITY COVERAGE PART**
**COMMERCIAL AUTO COVERAGE PART**
**COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**COMMERCIAL UMBRELLA LIABILITY COVERAGE PART**
**DENTIST'S PACKAGE POLICY**
**ELECTRONIC DATA LIABILITY COVERAGE PART**
**EXCESS LIABILITY COVERAGE PART**
**LIQUOR LIABILITY COVERAGE PART**
**OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART**
**POLLUTION LIABILITY COVERAGE PART**
**PRODUCTS/COMPLETED OPERATIONS COVERAGE PART**
**PRODUCT WITHDRAWAL COVERAGE PART**
**PROFESSIONAL LIABILITY COVERAGE PART**
**PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART**
**PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART - CLAIMS-MADE**
**RAILROAD PROTECTIVE LIABILITY COVERAGE PART**
**UNDERGROUND STORAGE TANK POLICY**

### SCHEDULE

Name and mailing address of person(s) or organization(s):
INTERLINE BRANDS INC
5727 S LEWIS AVE STE 705
TULSA, OK 74105-7148

Number of days notice (other than nonpayment of premium): __60____

**A.** If we cancel or nonrenew this policy for any statutorily permitted reason other than nonpayment of premium we will mail notice to the person or organization shown in the Schedule. We will mail such notice at least the number of days shown in the Schedule before the effective date of cancellation or nonrenewal.

**B.** If we cancel this policy for nonpayment of premium, we will mail notice to the person or organization shown in the Schedule. We will mail such notice at least 15 days before the effective date of cancellation.

**C.** If notice is mailed, proof of mailing to the mailing address shown in the Schedule will be sufficient proof of notice.

**D.** In no event will coverage extend beyond the actual expiration, termination or cancellation of the policy.

**IA 4087 PA 07 18**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CANCELLATION OR NONRENEWAL BY US
# NOTIFICATION TO A DESIGNATED ENTITY - PENNSYLVANIA

This endorsement modifies insurance provided under the following:

**BUSINESSOWNERS PACKAGE POLICY**
**CLAIMS-MADE EXCESS LIABILITY COVERAGE PART**
**COMMERCIAL AUTO COVERAGE PART**
**COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**COMMERCIAL UMBRELLA LIABILITY COVERAGE PART**
**DENTIST'S PACKAGE POLICY**
**ELECTRONIC DATA LIABILITY COVERAGE PART**
**EXCESS LIABILITY COVERAGE PART**
**LIQUOR LIABILITY COVERAGE PART**
**OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART**
**POLLUTION LIABILITY COVERAGE PART**
**PRODUCTS/COMPLETED OPERATIONS COVERAGE PART**
**PRODUCT WITHDRAWAL COVERAGE PART**
**PROFESSIONAL LIABILITY COVERAGE PART**
**PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART**
**PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART - CLAIMS-MADE**
**RAILROAD PROTECTIVE LIABILITY COVERAGE PART**
**UNDERGROUND STORAGE TANK POLICY**

## SCHEDULE

Name and mailing address of person(s) or organization(s):
UNISOURCE CANADA, INC.
1 WEST PEARCE STREET
STE 600
RICHMOND HILL, ON L4B 3K3
CANADA

Number of days notice (other than nonpayment of premium): __30____

**A.** If we cancel or nonrenew this policy for any statutorily permitted reason other than nonpayment of premium we will mail notice to the person or organization shown in the Schedule. We will mail such notice at least the number of days shown in the Schedule before the effective date of cancellation or nonrenewal.

**B.** If we cancel this policy for nonpayment of premium, we will mail notice to the person or organization shown in the Schedule. We will mail such notice at least 15 days before the effective date of cancellation.

**C.** If notice is mailed, proof of mailing to the mailing address shown in the Schedule will be sufficient proof of notice.

**D.** In no event will coverage extend beyond the actual expiration, termination or cancellation of the policy.

IA 4087 PA 07 18

# THE CINCINNATI INSURANCE COMPANY

### A Stock Insurance Company

# COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS

Attached to and forming part of POLICY NUMBER:   EPP 026 35 19

Named Insured is the same as it appears on the Common Policy Declarations unless otherwise stated here.

**Loc.** **(address)**
PER STATEMENT OF VALUES ON FILE
REFER TO IA904

**COVERAGE PROVIDED**

**OPTIONAL COVERAGES**
**Applicable only when an entry is made**

| Item | Coverage | Limits | Coin-surance | Covered Cause Of Loss | Inflation Guard (%) | Replace-ment Cost (x) | Replace-ment Cost Ind. Stock (x) | Agreed Value (x) | Monthly Limit (fraction) | Maximum Period (X) | Extended Period (Days) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | BLANKET BUILDING | 21,795,114 | 100% | SPECIAL | | X | | X | | | |
| | BLANKET BUSINESS PERSONAL PROPERTY | 7,917,054 | 100% | SPECIAL | | | X | X | | | |
| | BLANKET BUSINESS INCOME W/EXTRA EXPENSE (b) | 7,055,500 | 100% | SPECIAL | | | | X | | | |
| 1 | EQUIPMENT BREAKDOWN | | | | | | | | | | |
| 2 | EQUIPMENT BREAKDOWN | | | | | | | | | | |
| 3 | EQUIPMENT BREAKDOWN | | | | | | | | | | |
| 4 | EQUIPMENT BREAKDOWN | | | | | | | | | | |

DEDUCTIBLE: $500.00 unless otherwise stated $   25,000

**MORTGAGE HOLDER**

| Item | Name and Address |
|---|---|
| 1-1 | M&T BANK ISAOA<br>PO BOX 1358<br>BUFFALO, NY 14240-1358 |
| 3-1 | PNC BANK<br>4242 CARLISLE PIKE<br>CAMP HILL, PA 17011-4163 |
| 3-1 | M & T BANK ISAOA<br>PO BOX 1358<br>BUFFALO, NY 14240-1358 |

FORMS AND / OR ENDORSEMENTS APPLICABLE TO THIS COVERAGE PART:

| | | |
|---|---|---|
| CP1515 | 06/95 | BUSINESS INCOME REPORT/WORK SHEET |
| FM101 | 05/16 | BUILDING AND PERSONAL PROPERTY COVERAGE FORM (INCLUDING SPECIAL CAUSES OF LOSS) |
| CP0110 | 07/88 | SOUTH CAROLINA CHANGES--VALUATION |
| FA4013PA | 11/02 | PENNSYLVANIA CHANGES - ACTUAL CASH VALUE |

FM 502 07 08                    EPP 026 35 19

FORMS AND / OR ENDORSEMENTS APPLICABLE TO THIS COVERAGE PART:

| | | |
|---|---|---|
| FA4028PA | 11/05 | PENNSYLVANIA CHANGES |
| FA4098 | 01/09 | CINCIPLUS® COMMERCIAL PROPERTY POWER XC+® (EXPANDED COVERAGE PLUS) ENDORSEMENT SUMMARY OF COVERAGE LIMITS |
| FA450 | 05/16 | COMMERCIAL PROPERTY CONDITIONS |
| FA465 | 04/04 | ORDINARY PAYROLL LIMITATION OR EXCLUSION |
| FA480 | 02/16 | LOSS PAYABLE PROVISIONS |
| FA258 | 05/16 | CINCIPLUS® COMMERCIAL PROPERTY POWER XC+® (EXPANDED COVERAGE PLUS) ENDORSEMENT |
| FA260 | 05/16 | MANUFACTURERS' ADDITIONAL COVERAGE |
| FA261 | 05/16 | MANUFACTURERS' OPTIONAL COVERAGE |
| FA245 | 04/20 | EQUIPMENT BREAKDOWN COVERAGE |
| FA213 | 05/16 | BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM |

# BUILDING AND PERSONAL PROPERTY COVERAGE FORM
# (INCLUDING SPECIAL CAUSES OF LOSS)

## TABLE OF CONTENTS

|  |  | Begins on Page |
|---|---|---|
| **SECTION A. COVERAGE** | | 3 |
| 1. Covered Property | | 3 |
| | a. Building | 3 |
| | b. Outdoor Signs | 3 |
| | c. Outdoor Fences | 3 |
| | d. Business Personal Property | 3 |
| 2. Property Not Covered | | 4 |
| | a. Accounts, Deeds, Money or Securities | 4 |
| | b. Animals | 4 |
| | c. Automobiles | 4 |
| | d. Contraband | 4 |
| | e. Electronic Data | 4 |
| | f. Excavations, Grading & Backfilling | 4 |
| | g. Foundations | 4 |
| | h. Land, Water or Growing Crops | 4 |
| | i. Paved Surfaces | 4 |
| | j. Property While Airborne or Waterborne | 4 |
| | k. Pilings or Piers | 4 |
| | l. Property More Specifically Insured | 4 |
| | m. Retaining Walls | 4 |
| | n. Underground Pipes, Flues or Drains | 4 |
| | o. Valuable Papers & Records and Cost to Research | 5 |
| | p. Vehicles or Self-Propelled Machines | 5 |
| | q. Property While Outside of Buildings | 5 |
| 3. Covered Causes of Loss | | 5 |
| | a. Covered Causes of Loss | 5 |
| | b. Exclusions | 5 |
| | c. Limitations | 11 |
| 4. Additional Coverages | | 13 |
| | a. Change in Temperature or Humidity | 13 |
| | b. Debris Removal | 13 |
| | c. Fire Department Service Charge | 14 |
| | d. Fire Protection Equipment Recharge | 14 |
| | e. Inventory or Appraisal | 14 |
| | f. Key and Lock Expense | 15 |
| | g. Ordinance or Law | 15 |
| | h. Pollutant Clean Up and Removal | 16 |
| | i. Preservation of Property | 16 |
| | j. Rewards | 16 |

FM 101 05 16

Includes copyrighted material of Insurance
Services Office, Inc., with its permission.

## TABLE OF CONTENTS (CONT'D)

**Begins on Page**

 5. Coverage Extensions ....................................................................................16
   a. Accounts Receivable................................................................................17
   b. Business Income and Extra Expense.........................................................18
   c. Collapse....................................................................................................21
   d. Electronic Data.........................................................................................22
   e. Exhibitions, Fairs or Trade Shows............................................................23
   f. Fences .....................................................................................................23
   g. Fungi, Wet Rot, Dry Rot, and Bacteria - Limited Coverage.......................23
   h. Glass........................................................................................................24
   i. Newly Purchased, Leased or Constructed Property...................................25
   j. Nonowned Building Damage.....................................................................26
   k. Outdoor Property......................................................................................26
   l. Personal Effects.......................................................................................26
   m. Property Off Premises..............................................................................27
   n. Signs........................................................................................................27
   o. Trailers (Nonowned Detached)................................................................27
   p. Transportation .........................................................................................27
   q. Utility Services.........................................................................................27
   r. Valuable Papers and Records ..................................................................28
   s. Water Damage, Other Liquids, Powder or Molten Material Damage ..........29
SECTION B. LIMITS OF INSURANCE..............................................................................29
SECTION C. DEDUCTIBLE................................................................................................29
 1. Deductible Examples....................................................................................30
 2. Glass Deductible .........................................................................................30
SECTION D. LOSS CONDITIONS .....................................................................................30
 1. Abandonment...............................................................................................30
 2. Appraisal......................................................................................................30
 3. Duties in the Event of Loss or Damage ........................................................30
 4. Loss Payment...............................................................................................31
 5. Recovered Property......................................................................................34
 6. Vacancy.......................................................................................................34
   a. Description of Terms.................................................................................34
   b. Vacancy Provisions..................................................................................34
 7. Valuation .....................................................................................................34
SECTION E. ADDITIONAL CONDITIONS ..........................................................................35
 1. Coinsurance .................................................................................................35
 2. Mortgage Holders ........................................................................................36
SECTION F. OPTIONAL COVERAGES...............................................................................36
 1. Agreed Value................................................................................................37
 2. Inflation Guard .............................................................................................37
 3. Replacement Cost.........................................................................................37
SECTION G. DEFINITIONS ...............................................................................................38

# BUILDING AND PERSONAL PROPERTY COVERAGE FORM
## (INCLUDING SPECIAL CAUSES OF LOSS)

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to **SECTION G. DEFINITIONS.**

## SECTION A. COVERAGE

We will pay for direct "loss" to Covered Property at the "premises" caused by or resulting from any Covered Cause of Loss.

### 1. Covered Property

Covered Property, as used in this Coverage Part, means the following types of property for which a Limit of Insurance is shown in the Declarations:

#### a. Building

Building, means the building or structure described in the Declarations, including:

**(1)** Completed additions;

**(2)** Fixtures, including outdoor fixtures;

**(3)** Permanently installed:

    **(a)** Machinery and equipment;

    **(b)** Building glass, including any lettering and ornamentation;

    **(c)** Signs attached to a building or structure that is Covered Property;

    **(d)** Awnings and canopies;

**(4)** Personal property owned by you that is used to maintain or service a covered building or its "premises", including:

    **(a)** Fire extinguishing equipment;

    **(b)** Outdoor furniture;

    **(c)** Floor coverings; and

    **(d)** Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering;

**(5)** If not covered by other insurance:

    **(a)** Additions under construction, alterations and repairs to a covered building;

    **(b)** Materials, equipment, supplies and temporary structures, on or within 1,000 feet of the "premises", used for making additions, alterations or repairs to a covered building.

#### b. Outdoor Signs

Your outdoor signs permanently installed and not attached to a covered building, and located within 1,000 feet of the "premises".

#### c. Outdoor Fences

Your outdoor fences.

#### d. Business Personal Property

Your Business Personal Property consists of the following property located in or on the building or structure described in the Declarations or in the open (or in a vehicle or portable storage unit) within 1,000 feet of the building or 1,000 feet of the "premises", whichever distance is greater. Your Business Personal Property consists of the following unless otherwise specified in the Declarations or on the **BUSINESS PERSONAL PROPERTY - SEPARATION OF COVERAGE ENDORSEMENT.**

**(1)** Furniture;

**(2)** Machinery and equipment;

**(3)** "Stock";

**(4)** All other personal property owned by you and used in your business;

**(5)** The cost of labor, materials or services furnished or arranged by you on personal property of others;

**(6)** Your use interest as tenant in improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:

    **(a)** Made a part of the building or structure you occupy but do not own; and

    **(b)** You acquired or made at your expense but cannot legally remove;

(7) Leased personal property used in your business for which you have a contractual responsibility to insure. Such leased property is not considered personal property of others in your care, custody or control;

(8) Personal Property of Others that is in your care, custody or control or for which you are legally liable.

   (a) This does not include personal effects owned by you, your officers, your partners, or if you are a limited liability company, your members or your managers, or your employees (including leased and temporary workers), except as provided in **5. Coverage Extensions, l. Personal Effects**;

   (b) This does not include property of others for which you are legally liable as:

      1) A carrier for hire; or

      2) An arranger of transportation, including car loaders, consolidators, brokers, freight forwarders, or shipping associations; and

(9) Sales samples.

2. **Property Not Covered**

   Covered Property does not include:

   a. **Accounts, Deeds, Money or Securities**

   Except as provided in **SECTION A. COVERAGE, 5. Coverage Extensions, a. Accounts Receivable,** Accounts, bills, currency, deeds, food stamps or other evidences of debt, "money", notes or "securities";

   b. **Animals**

   Animals, unless

   (1) Owned by others and boarded by you; or

   (2) Owned by you and covered as "stock" while inside of buildings;

   and then only as provided in **3. Covered Causes of Loss, c. Limitations.**

   c. **Automobiles**

   Automobiles held for sale;

   d. **Contraband**

   Contraband, or property in the course of illegal transportation or trade;

   e. **Electronic Data**

   Except as provided in **SECTION A. COVERAGE, 5. Coverage Extensions, d. Electronic Data,** "Electronic data". This Paragraph **e.** does not apply to your "stock" of prepackaged software or to "electronic data" which is integrated in and operates or controls the building's elevator, lighting, heating, ventilation, air conditioning or security system.

   f. **Excavations, Grading & Backfilling**

   The cost of excavations, grading, backfilling or filling;

   g. **Foundations**

   Foundations of buildings, structures, machinery or boilers, if their foundations are below:

   (1) The lowest basement floor; or

   (2) The surface of the ground, if there is no basement.

   h. **Land, Water or Growing Crops**

   Land (including land on which the property is located), water, growing crops or lawns (other than lawns which are part of a vegetative roof);

   i. **Paved Surfaces**

   Bridges, roadways, walks, patios or other paved surfaces;

   j. **Property While Airborne or Waterborne**

   Personal property while airborne or waterborne;

   k. **Pilings or Piers**

   Pilings, piers, bulkheads, wharves or docks;

   l. **Property More Specifically Insured**

   Property that is covered under another coverage form of this or any other policy in which it is more specifically described, except as provided in **G. Other Insurance** of the **COMMERCIAL PROPERTY CONDITIONS**;

   m. **Retaining Walls**

   Retaining walls that are not part of any building described in the Declarations;

   n. **Underground Pipes, Flues or Drains**

   Underground pipes, flues or drains;

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

o. **Valuable Papers & Records and Cost to Research**

Except as provided in **SECTION A. COVERAGE, 5. Coverage Extensions, r. Valuable Papers and Records,** the cost to research, replace or restore the information on "valuable papers and records", including those which exist as "electronic data".

This does not apply to "valuable papers and records" held for sale by you.

p. **Vehicles or Self-Propelled Machines**

Vehicles or self-propelled machines (including aircraft or watercraft) that:

**(1)** Are licensed for use on public roads; or

**(2)** Are operated principally away from the "premises".

This paragraph does not apply to:

**(1)** Vehicles or self-propelled machines or autos you manufacture, process or warehouse;

**(2)** Vehicles or self-propelled machines, other than autos, you hold for sale;

**(3)** Rowboats or canoes out of water and located at the "premises"; or

**(4)** Trailers, but only as provided in **SECTION A. COVERAGE, 5. Coverage Extensions, o. Trailers (Nonowned Detached).**

q. **Property While Outside of Buildings**

The following property while outside of buildings (except as provided in **SECTION A. COVERAGE, 5. Coverage Extensions**):

**(1)** Grain, hay, straw or other crops;

**(2)** Signs, except:

  **(a)** Signs attached to a covered building or structure;

  **(b)** Signs for which a Limit of Insurance is shown in the Declarations.

**(3)** Outdoor fences, except outdoor fences for which a Limit of Insurance is shown in the Declarations;

**(4)** Radio antennas, television antennas or satellite dishes; including their lead-in wiring, masts, and towers; and

**(5)** Trees, shrubs or plants (other than trees, shrubs or plants that are "stock" or part of a vegetative roof).

3. **Covered Causes of Loss**

a. **Covered Causes of Loss**

Covered Causes of Loss means direct "loss" unless the "loss" is excluded or limited in this Coverage Part.

b. **Exclusions**

**(1)** We will not pay for "loss" caused directly or indirectly by any of the following, unless otherwise provided. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss".

  **(a) Ordinance or Law**

  Except as provided in **SECTION A. COVERAGE, 4. Additional Coverages, g. Ordinance or Law,** the enforcement of or compliance with any ordinance or law:

  **1)** Regulating the construction, use or repair of any building or structure; or

  **2)** Requiring the tearing down of any building or structure, including the cost of removing its debris.

  This exclusion applies whether "loss" results from:

  **1)** An ordinance or law that is enforced even if the building or structure has not been damaged; or

  **2)** The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of any building or structure, or removal of its debris, following a direct "loss" to that building or structure.

  **(b) Earth Movement**

  **1)** Earthquake, including tremors and aftershocks and any earth sinking, rising or shifting related to such event;

  **2)** Landslide, including any earth sinking, rising or shifting related to such event;

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

3) Mine subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased;

4) Earth sinking (other than "sinkhole collapse"), rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface.

But if Earth Movement, as described in **(b)1)** through **4)** above, results in fire or explosion, we will pay for the "loss" caused by that fire or explosion.

5) Volcanic eruption, explosion or effusion. But if volcanic eruption, explosion or effusion results in fire, building glass breakage or volcanic action, we will pay for the "loss" caused by that fire, building glass breakage or volcanic action.

Volcanic action means direct "loss" resulting from the eruption of a volcano when the "loss" is caused by:

a) Airborne volcanic blast or airborne shock waves;

b) Ash, dust or particulate matter; or

c) Lava flow.

With respect to coverage for Volcanic Action, all volcanic eruptions that occur within any 168-hour period will constitute a single occurrence.

Volcanic action does not include the cost to remove ash, dust or particulate matter that does not cause direct "loss" to the described property.

This Earth Movement exclusion applies regardless of whether any of the above, in paragraphs **1)** through **5)**, is caused by an act of nature or is otherwise caused.

**(c) Governmental Action**

Seizure or destruction of property by order of governmental authority. However, we will pay for "loss" caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this Coverage Part.

**(d) Nuclear Hazard**

Nuclear reaction or radiation, or radioactive contamination, however caused.

**(e) Utility Services**

1) Except as provided in **SECTION A. COVERAGE 5. Coverage Extensions. q. Utility Services**, the failure of power, communication, water or other utility services supplied to the "premises", however caused, if the failure:

a) Originates away from the "premises"; or

b) Originates at the "premises", but only if such failure involves equipment used to supply the utility service to the "premises" from a source away from the "premises".

Failure of any utility service includes lack of sufficient capacity and reduction in supply. "Loss" caused by a surge of power is also excluded if the surge would not have occurred but for an event causing the failure of power.

However, if the failure or surge of power, or the failure of communication, water, wastewater removal or other utility service results in a Covered Cause of Loss, we will pay for that portion of "loss" caused by that Covered Cause of Loss.

Communication services include but are not limited to

service relating to Internet access or access to any electronic, cellular or satellite network.

**(f)** **War and Military Action**

**1)** War, including undeclared or civil war;

**2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**(g)** **Water**

**1)** Flood, meaning the partial or complete inundation of normally dry land areas due to:

**a)** The unusual or rapid accumulation or runoff of rain or surface waters from any source; or

**b)** Waves, tidal waters, tidal waves (including tsunami); or

**c)** Water from rivers, ponds, lakes, streams, or any other body of water that rises above, overflows from, or is not contained within its natural or man-made boundary;

and all whether driven by wind or not, including storm surge.

**2)** Mudslides or mudflows, which are caused by flooding as defined above in Paragraph **(g)1)** above. Mudslide or mudflow involves a river of liquid and flowing mud on the surface of normally dry land areas as when earth is carried by a current of water and deposited along the path of the current;

**3)** Water that has entered and then backs up through and is discharged from a sewer, drain, septic system, sump pump system or related equipment; or

**4)** Water under the ground surface pressing on, or flowing or seeping through:

**a)** Foundations, walls, floors or paved surfaces;

**b)** Basements, whether paved or not; or

**c)** Doors, windows or other openings.

**5)** Waterborne material carried or otherwise moved by any of the water referred to in Paragraphs **(g)1), 3)** or **4)**, or material carried or otherwise moved by mudslide or mudflow as described in Paragraph **(g)2)**.

This exclusion applies regardless of whether any of the above in Paragraphs **(g)1)** through **(g)5)** is caused by an act of nature or is otherwise caused. An example of a situation to which this exclusion applies is the situation where a dam, levee, seawall or other boundary or containment system fails in whole or in part, for any reason, to contain the water.

However, if any of the above, as described in Paragraphs **(g)1)** through **(g)5)**, results in fire, explosion or sprinkler leakage, we will pay for that portion of "loss" caused by that fire, explosion or sprinkler leakage (if sprinkler leakage is a Covered Cause of Loss).

**(h)** **"Fungi", Wet Rot, Dry Rot, and Bacteria**

**1)** Presence, growth, proliferation, spread or any activity of "fungi", wet or dry rot or bacteria. But if "fungi", wet or dry rot or bacteria results in a "specified cause of loss", we will pay for the "loss" caused by that "specified cause of loss".

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**2)** This exclusion does not apply:

  **a)** When "fungi", wet or dry rot or bacteria results from fire or lightning; or

  **b)** To the extent that coverage is provided in **SECTION A. COVERAGE, 5. Coverage Extensions, g. "Fungi", Wet Rot, Dry Rot and Bacteria - Limited Coverage** with respect to "loss" from a cause of loss other than fire or lightning.

Exclusions **b.(1)(a)** through **b.(1)(h)** apply whether or not the "loss" event results in widespread damage or affects a substantial area.

**(2)** We will not pay for "loss" caused by or resulting from any of the following:

  **(a) Electrical Current**

  Artificially generated electrical, magnetic or electromagnetic energy that damages, disturbs, disrupts or otherwise interferes with any:

  **1)** Electrical or electronic wire, device, appliance, system or network; or

  **2)** Device, appliance, system or network utilizing cellular or satellite technology.

  For the purpose of this exclusion, electrical, magnetic or electromagnetic energy includes but is not limited to:

  **1)** Electrical current, including arcing;

  **2)** Electrical charge produced or conducted by a magnetic or electromagnetic field;

  **3)** Pulse of electromagnetic energy; or

  **4)** Electromagnetic waves or microwaves.

  However, if fire results, we will pay for "loss" caused by that fire.

  **(b) Delay or Loss of Use**

  Delay, loss of use or loss of market.

**(c) Smoke, Vapor, Gas**

  Smoke, vapor or gas from agricultural smudging or industrial operations.

**(d) Miscellaneous Causes of Loss**

  **1)** Wear and tear;

  **2)** Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

  **3)** Smog;

  **4)** Settling, cracking, shrinking or expansion;

  **5)** Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents or other animals;

  **6)** Mechanical breakdown, including rupture or bursting caused by centrifugal force. However, if mechanical breakdown results in elevator collision, we will pay for that portion of "loss" caused by that elevator collision; or

  **7)** The following causes of loss to personal property:

    **a)** Marring or scratching;

    **b)** Except as provided in **SECTION A. COVERAGE, 4. Additional Coverages, a. Change in Temperature or Humidity** and **5. Coverage Extensions, q. Utility Services;**

      **i)** Dampness or dryness of atmosphere; and

      **ii)** Changes in or extremes of temperature.

  However, if an excluded cause of loss listed in **(2)(d)1)** through **7)** results in a "specified cause of "loss" or building glass breakage, we will pay for that portion of "loss" caused by that "specified cause of loss" or building glass breakage.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**(e) Explosion of Steam Apparatus**

Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control. However, if explosion of steam boilers, steam pipes, steam engines or steam turbines results in fire or combustion explosion, we will pay for that portion of "loss" caused by that fire or combustion explosion. We will also pay for "loss" caused by or resulting from the explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

**(f) Water Seepage**

Continuous or repeated seepage or leakage of water or the presence or condensation of humidity, moisture, or vapor that occurs over a period of 14 days or more.

**(g) Freezing of Plumbing**

Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protection systems) caused by or resulting from freezing, unless:

1) You did your best to maintain heat in the building or structure; or

2) You drained the equipment and shut off the supply if the heat was not maintained.

**(h) Dishonest or Criminal Acts**

Dishonest or criminal acts (including theft) by you, any of your partners, members (if a limited liability company), officers, managers, employees (including leased workers or temporary employees) directors, trustees, or authorized representatives; whether acting alone or in collusion with each other or with any other party; or theft by any person to whom you entrust the property for any purpose, whether acting alone or in collusion with any other party.

This exclusion applies whether or not an act occurs during the hours of operation.

This **Dishonest or Criminal Acts** exclusion does not apply to acts of destruction by your employees (including leased workers or temporary employees) or by authorized representatives; except theft by employees (including leased workers or temporary employees) is not covered.

**(i) Voluntary Parting Under False Pretense**

Voluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

**(j) Exposure to Weather**

Rain, snow, ice or sleet to personal property in the open.

**(k) Collapse**

Collapse, including any of the following conditions of property or any part of the property:

1) An abrupt falling down or caving in;

2) Loss of structural integrity, including separation of parts of the property or property in danger of falling down or caving in; or

3) Any cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion as such condition relates to Paragraph **(k)1)** or **2)** above.

But if collapse results in a Covered Cause of Loss at the "premises", we will pay for "loss" caused by that Covered Cause of Loss.

This exclusion **Collapse** does not apply:

1) To the extent that coverage is provided under the **SECTION A. COVERAGE, 5. Coverage Extensions, c. Collapse**; or

2) To collapse caused by one or more of the following:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

a) The "specified causes of loss";

b) Breakage of building glass;

c) Weight of rain that collects on a roof; or

d) Weight of people or personal property.

**(l) Pollutants**

Discharge, dispersal, seepage, migration, release, escape or emission of "pollutants" unless the discharge, dispersal, seepage, migration, release, escape or emission is itself caused by any of the "specified causes of loss". But if the discharge, dispersal, seepage, migration, release, escape or emission of "pollutants" results in a "specified cause of loss", we will pay for the "loss" caused by that "specified cause of loss".

This exclusion does not apply to "loss" to glass caused by chemicals applied to the glass.

**m) Loss or Damage to Product**

We will not pay for "loss" to Covered Property consisting of merchandise, goods or other product caused by or resulting from error or omission by any person or entity (including those having possession under an arrangement where work or a portion of the work is outsourced) in any stage of the development, production or use of the product, including planning, testing, processing, packaging, installation, maintenance or repair. This exclusion applies to any effect that compromises the form, substance or quality of the product. But if such error or omission results in a Covered Cause of Loss, we will pay for "loss" caused by that Covered Cause of Loss.

**(n) Neglect**

Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of "loss".

(3) We will not pay for "loss" caused by or resulting from any of the following in Paragraphs **(3)(a)** through **(3)(c)**. However, if an excluded cause of loss that is listed in Paragraphs **(3)(a)** through **(3)(c)** results in a Covered Cause of Loss, we will pay for that portion of "loss" caused by that Covered Cause of Loss:

**(a) Weather Conditions**

Weather conditions, but this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in **SECTION A. COVERAGE, 3. Covered Causes of Loss, b. Exclusions, (1)(a)** through **(1)(h)** to produce the "loss".

**(b) Acts or Decisions**

Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

**(c) Defects, Errors, and Omissions**

1) An act, error, or omission (negligent or not) relating to:

a) Land use;

b) Design, specifications, construction, workmanship;

c) Planning, zoning, development, surveying, siting, grading, compaction; or

d) Maintenance, installation, renovation, repair, or remodeling

of part or all of any property on or off the "premises";

2) A defect, weakness, inadequacy, fault, or unsoundness in materials used in construction or repair of part or all of any property on or off the "premises"; or

3) The cost to make good any error in design.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

FM 101 05 16

**(4) Special Exclusions**

The Special Exclusions apply only to **SECTION A. COVERAGE, 5. Coverage Extensions, b. Business Income and Extra Expense**; and if attached to this policy, the following coverage forms: **BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM, BUSINESS INCOME (WITHOUT EXTRA EXPENSE) COVERAGE FORM,** and **EXTRA EXPENSE COVERAGE FORM.**

We will not pay for:

**(a)** Any "loss" caused by or resulting from:

**1)** Damage or destruction of "finished stock"; or

**2)** The time required to reproduce "finished stock".

This Exclusion **(4)(a)** does not apply to Extra Expense.

**(b)** Any "loss" caused by or resulting from damage to radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers.

**(c)** Any increase of "loss" caused by or resulting from:

**1)** Delay in rebuilding, repairing or replacing the property or resuming "operations", due to interference at the location of the rebuilding, repair or replacement by strikers or other persons; or

**2)** Suspension, lapse or cancellation of any license, lease or contract. However, if the suspension, lapse or cancellation is directly caused by the "suspension" of "operations", we will cover such "loss" that affects your "Business Income" during the "period of restoration" and any extension of the "period of restoration" in accordance with the terms of the Extended Business Income Additional Coverage and the Extended Period of Indemnity Optional Coverage or any variation of these.

**(d)** Any Extra Expense caused by or resulting from suspension, lapse or cancellation of any license, lease or contract beyond the "period of restoration".

**(e)** Any other indirect "loss".

**c. Limitations**

The following limitations apply to all policy forms and endorsements shown on the **COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS**, unless otherwise stated:

**(1) Limitations - Various Types of Property**

We will not pay for "loss" to property as described and limited in this section. In addition, we will not pay for any "loss" that is a consequence of "loss" as described and limited in this section.

**(a) Steam Apparatus**

Steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment. But we will pay for "loss" to such equipment caused by or resulting from an explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

**(b) Hot Water Boilers**

Hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment, other than an explosion.

**(c) Building Interiors**

The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

**1)** The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

**2)** The "loss" is caused by or results from thawing of

FM 101 05 16

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Page 11 of 40

snow, sleet or ice on the building or structure.

**(d) Theft of Building Materials**

Building materials and supplies not attached as part of the building or structure, caused by or resulting from theft.

However, this limitation does not apply to:

**1)** Building materials and supplies held for sale by you; or

**2)** "Business Income" coverage or Extra Expense coverage.

**(e) Missing Property**

Property that is missing, where the only evidence of the "loss" is a shortage disclosed on taking inventory, or other instances where there is no physical evidence to show what happened to the property.

**(f) Transferred Property**

Property that has been transferred to a person or to a place outside the "premises" on the basis of unauthorized instructions.

**(g) Vegetative Roofs**

Lawns, trees, shrubs or plants which are part of a vegetated roof, caused by or resulting from:

**1)** Dampness or dryness of atmosphere or of soil supporting the vegetation;

**2)** Changes in or extremes of temperature;

**3)** Disease;

**4)** Frost or hail; or

**5)** Rain, snow, ice or sleet.

**(2) Limitations - Various Property for Specified Causes**

We will not pay for "loss" to the following types of property unless caused by the "specified causes of loss" or building glass breakage:

**(a)** Animals, and then only if they are killed or their destruction is deemed necessary.

**(b)** Contractors equipment, machinery and tools owned by you or entrusted to you, provided such property is Covered Property.

However, this limitation does not apply:

**1)** If the property is located on or within 1,000 feet of the "premises"; or

**2)** To Business Income coverage or to Extra Expense coverage.

**(3) Limitation - Personal Property Theft**

This Limitation does not apply to "Business Income" coverage or to Extra Expense coverage. For each category described in Paragraph **c.(3)(a)** through **(3)(d)** below, the most we will pay for "loss" in any one occurrence of theft to all property in that category, regardless of the types or number of articles for that category that are lost or damaged in that occurrence, are the following special limits:

**(a)** $2,500 for Furs, fur garments and garments trimmed with fur.

**(b)** $2,500 for Jewelry, watches, watch movements, jewels, pearls, precious and semi-precious stones, bullion, gold, silver, platinum and other precious alloys or metals. This limitation does not apply to jewelry and watches worth $100 or less per item.

**(c)** $2,500 for Patterns, dies, molds and forms.

**(d)** $250 for Stamps, tickets, including lottery tickets held for sale, and letters of credit.

These special limits are not additional Limits of Insurance.

**(4) Limitation - System or Appliance Defects**

**(a)** We will not pay the cost to repair any defect to a system or appliance from which water, other liquid, powder or molten material escapes; and

**(b)** We will not pay to replace the substance that escapes as described in Paragraph **c.(4)(a)** above.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

But we will pay the cost to repair or replace damaged parts of fire extinguishing equipment if the damage results in discharge of any substance from an automatic fire protection system, or is directly caused by freezing.

However, this Limitation **c.(4)(a)** does not apply to "Business Income" Coverage or to Extra Expense Coverage.

### 4. Additional Coverages

Unless stated otherwise, **SECTION C. DEDUCTIBLE** does not apply to Paragraph **4. Additional Coverages.**

Unless stated otherwise, these Paragraph **4. Additional Coverages** apply on a per location basis.

#### a. Change in Temperature or Humidity

We will pay for direct "loss" to your covered Business Personal Property caused by a change in temperature or humidity or contamination by refrigerant resulting from damage by a Covered Cause of Loss to equipment used for refrigerating, cooling, humidifying, dehumidifying, air conditioning, heating, generating or converting power (including their connections and supply or transmission lines and pipes) when located on the "premises".

This Coverage is included within the Limits of Insurance shown in the Declarations.

#### b. Debris Removal

(1) Subject to Paragraphs **b.(2)**, **(3)** and **(4)** of this Additional Coverage, we will pay your expense to remove debris of Covered Property and other debris that is on the "premises", when such debris is caused by or results from a Covered Cause of Loss that occurs during the "coverage term". The expenses will be paid only if they are reported to us in writing within 180 days of the date of direct "loss".

(2) Debris Removal does not apply to costs to:

(a) Extract "pollutants" from land or water;

(b) Remove, restore or replace polluted land or water;

(c) Remove debris of property of yours that is not insured under this Coverage Part, or property in your possession that is not Covered Property;

(d) Remove debris of property owned by or leased to the landlord of the building where your "premises" are located, unless you have a contractual responsibility to insure such property and it is insured under this Coverage Part;

(e) Remove any property that is Property Not Covered, including property addressed under **5. Coverage Extensions, k. Outdoor Property.**

(f) Remove property of others of a type that would not be Covered Property under this Coverage Part;

(g) Remove deposits of mud or earth from the grounds of the "premises".

(3) Subject to the exceptions in Paragraph **b.(4)** below, the following provisions apply:

(a) The most we will pay for the total of direct "loss" plus debris removal expense is the Limit of Insurance applicable to the Covered Property that has sustained "loss".

(b) Subject to Paragraph **b.(3)(a)**, the amount we will pay for debris removal expense is limited to 25% of the sum of the deductible plus the amount that we pay for direct "loss" to the Covered Property that has sustained "loss".

(4) We will pay up to an additional $10,000 for debris removal expense for each "premises", in any one occurrence of direct "loss" to Covered Property, if one or both of the following circumstances apply:

(a) The total of the actual debris removal expense plus the amount we pay for direct "loss" exceeds the Limit of Insurance on the Covered Property that has sustained "loss".

(b) The actual debris removal expense exceeds 25% of the sum of the deductible plus the amount that we pay for direct "loss" to the Covered Property that has sustained "loss".

Therefore, if Paragraph **b.(4)(a)** and/or **(4)(b)** apply, our total payment for direct

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

"loss" and debris removal expense may reach but will never exceed the Limit of Insurance on the Covered Property that has sustained "loss", plus $10,000.

**(5) Examples**

The following examples assume that there is no coinsurance penalty.

**Example #1**

| | |
|---|---|
| Limit of Insurance | $90,000 |
| Amount of Deductible | $500 |
| Amount of "Loss" | $50,000 |
| Amount of "Loss" Payable ($50,000 - $500) | $49,500 |
| Debris Removal Expense | $10,000 |
| Debris Removal Expense Payable ($10,000 is 20% of $50,000) | $10,000 |

The debris removal expense is less than 25% of the sum of the "loss" payable plus the deductible. The sum of the "loss" payable and the debris removal expense ($49,500 + $10,000 = $59,500) is less than the Limit of Insurance. Therefore, the full amount of debris removal expense is payable in accordance with the terms of Paragraph **(3).**

**Example #2**

| | |
|---|---|
| Limit of Insurance | $90,000 |
| Amount of Deductible | $500 |
| Amount of "Loss" | $80,000 |
| Amount of "Loss" Payable ($80,000 - $500) | $79,500 |
| Debris Removal Expense | $30,000 |
| Debris Removal Expense Payable | |
| Basic Amount | $10,500 |
| Additional Amount | $10,000 |

The basic amount payable for debris removal expense under the terms of Paragraph **(3)** is calculated as follows: $80,000 ($79,500 + $500) × .25 = $20,000; capped at $10,500. The cap applies because the sum of the "loss" payable ($79,500) and the basic amount payable for debris removal expense ($10,500) cannot exceed the Limit of Insurance ($90,000).

The additional amount payable for debris removal expense is provided in accordance with the terms of Paragraph **(4)**, because the debris removal expense ($30,000) exceeds 25% of the "loss" payable plus the deductible ($30,000 is 37.5% of $80,000), and because the sum of the "loss" payable and debris removal expense ($79,500 + $30,000 = $109,500) would exceed the Limit of Insurance ($90,000). The additional amount of covered debris removal expense is $10,000, the maximum payable under Paragraph **(4).** Thus the total payable for debris removal ex-

pense in this example is $20,500; $9,500 of the debris removal expense is not covered.

**c. Fire Department Service Charge**

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $5,000 in any one occurrence for your liability, which is determined prior to the direct "loss", for fire department service charges:

**(1)** Assumed by contract or agreement; or

**(2)** Required by local ordinance.

Such limit is the most we will pay regardless of the number of responding fire departments or fire units, and regardless of the number or type of services performed. This Coverage is in addition to the Limits of Insurance shown in the Declarations.

**d. Fire Protection Equipment Recharge**

**(1)** We will pay for the expenses you incur to recharge your automatic fire suppression system or portable fire extinguishers when the equipment is discharged:

**(a)** To combat a covered fire to which this insurance applies;

**(b)** As a result of another covered Cause of Loss other than fire; or

**(c)** As a result of an accidental discharge.

**(2)** We will not pay your expenses to recharge fire protection equipment as a result of a discharge during testing or installation.

**(3)** If it is less expensive to do so, we will pay your costs to replace your automatic fire suppression system or portable fire extinguishers rather than recharge that equipment.

The most we will pay in any one occurrence under this Additional Coverage is $25,000. This Coverage is in addition to the Limits of Insurance shown in the Declarations.

**e. Inventory or Appraisal**

**(1)** We will pay the necessary expenses you incur to prepare claim information as required by this Coverage Part. Expenses must result from:

**(a)** Taking inventories;

**(b)** Making appraisals; and

FM 101 05 16

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Page 14 of 40

(c) Preparing a statement of loss and other supporting exhibits.

(2) We will not pay for any expenses:

(a) Incurred to prove that "loss" is covered;

(b) Incurred under **SECTION D. LOSS CONDITIONS, 2. Appraisal;**

(c) Incurred for examinations under oath;

(d) Billed by and payable to independent or public adjusters; or

(e) To prepare claims not covered by this Coverage Part.

The most we will pay for any one occurrence under this Additional Coverage is $10,000. This Coverage is in addition to the shown in the Declarations.

f. **Key and Lock Expense**

(1) If a key or master key is lost, stolen, or damaged, we will pay for:

(a) The actual expense of the new keys; and

(b) The adjustment of locks to accept new keys; or

(c) If required, new locks, including the expense of their installation;

but only for locks at buildings or structures covered by this Coverage Part.

(2) This Coverage does not apply to keys that were given to former employees.

The most we will pay in any one occurrence under this Additional Coverage is Limit of Insurance $1,000. This Coverage is in addition to the Limit of Insurance shown in the Declarations.

g. **Ordinance or Law**

(1) If a covered building or structure sustains direct "loss" from a Covered Cause of Loss, resulting in the enforcement of or compliance with an ordinance or law that is in force at the time of "loss" and regulates the demolition, construction or repair of buildings or structures, or establishes zoning or land use requirements at the "premises", then subject to **SECTION D, LOSS CONDITIONS, 4. Loss Payment,** we will pay:

(a) **Loss of Use of Undamaged Parts of Buildings**

The costs you incur to rebuild at the same "premises" any undamaged portion of your building or structure caused by enforcement of or compliance with an ordinance or law requiring demolition of undamaged parts of the same building or structure. We will only pay the costs to satisfy the minimum requirements of the ordinance or law. Losses and costs incurred in complying with recommended actions or standards that exceed actual requirements are not covered.

(b) **Demolition Costs**

The costs you incur to demolish and clear the site of undamaged parts of the same building or structure as a result of Paragraph g.(1)(a) above.

(c) **Increased Costs of Construction**

1) For buildings or structures to which **SECTION F. OPTIONAL COVERAGES, 3. Replacement Cost** applies, the increased costs to comply with the minimum standards of an ordinance or law to:

a) Repair or reconstruct damaged portions of that building or structure; and

b) Reconstruct or remodel undamaged portions of that building or structure whether or not demolition is required;

However, this increased cost of construction applies only if the building or structure is repaired, reconstructed or remodeled and is intended for occupancy similar to the building or structure it replaces, unless such occupancy is not permitted by zoning or land use ordinance or law.

2) For this Paragraph g.(1)(c) only, the increased costs to repair or reconstruct the following:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

a)  The cost of excavations, grading, backfilling and filling;

b)  Foundation of the building;

c)  Pilings;

d)  Underground pipes, flues and drains.

The items listed in Paragraphs **g.2)a)** through **g.2)d)** above are deleted from **SECTION A. COVERAGE, 2. Property Not Covered;**

**(2)** We will not pay for:

**(a)** Enforcement of or compliance with any ordinance or law which requires the demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungi", wet or dry rot or bacteria; or

**(b)** The costs associated with the enforcement of or compliance with any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungi", wet or dry rot or bacteria.

**(3)** We will not pay for "loss" due to any ordinance or law that:

**(a)** You were required to comply with before the "loss", even if the building or structure was undamaged; and

**(b)** With which you failed to comply.

**(4)** The terms of this Additional Coverage apply separately to each building or structure covered by this Coverage Part.

The most we will pay under this Additional Coverage is $10,000 per building. This is in addition to the Limit of Insurance shown in the Declarations for the building suffering "loss".

**h. Pollutant Clean Up and Removal**

We will pay your expenses to extract "pollutants" from land or water at the "premises" if the discharge, dispersal, seepage, migration, release, escape or emission of the "pollutants" is caused by or results from a Covered Cause of Loss that occurs during the "coverage term". The expenses will be paid only if they are reported to us in writing within 180 days of the date on which the Covered Cause of Loss occurs.

This Additional Coverage does not apply to costs to test for, monitor or assess the existence, concentration or effects of "pollutants". But we will pay for testing which is performed in the course of extracting the "pollutants" from the land or water.

The most we will pay under this Additional Coverage for each "premises" is $10,000 for the sum of all covered expenses arising out of Covered Causes of Loss during each "coverage term". This Coverage is in addition to the Limit of Insurance shown in the Declarations.

**i. Preservation of Property**

If it is necessary to move Covered Property from the "premises" to preserve it from imminent "loss" by a Covered Cause of Loss, we will pay for any direct "loss" to that property:

**(1)** While it is being moved or while temporarily stored at another location; and

**(2)** Only if the "loss" occurs within 60 days after the property is first moved.

This Coverage is included within Limit of Insurance shown in the Declarations for such Covered Property.

**j. Rewards**

We will pay to provide a reward for information that leads to a conviction for arson, theft, vandalism, or burglary. The conviction must involve a covered "loss" caused by arson, theft, vandalism, or burglary.

The most we will pay for "loss" in any one occurrence under this Additional Coverage is $10,000. This Coverage is in addition to the Limit of Insurance shown in the Declarations.

**5. Coverage Extensions**

Unless amended within a particular Coverage Extension, each Extension applies to property located in or on the building described in the Declarations or in the open (or in a vehicle or portable storage unit) within 1,000 feet of the "premises".

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

The limits applicable to the Coverage Extensions are in addition to the Limit of Insurance shown in the Property Declarations. Limits of Insurance specified in these Extensions apply per location unless stated otherwise.

**SECTION E. ADDITIONAL CONDITIONS, 1. Coinsurance**, does not apply to these Coverage Extensions.

**a.** <u>**Accounts Receivable**</u>

**SECTION C. DEDUCTIBLE** does not apply to this Coverage Extension.

(1) When you sustain direct "loss" to your accounts receivable records caused by a Covered Cause of Loss, we will pay:

   (a) All amounts due from your customers that you are unable to collect;

   (b) Interest charges on any loan required to offset amounts you are unable to collect pending our payment of these amounts;

   (c) Collection expenses in excess of your normal collection expenses that are made necessary by the "loss"; and

   (d) Other reasonable expenses that you incur to re-establish your records of accounts receivable.

(2) Coverage does not apply to:

   (a) Records of accounts receivable in storage away from the "premises"; or

   (b) Contraband, or property in the course of illegal transportation or trade.

(3) We will extend coverage to include:

   (a) Removal

   If you give us written notice within 30 days of removal of your records of accounts receivable because of imminent danger of direct "loss" from a Covered Cause of Loss, we will pay for "loss" while they are:

   1) At a safe place away from your "premises"; or

   2) Being taken to and returned from that place.

   This Removal coverage is included within the Limit of Insurance applicable to this Coverage Extension.

   (b) Away From Your Premises

   The most we will pay in any one occurrence is $5,000, regardless of the number of locations, for "loss" caused by a Covered Cause of Loss to Accounts Receivable while they are away from your "premises".

   This Away From Premises Limit is in addition to the Limit of Insurance applicable to this Coverage Extension.

(4) **SECTION A. COVERAGE, 3. Covered Causes of Loss, b. Exclusions** does not apply to this Coverage Extension, except as follows:

   (a) **Exclusion (1)(c) Governmental Action;**

   (b) **Exclusion (1)(d) Nuclear Hazard;**

   (c) **Exclusion (1)(f) War and Military Action.**

(5) In addition to Paragraph **a.(4)** of this Coverage Extension, we will not pay for "loss" resulting from any of the following:

   (a) Dishonest or criminal acts by:

   1) You, your partners, employees, directors, trustees or authorized representatives;

   2) A manager or a member if you are a limited liability company;

   3) Anyone else with an interest in the records of accounts receivable, or their employees or authorized representatives; or

   4) Anyone else entrusted with the records of accounts receivable for any purpose.

   This Paragraph **a.(5)(a)** applies whether or not such persons are acting alone or in collusion with other persons or such act occurs during the hours of employment.

   However, this Paragraph **a.(5)(a)** does not apply to dishonest acts of a carrier for hire or to acts of destruction by your employees. However, theft by employees is still not covered.

   (b) Alteration, falsification, concealment or destruction of records of

accounts receivable done to conceal the wrongful giving, taking or withholding of "money", "securities" or other property.

This exclusion applies only to the extent of the wrongful giving, taking or withholding.

(c) Bookkeeping, accounting or billing errors or omissions.

(d) Electrical or magnetic injury, disturbance or erasure of "electronic data" that is caused by or results from:

1) Programming errors or faulty machine instructions;

2) Faulty installation or maintenance of data processing equipment or component parts;

3) An occurrence that took place more than 100 feet from your "premises"; or

4) Interruption of electrical power supply, power surge, blackout or brownout if the cause of such occurrence took place more than 100 feet from your "premises".

But we will pay for direct "loss" caused by lightning.

(e) Voluntary parting with any property by you or anyone entrusted with the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

(f) A "loss" that requires any audit of records or any inventory computation to prove its factual existence.

(6) **Determination of Receivables:**

(a) If you cannot accurately establish the amount of accounts receivable outstanding as of the time of direct "loss", the following method will be used:

1) Determine the total of the average monthly amounts of accounts receivable for the 12 months immediately preceding the month in which the direct "loss" occurs; and

2) Adjust that total for any normal fluctuations in the amount of accounts receiv-

able for the month in which the direct "loss" occurred or for any demonstrated variance from the average for that month.

(b) The following will be deducted from the total amount of accounts receivable, however that amount is established:

1) The amount of the accounts for which there is no direct "loss"; and

2) The amount of the accounts that you are able to reestablish or collect; and

3) An amount to allow for probable bad debts that you are normally unable to collect; and

4) All unearned interest and service charges.

The most we will pay for "loss" in any one occurrence under this Coverage Extension is $25,000.

b. **Business Income and Extra Expense**

**SECTION C. DEDUCTIBLE** does not apply to this Coverage Extension.

**(1) Business Income**

We will pay for the actual loss of "Business Income" and "Rental Value" you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct "loss" to property at a "premises" caused by or resulting from any Covered Cause of Loss. With respect to "loss" to personal property in the open or personal property in a vehicle or portable storage unit, the "premises" include the area within 1,000 feet of the building or 1,000 feet of the "premises", whichever is greater.

With respect to the requirements of the preceding paragraph, if you are a tenant and occupy only part of the site at which the "premises" are located, for the purpose of this Coverage Extension only, your "premises" is the portion of the building that you rent, lease or occupy, including:

(a) Any area within the building or on the site at which the "premises" are located if that area ser-

FM 101 05 16

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Page 18 of 40

vices or is used to gain access to the "premises"; and

**(b)** Your personal property in the open (or in a vehicle or portable storage unit) within 1,000 feet of the building or 1,000 feet of the "premises", whichever is greater.

**(2) Extra Expense**

**(a)** We will pay Extra Expense you sustain during the "period of restoration". Extra Expense means necessary expenses you sustain (as described in Paragraphs **(2)(b), (c)** and **(d)**) during the "period of restoration" that you would not have sustained if there had been no direct "loss" to property caused by or resulting from a Covered Cause of Loss.

**(b)** If these expenses reduce the otherwise payable "Business Income" "loss", we will pay expenses (other than the expense to repair or replace property as described in Paragraph **(2)(c)**) to:

**1)** Avoid or minimize the "suspension" of business and to continue "operations" either:

**a)** At the "premises"; or

**b)** At replacement "premises" or temporary locations, including relocation expenses and costs to equip and operate the replacement location or temporary location; or

**2)** Minimize the "suspension" of business if you cannot continue "operations".

**(c)** We will also pay expenses to:

**1)** Repair or replace property; or

**2)** Research, replace or restore the lost information on damaged "valuable papers and records";

but only to the extent this payment reduces the otherwise payable "Business Income" "loss". If any property obtained for temporary use during the "period of restoration" remains after the resumption of normal

"operations", the amount we will pay under this Coverage will be reduced by the salvage value of that property.

**(d)** Extra Expense does not apply to "loss" to Covered Property as described in the **BUILDING AND PERSONAL PROPERTY COVERAGE FORM.**

**(3) Civil Authority**

When a Covered Cause of Loss causes damage to property other than Covered Property at a "premises", we will pay for the actual loss of "Business Income" and necessary Extra Expense you sustain caused by action of civil authority that prohibits access to the "premises", provided that both of the following apply:

**(a)** Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage; and

**(b)** The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

This Civil Authority coverage for "Business Income" will begin immediately after the time of that action and will apply for a period of up to 30 days from the date of that action.

This Civil Authority coverage for Extra Expense will begin immediately after the time of that action and will end:

**1)** 30 consecutive days after the time of that action; or

**2)** When your "Business Income" coverage ends;

whichever is later.

**(4) Alterations and New Buildings**

We will pay for the actual loss of "Business Income" you sustain and Extra Expense you incur due to direct "loss" at the "premises" caused by or resulting from any Covered Cause of Loss to:

(a) New buildings or structures, whether complete or under construction;

(b) Alterations or additions to existing buildings or structures; and

(c) Machinery, equipment, supplies or building materials located on or within 1,000 feet of the "premises" and:

  1) Used in the construction, alterations or additions; or

  2) Incidental to the occupancy of new buildings.

If such direct "loss" delays the start of "operations", the "period of restoration" for "Business Income" Coverage will begin on the date "operations" would have begun if the direct "loss" had not occurred.

**(5) Newly Purchased or Leased Locations**

We will pay the actual loss of "Business Income" you sustain and Extra Expense you incur due to direct "loss" to Covered Property at any location you purchase or lease caused by or resulting from a Covered Cause of Loss. This coverage for the Newly Purchased or Leased Locations will end when any of the following first occurs:

(a) This policy expires;

(b) You report values to us;

(c) 90 days pass from the date you acquire or begin to construct the Covered Property.

**(6) Extended Business Income**

(a) For "Business Income" Other Than "Rental Value", if the necessary "suspension" of your "operations" produces a "Business Income" or Extra Expense "loss" payable under this Coverage Part, we will pay for the actual loss of "Business Income" you sustain and Extra Expense you incur during the period that:

  1) Begins on the date property (except "finished stock") is actually repaired, rebuilt or replaced and "operations" are resumed; and

  2) Ends on the earlier of:

a) The date you could restore your "operations", with reasonable speed, to the level which would generate the business income amount that would have existed if no direct "loss" had occurred; or

b) 60 consecutive days after the date determined in **b.(6)(a)1)** above.

However, Extended Business Income does not apply to loss of "Business Income" sustained or Extra Expense incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the "premises" are located.

Loss of "Business Income" must be caused by direct "loss" at the "premises" caused by or resulting from any Covered Cause of Loss.

(b) For "Rental Value", if the necessary "suspension" of your "operations" produces a "Rental Value" "loss" payable under this Coverage Part, we will pay for the actual loss of "Rental Value" you incur during the period that:

  1) Begins on the date property is actually repaired, rebuilt or replaced and tenantability is restored; and

  2) Ends on the earlier of:

a) The date you could restore tenant occupancy, with reasonable speed, to the level which would generate the "Rental Value" that would have existed if no direct "loss" had occurred; or

b) 60 consecutive days after the date determined in **b.(6)(b)1)** above.

However, Extended Business Income does not apply to loss of "Rental Value" incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of

Loss in the area where the "premises" are located.

Loss of "Rental Value" must be caused by direct "loss" at the "premises" caused by or resulting from any Covered Cause of Loss.

**(7) Interruption of Computer Operations**

(a) Subject to all provisions of this Coverage Extension, you may extend the insurance that applies to "Business Income" and Extra Expense to apply to a "suspension" of "operations" caused by an interruption in computer operations due to destruction or corruption of "electronic data" as described in **SECTION A. COVERAGE, 5. Coverage Extensions, d. Electronic Data.**

(b) Paragraph **b.(7)(a)** does not apply to "loss" sustained or expense incurred after the end of the "period of restoration", even if the amount of insurance stated in Paragraph **b.(7)(c)** has not been exhausted.

(c) The most we will pay under Paragraph **b.(7)** of this Coverage Extension is $2,500 for all "loss" sustained and expense incurred in the "coverage term", regardless of the number of interruptions or the number of "premises" or computer systems involved. If loss payment relating to the first interruption does not exhaust this amount, then the balance is available for subsequent interruptions in that "coverage term". A balance remaining at the end of a "coverage term" does not carry over to the next "coverage term". With respect to an interruption that begins in a "coverage term" and continues or results in additional "loss" or expense in a subsequent "coverage term", all "loss" and expense is deemed to be sustained in the "coverage term" in which the interruption began.

This $2,500 coverage for Interruption of Computer Operations does not increase the Limit of Insurance provided in this Coverage Extension.

The most we will pay for "loss" in any one occurrence under this "Business Income" and Extra Expense Coverage Extension is $25,000.

c. **Collapse**

The coverage provided under this Coverage Extension applies only to an abrupt collapse as described and limited in Paragraphs **c.(1)** through **c.(7)** below.

(1) For the purpose of this Coverage Extension only, abrupt collapse means an abrupt falling down or caving in of a building or structure or any part of a building or structure with the result that the building or structure or part of the building or structure cannot be occupied for its intended purpose.

(2) We will pay for direct "loss" to Covered Property, caused by abrupt collapse of a building or structure or any part of a building or structure insured under this Coverage Part, or that contains Covered property insured under this Coverage Part, if such collapse is caused by one or more of the following:

(a) Building or structure decay that is hidden from view, unless the presence of such decay is known or should reasonably have been known to an insured prior to collapse;

(b) Insect or vermin damage that is hidden from view, unless the presence of such damage is known or should reasonably have been known to an insured prior to collapse;

(c) Use of defective material or methods in construction, remodeling, or renovation if the abrupt collapse occurs during the course of the construction, remodeling, or renovation.

(d) Use of defective materials or methods in construction, remodeling, or renovation if the abrupt collapse occurs after construction, remodeling, or renovation is complete but only if the collapse is caused in part by:

1) A cause of loss listed in Paragraph **c.(2)(a)** or **c.(2)(b)** of this Coverage Extension;

2) One or more of the "specified causes of loss";

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

3) Breakage of building glass;

4) Weight of people or personal property; or

5) Weight of rain that collects on a roof.

(3) This Coverage Extension does not apply to:

(a) A building or structure or any part of a building or structure that is in danger of falling down or caving in;

(b) A part of a building or structure that is standing, even if it has separated from another part of the building or structure; or

(c) A building or structure that is standing or any part of a building or structure that is standing, even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

(4) With respect to the following property:

(a) Outdoor radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers;

(b) Awnings, gutters and downspouts;

(c) Yard fixtures;

(d) Outdoor swimming pools;

(e) Fences;

(f) Piers, wharves and docks;

(g) Beach or diving platforms; including their appurtenances;

(h) Retaining walls; and

(i) Walks, roadways and other paved surfaces;

if an abrupt collapse is caused by a cause of loss listed in Paragraph c.(2)(a) through c.(2)(d), we will pay for "loss" to that property only if:

(a) Such "loss" is a direct result of the abrupt collapse of a building or structure insured under this Coverage Part; and

(b) The property is Covered Property under this Coverage Part.

(5) If personal property abruptly falls down or caves in and such collapse is **not** the result of abrupt collapse of a building or structure, we will pay for direct "loss" to Covered Property caused by such collapse of personal property only if:

(a) The collapse of personal property was caused by a Cause of Loss listed in **c.(2)(a)** through **c.(2)(d)** of this Coverage Extension;

(b) The personal property that collapses is inside a building; and

(c) The property that collapses is not of a kind listed in Paragraph **c.(4)** above of this Coverage Extension, regardless of whether that kind of property is considered to be personal property or real property.

The coverage stated in this Paragraph **c.(5)** does not apply to personal property if marring and/or scratching is the only damage to that personal property caused by the collapse.

(6) This Coverage Extension does not apply to personal property that has not abruptly fallen down or caved in, even if the personal property shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

(7) This Coverage Extension shall not increase the Limit of Insurance provided in this Coverage Part.

(8) The term Covered Cause of Loss includes Collapse as described and limited in Paragraphs **c.(1)** through **c.(7)**.

d. **Electronic Data**

(1) This Coverage Extension does not apply to your "stock" of prepackaged software, or to "electronic data" which is integrated in and operates or controls the building's elevator, lighting, heating, ventilation, air conditioning or security system.

(2) We will pay for the cost to replace or restore "electronic data" which has been destroyed or corrupted by a Covered Cause of Loss that applies to **SECTION A. COVERAGE, 1. Covered Property, d. Business Personal Property.** To the extent that "electronic data" is not replaced or restored, the "loss" will be valued at the cost of replacement of the me-

dia on which the "electronic data" was stored with blank media of substantially identical type.

(3) For the purposes of this Coverage Extension only, Covered Causes of Loss include a virus, harmful code or similar instruction introduced into or enacted on a computer system (including "electronic data") or a network to which it is connected, that is designed to damage or destroy any part of the system or disrupt its normal operation. However, there is no coverage for "loss" caused by or resulting from manipulation of a computer system (including "electronic data") by any employee, including a temporary or leased employee, or by an entity retained by you or for you to inspect, design, install, modify, maintain, repair or replace that system or "electronic data".

(4) The most we will pay for all direct "loss" under this Coverage Extension, regardless of the number of "premises" or computer systems involved, is $2,500. This limit is the most we will pay for the total of all direct "loss" arising out of all occurrences that take place in the "coverage term". If loss payment on the first occurrence does not exhaust this amount, then the balance is available for subsequent "loss" sustained in the "coverage term". A balance remaining in a "coverage term" does not carry over to the next "coverage term". With respect to an occurrence which begins in the "coverage term" and continues or results in additional "loss" in a subsequent "coverage term", all "loss" is deemed to be sustained in the "coverage term" in which the occurrence began.

e. **Exhibitions, Fairs or Trade Shows**

We will pay for direct "loss" caused by a Covered Cause of Loss to your Covered Property, including covered property of others, while it is located at exhibitions, fairs or trade shows. This Coverage Extension does not apply while Covered Property is in transit to or from the exhibition, fair or trade show.

The most we will pay for "loss" in any one occurrence is $10,000.

The Limit of Insurance provided under this Coverage Extension does not apply per location.

f. **Fences**

We will pay for direct "loss" caused by a Covered Cause of Loss to your outdoor fences that are located within 1,000 feet of the "premises" and not otherwise insured as Covered Property in this Coverage Part.

The most we will pay for "loss" in any one occurrence under this Coverage Extension is $5,000.

g. **Fungi, Wet Rot, Dry Rot, and Bacteria - Limited Coverage**

(1) The coverage described in Paragraphs **g.(2)** and **g.(3)** of this Coverage Extension only apply when the "fungi", wet or dry rot or bacteria is the result of a Covered Cause of Loss that occurs during the "coverage term" and only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence.

(2) We will pay for "loss" by "fungi", wet or dry rot or bacteria. As used in this Coverage Extension, the term "loss" means:

(a) Direct "loss" to Covered Property caused by "fungi", wet or dry rot or bacteria, including the cost of removal of the "fungi", wet or dry rot or bacteria;

(b) The cost to tear out and replace any part of the building or other property as needed to gain access to the "fungi", wet or dry rot or bacteria; and

(c) The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is a reason to believe that "fungi", wet or dry rot or bacteria are present.

(3) For the coverage described under Paragraph **g.(2)** of this Coverage Extension, the most we will pay for "loss", regardless of the number of claims, is $15,000. This limit is the most we will pay for the total of all "loss" arising out of all occurrences that take place in the "coverage term". With respect to a particular occurrence of "loss" which results in "fungi", wet or dry rot or bacteria, we will not pay more than a total of $15,000 even if the "fungi", wet or dry rot or bacteria continues to be pre-

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

sent or active, or recurs, in a subsequent "coverage term".

(4) The coverage provided under this Coverage Extension does not increase the applicable Limit of Insurance on any Covered Property. If a particular occurrence results in "loss" by "fungi", wet or dry rot or bacteria, and other "loss", we will not pay more, for the total of all "loss" than the applicable Limit of Insurance on the affected Covered Property.

If there is covered "loss" to Covered Property, not caused by "fungi", wet or dry rot or bacteria, loss payment will not be limited by the terms of this Coverage Extension, except to the extent that "fungi", wet or dry rot or bacteria causes an increase in the "loss". Any such increase in the "loss" will be subject to the terms of this Coverage Extension.

(5) The terms of this Coverage Extension do not increase or reduce the coverage provided under:

(a) **SECTION A. COVERAGE, 5. Coverage Extensions, c. Collapse;**

(b) **SECTION A. COVERAGE, 5. Coverage Extensions, s. Water, Other Liquids, Powder or Molten Material Damage**

(6) The following **(6)(a)** or **(6)(b)** apply only if "Business Income", "Rental Value", or Extra Expense Coverage applies to the "premises" and only if the "suspension" of "operations" satisfies all terms and conditions of the applicable "Business Income", "Rental Value", or Extra Expense Coverage.

(a) If the "loss" which resulted in "fungi", wet or dry rot or bacteria does not in itself necessitate a "suspension" of "operations", but such "suspension" is necessary due to "loss" to property caused by "fungi", wet or dry rot or bacteria, then our payment under "Business Income" and/or Extra Expense is limited to the amount of "loss" and/or expense sustained in a period of not more than 30 days. The days need not be consecutive.

(b) If a covered "suspension" of "operations" was caused by "loss" other than "fungi", wet or dry rot or bacteria but remedia-

tion of "fungi", wet or dry rot or bacteria prolongs the "period of restoration", we will pay for "loss" and/or expense sustained during the delay (regardless of when such a delay occurs during the "period of restoration"), but such coverage is limited to 30 days. The days need not be consecutive.

(7) This Coverage Extension does not apply to lawns, trees, plants or shrubs that are part of any vegetative roof.

h. **Glass**

(1) If a Covered Cause of Loss occurs to building glass that is Covered Property, we will also pay necessary expenses you incur to:

(a) Put up temporary plates or board up openings if repair or replacement of damaged glass is delayed;

(b) Repair or replace encasing frames;

(c) Remove or replace obstructions (except expenses to remove or replace window displays); and

(d) Repair or replace alarm tapes.

(2) If you are a tenant at a covered "premises" and:

(a) The building you occupy is not Covered Property; and

(b) You are legally liable for direct "loss" to the building glass in that building;

such building glass, for the purposes of this Paragraph **h.(2)**, is Covered Property. The most we will pay for "loss" in any one occurrence is $5,000. This building glass is subject to the building deductible as described in **SECTION C. DEDUCTIBLE.**

(3) For the purposes of this Coverage Extension only, **SECTION A. COVERAGE, 3. Covered Causes of Loss, b. Exclusions** does not apply except as follows:

(a) **Exclusion (1)(b) Earth Movement;**

(b) **Exclusion (1)(c) Governmental Action;**

(c) Exclusion **(1)(d) Nuclear Hazard;**

(d) Exclusion **(1)(f) War and Military Action;**

(e) Exclusion **(2)(d)1** Wear and tear; and

(f) As listed in **Exclusion (2)(d)2:** Rust or other corrosion, hidden or latent defect or any quality in property that causes it to damage or destroy itself.

i. **Newly Purchased, Leased or Constructed Property**

   (1) **Buildings**

   If buildings are Covered Property in this Coverage Part, we will pay for direct "loss" caused by a Covered Cause of Loss to:

   (a) Your new buildings or additions while being built on the "premises";

   (b) Buildings you newly purchase or become newly required to insure by written contract that are:

      1) Intended for use by you as a warehouse; or

      2) Similarly used by you as buildings insured under this Coverage Part.

   The most we will pay for "loss" in any one occurrence to a building under this Coverage Extension is 1,000,000 for each building.

   (2) **Business Personal Property**

   (a) If business personal property is Covered Property in this Coverage Part, we will pay for direct "loss" caused by a Covered Cause of Loss to business personal property you newly purchase or are required to insure by written contract:

      1) While located at buildings described in Paragraph **a.(1)** of this Coverage Extension; or

      2) While located in a leased building or space therein that you are not required to insure. Such lease must be for a period of 12 consecutive months or longer.

(b) Paragraph **a.(2)(a)** of this Coverage Extension does not apply to:

   1) Any business personal property covered under **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions, e. Exhibitions, Fairs, or Trade Shows** or **m. Property Off Premises;**

   2) Any business personal property that is covered under **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions, p. Transportation** or is otherwise considered to be in-transit to or from a "premises".

   3) Business personal property of others that is temporarily in your possession in the course of installing or performing work on such property, or temporarily in your possession in the course of your manufacturing or wholesaling activities.

The most we will pay for "loss" in any one occurrence to your Business Personal Property under this Coverage Extension is $500,000 at each building.

(3) **Period of Coverage**

Coverage provided under this Coverage Extension will end when any of the following first occurs:

(a) This policy expires;

(b) For buildings described in Paragraph **(1)(a)** of this Coverage Extension, 90 days pass from the date you begin construction on that part of the building that would qualify as Covered Property;

(c) For business property described in Paragraph **(1)(b)** and Paragraph **(2)(a)1**, 90 days after your purchase or lease;

(d) For business personal property described in Paragraph **(2)(a)2**, 90 days from the effective date

of the lease of the building space in the building; or

**(e)** You report values to us.

We will charge you additional premium for values reported from the date you lease or purchase the property, or begin construction on that part of the building that would qualify as Covered Property.

**j.  Nonowned Building Damage**

If you are a tenant at a covered "premises" and:

**(1)** The building you occupy is not Covered Property; and

**(2)** You are legally liable for direct "loss" to that building;

We will pay for direct "loss" to that building caused by burglary, robbery, theft or attempted theft.

This Coverage Extension does not apply to:

**(1)** Glass, including lettering and ornamentation, and also necessary:

**(a)** Repair or replacement of encasing frames or alarm tapes; and

**(b)** Expenses incurred to board up openings or remove or replace obstruction.

**(2)** Building materials and equipment removed from the "premises".

This Coverage Extension does not apply if you have purchased other insurance in your name on the building you occupy as required by the lease.

The most we will pay for "loss" in any one occurrence under this Coverage Extension is $25,000.

**k.  Outdoor Property**

We will pay for direct "loss" caused by a Covered Cause of Loss to the following types of your Covered Property:

**(1)** Radio antennas, television antennas or satellite dishes (including their lead-in wiring, masts and towers);

**(2)** Trees, shrubs or plants (other than trees, shrubs or plants which are "stock" or part of a vegetative roof), including debris removal ; and

**(3)** If you are a tenant, to your awnings that are attached to a building you occupy;

but only if caused by or resulting from any of the following causes of loss if they are included as Covered Causes of Loss under this Coverage Part:

**(1)** Fire;

**(2)** Lightning;

**(3)** Explosion;

**(4)** Riot or Civil Commotion;

**(5)** Aircraft; or

**(6)** Falling objects.

We will pay for the debris removal expenses of the above type property that are not your Covered Property if such debris is on your "premises" due to the Covered Causes of Loss described in this Coverage Extension. If you are a tenant, we do not pay debris removal expenses for trees, plants or shrubs owned by the landlord or owner of the building you occupy.

No other coverage for debris removal expenses provided in this Coverage Part applies to this Outdoor Property Coverage Extension.

The most we will pay for "loss" in any one occurrence under this Coverage Extension is $5,000, but not more than $1,000 for any one tree, shrub or plant.

**l.  Personal Effects**

If business personal property is Covered Property in this Coverage Part, we will pay for direct "loss" caused by a Covered Cause of Loss to personal effects owned by:

**(1)** You, your officers, or your partners, or if you are a limited liability company, your members or your managers; or

**(2)** Your employees (including temporary and leased employees), including tools owned by your employees that are used in your business. However, employee tools are not covered for theft.

This Coverage Extension does not apply to "money" or "securities".

If theft is included as a Covered Cause of Loss under this Coverage Part, then this Coverage Extension has a $500 per occurrence limitation for direct "loss" by theft.

FM 101 05 16

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Page 26 of 40

The most we will pay for "loss" in any one occurrence under this Coverage Extension is $10,000.

m. **Property Off Premises**

(1) We will pay for direct "loss" caused by a Covered Cause of Loss to your Covered Property, including covered personal property of others, while it is away from the "premises", if it is:

(a) Temporarily at a location you do not own, lease or operate; or

(b) In storage at a location you lease, provided the lease was executed for the first time after the beginning of the current "coverage term".

(2) This Coverage Extension does not apply to Covered Property at exhibitions, fairs, trade show, or in transit.

The most we will pay for "loss" in any one occurrence under this Coverage Extension is $10,000.

The Limit of Insurance provided by this Coverage Extension does not apply per location.

n. **Signs**

We will pay for direct "loss" caused by a Covered Cause of Loss, including debris removal expense, to signs not otherwise insured by this Coverage Part.

The most we will pay for "loss" in any one occurrence under this Coverage Extension is $5,000.

The Limit of Insurance provided by this Coverage Extension does not apply per location.

o. **Trailers (Nonowned Detached)**

(1) If business personal property is Covered Property in this Coverage Part, we will pay for direct "loss" caused by a Covered Cause of Loss to trailers that you do not own, provided that:

(a) The trailer is used in your business;

(b) The trailer is temporarily in your care, custody or control at the "premises"; and

(c) You have a contractual responsibility to pay for "loss" to the trailer.

(2) We will not pay for any direct "loss" that occurs:

(a) While the trailer is attached to any motor vehicle or motorized conveyance, whether or not the motor vehicle or motorized conveyance is in motion;

(b) During hitching or unhitching operations, or when a trailer becomes accidentally unhitched from a motor vehicle or motorized conveyance.

(3) This insurance is excess over the amount due, whether you can collect on it or not, from any other insurance covering such property.

(4) This Coverage Extension does not apply to any property inside or on the trailer.

The most we will pay for "loss" in any one occurrence under this Coverage Extension is $5,000.

p. **Transportation**

We will pay for direct "loss" caused by a Covered Cause of Loss to your Covered Property, including covered personal property of others while it is in or on a vehicle, including loading and unloading of the property.

The most we will pay for "loss" in any one occurrence is $10,000.

The Limit of Insurance provided by this Coverage Extension does not apply per location.

q. **Utility Services**

We will pay for:

(1) Direct "loss" to Covered Property at your "premises" except for direct "loss" resulting from the partial or complete failure of Wastewater Removal Services; and

(2) Loss of "Business Income" you sustain and Extra Expenses you incur as provided in **SECTION A. COVERAGE, 5. Coverage Extensions, b. Business Income and Extra Expense;**

caused by or resulting from the partial or complete failure of utility services to the "premises".

The partial or complete failure of the utility services listed below must be caused by direct "loss" caused by a Covered Cause of Loss to the following property:

(1) Power Supply Property, meaning the following types of property supplying

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

electricity, steam or natural gas to the "premises":

(a) Utility generating plants;

(b) Switching stations;

(c) Substations;

(d) Transformers; and

(e) Transmission, distribution, service, or similar lines, excluding all such overhead lines of any type.

(2) Water Supply Property, meaning the following types of property supplying water to the "premises":

(a) Pumping stations; and

(b) Water mains.

(3) Wastewater Removal Property, meaning a utility system for removing wastewater and sewage from the "premises", other than a system designed primarily for draining storm water. The utility property includes sewer mains, pumping stations and similar equipment for moving the effluent to a holding, treatment or disposal facility, and includes such facilities. Coverage under this Coverage Extension does not apply to interruption in service caused by or resulting from a discharge of water or sewage due to heavy rainfall or flooding.

(4) Communication Supply Property, meaning property supplying communication services, including service relating to Internet access or access to any electronic, cellular or satellite network; telephone, radio, microwave or television services to the "premises", such as:

(a) Communication transmission, distribution, service or similar lines, including fiber optic lines, excluding all such overhead lines of any type;

(b) Coaxial cables; and

(c) Microwave radio relays, excluding satellites.

This Coverage Extension does not apply to "loss" to "electronic data", including destruction or corruption of "electronic data".

The most we will pay for all direct "loss" and loss of "Business Income" and Extra Expense in any one occurrence is $25,000.

r. **Valuable Papers and Records**

**SECTION C. DEDUCTIBLE** does not apply to this Coverage Extension.

(1) Subject to Paragraph **r.(3)** of this Coverage Extension, we will pay necessary costs you incur to research, replace or restore lost or damaged information on "valuable papers and records" that are your property or the property of others in your care, custody or control; resulting from direct "loss" caused by a Covered Cause of Loss.

(2) Coverage does not apply to:

(a) Property that cannot be replaced with other property of like kind and quality;

(b) Property held as samples or for delivery after sale;

(c) Property in storage away from the "premises", except as provided in Paragraph **r.(4)(b)** of this Coverage Extension;

(d) Contraband, or property in the course of illegal transportation or trade;

(e) "Valuable papers and records" in the form of "electronic data" including the materials on which the "electronic data" is recorded.

(3) The most we will pay for "loss" is the least of the following amounts:

(a) The cost of reasonably restoring the damaged property to its condition immediately before the "loss";

(b) The cost of replacing the damaged property with substantially identical property; or

(c) The actual cash value of the damaged property at the time of "loss".

However, we will not pay for "loss" unless or until the damaged property is actually replaced or restored; and then only if such replacement or restoration occurs within 36 months from the date of direct "loss".

(4) We will extend coverage to include:

(a) **Removal**

If you give us written notice within 30 days of removal of your "valuable papers and records"

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

because of imminent danger of direct "loss" from a Covered Cause of Loss, we will pay for direct "loss" while they are:

1) At a safe place away from your "premises"; or

2) Being taken to and returned from that place.

This Removal coverage is included within the Limits of Insurance applicable to this Coverage Extension.

**(b) Away From Your Premises**

We will pay up to $5,000 in any one occurrence, regardless of the number of locations, for direct "loss" caused by a Covered Cause of Loss to "valuable papers and records" while they are away from your "premises".

This Away From Premises limit is in addition to the Limit of Insurance applicable to this Coverage Extension.

**(5) SECTION A. COVERAGE, 3. Covered Causes of Loss, b. Exclusions** does not apply to this Coverage Extension except as follows:

**(a) Exclusion (1)(c) Governmental Action;**

**(b) Exclusion (1)(d) Nuclear Hazard; and**

**(c) Exclusion (1)(f) War and Military Action.**

**(6)** In addition to Paragraph **r.(5)** of this Coverage Extension, we will not pay for direct "loss" resulting from any of the following:

**(a)** Dishonest or criminal acts by:

1) You, your partners, employees, directors, trustees or authorized representatives;

2) A manager or a member if you are a limited liability company;

3) Anyone else with an interest in the records of accounts receivable, or their employees or authorized representatives; or

4) Anyone else entrusted with the records of accounts receivable for any purpose.

This Paragraph **r.(6)(a)** applies whether or not such persons are acting alone or in collusion with other persons or such act occurs during the hours of employment.

However, this Paragraph **r.(6)(a)** does not apply to dishonest acts of a carrier for hire or to acts of destruction by your employees. However, theft by employees is still not covered.

**(b)** Errors or omissions in processing or copying. However, we will pay for that portion of direct "loss" caused by resulting fire or explosion if these causes of loss would be covered by this Coverage Part.

**(c)** Electrical or magnetic injury, disturbance or erasure of electronic recordings. But we will pay for direct "loss" caused by lightning.

**(d)** Voluntary parting with any property by you or anyone entrusted with the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

The most we will pay for "loss" in any one occurrence is $25,000.

**s. Water Damage, Other Liquids, Powder or Molten Material Damage**

If a covered direct "loss" to which this insurance applies was caused by or resulted from water or other liquid, powder or molten material damage, we will also pay the cost to tear out and replace any otherwise undamaged part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes.

**SECTION B. LIMITS OF INSURANCE**

The most we will pay for "loss" in any one occurrence is the applicable Limit of Insurance shown in the Declarations, except as amended in **SECTION A. COVERAGE, 3. Covered Causes of Loss, c. Limitations, 4. Additional Coverages,** and **5. Coverage Extensions.**

**SECTION C. DEDUCTIBLE**

Except as otherwise provided; in any one occurrence of direct "loss" we will first reduce the amount of "loss" if required by **SECTION E. ADDITIONAL CONDITIONS, 1. Coinsurance** or **SECTION F. OPTIONAL COVERAGES, 1. Agreed Value.** If the adjusted amount of direct "loss" is less than or equal to the Deductible, we will not pay for that direct "loss". If the adjusted amount of direct "loss" exceeds the Deductible, we will then

subtract the Deductible from the adjusted amount of direct "loss", and will pay the resulting amount or the Limit of Insurance, whichever is less.

When the occurrence involves direct "loss" to more than one item of Covered Property and separate Limits of Insurance apply, the losses will not be combined in determining application of the Deductible. But the Deductible will be applied only once per occurrence.

1. **Deductible Examples**

   **Example No. 1:**

   (This example assumes there is no coinsurance penalty as outlined in **SECTION E. ADDITIONAL CONDITIONS, 1. Coinsurance**).

   | | |
   |---|---|
   | Deductible: | $250 |
   | Limit of Insurance - Bldg. 1: | $60,000 |
   | Limit of Insurance - Bldg. 2: | $80,000 |
   | "Loss" to Bldg. 1: | $60,100 |
   | "Loss" to Bldg. 2: | $90,000 |

   The amount of "loss" to Bldg. 1 ($60,100) is less than the sum ($60,250) of the Limit of Insurance applicable to Bldg. 1 plus the Deductible.

   The Deductible will be subtracted from the amount of "loss" in calculating the "loss" payable for Bldg. 1:

   $60,100 - $250 = $59,850 "Loss" Payable - Bldg. 1

   The Deductible applies once per occurrence and therefore is not subtracted in determining the amount of "loss" payable for Bldg. 2. "Loss" payable for Bldg. 2 is the Limit of Insurance of $80,000.

   Total amount of "loss" payable: $59,850 + 80,000 = $139,850.

   **Example No. 2:**

   (This example also assumes there is no coinsurance penalty).

   The Deductible and Limits of Insurance are the same as those in Example No. 1:

   "Loss" to Bldg. 1: $70,000 (Exceeds Limit of Insurance plus Deductible)

   "Loss" to Bldg. 2: $90,000 (Exceeds Limit of Insurance plus Deductible)

   "Loss" Payable - Bldg. 1: $60,000 (Limit of Insurance)

   "Loss" Payable - Bldg. 2: $80,000 (Limit of Insurance)

   Total amount of "loss" payable: $140,000.

2. **Glass Deductible**

   When direct "loss" to the building you occupy only involves building glass, the Deductible for that "loss" will be the lesser of:

   a. $500; or

   b. The Deductible shown in the Declarations for that Covered Property.

## SECTION D. LOSS CONDITIONS

The following conditions apply in addition to the **COMMON POLICY CONDITIONS** and the **COMMERCIAL PROPERTY CONDITIONS**.

1. **Abandonment**

   There can be no abandonment of any property to us.

2. **Appraisal**

   If we and you disagree on the value of the property, the amount of Net Income and operating expense, or the amount of "loss", either may make written demand for an appraisal of the "loss". In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property, the amount of Net Income and operating expense, and amount of "loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

   a. Pay its chosen appraiser; and

   b. Bear the other expenses of the appraisal and umpire equally.

   If there is an appraisal, we still retain our right to deny the claim.

3. **Duties in the Event of Loss or Damage**

   a. In the event of "loss" to Covered Property, you must see that the following are done in order for coverage to apply:

      (1) Notify the police if a law may have been broken.

      (2) Give us prompt notice of the "loss". Include a description of the property involved.

      (3) As soon as possible, give us a description of how, when and where the "loss" occurred.

      (4) Take all reasonable steps to protect the Covered Property from further damage. If feasible, set the damaged property aside and in the best possible order for examination. Keep a

record of your expenses necessary to protect the Covered Property for consideration in the settlement of the claim. This will not increase your limit of insurance. However, in no event will we pay for any subsequent "loss" resulting from a cause of loss that is not a Covered Cause of Loss.

(5) At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of "loss" claimed.

(6) As often as may be reasonably required, permit us to inspect the property proving the "loss" and examine your books and records.

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis and permit us to make copies from your books and records.

(7) Submit a signed sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

(8) Cooperate with us in the investigation or settlement of the claim.

(9) If you intend to continue your business, you must resume all or part of your "operations" as quickly as possible.

b. We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

## 4. Loss Payment

a. In the event of "loss" insured by this Coverage Part, at our option, we will either:

(1) Pay the value of lost or damaged property;

(2) Pay the cost of repairing or replacing the lost or damaged property;

(3) Take all or any part of the property at an agreed or appraised value; or

(4) Repair, rebuild or replace the property with other property of like kind and quality.

We will determine the value of lost or damaged property, or the cost of its repair or replacement, in accordance with the applicable terms of **SECTION D. LOSS CONDITIONS, 7. Valuation** or any applicable provision that amends or supercedes this valuation condition.

b. The cost of repair or replacement does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property, except as provided in **SECTION A. COVERAGE, 4. Additional Coverages, g. Ordinance or Law.**

c. We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

d. We will not pay you more than your financial interest in the Covered Property.

e. We may adjust "losses" with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.

f. Our payment for "loss" to personal property of others and personal effects will only be for the account of the owner of the property.

g. We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

h. We will pay for insured "loss" within 30 days after we receive the sworn proof of loss if you have complied with all of the terms of this Coverage Part; and

(1) We have reached agreement with you on the amount of "loss"; or

(2) An appraisal award has been made.

i. **Loss Payment - Ordinance or Law.**

With respect to **SECTION A. COVERAGE, 4. Additional Coverages, g. Ordinance or Law:**

(1) **Loss of Use of Undamaged Parts of Building**

When there is a loss in value of an undamaged portion of a building or structure to which this coverage applies, the loss payment for that building, including damaged and undamaged portions, will be determined as follows:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

(a) If **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION F. OPTIONAL COVERAGES, 3. Replacement Cost** applies and the property is repaired or replaced, on the same "premises" or another "premises"; we will not pay more than the lesser of:

   1) The amount you actually spend to repair, rebuild or reconstruct the building, but not for more than the amount it would cost to restore the building on the same "premises" and to the same height, floor area, style and comparable quality of the original property insured; or

   2) The limit of insurance indicated in **SECTION A. COVERAGE, 4. Additional Coverages g. Ordinance or Law** for **Loss of Use of Undamaged Parts of Building** for the building that has suffered "loss".

(b) If **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION F. OPTIONAL COVERAGES, 3. Replacement Cost** applies and the property is not repaired or replaced, or if the Replacement Cost Coverage Option does not apply, we will not pay more than the lesser of:

   1) The "actual cash value" of the building at the time of "loss"; or

   2) The limit of insurance indicated in **SECTION A. COVERAGE, 4. Additional Coverages, g. Ordinance or Law** for **Loss of Use of Undamaged Parts of Building** for the building that has suffered "loss".

(2) **Demolition Costs**

Loss payment for Demolition Costs will be determined as follows:

We will not pay more than the lesser of the following:

(a) The amount you actually spend to demolish and clear the site of the "premises"; or

(b) The limit of insurance indicated in **SECTION A. COVERAGE, 4. Additional Coverages, g. Ordinance or Law** for **Demolition Costs** for the building that has suffered "loss".

(3) **Increased Costs of Construction**

Loss payment for **Increased Costs of Construction** will be determined as follows:

(a) We will not pay for the increased cost of construction until the property is actually repaired or replaced, at the same "premises" or another location and unless the repairs or replacement are made as soon as reasonably possible after the direct "loss", not to exceed two years. We may extend this period in writing during the two years.

(b) If the building is repaired or replaced at the same "premises", or if you elect to rebuild at another "premises", the most we will pay for the **Increased cost of construction** is the lesser of:

   1) The increased cost of construction at the same "premises"; or

   2) The limit of insurance indicated in **SECTION A. COVERAGE, 4. Additional Coverages, g. Ordinance or Law** for **Increased Costs of Construction** for the building that has suffered "loss".

(c) If the ordinance or law requires relocation to another location the most we will pay for the increased cost of construction is the lesser of:

   1) The increased cost of construction at the new location; or

   2) The limit of insurance indicated in **SECTION A. COVERAGE, 4. Additional Coverages, g. Ordinance or Law** for **Increased Costs of Construction** for the building that has suffered "loss".

(4) **Proportional Payments**

If the building or structure sustains both direct "loss" that is covered un-

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

der this Coverage Part and direct "loss" that is not covered under this Coverage Part; and as a result of the direct "loss" in its entirety you are required to comply with the ordinance or law, we will not pay the full amount of direct "loss" otherwise payable under the terms of **SECTION A. COVERAGE, 4. Additional Coverages, g. Ordinance or Law.** Instead, we will pay a proportion of such direct "loss"; meaning the proportion that the covered direct "loss" bears to the total direct "loss".

**j.  Loss Determination - Business Income and Extra Expense**

With respect to **SECTION A. COVERAGE, 5. Coverage Extensions, b. Business Income and Extra Expense,**

**(1)** The amount of "Business Income" and "Rental Value" "loss" will be determined based on:

**(a)** The Net Income of the business before the direct "loss" occurred;

**(b)** The likely Net Income of the business if no direct "loss" had occurred, but not including any Net Income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses;

**(c)** The operating expenses, including payroll expenses, necessary to resume "operations" with the same quality of service that existed just before the direct "loss"; and

**(d)** Other relevant sources of information, including;

**1)** Your financial records and accounting procedures;

**2)** Bills, invoices and other vouchers; and

**3)** Deeds, liens or contracts.

**(2)** The amount of Extra Expense will be determined based on:

**(a)** All expenses that exceed the normal operating expenses that would have been incurred by "operations" during the "period of restoration" if no direct "loss"

had occurred. We will deduct from the total of such expenses:

**1)** The salvage value that remains of any property bought for temporary use during the "period of restoration", once "operations" are resumed; and

**2)** Any Extra Expense that is paid for by other insurance, except for insurance that is written subject to the same plan, terms, conditions and provisions as this insurance; and

**(b)** Necessary expenses that reduce the "Business Income" and "Rental Value" "loss" that otherwise would have been incurred.

**(3) Resumption of Operations**

We will reduce the amount of your:

**(a)** "Business Income" and "Rental Value" "loss", other than Extra Expense, to the extent you can resume your "operations", in whole or in part, by using damaged or undamaged property (including merchandise or "stock") at the "premises" or elsewhere.

**(b)** Extra Expense "loss" to the extent you can return "operations" to normal and discontinue such Extra Expense.

**(4)** If you do not resume "operations", or do not resume "operations" as quickly as possible, we will pay based on the length of time it would have taken to resume "operations" as quickly as possible.

**k.  Party Walls**

A party wall is a wall that separates and is common to adjoining buildings that are owned by different parties. In settling covered losses involving a party wall, we will pay a proportion of the "loss" to the party wall based on your interest in the wall in proportion to the interest of the owner of the adjoining building. However, if you elect to repair or replace your building and the owner of the adjoining building elects not to repair or replace that building, we will pay you the full value of the "loss" to the party wall, subject to all applicable policy provisions all other provisions of this **SECTION D. LOSS CONDITIONS, 4. Loss Payment** including:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**(1)** Limit of Insurance shown in the Declarations;

**(2) SECTION D. LOSS CONDITIONS, 7. Valuation;** and

**(3) SECTION E. ADDITIONAL CONDITIONS, 1. Coinsurance.**

Our payment under the provisions of this paragraph does not alter any right of subrogation we may have against any entity, including the owner or insurer of the adjoining building, and does not alter the terms of **COMMERCIAL PROPERTY CONDITIONS, I. Transfer Of Rights Of Recovery Against Others To Us** in this Coverage Part.

**5. Recovered Property**

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, the property will be returned to you. You must then return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limit of Insurance.

**6. Vacancy**

**a. Description of Terms**

**(1)** As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in **(1)(a)** and **(1)(b)** below:

**(a)** When this Coverage Part is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations.

**(b)** When this Coverage Part is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:

**1)** Rented to a lessee or sublessee and used by them to conduct their customary operations; or

**2)** Used by the building owner to conduct customary operations.

**(2)** Buildings under construction or renovation are not considered vacant.

**b. Vacancy Provisions**

If the building where direct "loss" occurs has been vacant for more than 60 consecutive days before that "loss", we will:

**(1)** Not pay for any "loss" caused by any of the following, even if they are Covered Causes of Loss:

**(a)** Vandalism;

**(b)** Sprinkler leakage, unless you have protected the system against freezing;

**(c)** Building glass breakage;

**(d)** Water damage;

**(e)** Theft; or

**(f)** Attempted theft.

**(2)** Reduce the amount we would otherwise pay for the "loss" by 15% with respect to Covered Causes of Loss other than those listed in **b.(1)(a)** through **b.(1)(f)** of this Loss Condition.

**7. Valuation**

We will determine the value of Covered Property in the event of direct "loss" as follows:

**a.** At "Actual Cash Value" as of the time of direct "loss", except as provided in **b., c., d.,** and **e.** below.

**b.** If the Limit of Insurance for Building satisfies **SECTION E. ADDITIONAL CONDITIONS, 1. Coinsurance,** and the cost to repair or replace the damaged building property is $2,500 or less, we will pay the cost of building repairs or replacement.

The cost of building repairs or replacement does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property. However, the following property will be valued at actual cash value even when attached to the building:

**(1)** Awnings or floor coverings;

**(2)** Appliances for refrigerating, ventilating, cooking, dishwashing or laundering; or

**(3)** Outdoor equipment or furniture.

**c.** "Stock" you have sold but not delivered at the selling price less discounts and expenses you otherwise would have had.

d. Glass at the cost of replacement with safety glazing material if required by law.

e. Tenant's Improvements and Betterments at:

**(1)** Replacement Cost of the lost or damaged property if you make repairs promptly.

**(2)** A proportion of your original cost if you do not make repairs promptly. We will determine the proportionate value as follows:

   **(a)** Multiply the original cost by the number of days from the "loss" or damage to the expiration of the lease; and

   **(b)** Divide the amount determined in **(a)** above by the number of days from the installation of improvements to the expiration of the lease.

   If your lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure.

**(3)** Nothing if others pay for repairs or replacement.

**(4)** For the purposes of valuation, tenants' improvements and betterments are not considered to be the personal property of others.

## SECTION E. ADDITIONAL CONDITIONS

The following conditions apply in addition to the **COMMON POLICY CONDITIONS** and the **COMMERCIAL PROPERTY CONDITIONS.**

1. **Coinsurance**

   If a Coinsurance percentage is shown in the Declarations, the following condition applies.

   a. We will not pay the full amount of any "loss" if the value of Covered Property at the time of direct "loss" times the Coinsurance percentage shown for it in the Declarations is greater than the Limit of Insurance for the property.

   Instead, we will determine the most we will pay using the following steps:

   **(1)** Multiply the value of Covered Property at the time of direct "loss" by the Coinsurance percentage;

   **(2)** Divide the Limit of Insurance of the property by the figure determined in step **(1)**;

**(3)** Multiply to the total amount of "loss", before the application of any deductible, by the figure determined in step **(2)**; and

**(4)** Subtract the deductible from the figure determined in step **(3).**

We will pay the amount determined in step **(4)** or the Limit of Insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the "loss" yourself.

**Example No. 1 (Underinsurance):**

The value of the property is: $250,000
The coinsurance percentage is: 80%
The Limit of Insurance is: $100,000
The Deductible is: $250
The amount of "loss" is: $40,000

Step (1):

$250,000 X 80% = $200,000 (the minimum amount of insurance to meet your Coinsurance requirements)

Step (2):

$100,000 divided by $200,000 = .50

Step (3):

$40,000 X .50 = $20,000

Step (4):

$20,000 - $250 = $19,750.

We will pay no more than $19,750. The remaining $20,250 is not covered.

**Example No. 2 (Adequate Insurance):**

The value of the property is: $250,000
The coinsurance percentage is: 80%
The Limit of Insurance is: $200,000
The Deductible is: $250
The amount of "loss" is: $40,000

Step (1):

$250,000 X 80% = $200,000 (the minimum amount of insurance to meet your Coinsurance requirements)

Step (2):

$200,000 : $200,000 = 1.00

Step (3):

$40,000 X 1.00 = $40,000

Step (4):

$40,000 - $250 = $39,750.

**FM 101 05 16**

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Page 35 of 40

We will pay no more than $39,750 "loss" in excess of the Deductible. No penalty applies.

**b.** If one Limit of Insurance applies to two or more separate items, this condition will apply to the total of all property to which the limit applies.

### Example No. 3:

The values of the property are:

| | |
|---|---|
| Bldg. at Location No. 1: | $75,000 |
| Bldg. at Location No. 2: | $100,000 |
| Personal Property at Location No. 2: | $75,000 |
| | 250,000 |

| | |
|---|---|
| The coinsurance percentage is: | 90% |
| The Limit of Insurance for Buildings and Personal Property at Location Nos. 1 and 2 is: | $180,000 |
| The Deductible is: | $1,000 |
| The amount of "loss" is: | |
| Bldg. at Location No. 2: | $30,000 |
| Personal Property at Location No. 2: | $20,000 |
| | $50,000 |

Step (1):

$250,000 X 90% = $225,000
(the minimum amount of insurance to meet your Coinsurance requirements and to avoid the penalty shown below)

Step (2):
$180,000 : $225,000 = .80

Step (3):
$50,000 X .80 = $40,000

Step (4):

$40,000 - $1,000 = $39,000.

We will pay no more than $39,000. The remaining $11,000 is not covered.

**2. Mortgage Holders**

**a.** The term "mortgage holder" includes trustee.

**b.** We will pay for covered "loss" to buildings or structures to each mortgage holder shown in the Declarations in their order of precedence, as interests may appear.

**c.** The mortgage holder has the right to receive loss payment even if the mortgage holder has started foreclosure or similar action on the building or structure.

**d.** If we deny your claim because of your acts or because you have failed to comply with the terms of this Coverage Part, the mortgage holder will still have the right to receive loss payment if the mortgage holder:

**(1)** Pays any premium due under this Coverage Part at our request if you have failed to do so;

**(2)** Submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgage holder.

All of the terms of this Coverage Part will then apply directly to the mortgage holder.

**e.** If we pay the mortgage holder for any "loss" and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

**(1)** The mortgage holder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

**(2)** The mortgage holder's right to recover the full amount of the mortgage holder's claim will not be impaired.

At our option, we may pay to the mortgage holder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

**f.** If we cancel this policy, we will give written notice to the mortgage holder at least:

**(1)** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

**g.** If we elect not to renew this policy, we will give written notice to the mortgage holder at least ten days before the expiration date of this policy.

## SECTION F. OPTIONAL COVERAGES

If shown as applicable in the Declarations, the following Optional Coverages apply separately to each item.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

1.  **Agreed Value**

    a.  The Additional Condition, Coinsurance, does not apply to Covered Property to which this Optional Coverage applies. We will pay no more for direct "loss" to that property than the proportion that the Limit of Insurance under this Coverage Part for the property bears to the Limit of Insurance indicated in the most current Statement of Values that applies to this Coverage Part.

    b.  If the Agreed Value Optional Coverage is deleted from the policy, the Additional Condition, Coinsurance, is reinstated and this Optional Coverage does not apply.

    c.  The terms of this Optional Coverage apply only to "loss" that occurs:

        (1)  On or after the effective date of this Optional Coverage; and

        (2)  Before the policy expiration date.

    d.  This Agreed Value Optional Coverage does not apply to **SECTION A. COVERAGE, 5. Coverage Extensions, b. Business Income and Extra Expense.**

2.  **Inflation Guard**

    a.  The Limit of Insurance for property to which this Optional Coverage applies will automatically increase by the annual percentage shown in the Declarations.

    b.  The amount of increase will be:

        (1)  The Limit of Insurance that applied on the beginning of the current "coverage term" or any other Coverage Part change amending the Limit of Insurance, multiplied by

        (2)  The percentage of annual increase shown in the Declarations, expressed as a decimal (example: 8% is .08), multiplied by

        (3)  The number of days since the beginning of the current "coverage term" or the effective date of the most recent policy change amending the Limit of Insurance, divided by 365. In the event of "loss", this number of days ends at the original date of "loss".

        Example:

        If:   The applicable Limit of Insurance is: $100,000

              The Annual percentage increase is: 8%

              The number of days since the beginning of the policy year (or last policy change) is: 146

              The amount of increase is $100,000 X .08 X (146/365) = $3,200

3.  **Replacement Cost**

    a.  Replacement Cost (without deduction for depreciation) replaces "Actual Cash Value" in **SECTION D. LOSS CONDITIONS, 7. Valuation** of this **BUILDING AND PERSONAL PROPERTY COVERAGE FORM.**

    b.  This Optional Coverage does not apply to:

        (1)  Personal Property of others, except leased personal property as described in **SECTION A. COVERAGE, 1. Covered Property, d. (7).** The valuation of such leased personal property will be based on the amount for which you are liable under the lease, but not to exceed the replacement cost of the leased item.

        (2)  Personal effects;

        (3)  Contents of a residence;

        (4)  Manuscripts;

        (5)  Works of art, antiques or rare articles, including etchings, pictures, statuary, marbles, bronzes, porcelains and bric-a-brac;

        (6)  "Stock" unless the Replacement Cost including "Stock" option is shown in the Declarations; or

        (7)  Property, that at the time of "loss":

            (a)  Is outdated, or obsolete and is stored or not being used; or

            (b)  Has no practical value to you.

    c.  You may make a claim for "loss" covered by this insurance on an "Actual Cash Value" basis instead of on a replacement cost basis. In the event you elect to have "loss" settled on an "Actual Cash Value" basis, you may still make a claim for the additional coverage this Optional Coverage provides if you notify us of your intent to do so within 180 days after the "loss".

    d.  We will not pay on a replacement cost basis for any "loss":

        (1)  Until the lost or damaged property is actually repaired or replaced with other property of generally the same construction and used for the same

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

purpose as the lost or damaged property; and

**(2)** Unless the repairs or replacement have been completed or at least underway within 2 years following the date of "loss".

**e.** We will not pay more for "loss" on a replacement cost basis than the least of:

**(1)** The Limit of Insurance applicable to the lost or damaged property;

**(2)** The cost to replace, on the same "premises", the lost or damaged property with other property:

**(a)** Of comparable material and quality; and

**(b)** Used for the same purpose; or

**(3)** The amount you actually spend that is necessary to repair or replace the lost or damaged property.

**f.** The cost of repair or replacement does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use, or repair of any building or structure except as provided in **SECTION A. COVERAGE, 4. Additional Coverages, g. Ordinance or Law.**

## SECTION G. DEFINITIONS

**1.** "Actual cash value" means replacement cost less a deduction that reflects depreciation, age, condition and obsolescence.

**2.** "Business Income" means the:

**a.** Net Income (net profit or loss before income taxes) that would have been earned or incurred; and

**b.** Continuing normal operating expenses sustained, including payroll.

**3.** "Computer programs" means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data.

**4.** "Coverage term" means the following individual increment, or if a multi-year policy period, increments, of time, which comprise the policy period of this Coverage Part:

**a.** The year commencing on the Effective Date of this Coverage Part at 12:01 A.M. standard time at your mailing address shown in the Declarations, and if a multi-year policy period, each consecutive annual period thereafter, or portion thereof if

any period is for a period of less than 12 months, constitute individual "coverage terms". The last "coverage term" ends at 12:00 A.M. standard time at your mailing address shown in the Declarations on the earlier of:

**(1)** The day the policy period shown in the Declarations ends; or

**(2)** The day the policy to which this Coverage Part is attached is terminated or cancelled.

**b.** However, if after the issuance of this Coverage Part, any "coverage term" is extended for an additional period of less than 12 months, that additional period of time will be deemed to be part of the last preceding "coverage term".

**5.** "Electronic data" means information, facts or "computer programs" stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment.

**6.** "Finished stock" means stock you have manufactured, except "stock" you have manufactured that is held for sale on the "premises" of any retail outlet insured under this Coverage Part.

**7.** "Fungi" means any type or form of fungus, and includes, but is not limited to, any form or type of mold, mushroom or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

**8.** "Loss" means accidental physical loss or accidental physical damage.

**9.** "Money" means:

**a.** Currency, coins and bank notes whether or not in current use; and

**b.** Travelers checks, registered checks and money orders held for sale to the public.

**10.** "Operations" means:

**a.** Your business activities occurring at the "premises"; and

**b.** The tenantability of the "premises", if coverage for "Business Income" including "Rental Value" or "Rental Value" applies.

**11.** "Period of restoration" means the period of time that:

**a.** Begins at the time of direct "loss".

**b.** Ends on the earlier of:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

FM 101 05 16

**(1)** The date when the property at the "premises" should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

**(2)** The date when business is resumed at a new permanent location.

**c.** "Period of restoration" does not include any increased period required due to the enforcement of or compliance with any ordinance or law that:

**(1)** Regulates the construction, use or repair, or requires the tearing down of any property; or

**(2)** Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of "pollutants".

**d.** The expiration date of the policy will not cut short the "period of restoration".

**12.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, asbestos, chemicals, petroleum, petroleum products and petroleum by-products, and waste. Waste includes materials to be recycled, reconditioned or reclaimed. "Pollutants" include but are not limited to substances which are generally recognized in industry or government to be harmful or toxic to persons, property, or the environment regardless of whether injury or damage is caused directly or indirectly by the "pollutants" and whether:

**a.** You are regularly or otherwise engaged in activities which taint or degrade the environment; or

**b.** You use, generate or produce the "pollutant".

**13.** "Premises" means the Locations and Buildings described in the Declarations.

**14.** "Rental Value" means "Business Income" that consists of :

**a.** Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred as rental income from tenant occupancy of the "premises" described in the Declarations as furnished and equipped by you, including fair rental value of any portion of the "premises" which is occupied by you; and

**b.** Continuing normal operating expenses incurred in connection with that "premises", including:

**(1)** Payroll; and

**(2)** The amount of charges, which are the legal obligation of the tenant(s) but would otherwise be your obligations.

**15.** "Securities" means negotiable and non-negotiable instruments or contracts representing either "money" or other property and includes:

**a.** Tokens, tickets, revenue and other stamps whether or not in current use; and

**b.** Evidences of debt issued in connection with credit or charge cards, which are not of your own issue; but does not include "money". Lottery tickets held for sale are not "securities" or evidences of debt.

**16.** "Sinkhole collapse" means the sudden settlement or collapse of earth supporting the Covered Property into subterranean voids created by the action of water on a limestone or similar rock formation. This does not include:

**a.** The cost of filling sinkholes;

**b.** Sinking or collapse of land into man-made subterranean cavities; or

**c.** The value of the land.

**17.** "Specified causes of loss" means fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; "sinkhole collapse"; volcanic action; falling objects; weight of snow, ice or sleet; and water damage.

**a.** Falling objects does not include "loss" to:

**(1)** Personal property in the open; or

**(2)** The interior of a building or structure, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object.

**b.** Water damage means:

**(1)** Accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of any part of a system or appliance (other than a sump system including its related equipment and parts) containing water or steam; and

**(2)** Accidental discharge or leakage of water or waterborne material as the direct result of the breaking apart or cracking of a water or sewer pipe that is located off the "premises" and is part of a municipal potable water supply system or municipal sanitary sewer system, if the breakage or cracking is caused by wear and tear.

FM 101 05 16

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

But water damage does not include "loss" otherwise excluded under the terms of **BUILDING AND BUSINESS PERSONAL PROPERTY, SECTION A. COVERAGE, 3. Covered Causes of Loss, (g) Water.** Therefore, for example, there is no coverage under this Coverage Part in the situation in which discharge or leakage of water results from the breaking apart or cracking of a pipe which was caused by or related to weather-induced flooding, even if wear and tear contributed to the breakage or cracking. As another example, and also in accordance with the terms of the Exclusion **(g) Water,** there is no coverage for "loss" caused by or related to weather-induced flooding which follows or is exacerbated by pipe breakage or cracking attributable to wear and tear.

To the extent that accidental discharge or leakage of water falls within the criteria set forth in **18.b.(1)** or **18.b.(2)** of this definition of "Specified causes of loss", such water is not subject to the provisions of Exclusion **(g) Water.**

18. "Stock" means merchandise held in storage or for sale, raw materials and in-process or finished goods, including supplies used in their packing or shipping.

19. "Suspension" means:

    a. The slowdown or cessation of your business activities; and

    b. That a part or all of the "premises" is rendered untenantable.

20. "Valuable papers and records" means inscribed, printed or written documents, manuscripts or records, including abstracts, books, card index systems, deeds, drawings, films, maps, mortgages, or proprietary information.

    But "valuable papers and records" does not mean "money" or "securities" or "electronic data", including the materials on which the "electronic data" is recorded.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SOUTH CAROLINA CHANGES--VALUATION

This endorsement modifies insurance provided under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
BUILDERS' RISK COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM
STANDARD PROPERTY POLICY

**SCHEDULE\***

| Prem. No. | Bldg. No. | Agreed Value of Buildings | Total Amount of Insurance to be Carried |
|---|---|---|---|
| | | | |

**A.** When this endorsement is attached to the STANDARD PROPERTY POLICY CP 00 99 the term Coverage Part in this endorsement is replaced by the term Policy.

**B.** The following is added to VALUATION Loss Condition:

    **1.** For loss or damage to buildings caused by or resulting from fire or lightning, you and we agree that:

        **a.** The value of buildings described in this Coverage Part; and

        **b.** The total amount of insurance to be carried on the buildings, including this Coverage Part;

    are the amounts shown in the Schedule.

    **2.** The following applies to the Builders' Risk Coverage Form or the Builders' Risk Changes -- Standard Property Policy, if applicable:

    The Agreed Value of Buildings represents the value of the building when it is completed.

\*Information required to complete this Schedule, if not shown on this endorsement, will be shown in the Declarations.

**CP 01 10 07 88**      Copyright, ISO Commercial Risk Services, Inc., 1984, 1987

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PENNSYLVANIA CHANGES - ACTUAL CASH VALUE

This endorsement modifies insurance provided under the following:

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM (INCLUDING SPECIAL CAUSES OF LOSS)**

**1. SECTION G. DEFINITIONS, 1. "Actual Cash Value"** is deleted in its entirety and replaced by the following:

1. "Actual Cash Value" means the amount it would cost to repair or replace Covered Property, at the time of loss or damage, with material of like kind and quality, subject to a deduction for deterioration, depreciation and obsolescence. "Actual cash value" applies to valuation of Covered Property regardless of whether that property has sustained partial or total loss or damage.

    The "actual cash value" of the lost or damaged property may be significantly less than its replacement cost.

FA 4013 PA 11 02

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# PENNSYLVANIA CHANGES

This endorsement modifies insurance provided under the following:

**COMMERCIAL PROPERTY COVERAGE PART**

A.  Exclusion **(1)(d) Nuclear Hazard** in **SECTION A. COVERAGE, 3. Covered Causes of Loss, b. Exclusions** of the **BUILDING AND PERSONAL PROPERTY COVERAGE FORM** is deleted in its entirety and replaced by the following:

**(1)(d) Nuclear Hazard**

Nuclear reaction or radiation, or radioactive contamination, however caused.  However, if nuclear reaction or radiation, or radioactive contamination, results in fire, we will pay for the "loss" caused by that fire.

B.  Exclusion **2.d. Nuclear Hazard** in **SECTION E. EXCLUSIONS** of the **MORTGAGE INTEREST COVERAGE FORM** is deleted in its entirety and replaced by the following:

**2.d. Nuclear Hazard**

Nuclear reaction or radiation, or radioactive contamination, however caused.  However, if nuclear reaction or radiation, or radioactive contamination, results in fire, we will pay for the "loss" caused by that fire.

FA 4028 PA 11 05

# CinciPlus®

## COMMERCIAL PROPERTY POWER XC+® (EXPANDED COVERAGE PLUS) ENDORSEMENT

### SUMMARY OF COVERAGE LIMITS

This is a summary of the Coverages and the Limits of Insurance provided by the Commercial Property Power XC+®(Expanded Coverage Plus) Endorsement, **FA 258**, in combination with the Commercial Property Coverage Form, **FM101**, which is included in this policy. **No coverage is provided by this summary.** Refer to endorsement **FA 258** and the Commercial Property Coverage Form, **FM 101**, to determine the scope of your insurance protection.

| Blanket Coverages: | Blanket Coverage Limit: $150,000 in total for all loss arising from all Blanket Coverages arising from a single occurrence, except as noted otherwise in the form. | Page No. (FA 258): |
|---|---|---|
| Accounts Receivable | | 1 |
| Debris Removal | | 8 |
| Electronic Data Processing Property (EDP): | | 2 |
| Duplicate and Backup Electronic Data | $2,000 in addition to the Blanket Coverage Limit | 3 |
| Newly Acquired EDP | $10,000 in addition to the Blanket Coverage Limit | 3 |
| In Transit or Away From Premises | $10,000 as part of the Blanket Coverage Limit | 4 |
| Worldwide Laptop Coverage | | 4 |
| Ordinance or Law (Increased Construction Costs and Demolition) | | 6 |
| Peak Season | | 8 |
| Personal Property of Others | | 8 |
| Tenant Move Back Expenses | | 7 |
| Valuable Papers and Records | | 6 |

| Other Coverages (not subject to Blanket Coverage Limit): | Limit of Insurance: | Page No. (FA 258): |
|---|---|---|
| Brands and Labels | $25,000 | 11 |
| Business Income and Extra Expense: | $100,000 | 1 |
| Business Income From Dependent Properties | $5,000 (sub-limit, subject to a 24 hour deductible) | 1 |
| Interruption of Computer Operations | $25,000 (sub-limit, subject to a 24 hour deductible) | 2 |

FA 4098 01 09

| Other Coverages (not subject to Blanket Coverage Limit): | Limit of Insurance: | Page No. (FA 258): |
|---|---|---|
| Fine Arts | $25,000 | 5 |
| Fire Department Service Charge | $25,000 | 7 |
| Fire Protection Equipment Recharge | $50,000 | 8 |
| Inflation Guard | 4% on all Building Property referenced in the Declarations | 11 |
| Non-Owned Building Damage: | | 10 |
| Loss caused by theft, burglary or robbery | Up to the Business Personal Property (BPP) Limit of Insurance | 10 |
| Loss by any other Covered Cause of Loss | $25,000 or the BPP Limit of Insurance (whichever is less) | 10 |
| Ordinance or Law (other than Increased Construction Costs and Demolition) | Subject to the Building Limit of Insurance | 6 |
| Outdoor Property | $25,000 ($1,000 for any one tree, shrub or plant) | 7 |
| Paved Surfaces | $20,000 | 8 |
| Personal Effects | $25,000 ($1,000 for loss by theft) | 7 |
| Pollutant Clean Up and Removal | $25,000 | 6 |
| Signs | $10,000 | 7 |
| Temperature Change | $15,000 | 9 |
| Underground Property | Subject to the Building Limit of Insurance | 6 |
| Utility Services - direct and time element | $75,000 | 11 |
| Overhead transmission and distribution lines | $5,000 sublimit at 24 hr waiting period | 11 |
| Water Backup from Sewers, Drains or Sumps | $10,000 | 7 |

FA 4098 01 09

# COMMERCIAL PROPERTY CONDITIONS

This Coverage Part is subject to the following conditions, the Common Policy Conditions and applicable Loss Conditions and Additional Conditions in Commercial Property Coverage Forms.

## A. Concealment, Misrepresentation or Fraud

This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

1. This Coverage Part;

2. The Covered Property;

3. Your interest in the Covered Property; or

4. A claim under this Coverage Part.

## B. Control of Property

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage Part at any one or more locations will not affect coverage at any location where, at the time of direct "loss", the breach of condition does not exist.

## C. Insurance Under Two or More Coverages

If two or more of this policy's coverages apply to the same "loss", we will not pay more than the actual amount of the "loss".

## D. Legal Action Against Us

No one may bring a legal action against us under this Coverage Part unless:

1. There has been full compliance with all of the terms of this Coverage Part; and

2. The action is brought within 2 years after the date on which the direct "loss" occurred.

## E. Liberalization

If, within 60 days prior to the beginning of this Coverage Part or during the policy period, we make any changes to any forms or endorsements of this Coverage Part for which there is currently no separate premium charge, and that change provides more coverage than this Coverage Part, the change will be considered as included until the end of the current policy period. We will make no additional premium charge for this additional coverage during the interim.

## F. No Benefit to Bailee

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

## G. Other Insurance

1. You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Part. If you do, we will pay our share of the covered "loss". Our share is the proportion that the applicable Limit of Insurance under this Coverage Part bears to the Limits of Insurance of all insurance covering on the same basis.

2. If there is other insurance covering the same "loss", other than that described in 1. above, we will pay only for the amount of covered "loss" in excess of the amount due from that other insurance, whether you can collect on it or not. **However, we will not reimburse any deductible or difference between Actual Cash Value and Replacement Cost valuations.** We will not pay more than the applicable Limit of Insurance.

## H. Policy Period, Coverage Territory

Under this Coverage Part:

1. We cover "loss" commencing:

   a. During the policy period shown in the Declarations; and

   b. Within the coverage territory.

2. The coverage territory:

   a. The United States of America (including its territories and possessions);

   b. Puerto Rico; and

   c. Canada.

## I. Transfer of Rights of Recovery Against Others to Us

If any person or organization to or for whom we make payment under this Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after direct "loss" to impair them. But you may waive your rights against another party in writing:

FA 450 05 16

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

1. Prior to a direct "loss" to your Covered Property or Covered Income.

2. After a direct "loss" to your Covered Property or Covered Income only if, at time of direct "loss", that party is one of the following:

    a. Someone insured by this insurance;

b. A business firm:

    (1) Owned or controlled by you; or

    (2) That owns or controls you; or

c. Your tenant.

This will not restrict your insurance.

FA 450 05 16

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Page 2 of 2

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ORDINARY PAYROLL LIMITATION OR EXCLUSION

This endorsement modifies insurance provided under the following:

### COMMERCIAL PROPERTY COVERAGE PART

## SCHEDULE

| Location Number | Building Number | Number of Days Ordinary Payroll Coverage is Provided | Additional Exemptions | |
|---|---|---|---|---|
| | | | Job Classifications | Employees |
| 1 | 1 | 9 0 | | |

**A. Applicable Coverage Forms**

This endorsement applies to the following Coverage Forms:

**1. BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM**, and

**2. BUSINESS INCOME (WITHOUT EXTRA EXPENSE) COVERAGE FORM**

**B.** Business Income includes "ordinary payroll expenses" only for the number of days shown in the Schedule, or in the Declarations, following the date of direct physical "loss". If no entry is made, "ordinary payroll expenses" are excluded.

**C.** In determining the operating expenses for the policy year for Coinsurance purposes, payroll expenses will not include "ordinary payroll expenses", except for "ordinary payroll expenses" incurred during the number of days shown in the Schedule, or in the Declarations. If the "ordinary payroll expenses" for the policy year vary during the year, the period of greatest "ordinary payroll expenses" will be used.

**D.** "Ordinary payroll expenses" means payroll expenses for all your employees except:

**1.** Officers;

**2.** Executives;

**3.** Department managers;

**4.** Employees under contract; and

**5.** Additional Exemptions, shown in the Schedule or in the Declarations as:

**a.** Job Classifications; or

**b.** Employees.

"Ordinary payroll expenses" include:

**(1)** Payroll;

**(2)** Employee benefits, if directly related to payroll;

**(3)** FICA payments you pay;

**(4)** Union dues you pay; and

**(5)** Workers compensation premiums.

FA 465 04 04

Includes copyrighted material of ISO Commercial Risk Services, Inc., with its permission.

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

**COMMERCIAL PROPERTY COVERAGE PART**

## SCHEDULE

| Loc | Bldg | Loss Payee Name and Address: | Applicable Clause (Enter B, C, D or E): |
|-----|------|------------------------------|------------------------------------------|
| 1 | 1 | | B |

WELLS FARGO
C/O: LEASE INSURANCE SERVICES
PO BOX 979284
MIAMI, FL 33197-9284

**A.** Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

For the purposes of this endorsement only, the following are added to **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION D. LOSS CONDITIONS, 4. Loss Payment**, as indicated in the Schedule of this endorsement.

**B. Loss Payable**

For Covered Property in which both you and a Loss Payee shown in the Schedule of this endorsement have an insurable interest, we will:

1. Adjust losses with you; and

2. Pay any claim for "loss" jointly to you and the Loss Payee, as interests may appear.

**C. Lender's Loss Payable**

1. The Loss Payee shown in the Schedule of this endorsement is a creditor, including a mortgageholder or trustee, whose interest in Covered Property is established by such written instruments as:

   a. Warehouse receipts;

   b. A contract for deed;

   c. Bills of lading;

   d. Financing statements; or

   e. Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

   a. We will pay for covered "loss" to each Loss Payee in their order of precedence, as interests may appear.

   b. The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

   c. If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Part, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

      (1) Pays any premium due under this Coverage Part at our request if you have failed to do so;

      (2) Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

FA 480 02 16

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

(3) Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of this Coverage Part will then apply directly to the Loss Payee.

d. If we pay the Loss Payee for any "loss" and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

(1) The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

(2) The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

3. If we cancel this policy, we will give written notice to the Loss Payee at least:

a. 10 days before the effective date of cancellation if we cancel for your non-payment of premium; or

b. 30 days before the effective date of cancellation if we cancel for any other reason.

4. If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

D. **Contract of Sale**

1. The Loss Payee shown in the Schedule of this endorsement is a person or organization you have entered a contract with for the sale of Covered Property.

2. For Covered Property in which both you and the Loss Payee have an insurable interest we will:

a. Adjust losses with you; and

b. Pay any claim for "loss" jointly to you and the Loss Payee, as interests may appear.

3. For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

E. **Building Owner Loss Payable Clause**

1. The Loss Payee shown in the Schedule of this endorsement is the owner of the building in which you are a tenant.

2. We will adjust losses to the building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

3. We will adjust losses to tenants' improvements and betterments with you, unless the lease provides otherwise.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

**COMMERCIAL PROPERTY COVERAGE PART**

### SCHEDULE

| Loc | Bldg | Loss Payee Name and Address: | Applicable Clause (Enter B, C, D or E): |
|-----|------|------------------------------|------------------------------------------|
| 1 | 1 | | B |

MANUFACTURERS AND TRADERS TRUST COMPANY
PO BOX 15210
50 N 5TH ST 3RD FL
READING, PA 19612-5210

**A.** Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

For the purposes of this endorsement only, the following are added to **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION D. LOSS CONDITIONS, 4. Loss Payment,** as indicated in the Schedule of this endorsement.

**B. Loss Payable**

For Covered Property in which both you and a Loss Payee shown in the Schedule of this endorsement have an insurable interest, we will:

**1.** Adjust losses with you; and

**2.** Pay any claim for "loss" jointly to you and the Loss Payee, as interests may appear.

**C. Lender's Loss Payable**

**1.** The Loss Payee shown in the Schedule of this endorsement is a creditor, including a mortgageholder or trustee, whose interest in Covered Property is established by such written instruments as:

**a.** Warehouse receipts;

**b.** A contract for deed;

**c.** Bills of lading;

**d.** Financing statements; or

**e.** Mortgages, deeds of trust, or security agreements.

**2.** For Covered Property in which both you and a Loss Payee have an insurable interest:

**a.** We will pay for covered "loss" to each Loss Payee in their order of precedence, as interests may appear.

**b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Part, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

**(1)** Pays any premium due under this Coverage Part at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

FA 480 02 16

Page 1 of 2

(3) Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of this Coverage Part will then apply directly to the Loss Payee.

d. If we pay the Loss Payee for any "loss" and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

(1) The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

(2) The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

3. If we cancel this policy, we will give written notice to the Loss Payee at least:

a. 10 days before the effective date of cancellation if we cancel for your non-payment of premium; or

b. 30 days before the effective date of cancellation if we cancel for any other reason.

4. If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

D. Contract of Sale

1. The Loss Payee shown in the Schedule of this endorsement is a person or organization you have entered a contract with for the sale of Covered Property.

2. For Covered Property in which both you and the Loss Payee have an insurable interest we will:

a. Adjust losses with you; and

b. Pay any claim for "loss" jointly to you and the Loss Payee, as interests may appear.

3. For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

E. Building Owner Loss Payable Clause

1. The Loss Payee shown in the Schedule of this endorsement is the owner of the building in which you are a tenant.

2. We will adjust losses to the building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

3. We will adjust losses to tenants' improvements and betterments with you, unless the lease provides otherwise.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

**COMMERCIAL PROPERTY COVERAGE PART**

## SCHEDULE

| Loc | Bldg | Loss Payee Name and Address: | Applicable Clause (Enter B, C, D or E): |
|---|---|---|---|
| 1 | 1 | | B |

M&T BANK
50 N 5TH ST
READING, PA 19601-3417

**A.** Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

For the purposes of this endorsement only, the following are added to **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION D. LOSS CONDITIONS, 4. Loss Payment,** as indicated in the Schedule of this endorsement.

**B. Loss Payable**

For Covered Property in which both you and a Loss Payee shown in the Schedule of this endorsement have an insurable interest, we will:

    **1.** Adjust losses with you; and

    **2.** Pay any claim for "loss" jointly to you and the Loss Payee, as interests may appear.

**C. Lender's Loss Payable**

    **1.** The Loss Payee shown in the Schedule of this endorsement is a creditor, including a mortgageholder or trustee, whose interest in Covered Property is established by such written instruments as:

        **a.** Warehouse receipts;

        **b.** A contract for deed;

        **c.** Bills of lading;

        **d.** Financing statements; or

        **e.** Mortgages, deeds of trust, or security agreements.

    **2.** For Covered Property in which both you and a Loss Payee have an insurable interest:

        **a.** We will pay for covered "loss" to each Loss Payee in their order of precedence, as interests may appear.

        **b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

        **c.** If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Part, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

            **(1)** Pays any premium due under this Coverage Part at our request if you have failed to do so;

            **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

**FA 480 02 16**

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Page 1 of 2

(3) Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of this Coverage Part will then apply directly to the Loss Payee.

d. If we pay the Loss Payee for any "loss" and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

(1) The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

(2) The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

3. If we cancel this policy, we will give written notice to the Loss Payee at least:

a. 10 days before the effective date of cancellation if we cancel for your non-payment of premium; or

b. 30 days before the effective date of cancellation if we cancel for any other reason.

4. If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**D. Contract of Sale**

1. The Loss Payee shown in the Schedule of this endorsement is a person or organization you have entered a contract with for the sale of Covered Property.

2. For Covered Property in which both you and the Loss Payee have an insurable interest we will:

a. Adjust losses with you; and

b. Pay any claim for "loss" jointly to you and the Loss Payee, as interests may appear.

3. For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**E. Building Owner Loss Payable Clause**

1. The Loss Payee shown in the Schedule of this endorsement is the owner of the building in which you are a tenant.

2. We will adjust losses to the building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

3. We will adjust losses to tenants' improvements and betterments with you, unless the lease provides otherwise.

FA 480 02 16

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART

## SCHEDULE

| Loc | Bldg | Loss Payee Name and Address: | Applicable Clause (Enter B, C, D or E): |
|-----|------|------------------------------|------------------------------------------|
| 1 | 1 | | C |

WELLS FARGO EQUIPMENT FINANCE
C/O: INSURANCE SERVICE CENTER
PO BOX 979126
MIAMI, FL 33197-9126

A. Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

For the purposes of this endorsement only, the following are added to **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION D. LOSS CONDITIONS, 4. Loss Payment,** as indicated in the Schedule of this endorsement.

B. **Loss Payable**

For Covered Property in which both you and a Loss Payee shown in the Schedule of this endorsement have an insurable interest, we will:

1. Adjust losses with you; and

2. Pay any claim for "loss" jointly to you and the Loss Payee, as interests may appear.

C. **Lender's Loss Payable**

1. The Loss Payee shown in the Schedule of this endorsement is a creditor, including a mortgageholder or trustee, whose interest in Covered Property is established by such written instruments as:

   a. Warehouse receipts;

   b. A contract for deed;

   c. Bills of lading;

   d. Financing statements; or

   e. Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

   a. We will pay for covered "loss" to each Loss Payee in their order of precedence, as interests may appear.

   b. The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

   c. If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Part, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

      (1) Pays any premium due under this Coverage Part at our request if you have failed to do so;

      (2) Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

FA 480 02 16

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Page 1 of 2

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of this Coverage Part will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any "loss" and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

**(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

**(2)** The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

**a.** 10 days before the effective date of cancellation if we cancel for your non-payment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**D. Contract of Sale**

**1.** The Loss Payee shown in the Schedule of this endorsement is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest we will:

**a.** Adjust losses with you; and

**b.** Pay any claim for "loss" jointly to you and the Loss Payee, as interests may appear.

**3.** For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**E. Building Owner Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule of this endorsement is the owner of the building in which you are a tenant.

**2.** We will adjust losses to the building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenants' improvements and betterments with you, unless the lease provides otherwise.

FA 480 02 16

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

**COMMERCIAL PROPERTY COVERAGE PART**

### SCHEDULE

| Loc | Bldg | Loss Payee Name and Address: | Applicable Clause (Enter B, C, D or E): |
|-----|------|-------------------------------|-----------------------------------------|
| 1 | 1 | | C |

WELLS FARGO FINANCIAL
PO BOX 979284
MIAMI, FL 33197-9284

**A.** Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

For the purposes of this endorsement only, the following are added to **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION D. LOSS CONDITIONS, 4. Loss Payment,** as indicated in the Schedule of this endorsement.

**B. Loss Payable**

For Covered Property in which both you and a Loss Payee shown in the Schedule of this endorsement have an insurable interest, we will:

**1.** Adjust losses with you; and

**2.** Pay any claim for "loss" jointly to you and the Loss Payee, as interests may appear.

**C. Lender's Loss Payable**

**1.** The Loss Payee shown in the Schedule of this endorsement is a creditor, including a mortgageholder or trustee, whose interest in Covered Property is established by such written instruments as:

**a.** Warehouse receipts;

**b.** A contract for deed;

**c.** Bills of lading;

**d.** Financing statements; or

**e.** Mortgages, deeds of trust, or security agreements.

**2.** For Covered Property in which both you and a Loss Payee have an insurable interest:

**a.** We will pay for covered "loss" to each Loss Payee in their order of precedence, as interests may appear.

**b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Part, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

**(1)** Pays any premium due under this Coverage Part at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

FA 480 02 16

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Page 1 of 2

(3) Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of this Coverage Part will then apply directly to the Loss Payee.

d. If we pay the Loss Payee for any "loss" and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

(1) The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

(2) The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

3. If we cancel this policy, we will give written notice to the Loss Payee at least:

a. 10 days before the effective date of cancellation if we cancel for your non-payment of premium; or

b. 30 days before the effective date of cancellation if we cancel for any other reason.

4. If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**D. Contract of Sale**

1. The Loss Payee shown in the Schedule of this endorsement is a person or organization you have entered a contract with for the sale of Covered Property.

2. For Covered Property in which both you and the Loss Payee have an insurable interest we will:

a. Adjust losses with you; and

b. Pay any claim for "loss" jointly to you and the Loss Payee, as interests may appear.

3. For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**E. Building Owner Loss Payable Clause**

1. The Loss Payee shown in the Schedule of this endorsement is the owner of the building in which you are a tenant.

2. We will adjust losses to the building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

3. We will adjust losses to tenants' improvements and betterments with you, unless the lease provides otherwise.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

**COMMERCIAL PROPERTY COVERAGE PART**

### SCHEDULE

| Loc | Bldg | Loss Payee Name and Address: | Applicable Clause (Enter B, C, D or E): |
|-----|------|------------------------------|------------------------------------------|
| 1 | 1 | | B |

MANUFACTURERS & TRADERS TRUST COMPANY
PO BOX 1358
BUFFALO, NY 14240-1358

**A.** Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

For the purposes of this endorsement only, the following are added to **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION D. LOSS CONDITIONS, 4. Loss Payment**, as indicated in the Schedule of this endorsement.

**B. Loss Payable**

For Covered Property in which both you and a Loss Payee shown in the Schedule of this endorsement have an insurable interest, we will:

1. Adjust losses with you; and

2. Pay any claim for "loss" jointly to you and the Loss Payee, as interests may appear.

**C. Lender's Loss Payable**

1. The Loss Payee shown in the Schedule of this endorsement is a creditor, including a mortgageholder or trustee, whose interest in Covered Property is established by such written instruments as:

    **a.** Warehouse receipts;

    **b.** A contract for deed;

    **c.** Bills of lading;

    **d.** Financing statements; or

    **e.** Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

    **a.** We will pay for covered "loss" to each Loss Payee in their order of precedence, as interests may appear.

    **b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

    **c.** If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Part, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

       **(1)** Pays any premium due under this Coverage Part at our request if you have failed to do so;

       **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

FA 480 02 16

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

(3) Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of this Coverage Part will then apply directly to the Loss Payee.

d. If we pay the Loss Payee for any "loss" and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

(1) The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

(2) The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

3. If we cancel this policy, we will give written notice to the Loss Payee at least:

a. 10 days before the effective date of cancellation if we cancel for your non-payment of premium; or

b. 30 days before the effective date of cancellation if we cancel for any other reason.

4. If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**D. Contract of Sale**

1. The Loss Payee shown in the Schedule of this endorsement is a person or organization you have entered a contract with for the sale of Covered Property.

2. For Covered Property in which both you and the Loss Payee have an insurable interest we will:

a. Adjust losses with you; and

b. Pay any claim for "loss" jointly to you and the Loss Payee, as interests may appear.

3. For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**E. Building Owner Loss Payable Clause**

1. The Loss Payee shown in the Schedule of this endorsement is the owner of the building in which you are a tenant.

2. We will adjust losses to the building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

3. We will adjust losses to tenants' improvements and betterments with you, unless the lease provides otherwise.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

**COMMERCIAL PROPERTY COVERAGE PART**

**SCHEDULE**

| Loc | Bldg | Loss Payee Name and Address: | Applicable Clause (Enter B, C, D or E): |
|-----|------|------------------------------|------------------------------------------|
| 3   | 1    |                              | B                                        |

MANUFACTURERS AND TRADERS TRUST COMPANY
PO BOX 15210
50 N 5TH ST 3RD FL
READING, PA 19612-5210

**A.** Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

For the purposes of this endorsement only, the following are added to **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION D. LOSS CONDITIONS, 4. Loss Payment,** as indicated in the Schedule of this endorsement.

**B. Loss Payable**

For Covered Property in which both you and a Loss Payee shown in the Schedule of this endorsement have an insurable interest, we will:

1. Adjust losses with you; and

2. Pay any claim for "loss" jointly to you and the Loss Payee, as interests may appear.

**C. Lender's Loss Payable**

1. The Loss Payee shown in the Schedule of this endorsement is a creditor, including a mortgageholder or trustee, whose interest in Covered Property is established by such written instruments as:

   **a.** Warehouse receipts;

   **b.** A contract for deed;

   **c.** Bills of lading;

   **d.** Financing statements; or

   **e.** Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

   **a.** We will pay for covered "loss" to each Loss Payee in their order of precedence, as interests may appear.

   **b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

   **c.** If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Part, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

   **(1)** Pays any premium due under this Coverage Part at our request if you have failed to do so;

   **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

**FA 480 02 16**

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**Page 1 of 2**

(3) Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of this Coverage Part will then apply directly to the Loss Payee.

d. If we pay the Loss Payee for any "loss" and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

(1) The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

(2) The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

3. If we cancel this policy, we will give written notice to the Loss Payee at least:

a. 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

b. 30 days before the effective date of cancellation if we cancel for any other reason.

4. If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

D. **Contract of Sale**

1. The Loss Payee shown in the Schedule of this endorsement is a person or organization you have entered a contract with for the sale of Covered Property.

2. For Covered Property in which both you and the Loss Payee have an insurable interest we will:

a. Adjust losses with you; and

b. Pay any claim for "loss" jointly to you and the Loss Payee, as interests may appear.

3. For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

E. **Building Owner Loss Payable Clause**

1. The Loss Payee shown in the Schedule of this endorsement is the owner of the building in which you are a tenant.

2. We will adjust losses to the building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

3. We will adjust losses to tenants' improvements and betterments with you, unless the lease provides otherwise.

FA 480 02 16

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CINCIPLUS®
# COMMERCIAL PROPERTY POWER XC+®
# (EXPANDED COVERAGE PLUS) ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART

**The insurance coverage and Limits of Insurance provided by this endorsement are excess of, and apply in addition to, any similar or identical coverage provided by any other endorsement attached to this Coverage Part, or by any other Coverage Part forming a part of the policy of insurance of which this Coverage Part forms a component.**

SCHEDULE

| | |
|---|---|
| **Blanket Coverage Limit** | $150,000 |
| Applicable only to those coverages subject to the Blanket Coverage Limit, as indicated in this endorsement | |

**A. Accounts Receivable**

For the purposes of this endorsement only:

1. In **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions, a. Accounts Receivable**, the second paragraph in **(3)(b) Away From Your Premises** is deleted in its entirety and replaced by the following:

   This limit of insurance for Away From Your Premises coverage is not included within the Blanket Coverage Limit and is separate and in addition to the Blanket Coverage Limit.

2. In **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions, a. Accounts Receivable**, the last paragraph is deleted in its entirety and replaced by the following:

   The most we will pay for loss in any one occurrence under this Accounts Receivable Coverage Extension is the Blanket Coverage Limit as provided in Section **Y** of this endorsement.

**B. Business Income and Extra Expense**

For the purposes of this endorsement only, in **BUILDING AND PERSONAL PROPERTY**

**COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions, b. Business Income and Extra Expense** is modified as follows:

1. **Business Income From Dependent Properties**

   a. For **Business Income from Dependent Properties** only, Paragraph **b.(1)** is deleted in its entirety and replaced by the following:

   **(1) Business Income From Dependent Properties**

   We will pay for the actual loss of "Business Income" you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct "loss" to "dependent property" caused by or resulting from any Covered Cause of Loss.

   However, coverage under this endorsement does not apply when the only "loss" to "dependent property" is "loss" to "electronic data", including destruction or corruption of "electronic data". If the "dependent property" sustains "loss" to

"electronic data" and other property, coverage under this endorsement will not continue once the other property is repaired, rebuilt, or replaced.

**b. Limit of Insurance for Dependent Properties**

The most we will pay for loss in one occurrence under **Business Income From Dependent Properties** is $5,000. This Limit of Insurance is included within, and is not in addition to, the Limit of Insurance for the "Business Income" and Extra Expense Coverage Extension.

**c. Loss Determination for Dependent Properties**

For **Business Income from Dependent Properties** only, the following is added:

**Resumption of Operations**

We will reduce the amount of your:

(1) "Business Income" loss, other than Extra Expense, to the extent you can resume "operations", in whole or in part, by using any other available

(a) Source of materials; or

(b) Outlet for your products.

(2) Extra Expense loss to the extent you can return "operations" to normal and discontinue such Extra Expense.

**d. Definitions**

**SECTION G. DEFINITIONS** is amended to include the following definitions:

(1) "Dependent property" means property operated by others whom you depend on to:

(a) Deliver materials or services to you, or to others for your account (Contributing Locations). But any property which delivers the following services is not a Contributing Location with respect to such services:

1) Water Supply services;

2) Power Supply services; or

3) Communication supply services, including services relating to internet access or access to any electronic network;

(b) Accept your products or services;

(c) Manufacture products for delivery to your customers under contract of sale; or

(d) Attract customers to your business.

(2) The "Period of restoration" Definition, with respect to "dependent property", is replaced by the following:

"Period of restoration" means the period of time that:

(a) Begins 24 hours after the time of direct "loss" caused by or resulting from any Covered Cause of Loss at the "premises" of the "dependent property"; and

(b) Ends on the date when the property at the "premises" of the "dependent property" should be repaired, rebuilt or replaced with reasonable speed and similar quality.

"Period of restoration" does not include any increased period required due to the enforcement of any ordinance or law that:

(a) Regulates the construction, use or repair, or requires the tearing down of any property; or

(b) Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

The expiration date of this Coverage Part will not cut short the "period of restoration".

The most we will pay is the **Business Income From Dependent Properties** sublimit of insurance. This Limit of Insurance is included within, and is not in addition to, the Limit of Insurance for the

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

FA 258 05 16

"Business Income" and Extra Expense Coverage Extension.

2. **Interruption of Computer Operations**

   a. For **Interruption of Computer Operations** only, all references to $2,500 in **b. Business Income and Extra Expense,** Paragraph **(7)(c)** are deleted and replaced by $25,000.

   b. **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION G. DEFINITIONS** is amended as follows:

      With respect to a "suspension" of "operations" caused only by an interruption in computer operations due to the destruction or corruption of "electronic data" as described in **SECTION A. COVERAGE, 5. Coverage Extensions, d. Electronic Data,** Paragraph **a.** of Definition **11.** "Period of restoration" is deleted and replaced by the following:

      a. Begins 24 hours after the time of direct "loss".

3. **Business Income and Extra Expense Revised Limits of Insurance**

   The last paragraph is deleted in its entirety and replaced by the following:

   The most we will pay for loss in any one occurrence under this "Business Income" and Extra Expense Coverage Extension is $100,000.

C. **Electronic Data Processing Property**

   For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions** is amended by adding the following:

   **Electronic Data Processing Property**

   (1) **Covered Property**

   You may extend the Coverage provided by this Coverage Part to apply to direct "loss" to Covered Property consisting of your:

   (a) Data processing equipment;

   (b) Air conditioning and other electrical equipment, used exclusively with your data processing equipment;

   (c) Programming documentation and instruction manuals;

   (d) "Electronic data", but only as excess over what is valid and collectible under **SECTION A. COVERAGE, 5. Coverage Extensions, d. Electronic Data;**

   (e) Media, meaning materials on which "electronic data" is recorded, such as magnetic tapes, disc packs, paper tapes and cards, floppy discs and compact discs used in processing units; and

   (f) Property of others in your care, custody or control that is similar to property described in **(1)(a)** through **(e)** above.

   (2) **Property Not Covered**

   This Coverage Extension does not apply to:

   (a) Accounts, records, documents and other "valuable papers and records" unless they are programming documentation or instruction manuals.

      However, we will cover these items once they are converted to "electronic data" form.

   (b) "Electronic data" or media that cannot be replaced with similar property of equal quality.

   (c) Your property that you have rented or leased to someone else and that property is not at your "premises".

   (d) Any machine or apparatus that is used for research, medical, diagnostic, surgical, dental or pathological purposes.

   (e) "Production equipment".

   (3) **Exclusions**

   (a) **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 3. Covered Causes of Loss, b. Exclusions** does not apply except as follows:

      1) Exclusion **(1)(c)** Governmental Action;

      2) Exclusion **(1)(d)** Nuclear Hazard;

      3) Exclusion **(1)(f)** War and Military Action;

      4) Exclusion **(2)(b)** Delay or Loss of Use;

5) **Exclusion (2)(d) Miscellaneous Causes of Loss, 1)** Wear and tear;

6) **Exclusion (2)(h) Dishonest or Criminal Acts;**

7) **Exclusion (3)(b) Acts or Decisions;** and

8) **Exclusion (3)(c) Defects, Errors and Omissions.**

(b) In addition to Paragraph **(3)(a)** of this Coverage Extension, we will not pay for the following:

Hidden or latent defect, gradual deterioration, and depreciation. However, if direct "loss" by a Covered Cause of Loss results, we will pay for that resulting "loss".

**(4) Duplicate and Backup "Electronic Data"**

We will pay for direct "loss" resulting from any of the Covered Causes of Loss to duplicate and backup "electronic data" that you store at a "premises" not described in the Declarations providing such "electronic data" is not covered by another policy. The most we will pay for loss in any one occurrence is $2,000. This Limit of Insurance is in addition to the other limits provided by this Coverage Extension.

**(5) Newly Purchased Electronic Data Processing Property**

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions, i. Newly Purchased, Leased or Constructed Property** is deleted in its entirety and replaced by the following:

(a) We will pay for direct "loss" from a Covered Cause of Loss to newly purchased or leased Covered Property described in Paragraph **(1)** of this Coverage Extension while at:

1) Locations that are newly purchased or leased;

2) Your newly constructed buildings or additions at a "premises"; or

3) Any "premises" described in the Declarations.

(b) Insurance under this Coverage Extension for such newly acquired property, or Covered Property already insured by this Coverage Extension which is moved to a newly

acquired location, will end when any of the following first occurs:

1) This Coverage Part expires;

2) 90 days pass from the date you acquire your new property or move Covered Property to a newly acquired location; or

3) You report values to us.

The most we will pay for loss in any one occurrence is $10,000. This Limit of Insurance is in addition to the other limits provided by this Coverage Extension.

**(6) In Transit or Away From Premises:**

**SECTION A. COVERAGE, 5. Coverage Extensions, e. Exhibitions, Fairs or Trade Shows, m. Property Off Premises** and **p. Transportation** are deleted in their entirety and replaced by the following:

(a) You may extend the insurance provided by this Coverage Extension to apply to Covered Property as described in Paragraph **(1):**

1) While in or on a vehicle, including loading and unloading; or

2) While at a location that is not your "premises".

(b) This **In Transit or Away From Premises** coverage does not apply per location.

The most we will pay for loss in any one occurrence is $10,000. This Limit of Insurance is not in addition to the other limits provided by this Coverage Extension.

**(7) Worldwide Laptop Coverage**

(a) You may extend the insurance provided by this Coverage Extension to apply to your laptops, notebooks and similar highly portable personal computers, including their peripherals and accessories, while such specific Covered Property is:

1) In your or your employee's care, custody and control;

2) Not located at a "premises" you own or lease; and

3) Not located in the coverage territory stated in Paragraph **2.** of the Commercial Property Condition **H. Policy Period, Coverage Territory,** provided that location is not under a United

FA 258 05 16

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Page 4 of 13

States Department of State trade or travel restriction at the time of "loss".

**(b)** This **Worldwide Laptop Coverage** does not apply per location.

**(8) Electronic Data Processing Property Deductible**

**SECTION C. DEDUCTIBLE** is amended to include the following:

We will not pay for direct "loss" in any one occurrence unless the amount of "loss" exceeds the Deductible shown in the Declarations. We will then pay the amount of "loss" in excess of the Deductible, up to the Limit of Insurance provided by this Coverage Extension.

However, direct "loss" caused by or resulting from any of the following Causes of Loss will have the greater of the Deductible shown in the Declarations or $1,000 as the applicable deductible:

**a.** "Loss" caused by faulty construction, error in design or processing, or service or work upon the data processing system;

**b.** "Loss" resulting in mechanical breakdown, short circuiting, blowout, or other electrical damage, unless caused by lightning; or

**c.** "Loss" caused by or resulting from interruption of power supply, power surge, blackout or brownout.

**(9) Electronic Data Processing Property Valuation**

**SECTION D. LOSS CONDITIONS, 7. Valuation** is deleted in its entirety and replaced by the following:

**7. Valuation of Electronic Data Processing Property**

In the event of direct "loss", we will determine the value of Covered Property as described in Paragraph **(1)** of this Coverage Extension as follows:

**a.** Except for "electronic data":

**(1)** If you repair or replace this Electronic Data Processing property within a reasonable time following the direct "loss", the property will be valued at the full cost of repair or replacement.

However, the most we will pay is the least of the following:

**(a)** The actual cost to repair or restore the property with materials of like kind and quality;

**(b)** The cost of replacing that property with property of similar quality and function;

**(c)** The amount you actually and necessarily spend to repair or replace the property; or

**(d)** The Limit of Insurance applicable to the property.

**(2)** If you do not repair or replace this property within a reasonable time following a direct "loss", the most we will pay will be the least of the following:

**(a)** "Actual cash value" of the property;

**(b)** "Actual cash value" of repairs with material of like kind and quality; or

**(c)** The Limit of Insurance applicable to the property.

We reserve the right to repair or replace the property or to pay for the property in money.

In the event of "loss", the value of property will be determined at the time of direct "loss".

**b.** For "electronic data":

We will not pay more than the actual reproduction costs of your "electronic data". If you do not replace or reproduce your "electronic data" following the "loss", the most we will pay is the cost of blank media as described in Paragraph **C.(1)(e)** of this Coverage Extension.

FA 258 05 16

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Page 5 of 13

**(10) Electronic Data Processing Property Additional Definition**

The following definition is added to **SECTION G. DEFINITIONS** of the **BUILDING AND PERSONAL PROPERTY COVERAGE FORM:**

"Production equipment" means any machinery and related components, including any integrated or dedicated computer system, which is used, or can be used, to produce or process other tangible property.

The most we will pay in total for all loss in any one occurrence for coverages described in Paragraphs **C.(1), (6),** and **(7)** is the Blanket Coverage Limit as provided in Section **Y.** of this endorsement.

**D. Fine Arts**

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions** is amended to include the following:

**Fine Arts**

**(1)** We will pay for direct "loss" to paintings, etchings, pictures, tapestries, art glass windows, and other bona fide works of art of rarity, historical value, or artistic merit. The direct "loss" must be caused by or result from a Covered Cause of Loss.

**(2) SECTION D. LOSS CONDITIONS, 7. Valuation** is deleted in its entirety and replaced by the following:

We will determine the value of Covered Property in the event of direct "loss" at the market value at the time of "loss".

The most we will pay for loss in any one occurrence under this Coverage Extension is $25,000.

**E. Ordinance or Law**

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 4. Additional Coverages, g. Ordinance or Law,** the last paragraph is deleted in its entirety and replaced by the following:

The most we will pay for loss in any one occurrence under Paragraph **(a) Loss of Use of Undamaged Parts of the Building** is the Limit of Insurance shown in the **COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS** as applicable to the covered building or structure sustaining "loss". This

Coverage is included within, and not in addition to, that applicable Limit of Insurance.

The most we will pay for all loss in any one occurrence under Paragraph **(b) Demolition Costs** and Paragraph **(c) Increased Costs of Construction** is the Blanket Coverage Limit as provided in Section **Y** of this endorsement per building or structure sustaining loss. This is an additional Limit of Insurance applicable to the building or structure sustaining loss.

**F. Pollutant Clean Up and Removal**

For the purposes of this endorsement only, in **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 4. Additional Coverages, h. Pollutant Clean Up and Removal,** the last paragraph is deleted in its entirety and replaced by the following:

The most we will pay for each "premises" under this Pollutant Clean Up and Removal Coverage Extension is $25,000. This limit includes the sum of all covered expenses arising out of Covered Causes of Loss during each "coverage term". This is in addition to the Limits of Insurance shown in the **COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS.**

**G. Underground Property**

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions** is amended to include the following:

**Underground Property**

**(1)** We will pay for direct "loss" resulting from any of the Covered Causes of Loss to:

**(a)** Foundations of covered buildings, structures, machinery or boilers, if their foundations are below the lowest basement floor or the surface of the ground if there is no basement; and

**(b)** Underground pipes, flues or drains if they are attached to Covered Property.

**(2) SECTION A. COVERAGE, 2. Property Not Covered, g. Foundations** is deleted in its entirety and replaced by the following:

**g. Foundations**

Foundations of buildings, structures, machinery or boilers, if their foundations are below:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

(1) The lowest basement floor; or

(2) The surface of the ground, if there is no basement;

except as provided in **SECTION A. COVERAGE, 5. Coverage Extensions.**

(3) **SECTION A. COVERAGE, 2. Property Not Covered, n. Underground Pipes, Flues or Drains** is deleted in its entirety and replaced by the following:

n. **Underground Pipes, Flues or Drains**

Underground pipes, flues or drains, except as provided in **SECTION A. COVERAGE, 5. Coverage Extensions.**

The most we will pay for loss in any one occurrence is the Limit of Insurance shown in the **COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS** as applicable to the covered building or structure incurring direct "loss". This Coverage is included within, and not in addition to, that applicable Limit of Insurance.

H. **Valuable Papers and Records**

For the purposes of this endorsement only:

1. In **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions, r. Valuable Papers and Records**, the second paragraph in **(4)(b) Away From Your Premises** is deleted in its entirety and replaced by the following:

This limit of insurance for **Away From Your Premises** coverage is not included within the Blanket Coverage Limit and is separate and in addition to the Blanket Coverage Limit.

2. In **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions, r. Valuable Papers and Records**, the last paragraph is deleted in its entirety and replaced by the following:

The most we will pay for loss in any one occurrence under this Valuable Papers and Records Coverage Extension is the Blanket Coverage Limit as provided in Section **Y** of this endorsement.

I. **Water Backup Discharged from Sewers, Drains, Septic or Sump Pump Systems**

For the purposes of this endorsement only:

(1) **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 3. Covered Causes of Loss, b. Exclusions, (1)(g) Water,** Paragraph **3)** is deleted in its entirety and replaced by the following:

3) Except as provided in **SECTION A. COVERAGE, 5. Coverage Extensions, Water Backup Discharged from Sewers, Drains, Septic or Sump Pump Systems,** water that has entered and then backs up through and is discharged from a sewer, drain, septic system, sump pump system or related equipment; or

(2) **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 3. Covered Causes of Loss, b. Exclusions, (1)(g) Water,** Paragraph **5)** is deleted in its entirety and replaced by the following:

5) Except as provided in **SECTION A. COVERAGE, 5. Coverage Extensions, Water Backup Discharged from Sewers, Drains, Septic or Sump Pump Systems,** waterborne material carried or otherwise moved by any of the water referred to in Paragraph **1), 3)** or **4)**, or material carried or otherwise moved by mudslide or mudflow as described in Paragraph **(g)2).**

(3) **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions,** is amended to include the following:

**Water Backup Discharged From Sewers, Drains, Septic or Sump Pump Systems**

We will pay for "loss" caused by or resulting from water or waterborne material that has entered and then backs up through and is discharged from a sewer, drain (including roof drains and related fixtures), septic system, sump pump system or related equipment.

(4) **SECTION C. DEDUCTIBLE** is amended by adding the following:

**Water Backup Deductible**

We will not pay for "loss" in any one occurrence caused by or resulting from water or waterborne material which backs up through and is discharged from a sewer, drain, septic system, sump pump system or related equipment, until the amount of "loss" exceeds the De-

ductible shown in the Declarations, or $1,000, whichever is greater. We will then pay the amount of "loss" in excess of that deductible, up to the applicable limit indicated in Paragraph **(5)** of this Coverage Extension.

**(5)** The most we will pay for loss in any one occurrence under this Water Backup Discharged from Sewers, Drains, Septic or Sump Pump Systems Coverage Extension is $10,000, including any "Business Income", "Rental Value" and Extra Expense loss.

**J. Fire Department Service Charge**

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 4. Additional Coverages, c. Fire Department Service Charge** is deleted in its entirety and replaced by the following:

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $25,000 in any one occurrence for Fire Department Service Charge for your liability, which is determined prior to direct "loss", for fire department service charges:

**(1)** Assumed by contract or agreement; or

**(2)** Required by local ordinance.

This Coverage is in addition to the Limits of Insurance shown in the **COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS** and applies per location. Such limit is the most we will pay regardless of the number of responding fire departments or fire units, and regardless of the number or type of services performed.

**K. Signs**

For the purposes of this endorsement only, in **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions, n. Signs,** the second paragraph is deleted in its entirety and replaced by the following:

The most we will pay for loss in any one occurrence under this Sign Coverage Extension is $10,000.

**L. Outdoor Property**

For the purposes of this endorsement only, in **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions, k. Outdoor Property,** the last paragraph is deleted in its entirety and replaced by the following:

The most we will pay for loss in any one occurrence under this Outdoor Property Coverage Extension is $25,000, but not more than $1,000 for any one tree, shrub, or plant.

**M. Personal Effects**

For the purposes of this endorsement only, in **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions, I. Personal Effects,** the last two paragraphs are deleted in their entirety and replaced by the following:

If theft is included as a Covered Cause of Loss under this Coverage Part, then this Personal Effects Coverage Extension has a $1,000 per occurrence limitation for direct "loss" by theft.

The most we will pay for loss in any one occurrence under this Personal Effects Coverage Extension is $25,000.

**N. Tenant Move Back Expenses**

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions** is amended to include the following:

**Tenant Move Back Expenses**

**(1)** We will reimburse you for expenses you pay for Covered Move Back Costs of your tenants who temporarily vacate a portion of the building at a "premises". The vacancy must have occurred while the portion of the building rented by your tenant could not be occupied due to direct "loss" to your Covered Property caused by or resulting from a Covered Cause of Loss during the "coverage term". The move back must be completed within 60 calendar days after the portion of the building rented by your tenant has been repaired or rebuilt and is ready for occupancy.

**(2)** Covered Move Back Costs means only documented, reasonable and necessary costs of:

**(a)** Packing, insuring and transporting business personal property;

**(b)** Re-establishing electric utility and communication services, less refunds from discontinued services;

**(c)** Assembling and setting up fixtures and equipment; or

**(d)** Unpacking and re-shelving stock and supplies.

**(3)** If your tenants have valid and collectible insurance for Covered Move Back Costs, we will pay only for the amount of Covered Move Back Costs in excess of the amount payable from such other insurance.

The most we will pay for loss in any one occurrence under this Tenant Move Back Expenses Coverage Extension is the Blanket Coverage Limit as provided in Section **Y** of this endorsement.

**O. Peak Season**

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions** is amended to include the following:

Peak Season

**1.** In the event that the limit of insurance stated in the Declarations for Business Personal Property is insufficient to fully insure a covered "loss" due to a Peak Season Demand for your inventory, we will pay up to the Blanket Coverage Limit as provided in Section **Y** of this endorsement.

**2.** Peak Season Demand means a temporary (90 consecutive days or less) increase in your inventory to meet a seasonal demand as verified by:

 **a.** Your previous inventory records for that historical period of time; and

 **b.** Custom and practice in your industry.

**P. Personal Property of Others**

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions** is amended to include the following:

Personal Property of Others

In the event that the limit of insurance stated in the **COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS** for Business Personal Property is insufficient to fully insure a covered "loss" to both your Covered Personal Property and property described in Paragraph (8) of **SECTION A. COVERAGE, 1. Covered Property, d. Business Personal Property,** we will pay up to the Blanket Coverage Limit in any one occurrence as provided in Section **Y** of this endorsement for such property.

**Q. Debris Removal**

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions** is amended to include the following:

In the event that the limits of insurance stated in **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 4. Additional Coverages, b. Debris Removal** are insufficient to fully cover a "loss" insured thereunder, we will pay up to the Blanket Coverage Limit in any one occurrence as provided in Section **Y** of this endorsement.

**R. Fire Protection Equipment Recharge**

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 4. Additional Coverages, d. Fire Protection Equipment Recharge,** the last paragraph is deleted and replaced by the following:

The most we will pay for loss in any one occurrence under this Fire Protection Equipment Recharge Coverage Extension is $50,000. This Coverage is in addition to the Limits of Insurance shown in the **COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS.**

**S. Paved Surfaces**

For the purposes of this endorsement only:

**1.** **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 2. Property Not Covered, i. Paved Surfaces** is deleted in its entirety and replaced by the following:

 Except as provided in **4. Additional Coverages, Paved Surfaces,** bridges, roadways, walks, patios or other paved surfaces.

**2.** **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 4. Additional Coverages** is amended to include the following:

 **Paved Surfaces**

 We will pay for direct "loss" resulting from any of the Covered Causes of Loss to bridges, roadways, walks, patios or other paved surfaces.

 The most we will pay for loss in any one occurrence under this Paved Surfaces Coverage Extension is $25,000.

**T. Temperature Change**

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions** is amended to include the following:

<u>Temperature Change</u>

**(1) Coverage**

    **(a) BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 1. Covered Property** is deleted in its entirety and replaced by the following:

        Covered Property means "perishable stock" located in a building at a "premises".

    **(b) BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 2. Property Not Covered** is deleted in its entirety and replaced by the following:

        Covered Property does not include:

        <u>**"Perishable Stock" Not in Buildings**</u>

        "Perishable stock" located on buildings, in or on vehicles, or otherwise in the open.

**(2) Covered Causes of Loss**

    **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 3. Covered Causes of Loss, a. Covered Causes of Loss** is deleted in its entirety and replaced by the following:

    **a. Covered Causes of Loss**

        Covered Causes of Loss means direct "loss" from "temperature change" to Covered Property unless "loss" is excluded or limited in this Coverage Part.

**(3) Excluded Causes of Loss**

    **(a) BUILDING AND PERSONAL PROPERTY COVERAGE FORM SECTION A. COVERAGE, 3. Covered Causes of Loss, b. Exclusions** does not apply to this Coverage Extension, except as follows:

        **(1) Exclusion (1)(b) Earth Movement;**

        **(2) Exclusion (1)(c) Governmental Action;**

        **(3) Exclusion (1)(d) Nuclear Hazard;**

        **(4) Exclusion (1)(f) War and Military Action;**

        **(5) Exclusion (1)(g) Water; or**

        **(6) Exclusion (1)(h) "Fungi", Wet Rot, Dry Rot, and Bacteria.**

    **(b)** In addition to Paragraph (3)(a) of this Coverage Extension, we will not pay for direct "loss" caused by or resulting from any of the following:

        **1)** The disconnecting of any heating, refrigerating, cooling or humidity control system from the source of its power;

        **2)** The deactivation of electrical power caused by the manipulation of any switch or other device (on "premises") used to control the flow of electrical power or current;

        **3)** The inability of an Electrical Utility Company or other power source to provide sufficient power due to:

            **a)** Lack of fuel; or

            **b)** Governmental order;

        **4)** The inability of a power source at the "premises" to provide sufficient power due to the lack of generating capacity to meet demand; or

        **5)** Breaking of any glass that is a permanent part of any heating, refrigeration, cooling or humidity control unit.

**(4) Limits of Insurance**

    **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION B. LIMITS OF INSURANCE** is deleted in its entirety and replaced by the following:

    **SECTION B. LIMITS OF INSURANCE**

    **a.** The most we will pay for all direct "loss" in any one occurrence under this Temperature Change Coverage Extension is $15,000, including any "Business Income", "Rental Value", and Extra Expense loss.

    **b.** The Limit of Insurance for Temperature Change is not an additional amount of insurance and will not increase the Limit of Insurance shown

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

in the Declarations for Business Personal Property or "stock".

**(5) Duties in the Event of Loss**

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION D. LOSS CONDITIONS, 3. Duties in the Event of Loss or Damage, a.(2)** is deleted in its entirety and replaced by the following:

**(2)** All claims under this Temperature Change Coverage Extension should be reported immediately upon occurrence. Include a description of the damaged "perishable stock". All damaged "perishable stock" must be available for inspection and verification.

**(6) Coinsurance**

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION E. ADDITIONAL CONDITIONS, 1. Coinsurance** does not apply to the coverage provided by this endorsement.

**(7) Definitions**

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION G. DEFINITIONS** is amended to include the following definitions:

"Perishable stock" means personal property:

**a.** Preserved and maintained under controlled conditions; and

**b.** Susceptible to "loss" if the controlled conditions change.

"Temperature change" means:

**a.** The fluctuation or total interruption of electrical power, either on or off "premises", resulting from conditions beyond your control.

**b.** Mechanical breakdown or mechanical failure of any refrigerating or cooling apparatus or equipment (on "premises") including the blowing of any fuse, fuses, or circuit breakers, only while such equipment is at the "premises".

**c.** Contamination by refrigerant.

**d.** Damage due to the freezing of "perishable stock" that is not meant to be frozen resulting from the faulty operation of any stationary heating plant, when such "perishable stock" is contained within a building at the "premises".

**U. Nonowned Building Damage**

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions, j. Nonowned Building Damage** is deleted in its entirety and replaced by the following:

If you are a tenant, you may extend the insurance provided by this Coverage Part for Business Personal Property to direct "loss" that occurs to the building at a "premises" you occupy but do not own.

This Coverage Extension applies only if your lease makes you legally responsible for that part of the building sustaining "loss".

This Coverage Extension does not apply to:

**(1)** Glass, including lettering and ornamentation, and also necessary:

**(a)** Repair or replacement of encasing frames or alarm tapes; and

**(b)** Expenses incurred to board up openings or remove or replace obstruction.

**(2)** Building materials and equipment removed from the "premises".

The most we will pay for loss in any one occurrence under this Nonowned Building Damage Coverage Extension is:

**(1)** The actual "loss" sustained up to the applicable Limit of Insurance for Business Personal Property for direct "loss" caused by theft, burglary or robbery, or the attempt of the foregoing; or

**(2)** The applicable Limit of Insurance for Business Personal Property or $25,000, whichever is less, for "loss" caused by any other Covered Cause of Loss, not referenced in Paragraph **U.(1)** above.

**V. Inflation Guard**

For the purposes of this endorsement only, the **COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS** is amended to show 4% for Inflation Guard in the OPTIONAL COVERAGES - Inflation Guard column for each scheduled Building Property. If an Inflation Guard percentage is already indicated on the **COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS** for that Building property, this percentage is excess of that Inflation Guard percentage for that Building property.

**W. Brands and Labels**

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY**

---

FA 258 05 16

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Page 11 of 13

**COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions** is amended to include the following:

### Brands and Labels

If branded or labeled merchandise that is Covered Property is damaged by a Covered Cause of Loss, we may take all or any part of the property at an agreed or appraised value. If so, you may:

(1) Stamp "salvage" on the merchandise or its containers, if the stamp will not physically damage the merchandise; or

(2) Remove the brands or labels, if doing so will not physically damage the merchandise. You must re-label the merchandise or its containers to comply with the law.

The most we will pay for loss in any one occurrence under this Brands and Labels Coverage Extension is $25,000.

### X. Utility Services

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions, q. Utility Services** is deleted in its entirety and replaced by the following:

### q. Utility Services

We will pay for:

(1) Direct "loss" to Covered Property at your "premises" except for direct "loss" resulting from the partial or complete failure of Wastewater Removal Services; and

(2) Loss of "Business Income", "Rental Value" and Extra Expenses as provided in **SECTION A. COVERAGE, 5. Coverage Extensions, b. Business Income and Extra Expense;**

caused by or resulting from the partial or complete failure of utility services to the "premises".

The partial or complete failure of the utility services listed below must be caused by direct "loss" caused by a Covered Cause of Loss to the following property:

(1) Power Supply Property, meaning the following types of property supplying electricity, steam or natural gas to the "premises":

(a) Utility generating plants;

(b) Switching stations;

(c) Substations;

(d) Transformers; and

(e) Transmission, distribution, service, or similar lines, including all such overhead lines of any type, except as modified in Paragraph **X.(6)** below;

(2) Water Supply Property, meaning the following types of property supplying water to the "premises":

(a) Pumping stations; and

(b) Water mains.

(3) Wastewater Removal Property, meaning a utility system for removing wastewater and sewage from the "premises", other than a system designed primarily for draining storm water. The utility property includes sewer mains, pumping stations and similar equipment for moving the effluent to a holding, treatment or disposal facility, and includes such facilities. Coverage under this Coverage Extension does not apply to interruption in service caused by or resulting from a discharge of water or sewage due to heavy rainfall or flooding.

(4) Communication Supply Property, meaning property supplying communication services, including service relating to Internet access or access to any electronic, cellular, or satellite network; telephone, radio, microwave, or television services to the "premises", such as:

(a) Communication transmission, distribution, service, or similar lines, including fiber optic lines, including all such overhead lines of any type, except as modified in Paragraph **X.(6)** below;

(b) Coaxial cables; and

(c) Microwave radio relays, excluding satellites.

(5) This Coverage Extension does not apply to direct "loss" to "electronic data", including destruction or corruption of "electronic data".

(6) When "loss" from the partial or complete interruption of utility services to a "premises" is caused solely by "loss" to overhead lines of any type:

(a) The most we will pay in any one occurrence for direct "loss" and loss of "Business Income", "Rental Value" and Extra Expense is $5,000. This Limit of Insurance is part of, not in addition to, the Limit of Insurance provided by this Utility Services Coverage Extension; and

(b) For loss of "Business Income", "Rental Value" and Extra Expense, **SECTION G. DEFINITIONS, 11.** Period of restoration, Paragraph **a.** is deleted in its entirety and replaced by the following:

  **a.** Begins:

    **(1)** 24 hours after the time of direct "loss" for "Business Income" and "Rental Value" Coverage; or

    **(2)** Immediately after the time of direct "loss" for Extra Expense Coverage.

The most we will pay for all direct "loss" and loss of "Business Income", "Rental Value" and Extra Expense in any one occurrence under this Utility Services Coverage Extension is $75,000.

**Y. Blanket Coverage Limit**

We will pay up to the Limit of Insurance stated in the Schedule of this endorsement in total in any one occurrence for the sum of all "loss" insured under coverages provided in this endorsement which are subject to the Blanket Coverage Limit. You may apportion this Limit among these coverages as you choose.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# MANUFACTURERS' ADDITIONAL COVERAGE

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART

**A. Manufacturers' Selling Price**

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION D. LOSS CONDITIONS, 7. Valuation,** Paragraph **c.** is deleted in its entirety and replaced by the following:

**c.** We will determine the value of "finished stock" you manufacture at the selling price as if no "loss" occurred, less discounts and expenses you otherwise would have had.

**B. Replacement Cost Valuation of Stock**

**1.** If the Replacement Cost Optional Coverage is shown in the Declarations as being applicable to business personal property, then the Including "stock" option is also applicable, whether or not the Including "stock" option is indicated in the Declarations.

**2. SECTION D. LOSS CONDITIONS, 7. Valuation** is amended to include the following:

We will determine the value of "stock" in process at the cost of the raw materials used in the manufacture of the "stock" in-process, plus allocated labor costs, plus provable allocated expense costs.

**C. Marring or Scratching**

**1. BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 3. Covered Causes of Loss, b. Exclusions, (2)(d) Miscellaneous Causes of Loss, 7),** Paragraph **(a)** is deleted in its entirety and replaced by the following:

**(a)** Marring or scratching, except to the extent provided in **SECTION A. COVERAGE, 5. Coverage Extensions, Marring or Scratching.**

**2. BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions** is amended by adding the following:

**Marring or Scratching**

We will pay for direct "loss" to Covered Property caused by or resulting from marring or scratching.

The most we will pay for "loss" in any one "coverage term" under this Coverage Extension is $10,000.

**D. Theft of Patterns, Dies, Molds and Forms**

In **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 3. Covered Causes of Loss, c. Limitations, (3) Limitation - Personal Property Theft,** Part **(c)** is deleted in its entirety.

**E. Personal Property While Airborne or Waterborne**

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 2. Property Not Covered, j. Property While Airborne or Waterborne** is deleted in its entirety.

**F. Fire Protection Equipment Recharge**

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 4. Additional Coverages, d. Fire Protection Equipment Recharge** is deleted in its entirety and replaced by the following:

**d. Fire Protection Equipment Recharge**

We will pay for your actual expenses to recharge your:

**(1)** Portable fire extinguishers used to combat a covered fire to which this insurance applies; or

**(2)** Automatic fire suppression system at the "premises" when leakage or discharge occurs. The leakage or discharge must be caused by or result from a Covered Cause of Loss.

This Coverage is in addition to the Limits of Insurance shown in the Declarations.

If CinciPlus® Commercial Property XC+® (Expanded Coverage Plus) Endorsement **FA 250** or CinciPlus® Commercial Property Power XC+® (Expanded Coverage Plus) Endorsement **FA 258** is attached to this Coverage Part, Paragraph **R. Fire Protection Equipment Recharge** in these endorsements is deleted in its entirety.

**FA 260 05 16**

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# MANUFACTURERS' OPTIONAL COVERAGE

This endorsement modifies insurance provided under the following:

**COMMERCIAL PROPERTY COVERAGE PART**

## A. Personal Effects

For the purposes of this endorsements only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions, l. Personal Effects** is deleted in its entirety and replaced by the following:

### l. Personal Effects

If business personal property is Covered Property in this Coverage Part, we will pay for direct "loss" caused by a Covered Cause of Loss to:

Personal effects owned by:

**(1)** You, your officers, or your partners, or if you are a limited liability company, your members or your managers; or

**(2)** Your employees (including temporary and leased employees), including tools owned by your employees that are used in your business.

This Coverage Extension does not apply to "money" or "securities".

The most we will pay for "loss" in any one occurrence under this Coverage Extension is $10,000.

If CinciPlus® Commercial Property XC® (Expanded Coverage) Endorsement **FA 237,** CinciPlus® Commercial Property XC+® (Expanded Coverage Plus) Endorsement **FA 250,** CinciPlus® Commercial Property Power XC® (Expanded Coverage) Endorsement **FA 257,** or CinciPlus® Commercial Property Power XC+® (Expanded Coverage Plus) Endorsement **FA 258** is attached to this Coverage Part, the following paragraph in **M. Personal Effects** of these endorsements is deleted in its entirety:

If theft is included as a Covered Cause of Loss under this Coverage Part, then this Coverage Extension has a $1,000 per occurrence limitation for "loss" by theft.

## B. Theft of Precious Alloys and Metals

For the purposes of this endorsements only, in **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 3. Covered Causes of Loss, c. Limita-**

tions, (3) Limitation - Personal Property Theft, Paragraph **(b)** is deleted in its entirety and replaced by the following:

**(b)** $2,500 for jewelry, watches, watch movements, jewels, pearls, precious and semiprecious stones. This limitation does not apply to jewelry and watches worth $100 or less per item. $25,000 for bullion, gold, silver, platinum and other precious alloys or metals.

## C. Resultant Loss to Parts

For the purposes of this endorsements only:

**1.** **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 4. Additional Coverages** is amended by adding the following:

### Resultant Loss to Parts

We will pay the reduction in value of the remaining parts of "stock" in process of manufacture when the reduction is caused by direct "loss" from a Covered Cause of Loss to other parts of "stock" in process of manufacture at the "premises" and the remaining parts cannot be used in conjunction with other "stock".

The most we will pay for "loss" in any one occurrence under this Additional Coverage is $25,000. This Coverage is in addition to the Limit of Insurance shown in the Declarations.

**2.** In **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 3. Covered Causes of Loss, b. Exclusions,** Paragraph **(2)(b)** is deleted in its entirety and replaced by the following:

**(b) Delay or Loss of Use**

Except to the extent provided in **SECTION A. COVERAGE, 4. Additional Coverages, Resultant Loss to Parts,** delay, loss of use or loss of market.

## D. Exhibitions, Fairs or Trade Shows

For the purposes of this endorsements only, the limit in **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions, e.**

FA 261 05 16

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**Exhibitions, Fairs or Trade Shows** is increased from $10,000 to $25,000.

E. **Property Off Premises**

For the purposes of this endorsements only, the limit in **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions, m. Property Off Premises** is increased from $10,000 to $25,000.

F. **Transportation**

For the purposes of this endorsements only, the limit in **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions, p. Transportation** is increased from $10,000 to $25,000.

G. **Underground Property**

For the purposes of this endorsements only:

1. **BUILDING AND PERSONAL PROPER-TY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions** is amended by adding the following:

   Underground Property

   We will pay for direct "loss" resulting from a Covered Cause of Loss to the following:

   (1) Foundations of buildings, structures, machinery or boilers, if their foundations are below:

       (a) The lowest basement floor; or

       (b) The surface of the ground, if there is no basement;

   (2) Underground pipes, flues or drains.

   The most we will pay for "loss" in any one occurrence under this Coverage Extension is $10,000.

2. **BUILDING AND PERSONAL PROPER-TY COVERAGE FORM, SECTION A. COVERAGE, 2. Property Not Covered, g. Foundations** is deleted in its entirety and replaced by the following:

   g. **Foundations**

      Except to the extent provided in **SECTION A. COVERAGE, 5. Coverage Extensions, Underground Property,** foundations of buildings, structures, machinery or boilers, if their foundations are below:

      (1) The lowest basement floor; or

      (2) The surface of the ground, if there is no basement.

3. **BUILDING AND PERSONAL PROPER-TY COVERAGE FORM, SECTION A. COVERAGE, 2. Property Not Covered, n. Underground Pipes, Flues or Drains**

is deleted in its entirety and replaced by the following:

   n. **Underground Pipes, Flues or Drains**

      Except to the extent provided in **SECTION A. COVERAGE, 5. Coverage Extensions, Underground Property,** underground pipes, flues or drains.

H. **Contract Penalty Expense**

For the purposes of this endorsements only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVER-AGE, 4. Additional Coverages** is amended by adding the following:

Contract Penalty Expense

We will pay the contractual penalties you are required to pay to your customers as a result of any clause in your contracts for failure to timely deliver your product according to the contract terms. The penalties must solely result from direct "loss" by a Covered Cause of Loss to Covered Property.

The most we will pay in any one "coverage term" for penalties for all contracts under this Additional Coverage is $10,000. This Coverage is in addition to the Limits of Insurance shown in the Declarations.

I. **Artificially Generated Electrical Current**

For the purposes of this endorsements only:

1. **BUILDING AND PERSONAL PROPER-TY COVERAGE FORM, SECTION A. COVERAGE, 4. Additional Coverages** is amended by adding the following:

   Artificially Generated Electrical Current

   We will pay for direct "loss" to Covered Property caused by or resulting from artificially generated electrical current, including electrical arcing. The most we will pay for "loss" in any one occurrence under this Additional Coverage is $10,000. This Coverage is in addition to the Limits of Insurance shown in the Declarations.

2. **BUILDING AND PERSONAL PROPER-TY COVERAGE FORM, SECTION A. COVERAGE, 3. Covered Causes of Loss, b. Exclusions,** Paragraph (2)(a) is deleted in its entirety and replaced by the following:

   (a) **Electrical Current**

      Except to the extent provided in **SECTION A. COVERAGE, 4. Additional Coverages, Artificially Generated Electrical Current,** artificially generated electrical, magnetic or electromagnetic energy that damag-

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

es, disturbs, disrupts, or otherwise interferes with any:

**1)** Electrical or electronic wire, device, appliance, system, or network; or

**2)** Device, appliance, system, or network utilizing cellular or satellite technology.

For the purpose of this exclusion, electrical, magnetic or electromagnetic energy includes but is not limited to:

**1)** Electrical current, including arcing;

**2)** Electrical charge produced or conducted by a magnetic or electromagnetic field;

**3)** Pulse of electromagnetic energy; or

**4)** Electromagnetic waves or microwaves.

However, if fire results, we will pay for "loss" caused by that fire.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EQUIPMENT BREAKDOWN COVERAGE

This endorsement modifies insurance provided under the following:

**COMMERCIAL PROPERTY COVERAGE PART**

## A. COVERAGE

1. **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE** is amended by adding the following:

   We will pay for direct "loss" to Covered Property caused by or resulting from an "accident" at the "premises".

2. **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 3. Covered Causes of Loss, b. Exclusions** is amended by:

   a. Adding the following to **(1)(e) Utility Services, (1)(g) Water 1), (2)(a) Electrical Current, (2)(d) Miscellaneous Causes of Loss, (2)(j) Exposure to Weather, (3)(a) Weather Conditions, (3)(b) Acts or Decisions,** and **(3)(c) Defects, Errors, and Omissions:**

      However, this exclusion does not apply if the causes of loss are caused by, or result from, an "accident" to Covered Property at the "premises".

   b. Deleting in its entirety **(2)(e) Explosion of Steam Apparatus.**

3. **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 3. Covered Causes of Loss, c. Limitations** is amended by:

   a. Deleting in its entirety **(1)(a) Steam Apparatus** and **(1)(b) Hot Water Boilers.**

   b. Adding the following:

      The following limitations apply only to "loss" covered by this endorsement. The sublimits provided in Paragraphs **(1), (2)** and **(3)** below are included within, and are not in addition to, the Limit of Insurance shown in the Declarations as applicable to the Covered Property. These limits, or the applicable Limit of Insurance shown in the Declarations as applicable to the Covered Property, whichever is less, apply. These limits apply to direct "loss" only.

      (1) **Ammonia Contamination Limitation**

         If Covered Property is contaminated by ammonia as a result of an "accident" to Covered Property at the "premises", the most we will pay for this kind of loss, including salvage expense, is $100,000 per location.

      (2) **Data, Media and Software Restoration**

         If "electronic data" is destroyed or corrupted as a result of an "accident" to covered equipment, the most we will pay for the expenses incurred by you for the restoration of that "electronic data" is $100,000 for all loss sustained in the "coverage term", regardless of the number of "accidents" or the number of "premises" involved.

      (3) **"Hazardous Substance" Limitation**

         The following applies despite the operation of **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 3. Covered Causes of Loss, b. Exclusions, (1)(a) Ordinance or Law.**

         If Covered Property is damaged, contaminated or polluted by a "hazardous substance" other than ammonia as a result of an "accident" to Covered Property at the "premises", the most we will pay for any additional expenses incurred by you for clean up, repair, replacement or disposal of that property is $100,000. As used here, additional expenses mean expenses incurred beyond those for which we would be liable if no "hazardous substance" had been involved.

4. For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A.**

FA 245 04 20

Page 1 of 4

COVERAGE, 5. Coverage Extensions, g. Fungi, Wet Rot, Dry Rot, and Bacteria – Limited Coverage, Paragraph (3) is deleted in its entirety and replaced by the following:

(3) For the coverage described under Paragraph g.(2) of this Coverage Extension, the most we will pay for loss, regardless of the number of claims, is $100,000. This limit is the most we will pay for the total of all loss arising out of all occurrences that take place in the "coverage term". With respect to a particular occurrence of "loss" which results in "fungi", wet or dry rot or bacteria, we will not pay more than a total of $100,000 even if the "fungi", wet or dry rot or bacteria continues to be present or active, or recurs, in a subsequent "coverage term".

## B. ADDITIONAL COVERAGES

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 4. Additional Coverages** is amended as follows:

1. Paragraph **a. Change in Temperature or Humidity** is deleted in its entirety.

2. The following are added:

   a. **Drying Out**

      If electrical equipment included in Covered Property requires "drying out" as a result of a "flood", the reasonable expense incurred for the "drying out" will be covered.

   b. **Expediting Expenses**

      With respect to "loss" covered by this endorsement, and with respect to your damaged Covered Property, we will pay the reasonable extra cost to:

      (1) Make temporary repairs;

      (2) Expedite permanent repairs; and

      (3) Expedite permanent replacement.

   c. **Non-Owned Utility Service Equipment**

      We will pay for indirect loss resulting from an "accident" to non-owned utility equipment described in **E. Definitions, 1.a.(7)** but we will not pay for any expense to repair or replace direct "loss" to non-owned utility equipment that:

(1) You do not own, lease or rent; or

(2) That is not in your care custody and control.

These Additional Coverages are included within, and not in addition to, the Limits of Insurance shown in the Declarations. All other terms and conditions of this Coverage Part, including deductibles, apply to these Additional Coverages.

## C. DEDUCTIBLE

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION C. DEDUCTIBLE** is amended by adding the following:

The deductible applicable to "loss" covered by this endorsement is $500, or the deductible indicated in the Declarations as being applicable to the lost or damaged Covered Property, whichever is greater.

## D. ADDITIONAL CONDITIONS

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION E. ADDITIONAL CONDITIONS** is amended by adding the following:

### Suspension

Whenever any covered equipment is found to be in, or exposed to, a dangerous condition, any of our representatives may immediately suspend the insurance against "loss" from an "accident" to that covered equipment. This can be done by delivering or mailing a written notice of suspension to:

1. Your last known address; or

2. The address where the covered equipment is located.

Once suspended in this way, your insurance can be reinstated only by written notice from us.

If we suspend your insurance, you will get a pro rata refund of premium for that covered equipment. However, the suspension will be effective even if we have not yet made or offered a refund.

## E. DEFINITIONS

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION G. DEFINITIONS** is amended by adding the following:

1.a. "Accident" means a sudden and accidental breakdown of the following covered equipment:

(1) Any boiler;

FA 245 04 20

(2) Any fired or unfired pressure vessel subject to vacuum or internal pressure other than the static pressure of its contents;

(3) Any piping and its accessory equipment;

(4) Any refrigeration or air conditioning system;

(5) Any mechanical or electrical machine or apparatus used for the generation, transmission or utilization of mechanical or electrical power; or

(6) Any "production machinery".

(7) Equipment of a type described in definition a.(1) through (6) above which you do not own, lease or rent and is not in your care, custody or control that is on or within one mile of a covered "location", and is supplying you with electricity, gas, water, steam, heat, refrigeration, air conditioning or communication services.

At the time the breakdown occurs, it must become apparent by physical damage that the covered equipment or part thereof requires repair or replacement.

When the covered equipment or part thereof experiencing a problem is "electronic circuitry" that suddenly loses its ability to function as designed or intended with no apparent physical damage, we will concede physical damage has occurred if the covered equipment or part thereof can be restored to normal operation by replacing one or more "electronic circuitry" components.

b. None of the following is an "accident":

(1) Depletion, deterioration, corrosion or erosion;

(2) Wear and tear;

(3) Leakage at any valve, fitting, shaft seal, gland packing, joint or connection;

(4) The functioning of any safety or protective device;

(5) The breakdown of any structure or foundation supporting covered equipment or any of its parts;

(6) Any condition that can be reasonably remedied by normal maintenance such as:

(a) Replacing expendable parts;

(b) Recharging batteries; or

(c) Rebooting, reloading or up-dating software or firmware; or

(7) Any condition caused by or related to:

(a) Incompatibility of covered equipment or part thereof with any software or equipment installed, introduced or networked within the prior 30 days; or

(b) Programming error, programming limitation, computer virus, malicious code, loss of data, loss of access, or other condition within or involving data or media of any kind.

c. None of the following are covered equipment:

(1) Any sewer piping, underground gas piping, or piping forming a part of a sprinkler system;

(2) Water piping other than boiler feed water piping, boiler condensate return piping or water piping forming a part of a refrigeration or air conditioning system;

(3) Insulating or refractory material;

(4) Vehicle, elevator, escalator, conveyor, hoist or crane;

(5) Felt, wire, screen, swing hammer, grinding disc, cable, chain, belt, rope or nonmetallic part;

(6) Die, mold, extrusion plate, cutting blade or any part or tool subject to periodic replacement for production or maintenance purposes;

(7) Penstock, draft tube or well casing; or

(8) Excavation or construction equipment or any equipment mounted thereon.

d. If a strike, riot, civil commotion, act of sabotage or vandalism results in an "accident", this insurance applies. However, the War and Military Action Exclusion and the conditions of this Coverage Part still apply.

2. "Drying out" means restoration of electrical equipment to service following a "flood" by removal of excess moisture from that equipment including:

a. Application of heat or controlled electrical current, circulation of air, or use of dehumidification equipment, after rinsing the electrical equipment with clean fresh water if necessary to flush away "flood" debris;

FA 245 04 20

b. "Drying out" can be done in place or equipment can be disconnected and removed to a repair facility for drying if necessary.

c. "Drying out" does not include or apply to:

(1) Replacement or repair of any electrical equipment or parts thereof; or

(2) Any expense related to deconstruction, demolition, or reconstruction of any building component, structure or part thereof to gain access to electrical equipment.

3. "Electronic circuitry" means microelectronic components, including but not limited to circuit boards, integrated circuits, computer chips and disk drives.

4. "Flood" means a general and temporary condition of partial or complete inundation of normally dry land areas due to:

a. The overflow of inland or tidal waters;

b. The unusual or rapid accumulation or runoff of surface waters from any source; or

c. Mudslides or mudflows, which are caused by flooding as defined above in Paragraph

4.b. For the purposes of this Covered Cause of Loss, a mudslide or mudflow involves a river of liquid and flowing mud on the surface of normally dry land areas as when earth is carried by a current of water and deposited along the path of the current.

All flooding in a continuous or protracted event will constitute a single "flood".

5. "Hazardous substance" means a substance declared to be hazardous to health by a governmental agency.

6. "Production machinery" means:

a. Production or process machine or apparatus that processes, forms, cuts, shapes, grinds or conveys raw material, material in process or finished products, and the computers and their peripherals that control or operate such a machine or apparatus.

b. Machine or apparatus used for research, medical, diagnostic, surgical, dental or pathological purposes, and computers and their peripherals that control or operate such a machine or apparatus.

FA 245 04 20

# BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to **SECTION F. DEFINITIONS.**

## SECTION A. COVERAGE

Coverage is provided as described and limited below for one or more of the following options for which a Limit of Insurance is shown in the Declarations:

**a.** "Business Income" including "Rental Value".

**b.** "Business Income" other than "Rental Value".

**c.** "Rental Value".

If option **a.** above is selected, the term "Business Income" will include "Rental Value". If option **c.** above is selected, the term "Business Income" will mean "Rental Value" only.

If Limits of Insurance are shown under more than one of the above options, the provisions of this Coverage Part apply separately to each.

**1. Business Income**

**a.** We will pay for the actual loss of "Business Income" you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct "loss" to property at "premises" which are described in the Declarations and for which a "Business Income" Limit of Insurance is shown in the Declarations. The "loss" must be caused by or result from a Covered Cause of Loss. With respect to "loss" to personal property in the open (or personal property in a vehicle or portable storage unit), the "premises" include the area within 1,000 feet of the building or 1,000 feet of the "premises", whichever distance is greater.

**b.** With respect to the requirements set forth in the preceding paragraph, if you are a tenant and occupy only part of the site at which the "premises" are located, for the purposes of this Coverage Part only, your "premises" is the portion of the building which you rent, lease or occupy, including:

**(1)** Any area within the building or on the site at which the "premises" are located if that area services or is used to gain access to the described "premises".

**(2)** Your personal property in the open (or in a vehicle or portable storage unit) within 1,000 feet of the building or 1,000 feet of the "premises", whichever distance is greater.

**2. Extra Expense**

**a.** Extra Expense coverage is provided at the "premises" described in the Declarations only if the Declarations show that "Business Income" coverage applies at that "premises".

**b.** Extra Expense means necessary expenses you sustain (as described in Paragraphs **2.c., d.** and **e.**) during the "period of restoration" that you would not have sustained if there had been no direct "loss" to property caused by or resulting from a Covered Cause of Loss.

**c.** If these expenses reduce the otherwise payable "Business Income" "loss", we will pay expenses (other than the expense to repair or replace property as described in Paragraph **2.d.**) to:

**(1)** Avoid or minimize the "suspension" of business and to continue "operations" either:

**(a)** At the "premises"; or

**(b)** At replacement "premises" or temporary locations, including relocation expenses and costs to equip and operate the replacement location or temporary location; or

**(2)** Minimize the "suspension" of business if you cannot continue "operations".

**d.** We will also pay expenses to:

**(1)** Repair or replace property; or

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

(2) Research, replace or restore the lost information on damaged "valuable papers and records";

but only to the extent this payment reduces the otherwise payable "Business Income" "loss". If any property obtained for temporary use during the "period of restoration" remains after the resumption of normal "operations", the amount we will pay under this Coverage Form will be reduced by the salvage value of that property.

e. Extra Expense as described in Paragraphs **2.a.** thru **2.d.** does not apply to "loss" to Covered Property as described in the **BUILDING AND PERSONAL PROPERTY COVERAGE FORM.**

3. **Covered Causes of Loss**

See **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 3. Covered Causes of Loss.**

4. **Limitation for Electronic Data**

a. Coverage for "Business Income" does not apply when a "suspension" of "operations" is caused by destruction or corruption of "electronic data", or any "loss" to "electronic data", except as provided under **SECTION A. COVERAGE, 5. Additional Coverages, d. Interruption of Computer Operations.**

b. Coverage for Extra Expense does not apply when action is taken to avoid or minimize a "suspension" of "operations" caused by destruction or corruption of "electronic data", or any "loss" to "electronic data", except as provided under **SECTION A. COVERAGE, 5. Additional Coverages, d. Interruption of Computer Operations.**

c. This Limitation does not apply when "loss" to "electronic data" involves only "electronic data" which is integrated in and operates or controls a building's elevator, lighting, heating, ventilation, air conditioning or security system.

5. **Additional Coverages**

The Additional Coverages in Paragraphs **5.a.** through **5.e.** are included within and not additional "Business Income" and Extra Expense Limits of Insurance.

a. **Alterations and New Buildings**

We will pay for the actual loss of "Business Income" you sustain and necessary Extra Expense you sustain due to direct "loss" at the "premises" caused by or resulting from any Covered Cause of Loss to:

(1) New buildings or structures, whether complete or under construction;

(2) Alterations or additions to existing buildings or structures; and

(3) Machinery, equipment, supplies or building materials located on or within 1,000 feet of the "premises" and:

(a) Used in the construction, alterations or additions; or

(b) Incidental to the occupancy of new buildings.

If such direct "loss" delays the start of "operations", the "period of restoration" for "Business Income" coverage will begin on the date "operations" would have begun if the direct "loss" had not occurred.

b. **Civil Authority**

When a Covered Cause of Loss causes direct damage to property other than Covered Property at the "premises", we will pay for the actual loss of "Business Income" you sustain and necessary Extra Expense you sustain caused by action of civil authority that prohibits access to the "premises", provided that both of the following apply:

(1) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage; and

(2) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

Civil Authority coverage for "Business Income" will begin immediately after the time of the first action of civil authority that prohibits access to the "premises" and will apply for a period of up to 30 consecutive days from the date on which such coverage began.

Civil Authority coverage for Extra Expense will begin immediately after the time of the first action of civil authority that prohibits access to the "premises" and will end 30 consecutive days after the date of that action; or when your Civil Authority coverage for "Business income" coverage ends, whichever is later.

**c. Extended Business Income**

**(1)** "Business Income" Other Than "Rental Value"

If the necessary "suspension" of your "operations" produces a "Business Income" "loss" payable under this Coverage Part, we will pay for the actual loss of "Business Income" you sustain during the period that:

**(a)** Begins on the date property (except "finished stock") is actually repaired, rebuilt or replaced and "operations" are resumed; and

**(b)** Ends on the earlier of:

**(i)** The date you could restore your "operations", with reasonable speed, to the level which would generate the "Business Income" amount that would have existed if no direct "loss" had occurred; or

**(ii)** 60 consecutive days after the date determined in **c.(1)(a)** above.

However, Extended Business Income does not apply to loss of "Business Income" sustained as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the "premises" are located.

Loss of "Business Income" must be caused by direct "loss" at the "premises" caused by or resulting from any Covered Cause of Loss.

**(2)** "Rental Value"

If the necessary "suspension" of your "operations" produces a "Rental Value" loss payable under this Coverage Part, we will pay for the actual loss of "Rental Value" you sustain during the period that:

**(a)** Begins on the date property is actually repaired, rebuilt or replaced and tenantability is restored; and

**(b)** Ends on the earlier of:

**(i)** The date you could restore tenant occupancy, with reasonable speed, to the level which would generate the "Rental Value" that would have existed if no direct "loss" had occurred; or

**(ii)** 60 consecutive days after the date determined in **c.(2)(a)** above.

However, Extended Business Income does not apply to loss of "Rental Value" sustained as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the "premises" are located.

Loss of "Rental Value" must be caused by direct "loss" at the described "premises" caused by or resulting from any Covered Cause of Loss.

**d. Interruption of Computer Operations**

**(1)** Subject to all provisions of this Additional Coverage - **Interruption of Computer Operations**, you may extend the insurance that applies to "Business Income" and Extra Expense to apply to a "suspension" of "operations" caused by an interruption in computer operations due to destruction or corruption of "electronic data" due to a Covered Cause of Loss. This Additional Coverage - **Interruption of Computer Operations** does not apply when "loss" to "electronic data" only involves "loss" to "electronic data" which is integrated in and operates or controls a building's elevator, lighting, heating, ventilation, air conditioning or security system.

**(2)** The Covered Causes of Loss include a virus, harmful code or similar instruction introduced into or enacted on a computer system (including "electronic data") or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for an interruption related to manipulation of a computer system (including "electronic data") by any employee, including a temporary or leased employee, or by an entity retained by you or for you to inspect, design, install, maintain, repair or replace that system.

**(3)** The most we will pay under this Additional Coverage - **Interruption of Computer Operations** is $2,500 for all "loss" sustained and expense sustained in any "coverage term", regardless of the number of interruptions or the number of "premises", locations or computer systems involved. If loss payment relating to the first interruption does not exhaust this

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

amount, then the balance is available for "loss" or expense sustained as a result of subsequent interruptions in that "coverage term". A balance remaining at the end of a "coverage term" does not increase the amount of insurance in the next "coverage term". With respect to any interruption which begins in one "coverage term" and continues or results in additional "loss" or expense in that subsequent "coverage term", all "loss" and expense is deemed to be sustained in the "coverage term" in which the interruption began.

**(4)** This Additional Coverage - **Interruption in Computer Operations** does not apply to "loss" sustained or expense sustained after the end of the "period of restoration", even if the amount of insurance stated in Paragraph **d.(3)** of this Additional Coverage has not been exhausted.

**e. Ingress and Egress**

We will pay for the actual loss of "Business Income" you sustain and necessary Extra Expense you sustain caused by the prevention of existing ingress or egress at a "premises" shown in the Declarations due to direct "loss" by a Covered Cause of Loss at a location contiguous to such "premises". However, coverage does not apply if ingress or egress from the "premises" is prohibited by civil authority.

Ingress and egress coverage for "Business Income" will begin immediately after the time of the direct "loss" and will continue for a period up to 30 consecutive days.

Ingress and egress coverage for Extra Expense will begin at time of the direct "loss" and will continue for 30 consecutive days or whenever your Ingress and Egress "business income" coverage ends, whichever occurs first.

**6. Coverage Extension**

The limit applicable to the Coverage Extension is in addition to the Limit of Insurance. **SECTION D. ADDITIONAL CONDITION, 1. Coinsurance** does not apply to this Coverage Extension.

**Newly Purchased or Leased Locations**

**a.** You may extend your "Business Income" and Extra Expense coverages to apply to property located at:

**(1)** New buildings or additions while being built on a "premises";

**(2)** Buildings you newly purchase or become required to insure by written contract; or

**(3)** Leased buildings or space therein that you are not required to insure. Such lease must be for a period of 12 consecutive months or longer.

This does not apply to property situated at trade shows, fairs or exhibitions.

**b.** The most we will pay in total for "Business Income" and Extra Expense "loss" under this Coverage Extension is $100,000 at each location described in Paragraph **6.a.**

**c.** Insurance under this Coverage Extension will end when any of the following first occurs:

**(1)** This policy expires;

**(2)** 90 days pass from the date you begin construction on that part of the building that would qualify as Covered Property;

**(3)** 90 days pass from the date you purchase, lease, or become contractually required to insure property described in Paragraphs **6.a.(2)** and **(3)**; or

**(4)** You report values to us when you acquire your new building or business personal property.

We will charge you additional premium for values reported from the date you purchase or lease the property or begin construction on that part of the building that would qualify as Covered Property.

**SECTION B. LIMITS OF INSURANCE**

The most we will pay for "loss" in any one occurrence is the applicable Limit of Insurance shown in the Declarations.

**SECTION C. LOSS CONDITIONS**

The following conditions apply in addition to the **COMMON POLICY CONDITIONS** and the **COMMERCIAL PROPERTY CONDITIONS.**

**1. Appraisal**

If we and you disagree on the amount of "Business Income" or Extra Expense "loss", either may make written demand for an appraisal of the "loss". In this event, each party will select a competent and impartial appraiser.

The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separate-

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

ly the amount of "Business Income" or Extra Expense "loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

a. Pay its chosen appraiser; and

b. Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

2. **Duties in the Event of Loss**

a. You must see that the following are done in the event you have a "Business Income" or Extra Expense "loss":

(1) Notify the police if a law may have been broken.

(2) Give us prompt notice of the direct "loss". Include a description of the property involved.

(3) As soon as possible, give us a description of how, when, and where the direct "loss" occurred.

(4) Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent "loss" resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

(5) As often as may be reasonably required, permit us to inspect the property proving the "loss" and examine your books and records.

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

(6) Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

(7) Cooperate with us in the investigation or settlement of the claim.

(8) If you intend to continue your business, you must resume all or part of

your "operations" as quickly as possible.

b. We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

3. **Loss Determination**

a. The amount of "Business Income" "loss" will be determined based on:

(1) The Net Income of the business before the direct "loss" occurred;

(2) The likely Net Income of the business if no direct "loss" had occurred, but not including any Net Income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses;

(3) The operating expenses, including payroll expenses, necessary to resume "operations" with the same quality of service that existed just before the direct "loss"; and

(4) Other relevant sources of information, including:

(a) Your financial records and accounting procedures;

(b) Bills, invoices and other vouchers; and

(c) Deeds, liens or contracts.

b. The amount of Extra Expense will be determined based on:

(1) All expenses that exceed the normal operating expenses that would have been sustained by "operations" during the "period of restoration" if no direct "loss" had occurred. We will deduct from the total of such expenses:

(a) The salvage value that remains of any property bought for temporary use during the "period of restoration", once "operations" are resumed; and

(b) Any Extra Expense that is paid for by other insurance, except for insurance that is written subject to the same plan, terms, conditions and provisions as this insurance; and

FA 213 05 16

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

(2) Necessary expenses that reduce the "Business Income" "loss" that otherwise would have been incurred.

c. **Resumption of Operations**

We will reduce the amount of your:

(1) "Business Income" "loss", other than Extra Expense to the extent you can resume your "operations", in whole or in part, by using damaged or undamaged property (including merchandise or stock) at the "premises" or elsewhere.

(2) Extra Expense "loss" to the extent you can return "operations" to normal and discontinue such Extra Expense.

d. If you do not resume "operations", or do not resume "operations" as quickly as possible, we will pay based on the length of time it would have taken to resume "operations" as quickly as possible.

4. **Loss Payment**

We will pay for insured "loss" within 30 days after we receive the sworn proof of loss, if you have complied with all of the terms of this Coverage Part and:

a. We have reached agreement with you on the amount of "loss"; or

b. An appraisal award has been made.

**SECTION D. ADDITIONAL CONDITION**

1. **Coinsurance**

If a Coinsurance percentage is shown in the Declarations, the following condition applies in addition to the **COMMON POLICY CONDITIONS** and the **COMMERCIAL PROPERTY CONDITIONS.**

We will not pay the full amount of any "Business Income" "loss" if the Limit of Insurance for "Business Income" is less than:

a. The Coinsurance percentage shown for "Business Income" in the Declarations; times

b. The sum of:

(1) The Net Income (Net Profit or Loss before income taxes), and

(2) Operating expenses, including payroll expenses,

that would have been earned or incurred (had no direct "loss" occurred) by your "operations" at the "premises" for the 12 months following the inception, or last previous anniversary date, of this Coverage Part (whichever is later).

Instead, we will determine the most we will pay using the following steps:

1. Multiply the Net Income and operating expense for the 12 months following the inception, or last previous anniversary date, of this Coverage Part by the Coinsurance percentage;

2. Divide the Limit of Insurance for the described "premises" by the figure determined in Step **1.**; and

3. Multiply the total amount of "loss" by the figure determined in Step **2.**

We will pay the amount determined in Step **3.** or the limit of insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

In determining operating expenses for the purpose of applying the Coinsurance condition, the following expenses, if applicable, shall be deducted from the total of all operating expenses:

1. Prepaid freight - outgoing;

2. Returns and allowances;

3. Discounts;

4. Bad debts;

5. Collection expenses;

6. Cost of raw stock and factory supplies consumed (including transportation charges);

7. Cost of merchandise sold (including transportation charges);

8. Cost of other supplies consumed (including transportation charges);

9. Cost of services purchased from outsiders (not employees) to resell, that do not continue under contract;

10. Power, heat and refrigeration expenses that do not continue under contract (if Form **CP 15 11** is attached);

11. All payroll expenses or the amount of payroll expense excluded (if Form **FA 465** is attached); and

12. Special deductions for mining properties (royalties unless specifically included in coverage; actual depletion commonly known as unit or cost depletion - not percentage depletion; welfare and retirement fund charges based on tonnage; hired trucks).

**Example No. 1 (Underinsurance):**

When: The Net Income and operating expenses for the 12 months follow-

ing the inception, or last previous anniversary date of this Coverage Part at "premises" would have been $400,000.

| | |
|---|---|
| The Coinsurance percentage is | 50% |
| The Limit of Insurance Is | $150,000 |
| "Business Income" "loss" is | $80,000 |

Step 1:  $400,000 X 50% = $200,000 (the minimum amount of insurance to meet your Coinsurance requirements)

Step 2:  $150,000 ÷ $200,000 = .75

Step 3:  $ 80,000 X .75 = $60,000

We will pay no more than $60,000. The remaining $20,000 is not covered.

### Example No. 2 (Adequate Insurance):

When: The Net Income and operating expenses for the 12 months following the inception, or last previous anniversary date of this Coverage Part at the "premises" would have been $400,000.

| | |
|---|---|
| The Coinsurance percentage is | 50% |
| The Limit of Insurance Is | $200,000 |
| "Business Income" "loss" is | $80,000 |

The minimum amount of insurance to meet your Coinsurance requirement is $200,000 ($400,000 x 50%). Therefore, the Limit of Insurance in this example is adequate and no penalty applies. We will pay no more than $80,000 (amount of "loss").

This condition does not apply to Extra Expense.

## SECTION E. OPTIONAL COVERAGES

If shown as applicable in the Declarations, the following Optional Coverages apply separately to each item.

1. **Maximum Period of Indemnity**

   a. **SECTION D. ADDITIONAL CONDITIONS, 1. Coinsurance** does not apply to this Coverage Part at the "premises" to which this Optional Coverage applies.

   b. The most we will pay in total for "Business Income" and Extra Expense "loss" is the lesser of:

   (1) The amount of "Business Income" and Extra Expense "loss" sustained during the 120 days immediately following the beginning of the "period of restoration"; or

(2) The Limit of Insurance shown in the Declarations.

2. **Monthly Limit of Indemnity**

   a. **SECTION D. ADDITIONAL CONDITIONS, 1. Coinsurance** does not apply to this Coverage Part at the "premises" to which this Optional Coverage applies.

   b. The most we will pay for "Business Income" "loss" in each period of 30 consecutive days after the beginning of the "period of restoration" is:

   (1) The Limit of Insurance; multiplied by

   (2) The fraction shown in the Declarations for this Optional Coverage.

### Example:

When: The "Business Income" Limit of Insurance is $120,000

The fraction shown in the Declarations for this Optional Coverage is 1/4

The most we will pay for "loss" in each period of 30 consecutive days is: $120,000 X 1/4 = $30,000.

If, in this example, the actual amount of "Business Income" "loss" is:

| | | |
|---|---|---|
| Days | 1-30 | $40,000 |
| Days | 31-60 | 20,000 |
| Days | 61-90 | 30,000 |
| | | $90,000 |

We will pay:

| | | |
|---|---|---|
| Days | 1-30 | $30,000 |
| Days | 31-60 | 20,000 |
| Days | 61-90 | 30,000 |
| | | $80,000 |

The remaining $10,000 is not covered.

3. **Business Income Agreed Value**

   a. To activate this Optional Coverage:

   (1) A Business Income Report/Work Sheet must be on file with the Company and must show financial data for your "operations":

   (a) During the 12 months prior to the date of the Work Sheet; and

   (b) Estimated for the 12 months immediately following the inception of this Optional Coverage.

   (2) The Declarations must indicate that the Business Income Agreed Value Optional Coverage applies. The "Business Income" Limit of Insurance indicated on the Declarations should

---

FA 213 05 16

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

be at least equal to the Agreed Value, which is determined by:

(a) The Coinsurance percentage shown in the Declarations; multiplied by

(b) The amount of Net Income and Operating Expenses for the following 12 months you report on the Work Sheet.

b. Except as noted in **c.** below, the **ADDITIONAL CONDITION Coinsurance** is suspended until the expiration date of this Coverage Part.

c. We will reinstate the **ADDITIONAL CONDITION Coinsurance** automatically if you do not submit a new Work Sheet and Agreed Value:

(1) When you request a change in your "Business Income" Limit of Insurance; or

(2) When you request the coinsurance percentage be changed on the Work Sheet.

d. If the "Business Income" Limit of Insurance is less than the Agreed Value, we will not pay more of any loss than the amount of loss multiplied by:

(1) The "Business Income" Limit of Insurance; divided by

(2) The Agreed Value.

**Example:**

When: The Limit of Insurance is $100,000

The Agreed Value is $200,000

"Business Income" "loss" is $80,000

Step (a): $100,000 ÷ $200,000 = .50

Step (b): .50 X $80,000 = $40,000

We will pay $40,000. The remaining $40,000 is not covered.

4. **Extended Period of Indemnity**

In **SECTION A. COVERAGE, 5. Additional Coverages, c. Extended Business Income,** the number "60" in Subparagraphs **(1)(b)** and **(2)(b)** is replaced by the number shown in the Declarations for this Optional Coverage.

**SECTION F. DEFINITIONS**

1. "Business Income" means the:

a. Net income (Net Profit or Loss before income taxes) that would have been earned or incurred; and

b. Continuing normal operating expenses sustained, including payroll.

2. "Computer programs" means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data.

3. "Coverage term" means the following individual increment, or if a multi-year policy period, increments, of time, which comprise the policy period of this Coverage Part:

a. The year commencing on the Effective Date of this Coverage Part at 12:01 A.M. standard time at your mailing address shown in the Declarations, and if a multi-year policy period, each consecutive annual period thereafter, or portion thereof if any period is for a period of less than 12 months, constitute individual "coverage terms". The last "coverage term" ends at 12:00 A.M. standard time at your mailing address shown in the Declarations on the earlier of:

(1) The day the policy period shown in the Declarations ends; or

(2) The day the policy to which this Coverage Part is attached is terminated or cancelled.

b. However, if after the issuance of this Coverage Part, any "coverage term" is extended for an additional period of less than 12 months, that additional period of time will be deemed to be part of the last preceding "coverage term".

4. "Electronic data" means information, facts or "computer programs" stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment.

5. "Finished stock" means stock you have manufactured.

"Finished stock" also includes whiskey and alcoholic products being aged, unless there is a coinsurance percentage shown for "Business Income" in the Declarations.

"Finished stock" does not include stock you have manufactured that is held for sale on the "premises" of any retail outlet insured under this Coverage Part.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

6 "Loss" means accidental physical loss or accidental physical damage.

7. "Operations" means:

a. Your business activities occurring at the "premises"; and

b. The tenantability of the "premises", if coverage for "Business Income" including "Rental Value" or "Rental Value" applies.

8. "Period of restoration" means the period of time that:

a. Begins at the time of direct "loss".

b. Ends on the earlier of:

(1) The date when the property at the "premises" should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

(2) The date when business is resumed at a new permanent location.

c. "Period of restoration" does not include any increased period required due to the enforcement of or compliance with any ordinance or law that:

(1) Regulates the construction, use or repair, or requires the tearing down of any property; or

(2) Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of "pollutants".

d. The expiration date of the Coverage Part will not cut short the "period of restoration".

9. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, asbestos, chemicals, petroleum, petroleum products and petroleum by-products, and waste. Waste includes materials to be recycled, reconditioned or reclaimed. "Pollutants" include but are not limited to substances which are generally recognized in industry or government to be harmful or toxic to persons,

property, or the environment regardless of whether injury or damage is caused directly or indirectly by the "pollutants" and whether:

a. You are regularly or otherwise engaged in activities which taint or degrade the environment; or

b. You use, generate or produce the "pollutant".

10. "Premises" means the Locations and Buildings described in the Declarations.

11. "Rental Value" means "Business Income" that consists of:

a. Net income (Net Profit or Loss before income taxes) that would have been earned or incurred as rental income from tenant occupancy of the "premises" described in the Declarations as furnished and equipped by you, including fair rental value of any portion of the "premises" which is occupied by you; and

b. Continuing normal operating expenses incurred in connection with that "premises", including:

(1) Payroll; and

(2) The amount of charges, which are the legal obligation of the tenant(s) but would otherwise be your obligations.

12. "Suspension" means:

a. The slowdown or cessation of your business activities; and

b. That a part or all of the "premises" is rendered untenantable if coverage for "Business Income" including "Rental Value" or "Rental Value" applies.

13. "Valuable papers and records" means inscribed, printed or written documents, manuscripts or records, including abstracts, books, card index systems, deeds, drawings, films, maps, mortgages, or proprietary information. But "valuable papers and records" does not mean "money" or "securities" or "electronic data", including the materials on which the "electronic data" is recorded.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

FA 213 05 16

# THE CINCINNATI INSURANCE COMPANY

A Stock Insurance Company

## COMMERCIAL GENERAL LIABILITY COVERAGE PART DECLARATIONS

Attached to and forming part of POLICY NUMBER: EPP 026 35 19

Named Insured is the same as it appears in the Common Policy Declarations

**LIMITS OF INSURANCE**

| | | |
|---|---|---|
| EACH OCCURRENCE LIMIT | $1,000,000 | |
| GENERAL AGGREGATE LIMIT | $2,000,000 | |
| PRODUCTS-COMPLETED OPERATIONS AGGREGATE LIMIT | $2,000,000 | |
| PERSONAL & ADVERTISING INJURY LIMIT | $1,000,000 | ANY ONE PERSON OR ORGANIZATION |
| DAMAGE TO PREMISES RENTED TO YOU LIMIT | | ANY ONE |
| $100,000 limit unless otherwise indicated herein: | $ SEE GA210 | PREMISES |
| MEDICAL EXPENSE LIMIT | | |
| $5,000 limit unless otherwise indicated herein: | $ SEE GA210 | ANY ONE PERSON |

| CLASSIFICATION | CODE NO. | PREMIUM BASE | RATE | | ADVANCE PREMIUM | |
|---|---|---|---|---|---|---|
| | | A - Area<br>B - Payroll<br>C - Gross Sales<br>D - Units<br>E - Other | Products / Completed Operations | All Other | Products / Completed Operations | All Other |
| LOC. 1 - PA<br>PAPER GOODS MFG. | 57725 | C 21,000,000 | .206 | .157 | 4,326 | 3,297 |
| BROADENED COVERAGE | 20291 | | | 2.5% | | 191 |
| ADDITIONAL INSUREDS | 29954 | | | | | 70 |

The General Liability Coverage Part is subject to an annual minimum premium.

TOTAL ANNUAL PREMIUM   $ 7,884

**FORMS AND / OR ENDORSEMENTS APPLICABLE TO COMMERCIAL GENERAL LIABILITY COVERAGE PART:**

| | | |
|---|---|---|
| GA101 | 12/04 | COMMERCIAL GENERAL LIABILITY COVERAGE FORM |
| GA4496 | 09/18 | NOTICE TO POLICYHOLDERS ADDITIONAL INSURED ENDORSEMENTS EDITION 09 18 |
| GA4497 | 09/18 | NOTICE TO POLICYHOLDERS COMMERCIAL GENERAL LIABILITY BROADENED ENDORSEMENTS |
| CG2026 | 04/13 | ADDITIONAL INSURED - DESIGNATED PERSON OR ORGANIZATION |
| CG2404 | 10/93 | WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US |
| GA210 | 09/17 | COMMERCIAL GENERAL LIABILITY BROADENED ENDORSEMENT |
| GA3024 | 05/14 | EXCLUSION - ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY - WITH LIMITED BODILY INJURY EXCEPTION |
| GA325PA | 10/95 | PENNSYLVANIA AMENDATORY ENDORSEMENT |

GA 532 07 08              EPP 026 35 19              Page 1 of 1

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this Coverage Part restrict this insurance. Read the entire Coverage Part carefully to determine rights, duties and what is and is not covered.

Throughout this Coverage Part the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this Coverage Part. The words "we", "us" and "our" refer to the Company providing this insurance.

The word "insured" means any person or organization qualifying as such under **SECTION II - WHO IS AN INSURED.**

Other words and phrases that appear in quotation marks have special meaning. Refer to **SECTION V - DEFINITIONS.**

## SECTION I - COVERAGES

### COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

      (1) The amount we will pay for damages is limited as described in **SECTION III - LIMITS OF INSURANCE**; and

      (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under **SECTION I - COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY; SECTION I - COVERAGES, COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY;** or medical expenses under **SECTION I - COVERAGES, COVERAGE C. MEDICAL PAYMENTS.**

      No other obligation or liability to pay sums or perform acts or services is covered unless expressly provided for under

**SUPPLEMENTARY PAYMENTS - COVERAGES A AND B.**

   b. This insurance applies to "bodily injury" and "property damage" only if:

      (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

      (2) The "bodily injury" or "property damage" occurs during the policy period; and

      (3) Prior to the "coverage term" in which "bodily injury" or "property damage" occurs, you did not know, per Paragraph **1.d.** below, that the "bodily injury" or "property damage" had occurred or had begun to occur, in whole or in part.

   c. "Bodily injury" or "property damage" which:

      (1) Occurs during the "coverage term"; and

      (2) Was not, prior to the "coverage term", known by you, per Paragraph **1.d.** below, to have occurred;

   includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the "coverage term" in which it first became known by you.

   d. You will be deemed to know that "bodily injury" or "property damage" has occurred at the earliest time when any "authorized representative":

      (1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

      (2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage";

      (3) First observes, or reasonably should have first observed, the "bodily injury" or "property damage";

      (4) Becomes aware, or reasonably should have become aware, by any means other than as described in **(3)** above, that "bodily injury" or "property damage" had occurred or had begun to occur; or

      (5) Becomes aware, or reasonably should have become aware, of a

condition from which "bodily injury" or "property damage" is substantially certain to occur.

e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

2. **Exclusions**

This insurance does not apply to:

a. **Expected or Intended Injury**

"Bodily injury" or "property damage" which may reasonably be expected to result from the intentional or criminal acts of the insured or which is in fact expected or intended by the insured, even if the injury or damage is of a different degree or type than actually expected or intended. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

b. **Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. When a claim for such "bodily injury" or "property damage" is made, we will defend that claim provided the insured has assumed the obligation to defend such claim in the "insured contract". Such defense payments will not reduce the limits of insurance.

c. **Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

d. **Workers' Compensation and Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

e. **Employer's Liability**

"Bodily injury" to:

(1) An "employee" of the insured sustained in the "workplace";

(2) An "employee" of the insured arising out of the performance of duties related to the conduct of the insured's business; or

(3) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraphs **(1)** or **(2)** above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

f. **Pollutant**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release, escape or emission of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, Paragraph **(a)** does not apply to:

1) "Bodily injury" to any person injured while on any premises, site or location owned or occupied by, or rented or loaned to, you provided:

**GA 101 12 04**

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**Page 2 of 22**

**a)** The injury is caused by the inadequate ventilation of vapors;

**b)** The person injured is first exposed to such vapors during the policy period; and

**c)** Within 30 days of such first exposure, the person injured is clinically diagnosed or treated by a physician for the medical condition caused by the exposure to such vapors. However, Paragraph **c)** does not apply if the "bodily injury" is caused by vapors produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests.

This exception **1)** shall apply only to Named Insureds; we shall have no duty to defend or pay damages for any person or organization that is not a Named Insured. However, this paragraph does not apply if the "bodily injury" is caused by vapors produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests.

For the purpose of the exception granted in Paragraph **1)** only, vapors means any gaseous or airborne irritant or airborne contaminant, including smoke, fumes, vapor or soot, but excluding asbestos, which is discharged, dispersed, emitted, released or escapes from materials, machinery or equipment used in the service or maintenance of the premises. Vapors does not mean any gaseous or

airborne irritants or contaminants used in a manufacturing process or which is the product or by-product of any manufacturing process;

**2)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor, and the owner or lessee of such premises, site or location has been added to this Coverage Part as an additional insured with respect to your ongoing operations or "your work" performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

**3)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

**1)** Any insured; or

**2)** Any person or organization for whom you may be legally responsible;

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, Paragraph **(d)** does not apply to:

**1)** "Bodily injury" or "property damage" arising out of the discharge, dispersal, seepage, migration, release, es-

cape or emission of fuels, lubricants or other operating fluids, or exhaust gases, which are needed to perform, or are the result of, the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids, or exhaust gases, escape, seep or migrate, or are discharged, dispersed, released or emitted from a vehicle part designed to hold, store or receive them. This exception does not apply if the fuels, lubricants or other operating fluids, or exhaust gases, escape, seep or migrate, or are discharged, dispersed, released or emitted with the intent to cause "bodily injury" or "property damage" or with the knowledge that "bodily injury" or "property damage" is substantially certain to occur, or if such fuels, lubricants or other operating fluids, or exhaust gases, are brought on or to the premises, site or location with such intent to escape, seep or migrate, or be discharged, dispersed, released or emitted as part of the operations being performed by such insured, contractor or subcontractor;

2) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

3) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire"; or

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the op-

erations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, Paragraphs (2)(a) and (b) do not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

g. **Aircraft, Auto or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

(a) Less than 51 feet long; and

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

**(a)** The operation of machinery or equipment that is on, attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or

**(b)** The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h.** **Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i.** **War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j.** **Damage to Property**

"Property damage" to:

**(1)** Property you own, rent or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of an insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire or explosion) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days, for which the amount we will pay is limited to the Damage To Premises Rented To You Limit as described in **SECTION III - LIMITS OF INSURANCE**.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k.** **Damage to Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l.  Damage to Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m.  Damage to Impaired Property or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)**  A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)**  A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n.  Recall of Products, Work or Impaired Property**

Any liability or damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)**  "Your product";

**(2)**  "Your work"; or

**(3)**  "Impaired property";

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o.  Personal and Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p.  Asbestos**

"Bodily injury" or "property damage" arising out of, attributable to, or any way related to asbestos in any form or transmitted in any manner.

**q.  Employment-Related Practices**

"Bodily injury" to:

**(1)**  A person arising out of any:

**(a)**  Refusal to employ that person;

**(b)**  Termination of that person's employment; or

**(c)**  Other employment-related practices, policies, acts or omissions including but not limited to coercion, criticism, demotion, evaluation, failure to promote, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

**(2)**  The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)** or **(c)** above is directed.

This exclusion applies:

**(1)**  Whether the insured may be liable as an employer or in any other capacity; and

**(2)**  To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**r.  Additional Insured Prior Knowledge**

An additional insured added by attachment of an endorsement to this Coverage Part that is seeking coverage for a claim or "suit", if that additional insured knew, per the following paragraph, that "bodily injury" or "property damage" had occurred or had begun to occur, in whole or in part, prior to the "coverage term" in which such "bodily injury" or "property damage" occurs or begins to occur.

An additional insured added by attachment of an endorsement to this Coverage Part will be deemed to have known that "bodily injury" or "property damage" has occurred or has begun to occur at the earliest time when that additional insured, or any one of its owners, members, partners, managers, executive officers, "employees" assigned to manage that additional insured's insurance program, or "employees" assigned to give or receive notice of an "occurrence", "personal and advertising injury" offense, claim or "suit":

GA 101 12 04

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Page 6 of 22

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage";

**(3)** First observes, or reasonably should have first observed, the "bodily injury" or "property damage";

**(4)** Becomes aware, or reasonably should have become aware, by any means other than as described in **(3)** above, that "bodily injury" or "property damage" had occurred or had begun to occur; or

**(5)** Becomes aware, or reasonably should have become aware, of a condition from which "bodily injury" or "property damage" is substantially certain to occur.

**s. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate "electronic data".

**t. Distribution of Material in Violation of Statutes**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**a.** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

**b.** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**c.** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

Exclusions **c.** through **q.** do not apply to "property damage" by fire or explosion to premises while rented to you or temporarily occupied by you with permission of the owner, for which the amount we will pay is limited to the Damage to Premises Rented To You Limit as described in **SECTION III - LIMITS OF INSURANCE.**

**COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in **SECTION III - LIMITS OF INSURANCE**; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under **SECTION I - COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY; SECTION I - COVERAGES, COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY;** or medical expenses under **SECTION I - COVERAGES, COVERAGE C. MEDICAL PAYMENTS.**

No other obligation or liability to pay sums or perform acts or services is covered unless expressly provided for under **SUPPLEMENTARY PAYMENTS - COVERAGES A AND B.**

**b.** This insurance applies to "personal and advertising injury" only if:

**(1)** The "personal and advertising injury" is caused by an offense arising out of your business; and

**(2)** The "personal and advertising injury" offense was committed in the "coverage territory" during the policy period; and

**(3)** Prior to the "coverage term" in which the "personal and advertising injury" offense is committed, you did not know, per Paragraph **1.d.** below, that the offense had been committed or had begun to be committed, in whole or in part.

**c.** "Personal and advertising injury" caused by an offense which:

**(1)** Was committed during the "coverage term"; and

**GA 101 12 04**

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Page 7 of 22

**(2)** Was not, prior to the "coverage term", known by you, per Paragraph **1.d.** below, to have been committed;

includes any continuation, change or resumption of that offense after the end of the "coverage term" in which it first became known by you.

**d.** You will be deemed to know that a "personal and advertising injury" offense has been committed at the earliest time when any "authorized representative":

**(1)** Reports all, or any part, of the "personal and advertising injury" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "personal and advertising injury";

**(3)** First observes, or reasonably should have first observed, the offense that caused the "personal and advertising injury";

**(4)** Becomes aware, or reasonably should have become aware, by any means, other than as described in **(3)** above, that the offense had been committed or had begun to be committed; or

**(5)** Becomes aware, or reasonably should have become aware, of a condition from which "personal and advertising injury" is substantially certain to occur.

**2.** **Exclusions**

This insurance does not apply to:

**a.** **Knowing Violation of Rights of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b.** **Material Published With Knowledge of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

**c.** **Material Published Prior to Coverage Term**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the later of the following:

**(1)** The inception of this Coverage Part; or

**(2)** The "coverage term" in which insurance coverage is sought.

**d.** **Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e.** **Contractual Liability**

"Personal and advertising injury" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "personal and advertising injury" is caused by or arises out of an offense committed subsequent to the execution of the contract or agreement. When a claim for such "personal and advertising injury" is made, we will defend that claim, provided the insured has assumed the obligation to defend such claim in the "insured contract". Such defense payments will not reduce the limits of insurance.

**f.** **Breach of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g.** **Quality or Performance of Goods - Failure to Conform to Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h.** **Wrong Description of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

**i.** **Infringement of Copyright, Patent, Trademark or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, pat-

ent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds in Media and Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of web-sites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **17. a., b.** and **c.** of "personal and advertising injury" under **SECTION V - DEFINITIONS.**

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet is not, by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board any insured hosts, owns, or over which any insured exercises control.

**l. Unauthorized Use of Another's Name or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Employment Related Practices**

"Personal and advertising injury" to:

**(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Other employment-related practices, policies, acts or omissions including but not limited to coercion, criticism, demotion, evaluation, failure to promote, reassignment, discipline, defamation, harassment, humiliation

or discrimination directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b)** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**n. Pollutant**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release, escape or emission of "pollutants" at any time.

**o. Pollutant-Related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**p. Asbestos**

"Personal and advertising injury" arising out of, attributable to, or any way related to asbestos in any form or transmitted in any manner.

**q. Additional Insured Prior Knowledge**

An additional insured added by attachment of an endorsement to this Coverage Part that is seeking coverage for a claim or "suit", if that additional insured knew, per the following paragraph, that a "personal and advertising injury" offense had been committed or had begun to be committed, in whole or in part, prior to the "coverage term" in which such offense

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

was committed or began to be committed.

An additional insured added by attachment of an endorsement to this Coverage Part will be deemed to have known that a "personal and advertising injury" offense has been committed or has begun to be committed at the earliest time when that additional insured, or any one of its owners, members, partners, managers, executive officers, "employees" assigned to manage that additional insured's insurance program, or "employees" assigned to give or receive notice of an "occurrence", "personal and advertising injury" offense, claim or "suit":

(1) Reports all, or any part, of the "personal and advertising injury" to us or any other insurer;

(2) Receives a written or verbal demand or claim for damages because of the "personal and advertising injury";

(3) First observes, or reasonably should have first observed, the offense that caused the "personal and advertising injury";

(4) Becomes aware, or reasonably should have become aware, by any means other than as described in (3) above, that the "personal and advertising injury" offense had been committed or had begun to be committed; or

(5) Becomes aware, or reasonably should have become aware, of a condition from which "personal and advertising injury" is substantially certain to occur.

**r.** **War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**s.** **Distribution of Material in Violation of Statutes**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**a.** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

**b.** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**c.** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

**COVERAGE C. MEDICAL PAYMENTS**

**1.** **Insuring Agreement**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(1) The accident takes place in the "coverage territory" and during the policy period;

(2) The expenses are incurred and reported to us within three years of the date of the accident; and

(3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

**2.** **Exclusions**

We will not pay expenses for "bodily injury":

### a. Any Insured

To any insured, except "volunteer workers".

### b. Hired Person

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

### c. Injury on Normally Occupied Premises

To a person injured on that part of premises you own or rent that the person normally occupies.

### d. Workers' Compensation and Similar Laws

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

### e. Athletic Activities

To any person injured while officiating, coaching, practicing for, instructing or participating in any physical exercises or games, sports, or athletic contests or exhibitions of an athletic or sports nature.

### f. Products-Completed Operations Hazard

Included within the "products-completed operations hazard".

### g. Coverage A Exclusions

Excluded under **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY.**

## SUPPLEMENTARY PAYMENTS - COVERAGES A AND B

We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

1. All expenses we incur.

2. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

3. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

4. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

5. All costs taxed against the insured in the "suit".

6. Prejudgment interest awarded against the insured on that part of the judgment we become obligated to pay and which falls within the applicable limit of insurance. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

7. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

## SECTION II - WHO IS AN INSURED

1. If you are designated in the Declarations as:

   a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

   c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

   d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

   e. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

2. Each of the following is also an insured:

   a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by

you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

(1) "Bodily injury" or "personal and advertising injury":

(a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

(b) To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph (1)(a) above;

(c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs (1)(a) or (b) above; or

(d) Arising out of his or her providing or failing to provide professional health care services.

(2) "Property damage" to property:

(a) Owned, occupied or used by; or ·

(b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by,

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

b. Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

c. Any person or organization having proper temporary custody of your property if you die, but only:

(1) With respect to liability arising out of the maintenance or use of that property; and

(2) Until your legal representative has been appointed.

d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

a. Insurance under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

b. **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

c. **COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III - LIMITS OF INSURANCE**

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

a. Insureds;

b. Claims made or "suits" brought; or

c. Persons or organizations making claims or bringing "suits".

2. a. The General Aggregate Limit is the most we will pay for the sum of:

(1) Medical expenses under **COVERAGE C. MEDICAL PAYMENTS;**

(2) Damages under **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY,** except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

(3) Damages under **COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY.**

This General Aggregate Limit will not apply if either the Location General Aggre-

GA 101 12 04

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Page 12 of 22

gate Limit of Insurance, Paragraph **2.b.**, or the Construction Project General Aggregate Limit of Insurance, Paragraph **2.c.** applies.

**b.** A separate Location General Aggregate Limit of Insurance, equal to the amount of the General Aggregate Limit shown in the Declarations, shall apply to each location owned by, or rented or leased to you and is the most we will pay for the sum of:

    **(1)** Damages under **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

    **(2)** Medical expenses under **COVERAGE C. MEDICAL PAYMENTS,**

which can be attributed to operations at only a single location owned by, or rented or leased to you.

**c.** A separate Construction Project General Aggregate Limit of Insurance, equal to the amount of the General Aggregate Limit shown in the Declarations, shall apply to each construction project and is the most we will pay for the sum of:

    **(1)** Damages under **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

    **(2)** Medical expenses under **COVERAGE C. MEDICAL PAYMENTS;**

which can be attributed only to ongoing operations and only at a single construction project.

**d.** Only for the purpose of determining which General Aggregate Limit of Insurance, **2.a., 2.b.,** or **2.c.,** applies:

    **(1)** Location means premises involving the same or connecting lots, or premises, whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad.

    **(2)** Construction project means a location you do not own, rent or lease where ongoing improvements, alterations, installation, demolition or maintenance work is performed by you or on your behalf. All connected ongoing improvements, alterations, installation, demolition or maintenance work performed by you or on

your behalf at the same location for the same persons or organizations, no matter how often or under how many different contracts, will be deemed to be a single construction project.

**3.** The Products-Completed Operations Aggregate Limit is the most we will pay under **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

**4.** Subject to **2.a.** above, the Personal and Advertising Injury Limit is the most we will pay under **COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

**5.** Subject to **2. or 3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

    **a.** Damages under **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**; and

    **b.** Medical expenses under **COVERAGE C. MEDICAL PAYMENTS;**

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

**6.** Subject to **5.** above, the Damage to Premises Rented to You Limit is the most we will pay under **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire or explosion, while rented to you or temporarily occupied by you with permission of the owner.

**7.** Subject to **5.** above, the Medical Expense Limit is the most we will pay under **COVERAGE C. MEDICAL PAYMENTS** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each "coverage term".

**SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS**

**1. Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties in the Event of Occurrence, Offense, Claim or Suit**

    **a.** You must see to it that we are notified as soon as practicable of an "occurrence" or

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

a "personal and advertising injury" offense which may result in a claim. To the extent possible, notice should include:

**(1)** How, when and where the "occurrence" or offense took place;

**(2)** The names and addresses of any injured persons and witnesses; and

**(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If a claim is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the claim or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3.** **Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable

under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4.** **Liberalization**

If, within 60 days prior to the beginning of this Coverage Part or during the policy period, we make any changes to any forms or endorsements of this Coverage Part for which there is currently no separate premium charge, and that change provides more coverage than this Coverage Part, the change will automatically apply to this Coverage Part as of the latter of:

**a.** The date we implemented the change in your state; or

**b.** The date this Coverage Part became effective; and

will be considered as included until the end of the current policy period. We will make no additional premium charge for this additional coverage during the interim.

**5.** **Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** or **COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY** of this Coverage Part, our obligations are limited as follows:

**a.** **Primary Insurance**

This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

**b.** **Excess Insurance**

This insurance is excess over:

**(1)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(a)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar insurance for "your work";

**(b)** That is Fire or Explosion insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(c)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to

---

Includes copyrighted material of Insurance
Services Office, Inc., with its permission.

premises rented to you or temporarily occupied by you with permission of the owner; or

**(d)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to **SECTION I - COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions, g. Aircraft, Auto or Watercraft.**

**(2)** Any other primary insurance available to the insured covering liability for damages arising out of the premises or operations, or the products and completed operations, for which the insured has been added as an additional insured by attachment of an endorsement.

**(3)** Any other insurance:

**(a)** Whether primary, excess, contingent or on any other basis, except when such insurance is written specifically to be excess over this insurance; and

**(b)** That is a consolidated (wrap-up) insurance program which has been provided by the prime contractor/project manager or owner of the consolidated project in which you are involved.

When this insurance is excess, we will have no duty under **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** or **COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(1)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(2)** The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance

shown in the Declarations of this Coverage Part.

**c. Method of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**6. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If:

**(1)** The earned premium is less than the deposit premium, we will return the excess to the first Named Insured; or

**(2)** The earned premium is greater than the deposit premium, the difference will be due and payable to us by the first Named Insured upon notice from us.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**7. Representations**

By accepting this Coverage Part, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this Coverage Part in reliance upon your representations.

**8. Separation of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**9. Transfer of Rights of Recovery Against Others to Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**10. Two or More Coverage Forms or Policies Issued by Us**

If this Coverage Part and any other Coverage Form, Coverage Part or policy issued to you by us or any company affiliated with us apply to the same "occurrence" or "personal and advertising injury" offense, the aggregate maximum limit of insurance under all the Coverage Forms, Coverage Parts or policies shall not exceed the highest applicable limit of insurance under any one Coverage Form, Coverage Part or policy. This condition does not apply to any Coverage Form, Coverage Part or policy issued by us or an affiliated company specifically to apply as excess insurance over this Coverage Part.

**11. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## SECTION V - DEFINITIONS

**1.** "Advertisement" means a notice that is broadcast, telecast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. "Advertisement" includes a publicity article. For purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an "advertisement".

**2.** "Authorized representative" means:

**a.** If you are designated in the Declarations as:

**(1)** An individual, you and your spouse are "authorized representatives";

**(2)** A partnership or joint venture, your members, your partners, and their spouses are "authorized representatives".

**(3)** A limited liability company, your members and your managers are "authorized representatives".

**(4)** An organization other than a partnership, joint venture or limited liability company, your "executive officers" and directors are "authorized representatives". Provided you are not a publicly traded organization, your stockholders are also "authorized representatives".

**(5)** A trust, your trustees are "authorized representatives".

**b.** Your "employees":

**(1)** Assigned to manage your insurance program; or

**(2)** Responsible for giving or receiving notice of an "occurrence", "personal and advertising injury" offense, claim or "suit";

are also "authorized representatives".

**3.** "Auto" means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**4.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**5.** "Coverage term" means the following individual increment, or if a multi-year policy period, increments, of time, which comprise the policy period of this Coverage Part:

**a.** The year commencing on the Effective Date of this Coverage Part at 12:01 AM standard time at your mailing address shown in the Declarations, and if a multi-year policy period, each consecutive annual period thereafter, or portion thereof if any period is for a period of less than 12 months, constitute individual "coverage terms". The last "coverage term" ends at

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

12:00 AM standard time at your mailing address shown in the Declarations on the earlier of:

    **(1)** The day the policy period shown in the Declarations ends; or

    **(2)** The day the policy to which this Coverage Part is attached is terminated or cancelled.

  **b.** However, if after the issuance of this Coverage Part, any "coverage term" is extended for an additional period of less than 12 months, that additional period of time will be deemed to be part of the last preceding "coverage term".

**6.** "Coverage territory" means:

  **a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

  **b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in **a.** above; or

  **c.** All other parts of the world if the injury or damage arises out of:

    **(1)** Goods or products made or sold by you in the territory described in **a.** above;

    **(2)** The activities of a person whose home is in the territory described in **a.** above, but is away for a short time on your business; or

    **(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication,

  provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in **a.** above or in a settlement to which we agree.

**7.** "Electronic data" means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**8.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**9.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

**10.** "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**11.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

  **a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

  **b.** You have failed to fulfill the terms of a contract or agreement;

  if such property can be restored to use by:

  **a.** The repair, replacement, adjustment or removal of "your product" or "your work"; or

  **b.** Your fulfilling the terms of the contract or agreement.

**12.** "Insured contract" means:

  **a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for "property damage" by fire or explosion to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

  **b.** A sidetrack agreement;

  **c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

  **d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

  **e.** An elevator maintenance agreement;

  **f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury", "property damage" or "personal and advertising injury" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

  Paragraph **f.** does not include that part of any contract or agreement:

    **(1)** That indemnifies a railroad for "bodily injury", "property damage" or "personal and advertising injury" arising out of construction or demolition operations, within 50 feet of any rail-

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

GA 101 12 04

road property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

(b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage;

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in Paragraph (2) above and supervisory, inspection, architectural or engineering activities;

(4) That indemnifies an advertising, public relations or media consulting firm for "personal and advertising injury" arising out of the planning, execution or failure to execute marketing communications programs. Marketing communications programs include but are not limited to comprehensive marketing campaigns; consumer, trade and corporate advertising for all media; media planning, buying, monitoring and analysis; direct mail; promotion; sales materials; design; presentations; point-of-sale materials; market research; public relations and new product development;

(5) Under which the insured, if an advertising, public relations or media consulting firm, assumes liability for "personal and advertising injury" arising out of the insured's rendering or failure to render professional services, including those services listed in Paragraph (4), above;

(6) That indemnifies a web-site designer or content provider, or Internet search, access, content or service provider for injury or damage arising out of the planning, execution or failure to execute Internet services. Internet services include but are not limited to design, production, distribution, maintenance and administration of web-sites and web-banners; hosting web-sites; registering domain names; registering with search

engines; marketing analysis; and providing access to the Internet or other similar networks; or

(7) Under which the insured, if a web-site designer or content provider, or Internet search, access, content or service provider, assumes liability for injury or damage arising out of the insured's rendering or failure to render Internet services, including those listed in Paragraph (6), above;

13. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" includes supervisors furnished to you by the labor leasing firm. "Leased worker" does not include a "temporary worker".

14. "Loading or unloading" means the handling of property:

a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

b. While it is in or on an aircraft, watercraft or "auto"; or

c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

15. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b. Vehicles maintained for use solely on or next to premises you own or rent;

c. Vehicles that travel on crawler treads;

d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

(1) Power cranes, shovels, loaders, diggers or drills; or

(2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

e. Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

GA 101 12 04

permanently attached equipment of the following types:

**(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

**(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**(1)** Equipment designed primarily for:

**(a)** Snow removal;

**(b)** Road maintenance, but not construction or resurfacing; or

**(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**16.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**17.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**18.** "Pollutant" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, petroleum, petroleum products and petroleum by-products, and waste. Waste includes materials to be recycled, reconditioned or reclaimed. "Pollutants" include but are not limited to substances which are generally recognized in industry or government to be harmful or toxic to persons, property or the environment regardless of whether the injury or damage is caused directly or indirectly by the "pollutants" and whether:

**a.** The insured is regularly or otherwise engaged in activities which taint or degrade the environment; or

**b.** The insured uses, generates or produces the "pollutant".

**19.** "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)** Products that are still in your physical possession; or

**(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

**(a)** When all of the work called for in your contract has been completed; or

**(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site; or

**(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

b. Does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

(2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

(3) Products or operations for which the classification, listed in the Declarations or in a schedule, states that products-completed operations are included.

20. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, "electronic data" is not tangible property.

21. "Suit" means a civil proceeding in which money damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent;

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent; or

c. An appeal of a civil proceeding.

22. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

23. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

24. "Workplace" means that place and during such hours to which the "employee" sustaining "bodily injury" was assigned by you, or any other person or entity acting on your behalf, to work on the date of "occurrence".

25. "Your product":

a. Means:

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a) You;

(b) Others trading under your name; or

(c) A person or organization whose business or assets you have acquired; and

(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

(2) The providing of or failure to provide warnings or instructions.

c. Does not include vending machines or other property rented to or located for the use of others but not sold.

26. "Your work":

a. Means:

(1) Work or operations performed by you or on your behalf; and

(2) Materials, parts or equipment furnished in connection with such work or operations.

b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

(2) The providing of or failure to provide warnings or instructions.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# NUCLEAR ENERGY LIABILITY EXCLUSION
## (Broad Form)

**1.** The insurance does not apply:

   **A.** Under any Liability Coverage, to "bodily injury" or "property damage":

      **(1)** With respect to which an insured under this Coverage Part is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada, or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      **(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the insured is, or had this Coverage Part not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   **B.** Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   **C.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from the "hazardous properties" of "nuclear material", if:

      **(1)** The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an insured, or **(b)** has been discharged or dispersed therefrom;

      **(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an insured; or

      **(3)** The "bodily injury" or "property damage" arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this Exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

**2.** As used in this exclusion:

"Hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material", "special nuclear material" or "by-product material".

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

   **A.** Any "nuclear reactor";

   **B.** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

   **C.** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

GA 101 12 04

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**D.** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

# NOTICE TO POLICYHOLDERS
# ADDITIONAL INSURED ENDORSEMENTS

This is a summary of the major changes found in new editions of additional insured endorsements. NO COVERAGE IS PROVIDED BY THIS SUMMARY. Nor can it be construed to replace any provision of your policy. YOU SHOULD READ YOUR POLICY AND REVIEW YOUR DECLARATIONS PAGE CAREFULLY for complete information on the coverages that you are provided. If there is any conflict, between the policy and this summary, THE PROVISIONS OF THE POLICY SHALL PREVAIL.

The major areas within the endorsements that broaden or reduce coverage, and other changes, are highlighted below. This notice does not reference every editorial change made in the endorsements.

**Clarification of Coverage:**

The following additional insured endorsements are revised to indicate that when these endorsements are attached to a policy, if coverage provided to the additional insured is required by contract or agreement, coverage to the additional insured will be afforded to the extent permitted by law and to the extent the named insured is required by the contract or agreement to provide insurance available under the applicable Limits of Insurance shown in the Declarations, whichever is less:

- CG 20 03 04 13    ADDITIONAL INSURED - CONCESSIONAIRES TRADING UNDER YOUR NAME
- CG 20 05 04 13    ADDITIONAL INSURED - CONTROLLING INTEREST
- CG 20 07 04 13    ADDITIONAL INSURED - ENGINEERS, ARCHITECTS OR SURVEYORS
- CG 20 10 04 13    ADDITIONAL INSURED - OWNERS, LESSEES OR CONTRACTORS - SCHEDULED PERSON OR ORGANIZATION
- CG 20 11 04 13    ADDITIONAL INSURED - MANAGERS OR LESSORS OF PREMISES
- CG 20 12 04 13    ADDITIONAL INSURED - STATE OR GOVERNMENTAL AGENCY OR SUBDIVISION OR POLITICAL SUBDIVISION - PERMITS OR AUTHORIZATIONS
- CG 20 13 04 13    ADDITIONAL INSURED - STATE OR GOVERNMENTAL AGENCY OR SUBDIVISION OR POLITICAL SUBDIVISION - PERMITS OR AUTHORIZATIONS RELATING TO PREMISES
- CG 20 15 04 13    ADDITIONAL INSURED - VENDORS
- CG 20 18 04 13    ADDITIONAL INSURED - MORTGAGEE, ASSIGNEE OR RECEIVER
- CG 20 23 04 13    ADDITIONAL INSURED - EXECUTORS, ADMINISTRATORS, TRUSTEES OR BENEFICIARIES
- CG 20 24 04 13    ADDITIONAL INSURED - OWNERS OR OTHER INTERESTS FROM WHOM LAND HAS BEEN LEASED
- CG 20 26 04 13    ADDITIONAL INSURED - DESIGNATED PERSON OR ORGANIZATION
- CG 20 27 04 13    ADDITIONAL INSURED - CO-OWNER OF INSURED PREMISES
- CG 20 28 04 13    ADDITIONAL INSURED - LESSOR OF LEASED EQUIPMENT
- CG 20 29 04 13    ADDITIONAL INSURED - GRANTOR OF FRANCHISE
- CG 20 30 04 13    OIL OR GAS OPERATIONS - NONOPERATING, WORKING INTERESTS
- CG 20 31 04 13    ADDITIONAL INSURED - ENGINEERS, ARCHITECTS OR SURVEYORS
- CG 20 32 04 13    ADDITIONAL INSURED - ENGINEERS, ARCHITECTS OR SURVEYORS NOT ENGAGED BY THE NAMED INSURED
- CG 20 34 04 13    ADDITIONAL INSURED - LESSOR OF LEASED EQUIPMENT - AUTOMATIC STATUS WHEN REQUIRED IN LEASE AGREEMENT WITH YOU
- CG 20 35 04 13    ADDITIONAL INSURED - GRANTOR OF LICENSES - AUTOMATIC STATUS WHEN REQUIRED BY LICENSOR

GA 4496 09 18

- **CG 20 36 04 13** ADDITIONAL INSURED - GRANTOR OF LICENSES
- **CG 20 37 04 13** ADDITIONAL INSURED - OWNERS, LESSEES OR CONTRACTORS - COMPLETED OPERATIONS
- **CG 29 35 04 13** ADDITIONAL INSURED - STATE OR GOVERNMENTAL AGENCY OR SUBDIVISION OR POLITICAL SUBDIVISION - PERMITS OR AUTHORIZATIONS
- **GA 4248 09 17** ADDITIONAL INSURED - PICK UP OR DELIVERY - SCHEDULED PERSON OR ORGANIZATION
- **GA 4397 09 17** ADDITIONAL INSURED - DESIGNATED PERSON OR ORGANIZATION (VICARIOUS LIABILITY)

**GA 472 09 18 CONTRACTORS ADDITIONAL INSURED - AUTOMATIC STATUS AND AUTOMATIC WAIVER OF SUBROGATION WHEN REQUIRED IN WRITTEN CONTRACT, AGREEMENT, PERMIT OR AUTHORIZATION**

**GA 4255 09 18 CONTRACTORS ADDITIONAL INSURED - AUTOMATIC STATUS AND AUTOMATIC WAIVER OF SUBROGATION WHEN REQUIRED IN WRITTEN CONTRACT OR AGREEMENT**

The above forms have the following changes:

**Broadening of Coverage:**

- Coverage is no longer restricted to entities for whom work is performed by you.

**Reduction of Coverage:**

- Coverage has been removed for oral contracts.

**Clarification of Coverage:**

- Expressly address, in part, claims alleging negligence or other wrongdoing in the hiring, employment, training, supervision or monitoring of others by any insured.
- Expressly states the exclusion applies only in your capacity as an engineer, architect or surveyor and not within construction means, methods, techniques, sequences and procedures employed by you in connection with your operations in your capacity as a construction contractor.

## CG 20 08 04 13 ADDITIONAL INSURED - USERS OF GOLFMOBILES

The above form has the following change:

**Reduction of Coverage:**

- Golfmobile was added as a defined term.

**GA 4496 09 18**

# NOTICE TO POLICYHOLDERS
# COMMERCIAL GENERAL LIABILITY
# BROADENED ENDORSEMENTS

This is a summary of the major changes found in the new editions of the Commercial General Liability Broadened Endorsements. NO COVERAGE IS PROVIDED BY THIS SUMMARY. Nor can it be construed to replace any provision of your policy. YOU SHOULD READ YOUR POLICY AND REVIEW YOUR DECLARATIONS PAGE CAREFULLY for complete information on the coverages that you are provided. If there is any conflict, between the policy and this summary, THE PROVISIONS OF THE POLICY SHALL PREVAIL.

The major areas within the endorsements that broaden or reduce coverage, and other changes, are highlighted below. This notice does not reference every editorial change made in the endorsements.

The following endorsements are similar but are designed for different types of risk:

**GA 210 09 17 Commercial General Liability Broadened Endorsement**

**GA 227 09 17 Commercial General Liability Extended Endorsement**

**GA 233 09 17 Contractors' Commercial General Liability Broadened Endorsement**

All of the above forms have the following changes:

**Broadening of Coverage:**

- The Limit of Insurance for Supplementary Payments bail bonds is increased from $1,000 to $2,500 and loss of earnings is increased from $350 to $500.

- Good Samaritan coverage is added for "employees" or "volunteer workers", other than an employed or volunteer medical doctor, for providing first aid or good samaritan services during work hours.

- Nonowned Aircraft coverage is added provided the pilot in command holds a current certificate, the aircraft is rented with a trained, paid crew and the aircraft does not transport persons or cargo for a charge.

- The definition of "bodily injury" is updated to include disability, humiliation, shock, fright, mental anguish or mental injury.

- The Expected or Intended Injury exclusion is updated to include coverage for property damage resulting from the use of reasonable force to protect persons or property.

- Former Employees as Insureds coverage is added to provide that any of your former "employees", directors, managers, members, partners or."executive officers" are insureds for acts within the scope of their employment by you or for duties related to the conduct of your business.

- Additional Insured coverage is added for Mortgagee, Assignee or Receiver with respect to their liability as mortgagee, assignee or receiver and arising out of the ownership, maintenance or use of the premises by you.

**Clarification of Coverage:**

- Employee Benefit Liability - "First effective date" definition is introduced into the prior acts coverage.

- Under Damage to Premises Rented to You, editorial updates were made to Water Damage Legal coverage to coincide with Water Damage Legal coverage provided in ISO's **CP 10 30 10 12** Causes of Loss - Special Form.

- The additional insured coverage built into the Broadened endorsements is revised to indicate that coverage is provided to the additional insured if required by written contract or written agreement, coverage to the additional insured will be afforded to the extent permissible by law and to the extent the named insured is required by the contract or agreement to provide insurance for the additional insured. Additionally, if coverage provided to the additional insured is required by written contract or written agreement, the limits of insurance of the named insured's policy that are available to an additional insured will be limited to the extent required by the written contract or written agreement or the amount of insurance available under the applicable Limits of Insurance shown in the Declarations, whichever is less.

**Reduction of Coverage:**

**GA 4497 09 18**

- For Automatic Additional Insured coverage, coverage has been removed for oral contracts or agreements.

The following additional changes apply to the **GA 233 09 17** Contractors' Commercial General Liability Broadened Endorsement:

## Voluntary Property Damage and Care, Custody or Control Coverage

### Reduction of Coverage:

- Introduced Voluntary Property Damage Aggregate Limit (equal to 5 times the Occurrence Limit).
- Voluntary Property Damage now explicitly states that we only cover the cost to repair or replace.
- Under Voluntary Property Damage if insured repairs/replaces at our request, the amount we pay will not include any profit or overhead.
- Voluntary Property Damage - Coverage A exclusions apply except those specified. Previously only the Expected or Intended exclusion applied.
- Voluntary Property Damage - Removed loss of use from definition of property damage, and specified property damage does not include disappearance, abstraction or theft.

### Clarification of Coverage:

- Voluntary Property Damage's consent must be written.
- Any payment we make under Voluntary Property Damage is not an admission of liability by the named insured or by us.
- Voluntary Property Damage and Care, Custody, or Control - We have no duty to defend.

## Contractors' Automatic Additional Insured Coverage

Previously this coverage was provided in the **GA 233**. This coverage will now be provided by the automatic attachment of **GA 472 09 18** Contractors Additional Insured - Automatic Status and Automatic Waiver of Subrogation When Required in Written Contract, Agreement, Permit or Authorization when the **GA 233** is purchased:

### Broadening of Coverage:

- Coverage is no longer restricted to entities for whom work is performed by you.

### Reduction of Coverage:

- Coverage has been removed for oral contracts.

### Clarification of Coverage:

- Expressly address, in part, claims alleging negligence or other wrongdoing in the hiring, employment, training, supervision or monitoring of others by any insured.
- Expressly states the exclusion applies only in your capacity as an engineer, architect or surveyor and not within construction means, methods, techniques, sequences and procedures employed by you in connection with your operations in your capacity as a construction contractor.

GA 4497 09 18

Page 2 of 2

POLICY NUMBER: EPP 026 35 19

COMMERCIAL GENERAL LIABILITY
CG 20 26 04 13

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED - DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## SCHEDULE

| Name Of Additional Insured Person(s) Or Organization(s): |
| --- |
| SUAREZ CORPORATION INDUSTRIES<br>7800 WHIPPLE AVE NW<br>CANTON, OH 44767-0001 |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A. Section II - Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

1. In the performance of your ongoing operations; or

2. In connection with your premises owned by or rented to you.

However:

1. The insurance afforded to such additional insured only applies to the extent permitted by law; and

2. If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III - Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

1. Required by the contract or agreement; or

2. Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

CG 20 26 04 13

© Insurance Services Office, Inc. 2012

Page 1 of 1

Case 24-02-00700-DW Document 392-21 Filed 04/24/24 Page 186 of 520

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED - DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## SCHEDULE

| Name Of Additional Insured Person(s) Or Organization(s): |
| --- |
| UNISOURCE CANADA, INC.<br>1 WEST PEARCE STREET, SUITE 600<br>RICHMOND HILL, ON L4B 3K3<br>CANADA |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Section II - Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

1. In the performance of your ongoing operations; or

2. In connection with your premises owned by or rented to you.

However:

1. The insurance afforded to such additional insured only applies to the extent permitted by law; and

2. If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III - Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

1. Required by the contract or agreement; or

2. Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART.**

**SCHEDULE**

**Name of Person or Organization:**

```
UNISOURCE WORLDWIDE INC
6600 GOVERNORS LAKE PKWY
PEACHTREE CORNERS, GA 30071-1114
```

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

The TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US Condition (Section IV -- COMMERCIAL GENERAL LIABILITY CONDITIONS) is amended by the addition of the following:

We waive any right of recovery we may have against the person or organization shown in the Schedule above because of payments we make for injury or damage arising out of your ongoing operations or "your work" done under a contract with that person or organization and included in the "products-completed operations hazard". This waiver applies only to the person or organization shown in the Schedule above.

**CG 24 04 10 93**     Copyright, Insurance Services Office, Inc., 1992

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# COMMERCIAL GENERAL LIABILITY BROADENED ENDORSEMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**A. Endorsement - Table of Contents:**

| Coverage: | Begins on Page: |
|---|---|
| 1. Employee Benefit Liability Coverage | 3 |
| 2. Unintentional Failure To Disclose Hazards | 9 |
| 3. Damage To Premises Rented To You | 9 |
| 4. Supplementary Payments | 10 |
| 5. Medical Payments | 10 |
| 6. 180 Day Coverage For Newly Formed Or Acquired Organizations | 10 |
| 7. Waiver Of Subrogation | 11 |
| 8. Automatic Additional Insured - Specified Relationships: | 11 |
|    • Managers Or Lessors Of Premises; | |
|    • Lessor Of Leased Equipment; | |
|    • Vendors; | |
|    • State Or Governmental Agency Or Subdivision Or Political Subdivision - Permits Or Authorizations Relating To Premises; and | |
|    • Mortgagee, Assignee Or Receiver | |
| 9. Property Damage To Borrowed Equipment | 14 |
| 10. Employees As Insureds - Specified Health Care Services And Good Samaritan Services | 15 |
| 11. Broadened Notice Of Occurrence | 15 |
| 12. Nonowned Aircraft | 15 |
| 13. Bodily Injury Redefined | 15 |
| 14. Expected Or Intended Injury Redefined | 15 |
| 15. Former Employees As Insureds | 15 |

---

**B. Limits Of Insurance:**

The Commercial General Liability Limits of Insurance apply to the insurance provided by this endorsement, except as provided below:

1. **Employee Benefit Liability Coverage**

   Each Employee Limit: $1,000,000
   Aggregate Limit: $3,000,000
   Deductible Amount: $    1,000

3. **Damage To Premises Rented To You**

   The lesser of:

   a. The Each Occurrence Limit shown in the Declarations; or

   b. $500,000 unless otherwise stated $ _____

4. **Supplementary Payments**

   a. Bail Bonds:    $2,500

   b. Loss Of Earnings: $   500

GA 210 09 17

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**5. Medical Payments**

Medical Expense Limit: $ 10,000

**9. Property Damage To Borrowed Equipment**

Each Occurrence Limit: $10,000
Deductible Amount: $ 250

Includes copyrighted material of Insurance
Services Office, Inc., with its permission.

## C. Coverages

### 1. Employee Benefit Liability Coverage

    a. The following is added to **Section I - Coverages:**

    **Employee Benefit Liability Coverage**

    **(1) Insuring Agreement**

        **(a)** We will pay those sums that the insured becomes legally obligated to pay as damages caused by any act, error or omission of the insured, or of any other person for whose acts the insured is legally liable, to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend against any "suit" seeking damages to which this insurance does not apply. We may, at our discretion, investigate any report of an act, error or omission and settle any claim or "suit" that may result. But:

            **1)** The amount we will pay for damages is limited as described in **Section III - Limits Of Insurance**; and

            **2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements.

        No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under **Supplementary Payments**.

        **(b)** This insurance applies to damages only if the act, error or omission, is negligently committed in the "administration" of your "employee benefit program"; and

            **1)** Occurs during the policy period; or

            **2)** Occurred prior to the "first effective date" of this endorsement provided:

              **a)** You did not have knowledge of a claim or "suit" on or before the "first effective date" of this endorsement.

                You will be deemed to have knowledge of a claim or "suit" when any "authorized representative";

                **i)** Reports all, or any part, of the act, error or omission to us or any other insurer;

                **ii)** Receives a written or verbal demand or claim for damages because of the act, error or omission; and

              **b)** There is no other applicable insurance.

    **(2) Exclusions**

    This insurance does not apply to:

        **(a) Bodily Injury, Property Damage Or Personal And Advertising Injury**

        "Bodily injury", "property damage" or "personal and advertising injury".

        **(b) Dishonest, Fraudulent, Criminal Or Malicious Act**

        Damages arising out of any intentional, dishonest, fraudulent, criminal or malicious act, error or omission, committed by any insured, including the willful or reckless violation of any statute.

---

GA 210 09 17

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**(c) Failure To Perform A Contract**

Damages arising out of failure of performance of contract by any insurer.

**(d) Insufficiency Of Funds**

Damages arising out of an insufficiency of funds to meet any obligations under any plan included in the "employee benefit program".

**(e) Inadequacy Of Performance Of Investment/Advice Given With Respect To Participation**

Any claim based upon:

1) Failure of any investment to perform;

2) Errors in providing information on past performance of investment vehicles; or

3) Advice given to any person with respect to that person's decision to participate or not to participate in any plan included in the "employee benefit program".

**(f) Workers' Compensation And Similar Laws**

Any claim arising out of your failure to comply with the mandatory provisions of any workers' compensation, unemployment compensation insurance, social security or disability benefits law or any similar law.

**(g) ERISA**

Damages for which any insured is liable because of liability imposed on a fiduciary by the Employee Retirement Income Security Act of 1974, as now or hereafter amended, or by any similar federal, state or local laws.

**(h) Available Benefits**

Any claim for benefits to the extent that such benefits are available, with reasonable effort and cooperation of the insured, from the applicable funds accrued or other collectible insurance.

**(i) Taxes, Fines Or Penalties**

Taxes, fines or penalties, including those imposed under the Internal Revenue Code or any similar state or local law.

**(j) Employment-Related Practices**

Any liability arising out of any:

(1) Refusal to employ;

(2) Termination of employment;

(3) Coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or other employment - related practices, acts or omissions; or

(4) Consequential liability as a result of **(1)**, **(2)** or **(3)** above.

This exclusion applies whether the insured may be held liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

**(3) Supplementary Payments**

Section I - Coverages, Supplementary Payments - Coverages A And B also apply to this Coverage.

**b. Who Is An Insured**

As respects **Employee Benefit Liability Coverage, Section II - Who Is An Insured** is replaced by the following:

(1) If you are designated in the Declarations as:

(a) An individual, you and your spouse are insureds, but only with respect to the con-

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

duct of a business of which you are the sole owner.

**(b)** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds but only with respect to the conduct of your business.

**(c)** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**(d)** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**(e)** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

**(2)** Each of the following is also an insured:

**(a)** Each of your "employees" who is or was authorized to administer your "employee benefit program";

**(b)** Any persons, organizations or "employees" having proper temporary authorization to administer your "employee benefit program" if you die, but only until your legal representative is appointed; or

**(c)** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**(3)** Any organization you newly acquire or form, other than a partnership, joint venture or limited

liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if no other similar insurance applies to that organization. However, coverage under this provision:

**(a)** Is afforded only until the 180th day after you acquire or form the organization or the end of the policy period, whichever is earlier; and

**(b)** Does not apply to any act, error or omission that was committed before you acquired or formed the organization.

**c.** **Limits Of Insurance**

As respects **Employee Benefit Liability Coverage, Section III - Limits Of Insurance** is replaced by the following:

**(1)** The Limits of Insurance shown in Section **B. Limits Of Insurance, 1. Employee Benefit Liability Coverage** and the rules below fix the most we will pay regardless of the number of:

**(a)** Insureds;

**(b)** Claims made or "suits" brought;

**(c)** Persons or organizations making claims or bringing "suits";

**(d)** Acts, errors or omissions; or

**(e)** Benefits included in your "employee benefit program".

**(2)** The Aggregate Limit shown in Section **B. Limits Of Insurance, 1. Employee Benefit Liability Coverage** of this endorsement is the most we will pay for all damages because of acts, errors or omissions negligently committed in the "administration" of your "employee benefit program".

**(3)** Subject to the limit described in **(2)** above, the Each Employee Limit shown in Section **B. Limits Of Insurance, 1. Employee Benefit Liability Coverage** of this endorsement is the most we will pay for all damages sustained by any one "employee", including damages sustained by

**GA 210 09 17**

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

such "employee's" dependents and beneficiaries, as a result of:

(a) An act, error or omission; or

(b) A series of related acts, errors or omissions, regardless of the amount of time that lapses between such acts, errors or omissions;

negligently committed in the "administration" of your "employee benefit program".

However, the amount paid under this endorsement shall not exceed, and will be subject to the limits and restrictions that apply to the payment of benefits in any plan included in the "employee benefit program."

**(4) Deductible Amount**

(a) Our obligation to pay damages on behalf of the insured applies only to the amount of damages in excess of the Deductible Amount stated in the Declarations as applicable to Each Employee. The limits of insurance shall not be reduced by the amount of this deductible.

(b) The Deductible Amount stated in the Declarations applies to all damages sustained by any one "employee", including such "employee's" dependents and beneficiaries, because of all acts, errors or omissions to which this insurance applies.

(c) The terms of this insurance, including those with respect to:

1) Our right and duty to defend the insured against any "suits" seeking those damages; and

2) Your duties, and the duties of any other involved insured, in the event of an act, error or omission, or claim;

apply irrespective of the application of the Deductible Amount.

(d) We may pay any part or all of the Deductible Amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the Deductible Amount as we have paid.

**d. Additional Conditions**

As respects **Employee Benefit Liability Coverage, Section IV - Commercial General Liability Conditions** is amended as follows:

(1) Item **2. Duties In The Event Of Occurrence, Offense, Claim Or Suit** is replaced by the following:

2. **Duties In The Event Of An Act, Error Or Omission, Or Claim Or Suit**

a. You must see to it that we are notified as soon as practicable of an act, error or omission which may result in a claim. To the extent possible, notice should include:

(1) What the act, error or omission was and when it occurred; and

(2) The names and addresses of anyone who may suffer damages as a result of the act, error or omission.

b. If a claim is made or "suit" is brought against any insured, you must:

(1) Immediately record the specifics of the claim or "suit" and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c. You and any other involved insured must:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of an act, error or omission to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense without our consent.

**(2)** Item **5. Other Insurance** is replaced by the following:

**5. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when **c.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **b.** below.

**b. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**c. No Coverage**

This insurance shall not cover any loss for which the insured is entitled to recovery under any other insurance in force previous to the effective date of this Coverage Part.

**e. Additional Definitions**

As respects **Employee Benefit Liability Coverage, Section V - Definitions** is amended as follows:

**(1)** The following definitions are added:

**1.** "Administration" means:

**a.** Providing information to "employees", including their dependents and beneficiaries, with respect to eligibility for or scope of "employee benefit programs";

**b.** Interpreting the "employee benefit programs";

**c.** Handling records in connection with the "employee benefit programs"; or

**d.** Effecting, continuing or terminating any "employee's" participation in any benefit included in the "employee benefit program".

However, "administration" does not include:

**a.** Handling payroll deductions; or

**b.** The failure to effect or maintain any insurance or adequate limits of coverage of insurance, including but not limited to unemployment insurance, social security benefits, workers' compensation and disability benefits.

**2.** "Cafeteria plans" means plans authorized by applicable law to allow "employees" to elect to pay for certain benefits with pre-tax dollars.

**3.** "Employee benefit programs" means a program providing some of all of the following benefits to "employees", whether provided through a "cafeteria plan" or otherwise:

**a.** Group life insurance; group accident or health insurance; dental, vision and hearing plans; and flexible spending accounts; provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to those "employees" who satisfy the plan's eligibility requirements;

**b.** Profit sharing plans, employee savings plans, employee stock ownership plans, pension plans and stock subscription plans, provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to all "employ-

ees" who are eligible under the plan for such benefits;

**c.** Unemployment insurance, social security benefits, workers' compensation and disability benefits; and

**d.** Vacation plans, including buy and sell programs; leave of absence programs, including military, maternity, family, and civil leave; tuition assistance plans; transportation and health club subsidies.

**4.** "First effective date" means the date upon which coverage was first effected in a series of uninterrupted renewals of insurance coverage.

**(2)** The following definitions are deleted in their entirety and replaced by the following:

**8.** "Employee" means a person actively employed, formerly employed, on leave of absence or disabled, or retired. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**21.** "Suit" means a civil proceeding in which money damages because of an act, error or omission to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent;

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent; or

**c.** An appeal of a civil proceeding.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

GA 210 09 17

**2. Unintentional Failure To Disclose Hazards**

**Section IV - Commercial General Liability Conditions, 7. Representations** is amended by the addition of the following:

Based on our dependence upon your representations as to existing hazards, if unintentionally you should fail to disclose all such hazards at the inception date of your policy, we will not reject coverage under this Coverage Part based solely on such failure.

**3. Damage To Premises Rented To You**

    **a.** The last Paragraph of **2. Exclusions** under **Section I - Coverage A - Bodily Injury And Property Damage Liability** is replaced by the following:

        Exclusions **c.** through **q.** do not apply to "property damage" by fire, explosion, lightning, smoke or soot to premises while rented to you or temporarily occupied by you with permission of the owner, for which the amount we will pay is limited to the **Damage To Premises Rented To You** Limit as described in **Section III - Limits Of Insurance.**

    **b.** The insurance provided under **Section I - Coverage A - Bodily Injury And Property Damage Liability** applies to "property damage" arising out of water damage to premises that are both rented to and occupied by you.

        **(1)** As respects Water Damage Legal Liability, as provided in Paragraph **3.b.** above:

            The exclusions under **Section I - Coverage A - Bodily Injury And Property Damage Liability, 2. Exclusions**, other than **i. War** and the **Nuclear Energy Liability Exclusion (Broad Form)**, are deleted and the following are added:

            This insurance does not apply to:

            **(a)** "Property damage":

                **(i)** Assumed in any contract or agreement; or

                **(ii)** Caused by or resulting from any of the following:

                    **1)** Wear and tear;

                    **2)** Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

                    **3)** Smog;

                    **4)** Mechanical breakdown, including rupture or bursting caused by centrifugal force;

                    **5)** Settling, cracking, shrinking or expansion;

                    **6)** Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents or other animals; or

                    **7)** Presence, growth, proliferation, spread or any activity of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

            **(b)** "Property damage" caused directly or indirectly by any of the following:

                **(i)** Earthquake, volcanic eruption, landslide or any other earth movement;

                **(ii)** Water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment;

                **(iii)** Water under the ground surface pressing on, or flowing or seeping through:

                    **1)** Foundations, walls, floors or paved surfaces;

---

**GA 210 09 17**

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

2) Basements, whether paved or not; or

3) Doors, windows or other openings.

(c) "Property damage" caused by or resulting from water that leaks or flows from plumbing, heating, air conditioning, fire protection systems, or other equipment, caused by or resulting from freezing, unless:

(i) You did your best to maintain heat in the building or structure; or

(ii) You drained the equipment and shut off the water supply if the heat was not maintained.

(d) "Property damage" to:

(i) Plumbing, heating, air conditioning, fire protection systems, or other equipment or appliances; or

(ii) The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet or ice, whether driven by wind or not.

c. **Limit Of Insurance**

With respect to the insurance afforded in Paragraphs **3.a.** and **3.b.** above, the **Damage To Premises Rented To You** Limit as shown in the Declarations is amended as follows:

(1) Paragraph **6.** of **Section III - Limits Of Insurance** is replaced by the following:

6. Subject to Paragraph **5.** above, the **Damage To Premises Rented To You** Limit is the most we will pay under **Coverage A - Bodily Injury And Property Damage Liability** for damages because of "property damage" to any one premises:

a. While rented to you, or temporarily occupied by

you with permission of the owner;

b. In the case of damage by fire, explosion, lightning, smoke or soot, while rented to you; or

c. In the case of damage by water, while rented to and occupied by you.

(2) The most we will pay is limited as described in Section **B. Limits Of Insurance, 3. Damage To Premises Rented To You** of this endorsement.

4. **Supplementary Payments**

Under **Section I - Supplementary Payments - Coverages A And B:**

a. Paragraph **2.** is replaced by the following:

Up to the limit shown in Section **B. Limits Of Insurance, 4.a.** Bail Bonds of this endorsement for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

b. Paragraph **4.** is replaced by the following:

All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to the limit shown in Section **B. Limits Of Insurance, 4.b.** Loss Of Earnings of this endorsement per day because of time off from work.

5. **Medical Payments**

The Medical Expense Limit of Any One Person as stated in the Declarations is amended to the limit shown in Section **B. Limits Of Insurance, 5. Medical Payments** of this endorsement.

6. **180 Day Coverage For Newly Formed Or Acquired Organizations**

**Section II - Who Is An Insured** is amended as follows:

Subparagraph **a.** of Paragraph **3.** is replaced by the following:

a. Insurance under this provision is afforded only until the 180th day after

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

you acquire or form the organization or the end of the policy period, whichever is earlier;

### 7. Waiver Of Subrogation

**Section IV - Commercial General Liability Conditions, 9. Transfer Of Rights Of Recovery Against Others To Us** is amended by the addition of the following:

We waive any right of recovery we may have against any person or organization against whom you have agreed to waive such right of recovery in a written contract or agreement because of payments we make for injury or damage arising out of your ongoing operations or "your work" done under a written contract or agreement with that person or organization and included in the "products-completed operations hazard". However, our rights may only be waived prior to the "occurrence" giving rise to the injury or damage for which we make payment under this Coverage Part. The insured must do nothing after a loss to impair our rights. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce those rights.

### 8. Automatic Additional Insured - Specified Relationships

a. The following is added to **Section II - Who Is An Insured:**

(1) Any person(s) or organization(s) described in Paragraph **8.a.(2)** of this endorsement (hereinafter referred to as additional insured) whom you are required to add as an additional insured under this Coverage Part by reason of a written contract, written agreement, written permit or written authorization.

(2) Only the following persons or organizations are additional insureds under this endorsement, and insurance coverage provided to such additional insureds is limited as provided herein:

(a) **Managers Or Lessors Of Premises**

The manager or lessor of a premises leased to you with whom you have agreed per Paragraph **8.a.(1)** of this endorsement to provide insurance, but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you, subject to the following additional exclusions:

This insurance does not apply to:

(i) Any "occurrence" which takes place after you cease to be a tenant in that premises;

(ii) Structural alterations, new construction or demolition operations performed by or on behalf of such additional insured.

(b) **Lessor Of Leased Equipment**

Any person or organization from whom you lease equipment when you and such person(s) or organization(s) have agreed per Paragraph **8.a.(1)** of this endorsement to provide insurance. Such person(s) or organization(s) are insureds only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your maintenance, operation or use of equipment leased to you by such person(s) or organization(s). A person's or organization's status as an additional insured under this endorsement ends when their contract or agreement with you for such leased equipment ends. However, this insurance does not apply to any "occurrence" which takes place after the equipment lease expires.

(c) **Vendors**

Any person or organization (referred to below as vendor) with whom you have agreed per Paragraph **8.a.(1)** of this endorsement to provide insurance, but only with respect to "bodily injury" or "property damage" arising out of "your products" which are distributed or sold in the regular course of the

vendor's business, subject to the following additional exclusions:

(i) The insurance afforded the vendor does not apply to:

1) "Bodily injury" or "property damage" for which the vendor is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages that the vendor would have in the absence of the contract or agreement;

2) Any express warranty unauthorized by you;

3) Any physical or chemical change in the product made intentionally by the vendor;

4) Repackaging, except when unpacked solely for the purpose of inspection, demonstration, testing, or the substitution of parts under instructions from the manufacturer, and then repackaged in the original container;

5) Any failure to make such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products;

6) Demonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of the product;

7) Products which after distribution or sale by you, have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor; or

8) "Bodily injury" or "property damage" arising out of the sole negligence of the vendor for its own acts or omissions or those of its employees or anyone else acting on its behalf. However, this exclusion does not apply to:

a) The exceptions contained in Paragraphs (c) (i) 4) or 6) of this endorsement; or

b) Such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products.

(ii) This insurance does not apply to any insured person or organization:

1) From whom you have acquired such products, or any ingredient, part

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

or container, entering into, accompanying or containing such products; or

2) When liability included within the "products-completed operations hazard" has been excluded under this Coverage Part with respect to such products.

**(d) State Or Governmental Agency Or Subdivision Or Political Subdivision - Permits Or Authorizations Relating To Premises**

Any state or governmental agency or subdivision or political subdivision with which you have agreed per Paragraph **8.a.(1)** of this endorsement to provide insurance, subject to the following additional provision:

This insurance applies only with respect to the following hazards for which the state or governmental agency or subdivision or political subdivision has issued a permit or authorization in connection with premises you own, rent or control and to which this insurance applies:

**(i)** The existence, maintenance, repair, construction, erection or removal of advertising signs, awnings, canopies, cellar entrances, coal holes, driveways, manholes, marquees, hoist away openings, sidewalk vaults, street banners or decorations and similar exposures; or

**(ii)** The construction, erection or removal of elevators; or

**(iii)** The ownership, maintenance or use of any elevators covered by this insurance.

**(e) Mortgagee, Assignee Or Receiver**

Any person or organization with whom you have agreed per Paragraph **8.a.(1)** of this endorsement to provide insurance, but only with respect to their liability as mortgagee, assignee, or receiver and arising out of the ownership, maintenance, or use of the premises by you. However, this insurance does not apply to structural alterations, new construction and demolition operations performed by or for that person or organization.

**(3)** The insurance afforded to additional insureds described in Paragraph **8.a.(1)** of this endorsement:

**(a)** Only applies to the extent permitted by law; and

**(b)** Will not be broader than that which you are required by the written contract, written agreement, written permit or written authorization to provide for such additional insured; and

**(c)** Does not apply to any person, organization, vendor, state, governmental agency or subdivision or political subdivision, specifically named as an additional insured under any other provision of, or endorsement added to, this Coverage Part, provided such other provision or endorsement covers the injury or damage for which this insurance applies.

**b.** With respect to the insurance afforded to the additional insureds described in Paragraph '8.a.(1) of this endorsement, the following is added to **Section III - Limits Of Insurance:**

The most we will pay on behalf of the additional insured is the amount of insurance:

**(1)** Required by the written contract, written agreement, written permit or written authorization described

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

in Paragraph **8.a.(1)** of this endorsement; or

(2) Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

c. **Section IV - Commercial General Liability Conditions** is amended to include the following:

**Automatic Additional Insured Provision**

This insurance applies only if the "bodily injury" or "property damage" occurs, or the "personal and advertising injury" offense is committed:

(1) During the policy period; and

(2) Subsequent to your execution of the written contract or written agreement, or the issuance of a written permit or written authorization, described in Paragraph **8.a.(1)**.

d. **Section IV - Commercial General Liability Conditions** is amended as follows:

Condition **5. Other Insurance** is amended to include:

**Primary And Noncontributory Insurance**

This insurance is primary to and will not seek contribution from any other insurance available to an additional insured per Paragraph **8.a.(1)** of this endorsement provided that:

(1) The additional insured is a Named Insured under such other insurance; and

(2) You have agreed in writing in a contract, agreement, permit or authorization described in **8.a.(2)** of this endorsement that this insurance would be primary and would not seek contribution from any other insurance available to the additional insured.

9. **Property Damage To Borrowed Equipment**

a. The following is added to **Exclusion 2.j. Damage To Property** under Sec-

tion **I - Coverage A - Bodily Injury And Property Damage Liability:**

Paragraphs **(3)** and **(4)** of this exclusion do not apply to tools or equipment loaned to you, provided they are not being used to perform operations at the time of loss.

b. With respect to the insurance provided by this section of the endorsement, the following additional provisions apply:

(1) The Limits of Insurance shown in the Declarations are replaced by the limits designated in Section **B. Limits Of Insurance, 9. Property Damage To Borrowed Equipment** of this endorsement with respect to coverage provided by this endorsement. These limits are inclusive of and not in addition to the limits being replaced. The Limits of Insurance shown in Section **B. Limits Of Insurance, 9. Property Damage To Borrowed Equipment** of this endorsement fix the most we will pay in any one "occurrence" regardless of the number of:

(a) Insureds;

(b) Claims made or "suits" brought; or

(c) Persons or organizations making claims or bringing "suits".

(2) **Deductible Clause**

(a) Our obligation to pay damages on your behalf applies only to the amount of damages for each "occurrence" which are in excess of the Deductible Amount stated in Section **B. Limits Of Insurance, 9. Property Damage To Borrowed Equipment** of this endorsement. The limits of insurance will not be reduced by the application of such Deductible Amount.

(b) Section **IV - Commercial General Liability Conditions, 2. Duties In The Event Of Occurrence, Offense, Claim Or Suit,** applies to each claim or "suit" irrespective of the amount.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

(c) We may pay any part or all of the deductible amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

**10. Employees As Insureds - Specified Health Care Services And Good Samaritan Services**

Paragraph **2.a.(1)(d)** under **Section II - Who Is An Insured** does not apply to:

a. Your "employees" who provide professional health care services on your behalf as a duly licensed nurse, emergency medical technician or paramedic in the jurisdiction where an "occurrence" or offense to which this insurance applies takes place; or

b. Your "employees" or "volunteer workers", other than an employed or volunteer doctor, providing first aid or good samaritan services during their work hours for you will be deemed to be acting within the scope of their employment by you or performing duties related to the conduct of your business.

**11. Broadened Notice Of Occurrence**

Paragraph **a.** of Condition **2. Duties In The Event Of Occurrence, Offense, Claim Or Suit** under **Section IV - Commercial General Liability Conditions** is replaced by the following:

a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

(1) How, when and where the "occurrence" or offense took place;

(2) The names and addresses of any injured persons and witnesses; and

(3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

This requirement applies only when the "occurrence" or offense is known to an "authorized representative".

**12. Nonowned Aircraft**

The following is added to **Exclusion 2.g. Aircraft, Auto Or Watercraft** under **Section I - Coverage A - Bodily Injury And Property Damage Liability:**

This exclusion does not apply to an aircraft you do not own, provided that:

a. The pilot in command holds a current effective certificate, issued by a duly constituted authority of the United States of America or Canada, designating that person as a commercial or airline transport pilot;

b. The aircraft is rented with a trained, paid crew; and

c. The aircraft does not transport persons or cargo for a charge.

**13. Bodily Injury Redefined**

**Section V - Definitions, 4.** "Bodily injury" is replaced by the following:

4. "Bodily injury" means bodily harm or injury, sickness, disease, disability, humiliation, shock, fright, mental anguish or mental injury, including care, loss of services or death resulting from any of these at any time.

**14. Expected Or Intended Injury Redefined**

The last sentence of **Exclusion 2.a. Expected Or Intended Injury** under **Section I - Coverage A - Bodily Injury And Property Damage Liability** is replaced by the following:

This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.

**15. Former Employees As Insureds**

The following is added to Paragraph **2.** under **Section II - Who Is An Insured:**

2. Each of the following is also an insured:

Any of your former "employees", directors, managers, members, partners or "executive officers", including but not limited to retired, disabled or those on leave of absence, but only for acts within the scope of their employment by you or for duties related to the conduct of your business.

GA 210 09 17

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY - WITH LIMITED BODILY INJURY EXCEPTION

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

A. Exclusion **2.s.** of **Section I - Coverage A - Bodily Injury and Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**s. Access or Disclosure of Confidential or Personal Information and Data-Related Liability**

Damages arising out of:

**(1)** Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

**(2)** The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others aris-

ing out of that which is described in Paragraph **(1)** or **(2)** above.

However, unless Paragraph **(1)** above applies, this exclusion does not apply to damages because of "bodily injury".

B. The following is added to Paragraph **2. Exclusions** of **Section I - Coverage B - Personal and Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Access or Disclosure of Confidential or Personal Information**

"Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

GA 3024 05 14

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PENNSYLVANIA AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE FORM
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE FORMS
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM
LIQUOR LIABILITY COVERAGE FORM**

**COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**Exclusions**

**2.a.** is deleted and replaced by the following:

**2.   Exclusions**

This insurance does not apply to:

**a.   Expected or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured.  This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

Contains copyrighted material of Insurance
Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1992

**GA 325 PA 10 95**

# THE CINCINNATI INSURANCE COMPANY

A Stock Insurance Company

# CinciPlus®

# CRIME XC+® (EXPANDED COVERAGE PLUS)
# COVERAGE PART DECLARATIONS

Attached to and forming part of POLICY NUMBER:   EPP 026 35 19

Named Insured is the same as it appears in the Common Policy Declarations

| Insuring Agreements Forming Part of This Coverage Part | Limit of Insurance | Deductible Amount |
|---|---|---|
| | Per Occurrence/ Coverage Term | Per Occurrence |
| 1.   Employee Theft | $25,000 | $500 |
| 2.   Forgery or Alteration | $25,000 | $500 |
| 3.   Inside the Premises - Theft of Money and Securities | $25,000 | $500 |
| 4.   Outside the Premises - Theft of Money and Securities | $5,000 | $500 |
| 5.   Money Orders And Counterfeit Money | $25,000 | $500 |

Forms and endorsements applicable to this Coverage Part at policy inception:
CA102      08/07    CRIME EXPANDED COVERAGE (XC®) COVERAGE FORM (DISCOVERY FORM)

The Crime XC+® (Expanded Coverage Plus) Coverage Part consists of this Declaration form and the Crime Coverage Expanded Coverage (XC®) Coverage Form.

CA 519 XCP 03 09                    EPP 026 35 19                    Page 1 of 1

# CRIME EXPANDED COVERAGE (XC®) COVERAGE FORM
# (DISCOVERY FORM)

Various provisions in this Coverage Part restrict coverage. Read the entire Coverage Part carefully to determine rights, duties and what is or is not covered.

Throughout this Coverage Part the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **F.** Definitions.

## A. Insuring Agreements

Coverage is provided under the following Insuring Agreements for which a Limit of Insurance is shown in the Declarations and applies to loss that you sustain resulting directly from an "occurrence" taking place at any time which is "discovered" by you during the Policy Period shown in the Declarations or during the period of time provided in the Extended Period to Discover Loss Condition **E.1.g.:**

### 1. Employee Theft

We will pay for loss of or damage to "money", "securities" and "other property" resulting directly from "theft" committed by an "employee", whether identified or not, acting alone or in collusion with other persons.

For the purposes of this Insuring Agreement, "theft" shall also include forgery.

### 2. Forgery or Alteration

a. We will pay for loss resulting directly from "forgery" or alteration of checks, drafts, promissory notes, or similar written promises, orders or directions to pay a sum certain in "money" that are:

(1) Made or drawn by or drawn upon you; or

(2) Made or drawn by one acting as your agent;

or that are purported to have been so made or drawn.

For the purposes of this Insuring Agreement, a substitute check as defined in the Check Clearing for the 21st Century Act shall be treated the same as the original it replaced.

b. If you are sued for refusing to pay any instrument covered in Paragraph **2.a.**, on the basis that it has been forged or altered, and you have our written consent to defend against the suit, we will pay for any reasonable legal expenses that you incur and pay in that defense. The amount that we will pay is in addition to the Limit of Insurance applicable to this Insuring Agreement.

### 3. Inside The Premises - Theft of Money and Securities

a. We will pay for loss of "money" and "securities" inside the "premises" or "banking premises":

(1) Resulting directly from "theft" committed by a person present inside such "premises" or "banking premises"; or

(2) Resulting directly from disappearance or destruction.

b. We will pay for loss from damage to the "premises" or its exterior resulting directly from an actual or attempted "theft" of "money" and "securities", if you are the owner of the "premises" or are liable for damage to it.

c. We will pay for loss of or damage to a locked safe, vault, cash register, cash box or cash drawer located inside the "premises" resulting directly from an actual or attempted "theft" of or unlawful entry into those containers.

### 4. Outside the Premises - Theft of Money and Securities

We will pay for loss of "money" and "securities" outside the "premises" in the care and custody of a "messenger" or an armored motor vehicle company resulting directly from "theft", disappearance or destruction.

### 5. Money Orders and Counterfeit Money

We will pay for loss resulting directly from your having accepted in good faith, in exchange for merchandise, "money" or services:

Includes copyrighted material of ISO Properties, Inc., with their permission

**a.** Money orders issued by any post office, express company or bank that are not paid upon presentation; or

**b.** "Counterfeit money" that is acquired during the regular course of business.

## B. Limit of Insurance

**1.** The most we will pay for all loss resulting directly from an "occurrence" is the applicable Limit of Insurance shown in the Declarations.

**2.** If any loss is covered under more than one Insuring Agreement or Coverage, the most we will pay for such loss shall not exceed the largest Limit of Insurance available under any one of those Insuring Agreements or Coverages.

**3.** The Limits of Insurance stated in the Declarations are the most we will pay for all loss under any one Insuring Agreement or Coverage in any one "coverage term", regardless of the number of "occurrences".

The Limits of Insurance of this Coverage Part apply separately to each "coverage term".

## C. Deductible

**1.** We will not pay for loss resulting directly from an "occurrence" unless the amount of loss exceeds the Deductible Amount shown in the Declarations. We will then pay the amount of loss in excess of the Deductible Amount, up to the Limit of Insurance.

**2.** In the event this insurance applies on an excess basis per Paragraph **(2)(c)** in Condition **E.1.k. Other Insurance**, then only the single highest deductible will apply to the loss.

## D. Exclusions

**1.** This insurance does not cover:

**a. Acts Committed by You, Your Partners or Your Members**

Loss resulting from "theft" or any other dishonest act committed by:

**(1)** You; or

**(2)** Any of your partners or "members";

whether acting alone or in collusion with other persons.

**b. Acts of Employees Learned of by You Prior to the Policy Period**

Loss caused by an "employee" if the "employee" had also committed "theft" or any other dishonest act prior to the effective date of this insurance and you or any of your partners, "members", "managers", officers, directors or trustees, not in collusion with the "employee", learned of that "theft" or dishonest act prior to the Policy Period shown in the Declarations.

**c. Acts of Employees, Managers, Directors, Trustees or Representatives**

Loss resulting from "theft" or any other dishonest act committed by any of your "employees", "managers", directors, trustees or authorized representatives:

**(1)** Whether acting alone or in collusion with other persons; or

**(2)** While performing services for you or otherwise;

except when covered under Insuring Agreement **A.1.**

**d. Confidential Information**

Loss resulting from:

**(1)** The unauthorized disclosure of your confidential information including, but not limited to, patents, trade secrets, processing methods or customer lists; or

**(2)** The unauthorized use or disclosure of confidential information of another person or entity which is held by you including, but not limited to, financial information, personal information, credit card information or similar non-public information.

**e. Governmental Action**

Loss resulting from seizure or destruction of property by order of governmental authority.

**f. Indirect Loss**

Loss that is an indirect result of an "occurrence" covered by this insurance including, but not limited to, loss resulting from:

**(1)** Your inability to realize income that you would have realized had there been no loss of or

Includes copyrighted material of ISO Properties, Inc., with their permission

damage to "money", "securities" or "other property".

**(2)** Payment of damages of any type for which you are legally liable. But, we will pay compensatory damages arising directly from a loss covered under this insurance.

**(3)** Payment of costs, fees or other expenses you incur in establishing either the existence or the amount of loss under this insurance.

**g. Legal Fees, Costs and Expenses**

Fees, costs and expenses incurred by you which are related to any legal action, except when covered under Insuring Agreement **A.2.**

**h. Nuclear Hazard**

Loss or damage resulting from nuclear reaction or radiation or radioactive contamination, however caused.

**i. Pollutants**

Loss or damage caused by or resulting from pollutants. Pollutants mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, petroleum and petroleum by-products, and waste. Waste includes materials to be recycled, reconditioned or reclaimed. Pollutants include but are not limited to substances which are generally recognized in industry or government to be harmful or toxic to persons, property, or the environment regardless of whether injury or damage is caused directly or indirectly by the "pollutants" and whether:

**(1)** You are regularly or otherwise engaged in activities which taint or degrade the environment; or

**(2)** You use, generate or produce the pollutant.

**j. War and Military Action**

Loss or damage resulting from:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or

other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**2.** Insuring Agreement **A.1.** does not cover:

**a. Inventory Shortages**

Loss, or that part of any loss, the proof of which as to its existence or amount is dependent upon:

**(1)** An inventory computation; or

**(2)** A profit and loss computation.

However, where you establish wholly apart from such computations that you have sustained a loss, then you may offer your inventory records and actual physical count of inventory in support of the amount of loss claimed.

**b. Trading**

Loss resulting from trading, whether in your name or in a genuine or fictitious account.

**c. Warehouse Receipts**

Loss resulting from the fraudulent or dishonest signing, issuing, cancelling or failing to cancel, a warehouse receipt or any papers connected with it.

**3.** Insuring Agreements **A.3.** and **A.4.** do not cover:

**a. Accounting or Arithmetical Errors or Omissions**

Loss resulting from accounting or arithmetical errors or omissions.

**b. Exchanges or Purchases**

Loss resulting from the giving or surrendering of property in any exchange or purchase.

**c. Fire**

Loss or damage resulting from fire, however caused, except:

**(1)** Loss of or damage to "money" and "securities"; and

**(2)** Loss from damage to a safe or vault.

CA 102 08 07

Includes copyrighted material of ISO Properties, Inc., with their permission

**d. Money operated Devices**

Loss of property contained in any money operated device unless the amount of "money" deposited in it is recorded by a continuous recording instrument in the device.

**e. Motor Vehicles or Equipment and Accessories**

Loss of or damage to motor vehicles, trailers or semi-trailers or equipment and accessories attached to them.

**f. Transfer or Surrender of Property**

(1) Loss of or damage to property after it has been transferred or surrendered to a person or place outside the "premises" or "banking premises":

(a) On the basis of unauthorized instructions;

(b) As a result of a threat to do bodily harm to any person;

(c) As a result of a threat to do damage to any property;

(d) As a result of a threat to introduce a denial of service attack into your computer system;

(e) As a result of a threat to introduce a virus or other malicious instruction into your computer system which is designed to damage, destroy or corrupt data or computer programs stored within your computer system;

(f) As a result of a threat to contaminate, pollute or render substandard your products or goods; or

(g) As a result of a threat to disseminate, divulge or utilize:

(i) Your confidential information; or

(ii) Weaknesses in the source code within your computer system.

(2) But, this Exclusion does not apply under Insuring Agreement **A.5.** to loss of "money", "securities" or "other property" while outside the "premises" in the

care and custody of a "messenger" if you:

(a) Had no knowledge of any threat at the time the conveyance began; or

(b) Had knowledge of a threat at the time the conveyance began, but the loss was not related to the threat.

**g. Vandalism**

Loss from damage to the "premises" or its exterior, or to any safe, vault, cash register, cash box, cash drawer or "other property" by vandalism or malicious mischief.

**h. Voluntary Parting of Title to or Possession of Property**

Loss resulting from your, or anyone acting on your express or implied authority, being induced by any dishonest act to voluntarily part with title to or possession of any property.

**E. Conditions**

The following Conditions apply in addition to the Common Policy Conditions:

1. **Conditions Applicable to all Insuring Agreements**

**a. Additional Premises or Employees**

If, while this insurance is in force, you establish any additional "premises" or hire additional "employees", other than through consolidation or merger with, or purchase or acquisition of assets or liabilities of, another entity, such "premises" and "employees" shall automatically be covered under this insurance. Notice to us of an increase in the number of "premises" or "employees" need not be given and no additional premium need be paid for the remainder of the Policy Period shown in the Declarations.

**b. Concealment, Misrepresentation or Fraud**

This insurance is void in any case of fraud by you as it relates to this insurance at any time. It is also void if you or any other Insured, at any time, intentionally conceal or misrepresent a material fact concerning:

(1) This insurance;

(2) The property covered under this insurance;

Includes copyrighted material of ISO Properties, Inc., with their permission

**(3)** Your interest in the property covered under this insurance; or

**(4)** A claim under this insurance.

**c. Consolidation - Merger or Acquisition**

If you consolidate or merge with, or purchase or acquire the assets or liabilities of, another entity:

**(1)** You must give us written notice as soon as possible and obtain our written consent to extend the coverage provided by this insurance to such consolidated or merged entity or such purchased or acquired assets or liabilities. We may condition our consent by requiring payment of an additional premium; but

**(2)** For the first 90 days after the effective date of such consolidation, merger or purchase or acquisition of assets or liabilities, the coverage provided by this insurance shall apply to such consolidated or merged entity or such purchased or acquired assets or liabilities, provided that all "occurrences" causing or contributing to a loss involving such consolidation, merger or purchase or acquisition of assets or liabilities, must take place after the effective date of such consolidation, merger or purchase or acquisition of assets or liabilities.

**d. Cooperation**

You must cooperate with us in all matters pertaining to this insurance as stated in its terms and conditions.

**e. Duties in the Event of Loss**

After you "discover" a loss or a situation that may result in loss of or damage to "money", "securities" or "other property" you must:

**(1)** Notify us as soon as possible. If you have reason to believe that any loss (except for loss covered under Insuring Agreement **A.1.** or **A.2.**) involves a violation of law, you must also notify the local law enforcement authorities.

**(2)** Submit to examination under oath at our request and give us a signed statement of your answers.

**(3)** Produce for our examination all pertinent records.

**(4)** Give us a detailed, sworn proof of loss within 120 days.

**(5)** Cooperate with us in the investigation and settlement of any claim.

**f. Employee Benefit Plans**

**(1)** The "employee benefit plans" (hereafter referred to as Plan) are included as Insureds under Insuring Agreement **A.1.**

**(2)** If any Plan is insured jointly with any other entity under this insurance, you or the Plan Administrator must select a Limit of Insurance for Insuring Agreement **A.1.** that is sufficient to provide a Limit of Insurance for each Plan that is at least equal to that required if each Plan were separately insured.

**(3)** With respect to loss sustained or "discovered" by any such Plan, Insuring Agreement **A.1.** is replaced by the following:

We will pay for loss of or damage to "funds" and "other property" resulting directly from fraudulent or dishonest acts committed by an "employee", whether identified or not, acting alone or in collusion with other persons.

**(4)** If the first Named Insured is an entity other than a Plan, any payment we make for loss sustained by any Plan will be made to the Plan sustaining the loss.

**(5)** If two or more Plans are insured under this insurance, any payment we make for loss:

**(a)** Sustained by two or more Plans; or

**(b)** Of commingled "funds" or "other property" of two or more Plans;

resulting directly from an "occurrence" will be made to each Plan sustaining loss in the proportion that the Limit of Insurance required for each Plan bears to the total Limit of Insurance of all Plans sustaining loss.

Includes copyrighted material of ISO Properties, Inc., with their permission

CA 102 08 07

**(6)** The Deductible Amount applicable to Insuring Agreement **A.1.** does not apply to loss sustained by any Plan.

**g.  Extended Period to Discover Loss**

We will pay for loss that you sustained prior to the effective date of cancellation of this insurance, which is "discovered" by you:

**(1)** No later than 60 days from the date of that cancellation. However, this extended period to "discover" loss terminates immediately upon the effective date of any other insurance obtained by you, whether from us or another insurer, replacing in whole or in part the coverage afforded under this insurance, whether or not such other insurance provides coverage for loss sustained prior to its effective date.

**(2)** No later than 1 year from the date of that cancellation with regard to any "employee benefit plans".

**h.  Joint Insured**

**(1)** If more than one Insured is named in the Declarations, the first Named Insured will act for itself and for every other Insured for all purposes of this insurance. If the first Named Insured ceases to be covered, then the next Named Insured will become the first Named Insured.

**(2)** If any Insured, or partner, "member" or officer of that Insured has knowledge of any information relevant to this insurance, that knowledge is considered knowledge of every Insured.

**(3)** An "employee" of any Insured is considered to be an "employee" of every Insured.

**(4)** If this insurance or any of its coverages is cancelled as to any Insured, loss sustained by that Insured is covered only if it is "discovered" by you:

**(a)** No later than 60 days from the date of that cancellation. However, this extended period to "discover" loss terminates immediately upon

the effective date of any other insurance obtained by that Insured, whether from us or another insurer, replacing in whole or in part the coverage afforded under this insurance, whether or not such other insurance provides coverage for loss sustained prior to its effective date.

**(b)** No later than 1 year from the date of that cancellation with regard to any "employee benefit plans".

**(5)** We will not pay more for loss sustained by more than one Insured than the amount we would pay if all such loss had been sustained by one Insured.

**(6)** Payment by us to the first Named Insured for loss sustained by any Insured, other than an "employee benefit plan", shall fully release us on account of such loss.

**i.  Legal Action Against Us**

You may not bring any legal action against us involving loss:

**(1)** Unless you have complied with all the terms of this insurance;

**(2)** Until 90 days after you have filed proof of loss with us; and

**(3)** Unless brought within 2 years from the date you "discovered" the loss.

If any limitation in this Condition is prohibited by law, such limitation is amended so as to equal the minimum period of limitation provided by such law.

**j.  Liberalization**

If, within 60 days prior to the beginning of this Coverage Part or during the policy period, we make any changes to any forms or endorsements of this Coverage Part for which there is currently no separate premium charge, and that change provides more coverage than this Coverage Part, the change will automatically apply to this Coverage Part as of the latter of:

**a.** The date we implemented the change in your state; or

Includes copyrighted material of ISO Properties, Inc., with their permission

**b.** The date this Coverage Part became effective; and

will be considered as included until the end of the current policy period. We will make no additional premium charge for this additional coverage during the interim.

**k. Other Insurance**

If other valid and collectible insurance is available to you for loss covered under this insurance, our obligations are limited as follows:

**(1) Primary Insurance**

When this insurance is written as primary insurance, and:

**(a)** You have other insurance subject to the same terms and conditions as this insurance, issued by an insurer other than us or an insurer affiliated with us, we will pay our share of the covered loss. Our share is the proportion that the applicable Limit of Insurance shown in the Declarations bears to the total limit of all insurance covering the same loss.

**(b)** You have other insurance, issued by an insurer other than us or an insurer affiliated with us, covering the same loss other than that described in Paragraph (1)(a), we will only pay for the amount of loss that exceeds:

**(i)** The Limit of Insurance and Deductible Amount of that other insurance, whether you can collect on it or not; or

**(ii)** The Deductible Amount shown in the Declarations;

whichever is greater. Our payment for loss is subject to the terms and conditions of this insurance.

**(2) Excess Insurance**

**(a)** When this insurance is written excess over other insurance issued by an insurer other than us or an insurer affiliated with us, we will only pay for the amount of loss that exceeds the Limit of Insurance and Deductible Amount of that other insurance, whether you can collect on it or not. Our payment for loss is subject to the terms and conditions of this insurance.

**(b)** However, if loss covered under this insurance is subject to a Deductible, we will reduce the Deductible Amount shown in the Declarations, by the sum total of all such other insurance issued by an insurer other than us or an insurer affiliated with us, plus any Deductible Amount applicable to that other insurance.

**(c)** This insurance is excess of, and applies in addition to, any similar or identical insurance coverage provided by any other Coverage Part forming a part of the policy of insurance of which this Coverage Part forms a component. However, this insurance will not apply to that part of a loss falling within any deductible amount.

Paragraph **(c)** above supersedes any competing Other Insurance Condition contained in any other Coverage Part issued by us.

**l. Ownership of Property; Interests Covered**

The property covered under this insurance is limited to property:

**(1)** That you own or lease; or

**(2)** That you hold for others whether or not you are legally liable for the loss of such property.

However, this insurance is for your benefit only. It provides no rights or benefits to any other person or organization. Any claim for loss that is covered under this insurance must be presented by you.

**m. Policy Bridge - Discovery Replacing Loss Sustained**

**(1)** If this insurance replaces insurance that provided you with an

Includes copyrighted material of ISO
Properties, Inc., with their permission

extended period of time after cancellation in which to discover loss and which did not terminate at the time this insurance became effective:

(a) We will not pay for any loss that occurred during the Policy Period of that prior insurance which is "discovered" by you during the extended period to "discover" loss, unless the amount of loss exceeds the Limit of Insurance and Deductible Amount of that prior insurance. In that case, we will pay for the excess loss subject to the terms and conditions of this policy.

(b) However, any payment we make for the excess loss will not be greater than the difference between the Limit of Insurance and Deductible Amount of that prior insurance and the Limit of Insurance shown in the Declarations. We will not apply the Deductible Amount shown in the Declarations to this excess loss.

(2) The Other Insurance Condition **E.1.k.** does not apply to this Condition.

**n. Records**

You must keep records of all property covered under this insurance so we can verify the amount of any loss.

**o. Recoveries**

(1) Any recoveries, whether effected before or after any payment under this insurance, whether made by us or you, shall be applied net of the expense of such recovery:

(a) First, to you in satisfaction of your covered loss in excess of the amount paid under this insurance;

(b) Second, to us in satisfaction of amounts paid in settlement of your claim;

(c) Third, to you in satisfaction of any Deductible Amount; and

(d) Fourth, to you in satisfaction of any loss not covered under this insurance.

(2) Recoveries do not include any recovery:

(a) From insurance, suretyship, reinsurance, security or indemnity taken for our benefit; or

(b) Of original "securities" after duplicates of them have been issued.

**p. Territory**

This insurance covers loss that you sustain resulting directly from an "occurrence" taking place within the United States of America (including its territories and possessions), Puerto Rico and Canada.

**q. Transfer of Your Rights of Recovery Against Others to Us**

You must transfer to us all your rights of recovery against any person or organization for any loss you sustained and for which we have paid or settled. You must also do everything necessary to secure those rights and do nothing after loss to impair them.

**r. Valuation - Settlement**

(1) The value of any loss for purposes of coverage under this policy shall be determined as follows:

(a) Loss of "money" but only up to and including its face value. We will, at your option, pay for loss of "money" issued by any country other than the United States of America:

(i) At face value in the "money" issued by that country; or

(ii) In the United States of America dollar equivalent determined by the rate of exchange published in *The Wall Street Journal* on the day the loss was "discovered".

(b) Loss of "securities" but only up to and including their value at the close of busi-

ness on the day the loss was "discovered". We may, at our option:

(i) Pay the market value of such "securities" or replace them in kind, in which event you must assign to us all your rights, title and interest in and to those "securities"; or

(ii) Pay the cost of any Lost Securities Bond required in connection with issuing duplicates of the "securities". However, we will be liable only for the payment of so much of the cost of the bond as would be charged for a bond having a penalty not exceeding the lesser of the:

    i. Market value of the "securities" at the close of business on the day the loss was "discovered"; or

    ii. The Limit of Insurance applicable to the "securities".

(c) Loss of or damage to "other property" or loss from damage to the "premises" or its exterior for the replacement cost of the property without deduction for depreciation. However, we will not pay more than the least of the following:

(i) The cost to replace the lost or damaged property with property of comparable material and quality and used for the same purpose;

(ii) The amount you actually spend that is necessary to repair or replace the lost or damaged property; or

(iii) The Limit of Insurance applicable to the lost or damaged property.

With regard to Paragraphs **r.(1)(c)(i)** through

**r.(1)(c)(iii),** we will not pay on a replacement cost basis for any loss or damage:

    i. Until the lost or damaged property is actually repaired or replaced; and

    ii. Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

If the lost or damaged property is not repaired or replaced, we will pay on an actual cash value basis.

(2) We will, at your option, settle loss or damage to property other than "money":

(a) In the "money" of the country in which the loss or damage occurred; or

(b) In the United States of America dollar equivalent of the "money" of the country in which the loss or damage occurred determined by the rate of exchange published in *The Wall Street Journal* on the day the loss was "discovered".

(3) Any property that we pay for or replace becomes our property.

2. **Conditions Applicable to Insuring Agreement A.1.**

   a. **Termination as to Any Employee**

This Insuring Agreement terminates as to any "employee":

(1) As soon as:

(a) You; or

(b) Any of your partners, "members", "managers", officers, directors or trustees not in collusion with the "employee";

learn of "theft" or any other dishonest act committed by the "employee" whether before or after becoming employed by you.

(2) On the date specified in a notice mailed to the first Named In-

Includes copyrighted material of ISO Properties, Inc., with their permission

sured. That date will be at least 30 days after the date of mailing.

We will mail or deliver our notice to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

**b. Territory**

We will pay for loss caused by any "employee" while temporarily outside the territory specified in the Territory Condition **E.1.p.** for a period of not more than 90 consecutive days.

**3. Conditions Applicable to Insuring Agreement A.2.**

**a. Deductible Amount**

The Deductible Amount does not apply to legal expenses paid under Insuring Agreement **A.2.**

**b. Electronic and Mechanical Signatures**

We will treat signatures that are produced or reproduced electronically, mechanically or by other means the same as handwritten signatures.

**c. Proof of Loss**

You must include with your proof of loss any instrument involved in that loss, or, if that is not possible, an affidavit setting forth the amount and cause of loss.

**d. Territory**

We will cover loss that you sustain resulting directly from an "occurrence" taking place anywhere in the world. Territory Condition **E.1.p.** does not apply to Insuring Agreement **A.2.**

**4. Conditions Applicable to Insuring Agreement A.4.**

**a. Armored Motor Vehicle Companies**

Under Insuring Agreement **A.4.**, we will only pay for the amount of loss you cannot recover:

**(1)** Under your contract with the armored motor vehicle company; and

**(2)** From any insurance or indemnity carried by, or for the benefit of customers of, the armored motor vehicle company.

**b. Special Limit of Insurance for Specified Property**

We will only pay up to the lesser of $5,000 or the Limit of insurance for any one "occurrence" of loss of or damage to:

**(1)** Precious metals, precious or semi-precious stones, pearls, furs, or completed or partially completed articles made of or containing such materials that constitute the principal value of such articles; or

**(2)** Manuscripts, drawings, or records of any kind, or the cost of reconstructing them or reproducing any information contained in them.

**F. Definitions**

**1.** "Banking premises" means the interior of that portion of any building occupied by a banking institution or similar safe depository.

**2.** "Counterfeit money" means an imitation of "money" that is intended to deceive and to be taken as genuine.

**3.** "Coverage term" means the following individual increment, or if a multi-year policy period, increments, of time, which comprise the policy period of this Coverage Part:

**a.** The year commencing on the Effective Date of this Coverage Part at 12:01 AM standard time at your mailing address shown in the Declarations, and if a multi-year policy period, each consecutive annual period thereafter, or portion thereof if any period is for a period of less than 12 months, constitute individual "coverage terms". The last "coverage term" ends at 12:00 AM standard time at your mailing address shown in the Declarations on the earlier of:

**(1)** The day the policy period shown in the Declarations ends; or

**(2)** The day the policy to which this Coverage Part is attached is terminated or cancelled.

**b.** However, if after the issuance of this Coverage Part, any "coverage term" is extended for an additional period of less than 12 months, that additional period of time will be deemed to be part of the last preceding "coverage term".

Includes copyrighted material of ISO Properties, Inc., with their permission

4. "Custodian" means you, or any of your partners or "members", or any "employee" while having care and custody of property inside the "premises", excluding any person while acting as a "watchperson" or janitor.

5. "Discover" or "discovered" means the time when you first become aware of facts which would cause a reasonable person to assume that a loss of a type covered by this insurance has been or will be incurred, regardless of when the act or acts causing or contributing to such loss occurred, even though the exact amount or details of loss may not then be known.

"Discover" or "discovered" also means the time when you first receive notice of an actual or potential claim in which it is alleged that you are liable to a third party under circumstances which, if true, would constitute a loss under this insurance.

6. "Employee":

   a. "Employee" means:

      (1) Any natural person:

          (a) While in your service and for the first 30 days immediately after termination of service, unless such termination is due to "theft" or any other dishonest act committed by the "employee";

          (b) Who you compensate directly by salary, wages or commissions; and

          (c) Who you have the right to direct and control while performing services for you;

      (2) Any natural person who is furnished temporarily to you:

          (a) To substitute for a permanent "employee" as defined in Paragraph a.(1), who is on leave; or

          (b) To meet seasonal or short-term work load conditions;

          while that person is subject to your direction and control and performing services for you, excluding, however, any such person while having care and custody of property outside the "premises";

      (3) Any natural person who is leased to you under a written agreement between you and a labor leasing firm, to perform duties related to the conduct of your business, but does not mean a temporary employee as defined in Paragraph a.(2);

      (4) Any natural person who is:

          (a) A trustee, officer, employee, administrator or manager, except an administrator or manager who is an independent contractor, of any "employee benefit plan"; and

          (b) A director or trustee of yours while that person is engaged in handling "funds" or "other property" of any "employee benefit plan";

      (5) Any natural person who is a former "employee", partner, "member", "manager", director or trustee retained as a consultant while performing services for you;

      (6) Any natural person who is a guest student or intern pursuing studies or duties, excluding, however, any such person while having care and custody of property outside the "premises";

      (7) Any "employee" of an entity merged or consolidated with you prior to the effective date of this insurance; or

      (8) Any of your "managers", directors or trustees while:

          (a) Performing acts within the scope of the usual duties of an "employee"; or

          (b) Acting as a member of any committee duly elected or appointed by resolution of your board of directors or board of trustees to perform specific, as distinguished from general, directorial acts on your behalf.

   b. "Employee" does not mean any agent, broker, factor, commission merchant, consignee, independent contractor or representative of the same general character not specified in Paragraph 6.a.

Includes copyrighted material of ISO Properties, Inc., with their permission

CA 102 08 07

7. "Employee benefit plan" means any welfare or pension benefit plan that you sponsor and which is subject to the Employee Retirement Income Security Act of 1974 (ERISA) and any amendments thereto.

8. "Forgery" means the signing of the name of another person or organization with intent to deceive; it does not mean a signature which consists in whole or in part of one's own name signed with or without authority, in any capacity, for any purpose.

9. "Funds" means "money" and "securities".

10. "Manager" means a person serving in a directorial capacity for a limited liability company.

11. "Member" means an owner of a limited liability company represented by its membership interest, who also may serve as a "manager".

12. "Messenger" means you, or a relative of yours, or any of your partners or "members", or any "employee" while having care and custody of property outside the "premises".

13. "Money" means:

    a. Currency, coins and bank notes in current use and having a face value; and

    b. Travelers checks, register checks and money orders held for sale to the public.

14. "Occurrence" means:

    a. Under Insuring Agreement A.1.:

        (1) An individual act;

        (2) The combined total of all separate acts whether or not related; or

        (3) A series of acts whether or not related;

        committed by an "employee" acting alone or in collusion with other persons, during the Policy Period shown in the Declarations, before such Policy Period or both.

    b. Under Insuring Agreement A.2.:

        (1) An individual act;

        (2) The combined total of all separate acts whether or not related; or

        (3) A series of acts whether or not related;

    committed by a person acting alone or in collusion with other persons, involving one or more instruments, during the Policy Period shown in the Declarations, before such Policy Period or both.

    c. Under All Other Insuring Agreements:

        (1) An individual act or event;

        (2) The combined total of all separate acts or events whether or not related; or

        (3) A series of acts or events whether or not related;

    committed by a person acting alone or in collusion with other persons, or not committed by any person, during the Policy Period shown in the Declarations, before such Policy Period or both.

15. "Other property" means any tangible property other than "money" and "securities" that has intrinsic value. "Other property" does not include computer programs, electronic data or any property specifically excluded under this insurance.

16. "Premises" means the interior of that portion of any building you occupy in conducting your business.

17. "Securities" means negotiable and non-negotiable instruments or contracts representing either "money" or property and includes:

    a. Tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter) in current use; and

    b. Evidences of debt issued in connection with credit or charge cards, which cards are not issued by you;

    but does not include "money".

18. "Theft" means the unlawful taking of property to the deprivation of the Insured.

19. "Watchperson" means any person you retain specifically to have care and custody of property inside the "premises" and who has no other duties.

Includes copyrighted material of ISO Properties, Inc., with their permission

# THE CINCINNATI INSURANCE COMPANY

**Mailing Address:** P.O. BOX 145496, CINCINNATI OHIO 45250-5496
**Home Office:** FAIRFIELD, OHIO 45014-5141
513-870-2000

## BUSINESS AUTO COVERAGE PART DECLARATIONS

**ITEM ONE**
Attached to and forming part of POLICY NUMBER: __EBA 026 35 19__
Named Insured is the same as it appears in the Common Policy Declarations.

**ITEM TWO**      SCHEDULE OF COVERAGES AND COVERED AUTOS
This coverage part provides only those coverages where a premium or "incl" is shown in the premium column below. The limit of Insurance for each coverage listed is subject to all applicable policy provisions. Each of these coverages will apply only to those "autos" shown as covered "autos". "Autos" are shown as covered "autos" for a particular coverage by the entry of one or more of the symbols from the COVERED AUTO Section of the Business Auto Coverage Form next to the name of the coverage.

| COVERAGES | COVERED AUTOS (Entry of one or more of the symbols from the COVERED AUTOS Section of the Business Auto Coverage Form shows which autos are covered autos) | LIMIT THE MOST WE WILL PAY FOR ANY ONE ACCIDENT OR LOSS | PREMIUM |
|---|---|---|---|
| LIABILITY | 1 | $1,000,000 | INCL |
| PERSONAL INJURY PROTECTION (or equivalent No-fault coverage) | 5 | Separately stated in each P.I.P. endorsement minus $ **NONE** Ded. **REFER TO CA2237** | INCL |
| ADDED PERSONAL INJURY PROTECTION (or equivalent added No-fault coverage) | 5 | Separately stated in each added P.I.P. endorsement **REFER TO CA2238** | INCL |
| PROPERTY PROTECTION INSURANCE (Michigan only) | | Separately stated in each P. P.I. endorsement minus $ Ded for each accident | |
| AUTO. MEDICAL PAYMENTS | | $ | |
| UNINSURED MOTORISTS | 2 | $100,000 | INCL |
| UNDERINSURED MOTORISTS (When not included in Uninsured Motorists Coverage) | 2 | $ SEE AA4183 | INCL |
| PHYSICAL DAMAGE COMPREHENSIVE COVERAGE | 7, 8 | Actual cash value or cost of repair, Whichever is less minus $ **SEE AA4183** Ded. For each covered auto. But no Deductible applies to loss caused by Fire or lightning. See Item Three for hired or borrowed "autos" | INCL |
| PHYSICAL DAMAGE SPECIFIED CAUSES OF LOSS COVERAGE | | Actual cash value or cost of repair, Whichever is less minus $ Ded. For Each covered auto. For loss caused by mischief or vandalism. See Item Three for hired or borrowed "autos" | |
| PHYSICAL DAMAGE COLLISION COVERAGE | 7, 8 | Actual cash value or cost of repair, Whichever is less minus $ **SEE AA4183** Ded for each covered auto. See Item Three for hired or borrowed "autos". | INCL |
| PHYSICAL DAMAGE INSURANCE TOWING AND LABOR | | $ for each disablement of a private passenger auto | |
| PREMIUM FOR ENDORSEMENTS | | | |
| | | *ESTIMATED TOTAL PREMIUM | INCL |

FORMS AND ENDORSEMENTS CONTAINED IN THIS COVERAGE PART AT ITS INCEPTION:

AA4183    02/06    AUTOMOBILE SCHEDULE
AA101    03/06    BUSINESS AUTO COVERAGE FORM

AA 505 PA 03 10      Includes copyrighted material of Insurance Services Office, Inc., with its permission.    EBA 026 35 19      Page 1 of 3

FORMS AND ENDORSEMENTS CONTAINED IN THIS COVERAGE PART AT ITS INCEPTION:

```
AA4128PA   07/16   IMPORTANT NOTICE AND FIRST PARTY BENEFITS EXTRAORDINARY MEDICAL
                   BENEFITS OPTION SELECTION FORM UNINSURED AND UNDERINSURED MOTORIST
                   PROTECTION OPTION SELECTION FORM
AA2009     01/17   CHANGES - TOWING AND LABOR
AA296      07/12   CHANGES - AUDIO, VISUAL AND DATA ELECTRONIC EQUIPMENT COVERAGE
AA4004     03/06   ADDITIONAL INSURED - DESIGNATED PERSON OR ORGANIZATION
AA4013PA   11/12   PENNSYLVANIA UNDERINSURED MOTORISTS COVERAGE-NONSTACKED
AA4014PA   11/12   PENNSYLVANIA UNINSURED MOTORISTS COVERAGE-NONSTACKED
AA4177     03/06   LESSOR - ADDITIONAL INSURED AND LOSS PAYEE
AA4231     08/08   SUPPLEMENTARY SCHEDULE FOR BUSINESS AUTO--ITEMS FOUR, FIVE, AND SIX
AA4263     04/10   OFFICE OF FOREIGN ASSETS CONTROL (OFAC) COMPLIANCE ENDORSEMENT
AA4337PA   08/16   PENNSYLVANIA CHANGES - BUSINESS AUTO COVERAGE FORM
CA2054     10/01   EMPLOYEE HIRED AUTOS
CA2237     12/92   PENNSYLVANIA BASIC FIRST PARTY BENEFIT
CA2238     07/90   PENNSYLVANIA ADDED AND COMBINATION FIRST PARTY BENEFITS ENDORSEMENT
CA2254     01/87   PENNSYLVANIA-NAMED INDIVIDUALS-BROADENED FIRST PARTY BENEFITS
AA247      03/06   DRIVE OTHER CAR COVERAGE - BROADENED COVERAGE FOR NAMED INDIVIDUALS
AA265      01/16   CINCIPLUS® BUSINESS AUTO XC® (EXPANDED COVERAGE) ENDORSEMENT
```

IMPORTANT NOTICE: YOUR POLICY ☒ PROVIDES ☐ DOES NOT PROVIDE COLLISION COVERAGE ON RENTAL VEHICLES. IF COLLISION COVERAGE IS PROVIDED, PLEASE REFER TO THE PORTION OF YOUR POLICY PROVIDING THIS COVERAGE FOR ANY LIMITATIONS THAT MAY APPLY.

\* This policy may be subject to final audit,

# QUICK REFERENCE
# COMMERCIAL AUTO COVERAGE PART
# BUSINESS AUTO COVERAGE FORM
## READ YOUR POLICY CAREFULLY

**DECLARATIONS PAGES**

Named Insured and Mailing Address
Policy Period
Description of Business
Coverages and Limits of Insurance

**SECTION I - COVERED AUTOS**                                          **Beginning on Page**

Description of Covered Auto Designation Symbols.............................................................1
Owned Autos You Acquire After the Policy Begins .........................................................1
Certain Trailers, Mobile Equipment and
Temporary Substitute Autos..............................................................................................2

**SECTION II - LIABILITY COVERAGE**

Coverage.............................................................................................................................2
Who is an Insured ..............................................................................................................2
Coverage Extensions
    Supplementary Payments.............................................................................................2
    Out of State..................................................................................................................3
Exclusions ..........................................................................................................................3
Limit of Insurance..............................................................................................................5

**SECTION III - PHYSICAL DAMAGE COVERAGE**

Coverage.............................................................................................................................7
Exclusions ..........................................................................................................................7
Limit of Insurance..............................................................................................................8
Deductible...........................................................................................................................8

**SECTION IV - BUSINESS AUTO CONDITIONS**

Loss Conditions
    Appraisal for Physical Damage Loss ...........................................................................9
    Duties in the Event of Accident, Claim, Suit or Loss...................................................9
    Legal Action Against Us...............................................................................................9
    Loss Payment - Physical Damage Coverages..............................................................9
    Transfer of Rights of Recovery Against Others to Us................................................10
General Conditions
    Bankruptcy..................................................................................................................10
    Concealment, Misrepresentation or Fraud.................................................................10
    Liberalization ..............................................................................................................10
    No Benefit to Bailee - Physical Damage Coverages..................................................10
    Other Insurance ..........................................................................................................10
    Premium Audit.............................................................................................................10
    Policy Period, Coverage Territory ..............................................................................10
    Two or More Coverage Forms or Policies Issued by Us............................................11

**SECTION V - DEFINITIONS** ...................................................................................11

**COMMON POLICY CONDITIONS**
Cancellation
Changes
Examination of Your Books and Records
Inspections and Surveys
Premiums
Transfer of Your Rights and Duties under this Policy

**ENDORSEMENTS (If Any)**

AA 505 PA 03 10          Includes copyrighted material of Insurance   EBA 026 35 19        Page 3 of 3
                         Services Office, Inc., with its permission.

# AUTOMOBILE SCHEDULE

## ITEM THREE

Attached to and forming a part of Policy Number  **EBA 026 35 19**  , effective  **07-01-2020**

The insurance afforded for any automobile is only with respects to such and so many of the coverages as are indicated by specific premium charge or charges indicated.

POLICY LIMITS

State: **PA**

| | | | | |
|---|---|---|---|---|
| Bodily Injury: | **1,000,000 CSL** | Property Damage: | **INCLUDED** | |
| **UM** | **100,000 (OTHERS)** | **UIM** | **100,000** | |
| **UM/UIM:** | **NONSTACKED** | | | |

Additional First Party Benefits (with WC)

| | | | | |
|---|---|---|---|---|
| Medical Expense: | **100,000** | Funeral Expense: | **N/A** | Extraordinary Medical: **N/A** |
| Work Loss: | **5,000/1,000** | Accidental Death: | **N/A** | |

| Veh. No. | Vehicle Information | | | | | |
|---|---|---|---|---|---|---|

---

**1**  1993 PORSCHE GTS S/N WP0AA2923PS820136                    Class: 7398  Territory 112

OTC-COMP DED: 1,000                                   Coll Ded: 1,000

                                                      COST NEW: 82,260     ZIP CODE: 17042

| BI | PD | MP | OTC | COLL | UM | |
|---|---|---|---|---|---|---|
| 348 | INCL | N/A | 51 | 135 | 54 | |
| AFPB | | | | | | TOTAL |
| 26 | | | | | | 614 |

---

**2**  2005 FORD EXCURSION S/N 1FMSU43P85EA84443                  Class: 7398  Territory 112

OTC-COMP DED: 1,000                                   Coll Ded: 1,000

                                                      COST NEW: 50,270     ZIP CODE: 17042

| BI | PD | MP | OTC | COLL | UM | |
|---|---|---|---|---|---|---|
| 380 | INCL | N/A | 34 | 90 | 54 | |
| AFPB | | | | | | TOTAL |
| 26 | | | | | | 584 |

---

**3**  2008 CHEVROLET PICKUP S/N 1GCCS33E388185920                Class: 03499  Territory 112

OTC-COMP DED: 1,000                                   Coll Ded: 1,000

                                                      COST NEW: 21,015     ZIP CODE: 17042

| BI | PD | MP | OTC | COLL | UM | |
|---|---|---|---|---|---|---|
| 558 | INCL | N/A | 24 | 66 | 59 | |
| AFPB | | | | | | TOTAL |
| 22 | | | | | | 729 |

---

AA 4183 02 06

# AUTOMOBILE SCHEDULE

## ITEM   THREE   (CONTINUED)

**4    2019 MERCEDES-BENZ BENZ S/N 4JGED7FB0KA135628**          Class: 7398    Territory 112
OTC-COMP DED: 1,000                                      Coll Ded: 1,000
                                                          COST NEW: 113,000    ZIP CODE: 17042

| BI | PD | MP | OTC | COLL | UM | | |
|----|----|----|-----|------|----|---|---|
| 405 | INCL | N/A | 151 | 478 | 54 | | |
| AFPB | | | | | | | TOTAL |
| 26 | | | | | | | 1,114 |

**5    2020 CADILLAC XT5 S/N 1GYKNDRS9LZ137017**          Class: 7398    Territory 112
OTC-COMP DED: 1,000                                      Coll Ded: 1,000
                                                          COST NEW: 51,795    ZIP CODE: 17042

| BI | PD | MP | OTC | COLL | UM | | |
|----|----|----|-----|------|----|---|---|
| 404 | INCL | N/A | 83 | 297 | 54 | | |
| AFPB | | | | | | | TOTAL |
| 26 | | | | | | | 864 |

**ADDITIONAL INTEREST - DESIGNATED PERSON OR ORGANIZATION**          Class:    Territory
OTC-COMP DED: N/A                                      Coll Ded: N/A

| BI | PD | MP | OTC | COLL | UM | | TOTAL |
|----|----|----|-----|------|----|---|-------|
| 50 | INCL | | | | | | 50 |

**BROAD FORM DRIVE OTHER CAR**          Class:    Territory
OTC-COMP DED: 500                                      Coll Ded: 500

| BI | PD | MP | OTC | COLL | UM | | |
|----|----|----|-----|------|----|---|---|
| 60 | INCL | | 8 | 38 | 5 | | |
| BRFP | AFPB | | | | | | TOTAL |
| 2 | 30 | | | | | | 143 |

**BUSINESS AUTO EXPANDED ENDORSEMENT**          Class:    Territory
OTC-COMP DED: N/A                                      Coll Ded: N/A

| BI | PD | MP | OTC | COLL | UM | | TOTAL |
|----|----|----|-----|------|----|---|-------|
| | | | 100 | | | | 100 |

**HIRED AND NON-OWNED**          Class:    Territory
OTC-COMP DED: N/A                                      Coll Ded: N/A

| BI | PD | MP | OTC | COLL | UM | | TOTAL |
|----|----|----|-----|------|----|---|-------|
| 447 | INCL | | | | | | 447 |

AA 4183 02 06                                              Page 2 of 3

# AUTOMOBILE SCHEDULE

## ITEM   THREE   (CONTINUED)

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| HIRED AUTO PHYSICAL DAMAGE | | | LIMIT: 50,000 | | | Class: | Territory |
| OTC-COMP DED: 100 | | | | | Coll Ded: 500 | | |

| BI | PD | MP | OTC | COLL | UM | | TOTAL |
|---|---|---|---|---|---|---|---|
| | | | 82 | 122 | | | 204 |

SYMBOLS:

| | | | | |
|---|---|---|---|---|
| BI | -- Bodily Injury | SPEC | -- Specified Perils |
| PD | -- Property Damage | COLL | -- Collision |
| MP | -- Medical Payments | UM | -- Uninsured Motorists |
| OTC | -- Other Than Collision (ACV Coverage applies unless Stated Amount Value is indicated) | UIM | -- Underinsured Motorists |
| | | PIP | -- Personal Injury Protection |
| CAC | -- Combined Additional Coverage | T&L | -- Towing and Labor Costs |
| FT&S | -- Fire, Theft, and Supplemental | RR | -- Rental Reimbursement |
| AFPB | -- Add First Party Benefits | BRFP | -- Broad First Party Benefits |

AA 4183 02 06

# BUSINESS AUTO COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer **to SECTION V - DEFINITIONS.**

## SECTION I - COVERED AUTOS

ITEM TWO of the Declarations shows the "autos" that are covered "autos" for each of your coverages. The following numerical symbols describe the "autos" that may be covered "autos". The symbols entered next to a coverage on the Declarations designate the only "autos" that are covered "autos".

**A. Description of Covered Auto Designation Symbols**

**SYMBOL          DESCRIPTION**

1 = ANY "AUTO".

2 = OWNED "AUTOS" ONLY. Only those "autos" you own (and for Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" you acquire ownership of after the policy begins.

3 = OWNED PRIVATE PASSENGER "AUTOS" ONLY. Only the private passenger "autos" you own. This includes those private passenger "autos" you acquire ownership of after the policy begins.

4 = OWNED "AUTOS" OTHER THAN PRIVATE PASSENGER "AUTOS" ONLY. Only those "autos" you own that are not of the private passenger type (and for Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" not of the private passenger type you acquire ownership of after the policy begins.

5 = OWNED "AUTOS" SUBJECT TO NO-FAULT. Only those "autos" you own that are required to have No-Fault benefits in the state where they are licensed or principally garaged. This includes those "autos" you acquire ownership of after the policy begins provided they are required to have No-Fault benefits in the state where they are licensed or principally garaged.

6 = OWNED "AUTOS" SUBJECT TO A COMPULSORY UNINSURED MOTORISTS LAW. Only those "autos" you own that because of the law in the state where

they are licensed or principally garaged are required to have and cannot reject Uninsured Motorists Coverage. This includes those "autos" you acquire ownership of after the policy begins provided they are subject to the same state uninsured motorists requirement.

7 = SPECIFICALLY DESCRIBED "AUTOS". Only those "autos" described in ITEM THREE of the Declarations for which a premium charge is shown (and for Liability Coverage any "trailers" you don't own while attached to a power unit described in ITEM THREE).

8 = HIRED "AUTOS" ONLY. Only those "autos" you lease, hire, rent or borrow. This does not include any "auto" you lease, hire, rent, or borrow from any of your "employees" or partners (if you are a partnership), members (if you are a limited liability company) or members of their households.

9 = NONOWNED "AUTOS" ONLY. Only those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes "autos" owned by your "employees", partners (if you are a partnership), members (if you are a limited liability company), or members of their households but only while used in your business or your personal affairs.

**B. Owned Autos You Acquire After the Policy Begins**

1. If Symbols 1, 2, 3, 4, 5, or 6 are entered next to a coverage in ITEM TWO of the Declarations, then you have coverage for "autos" that you 'acquire of the type described for the remainder of the policy period.

2. But, if Symbol 7 is entered next to a coverage in ITEM TWO of the Declarations, an "auto" you acquire will be a covered "auto" for that coverage only if:

   a. We already cover all "autos" that you own for that coverage or it replaces

an "auto" you previously owned that had that coverage; and

b. You tell us within 30 days after you acquire it that you want us to cover it for that coverage.

## C. Certain Trailers, Mobile Equipment and Temporary Substitute Autos

If Liability Coverage is provided by this Coverage Form, the following types of vehicles are also covered "autos" for Liability Coverage:

1. "Trailers" with a load capacity of 2,000 pounds or less designed primarily for travel on public roads.

2. "Mobile equipment" while being carried or towed by a covered "auto".

3. Any "auto" you do not own while used with the permission of its owner as a temporary substitute for a covered "auto" you own that is out of service because of its:

a. Breakdown;

b. Repair;

c. Servicing;

d. "Loss"; or

e. Destruction.

# SECTION II - LIABILITY COVERAGE

## A. Coverage

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

We will also pay all sums an "insured" legally must pay as a "covered pollution cost or expense" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of covered "autos". However, we will only pay for the "covered pollution cost or expense" if there is either "bodily injury" or "property damage" to which this insurance applies that is caused by the same "accident".

We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense". However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

### 1. Who is an Insured

The following are "insureds":

a. You for any covered "auto".

b. Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

(1) The owner or anyone else from whom you hire or borrow a cov-

ered "auto". This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.

(2) Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household.

(3) Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.

(4) Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company), or a lessee or borrower or any of their "employees", while moving property to or from a covered "auto".

(5) A partner (if you are a partnership), or a member (if you are a limited liability company), for a covered "auto" owned by him or her or a member of his or her household.

c. Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

### 2. Coverage Extensions

a. **Supplementary Payments**

We will pay for the "insured":

(1) All expenses we incur.

(2) Up to $2,000 for the cost of bail bonds (including bonds for related traffic law violations) re-

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

quired because of an "accident" we cover. We do not have to furnish these bonds.

**(3)** The cost of bonds to release attachments in any "suit" against the "insured" we defend, but only for bond amounts within our Limit of Insurance.

**(4)** All reasonable expenses incurred by the "insured" at our request, including actual loss of earnings up to $250 a day because of time off from work.

**(5)** All costs taxed against the "insured" in any "suit" against the "insured" we defend.

**(6)** All interest on the full amount of any judgment that accrues after entry of the judgment in any "suit" against the "insured" we defend, but our duty to pay interest ends when we have paid, offered to pay or deposited in court the part of the judgment that is within our Limit of Insurance.

These payments will not reduce the Limit of Insurance.

**b. Out-of-State Coverage Extensions**

While a covered "auto" is away from the state where it is licensed we will:

**(1)** Increase the Limit of Insurance for Liability Coverage to meet the limits specified by a compulsory or financial responsibility law of the jurisdiction where the covered "auto" is being used. This extension does not apply to the limit or limits specified by any law governing motor carriers of passengers or property.

**(2)** Provide the minimum amounts and types of other coverages, such as no-fault, required of out-of-state vehicles by the jurisdiction where the covered "auto" is being used.

We will not pay anyone more than once for the same elements of loss because of these extensions.

**B. Exclusions**

This insurance does not apply to any of the following:

**1. Expected or Intended Injury**

"Bodily injury" or "property damage" which may reasonably be expected to result from the intentional or criminal acts of the "insured" or which is in fact expected or intended by the "insured", even if the injury or damage is of a different degree or type than actually expected or intended. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**2. Contractual**

Liability assumed under any contract or agreement.

But this exclusion does not apply to liability for damages:

**a.** Assumed in a contract or agreement that is an "insured contract" provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

**b.** That the "insured" would have in the absence of the contract or agreement.

**3. Workers' Compensation**

Any obligation for which the "insured" or the "insured's" insurer may be held liable under any workers' compensation, disability benefits or unemployment compensation law or any similar law.

**4. Employee Indemnification and Employer's Liability**

"Bodily injury" to:

**a.** An "employee" of the "insured" sustained in the "workplace";

**b.** An "employee" of the "insured" arising out of the performance of duties related to the conduct of the "insured's" business; or

**c.** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **a.** or **b.** above.

This Exclusion applies:

**(1)** Whether the "insured" may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

AA 101 03 06

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Page 3 of 14

But this exclusion does not apply to "bodily injury" to domestic "employees" not entitled to workers' compensation benefits or to liability assumed by the "insured" under an "insured contract" other than a contract or agreement with a labor leasing firm. For the purposes of the Coverage Form, a domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises.

**5. Fellow Employee**

"Bodily injury" to any fellow "employee" of the "insured" arising out of and in the course of the fellow "employee's" employment or while performing duties related to the conduct of your business.

**6. Care, Custody or Control**

"Property damage" to or "covered pollution cost or expense" involving property owned or transported by the "insured" or in the "insured's" care, custody or control. But this exclusion does not apply to liability assumed under a sidetrack agreement.

**7. Handling of Property**

"Bodily injury" or "property damage" resulting from the handling of property:

a. Before it is moved from the place where it is accepted by the "insured" for movement into or onto the covered "auto"; or

b. After it is moved from the covered "auto" to the place where it is finally delivered by the "insured".

**8. Movement of Property by Mechanical Device**

"Bodily injury" or "property damage" resulting from the movement of property by a mechanical device (other than a hand truck) unless the device is attached to the covered "auto".

**9. Operations**

"Bodily injury" or "property damage" arising out of the operation of:

a. Any equipment listed in Paragraphs **6.b.** and **6.c.** of the definition of "mobile equipment"; or

b. Machinery or equipment that is on, attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

**10. Completed Operations**

"Bodily injury" or "property damage" arising out of your work after that work has been completed or abandoned.

In this exclusion, your work means:

a. Work or operations performed by you or on your behalf; and

b. Materials, parts or equipment furnished in connection with such work or operations.

Your work includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in Paragraphs **a.** or **b.** above.

Your work will be deemed completed at the earliest of the following times:

(1) When all of the work called for in your contract has been completed.

(2) When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

(3) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**11. Pollutant**

"Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release, escape or emission of "pollutants":

a. That are, or that are contained in any property that is:

(1) Being transported or towed by, handled, or handled for movement into, onto or from, the covered "auto";

(2) Otherwise in the course of transit by or on behalf of the "insured"; or

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

(3) Being stored, disposed of, treated or processed in or upon the covered "auto";

b. Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

c. After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph a. of this exclusion does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

(1) The "pollutants" escape, seep, migrate, or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

(2) The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraphs 6.b. and 6.c. of the definition of "mobile equipment".

However, this exception to Paragraph a. does not apply if the fuels, lubricants, fluids, exhaust gases or other similar "pollutants" are intentionally discharged, dispersed or released.

Paragraphs b. and c. of this exclusion do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

(1) The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

(2) The discharge, dispersal, seepage, migration, release, emission or escape of the "pollutants" is caused directly by such upset, overturn or damage.

d. At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:

(1) If the "pollutants" are brought on or to the premises, site or location in connection with such operations by such "insured", contractor or subcontractor; or

(2) If the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

Subparagraph d.(1) does not apply to "bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the fuels, lubricants or other operating fluids are intentionally discharged, dispersed or released, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent to be discharged, dispersed or released as part of the operations being performed by such "insured", contractor or subcontractor.

12. War

"Bodily injury" or "property damage" arising directly or indirectly out of:

a. War, including undeclared or civil war;

b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

c. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

13. Racing

Covered "autos" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. This

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

insurance also does not apply while that covered "auto" is being prepared for such a contest or activity.

## C. Limit of Insurance

Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for the total of all damages and "covered pollution cost or expense" combined, resulting from any one "accident" is the Limit of Insurance for Liability Coverage shown in the Declarations.

All "bodily injury", "property damage" and "covered pollution cost or expense" resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one "accident".

No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Medical Payments Coverage endorsement, Uninsured Motorists Coverage endorsement or Underinsured Motorists Coverage endorsement attached to this Coverage Part.

## D. Mobile Equipment Subject to Motor Vehicle Insurance Laws

As respects **SECTION II - LIABILITY COVERAGE** any land vehicle, which would qualify as "mobile equipment", except that it is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged, is considered a covered "auto" under **SECTION II - LIABILITY COVERAGE,** irrespective of the Auto Designation Symbols shown for **SECTION II - LIABILITY COVERAGE** in the Declarations.

# SECTION III - PHYSICAL DAMAGE COVERAGE

## A. Coverage

1. We will pay for "loss" to a covered "auto" or its equipment under:

    a. **Comprehensive Coverage**

    From any cause except:

    (1) The covered "auto's" collision with another object; or

    (2) The covered "auto's" overturn.

    b. **Specified Causes of Loss Coverage**

    Caused by:

    (1) Fire, lightning or explosion;

    (2) Theft;

    (3) Windstorm, hail or earthquake;

    (4) Flood;

    (5) Mischief or vandalism; or

    (6) The sinking, burning, collision or derailment of any conveyance transporting the covered "auto".

    c. **Collision Coverage**

    Caused by:

    (1) The covered "auto's" collision with another object; or

    (2) The covered "auto's" overturn.

2. **Towing**

    We will pay up to the limit shown in the Declarations for towing and labor costs

incurred each time a covered "auto" of the private passenger type is disabled. However, the labor must be performed at the place of disablement.

3. **Glass Breakage - Hitting a Bird or Animal - Falling Objects or Missiles**

    If you carry Comprehensive Coverage for the damaged covered "auto", we will pay for the following under Comprehensive Coverage:

    a. Glass breakage;

    b. "Loss" caused by hitting a bird or animal; and

    c. "Loss" caused by falling objects or missiles.

    However, you have the option of having glass breakage caused by a covered "auto's" collision or overturn considered a "loss" under Collision Coverage.

4. **Coverage Extensions**

    a. **Transportation Expenses**

    We will also pay up to $20 per day to a maximum of $600 for temporary transportation expense incurred by you because of the total theft of a covered "auto" of the private passenger type. We will pay only for those covered "autos" for which you carry either Comprehensive or Specified Causes of Loss Coverage. We will pay for temporary transportation expenses incurred during the period beginning 48 hours after the theft and ending, regardless of the policy's expiration, when the covered

"auto" is returned to use or we pay for its "loss".

**b. Loss of Use Expenses**

For Hired Auto Physical Damage, we will pay expenses for which an "insured" becomes legally responsible to pay for loss of use of a vehicle rented or hired without a driver, under a written rental contract or agreement. We will pay for loss of use expenses if caused by:

(1) Other than collision only if the Declarations indicate that Comprehensive Coverage is provided for any covered "auto";

(2) Specified Causes of Loss only if the Declarations indicate that Specified Causes of Loss Coverage is provided for any covered "auto"; or

(3) Collision only if the Declarations indicate that Collision Coverage is provided for any covered "auto".

However, the most we will pay for any expenses for loss of use is $20 per day, to a maximum of $600.

**B. Exclusions**

1. We will not pay for "loss" caused by or resulting from any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss".

   **a. Nuclear Hazard**

   (1) The explosion of any weapon employing atomic fission or fusion; or

   (2) Nuclear reaction or radiation, or radioactive contamination, however caused.

   **b. War or Military Action**

   (1) War, including undeclared or civil war;

   (2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

   (3) Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

2. We will not pay for "loss" to any covered "auto" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. We will also not pay for "loss" to any covered "auto" while that covered "auto" is being prepared for such a contest or activity.

3. We will not pay for "loss", caused by or resulting from any of the following unless caused by other "loss" that is covered by this insurance:

   **a.** Wear and tear, freezing, mechanical or electrical breakdown; or

   **b.** Blowouts, punctures or other road damage to tires.

4. We will not pay for "loss" to any of the following:

   **a.** Tapes, records, discs or other similar audio, visual or data electronic devices designed for use with audio, visual or data electronic equipment.

   **b.** Any device designed or used to detect speed measuring equipment such as radar or laser detectors and any jamming apparatus intended to elude or disrupt speed measurement equipment.

   **c.** Any electronic equipment, without regard to whether this equipment is permanently installed, that receives or transmits audio, visual or data signals and that is not designed solely for the reproduction of sound.

   **d.** Any accessories used with the electronic equipment described in Paragraph **c.** above.

Exclusions **4.c.** and **4.d.** do not apply to:

   **a.** Equipment designed solely for the reproduction of sound and accessories used with such equipment, provided such equipment is permanently installed in the covered "auto" at the time of the "loss" or such equipment is removable from a housing unit which is permanently installed in the covered "auto" at the time of the "loss", and such equipment is designed to be solely operated by use of the power from the "auto's" electrical system, in or upon the covered "auto"; or

   **b.** Any other electronic equipment that is:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

(1) Necessary for the normal operation of the covered "auto" or the monitoring of the covered "auto's" operating system; or

(2) An integral part of the same unit housing any sound reproducing equipment described in Paragraph **a.** above and permanently installed in the opening of the dash or console of the covered "auto" normally used by the manufacturer for installation of a radio.

5. We will not pay for "loss" to a covered "auto" due to "diminution in value".

## C. Limit of Insurance

1. The most we will pay for "loss" in any one "accident" is the lesser of:

   a. The actual cash value of the damaged or stolen property as of the time of the "loss"; or

   b. The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality.

2. An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total "loss".

3. If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

## D. Deductible

For each covered "auto", our obligation to pay for, repair, return or replace damaged or stolen property will be reduced by the applicable deductible shown in the Declarations. Any Comprehensive Coverage deductible shown in the Declarations does not apply to "loss" caused by fire or lightning.

# SECTION IV - BUSINESS AUTO CONDITIONS

The following conditions apply in addition to the Common Policy Conditions:

## A. Loss Conditions

1. **Appraisal for Physical Damage Loss**

   If you and we disagree on the amount of "loss", either may demand an appraisal of the "loss". In this event, each party will select a competent appraiser. The two appraisers will select a competent and impartial umpire. The appraisers will state separately the actual cash value and amount of "loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

   a. Pay its chosen appraiser; and

   b. Bear the other expenses of the appraisal and umpire equally.

   If we submit to an appraisal, we will still retain our right to deny the claim.

2. **Duties in the Event of Accident, Claim, Suit or Loss**

   We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

   a. In the event of "accident", claim, "suit" or "loss", you must give us or our authorized representative prompt notice of the "accident" or "loss". Include:

   (1) How, when and where the "accident" or "loss" occurred;

   (2) The "insured's" name and address; and

   (3) To the extent possible, the names and addresses of any injured persons and witnesses.

   b. Additionally, you and any other involved "insured" must:

   (1) Assume no obligation, make no payment or incur no expense without our consent, except at the "insured's" own cost.

   (2) Immediately send us copies of any request, demand, order, notice, summons or legal paper received concerning the claim or "suit".

   (3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit".

   (4) Authorize us to obtain medical records or other pertinent information.

   (5) Submit to examination, at our expense, by physicians of our choice, as often as we reasonably require.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**c.** If there is "loss" to a covered "auto" or its equipment you must also do the following:

   **(1)** Promptly notify the police if the covered "auto" or any of its equipment is stolen.

   **(2)** Take all reasonable steps to protect the covered "auto" from further damage. Also keep a record of your expenses for consideration in the settlement of the claim.

   **(3)** Permit us to inspect the covered "auto" and records proving the "loss" before its repair or disposition.

   **(4)** Agree to examinations under oath at our request and give us a signed statement of your answers.

**3. Legal Action Against Us**

No one may bring a legal action against us under this Coverage Form until:

**a.** There has been full compliance with all the terms of this Coverage Form; and

**b.** Under Liability Coverage, we agree in writing that the "insured" has an obligation to pay or until the amount of that obligation has finally been determined by judgment after trial. No one has the right under this policy to bring us into an action to determine the "insured's" liability.

**4. Loss Payment - Physical Damage Coverages**

At our option we may:

**a.** Pay for, repair or replace damaged or stolen property;

**b.** Return the stolen property, at our expense. We will pay for any damage that results to the "auto" from the theft; or

**c.** Take all or any part of the damaged or stolen property at an agreed or appraised value.

If we pay for the "loss", our payment will include the applicable sales tax for the damaged or stolen property.

**5. Transfer of Rights of Recovery Against Others to Us**

If any person or organization to or for whom we make payment under this Cov-erage Form has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after "accident" or "loss" to impair them.

**B. General Conditions**

**1. Bankruptcy**

Bankruptcy or insolvency of the "insured" or the "insured's" estate will not relieve us of any obligations under this Coverage Form.

**2. Concealment, Misrepresentation or Fraud**

This Coverage Form is void in any case of fraud by you at any time as it relates to this Coverage Form. It is also void if you or any other "insured", at any time, intentionally conceal or misrepresent a material fact concerning:

**a.** This Coverage Form;

**b.** The covered "auto";

**c.** Your interest in the covered "auto"; or

**d.** A claim under this Coverage Form.

**3. Liberalization**

If within 60 days prior to the beginning of this Coverage Part or during the policy period, we make any changes to any forms or endorsements of this Coverage Part for which there is currently no separate premium charge, and that change provides more coverage than this Coverage Part, the change will automatically apply to this Coverage Part as of the latter of:

**a.** The date we implemented the change in your state; or

**b.** The date this Coverage Part became effective; and

will be considered as included until the end of the current policy period. We will make no additional premium charge for this additional coverage during the interim.

**4. No Benefit to Bailee - Physical Damage Coverages**

We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this Coverage Form.

AA 101 03 06

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Page 9 of 14

## 5. Other Insurance

a. For any covered "auto" you own, this Coverage Form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance. However, while a covered "auto" which is a "trailer" is connected to another vehicle, the Liability Coverage this Coverage Form provides for the "trailer" is:

   (1) Excess while it is connected to a motor vehicle you do not own.

   (2) Primary while it is connected to a covered "auto" you own.

b. For Hired Auto Physical Damage Coverage, any covered "auto" you lease, hire, rent or borrow is deemed to be a covered "auto" you own. However, any "auto" that is leased, hired, rented or borrowed with a driver is not a covered "auto".

c. Regardless of the provisions of Paragraph **a.** above, this Coverage Form's Liability Coverage is primary for any liability assumed under an "insured contract".

d. When this Coverage Form and any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

## 6. Premium Audit

a. The estimated premium for this Coverage Form is based on the exposures you told us you would have when this policy began. We will compute the final premium due when we determine your actual exposures. The estimated total premium will be credited against the final premium due and the first Named Insured will be billed for the balance, if any. The due date for the final premium or retrospective premium is the date shown as the due date on the bill. If the estimated total premium exceeds the final premium due, the first Named Insured will get a refund.

b. If this policy is issued for more than one year, the premium for this Coverage Form will be computed annually based on our rates or premiums in effect at the beginning of each year of the policy.

## 7. Policy Period, Coverage Territory

Under this Coverage Form, we cover "accidents" and "losses" occurring:

a. During the Policy Period shown in the Declarations; and

b. Within the coverage territory.

The coverage territory is:

a. The United States of America;

b. The territories and possessions of the United States of America;

c. Puerto Rico;

d. Canada; and

e. Anywhere in the world if:

   (1) A covered "auto" of the private passenger type is leased, hired, rented or borrowed without a driver for a period of 30 days or less; and

   (2) The "insured's" responsibility to pay damages is determined in a "suit" on the merits, in the United States of America, the territories and possessions of the United States of America, Puerto Rico, or Canada or in a settlement we agree to.

We also cover "loss" to, or "accidents" involving, a covered "auto" while being transported between any of these places.

## 8. Two or More Coverage Forms or Policies Issued by Us

If this Coverage Form and any other Coverage Form or policy issued to you by us or any company affiliated with us apply to the same "accident", the aggregate maximum Limit of Insurance under all the Coverage Forms or policies shall not exceed the highest applicable Limit of Insurance under any one Coverage Form or policy. This condition does not apply to any Coverage Form or policy issued by us or an affiliated company specifically to apply as excess insurance over this Coverage Form.

## SECTION V - DEFINITIONS

**A.** "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage".

**B.** "Auto" means:

**1.** A land motor vehicle, "trailer" or semi-trailer designed for travel on public roads; or

**2.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**C.** "Bodily injury" means bodily injury, sickness or disease sustained by a person including death resulting from any of these.

**D.** "Covered pollution cost or expense" means any cost or expense arising out of:

**1.** Any request, demand, order or statutory or regulatory requirement that the "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

**2.** Any claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "pollutants".

"Covered pollution cost or expense" does not include any cost or expense arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release, escape or emission of "pollutants":

**a.** That are, or that are contained in any property that is:

**(1)** Being transported or towed by, handled, or handled for movement into, onto or from the covered "auto";

**(2)** Otherwise in the course of transit by or on behalf of the "insured";

**(3)** Being stored, disposed of, treated or processed in or upon the covered "auto"; or

**b.** Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place

where they are accepted by the "insured" for movement into or onto the covered "auto"; or

**c.** After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph **a.** above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

**(1)** The "pollutants" escape, seep, migrate, or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

**(2)** The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraphs **6.b.** or **6.c.** of the definition of "mobile equipment".

Paragraphs **b.** and **c.** above do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

**(1)** The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

**(2)** The discharge, dispersal, seepage, migration, release, escape or emission of the "pollutants" is caused directly by such upset, overturn or damage.

**E.** "Diminution in value" means the actual or perceived loss in market value or resale value which results from a direct and accidental "loss".

**F.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**G.** "Insured" means any person or organization qualifying as an insured in the Who is an Insured provision of the applicable coverage.

Except with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or "suit" is brought.

**H.** "Insured contract":

**1.** Means:

**a.** A lease of premises;

**b.** A sidetrack agreement;

**c.** An easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another to pay for "bodily injury" or "property damage" to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement;

**f.** That part of any other contract or agreement entered into, as part of your business, pertaining to the rental or lease, by you or any of your "employees", of any "auto". However, such contract or agreement shall not be considered an "insured contract" to the extent that it obligates you or any of your "employees" to pay for "property damage" to any "auto" rented or leased by you or any of your "employees".

**2.** Does not include that part of any contract or agreement:

**a.** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road beds, tunnel, underpass or crossing; or

**b.** That pertains to the loan, lease or rental of an "auto" to you or any of your "employees", if the "auto" is loaned, leased or rented with a driver; or

**c.** That holds a person or organization engaged in the business of transporting property by "auto" for hire harmless for your use of a covered "auto" over a route or territory that person or organization is authorized to serve by public authority.

**I.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" includes supervisors furnished to you by the labor leasing firm. "Leased worker" does not include a "temporary worker".

**J.** "Loss" means direct and accidental loss or damage.

**K.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**1.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**2.** Vehicles maintained for use solely on or next to premises you own or rent;

**3.** Vehicles that travel on crawler treads;

**4.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

**a.** Power cranes, shovels, loaders, diggers or drills; or

**b.** Road construction or resurfacing equipment such as graders, scrapers or rollers.

**5.** Vehicles not described in Paragraphs **1., 2., 3.,** or **4.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

**a.** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

**b.** Cherry pickers and similar devices used to raise or lower workers.

**6.** Vehicles not described in Paragraphs **1., 2., 3.,** or **4.** above maintained primarily for purposes other than the transportation of persons or cargo. However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**a.** Equipment designed primarily for;

**(1)** Snow removal;

**(2)** Road maintenance, but not construction or resurfacing; or

**(3)** Street cleaning;

**b.** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**c.** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting or well servicing equipment.

However, "mobile equipment" does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**L.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, petroleum, petroleum products and their by-products, and waste. Waste includes materials to be recycled, reconditioned or reclaimed. "Pollutants" include but are not limited to substances which are generally recognized in industry or government to be harmful or toxic to persons, property or the environment regardless of whether injury or damage is caused directly or indirectly by the "pollutants" and whether:

**1.** The "insured" is regularly or otherwise engaged in activities which taint or degrade the environment; or

**2.** The "insured" uses, generates or produces the "pollutant".

**M.** "Property damage" means damage to or loss of use of tangible property.

**N.** "Suit" means a civil proceeding in which:

**1.** Damages because of "bodily injury" or "property damage"; or

**2.** A "covered pollution cost or expense",

to which this insurance applies, are alleged.

"Suit" includes:

**a.** An arbitration proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the "insured" must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the insured submits with our consent.

**O.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**P.** "Trailer" includes semitrailer.

**Q.** "Workplace" means that place and during such hours to which the "employee" sustaining "bodily injury" was assigned by you, or any other person or entity acting on your behalf, to work on the date of the "accident".

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT

## (Broad Form)

**1.** The insurance does not apply:

**A.** Under any Liability Coverage, to "bodily injury" or "property damage":

**(1)** With respect to which an "insured" under the policy is also an "insured" under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an "insured" under any such policy but for its termination upon exhaustion of its limit of liability; or

**(2)** Resulting from the "hazardous properties" of "nuclear material" and with

respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**B.** Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazard-

ous properties" of "nuclear facility" by any person or organization.

C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from the "hazardous properties" of "nuclear material", if:

(1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

(2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an "insured"; or

(3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this Exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

"Hazardous properties" include radioactive, toxic or explosive properties;

"Nuclear material" means "source material", "special nuclear material" or "byproduct material";

"Source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

"Waste" means any waste material (a) containing "byproduct material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

(a) Any "nuclear reactor";

(b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

(c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations:

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"Property damage" includes all forms of radioactive contamination of property.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CHANGES - TOWING AND LABOR

This endorsement modifies insurance provided by the following:

**BUSINESS AUTO COVERAGE FORM**

With respect to the coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by this endorsement.

1.  **SECTION III - PHYSICAL DAMAGE COVERAGE, A. Coverage, 2. Towing** is deleted in its entirety and replaced with:

    2.  **Towing**

        We will pay up to the limit shown in the Declarations for towing and labor costs incurred each time a covered "auto" is disabled. However, the labor must be performed at the place of disablement.

**AA 2009 01 17**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CHANGES - AUDIO, VISUAL AND DATA ELECTRONIC EQUIPMENT COVERAGE

This endorsement modifies insurance provided by the following:

**BUSINESS AUTO COVERAGE FORM**

With respect to the coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by this endorsement.

1. **SECTION III - PHYSICAL DAMAGE COVERAGE, B. Exclusions, 4.** is deleted in its entirety and replaced with:

   4. We will not pay for "loss" to any of the following:

      a. Tapes, records, discs or similar audio, visual or data electronic devices designed for use with audio, visual or data electronic equipment.

      b. Any device designed or used to detect speed-measuring equipment, such as radar or laser detectors, and any jamming apparatus intended to elude or disrupt speed-measuring equipment.

      c. Any electronic equipment, without regard to whether this equipment is permanently installed, that reproduces, receives or transmits audio, visual or data signals.

      d. Any accessories used with the electronic equipment described in Paragraph **c.** above.

      Exclusions **4.c.** and **4.d.** do not apply to equipment designed to be operated solely by use of the power from the "auto's" electrical system that, at the time of "loss", is:

      a. Permanently installed in or upon the covered "auto";

      b. Removable from a housing unit which is permanently installed in or upon the covered "auto";

      c. An integral part of the same unit housing any electronic equipment described in Paragraphs **a.** and **b.** above; or

      d. Necessary for the normal operation of the covered "auto" or the monitoring of the covered "auto's" operating system.

2. **SECTION III - PHYSICAL DAMAGE COVERAGE, C. Limits of Insurance, 1.** is deleted in its entirety and replaced with:

   1. The most we will pay for:

      a. "Loss" to any covered "auto" is the lesser of;

         (1) The actual cash value of the damaged or stolen property as of the time of the "loss"; or

         (2) The cost of repairing or replacing the damaged or stolen property with other property of like kind or quality.

      b. All electronic equipment that reproduces, receives or transmits audio, visual or data signals in any one "loss", is up to $1,000, if at the time of "loss", such electronic equipment is:

         (1) Permanently installed in or upon the covered "auto" in a housing, opening or other location that is not normally used by the "auto" manufacturer for the installation of such equipment;

         (2) Removable from a permanently installed housing unit as described in Paragraph **b.1.** above; or

         (3) An integral part of such equipment as described in Paragraphs **b.(1)** and **b.(2)** above.

3. **AUDIO, VISUAL AND DATA ELECTRONIC EQUIPMENT COVERAGE ADDED LIMITS**

   The sub-limit in Paragraph **1.b.** above is in addition to the Limit of Insurance shown in the Schedule of the Audio, Visual and Data Equipment Coverage endorsement, if purchased.

AA 296 07 12

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED - DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

**BUSINESS AUTO COVERAGE FORM**

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Endorsement Effective: 07-01-2020 | Policy Number: EBA 026 35 19 | |
|---|---|---|
| Named Insured: HENRY MOLDED PRODUCTS INC | | |
| Countersigned by: | | |

(Authorized Representative)

The person or organization named in the following schedule is an "insured" to the extent of their liability for the conduct of another "insured" as provided in **SECTION II – LIABILITY COVERAGE, A. Coverage, 1. Who is an Insured,** Paragraph **c.**

**Schedule**

Additional Insured

UNISOURCE WORLDWIDE INC

Address:

6600 GOVERNORS LAKE PKWY
PEACHTREE CORNERS, GA 30071-1114

**AA 4004 03 06**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED - DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

### BUSINESS AUTO COVERAGE FORM

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Endorsement Effective:<br>07-01-2020 | Policy Number:<br>EBA 026 35 19 | |
|---|---|---|
| Named Insured:<br><br>HENRY MOLDED PRODUCTS INC | | |
| Countersigned by: | | |

(Authorized Representative)

The person or organization named in the following schedule is an "insured" to the extent of their liability for the conduct of another "insured" as provided in **SECTION II - LIABILITY COVERAGE, A. Coverage, 1. Who is an Insured,** Paragraph **c.**

**Schedule**

Additional Insured

UNISOURCE WORLDWIDE

Address:

6600 GOVERNORS LAKE PKWY
PEACHTREE CORNERS, GA 30071-1114

AA 4004 03 06

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# PENNSYLVANIA UNDERINSURED MOTORISTS COVERAGE - NONSTACKED

Throughout this endorsement "you" and "your" refer to the organization(s) and a natural person(s) shown as a Named Insured on this endorsement. "You" and "your" do not refer to any other person(s) or organization(s), including but not limited to agents, employees, servants, members, shareholders or independent contractors of any person or organization shown as a Named Insured on this endorsement.

For a covered "auto" licensed or principally garaged in, or "garage operations" conducted in Pennsylvania, this endorsement modifies insurance provided under the following:

**BUSINESS AUTO COVERAGE FORM**
**GARAGE COVERAGE FORM**
**TRUCKERS COVERAGE FORM**
**MOTOR CARRIER COVERAGE FORM**

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by this endorsement.

This endorsement changes the Coverage Form effective on the effective date of the Coverage Form unless another date is indicated below:

| Endorsement Effective: | Policy Number: |
|---|---|
| 07-01-2020 | EBA 026 35 19 |
| Named Insured: HENRY MOLDED PRODUCTS INC | |

## A. Coverage

1. We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or operator of an "underinsured motor vehicle" as defined in Paragraph **F.4.** because of "bodily injury":

   a. Sustained by the "insured"; and

   b. Caused by an "accident".

   The owner's or operator's liability for these damages must result from the ownership, maintenance or use of an "underinsured motor vehicle". The "insured" shall be required to prove all elements of the "insureds" claim that are necessary to recover from the owner or operator of the "underinsured motor vehicle".

2. We will pay under this endorsement only if **a.** or **b.** below applies:

   a. The limits of insurance under all applicable liability bonds or policies have been exhausted by payment of judgments or settlements; or

   b. A tentative settlement has been made between an "insured" and a person(s) or organization(s) who may be legally responsible for the "accident", or the insurer or legal representative of such person(s) or organization(s) and we:

   (1) Have been given prompt written notice of such settlement; and

   (2) Advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.

3. Any judgment for damages arising out of a "suit" brought without our written consent to both the "suit" and the judgment is not binding on us.

## B. Who is an Insured

The following are "insureds":

1. If any natural persons are specifically listed as a Named Insured on this endorsement, the following persons are "insureds":

   a. Natural persons specially listed as a Named Insured on this endorsement;

   b. "Family members" of natural persons specifically listed as a Named Insured on this endorsement;

**AA 4013 PA 11 12**

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

c. Any natural person, but only for injuries that occur while "occupying" an "auto" for which coverage is provided in the Coverage Form or a temporary substitute for such covered "auto". In such case, the covered "auto" must be out of service because of its break down, repair, servicing, "loss" or destruction; and

d. Any natural person, but only for damages he or she is entitled to recover because of "bodily injury" sustained by an "insured" described in Paragraphs **B.1.a., b.** or **c.**

2. If an entity other than a natural person is listed as a Named Insured on this endorsement, and no natural persons are listed as a Named Insured in the endorsement, the following persons are "insureds":

a. Any natural person, but only for injuries that occur while "occupying" an "auto" for which coverage is provided in the Coverage Form or a temporary substitute for such covered "auto". In such case, the covered "auto" must be out of service because of its break down, repair, servicing, "loss" or destruction.

b. Any natural person is an "insured", but only for damages he or she is entitled to recover because of "bodily injury" sustained by an "insured" described in Paragraph **B.2.a.**

## C. Exclusions

This insurance does not apply to any of the following:

1. Any claim settled with the person(s) or organization(s) legally responsible for the "accident" or the insurer or legal representative of such person(s) or organization(s) without our consent.

   However, this Exclusion (**C.1.**) does not apply if such settlement does not adversely affect our rights of recovery under this coverage.

2. The direct or indirect benefit of any insurer or self-insurer under any personal injury protection benefits, disability benefits, pension statutes or similar law except workers' compensation law.

3. "Bodily injury" suffered by any person while operating or "occupying" a "motor vehicle" without a reasonable belief that he or she is entitled to do so. Under no circumstances will a person whose license has been suspended, revoked, or never issued be held to have a reasonable belief that he or she is entitled to operate a "motor vehicle".

4. Punitive or exemplary damages.

5. "Bodily injury" sustained by an "insured" while the "insured" is operating or "occupying" a "motor vehicle" owned by, furnished to, or available for the regular use of a Named Insured or, if the Named Insured is a natural person, a spouse or a resident relative of such Named Insured, if the "motor vehicle" is not specifically identified in the Coverage Form or is not a newly acquired or replacement "motor vehicle" covered under the terms of the Coverage Form.

6. "Bodily injury" sustained by:

a. An "insured" while the "insured" is operating, "occupying", or when struck by a "motor vehicle" owned by, furnished to, or available for the regular use of a Named Insured that is not a covered "auto" for Underinsured Motorists Coverage under this endorsement.

b. Any "family member" while operating, "occupying", or when struck by a "motor vehicle" owned by furnished to, or available for the regular use of that "family member" that is not a covered "auto" for Underinsured Motorists Coverage under this endorsement.

c. Any "family member" while operating, "occupying", or when struck by any vehicle owned by, furnished to, or available for the regular use of that "family member" that is insured for Underinsured Motorists Coverage on a primary basis under any other Coverage Form or policy.

## D. Limit of Insurance

1. Regardless of the number of policies, covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for all damages including damages claimed by any person or organization for care, loss of services or death due to and arising out of any one "accident" is the limit of **Underinsured Motorists Coverage** shown in the Declarations.

2. No one will be entitled to receive duplicate payments for the same elements of "loss" under this endorsement and any Liability Coverage Form.

We will not make a duplicate payment under this endorsement for any element of "loss" for which payment has been made by or for anyone who is legally liable.

We will not pay for any element of "loss" if a person is entitled to receive payment, including medical payments made under any statute, for the same element of "loss" under any personal injury protection benefits, disability benefits, pension statutes, or similar law except workers' compensation law.

**E. Changes in Conditions**

The **Conditions** are changed for **Pennsylvania Underinsured Motorists Coverage - Nonstacked** as follows:

1. **Duties in the Event of Accident, Claim, Suit or Loss** is changed by adding the following:

   a. You or any other involved "insured" must promptly send us copies of the legal papers if a "suit" is brought;

   b. You and any other involved "insured" must cooperate with us in the investigation, settlement or defense of the claim or "suit". Cooperation includes, but is not limited to, identifying all parties who may be responsible for the "accident" and all insurers who may be obligated to provide coverage; and

   c. A person seeking Underinsured Motorists Coverage must also promptly notify us in writing of a tentative settlement between the "insured" and a person(s) or organization(s) who may be legally responsible for the "accident", or the insurer or legal representative of such person(s) or organization(s), and allow us 30 days to advance payment to that "insured" in an amount equal to the tentative settlement to preserve our rights against the person(s) or organization(s) who may be legally responsible for the "accident", or the insurer or legal representative of such person(s) or organization(s).

2. **Legal Action Against Us** condition is replaced by the following:

   **LEGAL ACTION AGAINST US**

   a. No lawsuit or action whatsoever or any proceeding in arbitration shall be brought against us for the recovery of any claim under the provisions of the Underinsured Motorists Coverage of this Coverage Form unless the "in-

sured" has satisfied all of the things that "insured" is required to do under the terms and conditions of this endorsement

   b. Any claim for "suit" for Underinsured Motorists Coverage must be brought within four (4) years after the date on which the "insured" either settles with, or receives a judgment against, the owner or operator of the "underinsured motor vehicle".

   c. Paragraph **2.b.** above does not apply to an "insured" if, within four (4) years after the date on which the "insured" either settles with, or receives a judgment against, the owner or operator of the "underinsured motor vehicle":

      (1) We or the "insured" have made a written demand for arbitration in accordance with the provisions of the endorsement; or

      (2) The "insured" has filed an action for "bodily injury" against the owner or operator of the "underinsured motor vehicle" and such action is:

         (a) Filed in a court of competent jurisdiction; and

         (b) Not barred by the applicable state statute of limitations.

   In the event that the four year time limitation identified in this condition does not apply, the applicable state statute of limitations will govern legal action against us under this Coverage Form.

3. **Transfer of Rights of Recovery Against Others to Us** is changed by adding the following:

   If we make any payment due to an "accident" involving an "underinsured motor vehicle" and the "insured" recovers from another party in a separate claim or "suit", the "insured" shall hold the proceeds in trust for us and pay us back the amount we have paid less reasonable attorney's fees, costs and expenses incurred by the "insured" to the extent such payment duplicates any amount we have paid under this coverage.

   Our rights do not apply under this provision with respect to Underinsured Motorists Coverage if we:

   a. Have been given prompt written notice of a tentative settlement between an "insured" and a person(s) or organization(s) who may be legally re-

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

sponsible for the "accident", or the insurer or legal representative of such person(s) or organization(s); and

b. Fail to advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.

If we advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification:

a. That payment will be separate from any amount the "insured" is entitled to recover under the provisions of Underinsured Motorists Coverage; and

b. We also have a right to recover the advanced payment.

4. With respect to an "underinsured motor vehicle", the **Other Insurance Condition** in the Business Auto and Garage Coverage Forms and **Other Insurance Primary and Excess Insurance Provisions** in the Truckers and Motor Carrier Coverage Forms are replaced by the following:

a. If there is other applicable insurance available under more than one Coverage Form or policy, the following priorities of recovery apply:

First    The Underinsured Motorists Coverage applicable to the vehicle the "insured" was "occupying" at the time of the "accident".

Second   The Coverage Form or policy affording Underinsured Motorists Coverage to the "insured" as a Named Insured or "family member".

b. Where there is no applicable insurance available under the first priority, the maximum recovery under all Coverage Forms or policies in the second priority may equal but not exceed the highest applicable limit for any one vehicle under any one Coverage Form or policy affording coverage to an individual Named Insured or "family member".

c. Where there is applicable insurance available under the first priority:

(1) The Limit of Insurance applicable to the vehicle the "insured" was "occupying" under the Coverage Form or policy in the first

priority shall first be exhausted; and

(2) The maximum recovery under all Coverage Forms or policies in the second priority may equal but not exceed the highest applicable limit for any one vehicle under any one Coverage Form or policy affording coverage to an individual Named Insured or "family member".

d. If two or more Coverage Forms or policies have equal priority:

(1) The insurer against whom the claim is first made shall process and pay the claim as if wholly responsible for all insurers with equal priority; and

(2) The insurer thereafter is entitled to recover pro rata contribution from any other insurer on the same level of priority for the benefits paid and the costs of processing the claim.

5. The following Condition is added:

**ARBITRATION**

a. If we and an "insured" do not agree:

(1) Whether that person is legally entitled to recover damages from a party responsible for the "accident"; or

(2) As to the amount of damages, that may be recovered;

the matter may be settled by arbitration. However, disputes concerning coverage under this endorsement may not be arbitrated.

The "insured" and we must mutually agree to arbitrate the disagreements. If the "insured" and we do not agree to arbitrate, then the disagreement will be resolved in a court having competent jurisdiction.

If arbitration is used, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days as to the third arbitrator, either may request that selection be made by a judge of a court having jurisdiction. Each party will:

(1) Pay the expense it incurs; and

(2) Bear the expenses of the third arbitrator equally.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**b.** Arbitration shall be conducted in accordance with the Pennsylvania Uniform Arbitration Act. Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to arbitration procedures and evidence will apply. A decision agreed to by two of the arbitrators will be binding as to:

**(1)** Whether the "insured" is legally entitled to recover damages from a party responsible for the "accident"; and

**(2)** The amount of damages.

## F. Additional Definitions

As used in this endorsement:

**1.** "Family member" means a natural person who is related to and is a resident of the same household as a natural person shown as a Named Insured on this endorsement. Such relation may be by blood, marriage, or adoption, and may include a ward or foster child.

**2.** "Motor vehicle" means a self-propelled vehicle designed for use and principally used on public roads, including an automobile, truck, semi-tractor, motorcycle and bus. "Motor vehicle" also includes a motor home, provided the motor home is not stationary and is not being used as a temporary or permanent residence or office. "Motor vehicle" does not include a trolley, streetcar, "trailer", railroad engine, railroad car, motorized bicycle, golf cart, off-road recreational vehicle, snowmobile, fork lift, aircraft, watercraft, construction equipment, farm tractor or other vehicle designed and principally used for agricultural purposes, mobile home, vehicle traveling on treads or rails, or any similar vehicle.

**3.** "Occupying" means in, upon, getting in, on, out or off.

**4.** "Underinsured motor vehicle" means a land "motor vehicle" or "trailer" for which the sum of the limits of all liability bonds or policies that apply at the time of an "accident" do not provide at least the amount an "insured" is legally entitled to recover as damages.

However, an "underinsured motor vehicle" does not include any "motor vehicle":

**a.** Owned by or furnished or available for your regular use or that of any "family member" or any other "insured".

**b.** For which liability coverage is afforded under this Coverage Form.

**c.** Designed for use mainly on public roads while not on public roads.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

AA 4013 PA 11 12

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PENNSYLVANIA UNINSURED MOTORISTS COVERAGE - NONSTACKED

Throughout this endorsement "you" and "your" refer to the organization(s) and a natural person(s) shown as a Named Insured on this endorsement. "You" and "your" do not refer to any other person(s) or organization(s), including but not limited to agents, employees, servants, members, shareholders or independent contractors of any person or organization shown as a Named Insured on this endorsement.

For a covered "auto" licensed or principally garaged in, or "garage operations" conducted in Pennsylvania, this endorsement modifies insurance provided under the following:

**BUSINESS AUTO COVERAGE FORM**
**GARAGE COVERAGE FORM**
**TRUCKERS COVERAGE FORM**
**MOTOR CARRIER COVERAGE FORM**

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by this endorsement.

This endorsement changes the Coverage Form effective on the effective date of the Coverage Form unless another date is indicated below:

| Endorsement Effective: | Policy Number: | |
|---|---|---|
| 07-01-2020 | EBA 026 35 19 | |
| Named Insured: | | |
| HENRY MOLDED PRODUCTS INC | | |

## A. Coverage

1. We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or operator of:

   a. An "uninsured motor vehicle" as defined in Paragraph **F.4.a.** and **b.** because of "bodily injury":

      1) Sustained by the "insured", and

      2) Caused by an "accident".

   b. An "uninsured motor vehicle" as defined in Paragraph **F.4.c.** because of "bodily injury" sustained by an "insured".

   The owner's or operator's liability for these damages must result from the ownership, maintenance or use of an "uninsured motor vehicle". The "insured" shall be required to prove all elements of the "insureds" claim that are necessary to recover from the owner or operator of the "uninsured motor vehicle".

2. Any judgment for damages arising out of a "suit" brought without our written consent to both the "suit" and the judgment is not binding on us.

3. We will pay under this endorsement only if the limits of insurance under all applicable liability bonds or policies have been exhausted by judgments or settlements.

## B. Who is an Insured

The following are "insureds":

1. If any natural persons are specifically listed as a Named Insured on this endorsement, the following persons are "insureds":

   a. Natural persons specially listed as a Named Insured on this endorsement;

   b. "Family members" of natural persons specifically listed as a Named Insured on this endorsement;

   c. Any natural person, but only for injuries that occur while "occupying" an "auto" for which coverage is provided in the Coverage Form or a temporary substitute for such covered "auto". In such case, the covered "auto" must be out of service because of its break down, repair, servicing, "loss" or destruction; and

   d. Any natural person, but only for damages he or she is entitled to recover because of "bodily injury" sustained by an "insured" described in Paragraphs **B.1.a., b.** or **c.**

AA 4014 PA 11 12

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Page 1 of 4

2. If an entity other than a natural person is listed as a Named Insured on this endorsement, and no natural persons are listed as a Named Insured in the endorsement, the following persons are "insureds":

   a. Any natural person, but only for injuries that occur while "occupying" an "auto" for which coverage is provided in the Coverage Form or a temporary substitute for such covered "auto". In such case, the covered "auto" must be out of service because of its break down, repair, servicing, "loss" or destruction.

   b. Any natural person is an "insured", but only for damages he or she is entitled to recover because of "bodily injury" sustained by an "insured" described in Paragraph **B.2.a.**

## C. Exclusions

This insurance does not apply to any of the following:

1. Any claim settled with the person(s) or organization(s) legally responsible for the "accident" or the insurer or legal representative of such person(s) or organization(s) without our consent.

   However, this Exclusion (**C.1.**) does not apply if such settlement does not adversely affect our rights of recovery under this coverage.

2. The direct or indirect benefit of any insurer or self-insurer under any personal injury protection benefits, disability benefits, pension statutes, or similar law except workers' compensation law.

3. "Bodily injury" suffered by any person while operating or "occupying" a "motor vehicle" without a reasonable belief that he or she is entitled to do so.

4. Punitive or exemplary damages.

5. "Bodily injury" sustained by an "insured" while the "insured" is operating or "occupying" a "motor vehicle" owned by, furnished to, or available for the regular use of a Named Insured or, if the Named Insured is a natural person, a spouse or a resident relative of such Named Insured, if the "motor vehicle" is not specifically identified in the Coverage Form or is not a newly acquired or replacement "motor vehicle" covered under the terms of the Coverage Form.

## D. Limit of Insurance

1. Regardless of the number of policies, covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for all damages including damages claimed by any person or organization for care, loss of services or death due to and arising out of any one "accident" is the limit of **Uninsured Motorists Coverage** shown in the Declarations.

2. No one will be entitled to receive duplicate payments for the same elements of "loss" under this endorsement and any Liability Coverage Form.

   We will not make a duplicate payment under this endorsement for any element of "loss" for which payment has been made by or for anyone who is legally liable.

   We will not pay for any element of "loss" if a person is entitled to receive payment, including medical payments made under any statute, for the same element of "loss" under any personal injury protection benefits, disability benefits, pension statutes, or similar law except workers' compensation law.

3. Any amount payable for damages under this coverage shall be reduced by:

   (a) The amounts paid or payable by or for those liable for "bodily injury" to anyone we protect.

   (b) The amount of liability protection paid or payable to anyone we protect.

   (c) However, any amount payable under this coverage shall not be reduced by any sums paid under any workers' compensation law.

## E. Changes in Conditions

The **Conditions** are changed for **Pennsylvania Uninsured Motorists Coverage – Nonstacked** as follows:

1. **Duties in the Event of Accident, Claim, Suit or Loss** is changed by adding the following:

   a. You or any other involved "insured" must promptly notify the police if a hit-and-run driver is involved;

   b. You or any other involved "insured" must promptly send us copies of the legal papers if a "suit" is brought; and

   c. You and any other involved "insured" must cooperate with us in the investigation, settlement or defense of the claim or "suit". Cooperation includes, but is not limited to, identifying all parties who may be responsible for the "accident" and all insurers who may be obligated to provide coverage.

2. **Legal Action Against Us** condition is replaced by the following:

**LEGAL ACTION AGAINST US**

a. No lawsuit or action whatsoever or any proceeding in arbitration shall be brought against us for the recovery of any claim under the provisions of the Uninsured Motorists Coverage of this Coverage Form unless the "insured" has satisfied all of the things that "insured" is required to do under the terms and conditions of this endorsement.

b. Any claim for "suit" for Uninsured Motorists Coverage must be brought within four (4) years after the date on which the "insured" knows of the uninsured status of the owner or operator of the "uninsured motor vehicle". However, this Paragraph **b.** does not apply to an "insured" if, within four (4) years after the date on which the "insured" knows of the uninsured status of the owner or operator of the "uninsured motor vehicle", we or the "insured" have made a written demand for arbitration in accordance with the provisions of this endorsement.

3. **Transfer of Rights of Recovery Against Others to Us** is changed by adding the following:

If we make any payment due to an "accident" involving an "uninsured motor vehicle" and the "insured" recovers from another party in a separate claim or "suit", the "insured" shall hold the proceeds in trust for us and pay us back the amount we have paid less reasonable attorneys' fees, costs and expenses incurred by the "insured" to the extent such payment duplicates any amount we have paid under this coverage.

4. With respect to an "uninsured motor vehicle", the **Other Insurance Condition** in the Business Auto and Garage Coverage Forms and **Other Insurance Primary and Excess Insurance Provisions** in the Truckers and Motor Carrier Coverage Forms are replaced by the following:

a. If there is other applicable insurance available under more than one Coverage Form or policy, the following priorities of recovery apply:

First    The Uninsured Motorists Coverage applicable to the vehicle the "insured" was "occupying" at the time of the "accident".

Second   The Coverage Form or policy affording Uninsured Motorists Coverage to the "insured" as a Named Insured or "family member".

b. Where there is no applicable insurance available under the first priority, the maximum recovery under all Coverage Forms or policies in the second priority may equal but not exceed the highest applicable limit for any one vehicle under any one Coverage Form or policy affording coverage to an individual Named Insured or "family member".

c. Where there is applicable insurance available under the first priority:

(1) The Limit of Insurance applicable to the vehicle the "insured" was "occupying" under the Coverage Form or policy in the first priority shall first be exhausted; and

(2) The maximum recovery under all Coverage Forms or policies in the second priority may equal but not exceed the highest applicable limit for any one vehicle under any one Coverage Form or policy affording coverage to an individual Named Insured or "family member".

d. If two or more Coverage Forms or policies have equal priority:

(1) The insurer against whom the claim is first made shall process and pay the claim as if wholly responsible for all insurers with equal priority; and

(2) The insurer thereafter is entitled to recover pro rata contribution from any other insurer on the same level of priority for the benefits paid and the costs of processing the claim.

5. **Two or More Coverage Forms or Policies Issued By Us** does not apply.

6. The following Condition is added:

**ARBITRATION**

a. If we and an "insured" do not agree:

(1) Whether that person is legally entitled to recover damages from a party responsible for the "accident"; or

(2) As to the amount of damages, that may be recovered;

the matter may be settled by arbitration. However, disputes concerning coverage under this endorsement may not be arbitrated.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

The "insured" and we must mutually agree to arbitrate the disagreements. If the "insured" and we do not agree to arbitrate, then the disagreement will be resolved in a court having competent jurisdiction.

If arbitration is used, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days as to the third arbitrator, either may request that selection be made by a judge of a court having jurisdiction. Each party will:

(1) Pay the expense it incurs; and

(2) Bear the expenses of the third arbitrator equally.

b. Arbitration shall be conducted in accordance with the Pennsylvania Uniform Arbitration Act. Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to arbitration procedures and evidence will apply. A decision agreed to by two of the arbitrators will be binding as to:

(1) Whether the "insured" is entitled to recover damages from a party responsible for the "accident; and

(2) The amount of damages.

**F. Additional Definitions**

As used in this endorsement:

1. "Family member" means a natural person who is related to and is a resident of the same household as a natural person shown as a Named Insured on this endorsement. Such relation may be by blood, marriage, or adoption, and may include a ward or foster child.

2. "Motor vehicle" means a self-propelled vehicle designed for use and principally used on public roads, including an automobile, truck, semi-tractor, motorcycle and bus. "Motor vehicle" also includes a motor home, provided the motor home is not stationary and is not being used as a temporary or permanent residence or office. "Motor vehicle" does not include a trolley, streetcar, "trailer", railroad engine, railroad car, motorized bicycle, golf cart, off-road recreational vehicle, snowmobile, fork lift, aircraft, watercraft, construction equipment, farm tractor or other vehicle designed and principally used for agricul-

tural purposes, mobile home, vehicle traveling on treads or rails, or any similar vehicle.

3. "Occupying" means in, upon, getting in, on, out or off.

4. "Uninsured motor vehicle" means a land "motor vehicle" or "trailer":

a. For which no liability bond or policy applies at the time of an "accident".

b. For which an insuring or bonding company:

(1) Denies coverage;

(2) Is or becomes insolvent; or

(3) Is or becomes involved in insolvency proceedings.

c. That is a hit-and-run vehicle and neither the operator nor owner can be identified. The vehicle or "trailer" must either:

(1) Hit an "insured", a covered "auto" or a vehicle an "insured" is "occupying"; or

(2) Cause an "accident" resulting in "bodily injury" to an "insured" without hitting an "insured", a covered "auto" or a vehicle an "insured" is "occupying".

We will only accept competent evidence which may include the testimony, under oath, of a person making claim under this or similar coverage.

However, an "uninsured motor vehicle" does not include any "motor vehicle":

a. Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer who is or who becomes insolvent and cannot provide the amounts required by that motor vehicle law.

b. Owned by or furnished or available for your regular use or that of any "family member" or any other "insured".

c. For which liability coverage is afforded under this Coverage Form.

d. Designed for use mainly off public roads while not on public roads.

AA 4014 PA 11 12

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Page 4 of 4

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LESSOR - ADDITIONAL INSURED AND LOSS PAYEE

This endorsement modifies insurance provided under the following:

**BUSINESS AUTO COVERAGE FORM
BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM**

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Endorsement Effective: 07-01-2020 | Policy Number: EBA 026 35 19 | |
|---|---|---|
| Named Insured: HENRY MOLDED PRODUCTS INC | | |
| Countersigned by: | | |

(Authorized Representative)

**SCHEDULE**

| Insurance Company   THE CINCINNATI INSURANCE COMPANY<br>Policy Number   EBA 026 35 19<br>Effective Date   07-01-2020 | |
|---|---|
| Expiration Date   07-01-2021 | |
| Named Insured<br><br>Address | |
| Additional Insured (Lessor)<br>Address<br>GM FINANCIAL<br>PO BOX 1617<br>MINNEAPOLIS, MN 55440-1617 | |
| Designation or Description of "Leased Autos"<br>2020   CADILLAC XT5                        1GYKNDRS9LZ137017 | |

| Coverages | Limit of Insurance | |
|---|---|---|
| Liability | $REFER TO AA4183        Each "Accident" | |
| Comprehensive | ACTUAL CASH VALUE OR COST OF REPAIR WHICHEVER IS LESS; MINUS: $REFER TO AA4183        For Each Covered "Leased Auto" | |
| Collision | ACTUAL CASH VALUE OR COST OF REPAIR WHICHEVER IS LESS; MINUS: $REFER TO AA4183        For Each Covered "Leased Auto" | |
| Specified Causes of Loss | ACTUAL CASH VALUE OR COST OF REPAIR WHICHEVER IS LESS; MINUS: $        For Each Covered "Leased Auto" | |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

## A. Coverage

1. Any "leased auto" designated or described in the Schedule will be considered a covered "auto" you own and not a covered "auto" you hire or borrow.

2. For a "leased auto" designated or described in the Schedule, **Who is an Insured** is changed to include as an "insured" the lessor named in the Schedule. However, the lessor is an "insured" only for "bodily injury" or "property damage" resulting from the acts or omissions by:

   a. You;

   b. Any of your "employees" or agents; or

   c. Any person, except the lessor or any "employee" or agent of the lessor, operating a "leased auto" with the permission of any of the above.

3. The coverages provided under this endorsement apply to any "leased auto" described in the Schedule until the expiration date shown in the Schedule, or when the lessor or his or her agent takes possession of the "leased auto", whichever occurs first.

## B. Loss Payable Clause

1. We will pay, as interest may appear, you and the lessor named in this endorsement for "loss" to a "leased auto".

2. The insurance covers the interest of the lessor unless the "loss" results from fraudulent acts or omissions on your part.

3. If we make any payment to the lessor, we will obtain his or her rights against any other party.

## C. Cancellation

1. If we cancel the policy, we will mail notice to the lessor in accordance with the Cancellation Common Policy Condition.

2. If you cancel the policy, we will mail notice to the lessor.

3. Cancellation ends this agreement.

## D. The lessor is not liable for payment of your premiums.

## E. Additional Definition

As used in this endorsement:

"Leased auto" means an "auto" leased or rented to you, including any substitute, replacement or extra "auto" needed to meet seasonal or other needs, under a leasing or rental agreement that requires you to provide direct primary insurance for the lessor.

AA 4177 03 06

Includes copyrighted material of ISO Properties, Inc., with its permission.

## SUPPLEMENTARY SCHEDULE FOR BUSINESS AUTO - ITEMS FOUR, FIVE, AND SIX

Attached to and forming a part of:
Form AA 505 (Business Auto Coverage Part)

EBA 026 35 19

**NUMBER**

### ITEM FOUR SCHEDULE OF HIRED OR

### BORROWED COVERED AUTO COVERAGE AND PREMIUMS.

**LIABILITY COVERAGE—RATING BASIS, COST OF HIRE**

| STATE | ESTIMATED COST OF HIRE FOR EACH STATE | RATE PER EACH $100 COST OF HIRE | PREMIUM |
|---|---|---|---|
| | | | |
| | | TOTAL PREMIUM | |

Cost of hire means the total amount you incur for the hire of "autos" you don't own (not including "autos" you borrow or rent from your partners or employees or their family members). Cost of hire does not include charges for services performed by motor carriers of property or passengers.

### PHYSICAL DAMAGE COVERAGE

| COVERAGES | LIMIT OF INSURANCE THE MOST WE WILL PAY DEDUCTIBLE | ESTIMATED ANNUAL COST OF HIRE | RATE PER EACH $100 ANNUAL COST OF HIRE | MINIMUM PREMIUM | PREMIUM |
|---|---|---|---|---|---|
| COMPREHENSIVE | ACTUAL CASH VALUE, COST OF REPAIRS OR $50,000 WHICHEVER IS LESS MINUS $100 DED. FOR EACH COVERED AUTO, FOR ALL LOSS EXCEPT FIRE OR LIGHTNING | | | | INCL |
| SPECIFIED CAUSES OF LOSS | ACTUAL CASH VALUE, COST OF REPAIRS OR $ WHICHEVER IS LESS MINUS $25 DED. FOR EACH COVERED AUTO, FOR LOSS CAUSED BY MISCHIEF OR VANDALISM | | | | |
| COLLISION | ACTUAL CASH VALUE, COST OF REPAIRS OR $50,000 WHICHEVER IS LESS MINUS $500 DED. FOR EACH COVERED AUTO | | | | INCL |
| | | | TOTAL PREMIUM | | INCL |

### ITEM FIVE SCHEDULE FOR NONOWNERSHIP LIABILITY

| Named Insured's Business | Rating Basis | Number | Premium |
|---|---|---|---|
| Other than a Social Service Agency | Number of Employees | | |
| | Number of Partners | | |
| Social Service Agency | Number of Employees | | |
| | Number of Volunteers | | |
| | | TOTAL PREMIUM | |

Contains copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, 1985

AA 4231 08 08

**ITEM SIX SCHEDULE FOR GROSS RECEIPTS OR MILEAGE BASIS—LIABILITY COVERAGE—PUBLIC AUTO OR LEASING RENTAL CONCERNS**

| Estimated Yearly | RATES | | | PREMIUMS | | |
|---|---|---|---|---|---|---|
| | ☐ Per $100 of Gross Receipts ☐ Per Mile | | | | | |
| ☐ Gross Receipts | | | | | | |
| ☐ Mileage | LIABILITY | AUTO MEDICAL COVERAGE | LIABILITY PAYMENTS | AUTO MEDICAL COVERAGE PAYMENTS | | |
| | | | ˋ | | | |
| | | TOTAL PREMIUMS | | | | |
| | | MINIMUM PREMIUMS | | | | |

When used as a premium basis:

FOR PUBLIC AUTOS

Gross Receipts means the total amount to which you are entitled for transporting passengers, mail or merchandise during the policy period regardless of whether you or any other carrier originate the transportation. Gross Receipts does not include:

**A.** Amounts you pay to railroads, steamship lines, airlines and other motor carriers operating under their own ICC or PUC permits.

**B.** Advertising Revenue.

**C.** Taxes which you collect as a separate item and remit directly to a governmental division.

**D.** C.O.D. collections for cost of mail or merchandise including collection fees.

Mileage means the total live and dead mileage of all revenue producing units operated during the policy period.

FOR RENTAL OR LEASING CONCERNS

Gross receipts means the total amount to which you are entitled for the leasing or rental of "autos" during the policy period and includes taxes except those taxes which you collect as a separate item and remit directly to a governmental division.

Mileage means the total of all live and dead mileage developed by all the autos you leased or rented to others during the policy period.

Contains copyrighted material of Insurance Services Office, Inc., with its permission. Copyright, Insurance Services Office, 1985

AA 4231 08 08

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# OFFICE OF FOREIGN ASSETS CONTROL (OFAC) COMPLIANCE ENDORSEMENT

This endorsement modifies insurance provided under the following:

**BUSINESS AUTO COVERAGE FORM**
**GARAGE COVERAGE FORM**

**SECTION IV - BUSINESS AUTO CONDITIONS, B. General Conditions** of the **BUSINESS AUTO COVERAGE FORM** and **SECTION V - GARAGE CONDITIONS, B. General Conditions** of the **GARAGE COVERAGE FORM** are amended to include the following:

**Office of Foreign Assets Control (OFAC) Compliance**

Whenever insurance coverage provided by this policy would be in violation of any United States economic or trade sanctions, such insurance coverage shall be null and void.

**AA 4263 04 10**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PENNSYLVANIA CHANGES - BUSINESS AUTO COVERAGE FORM

This endorsement modifies insurance provided under the following:

**BUSINESS AUTO COVERAGE FORM**

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. Changes In Covered Autos Liability Coverage**

Paragraph **2.a. Supplementary Payments** is amended to include the following:

Prejudgment interest awarded against the "insured" on the part of the judgment we pay. Any prejudgment interest awarded against the "insured" is subject to the applicable Pennsylvania Rules of Civil Procedure.

**B. Changes In Conditions**

1. Paragraph **2.b.(5)** of the **Duties In The Event Of Accident, Claim, Suit Or Loss** Condition is deleted in its entirety and replaced by the following:

    **(5)** After we show good cause, submit to examination at our expense, by physicians of our choice.

2. Paragraph **5. Transfer Of Rights Of Recovery Against Others To Us** Condition is amended to include the following:

    If we make any payment due to an "accident" and the "insured" recovers from another party in a separate claim or "suit", the "insured" shall hold the proceeds in trust for us and pay us back the amount we have paid less reasonable attorneys' fees, costs and expenses incurred by the "insured" to the extent such payment duplicates any amount we have paid under this coverage.

3. Paragraph **5. Other Insurance** Condition is amended to include the following:

    If you are a motor vehicle dealer as defined in the Pennsylvania Board of Vehicles Act, 63 Pa. Stat. Ann. § 818.2, then:

    **a.** For any "auto" you own, which is loaned to a customer as a temporary substitute for an "auto" insured under

a "customer's private passenger automobile insurance policy" which is out of use because it is being transported, serviced, repaired or inspected, Covered Autos Liability, but only with respect to damages because of "bodily injury" and Physical Damage Coverage provided by this Coverage Form shall be excess in the event of an "accident" or "loss".

**b.** For any "auto" insured under your "customer's private passenger automobile insurance policy", while it is being transported, serviced, repaired or inspected by you or your "employee":

**(1)** Covered Autos Liability, but only with respect to damages because of "bodily injury";

**(2)** Comprehensive Coverage;

**(3)** Specified Cause Of Loss Coverage; and/or

**(4)** Collision Coverage;

provided by this Coverage Form shall be primary in the event of an "accident" or "loss".

4. Paragraph **B. General Conditions** is amended to include the following:

    **9. Constitutionality Clause**

    The premium for, and the coverages of, this Coverage Form have been established in reliance upon the provisions of the Pennsylvania Motor Vehicle Financial Responsibility Law. In the event a court, from which there is no appeal, declares or enters a judgment, the effect of which is to render the provisions of such statute invalid or unenforceable in whole or in part, we shall have the right to recompute the premium payable for the Coverage Form and void or amend the provi-

sions of the Coverage Form, subject to the approval of the Insurance Commissioner.

### 10. Conformity Clause

If you are a motor vehicle dealer as defined in the Pennsylvania Board of Vehicles Act, 63 Pa. Stat. Ann. § 818.2, then whenever an "auto" insured under your "customer's private passenger automobile insurance policy" is being transported, serviced, repaired or inspected by you or your "employee":

(1) The provisions of the:

    (a) Covered Autos Liability, but only with respect to damages because of "bodily injury";

    (b) Comprehensive Coverage;

    (c) Specified Cause Of Loss Coverage; and/or

    (d) Collision Coverage;

provided by this Coverage Form are hereby amended to conform to 40 Pa. Stat. Ann. § 991.2007a; and

(2) Pursuant to 40 Pa. Stat. Ann. § 991.2007a, the Limits Of Insurance provided in the Schedule or in the Declarations are hereby increased as needed to an amount equal to the:

    (a) Applicable limit(s);

    (b) Actual cash value; and/or

    (c) Amount necessary to repair or replace the property with other property of like kind and quality;

set forth in the "customer's private passenger automobile insurance policy".

### C. Changes In Definitions

For motor vehicle dealers as defined in the Pennsylvania Board of Vehicles Act, 63 Pa. Stat. Ann. § 818.2, the following definition is added:

"Customer's private passenger automobile insurance policy" means a private passenger automobile insurance policy that:

1. Is currently in effect; and

2. Lists an "auto" owned by your customer or a "customer's auto" in the Declarations.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

AA 4337 PA 08 16

Page 2 of 2

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYEE HIRED AUTOS

This endorsement modifies insurance provided under the following:

**BUSINESS AUTO COVERAGE FORM**
**BUSINESS AUTO PHYSICAL DAMAGE**
**GARAGE COVERAGE FORM**
**MOTOR CARRIER COVERAGE FORM**
**TRUCKERS COVERAGE FORM**

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. Changes in Liability Coverage**

The following is added to the **Who is an Insured** Provision:

An "employee" of yours is an "insured" while operating an "auto" hired or rented under a contract or agreement in that "employee's" name, with your permission, while performing duties related to the conduct of your business.

**B. Changes in General Conditions**

Paragraph **5.b.** of the **Other Insurance** Condition in the Business Auto, Business Auto Physical Damage and Garage Coverage Forms, Paragraph **5.d.** of the **Other Insurance - Primary and Excess Insurance Provisions** Condition in the Truckers Coverage Form and Paragraph **5.f.** of the **Other Insurance - Primary and Excess Insurance Provisions** in the Motor Carrier Coverage Form are replaced by the following:

For Hired Auto Physical Damage Coverage, the following are deemed to be covered "autos" you own:

**1.** Any covered "auto" you lease, hire, rent or borrow; and

**2.** Any covered "auto" hired or rented by your "employee" under a contract in that individual "employee's" name, with your permission, while performing duties related to the conduct of your business.

However, any "auto" that is leased, hired, rented or borrowed with a driver is not a covered "auto".

**CA 20 54 10 01**                           © ISO Properties, Inc., 2000

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PENNSYLVANIA BASIC FIRST PARTY BENEFIT

For a covered "auto" licensed or principally garaged in, or "garage operations" conducted in, Pennsylvania, this endorsement modifies insurance provided under the following:

**BUSINESS AUTO COVERAGE FORM**
**GARAGE COVERAGE FORM**
**TRUCKERS COVERAGE FORM**

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Endorsement effective<br>07-01-2020 | Policy No.<br>EBA 026 35 19 |
|---|---|
| Named Insured<br><br>HENRY MOLDED PRODUCTS INC | |
| Countersigned by<br><br> | |

(Authorized Representative)

## SCHEDULE

| Benefits | Limit of Liability<br>(per insured) |
|---|---|
| Medical Expense Benefits | Up to $5,000 |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

### A. COVERAGE

We will pay the Basic First Party Benefits in accordance with the "Act" to or for an "insured" who sustains "bodily injury" caused by an "accident" arising out of the maintenance or use of an "auto."

### BENEFITS

Subject to the limit shown in the Schedule or Declarations, Basic First Party Benefits consists of Medical Expense Benefits. These benefits consist of reasonable and necessary medical expenses incurred for an "insured's":

1. care;

2. recovery; or

3. rehabilitation.

This includes remedial care and treatment rendered in accordance with a recognized religious method of healing.

Medical expenses will be paid if incurred within 18 months from the date of the "accident" causing "bodily injury." If within 18 months from the date of the "accident" causing "bodily injury" it is ascertainable with reasonable medical probability that further expenses may be incurred as a result of the "bodily injury," medical expenses will be paid without limitation as to the time such further expenses are incurred.

### B. WHO IS AN INSURED

1. You.

2. If you are an individual, any "family member."

3. Any person while "occupying" a covered "auto."

4. Any person while not "occupying" an "auto" if injured as a result of an "accident" in Pennsylvania involving a covered "auto."

If a covered "auto" is parked and unoccupied, it is not an "auto" involved in an "accident" unless it was parked in a manner as to create an unreasonable risk of injury.

### C. EXCLUSIONS

We will not pay First Party Benefits for "bodily injury":

1. Sustained by any person injured while intentionally causing or attempting to cause injury to himself or herself or any other person.

2. Sustained by any person while committing a felony.

3. Sustained by any person while seeking to elude lawful apprehension or arrest by a law enforcement official.

4. Sustained by any person while maintaining or using an "auto" knowingly converted by that person. However, this exclusion does not apply to:

   a. You; or

CA 22 37 12 92          Copyright, Insurance Services Office, Inc., 1992          **Page 1 of 3**

Case 2:24-cv-00700-PWD Document 89-21 Filed 04/24/24 Page 260 of 520

b. Any "family member".

5. Sustained by any person who, at the time of the "accident":

   a. Is the owner of one or more currently registered "autos" and none of those "autos" is covered by the financial responsibility required by the "Act"; or

   b. Is "occupying" an "auto" owned by that person for which the financial responsibility required by the "Act" is not in effect.

6. Sustained by any person maintaining or using an "auto" while located for use as a residence or premises.

7. Sustained by a pedestrian if the "accident" occurs outside of Pennsylvania. This exclusion does not apply to:

   a. You; or

   b. Any "family member".

8. Sustained by any person while "occupying":

   a. A recreational vehicle designed for use off public roads; or

   b. A motorcycle, moped or similar type vehicle.

9. Caused by or as a consequence of:

   a. Discharge of a nuclear weapon (even if accidental);

   b. War (declared or undeclared);

   c. Civil war;

   d. Insurrection; or

   e. Rebellion or revolution.

10. From or as a consequence of the following whether controlled or uncontrolled or however caused:

    a. Nuclear reaction;

    b. Radiation; or

    c. Radioactive contamination.

## D. LIMIT OF INSURANCE

1. Regardless of the number of covered "autos", premiums paid, claims made, "autos" involved in the "accident" or insurers providing First Party Benefits, the most we will pay to or for an "insured" as the result of any one "accident" is the limit shown in the Schedule or in the Declarations.

2. Any amount payable under First Party Benefits shall be excess over any sums paid, payable or required to be provided under any workers' compensation law or similar law.

## E. CHANGES IN CONDITIONS

The CONDITIONS are changed for FIRST PARTY BENEFITS as follows:

1. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US does not apply.

2. The following CONDITIONS are added:

## NON-DUPLICATION OF BENEFITS

No person may recover duplicate benefits for the same expenses or loss under this or any other similar automobile coverage including self-insurance.

## PRIORITIES OF POLICIES

We will pay First Party Benefits in accordance with the order of priority set forth by the "Act". We will not pay if there is another insurer at at higher level of priority. The "First" category listed below is the highest level of priority and the "Fourth" category listed below is the lowest level of priority. The priority order is:

First    The insurer providing benefits to the "insured" as a named insured.

Second   The insurer providing benefits to the "insured" as a family member who is not a named insured under another policy providing coverage under the "Act".

Third    The insurer of the "auto" which the "insured" is "occupying" at the time of the "accident".

Fourth   The insurer providing benefits on any "auto" involved in the "accident" if the "insured" is:

   a. Not "occupying" an "auto"; and

   b. Not provided First Party Benefits under any other policy.

If two or more policies have equal priority within the highest applicable number in the priority order:

1. The insurer against which the claim is first made shall process and pay the claim as if wholly responsible;

2. If we are the insurer against whom the claim is first made, our payment to or for an "insured" will not exceed the applicable limit shown in the Schedule or Declarations;

3. The insurer thereafter is entitled to recover pro rata contribution from any other insurer for the benefits paid and the costs of processing the claim. If contribution is sought among insurers under the Fourth priority, proration shall be based on the number of involved motor vehicles; and

4. The maximum recovery under all policies shall not exceed the amount payable under the policy with the highest dollar limits of benefits.

## F. ADDITIONAL DEFINITIONS

1. The definition of "auto" in the DEFINITIONS Section is replaced by the following:

   "Auto" means a self-propelled motor vehicle operated or designed for use on public roads. However, "auto" does not include a vehicle operated:

   a. By muscular power; or

   b. On rails or tracks.

2. The following are added to the DEFINITIONS Section:

    a. The "Act" means the Pennsylvania Motor Vehicle Financial Responsibility Law.

    b. "Family member" means a resident of your household who is:

        (1) Related to you by blood, marriage or adoption; or

        (2) A minor in your custody or in the custody of any other "family member".

    c. "Occupying" means in, upon, getting in, on, out or off.

---

CA 22 37 12 92        Copyright, Insurance Services Office, Inc., 1992        Page 3 of 3

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PENNSYLVANIA ADDED AND COMBINATION

# FIRST PARTY BENEFITS ENDORSEMENT

This endorsement modifies insurance provided under the following:

**PENNSYLVANIA BASIC FIRST PARTY BENEFITS**

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Endorsement effective 07-01-2020 | Policy No. EBA 026 35 19 |
|---|---|
| Named Insured HENRY MOLDED PRODUCTS INC | |
| Countersigned by | |

(Authorized Representative)

BASIC FIRST PARTY BENEFITS is changed as follows:

## SCHEDULE

As indicated below, Added First Party Benefits or Combination First Party Benefits apply instead of Basic First Party Benefits. The limits of liability shown for the benefits selected below replace the limits of liability shown in the Schedule for Basic First Party Benefits.

| Benefits | Limit of Liability (per insured) | |
|---|---|---|
| ☒ **Added First Party Benefits** Medical Expense Benefits Work Loss Benefits | Up to $ __100,000__ Up to $ __5,000__ subject to a maximum of $ __1,000__ per month. | |
| Funeral Expense Benefits Accidental Death Benefits | Up to $ _____ $ _____ | |
| ☐ **Combination First Party Benefits** Maximum Total Limit for All Benefits Subject to the following individual limits: | Up to $ _____ | |
| Medical Expense Benefits | No specific dollar amount | |
| Work Loss Benefits | No specific dollar amount | |
| Funeral Expense Benefits | Up to $2,500 | |
| Accidental Death Benefits | $ _____ | |

CA 22 38 07 90      Copyright, Insurance Services Office, Inc., 1990      Page 1 of 2

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

## A. COVERAGE

We will pay Added First Party Benefits or Combination First Party Benefits in accordance with the "Act" up to the limits stated in the Schedule or Declarations to or for an "insured" who sustains "bodily injury" caused by an "accident" and arising out of the maintenance or use of an "auto." We will only pay Combination First Party Benefits for expenses or loss incurred within 3 years from the date of the "accident."

In addition to the Medical Expense Benefits described in the Basic First Party Benefits endorsement, Added First Party Benefits and Combination First Party Benefits also consist of:

1.   Work Loss Benefits consisting of:

a.   loss of income. Up to 80% of the gross income actually lost by an "insured."

b.   reasonable expenses actually incurred to reduce loss of income by hiring:

(1) special help, thereby enabling the "insured" to work; or

(2) a substitute to perform the work a self-employed "insured" would have performed.

However, Work Loss Benefits do not include:

a.   loss or expected income for any period following the death of an "insured;" or

b.   expenses incurred for services performed following the death of an "insured;" or

c.   any loss of income, or expenses incurred for services performed, during the first 5 working days the "insured" did not work after the "accident" because of the "bodily injury."

2.   Funeral Expense Benefits. Actual expenses incurred for an "insured's" funeral or burial if "bodily injury" resulting from the "accident" causes his or her death within 24 months from the date of the "accident."

3.   Accidental Death Benefits. A death benefit paid if "bodily injury" resulting from an "ac-

cident" causes the death of you or any "family member" within 24 months from the date of the "accident."

## B. EXCLUSIONS

In addition to the exclusions in the Basic First Party Benefits endorsement, the following exclusion also applies.

We will not pay:

Accidental Death Benefits on behalf of any person who intentionally caused or attempted to cause "bodily injury" to himself, herself or any other person.

## C. LIMIT OF INSURANCE

1.   Regardless of the number of covered "autos," premiums paid, claims made, "autos" involved in the accident or insurers providing First Party Benefits, the most we will pay to or for an "insured" as the result of any one "accident" is the limit shown in the Schedule or the Declarations. Combination First Party Benefits are subject to a maximum total single limit of liability with individual limits for specific benefits as shown in the Schedule or Declarations.

2.   If Combination First Party Benefits are afforded, we will make available at least the minimum limit required by the "Act" for Basic First Party Benefits. This provision will not change our total limit of liability.

## D. CHANGES IN CONDITIONS

In addition to the CONDITIONS applicable to Basic First Party Benefits, the following CONDITION also applies:

### PAYMENT OF ACCIDENTAL DEATH BENEFITS

The Accidental Death Benefit under this policy will be paid to the executor or administrator of the deceased "insured's" estate. If there is no executor or administrator, benefits shall be paid to:

1.   The deceased "insured's" surviving spouse; or

2.   If there is no surviving spouse, the deceased "insured's" surviving children; or

3.   If there is no surviving spouse or surviving children, the deceased "insured's" estate.

Case 2:4-02-G07-0500 PW Doc Document 302121 Filed 04/24/24 Page 264 of 520

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# PENNSYLVANIA-NAMED INDIVIDUALS-BROADENED FIRST PARTY BENEFITS

This endorsement modifies insurance provided under the following:

**BUSINESS AUTO COVERAGE FORM**
**GARAGE COVERAGE FORM**
**TRUCKERS COVERAGE FORM**

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Endorsement effective 07-01-2020 | Policy No. EBA 026 35 19 | |
|---|---|---|
| Named Insured<br><br>HENRY MOLDED PRODUCTS INC | | |
| Countersigned by<br><br> | | |
| (Authorized Representative) | | |

| Name of Individual | Premium | |
|---|---|---|
| DOUGLAS HENRY<br>JUDY WILLIAMS HENRY | INCL<br>INCL | |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

The individual named in the Schedule of this endorsement shall be considered a "named insured" for first party benefits provided under this coverage.

**CA 22 54 01 87**       Copyright, Insurance Services Office, Inc., 1986

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# DRIVE OTHER CAR COVERAGE - BROADENED COVERAGE FOR NAMED INDIVIDUALS

This endorsement modifies insurance provided under the following:

**BUSINESS AUTO COVERAGE FORM**
**GARAGE COVERAGE FORM**

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Endorsement Effective: 07-01-2020 | Policy Number: EBA 026 35 19 |
|---|---|
| Named Insured: HENRY MOLDED PRODUCTS INC | |
| Countersigned by: | |

(Authorized Representative)

## SCHEDULE

| Name of Individual |
|---|
| DOUGLAS HENRY<br>JUDY WILLIAMS HENRY |

| Liability | | Auto Medical Payments | |
|---|---|---|---|
| Limit<br>REFER TO AA4183 | Premium | Limit | Premium |

| Name of Individual |
|---|
| DOUGLAS HENRY<br>JUDY WILLIAMS HENRY |

| Uninsured Motorists | | Underinsured Motorists | | Physical Damage | |
|---|---|---|---|---|---|
| | | | | Comp. | Coll. |
| Limit<br>REFER TO AA4183 | Premium | Limit | Premium | | |

Note - When uninsured motorists is provided at limits higher than the basic limits required by a financial responsibility law, underinsured motorists is included, unless otherwise noted. If underinsured motorists coverage is provided as a separate coverage, make appropriate entry in the Schedule above.

(Information required to complete this Schedule, if not shown above, will be shown in the Declarations.)

AA 247 03 06    Includes copyrighted material of ISO Properties, Inc., with its permission.    Page 1 of 2

**A.** This endorsement changes only those coverages where a premium is shown in the Schedule.

**B. Changes in Liability Coverage**

**1.** Any "auto" you don't own, hire, or borrow is a covered "auto" for **Liability Coverage** while being used by any individual named in the Schedule or by his or her spouse while a resident of the same household except:

  **a.** Any "auto" owned by that individual or by any member of his or her household.

  **b.** Any "auto" used by that individual or his or her spouse while working in a business of selling, servicing, repairing or parking "autos".

**2.** The following is added to **Who is an Insured:**

Any individual named in the Schedule and his or her spouse, while a resident of the same household, are "insureds" while using any covered "auto" described in Paragraph **B.1.** of this endorsement.

**C. Changes in Auto Medical Payments and Uninsured and Underinsured Motorists Coverages**

The following is added to **Who is an Insured:**

Any individual named in the Schedule and his or her "family members" are "insureds" while "occupying" or while a pedestrian when being struck by any "auto" you don't own except:

Any "auto" owned by that individual or by any "family member".

**D. Changes in Physical Damage Coverage**

Any private passenger type "auto" you don't own, hire, or borrow is a covered "auto" while in the care, custody or control of any individual named in the Schedule or his or her spouse while a resident of the same household except:

**1.** Any "auto" owned by that individual or by any member of his or her household.

**2.** Any "auto" used by that individual or his or her spouse while working in a business of selling, servicing, repairing or parking "autos".

**E. Additional Definition**

As used in this endorsement:

"Family member" means a person related to the individual named in the Schedule by blood, marriage or adoption who is a resident of the individual's household, including a ward or foster child.

Includes copyrighted material of ISO Properties, Inc., with its permission.

AA 247 03 06

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CinciPlus®
# BUSINESS AUTO XC®
# (EXPANDED COVERAGE)
# ENDORSEMENT

This endorsement modifies insurance provided by the following:

**BUSINESS AUTO COVERAGE FORM**

With respect to the coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by this endorsement.

**A. Who is an Insured - Amended**

**SECTION II - LIABILITY COVERAGE, A. Coverage, 1. Who is an Insured** is amended by adding the following:

The following are "insureds":

1. Any subsidiary which is a legally incorporated entity of which you own a financial interest of more than 50% of the voting stock on the effective date of this coverage form.

   However, the insurance afforded by this provision does not apply to any subsidiary that is an "insured" under any other automobile liability policy, or would be an "insured" under such policy but for termination of such policy or the exhaustion of such policy's limits of insurance.

2. Any organization that is newly acquired or formed by you and over which you maintain majority ownership.

   The insurance provided by this provision:

   a. Is effective on the date of acquisition or formation, and is afforded for 180 days after such date;

   b. Does not apply to "bodily injury" or "property damage" resulting from an "accident" that occurred before you acquired or formed the organization;

   c. Does not apply to any newly acquired or formed organization that is a joint venture or partnership; and

   d. Does not apply to an insured under any other automobile liability policy, or would be an insured under such a policy but for the termination of such

policy or the exhaustion of such policy's limits of insurance.

3. Any of your "employees" while using a covered "auto" in your business or your personal affairs, provided you do not own, hire or borrow that "auto".

**B. Liability Coverage Extensions - Supplementary Payments - Higher Limits**

**SECTION II - LIABILITY COVERAGE, A. Coverage, 2. Coverage Extensions, a. Supplementary Payments** is amended by:

1. Replacing the $2,000 Limit of Insurance for bail bonds with $4,000 in (2); and

2. Replacing the $250 Limit of Insurance for reasonable expenses with $500 in (4).

**C. Amended Fellow Employee Exclusion**

**SECTION II - LIABILITY COVERAGE, B. Exclusions, 5. Fellow Employee** is modified as follows:

Exclusion **5. Fellow Employee** is deleted.

**D. Hired Auto - Physical Damage**

If hired "autos" are covered "autos" for Liability Coverage, then Comprehensive and Collision Physical Damage Coverages as provided under **SECTION III - PHYSICAL DAMAGE COVERAGE** of this Coverage Part are extended to "autos" you hire, subject to the following:

1. The most we will pay for "loss" to any hired "auto" is $35,000 or the actual cash value or cost to repair or replace, whichever is the least, minus a deductible.

2. The deductible will be equal to the largest deductible applicable to any owned "auto"

AA 265 01 16

Includes copyrighted material of ISO Properties, Inc., with its permission.

Page 1 of 3

for that coverage, or $1,000, whichever is less.

3. Hired Auto - Physical Damage coverage is excess over any other collectible insurance.

4. Subject to the above limit, deductible, and excess provisions we will provide coverage equal to the broadest coverage applicable to any covered "auto" you insured under this policy.

Coverage includes loss of use of that hired auto, provided it results from an "accident" for which you are legally liable and as a result of which a monetary loss is sustained by the leasing or rental concern. The most we will pay for any one "accident" is $1,000.

If a limit for Hired Auto - Physical Damage is shown in the Schedule, then that limit replaces, and is not added to, the $35,000 limit indicated above.

E. **Rental Reimbursement**

   **SECTION III - PHYSICAL DAMAGE** is amended by adding the following:

   1. We will pay for rental reimbursement expenses incurred by you for the rental of an "auto" because of a "loss" to a covered "auto". Payment applies in addition to the otherwise applicable amount of each coverage you have on a covered "auto". No deductible applies to this coverage.

   2. We will pay only for those expenses incurred during the policy period beginning 24 hours after the "loss" and ending, regardless of the policy's expiration, with the lesser of the following number of days:

      a. The number of days reasonably required to repair the covered "auto". If "loss" is caused by theft, this number of days is added to the number of days it takes to locate the covered "auto" and return it to you; or

      b. 30 days.

   3. Our payment is limited to the lesser of the following amounts:

      a. Necessary and actual expenses incurred; or

      b. $40 per day.

   4. This coverage does not apply while there are spare or reserve "autos" available to you for your operations.

   5. We will pay under this coverage only that amount of your rental reimbursement expenses which is not already provided for

under **SECTION III - PHYSICAL DAMAGE COVERAGE, A. Coverage, 4. Coverage Extensions.**

F. **Transportation Expense - Higher Limits**

   **SECTION III - PHYSICAL DAMAGE COVERAGE, A. Coverage, 4. Coverage Extensions** is amended by replacing $20 per day with $50 per day, and $600 maximum with $1,500 maximum in Extension a. Transportation Expenses.

G. **Airbag Coverage**

   **SECTION III - PHYSICAL DAMAGE COVERAGE, B. Exclusions, 3.a.** is amended by adding the following:

   However, the mechanical and electrical breakdown portion of this exclusion does not apply to the accidental discharge of an airbag. This coverage for airbags is excess over any other collectible insurance or warranty.

H. **Loan or Lease Gap Coverage**

   1. **SECTION III - PHYSICAL DAMAGE COVERAGE, C. Limit of Insurance** is deleted in its entirety and replaced by the following, but only for private passenger type "autos" with an original loan or lease, and only in the event of a "total loss" to such a private passenger type "auto":

      a. The most we will pay for "loss" in any one "accident" is the greater of:

         (1) The amount due under the terms of the lease or loan to which your covered private passenger type "auto" is subject, but will not include:

            (a) Overdue lease or loan payments;

            (b) Financial penalties imposed under the lease due to high mileage, excessive use or abnormal wear and tear;

            (c) Security deposits not refunded by the lessor;

            (d) Costs for extended warranties, Credit Life Insurance, Health, Accident or Disability Insurance purchased with the loan or lease; and

            (e) Carry-over balances from previous loans or leases, or

         (2) Actual cash value of the stolen or damaged property.

      b. An adjustment for depreciation and physical condition will be made in de-

Includes copyrighted material of ISO Properties, Inc., with its permission.

termining actual cash value at the time of "loss".

2.  **SECTION V - DEFINITIONS** is amended by adding the following, but only for the purposes of this **Loan or Lease Gap Coverage:**

    "Total loss" means a "loss" in which the cost of repairs plus the salvage value exceeds the actual cash value.

**I.  Glass Repair - Waiver of Deductible**

**SECTION III - PHYSICAL DAMAGE COVERAGE, D. Deductible** is amended by adding the following:

No deductible applies to glass damage if the glass is repaired in a manner acceptable to us rather than replaced.

**J.  Duties in the Event of an Accident, Claim, Suit or Loss - Amended**

**SECTION IV - BUSINESS AUTO CONDITIONS, A. Loss Conditions, 2. Duties in the Event of Accident, Claim, Suit or Loss, a.** is amended by adding the following:

This condition applies only when the "accident" or "loss" is known to:

1.  You, if you are an individual;

2.  A partner, if you are a partnership;

3.  An executive officer or insurance manager, if you are a corporation; or

4.  A member or manager, if you are a limited liability company.

**K.  Unintentional Failure to Disclose Hazards**

**SECTION IV - BUSINESS AUTO CONDITIONS, B. General Conditions** is amended by adding the following:

If you unintentionally fail to disclose any hazards existing on the effective date of this Coverage Form, we will not deny coverage under this Coverage Form because of such failure.

**L.  Mental Anguish Resulting from Bodily Injury**

**SECTION V - DEFINITIONS, C. "Bodily injury"** is deleted in its entirety and replaced by the following:

"Bodily injury" means bodily injury, sickness or disease sustained by a person, including mental anguish and death sustained by the same person that results from such bodily injury, sickness or disease. "Bodily injury" does not include mental anguish or death that does not result from bodily injury, sickness or disease.

Includes copyrighted material of ISO Properties, Inc., with its permission.

AA 265 01 16

# THE CINCINNATI INSURANCE COMPANY

## COMMERCIAL UMBRELLA LIABILITY COVERAGE
## PART DECLARATIONS

Previous Policy Number  **EPP0263519**

| Attached to and forming part of POLICY NUMBER   **EPP 026 35 19** | Effective Date:  **07-01-2020** |
|---|---|

**NAMED INSURED** is the same as it appears in the Common Policy Declarations unless another entry is made here.

**LIMITS OF INSURANCE**

$      1 ,000,000 Each Occurrence Limit          $          1 ,000,000 Aggregate Limit

**ADVANCE PREMIUM** $          1,871

Applicable to Premium, if box is checked:
☒ Subject to Annual Adjustment
☐ Subject to Audit (see Premium Computation Endorsement for Rating Basis)

### SCHEDULE OF UNDERLYING INSURANCE

| Insurer, Policy Number & Period: | Underlying Insurance: | Underlying Limits: |
|---|---|---|
| **(a) STARNET INSURANCE CO.**<br>992000001203116<br>04-01-2020 TO 04-01-2021 | Employer's Liability | Bodily Injury by Accident:<br>$          100,000   Each Accident<br>Bodily Injury by Disease:<br>$          100,000   Each Employee<br>Bodily Injury by Disease:<br>$          500,000   Policy Limit |
| **(b) CINCINNATI INS. CO.**<br>EPP 026 35 19<br>07-01-2020 TO 07-01-2023 | ☒ Commercial General Liability Including:<br>☒ Products-Completed Operations Coverage<br><br>☐ Cemetery Professional<br>☐ Druggist Professional<br>☐ Funeral Service Provider<br>☐ Pedorthists Professional<br><br>or<br><br>☐ Business Liability Including:<br>☐ Funeral Service Provider<br>☐ Druggist Professional | Bodily Injury and Property Damage Liability:<br>$          1,000,000 Each Occurrence Limit<br>$          2,000,000 General Aggregate Limit<br>$          2,000,000 Products-Completed Operations Aggregate Limit<br><br><br>Personal and Advertising Injury Limit:<br>$          1,000,000 Any One Person or Organization |
| **(c) CINCINNATI INS. CO.**<br>EBA 026 35 19<br>07-01-2020 TO 07-01-2023 | Automobile Liability Including:<br>☐ Owned Autos<br>☐ Non-Owned Autos<br>☐ Hired Autos<br>☒ Any Auto | Bodily Injury Liability Limit:<br>$                    Each Person<br>$                    Each Occurrence<br>Property Damage Liability Limit:<br>$                    Each Occurrence<br>or<br>Bodily Injury Liability and / or Property Damage Liability or Both Combined Limit:<br>$          1,000,000 Each Occurrence |

USC513 05 10                              EPP 026 35 19                              Page 1 of 2

| (d) | | Professional | $ | | |
|-----|--|--------------|---|--|--|
| | | | $ | | Aggregate |

| (e) CINCINNATI INS. CO.<br>EPP 026 35 19<br>07-01-2020 TO 07-01-2023 | Employee Benefit Liability | $ | 1,000,000 | Each Employee Limit |
|---|---|---|---|---|
| | | $ | 3,000,000 | Aggregate Limit |

| (f) | | Liquor Liability | $ | | Each Common Cause Limit |
|-----|--|------------------|---|--|-------------------------|
| | | | $ | | Aggregate Limit |

**Other**

---

**FORMS AND / OR ENDORSEMENTS APPLICABLE TO THIS COVERAGE PART:**

```
US101UM    12/04   COMMERCIAL UMBRELLA - TABLE OF CONTENTS
US302      12/04   POLLUTANT EXCLUSION - OTHER THAN AUTO
US3093     05/14   EXCLUSION - ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL
                   INFORMATION AND DATA-RELATED LIABILITY - WITH LIMITED BODILY INJURY
                   EXCEPTION
US352      12/04   PERSONAL PROPERTY CARE, CUSTODY OR CONTROL EXCLUSION
US4062     11/05   MOBILE EQUIPMENT SUBJECT TO MOTOR VEHICLE INSURANCE LAWS -
                   LIMITATION
US407      12/04   EMPLOYEE BENEFIT LIABILITY
US4098     04/10   OFFICE OF FOREIGN ASSETS CONTROL (OFAC) COMPLIANCE ENDORSEMENT
US450PA    01/96   PENNSYLVANIA NOTICE
```

---

USC513 05 10

EPP 026 35 19

# COMMERCIAL UMBRELLA - TABLE OF CONTENTS

**Coverage Part Provision:**       **Begins on Page:**

Preamble........................................................................................................................3

SECTION I - COVERAGE:..............................................................................................3

  A. Insuring Agreement...................................................................................................3

  B. Exclusions:.................................................................................................................4

     1. Asbestos.................................................................................................................4
     2. Breach of Contract, Failure to Perform, Wrong Description and Violation of Another's Rights.................................................................................4
     3. Contractual Liability..............................................................................................4
     4. Damage to Impaired Property or Property Not Physically Injured ......................4
     5. Damage to Property...............................................................................................4
     6. Damage to Your Product .......................................................................................4
     7. Damage to Your Work ...........................................................................................4
     8. Distribution of Material in Violation of Statutes ..................................................5
     9. Electronic Chatrooms or Bulletin Boards............................................................5
     10. Electronic Data ...................................................................................................5
     11. Employer's Liability Limitation............................................................................5
     12. Employment-Related Practices ...........................................................................5
     13. Expected or Intended Injury................................................................................5
     14. Falsity, Prior Publication, Criminal Act and Media and Internet Type Businesses..........6
     15. Infringement of Copyright, Patent, Trademark or Trade Secret .........................6
     16. Pollutant - Auto ...................................................................................................6
     17. Pollutant - Other Than Auto ...............................................................................7
     18. Recall of Products, Work or Impaired Property...................................................9
     19. Unauthorized Use of Another's Name or Product...............................................9
     20. Uninsured / Underinsured Motorist.....................................................................9
     21. War.......................................................................................................................9
     22. Workers' Compensation ......................................................................................9

  C. Defense and Supplementary Payments....................................................................9

SECTION II - WHO IS AN INSURED.............................................................................10

SECTION III - LIMITS OF INSURANCE ........................................................................11

SECTION IV - CONDITIONS: .......................................................................................12

     1. Appeals ...............................................................................................................12
     2. Audit....................................................................................................................13
     3. Bankruptcy..........................................................................................................13
     4. Duties in the Event of Occurrence, Claim or Suit...............................................13
     5. First Named Insured ...........................................................................................13
     6. Legal Action Against Us and Loss Payments .....................................................13
     7. Liberalization ......................................................................................................14
     8. Maintenance of Underlying Insurance.................................................................14
     9. Other Insurance ..................................................................................................14
     10. Premium.............................................................................................................14
     11. Representations...................................................................................................14
     12. Separation of Insureds .......................................................................................14
     13. Transfer of Rights of Recovery Against Others to Us ........................................15
     14. When We Do Not Renew.....................................................................................15

SECTION V - DEFINITIONS: ........................................................................................15

     1. "Advertisement"..................................................................................................15
     2. "Authorized representative".................................................................................15
     3. "Auto" ..................................................................................................................15
     4. "Bodily injury".....................................................................................................16
     5. "Coverage term"..................................................................................................16
     6. "Coverage territory".............................................................................................16

| Coverage Part Provision: | Begins on Page: |
|---|---|

7. "Electronic data"................................................................................................................16
8. "Employee"......................................................................................................................16
9. "Executive officer".............................................................................................................16
10. "Hostile fire".....................................................................................................................16
11. "Impaired property"...........................................................................................................16
12. "Insured contract".............................................................................................................16
13. "Leased worker"...............................................................................................................17
14. "Loading or unloading".......................................................................................................17
15. "Mobile equipment"...........................................................................................................18
16. "Occurrence"....................................................................................................................18
17. "Personal and advertising injury".........................................................................................18
18. "Pollutants".....................................................................................................................19
19. "Products-completed operations hazard"...............................................................................19
20. "Property damage"............................................................................................................19
21. "Subsidiary"....................................................................................................................19
22. "Suit".............................................................................................................................19
23. "Temporary worker"..........................................................................................................20
24. "Ultimate net loss"............................................................................................................20
25. "Underlying insurance".......................................................................................................20
26. "Underlying limit".............................................................................................................20
27. "Workplace"....................................................................................................................20
28. "Your product".................................................................................................................20
29. "Your work".....................................................................................................................20

**NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT**............................................................21

# COMMERCIAL UMBRELLA LIABILITY COVERAGE FORM

Various provisions in this Coverage Part restrict this insurance. Read the entire Coverage Part carefully to determine rights, duties and what is and is not covered.

Throughout this Coverage Part the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this Coverage Part. The words "we", "us" and "our" refer to the Company providing this insurance.

The word "insured" means any person or organization qualifying as such under **SECTION II - WHO IS AN INSURED.**

Other words and phrases that appear in quotation marks have special meaning. Refer to **SECTION V - DEFINITIONS.**

## SECTION I - COVERAGE

**A. Insuring Agreement**

1. We will pay on behalf of the insured the "ultimate net loss" which the insured is legally obligated to pay as damages for "bodily injury", "personal and advertising injury" or "property damage" to which this insurance applies:

   a. Which is in excess of the "underlying insurance"; or

   b. Which is either excluded or not insured by "underlying insurance".

2. This insurance applies to "bodily injury", "personal and advertising injury" or "property damage" only if:

   a. The "bodily injury", "personal and advertising injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

   b. The "bodily injury" or "property damage" occurs during the policy period shown in the Declarations; or

   c. The "personal and advertising injury" results from an "occurrence" that takes place during the policy period shown in the Declarations; and

   d. Prior to the "coverage term" in which "bodily injury" or "property damage" occurs, or a "personal and advertising injury" offense is committed, you did not know, per Paragraph **5.** below, that the "bodily injury" or "property damage" had occurred or had begun to occur, in whole or in part, or

that the "personal and advertising injury" offense had been committed or had begun to be committed, in whole or in part.

3. "Bodily injury" or "property damage" which:

   a. Occurs during the "coverage term"; and

   b. Was not, prior to the "coverage term", known by you, per Paragraph **5.** below, to have occurred;

   includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the "coverage term" in which it first became known by you.

4. "Personal and advertising injury" caused by an offense which:

   a. Was committed during the "coverage term"; and

   b. Was not, prior to the "coverage term", known by you, per Paragraph **5.** below, to have been committed;

   includes any continuation, change or resumption of that "personal and advertising injury" offense after the end of the "coverage term" in which it first became known by you.

5. You will be deemed to know that "bodily injury" or "property damage" has occurred, or that a "personal and advertising injury" offense has been committed at the earliest time when any "authorized representative":

   a. Reports all, or any part, of the "bodily injury", "personal and advertising injury" or "property damage" to us or any other insurer;

   b. Receives a written or verbal demand or claim for damages because of the "bodily injury", "personal and advertising injury" or "property damage";

   c. First observes, or reasonably should have first observed, the "bodily injury" or "property damage", or the offense that caused the "personal and advertising injury";

   d. Becomes aware, or reasonably should have become aware, by any means, other than as described in **c.** above, that "bodily injury" or "property

Includes copyrighted material of ISO Properties, Inc., with its permission.

damage" had occurred or had begun to occur, or that the "personal and advertising injury" offense had been committed or had begun to be committed; or

e. Becomes aware, or reasonably should have become aware, of a condition from which "bodily injury", "personal and advertising injury" or "property damage" is substantially certain to occur.

6. The amount we will pay for damages is limited as described in **SECTION III - LIMITS OF INSURANCE.**

No other obligation or liability to pay sums or perform acts or services is covered, unless expressly provided for under **SECTION I - COVERAGE, C. Defense and Supplementary Payments.**

## B. Exclusions

This insurance does not apply to:

1. **Asbestos**

   Any liability arising out of, attributable to or any way related to asbestos in any form or transmitted in any manner.

2. **Breach of Contract, Failure to Perform, Wrong Description and Violation of Another's Rights**

   "Personal and advertising injury":

   a. Arising out of breach of contract, except an implied contract to use another's advertising idea in your "advertisement";

   b. Arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement";

   c. Arising out of the wrong description of the price of goods, products or services stated in your "advertisement"; or

   d. Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

3. **Contractual Liability**

   Any liability for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for "bodily injury", "personal and advertising injury" or "property damage":

a. That the insured would have in the absence of the contract or agreement; or

b. Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury", "personal and advertising injury" or "property damage" occurs subsequent to the execution of the contract or agreement.

4. **Damage to Impaired Property or Property Not Physically Injured**

   "Property damage" to "impaired property" or property that has not been physically injured, arising out of:

   a. A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

   b. A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

   This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

5. **Damage to Property**

   "Property damage" to property owned by any insured, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property.

6. **Damage to Your Product**

   "Property damage" to "your product" arising out of it or any part of it.

7. **Damage to Your Work**

   "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

   This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

8. **Distribution of Material in Violation of Statutes**

   Any liability arising directly or indirectly out of any action or omission that violates or is alleged to violate:

US 101 UM 12 04

Includes copyrighted material of ISO Properties, Inc., with its permission.

Page 4 of 22

a. The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

b. The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

c. Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

**9. Electronic Chatrooms or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**10. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate "electronic data".

**11. Employer's Liability Limitation**

Any liability arising from any injury to:

a. An "employee" of the insured sustained in the "workplace";

b. An "employee" of the insured arising out of the performance of duties related to the conduct of the insured's business; or

c. The spouse, child, parent, brother or sister of that "employee" as a consequence of **a.** or **b.** above.

This exclusion applies:

a. Whether the insured may be liable as an employer or in any other capacity; and

b. To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply when such insurance is provided by valid and collectible "underlying insurance" listed in the Schedule of Underlying Insurance, or would have been provided by such listed "underlying insurance" except for the exhaustion by payment of claims of its limits of insurance, and then only for such hazards for which coverage is provided by such "underlying insurance", unless otherwise excluded by this Coverage Part.

**12. Employment-Related Practices**

Any liability arising from any injury to:

a. A person arising out of any:

(1) Refusal to employ that person;

(2) Termination of that person's employment; or

(3) Other employment-related practices, policies, acts or omissions including but not limited to coercion, criticism, demotion, evaluation, failure to promote, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

b. The spouse, child, parent, brother or sister of that person as a consequence of any injury to that person at whom any of the employment-related practices described in Paragraphs **(1)**, **(2)**, or **(3)** above is directed.

This exclusion applies:

a. Whether the insured may be liable as an employer or in any other capacity; and

b. To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**13. Expected or Intended Injury**

"Bodily injury" or "property damage" which may reasonably be expected to result from the intentional or criminal acts of the insured or which is in fact expected or intended by the insured, even if the injury or damage is of a different degree or type than actually intended or expected.

However, this exclusion does not apply to:

a. "Bodily injury" resulting from the use of reasonable force to protect persons or property; or

b. "Bodily injury" or "property damage" resulting from the use of reasonable force to prevent or eliminate danger in the operation of "autos" or watercraft.

**14. Falsity, Prior Publication, Criminal Act and Media and Internet Type Businesses**

"Personal and advertising injury":

Includes copyrighted material of ISO Properties, Inc., with its permission.

**US 101 UM 12 04**

a. Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

b. Arising out of oral or written publication of material whose first publication took place before the later of the following:

(1) The inception of this Coverage Part; or

(2) The "coverage term" in which insurance coverage is sought;

c. Arising out of a criminal act committed by or at the direction of the insured; or

d. Committed by an insured whose business is:

(1) Advertising, broadcasting, publishing or telecasting;

(2) Designing or determining content of web-sites for others; or

(3) An Internet search, access, content or service provider.

However, Paragraph **d.** does not apply to Paragraphs **17.a., b., c., d.** and **i.** of "personal and advertising injury" under **SECTION V - DEFINITIONS.**

For the purposes of Paragraph **d.**, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

15. **Infringement of Copyright, Patent, Trademark or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement in your "advertisement", of copyright, trade dress or slogan.

16. **Pollutant - Auto**

a. "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release, emission or escape of "pollutants":

(1) That are, or that are contained in any property that is:

(a) Being transported or towed by, handled, or handled for movement into, onto or from, an "auto" that an insured owns, hires, borrows, rents, leases, or that is operated on their behalf in any other fashion;

(b) Otherwise in the course of transit by or on behalf of the insured; or

(c) Being stored, disposed of, treated or processed in or upon an "auto" that an insured owns, hires, borrows, rents, leases, or that is operated on their behalf in any other fashion;

(2) Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the insured for movement into or onto an "auto" that an insured owns, hires, borrows, rents, leases, or that is operated on their behalf in any other fashion; or

(3) After the "pollutants" or any property in which the "pollutants" are contained are moved from an "auto" that an insured owns, hires, borrows, rents, leases, or that is operated on their behalf in any other fashion to the place where they are finally delivered, disposed of or abandoned by the insured.

Paragraph (1) above does not apply to "bodily injury" or "property damage" arising from fuels, lubricants, or other operating fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of an "auto" that an insured owns, hires, borrows, rents, leases, or that is operated on their behalf in any other fashion or its parts, if:

(a) The "pollutants" escape, seep, migrate, or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

Includes copyrighted material of ISO Properties, Inc., with its permission.

US 101 UM 12 04

**(b)** The "bodily injury" or "property damage" does not arise out of the operation of any equipment listed in Paragraphs **f.(2)** and **(3)** of the definition of "mobile equipment".

However, this exception to Paragraph **(1)** does not apply if the fuels, lubricants, or other operating fluids, exhaust gases or other similar "pollutants" are intentionally discharged, dispersed, emitted or released.

Paragraphs **(2)** and **(3)** above do not apply to an "occurrence" that occurs away from premises owned by or rented to an insured with respect to "pollutants" not in or upon an "auto" that an insured owns, hires, borrows, rents, leases, or that is operated on their behalf in any other fashion if:

**(a)** The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of an "auto" that an insured owns, hires, borrows, rents, leases, or that is operated on their behalf in any other fashion; and

**(b)** The discharge, dispersal, seepage, migration, release, emission or escape of the "pollutants" is caused directly by such upset, overturn or damage.

**b.** Any liability caused by "pollutants" and arising from the operation, maintenance, use, "loading or unloading" of an "auto", for which insurance coverage is excluded by "underlying insurance".

## 17. Pollutant - Other Than Auto

**a.** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release, emission or escape of "pollutants":

**(1)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured.

However, Paragraph **a.(1)** of this exclusion does not apply to the following if such liability is covered by "underlying insurance" listed in the Schedule of Underlying Insurance, but only to the extent insurance is provided at the

"underlying limit" specified in the Schedule of Underlying Insurance for the "underlying insurance" listed and subject to all its terms, limitations and conditions:

**(a)** "Bodily injury", if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use by the building's occupants or their guests;

**(b)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor, and the owner or lessee of such premises, site or location has been added to your "underlying insurance" as an additional insured with respect to your ongoing operations or "your work" performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

**(c)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

**(2)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(3)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible;

**(4)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations, if the "pollutants" are brought on or to the

Includes copyrighted material of ISO Properties, Inc., with its permission.

US 101 UM 12 04

premises, site or location in connection with such operations by such insured, contractor or subcontractor.

However, Paragraph **a.(4)** of this exclusion does not apply to the following if such liability is covered by "underlying insurance" listed in the Schedule of Underlying Insurance, but only to the extent insurance is provided at the "underlying limit" specified in the Schedule of Underlying Insurance for the "underlying insurance" listed and subject to all its terms, limitations and conditions:

**(a)** "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

**(b)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

**(c)** "Bodily injury" or "property damage" arising out of heat,

smoke or fumes from a "hostile fire"; or

**(5)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations, if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of, "pollutants".

**b.** "Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release, escape or emission of "pollutants" at any time.

**c.** Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this Paragraph **c.** does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**d.** Any liability caused by "pollutants", for which insurance coverage is excluded by "underlying insurance".

**18. Recall of Products, Work or Impaired Property**

Any liability or damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**a.** "Your product";

Includes copyrighted material of ISO
Properties, Inc., with its permission.

b.   "Your work"; or

c.   "Impaired Property";

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**19. Unauthorized Use of Another's Name or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag or any other similar tactics to mislead another's potential customers.

**20. Uninsured / Underinsured Motorist**

Any liability or obligation to any insured or anyone else under any uninsured motorist, underinsured motorist, automobile no-fault or first party personal injury law.

**21. War**

Any liability, however caused, arising directly or indirectly, out of:

a.   War, including undeclared or civil war;

b.   Warlike action by a military force, including action in hindering or defending against an actual or expected attack by any government, sovereign or authority using military personnel or other agents; or

c.   Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

**22. Workers' Compensation**

Any liability or obligation of the insured under any workers' compensation, unemployment compensation, disability benefits or similar law. However, this exclusion does not apply to liability of others assumed by you under an "insured contract" in existence at the time of "occurrence".

**C.   Defense and Supplementary Payments**

1.   We will have the right and duty to defend the insured against any "suit" seeking damages because of "bodily injury", "personal and advertising injury" or "property damage" to which this insurance applies. We will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "personal and advertis-

ing injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result when:

a.   The applicable limits of the "underlying insurance" and any other insurance have been exhausted by payment of claims; or

b.   Damages are sought for "bodily injury", "personal and advertising injury" or "property damage" which are not covered by "underlying insurance" or other insurance.

2.   Our right and duty to defend ends when the applicable Limits of Insurance, as stated in the Declarations, has been exhausted by payment of claims.

3.   We have no duty to investigate, settle or defend any claim or "suit" other than those circumstances described in Paragraph **C.1.** However, we do have the right to participate in the investigation, settlement or defense of any claim or "suit" to which this insurance applies. If we exercise this right, we will do so at our expense.

4.   If there is no underlying insurer or other insurance obligated to do so, we will pay the following when we provide a defense:

a.   All expenses we incur.

b.   The cost of bail bonds up to $3,000. We do not have to furnish these bonds.

c.   The cost of bonds to appeal a judgment or award in any claim or "suit" we defend and the cost of bonds to release attachments, but only for bond amounts within the applicable Limits of Insurance. We do not have to furnish these bonds.

d.   Reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including the actual loss of earnings.

e.   All costs taxed against the insured in the "suit".

5.   If there is no underlying insurer obligated to do so, we will pay the following for an "occurrence" to which this insurance applies, even if we have no duty to provide a defense:

a.   Prejudgment interest awarded against the insured on that part of the

judgment we become obligated to pay and which falls within the applicable Limit of Insurance. If we make an offer to pay the applicable Limits of Insurance, we will not pay any prejudgment interest based on the period of time after the offer.

**b.** All interest awarded against the insured on the full amount of any judgment that accrues:

**(1)** After entry of the judgment; and

**(2)** Before we have paid, offered to pay or deposited in court the part of the judgment that is within the applicable Limit of Insurance.

**6.** The payments described in Paragraphs **4.** and **5.** above will not reduce the Limits of Insurance provided by this Coverage Part when defense or supplementary payments provided by the "underlying insurance" do not reduce their Limits of Insurance. However, when defense or supplementary payments provided by the "underlying insurance" reduce their Limits of Insurance then such expense payments paid by us will reduce the Limits of Insurance provided by this Coverage Part.

**7.** If we are prevented by law or otherwise from carrying out any of the provisions of **SECTION I - COVERAGE, C. Defense and Supplementary Payments**, we will pay any expense incurred with our written consent.

## SECTION II - WHO IS AN INSURED

**1.** Except for liability arising out of the ownership, maintenance, occupancy or use of an "auto":

**a.** If you are designated in the Declarations as:

**(1)** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**(2)** A partnership or joint venture, you are an insured. Your members, partners and their spouses are also insureds, but only with respect to the conduct of your business.

**(3)** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**(4)** An organization other than a partnership, joint venture, or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders. Each of the following is also a Named Insured:

**(a)** Any "subsidiary" company of such organization, including any "subsidiary" of such "subsidiary":

**1)** Existing at the inception of this Coverage Part; or

**2)** Formed or acquired on or after the inception of this Coverage Part.

**(b)** Any other company controlled and actively managed by such organization or any "subsidiary" thereof:

**1)** At the inception of this Coverage Part; or

**2)** If the control and active management thereof is acquired on or after the inception of this Coverage Part.

**(5)** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

**b.** Each of the following is also an insured:

**(1)** Any "employee" of yours while acting within the scope of their duties as such.

**(2)** Any person or organization while acting as your real estate manager.

**(3)** Any person or organization having proper temporary custody of your property if you die, but only:

**(a)** With respect to liability arising out of the maintenance or use of that property; and

**(b)** Until your legal representative has been appointed.

**(4)** Your legal representative if you die, but only with respect to duties as such.

**2.** Only with respect to liability arising out of the ownership, maintenance, occupancy or use of an "auto":

Includes copyrighted material of ISO Properties, Inc., with its permission.

a. You are an insured.

b. Anyone else while using with your permission an "auto" you own, hire or borrow is also an insured except:

(1) The owner or any other person or organization (except your "executive officers" or principals) from whom you hire or borrow an "auto", unless such persons or organizations are insureds in your "underlying insurance" listed in the Schedule of Underlying Insurance, and then only for such hazards for which coverage is provided by such "underlying insurance". This exception does not apply if the "auto" is a trailer or semi-trailer connected to an "auto" you own.

(2) Your "employee", if the "auto" is owned by that "employee" or a member of his or her household, unless:

(a) Such "employee" is an insured with respect to that "auto" in the "underlying insurance" listed in the Schedule of Underlying Insurance, and then only for such hazards for which coverage is provided by such "underlying insurance"; or

(b) The "bodily injury" or "property damage" is sustained by a co-"employee" of such "employee".

(3) Someone using an "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos", unless that business is yours.

(4) Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company), or a lessee or borrower or any of their "employees", while moving property to or from an "auto".

c. Anyone liable for the conduct of an insured described in Paragraphs 2.a. and b. above is also an insured, but only if they are provided insurance coverage for such liability by valid and collectible "underlying insurance" listed in the Schedule of Underlying Insurance and then only for such hazards for which coverage is provided by such "underlying insurance".

3. At your option and subject to the terms of this insurance, any additional insureds not addressed by Paragraphs 1. and 2. above covered in the "underlying insurance" listed in the Schedule of Underlying Insurance are also insureds, but only to the extent that insurance is provided for such additional insureds thereunder.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture, or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III - LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

a. Insureds;

b. Claims made or "suits" brought; or

c. Persons or organizations making claims or bringing "suits".

2. The Aggregate Limit is the most we will pay for all damages:

a. Included in the "products-completed operations hazard";

b. Because of "bodily injury" by disease sustained by your "employees" arising out of and in the course of their employment by you; or

c. Because of "bodily injury", "personal and advertising injury" or "property damage" not included within a. or b. above. However, this Aggregate Limit will not apply to damages which are not subject to an Aggregate Limit in the "underlying insurance".

The Aggregate Limit applies separately to a., b. and c. The Aggregate Limit described in c. will apply only to damages not subject to a. or b. above.

3. Subject to the Limit of Insurance described in 2.c. above:

a. Only in the event that "underlying insurance" specifically listed in the Schedule of Underlying Insurance provides an annual Aggregate Limit of Insurance for damages that would not be subject to 2.a. or b. above that is applicable separately to each:

(1) Location owned by, or rented or leased to you solely with respect to damages which are the result of a claim or "suit" for "bodily injury" or "property damage" which can be attributed to operations at only a single location, then the Aggregate Limit described in 2.c. above applies separately to each location owned by, or rented or leased to you.

Includes copyrighted material of ISO Properties, Inc., with its permission.

US 101 UM 12 04

**(2)** Of your construction projects solely with respect to damages which are the result of a claim or "suit" for "bodily injury" or "property damage" which can be attributed only to ongoing operations and only at a single construction project, then the Aggregate Limit described in **2.c.** above applies separately to each of your construction projects.

**b.** Only with respect to the application of Limits of Insurance described in **3.a.** above, the following terms location and construction project will have the following meanings:

**(1)** Location means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad.

**(2)** Construction project means a location you do not own, rent or lease where ongoing improvements, alterations, installation, demolition or maintenance work is performed by you or on your behalf. All connected ongoing improvements, alterations, installation, demolition or maintenance work performed by you or on your behalf at the same location for the same persons or entities, no matter how often or under how many different contracts, will be deemed to be a single construction project.

**4.** Subject to the limits described in **2.** and **3.** above, the Each Occurrence Limit is the most we will pay for the "ultimate net loss":

**a.** In excess of the applicable limits of "underlying insurance"; or

**b.** If an "occurrence" is not covered by "underlying insurance", but covered by the terms and conditions of this Coverage Part,

Because of all "bodily injury", "personal and advertising injury" and "property damage" arising out of any one "occurrence".

We will not pay more than the Limit of Insurance shown in this Coverage Part's Declarations for each "occurrence" because any Personal Umbrella Liability Policy(ies) is / are attached to this policy.

**5.** Subject to the limits described in **2.**, **3.** and **4.** above and to the terms and conditions of the "underlying insurance":

**a.** If the limits of "underlying insurance" have been reduced by payment of claims, this

Coverage Part will continue in force as excess of the reduced "underlying insurance"; or

**b.** If the limits of "underlying insurance" have been exhausted by payment of claims, this Coverage Part will continue in force as "underlying insurance".

**6.** The Limits of Insurance of this Coverage Part apply separately to each "coverage term".

**SECTION IV - CONDITIONS**

**1. Appeals**

If the insured or any insurer who provides the applicable "underlying insurance" elects not to appeal a judgment which exceeds the "underlying limit", we may elect to do so at our own expense. We shall be liable for the taxable costs and disbursements and interest incidental thereto, but in no event shall this provision increase our liability beyond:

**a.** Our applicable Limits of Insurance for all "ultimate net loss";

**b.** Our applicable Defense and Supplementary Payments as described in **SECTION I - COVERAGE, C. Defense and Supplementary Payments**; and

**c.** The expense of such appeal.

**2. Audit**

If this Coverage Part is subject to Audit, as indicated in the Declarations, then the following Condition applies:

**a.** The premium shown in the Premium Computation Endorsement as Advance Premium is a deposit premium. At the close of each audit period, we will compute the earned premium for that period. If:

**(1)** The earned premium is less than the deposit premium, we will return the excess to the first Named Insured; or

**(2)** The earned premium is greater than the deposit premium, the difference will be due and payable to us by the first Named Insured upon notice from us. The due date for audit and retrospective premiums is the date shown as the due date on the bill.

However, in no event will the earned premium be less than the Minimum Premium stated in the Premium Computation Endorsement.

**b.** The first Named Insured must keep records of the information we need for pre-

---

**US 101 UM 12 04**

Includes copyrighted material of ISO Properties, Inc., with its permission.

mium computation, and send us copies at such times as we may request.

**3. Bankruptcy**

Bankruptcy or insolvency of the insured or the insured's estate shall not relieve us of any obligations under this Coverage Part.

**4. Duties in the Event of Occurrence, Claim or Suit**

a. You must see to it that we are notified as soon as practicable of an "occurrence" which may result in a claim or "suit". To the extent possible, notice should include:

(1) How, when and where the "occurrence" took place;

(2) The names and addresses of any injured persons and witnesses; and

(3) The nature and location of any injury or damage arising out of the "occurrence".

This requirement applies only when the "occurrence" is known to an "authorized representative".

b. If a claim is made or "suit" is brought against any insured that is likely to involve this Coverage Part, you must:

(1) Immediately record the specifics of the claim or "suit" and the date received; and

(2) Notify us as soon as practicable.

This requirement will not be considered breached unless the breach occurs after such claim or "suit" is known to an "authorized representative".

c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**5. First Named Insured**

The person or organization first named in the Declarations will act on behalf of all other insureds where indicated in this Coverage Part.

**6. Legal Action Against Us and Loss Payments**

a. No legal action may be brought against us unless there has been full compliance with all the terms of this Coverage Part nor until the amount of the insured's obligation to pay has been finally determined as provided below. No person or organization has any right under this Coverage Part to bring us into any action to determine the liability of the insured.

b. We shall be liable for payment of the "ultimate net loss" for any "occurrence" to which this Coverage Part applies:

(1) For "occurrences" not covered by "underlying insurance"; or

(2) In excess of the "underlying limit" applicable to the "occurrence" only after the insurers who provide the applicable "underlying insurance" have paid or become obligated to pay the amount of the "underlying limit" applicable to the "occurrence".

Our payment will be made following final determination of the amount of the insured's obligation to pay either by final judgment against the insured or by written agreement with the insured, the claimant, the underlying insurers and us.

**7. Liberalization**

If, within 60 days prior to the beginning of this Coverage Part or during the policy period, we make any changes to any forms or endorsements of this Coverage Part for which there is currently no separate premium charge, and that change provides more coverage than this Coverage Part, the change will automatically apply to this Coverage Part at the latter of:

a. The date we implemented the change in your state; or

b. The date this Coverage Part became effective; and

Will be considered as included until the end of the current policy period. We will make no additional premium charge for this additional coverage during the interim.

8. **Maintenance of Underlying Insurance**

   a. While this Coverage Part is in effect, the insured shall maintain in force the "underlying insurance" listed in the Schedule of Underlying Insurance as collectible insurance. The terms, conditions and endorsements of "underlying insurance" will not materially change and renewals or replacements of "underlying insurance" will not be more restrictive in coverage.

   b. Limits of "underlying insurance" will not be reduced, except for any reduction or exhaustion in the aggregate limits of insurance due to payment of claims which are in accordance with **SECTION I - COVERAGE, A. Insuring Agreement**, Paragraph **2.** of this Coverage Part.

   c. In the event you fail or neglect to maintain "underlying insurance" as required, this Coverage Part will apply as though such "underlying insurance" was in force and collectible at the time a claim is presented to us which is in accordance with **SECTION I - COVERAGE, A. Insuring Agreement**, Paragraph **2.** of this Coverage Part.

   d. The limits of "underlying insurance" shall be deemed applicable, regardless of any defense which the insurer who provides the "underlying insurance" may assert because of the insured's failure to comply with any Condition of the policy or the inability of the insurer to pay by reason of bankruptcy or insolvency.

9. **Other Insurance**

   This insurance is excess over, and shall not contribute with any other insurance, whether primary, excess, contingent or on any other basis. This condition will not apply to insurance specifically written as excess over this Coverage Part.

10. **Premium**

    The premium for this Coverage Part shall be as stated in the Declarations. The advance and anniversary premiums are not subject to adjustment, except as stated in the Declarations, or as stated in an endorsement issued by us to form a part of this Coverage Part.

    You shall maintain records of such information as is necessary for premium computation, and shall, if requested by us, send copies of such records to us at the end of the "coverage term" and at such times during the policy period as we may direct.

11. **Representations**

    a. By acceptance of this Coverage Part, you agree that the statements in the Declarations are your agreements and representations, that this Coverage Part is issued in reliance upon the truth of such representations and that this Coverage Part embodies all agreements existing between you and us or any of our agents relating to this insurance.

    b. However, to the extent that the following applies in the "underlying insurance" listed specifically in the Schedule of Underlying Insurance, it will also apply to this Coverage Part:

       Based on our reliance upon your representations as to existing hazards, if unintentionally you should fail to disclose all such hazards at the inception date of this Coverage Part, we will not reject coverage under this Coverage Part based solely on such failure.

12. **Separation of Insureds**

    Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

    a. As if each Named Insured were the only Named Insured; and

    b. Separately to each insured against whom claim is made or "suit" is brought.

13. **Transfer of Rights of Recovery Against Others to Us**

    a. If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

    b. Any recoveries shall be applied as follows:

       (1) First, we will reimburse anyone, including the insured, the amounts actually paid by them that were in excess of our payments;

       (2) Next, we will be reimbursed to the extent of our actual payment; and

       (3) Lastly, any amounts left after meeting the obligations outlined in **(1)** and **(2)** above will be distributed to anyone else known to us at the time a recovery is made and who is legally entitled to such recovery.

**US 101 UM 12 04**

Includes copyrighted material of ISO Properties, Inc., with its permission.

Expenses incurred in the recovery shall be apportioned among all interests in the ratio of their respective recoveries as finally settled. If there is no recovery as a result of our attempts, we shall bear all of the recovery expenses.

c. If prior to an "occurrence" to which this Coverage Part would apply, you and the issuer of your applicable "underlying insurance" listed specifically in the Schedule of Underlying Insurance waive any right of recovery against a person or organization for injury or damage, we will also waive any rights we may have against such person or organization.

**14. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V - DEFINITIONS**

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. "Advertisement" includes a publicity article. For the purposes of this definition:

   a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

   b. Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an "advertisement".

2. "Authorized representative" means:

   a. If you are:

      (1) An individual, you and your spouse are "authorized representatives".

      (2) A partnership or joint venture, your members, your partners, and their spouses are "authorized representatives".

      (3) A limited liability company, your members and your managers are "authorized representatives".

      (4) An organization other than a partnership, joint venture or limited liability company, your "executive officers"

and directors are "authorized representatives". Provided you are not a publicly traded organization, your stockholders are also "authorized representatives".

      (5) A trust, your trustees are "authorized representatives".

   b. Your "employees" assigned to manage your insurance program, or assigned to give or receive notice of an "occurrence", claim or "suit" are also "authorized representatives".

3. "Auto" means:

   a. Any land motor vehicle, trailer or semi-trailer designed for travel on public roads; or

   b. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

   "Auto" does not include "mobile equipment".

4. "Bodily injury" means bodily harm or injury, sickness, disease, disability, humiliation, shock, fright, mental anguish or mental injury, including care, loss of services or death resulting from any of these at any time.

5. "Coverage term" means the following individual increment, or if a multi-year policy period, increments, of time, which comprise the policy period of this Coverage Part:

   a. The year commencing on the Effective Date of this Coverage Part at 12:01 AM standard time at your mailing address shown in the Declarations, and if a multi-year policy period, each consecutive annual period thereafter, or portion thereof if any period is for a period of less than 12 months, constitute individual "coverage terms". The last "coverage term" ends at 12:00 AM standard time at your mailing address shown in the Declarations on the earlier of:

      (1) The day the policy period shown in the Declarations ends; or

      (2) The day the policy to which this Coverage Part is attached is terminated or cancelled.

   b. However, if after the issuance of this Coverage Part, any "coverage term" is extended for an additional period of less than 12 months, that additional period of time will be deemed to be part of the last preceding "coverage term".

6. "Coverage territory" means anywhere.

7. "Electronic data" means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

8. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

9. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any similar governing document.

10. "Hostile fire" means one that becomes uncontrollable or breaks out from where it was intended to be.

11. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. You have failed to fulfill the terms of a contract or agreement,

   if such property can be restored to use by:

   a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

   b. Your fulfilling the terms of the contract or agreement.

12. "Insured contract" means:

   a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for "property damage" by fire or explosion to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   b. A sidetrack agreement;

   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e. An elevator maintenance agreement;

   f. That part of any other contract or agreement pertaining to your business, other than a contract or agreement pertaining to the rental or lease of any "auto", (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury", "property damage" or "personal and advertising injury" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement; or

   g. That part of any contract or agreement entered into, as part of your business, pertaining to the rental or lease, by you or any of your "employees", of any "auto". However, such contract or agreement shall not be considered an "insured contract" to the extent that it obligates you or any of your "employees" to pay for "property damage" to any "auto" rented or leased by you or any of your "employees".

   Paragraphs f. and g. do not include that part of any contract or agreement:

   (1) That indemnifies a railroad for "bodily injury", "property damage" or "personal and advertising injury" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing. However, if such liability is insured by valid and collectible "underlying insurance" as listed in the Schedule of Underlying Insurance, this Paragraph (1) shall not apply for such hazards for which insurance coverage is afforded by such "underlying insurance";

   (2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

      (a) Preparing, approving or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

      (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage;

   (3) Under which the insured, if an architect, engineer or surveyor, assumes liability for injury or damage arising out of the insured's rendering or failure to render professional services,

including those listed in Paragraph **(2)** above and supervisory, inspection, architectural or engineering activities;

**(4)** That indemnifies an advertising, public relations or media consulting firm for "personal and advertising injury" arising out of the planning, execution or failure to execute marketing communications programs. Marketing communications programs include but are not limited to comprehensive marketing campaigns; consumer, trade and corporate advertising for all media; media planning, buying, monitoring and analysis; direct mail; promotion; sales materials; design; presentations; point-of-sale materials; market research; public relations and new product development;

**(5)** Under which the insured, if an advertising, public relations or media consulting firm, assumes liability for "personal and advertising injury" arising out of the insured's rendering or failure to render professional services, including those services listed in Paragraph **(4)**, above;

**(6)** That indemnifies a web-site designer or content provider, or Internet search, access, content or service provider for injury or damage arising out of the planning, execution or failure to execute Internet services. Internet Services include but are not limited to design, production, distribution, maintenance and administration of web-sites and web-banners; hosting web-sites; registering domain names; registering with search engines; marketing analysis; and providing access to the Internet or other similar networks;

**(7)** Under which the insured, if a web-site designer or content provider, or Internet search, access, content or service provider, assumes liability for injury or damage arising out of the insured's rendering or failure to render Internet services, including those listed in Paragraph **(6)**, above;

**(8)** That pertains to the loan, lease or rental of an "auto" to you or any of your "employees", if the "auto" is loaned, leased or rented with a driver; or

**(9)** That holds a person or organization engaged in the business of transporting property by "auto" for hire harm-

less for your use of an "auto" over a route or territory that person or organization is authorized to serve by public authority.

**13.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm to perform duties related to the conduct of your business. "Leased worker" includes supervisors furnished to you by the labor leasing firm. "Leased worker" does not include a "temporary worker".

**14.** "Loading or unloading" means the handling of property:

  **a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

  **b.** While it is in or on an aircraft, watercraft or "auto"; or

  **c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**15.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

  **a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

  **b.** Vehicles maintained for use solely on or next to premises you own or rent;

  **c.** Vehicles that travel on crawler treads;

  **d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

    **(1)** Power cranes, shovels, loaders, diggers or drills; or

    **(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

  **e.** Vehicles not described in **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

    **(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well-servicing equipment; or

(2) Cherry pickers and similar devices used to raise or lower workers;

f. Vehicles not described in **a.**, **b.**, **c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

(1) Equipment designed primarily for:

(a) Snow removal;

(b) Road maintenance, but not construction or resurfacing; or

(c) Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

16. "Occurrence" means:

a. An accident, including continuous or repeated exposure to substantially the same general harmful conditions, that results in "bodily injury" or "property damage"; or

b. An offense that results in "personal and advertising injury".

All damages arising from the same accident, continuous or repeated exposure to substantially the same general harmful conditions, act or offense shall be deemed to arise from one "occurrence" regardless of:

(1) The frequency of repetition;

(2) The number or kind of media used; or

(3) The number of claimants.

17. "Personal and advertising injury" means injury, including "bodily injury", arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. Abuse of process;

d. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

e. Defamation of character, including oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

f. Oral or written publication, in any manner, of material that violates a person's right of privacy;

g. The use of another's advertising idea in your "advertisement";

h. Infringing upon another's copyright, trade dress or slogan in your "advertisement"; or

i. Discrimination, unless insurance coverage therefor is prohibited by law or statute.

18. "Pollutants" mean any solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, petroleum, petroleum products and petroleum by-products, and waste. Waste includes materials to be recycled, reconditioned or reclaimed. "Pollutants" include but are not limited to, substances which are generally recognized in industry or government to be harmful or toxic to persons, property or the environment regardless of whether the injury or damage is caused directly or indirectly by the "pollutants" and whether:

a. The insured is regularly or otherwise engaged in activities which taint or degrade the environment; or

b. The insured uses, generates or produces the "pollutant".

19. "Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the site has been completed, if your contract calls for work at more than one site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

b. Does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured; or

(2) The existence of tools, uninstalled equipment or abandoned or unused materials.

20. "Property damage" means:

a. Physical injury to or destruction of tangible property including all resulting loss of use. All such loss of use shall be deemed to occur at the time of the physical injury or destruction that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, "electronic data" is not tangible property.

21. "Subsidiary" means any organization in which more than 50% of the outstanding securities or voting rights representing the present right to vote for election of directors is owned or controlled, directly or indirectly, in any combination, by one or more of the Named Insureds.

22. "Suit" means a civil proceeding in which money damages because of "bodily injury", "personal and advertising injury" or "property damage" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such money damages are claimed and to which the insured must submit or does submit with our consent;

b. Any other alternative dispute resolution proceeding in which such money damages are claimed and to which the insured submits with our consent; or

c. An appeal of a civil proceeding.

23. "Temporary worker" means a person who is furnished to you to:

a. Substitute for a permanent "employee" on leave; or

b. Meet seasonal or short-term workload conditions.

24. "Ultimate net loss" means the sum actually paid or payable in the settlement or satisfaction of the insured's legal obligation for damages, covered by this insurance, either by adjudication or compromise. "Ultimate net loss" does not include Defense and Supplementary Payments as described in **SECTION I - COVERAGE, C. Defense and Supplementary Payments** of this Coverage Part.

25. "Underlying insurance" means the insurance listed in the Schedule of Underlying Insurance and the insurance available to the insured under all other insurance policies applicable to the "occurrence". "Underlying insurance" also includes any type of self-insurance or alternative method by which the insured arranges for funding of legal liabilities that affords coverage that this Coverage Part covers.

26. "Underlying limit" means the total of the applicable limits of all "underlying insurance" less the amount, if any, by which the applicable limit of the applicable policy listed in the Schedule of Underlying Insurance has been reduced solely by payment of loss resulting from claims which are in accordance with **SECTION I - COVERAGE, A. Insuring Agreement**, Paragraph **2.** of this Coverage Part.

27. "Workplace" means that place and during such hours to which the "employee" sustaining injury was assigned by you, or any other person or entity acting on your behalf, to work on the date of "occurrence".

28. "Your product":

a. Means:

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**US 101 UM 12 04**

Includes copyrighted material of ISO Properties, Inc., with its permission.

**Page 19 of 22**

**(a)** You;

**(b)** Others trading under your name; or

**(c)** A person or organization whose business or assets you have acquired; and

**(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of your product; and

**(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**29.** "Your work":

**a.** Means:

**(1)** Work or operations performed by you or on your behalf; and

**(2)** Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

**(2)** The providing of or failure to provide warnings or instructions.

Includes copyrighted material of ISO Properties, Inc., with its permission.

US 101 UM 12 04

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY COVERAGE PART

A. **SECTION I - COVERAGE, B. Exclusions** is modified to add the following:

This insurance does not apply to:

1. Any liability:

   a. With respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

   b. Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(1)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(2)** the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

2. Any liability resulting from the "hazardous properties" of "nuclear material", if

   a. The "nuclear material" **(1)** is at any "nuclear facility" owned by, or operated by or on behalf of, an insured or **(2)** has been discharged or dispersed therefrom,

   b. The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

   c. The injury or damage arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territo-

ries or possessions or Canada, this Exclusion **c.** applies only to "property damage" to such "nuclear facility" and any property thereat.

B. **SECTION V - DEFINITIONS** is hereby modified to add the following definitions:

1. "Hazardous properties" include radioactive, toxic or explosive properties;

2. "Nuclear material" means "source material", "special nuclear material" or "by-product material";

3. "Source material", "special nuclear material" and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

4. "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

5. "Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

6. "Nuclear facility" means:

   a. Any "nuclear reactor";

   b. Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", **(3)** or handling, processing or packaging "waste";

   c. Any equipment or device used for the processing, fabricating or alloying of "special nuclear materials", if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combina-

Includes copyrighted material of ISO Properties, Inc., with its permission.

tion thereof, or more than 250 grams of uranium 235;

d. Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

7. "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

8. "Property damage" includes all forms of radioactive contamination of property.

Includes copyrighted material of ISO Properties, Inc., with its permission.

**US 101 UM 12 04**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# POLLUTANT EXCLUSION - OTHER THAN AUTO

This endorsement modifies insurance provided under the following:

**COMMERCIAL UMBRELLA LIABILITY COVERAGE PART
PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART
PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART - CLAIMS-MADE**

**SECTION I - COVERAGE, B. Exclusions** (and in the Professional Umbrella Liability Coverage Part and the Professional Umbrella Liability Coverage Part - Claims-Made only: Subparagraph **1.**) is modified as follows:

Exclusion **17. Pollutant - Other Than Auto** (Exclusion **1.q.** in the Professional Umbrella Liability Coverage Part and the Professional Umbrella Liability Coverage Part - Claims-Made) is hereby deleted and replaced by the following:

**Pollutant - Other Than Auto**

This insurance does not apply to:

**a.** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release, emission or escape of "pollutants":

**(1)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured.

**(2)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(3)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

**(4)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor.

Subparagraphs **a.(1)** and **a.(4)** do not apply:

**(a)** To "bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire"; or

**(b)** If insurance is provided to the insured by "underlying insurance" specifically listed in the Schedule of Underlying Insurance at the "underlying limit" scheduled, but only to the extent "bodily injury" or "property damage" coverage is provided by that "underlying insurance" specifically listed in the Schedule of Underlying Insurance and subject to all its terms and conditions.

**(5)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of, "pollutants".

**b.** "Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release, escape emission of "pollutants" at any time.

**c.** Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**d.** Any liability caused by "pollutants" excluded by "underlying insurance".

Includes copyrighted material of ISO Properties, Inc., with its permission.

**US 302 12 04**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY - WITH LIMITED BODILY INJURY EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA LIABILITY COVERAGE PART
PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART
PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART - CLAIMS-MADE

**SECTION I - COVERAGE, B. Exclusions** (and in the Professional Umbrella Liability Coverage Part and the Professional Umbrella Liability Coverage Part - Claims-Made only: Subparagraph **1.**) is modified to delete Exclusion **10. Electronic Data** in its entirety and replace it with the following:

This insurance does not apply to:

10. **Access or Disclosure of Confidential or Personal Information and Data-Related Liability**

    Any liability arising out of:

    **a.** Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

    **b.** The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate "electronic data".

    This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph **a.** or **b.** above.

    However, this exclusion does not apply:

    **(1)** To damages because of "bodily injury", unless Paragraph **a.** above applies; and

    **(2)** When such insurance is provided by valid and collectible "underlying insurance" listed in the Schedule of Underlying Insurance, or would have been provided by such listed "underlying insurance" except for the exhaustion by payment of claims of its limits of insurance, and then only for such hazards for which coverage is provided by such "underlying insurance", unless otherwise excluded by this Coverage Part.

Includes copyrighted material of Insurance
Services Office, Inc., with its permission.

US 3093 05 14

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PERSONAL PROPERTY
# CARE, CUSTODY OR CONTROL EXCLUSION

This endorsement modifies insurance provided under the following:

**COMMERCIAL UMBRELLA LIABILITY COVERAGE PART**
**PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART**
**PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART - CLAIMS-MADE**

**SECTION I - COVERAGE, B. Exclusions** (and in the Professional Umbrella Liability Coverage Part and the Professional Umbrella Liability Coverage Part - Claims-Made only: Subparagraph **1.**) is modified to add the following:

This insurance does not apply to:

"Property damage" to personal property not owned by an insured and in the care, custody or control of an insured, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property.

US 352 12 04

Includes copyrighted material of ISO
Properties, Inc., with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# MOBILE EQUIPMENT SUBJECT TO MOTOR VEHICLE INSURANCE LAWS - LIMITATION

This endorsement modifies insurance provided under the following:

**COMMERCIAL UMBRELLA LIABILITY COVERAGE PART**
**PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART**
**PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART - CLAIMS-MADE**

**SECTION I - COVERAGE, B. Exclusions** (and in the Professional Umbrella Liability Coverage Part and the Professional Umbrella Liability Coverage Part - Claims-Made only: Subparagraph **1.**) is modified to add the following:

This insurance does not apply to:

Any liability arising out of the ownership, maintenance, occupancy, operation, use, "loading or unloading" of any land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law, unless such liability is covered by valid and collectible "underlying insurance" as listed in the Schedule of Underlying Insurance, and then only for such hazards for which coverage is afforded by such "underlying insurance", unless otherwise excluded by this Coverage Part.

**US 4062 11 05**

Includes copyrighted material of Insurance Services Office, Inc., with its permission

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYEE BENEFIT LIABILITY

This endorsement modifies insurance provided under the following:

**COMMERCIAL UMBRELLA LIABILITY COVERAGE PART**
**PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART**
**PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART - CLAIMS-MADE**

This policy is modified to add the following:

**I.** **SECTION I - COVERAGE, A. Insuring Agreement(s)** is modified to add the following:

**EMPLOYEE BENEFIT LIABILITY:**

We will pay on behalf of the insured the "ultimate net loss" which the insured is legally obligated to pay as damages because of any negligent act, error or omission of the insured or any other person for whose acts the insured is legally liable arising out of the administration of the insured's employee benefit programs.

This insurance applies only to negligent acts, errors or omissions:

**a.** Whose damages are in excess of the "underlying insurance" provided by an Employee Benefit Liability policy listed in the Schedule of Underlying Insurance; and

**b.** Which occur during the policy period.

**II.** **SECTION I - COVERAGE, B. Exclusions** (and in the Professional Umbrella Liability Coverage Part and the Professional Umbrella Liability Coverage Part - Claims-Made only: Subparagraph 1.) is modified to add the following exclusion:

This insurance does not apply to:

Any liability arising out of employee benefit programs unless such liability is covered by valid and collectible "underlying insurance" as listed in the Schedule of Underlying Insurance, and then only for such hazards for which coverage is afforded by such "underlying insurance".

**US 407 12 04**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# OFFICE OF FOREIGN ASSETS CONTROL (OFAC) COMPLIANCE ENDORSEMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL UMBRELLA LIABILITY COVERAGE PART**
**PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART**
**PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART – CLAIMS-MADE**

**SECTION - IV CONDITIONS** is amended to include the following:

**Office of Foreign Assets Control (OFAC) Compliance**

Whenever insurance coverage provided by this policy would be in violation of any United States economic or trade sanctions, such insurance coverage shall be null and void.

**US 4098 04 10**

# PENNSYLVANIA NOTICE

An Insurance Company, its agents, employees, or service contractors acting on its behalf, may provide services to reduce the likelihood of injury, death or loss. These services may include any of the following or related services incident to the application for, issuance, renewal or continuation of, a policy of insurance:

1.  surveys;

2.  consultation or advice; or

3.  inspections.

The "Insurance Consultation Services Exemption Act" of Pennsylvania provides that the Insurance Company, its agents, employees or service contractors acting on its behalf, is not liable for damages from injury, death or loss occurring as a result of any act or omission by any person in the furnishing of or the failure to furnish these services.

The Act does not apply:

1.  if the injury, death or loss occurred during the actual performance of the services and was caused by the negligence of the Insurance Company, its agents, employees or service contractors;

2.  to consultation services required to be performed under a written service contract not related to a policy of insurance; or

3.  if any acts or omissions of the Insurance Company, its agents, employees or service contractors are judicially determined to constitute a crime, actual malice, or gross negligence.

**US 450 PA 01 96**

# THE CINCINNATI INSURANCE COMPANY
### A Stock Insurance Company

# CINCINNATI DATA DEFENDER™ COVERAGE PART DECLARATIONS

**THIS COVERAGE PART PROVIDES CLAIMS-MADE COVERAGE, WHICH APPLIES ONLY TO "CLAIMS" FIRST MADE DURING THE "POLICY PERIOD" OR ANY APPLICABLE EXTENDED REPORTING PERIOD. THE LIMIT OF INSURANCE TO PAY DAMAGES OR SETTLEMENTS WILL BE REDUCED AND MAY BE EXHAUSTED BY "DEFENSE COSTS", AND "DEFENSE COSTS" WILL BE APPLIED AGAINST THE DEDUCTIBLE. IN NO EVENT WILL WE BE LIABLE FOR "DEFENSE COSTS" OR THE AMOUNT OF ANY JUDGMENT OR SETTLEMENT IN EXCESS OF THE LIMIT OF INSURANCE. READ THE ENTIRE POLICY CAREFULLY.**

Attached to and forming part of POLICY NUMBER: EPP 026 35 19      Effective Date 07-01-2020

Named Insured is the same as it appears in the Common Policy Declarations unless another entry is made here.

**Retroactive Date:**    07-01-2016

## Limits of Insurance and Deductible

| Insuring Agreement | | Annual Aggregate | Sublimit | | Deductible |
|---|---|---|---|---|---|
| A | Response Expenses | $50,000 | | | $1,000 |
| | | | Forensic IT Review | $25,000 | |
| | | | Legal Review | $25,000 | |
| | | | PR Services | $25,000 | |
| B | Defense and Liability | $50,000 | | | $1,000 |
| | | | Regulatory Fines and Penalties | $25,000 | |
| | | | PCI Fines and Penalties | $25,000 | |
| C | Identity Recovery | $25,000 | | | $250 |
| | | | Lost Wages and Child and Elder Care | $5,000 | |
| | | | Mental Health Counseling | $1,000 | |
| | | | Miscellaneous Unnamed Costs | $1,000 | |
| | **TOTAL ANNUAL PREMIUM** | | $87 | | |

| Optional Supplemental Extended Reporting Period - Term: | Optional Supplemental Extended Reporting Period - Premium: |
|---|---|
| 1 YEAR | 15 |
| 2 YEAR | 30 |
| 3 YEAR | 40 |
| 4 YEAR | 50 |
| 5 YEAR | 55 |
| 6 YEAR | 60 |

FORMS AND/OR ENDORSEMENTS APPLICABLE TO THIS COVERAGE PART:

HC102      01/18   CINCINNATI DATA DEFENDER™ COVERAGE FORM

HC429PA    03/16   PENNSYLVANIA CHANGES

HC 502 01 18

HC 502 01 18

EPP 026 35 19

# CINCINNATI DATA DEFENDER™ COVERAGE FORM

## TABLE OF CONTENTS

| Coverage Part Provision: | Begins on Page: |
|---|---|
| Preamble | 3 |
| SECTION I - COVERAGES | 3 |
| A. Insuring Agreements | 3 |
|    1. Insuring Agreement A - Response Expenses | 3 |
|    2. Insuring Agreement B - Defense and Liability | 5 |
|    3. Insuring Agreement C - Identity Recovery | 5 |
| B. Exclusions | 5 |
|    1. Applicable to Insuring Agreements A and B | 5 |
|       a. Contractual Liability | 5 |
|       b. Criminal Investigations or Proceedings | 5 |
|       c. Deficiency Correction | 5 |
|       d. Extortion | 6 |
|       e. Fraudulent, Dishonest or Criminal Acts | 6 |
|       f. Non-monetary Relief | 6 |
|       g. Previously Reported Data Compromises | 6 |
|       h. Prior Data Compromises | 6 |
|       i. Prior or Pending Litigation | 6 |
|       j. Reckless Disregard | 6 |
|       k. Uninsurable | 6 |
|       l. Willful Complicity | 6 |
|    2. Applicable to Insuring Agreement C | 6 |
|       a. Fraudulent, Dishonest or Criminal Acts | 6 |
|       b. Professional or Business Identity | 6 |
|       c. Unreported Identity Theft | 6 |
|    3. Applicable to Insuring Agreements A, B and C | 6 |
|       a. Nuclear | 6 |
|       b. War | 6 |
| SECTION II - LIMITS OF INSURANCE AND DEDUCTIBLE | 7 |
| SECTION III - DEFENSE AND SETTLEMENT | 8 |
| SECTION IV - CONDITIONS | 8 |
|    1. Bankruptcy | 8 |
|    2. Due Diligence | 8 |
|    3. Duties in the Event of a Claim, Regulatory Proceeding or Loss | 9 |
|    4. Help Line | 10 |
|    5. Legal Action Against Us | 10 |
|    6. Legal Advice | 10 |
|    7. Liberalization | 10 |
|    8. Office of Foreign Assets Control (OFAC) Compliance | 11 |
|    9. Other Insurance | 11 |
|    10. Pre-Notification Consultation | 11 |
|    11. Representations | 11 |
|    12. Separation of Insureds | 11 |
|    13. Service Providers | 11 |
|    14. Services | 11 |
|    15. Subrogation | 12 |
|    16. Valuation - Settlement | 12 |
|    17. When We Do Not Renew | 12 |

Includes copyrighted material of Insurance
Services Office, Inc. with its permission.

HC 102 01 18

## TABLE OF CONTENTS (CONT'D)

**Coverage Part Provision:**          **Begins on Page:**

**SECTION V - EXTENDED REPORTING PERIODS**..............................................................................12

**SECTION VI - DEFINITIONS** ...................................................................................................13

    1.    "Affected individual"...............................................................................................13
    2.    "Authorized representative".....................................................................................13
    3.    "Claim" ...............................................................................................................13
    4.    "Coverage term".................................................................................................13
    5.    "Coverage territory".............................................................................................14
    6.    "Data compromise liability"....................................................................................14
    7.    "Defense costs"...................................................................................................14
    8.    "Employee"........................................................................................................14
    9.    "Executive" ........................................................................................................15
  10.    "Identity recovery case manager"............................................................................15
  11.    "Identity recovery expenses"..................................................................................15
  12.    "Identity recovery insured".....................................................................................16
  13.    "Identity theft" ....................................................................................................16
  14.    "Insured"............................................................................................................16
  15.    "Loss" ...............................................................................................................16
  16.    "Named insured" .................................................................................................16
  17.    "Personal data compromise".................................................................................16
  18.    "Personally identifying information" .........................................................................17
  19.    "Personally sensitive information" ...........................................................................17
  20.    "Policy period" ...................................................................................................17
  21.    "Regulatory proceeding".......................................................................................17

# CINCINNATI DATA DEFENDER™ COVERAGE FORM

**THIS COVERAGE PART PROVIDES CLAIMS-MADE COVERAGE, WHICH APPLIES ONLY TO "CLAIMS" FIRST MADE DURING THE "POLICY PERIOD" OR ANY APPLICABLE EXTENDED REPORTING PERIOD. THE LIMIT OF INSURANCE TO PAY DAMAGES OR SETTLEMENTS WILL BE REDUCED AND MAY BE EXHAUSTED BY "DEFENSE COSTS", AND "DEFENSE COSTS" WILL BE APPLIED AGAINST THE DEDUCTIBLE. IN NO EVENT WILL WE BE LIABLE FOR "DEFENSE COSTS" OR THE AMOUNT OF ANY JUDGMENT OR SETTLEMENT IN EXCESS OF THE LIMIT OF INSURANCE. READ THE ENTIRE POLICY CAREFULLY.**

Various provisions in this Coverage Part restrict coverage. Read the entire Coverage Part carefully to determine rights, duties and what is and is not covered.

Throughout this Coverage Part the words "you" and "your" refer to the "named insured" shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **VI** - **Definitions.**

## SECTION I - COVERAGES

### A. Insuring Agreements

Coverage is provided under the following Insuring Agreements for which an Aggregate Limit of Insurance is shown in the Declarations:

**1. Insuring Agreement A - Response Expenses**

a. Coverage under Insuring Agreement **A** - Response Expenses applies only if all of the following conditions are met:

(1) There has been a "personal data compromise"; and

(2) Such "personal data compromise" is first discovered by you during the "coverage term"; and

(3) Such "personal data compromise" took place in the "coverage territory"; and

(4) Such "personal data compromise" is reported to us within 60 days after the date it is first discovered by you.

b. If the conditions listed in **a.** above have been met, then we will provide coverage for the following expenses when they arise directly from the "personal data compromise" described in **a.** above and are necessary and reasonable. Coverages **(4)** and **(5)** apply only if there has been a notification of the "personal data

compromise" to "affected individuals" as covered under coverage **(3)**.

**(1) Forensic IT Review**

Professional information technologies review if needed to determine, within the constraints of what is possible and reasonable, the nature and extent of the "personal data compromise" and the number and identities of the "affected individuals".

This does not include costs to analyze, research or determine any of the following:

(a) Vulnerabilities in systems, procedures or physical security;

(b) Compliance with PCI or other industry security standards; or

(c) The nature or extent of loss or damage to data that is not "personally identifying information" or "personally sensitive information".

If there is reasonable cause to suspect that a covered "personal data compromise" may have occurred, we will pay for costs covered under Forensic IT Review, even if it is eventually determined that there was no covered "personal data compromise". However, once it is determined that there was no covered "personal data compromise", we will not pay for any further costs.

**(2) Legal Review**

Professional legal counsel review of the "personal data compromise" and how you should best respond to it. If there is reasonable cause to suspect that a covered "personal data compromise" may have occurred, we will pay for costs covered under

HC 102 01 18

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Page 3 of 17

Legal Review, even if it is eventually determined that there was no covered "personal data compromise". However, once it is determined that there was no covered "personal data compromise", we will not pay for any further costs.

**(3) Notification to Affected Individuals**

We will pay your necessary and reasonable costs to provide notification of the "personal data compromise" to "affected individuals".

**(4) Services to Affected Individuals**

We will pay your necessary and reasonable costs to provide the following services to "affected individuals":

**(a)** The following services apply to any "personal data compromise".

**1)** Informational Materials

A packet of loss prevention and customer support information.

**2)** Help Line

A toll-free telephone line for "affected individuals" with questions about the "personal data compromise". Where applicable, the line can also be used to request additional services as listed in **(b)1)** and **2)** below.

Note, calls by "affected individuals" or their representatives to the Help Line do not constitute the making of a "claim" under Insuring Agreement **B** - Defense and Liability.

**(b)** The following additional services apply to "personal data compromise" events involving "personally identifying information".

**1)** Credit Report and Monitoring

A credit report and an electronic service automatically monitoring for activities affecting an individual's credit records. This service is subject to the "affected individual" enrolling for this service with the designated service provider.

**2)** Identity Restoration Case Management

As respects any "affected individual" who is or appears to be a victim of "identity theft" that may reasonably have arisen from the "personal data compromise", the services of an identity restoration professional who will assist that "affected individual" through the process of correcting credit and other records and, within the constraints of what is possible and reasonable, restoring control over his or her personal identity.

**(5) PR Services**

We will pay the necessary and reasonable fees and expenses you incur, with our prior written consent, for a professional public relations firm review of and response to the potential impact of the "personal data compromise" on your business relationships. We will only pay for such fees and expenses when such a public relations firm review and response is reasonably necessary to avert or mitigate material damage to your business relationships from the "personal data compromise".

Such fees and expenses include costs to implement public relations recommendations of such public relations firm. However, when such recommendations include advertising and special promotions designed to retain your relationship with "affected individuals", we will not pay for promotions:

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

HC 102 01 18

**(a)** Provided to any of your "executives" or "employees"; or

**(b)** Costing more than $25 per "affected individual".

**2. Insuring Agreement B - Defense and Liability**

**a.** Coverage under Insuring Agreement **B** - Defense and Liability applies only if all of the following conditions are met:

**(1)** During the "coverage term" or any applicable Extended Reporting Period, you first receive notice of a "claim" or "regulatory proceeding" which arises from a "personal data compromise" that:

**(a)** Took place on or after the Retroactive Date shown in the Declarations and before the end of the "policy period";

**(b)** Took place in the "coverage territory"; and

**(c)** Was submitted to us and covered under Insuring Agreement **A** - Response Expenses; and

**(2)** Such "claim" or "regulatory proceeding" is reported to us as soon as practicable, but in no event more than 60 days after the date it is first received by you.

**b.** If the conditions listed in **a.** above have been met, then we will pay on behalf of the "insured" "defense costs" and "data compromise liability" directly arising from the "claim" or "regulatory proceeding".

**c.** All "claims" or "regulatory proceedings" caused by a single "personal data compromise" will be deemed to have been made at the time that notice of the first of those "claims" or "regulatory proceedings" is received by you.

**3. Insuring Agreement C - Identity Recovery**

**a.** Coverage under Insuring Agreement **C** - Identity Recovery applies only if all of the following conditions are met:

**(1)** There has been an "identity theft" involving the personal identity of an "identity recovery insured" under this Coverage Part; and

**(2)** Such "identity theft" is first discovered by the "identity recovery insured" during the "coverage term"; and

**(3)** Such "identity theft" took place in the "coverage territory"; and

**(4)** Such "identity theft" is reported to us within 60 days after it is first discovered by the "identity recovery insured".

**b.** If the conditions listed in **a.** above have been met, then we will provide the following to the "identity recovery insured":

**(1)** Services of an "identity recovery case manager" as needed to respond to the "identity theft"; and

**(2)** Reimbursement of necessary and reasonable "identity recovery expenses" incurred as a direct result of the "identity theft".

**B. Exclusions**

**1.** Applicable to Insuring Agreements **A** and **B** only:

This insurance does not apply to "loss" or "claims" based upon, attributable to or arising out of:

**a. Contractual Liability**

An "insured's" assumption of liability by contract or agreement, whether oral or written. However, this exclusion shall not apply to:

**(1)** Any liability that an "insured" would have incurred in the absence of such contract or agreement; or

**(2)** Any PCI fines or penalties explicitly covered under Insuring Agreement **B** – Defense and Liability.

**b. Criminal Investigations or Proceedings**

Any criminal investigations or proceedings.

**c. Deficiency Correction**

Costs to research or correct any deficiency. This includes, but is not limited to, any deficiency in your sys-

tems, procedures or physical security that may have contributed to a "personal data compromise".

**d. Extortion**

Any extortion or blackmail. This includes, but is not limited to, ransom payments and private security assistance.

**e. Fraudulent, Dishonest or Criminal Acts**

Any criminal, fraudulent or dishonest act, error or omission, or any intentional or knowing violation of the law by the "insured".

**f. Non-monetary Relief**

That part of any "claim" seeking any non-monetary relief.

**g. Previously Reported Data Compromises**

The same facts alleged or contained in any "claim" which has been reported, or in any circumstances of which notice has been given, under any insurance policy of which this Coverage Part is a renewal or replacement.

**h. Prior Data Compromises**

Any "personal data compromise" first occurring before the Retroactive Date shown in the Declarations, or any "claim" arising from a "personal data compromise" that first occurred prior to the Retroactive Date shown in the Declarations.

**i. Prior or Pending Litigation**

Any "claim" or other proceeding against an "insured" which was pending or existed prior to the "coverage term", or arising out of the same or substantially the same facts, circumstances or allegations which are the subject of, or the basis for, such "claim" or other proceeding.

**j. Reckless Disregard**

Your reckless disregard for the security of "personally identifying information" or "personally sensitive information" in your care, custody or control.

**k. Uninsurable**

Any amount not insurable under applicable law.

**l. Willful Complicity**

The "insured's" intentional or willful complicity in a "personal data compromise".

2. Applicable to Insuring Agreement C only:

This insurance does not apply to:

**a. Fraudulent, Dishonest or Criminal Acts**

Any fraudulent, dishonest or criminal act by an "identity recovery insured" or any person aiding or abetting an "identity recovery insured", or by any "authorized representative" of an "identity recovery insured", whether acting alone or in collusion with others. However, this exclusion shall not apply to the interests of an "identity recovery insured" who has no knowledge of or involvement in such fraud, dishonesty or criminal act.

**b. Professional or Business Identity**

The theft of a professional or business identity.

**c. Unreported Identity Theft**

An "identity theft" that is not reported in writing to the police.

3. Applicable to Insuring Agreements A, B and C:

This insurance does not apply to "loss" or "claims" based upon, attributable to or arising out of:

**a. Nuclear**

Nuclear reaction or radiation or radioactive contamination, however caused.

**b. War**

(1) War, including undeclared or civil war or civil unrest;

(2) Warlike action by military force, including action hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by government authority in hindering or defending against any of these.

HC 102 01 18

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Page 6 of 17

## SECTION II - LIMITS OF INSURANCE AND DE-DUCTIBLE

A. Insuring Agreement **A** - Response Expenses:

1. The most we will pay under Insuring Agreement **A** - Response Expenses is the Response Expenses Limit of Insurance stated in the Declarations.

2. The Response Expenses Limit of Insurance is an annual aggregate limit. This amount is the most we will pay for the total of all "loss" covered under Insuring Agreement **A** - Response Expenses arising out of all "personal data compromise" events which are first discovered by you during the "coverage term". This limit applies regardless of the number of "personal data compromise" events discovered by you during that period.

3. A "personal data compromise" may be first discovered by you in one "coverage term" but cause covered "loss" in one or more subsequent "coverage terms". If so, all covered "loss" arising from such "personal data compromise" will be subject to the Response Expenses Limit of Insurance applicable to the "coverage term" when the "personal data compromise" was first discovered by you.

4. The most we will pay under Insuring Agreement **A** - Response Expenses for Forensic IT Review, Legal Review and PR Services coverages for "loss" arising from any one "personal data compromise" is the applicable sublimit for each of those coverages stated in the Declarations. These sublimits are part of, and not in addition to, the Aggregate Limit of Insurance referenced in Paragraph **2.** PR Services coverage is also subject to a limit per "affected individual" as described in Section **I., A.1.b.(5)** PR Services.

5. Coverage for Services to "affected individuals" is limited to costs to provide such services for a period of up to one year from the date of the notification to the "affected individuals" or the period required by law, whichever is longer. Notwithstanding the foregoing, coverage for Identity Restoration Case Management services initiated within such period may continue for a period of up to one year from the date such Identity Restoration Case Management services are initiated.

6. Response Expenses coverage is subject to the Response Expenses Deductible stated in the Declarations. You shall be responsible for such deductible amount as respects each "personal data compromise" covered under this Coverage Part. We may, at our option, pay any part or all of the deductible amount in order to respond effectively to a "personal data compromise" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

B. Insuring Agreement **B** - Defense and Liability:

1. The most we will pay under Insuring Agreement **B** - Defense and Liability (other than post-judgment interest) is the Limit of Insurance stated in the Declarations.

2. The Insuring Agreement **B** - Defense and Liability Limit of Insurance is an annual aggregate limit. This amount is the most we will pay for all "loss" covered under Insuring Agreement **B** - Defense and Liability (other than post-judgment interest) arising out of all "claims".

3. The most we will pay under Insuring Agreement **B** — Defense and Liability for "data compromise liability" and "defense costs" related to Regulatory Fines and Penalties and PCI Fines and Penalties coverages arising from any one "claim" or "regulatory proceeding" is the applicable sublimit for each of those coverages stated in the Declarations. These sublimits are part of, and not in addition to, the Aggregate Limit of Insurance referenced in Paragraph **2.**

4. The Defense and Liability Limit of Insurance for the Extended Reporting Periods (if applicable) shall be part of, and not in addition to, the Defense and Liability Limit for the immediately preceding "coverage term".

5. The Insuring Agreement **B** - Defense and Liability coverage is subject to the Deductible stated in the Declarations. You shall be responsible for such deductible amount as respects each "claim" or "regulatory proceeding" covered under this Coverage Part. We may, at our option, pay any part or all of the deductible amount to defend or effect settlement of any "claim", "loss" or "regulatory proceeding" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

C. Insuring Agreement **C** - Identity Recovery:

1. Case Management Service is available as needed for any one "identity theft" for up to 12 consecutive months from the inception of the service. Expenses we incur to provide Case Management Service do not reduce the Limit of Insurance available for "identity recovery expenses".

HC 102 01 18

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Page 7 of 17

2. Coverage under Insuring Agreement **C** - Identity Recovery is subject to the Annual Aggregate Limit of Insurance stated in the Declarations per "identity recovery insured". Regardless of the number of "identity theft" incidents, this limit is the most we will pay for the total of all "loss" arising out of all "identity thefts" suffered by one "identity recovery insured" which are first discovered by the "identity recovery insured" during the "coverage term". If an "identity theft" is first discovered in one "coverage term" and continues into other "coverage terms", all "loss" arising from such "identity theft" will be subject to the aggregate Limit of Insurance applicable to the "coverage term" when the "identity theft" was first discovered.

3. Legal costs as provided under Item **d.** of the definition of "identity recovery expenses" are part of, and not in addition to, the aggregate limit described in Paragraph **2.**

4. Item **e.** (Lost Wages) and Item **f.** (Child and Elder Care Expenses) of the definition of "identity recovery expenses" are jointly subject to the sublimit stated in the Declarations. This sublimit is part of, and not in addition to, the aggregate Limit of Insurance described in Paragraph **2.** Coverage is limited to wages lost and expenses incurred within 12 months after the first discovery of the "identity theft" by the "identity recovery insured".

5. Item **g.** (Mental Health Counseling) of the definition of "identity recovery expenses" is subject to the sublimit stated in the Declarations. This sublimit is part of, and not in addition to, the aggregate limit described in Paragraph **2.** Coverage is limited to counseling that takes place within 12 months after the first discovery of the "identity theft" by the "identity recovery insured".

6. Item **h.** (Miscellaneous Unnamed Costs) of the definition of "identity recovery expenses" is subject to the sublimit stated in the Declarations. This sublimit is part of, and not in addition to, the aggregate Limit of Insurance described in Paragraph **2.** Coverage is limited to costs incurred within 12 months after the first discovery of the "identity theft" by the "identity recovery insured".

7. Coverage under Insuring Agreement **C** - Identity Recovery is subject to the Identity Recovery Deductible stated in the Declarations. Each "identity recovery insured" shall be responsible for such deductible amount only once during each "coverage term". This deductible applies only to "identity recovery expenses".

The Limits of Insurance apply separately to each "coverage term".

## SECTION III - DEFENSE AND SETTLEMENT

The provisions contained within this Section apply only to Insuring Agreement **B** - Defense and Liability.

1. We will have the right and duty to select counsel and defend the "insured" against any "claim" or "regulatory proceeding" covered by Insuring Agreement **B** - Defense and Liability, regardless of whether the allegations of such "claim" or "regulatory proceeding" are groundless, false or fraudulent. However, we shall have no duty to defend the "insured" against any "claim" or "regulatory proceeding" seeking damages or other relief not insured by Insuring Agreement **B** - Defense and Liability.

2. We may, with your written consent, make any settlement of a "claim" or "regulatory proceeding" which we deem reasonable. If you withhold consent to such settlement, our liability for all "loss" resulting from such "claim" will not exceed the amount for which we could have settled such "claim" or "regulatory proceeding" plus "defense costs" incurred as of the date we proposed such settlement in writing to you.

3. We shall not be obligated to pay any "loss", or to defend or continue to defend any "claim" or "regulatory proceeding", after the Insuring Agreement **B** - Defense and Liability Limit of Insurance has been exhausted.

4. We shall pay all interest on that amount of any judgment within the Insuring Agreement **B** - Defense and Liability Limit of Insurance which accrues:

   a. After entry of judgment; and

   b. Before we pay, offer to pay or deposit in court that part of the judgment within the Insuring Agreement **B** - Defense and Liability Limit of Insurance or, in any case, before we pay or offer to pay the entire Insuring Agreement **B** - Defense and Liability Limit of Insurance.

   These interest payments shall be in addition to and not part of the Defense and Liability Limit.

## SECTION IV - CONDITIONS

1. **Bankruptcy**

   Your bankruptcy, or the bankruptcy of your estate if you are a sole proprietor, will not relieve us of our obligations under this Coverage Part.

2. **Due Diligence**

   You agree to use due diligence to prevent and mitigate "loss" covered under this Coverage Part. This includes, but is not limited to, complying with, and requiring your vendors to

comply with, reasonable and industry-accepted protocols for:

a. Providing and maintaining appropriate physical security for your premises, computer systems and hard copy files;

b. Providing and maintaining appropriate computer and Internet security;

c. Maintaining and updating at appropriate intervals backups of computer data;

d. Protecting transactions, such as processing credit card, debit card and check payments; and

e. Appropriate disposal of files containing "personally identifying information" or "personally sensitive information", including shredding hard copy files and destroying physical media used to store electronic data.

3. **Duties in the Event of a Claim, Regulatory Proceeding or Loss**

a. If, during the "coverage term", the "insured" first becomes aware of any circumstance that could reasonably be expected to give rise to a "claim" or "regulatory proceeding", the "insured" may give written notice to us. The notice must be made as soon as practicable, but in no event more than 60 days after the date the circumstance is first discovered by the "insured", must be made during the "coverage term" and must include:

(1) The specific details, including the date, of the circumstance;

(2) The alleged injuries or damage sustained or which may be sustained;

(3) The names of potential claimants; and

(4) The manner in which the "insured" first became aware of the circumstance.

Any subsequent "claim" or "regulatory proceeding" arising out of any circumstance which is the subject of such a written notice will be deemed to have been made at the time written notice in compliance with these requirements was first received by us.

b. If a "claim" or "regulatory proceeding" is brought against any "insured", you must:

(1) Immediately record the specifics of the "claim" or "regulatory proceeding" and the date received; and

(2) Provide us with written notice, as soon as practicable, but in no event more than 60 days after the date the "claim" or "regulatory proceeding" is first received by you.

(3) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim" or "regulatory proceeding";

(4) Authorize us to obtain records and other information;

(5) Cooperate with us in the investigation, settlement or defense of the "claim" or "regulatory proceeding";

(6) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to you because of "loss" or "defense costs" to which this insurance may also apply; and

(7) Not take any action, or fail to take any required action, that prejudices your rights or our rights with respect to such "claim" or "regulatory proceeding".

c. In the event of a "personal data compromise" covered under Insuring Agreement **A** - Response Expenses, you must see that the following are done:

(1) Notify the police if a law may have been broken.

(2) Notify us as soon as practicable, but in no event more than 60 days after the "personal data compromise". Include a description of any property involved.

(3) As soon as possible, give us a description of how, when and where the "personal data compromise" occurred.

(4) As often as may be reasonably required, permit us to:

(a) Inspect the property proving the "personal data compromise";

(b) Examine your books, records, electronic media and records and hardware;

(c) Take samples of damaged and undamaged property for inspection, testing and analysis; and

(d) Make copies from your books, records, electronic media and records and hardware.

(5) Send us signed, sworn proof of loss containing the information we request

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

to investigate the "personal data compromise". You must do this within 60 days after our request. We will supply you with the necessary forms.

(6) Cooperate with us in the investigation of the "personal data compromise" or settlement of the "loss".

(7) If you intend to continue your business, you must resume all or part of your operations as quickly as possible.

(8) Make no statement that will assume any obligation or admit any liability, for any loss for which we may be liable, without our prior written consent.

(9) Promptly send us any legal papers or notices received concerning the "personal data compromise" or "loss".

**d.** We may examine any "insured" under oath, while not in the presence of any other "insured" and at such times as may be reasonably required, about any matter relating to this insurance or the "claim" or "loss", including an "insured's" books and records. In the event of an examination, an "insured's" answers must be signed.

**e.** No "insured" may, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense without our prior written consent.

**4. Help Line**

For assistance, the "identity recovery insured" should call the **Identity Recovery Help Line** at **1-866-219-9831**. The **Identity Recovery Help Line** can provide the "identity recovery insured" with:

**a.** Information and advice for how to respond to a possible "identity theft"; and

**b.** Instructions for how to submit a service request for Case Management Service and/or a claim form for Expense Reimbursement Coverage.

In some cases, we may provide Case Management services at our expense to an "identity recovery insured" prior to a determination that a covered "identity theft" has occurred. Our provision of such services is not an admission of liability under the policy. We reserve the right to deny further coverage or service if, after investigation, we determine that a covered "identity theft" has not occurred.

As respects Expense Reimbursement Coverage, the "identity recovery insured" must send to us, within 60 days after our request, receipts, bills or other records

that support his or her claim for "identity recovery expenses".

**5. Legal Action Against Us**

**a.** No person or organization has a right:

(1) To join us as a party or otherwise bring us into a suit asking for damages from an "insured"; or

(2) To sue us under this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an "insured"; but we will not be liable for damages that are not payable under this Coverage Part, or that are in excess of the applicable Aggregate Limit of Insurance. An agreed settlement means a settlement and release of liability signed by us, the first "named insured" and the claimant or the claimant's legal representative.

**b.** You may not bring any legal action against us involving "loss":

(1) Unless you have complied with all the terms of this insurance;

(2) Until 90 days after you have filed proof of "loss" with us; and

(3) Unless brought within 2 years from the date you reported the "claim" or "loss" to us.

If any limitation in this condition is prohibited by law, such limitation is amended so as to equal the minimum period of limitation provided by such law.

**6. Legal Advice**

We are not your legal advisor. Our determination of what is or is not covered under this Coverage Part does not represent advice or counsel from us about what you should or should not do.

**7. Liberalization**

If, within 60 days prior to the beginning of this Coverage Part or during the "policy period", we make any changes to any forms or endorsements of this Coverage Part for which there is currently no separate premium charge, and that change provides more coverage than this Coverage Part, the change will automatically apply to this Coverage Part at the latter of:

**a.** The date we implemented the change in your state; or

**b.** The date this Coverage Part became effective; and

will be considered as included until the end of the current "policy period". We will make no additional premium charge for this additional coverage during the interim.

**8. Office of Foreign Assets Control (OFAC) Compliance**

Whenever insurance coverage provided by this policy would be in violation of any United States economic or trade sanctions, such insurance coverage shall be null and void.

**9. Other Insurance**

a. If any covered "loss" is covered by any other valid policy, then this Coverage Part shall apply only in excess of the amount of any deductible, retention and limit of insurance under such other policy whether such other policy is stated to be primary, contributory, excess, contingent or otherwise, unless such other policy is written specifically excess of this Coverage Part by reference in such other policy to this policy's policy number.

b. When this insurance is excess, we will have no duty to defend the "insured" against any "claim" if any other insurer has a duty to defend the "insured" against that "claim". But we will have the right to associate in the defense and control of any "claim" that we reasonably believe is likely to involve the insurance provided under this Coverage Part. If no other insurer defends, we will undertake to do so, but we will be entitled to the "insured's" rights against all those other insurers.

**10. Pre-Notification Consultation**

You agree to consult with us prior to the issuance of notification to "affected individuals". We assume no responsibility under this Coverage Part for any services promised to "affected individuals" without our prior agreement. If possible, this pre-notification consultation will also include the designated service provider(s) as agreed to under Condition **12.** Service Providers. You must provide the following at our pre-notification consultation with you:

a. The exact list of "affected individuals" to be notified, including contact information.

b. Information about the "personal data compromise" that may appropriately be communicated with "affected individuals".

c. The scope of services that you desire for the "affected individuals". For example, coverage may be structured to provide fewer services in order to make those services available to more "affected indi-

viduals" without exceeding the available Response Expenses Limit.

**11. Representations**

You represent that all information and statements contained in any application or questionnaire submitted in connection with this Coverage Part are true, accurate and complete. All such information and statements are the basis for our issuing this Coverage Part and shall be considered as incorporated into and shall constitute a part of this Coverage Part. Misrepresentation or omission of any material fact may be grounds for the rescission of this Coverage Part.

**12. Separation of Insureds**

Except with respect to the applicable Limit of Insurance, and any rights or duties specifically assigned in this Coverage Part or the policy to which it is attached, to the first "named insured", this insurance applies separately to each "insured" against whom a "claim" is made.

**13. Service Providers**

a. We will only pay under this Coverage Part for services that are provided by service providers approved by us. You must obtain our prior approval for any service provider whose expenses you want covered under this Coverage Part. We will not unreasonably withhold such approval.

b. Prior to the Pre-Notification Consultation described in the Pre-Notification Consultation Condition above, you must come to agreement with us regarding the service provider(s) to be used for the Notification to Affected Individuals and Services to Affected Individuals. We will suggest a service provider. If you prefer to use an alternate service provider, our coverage is subject to the following limitations:

(1) Such alternate service provider must be approved by us;

(2) Such alternate service provider must provide services that are reasonably equivalent or superior in both kind and quality to the services that would have been provided by the service provider we had suggested; and

(3) Our payment for services provided by any alternate service provider will not exceed the amount that we would have paid using the service provider we had suggested.

**14. Services**

The following conditions apply as respects any services provided to you or any "affected indi-

vidual" or "identity recovery insured" by us, our designees or any service firm paid for in whole or in part under this Coverage Part:

a. The effectiveness of such services depends on the cooperation and assistance of you, "affected individuals" and "identity recovery insureds".

b. All services may not be available or applicable to all individuals. For example, "affected individuals" and "identity recovery insureds" who are minors or foreign nationals may not have credit records that can be provided or monitored. Service in Canada will be different from service in the United States and Puerto Rico in accordance with local conditions.

c. We do not warrant or guarantee that the services will end or eliminate all problems associated with the covered events.

d. Except for the services of an "identity recovery case manager" under Insuring Agreement **C** - Identity Recovery, which we will provide directly, you will have a direct relationship with the professional service firms paid for in whole or in part under this Coverage Part. Those firms work for you.

**15. Subrogation**

With respect to any payment under this Coverage Part on behalf of any "insured", we shall be subrogated to the "insured's" rights of recovery to the extent of such payment. The "insured" shall execute all papers required and shall do everything necessary to secure and preserve such rights, including the execution of such documents necessary to enable us to bring suit in the "insured's" name. Any recoveries, less the cost of obtaining them, will be distributed as follows:

a. To you, until you are reimbursed for any "loss" you sustain that exceeds the sum of the applicable Aggregate Limit of Insurance and the Deductible Amount, if any;

b. Then to us, until we are reimbursed for the payment under this Coverage Part;

c. Then to you, until you are reimbursed for that part of the payment equal to the Deductible Amount, if any.

**16. Valuation - Settlement**

All premiums, Limits of Insurance, Deductible Amounts, "loss" and any other monetary amounts under this Coverage Part are expressed and payable in the currency of the United States of America. If judgment is rendered, settlement is agreed to or another component of "loss" under this Coverage Part is expressed in any currency other than United States of America dollars, payment under this Coverage Part shall be made in United States dollars at the rate of exchange published in *The Wall Street Journal* on the date the final judgment is entered, settlement amount is agreed upon, or the other component of "loss" is due, respectively.

**17. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first "named insured" shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V - EXTENDED REPORTING PERIODS**

The provisions contained within this Section apply only to Insuring Agreement **B** - Defense and Liability.

1. You shall have the right to the Extended Reporting Periods described in this section, in the event that:

   a. You or we cancel this Coverage Part;

   b. You or we refuse to renew this Coverage Part; or

   c. We renew this Coverage Part on other than a claims-made basis or with a retroactive date later than the Retroactive Date shown in the Declarations.

2. If an event as specified in Paragraph 1. has occurred, you shall have the right to the following:

   a. An Automatic Extended Reporting Period of 90 days after the effective date of cancellation or nonrenewal at no additional premium in which to give to us written notice of a "claim" or "regulatory proceeding" of which you first receive notice during said Automatic Extended Reporting Period for any "personal data compromise" occurring on or after the Retroactive Date shown on the Declarations and before the end of the "policy period" and which is otherwise covered by this Coverage Part; and

   b. Upon payment of the additional premium stated in the Declarations, a Supplemental Extended Reporting Period for the term stated in the Supplemental Extended Reporting Period Endorsement will be provided immediately following the effective date of cancellation or nonrenewal in which to give to us written notice of a "claim" or "regulatory proceeding" of which you first receive notice during said Supplemental Extended Reporting Period

for any "personal data compromise" occurring on or after the Retroactive Date shown in the Declarations and before the end of the "policy period" and which is otherwise covered by this Coverage Part.

To obtain the Supplemental Extended Reporting Period, you must request it in writing and pay the additional premium due, within 60 days of the effective date of cancellation or nonrenewal. The additional premium for the Supplemental Extended Reporting Period shall be fully earned at the inception of the Supplemental Extended Reporting Period. If we do not receive the written request as required, you may not exercise this right at a later date.

c. The Defense and Liability Limit of Insurance for the Extended Reporting Periods shall be part of, and not in addition to, the Defense and Liability Limit of Insurance for the immediately preceding "coverage term".

## SECTION VI – DEFINITIONS

1. "Affected individual" means any person whose "personally identifying information" or "personally sensitive information" is lost, stolen, accidentally released or accidentally published by a "personal data compromise" covered under this Coverage Part. This definition is subject to the following provisions:

    a. "Affected individual" does not include any business or organization. Only an individual person may be an "affected individual".

    b. An "affected individual" may reside anywhere in the world.

2. "Authorized representative" means a person or entity authorized by law or contract to act on behalf of an "identity recovery insured".

3. "Claim":

    a. Means:

        (1) A civil proceeding in which it is alleged that the claimant suffered damages arising from:

            (a) A "personal data compromise" that was covered under Insuring Agreement **A** - Response Expenses section of this Coverage Part and in connection with which you submitted a claim to us and provided notifications and services to "affected individuals" in consultation with us pursuant to Insuring Agreement **A** - Response Expenses; or

            (b) The violation of a governmental statute or regulation arising from a "personal data compromise" that was covered under Insuring Agreement **A** - Response Expenses and in connection with which you submitted a claim to us and provided notifications and services to "affected individuals" in consultation with us pursuant to Insuring Agreement **A** - Response Expenses.

    (2) "Claim" includes:

        (a) An arbitration proceeding in which such damages are claimed and to which the "insured" must submit or does submit with our consent;

        (b) Any other alternative dispute resolution proceeding in which such damages are claimed and to which the "insured" must submit or does submit with our consent; or

        (c) A written demand for money, when such demand could reasonably result in a civil proceeding as described in this definition.

    b. Does not include any demand or action brought by or on behalf of someone who is:

        (1) Your "executive";

        (2) Your owner or part-owner; or

        (3) A holder of your securities;

        in their capacity as such, whether directly, derivatively, or by class action. "Claim" will include proceedings brought by such individuals in their capacity as "affected individuals", but only to the extent that the damages claimed are the same as would apply to any other "affected individual".

4. "Coverage term" means the following individual increment, or if a multi-year "policy period", increments, of time, which comprise the "policy period" of this Coverage Part:

    a. The year commencing on the Effective Date of this Coverage Part at 12:01 AM standard time at your mailing address shown in the Declarations, and if a multi-year "policy period", each consecutive annual period thereafter, or portion thereof if any period is for a period of less than 12 months, constitute individual "coverage terms". The last "coverage term" ends at 12:00 AM standard time at your mailing

address shown in the Declarations on the earlier of:

(1) The day the "policy period" shown in the Declarations ends; or

(2) The day the policy to which this Coverage Part is attached is terminated or cancelled.

b. However, if after the issuance of this Coverage Part, any "coverage term" is extended for an additional period of less than 12 months, that additional period of time will be deemed to be part of the last preceding "coverage term".

5. "Coverage territory" means:

a. With respect to Insuring Agreement **A** - Response Expenses, anywhere in the world.

b. With respect to Insuring Agreement **B** - Defense and Liability, anywhere in the world, however, "claims" must be brought in the United States (including its territories and possessions), Puerto Rico or Canada.

c. With respect to Insuring Agreement **C** - Identity Recovery, anywhere in the world

6. "Data compromise liability":

a. Means the following, when they arise from a "claim" or "regulatory proceeding":

(1) Damages (including punitive and exemplary damages and the multiple portion of any multiplied damage award), judgments or settlements;

(2) Attorney's fees and other litigation costs added to that part of any judgment paid by us, when such fees and costs are awarded by law or court order; and

(3) Pre-judgment interest on that part of any judgment paid by us.

b. Also includes any Payment Card Industry (PCI) fine or penalty imposed under a contract to which you are a party when such fine or penalty arises from a "claim". PCI Fines and Penalties do not include any increased transaction costs.

c. Also includes any fine or penalty imposed by law, to the extent such fine or penalty is legally insurable under the law of the applicable jurisdiction when such fine or penalty arises from a "regulatory proceeding".

d. Does not include:

(1) Civil or criminal fines or penalties imposed by law, except for civil fines and penalties expressly covered under paragraphs **b.** and **c.** above;

(2) Taxes; or

(3) Matters which may be deemed uninsurable under the applicable law.

e. With respect to fines and penalties and punitive, exemplary and multiplied damages, the law of the jurisdiction most favorable to the insurability of those fines, penalties or damages shall control for the purpose of resolving any dispute between us and any "insured" regarding whether the fines, penalties or damages specified in this definition above are insurable under this Coverage Part, provided that such jurisdiction:

(1) Is where those fines, penalties or damages were awarded or imposed;

(2) Is where any "personal data compromise" took place for which such fines, penalties or damages were awarded or imposed;

(3) Is where you are incorporated or you have your principal place of business; or

(4) Is where we are incorporated or have our principal place of business.

7. "Defense costs":

a. Means reasonable and necessary expenses resulting solely from the investigation, defense and appeal of any "claim" or "regulatory proceeding" against an "insured". Such expenses may be incurred by us. Such expenses may include premiums for any appeal bond, attachment bond or similar bond. However, we have no obligation to apply for or furnish such bond.

b. Does not include the salaries or wages of your "employees" or "executives", or your loss of earnings.

8. "Employee" means any natural person, other than an "executive", who was, now is or will be:

a. Employed on a full- or part-time basis by you;

b. Furnished temporarily to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions;

c. Leased to you by a labor leasing firm under an agreement between you and the labor leasing firm to perform duties relat-

Includes copyrighted material of Insurance
Services Office, Inc. with its permission.

HC 102 01 18

ed to the conduct of your business, but does not mean a temporary employee as defined in Paragraph **8.b.**; or

**d.** Your volunteer worker, which includes unpaid interns.

**9.** "Executive" means any natural person who was, now is or will be:

**a.** The owner of a sole proprietorship that is a "named insured"; or

**b.** A duly elected or appointed:

(1) Director;

(2) Officer;

(3) Managing Partner;

(4) General Partner;

(5) Member (if a limited liability company);

(6) Manager (if a limited liability company); or

(7) Trustee,

of a "named insured".

**10.** "Identity recovery case manager" means one or more individuals assigned by us to assist an "identity recovery insured" with communications we deem necessary for re-establishing the integrity of the personal identity of the "identity recovery insured". This includes, with the permission and cooperation of the "identity recovery insured", written and telephone communications with law enforcement authorities, governmental agencies, credit agencies and individual creditors and businesses.

**11.** "Identity recovery expenses" means the following when they are reasonable and necessary expenses that are incurred as a direct result of an "identity theft" suffered by an "identity recovery insured":

**a.** Costs for re-filing applications for loans, grants or other credit instruments that are rejected solely as a result of an "identity theft".

**b.** Costs for notarizing affidavits or other similar documents, long distance telephone calls and postage solely as a result of your efforts to report an "identity theft" or amend or rectify records as to your true name or identity as a result of an "identity theft".

**c.** Costs for credit reports from established credit bureaus.

**d.** Fees and expenses for an attorney approved by us for the following:

(1) The defense of any civil suit brought against an "identity recovery insured".

(2) The removal of any civil judgment wrongfully entered against an "identity recovery insured".

(3) Legal assistance for an "identity recovery insured" at an audit or hearing by a governmental agency.

(4) Legal assistance in challenging the accuracy of the "identity recovery insured's" consumer credit report.

(5) The defense of any criminal charges brought against an "identity recovery insured" arising from the actions of a third party using the personal identity of the "identity recovery insured".

**e.** Actual lost wages of the "identity recovery insured" for time reasonably and necessarily taken away from work and away from the work premises. Time away from work includes partial or whole work days. Actual lost wages may include payment for vacation days, discretionary days, floating holidays and paid personal days. Actual lost wages does not include sick days or any loss arising from time taken away from self-employment. Necessary time off does not include time off to do tasks that could reasonably have been done during non-working hours.

**f.** Actual costs for supervision of children or elderly or infirm relatives or dependents of the "identity recovery insured" during time reasonably and necessarily taken away from such supervision. Such care must be provided by a professional care provider who is not a relative of the "identity recovery insured".

**g.** Actual costs for counseling from a licensed mental health professional. Such care must be provided by a professional care provider who is not a relative of the "identity recovery insured".

**h.** Any other reasonable costs necessarily incurred by an "identity recovery insured" as a direct result of the "identity theft".

(1) Such costs include:

(a) Costs by the "identity recovery insured" to recover control over his or her personal identity.

(b) Deductibles or service fees from financial institutions.

(2) Such costs do not include:

(a) Costs to avoid, prevent or detect "identity theft" or other loss.

(b) Money lost or stolen.

(c) Costs that are restricted or excluded elsewhere in this Coverage Part or policy.

12. "Identity recovery insured" means the following:

a. When the entity insured under this Coverage Part is a sole proprietorship, the "identity recovery insured" is the individual person who is the sole proprietor of the "named insured".

b. When the "named insured" under this Coverage Part is a partnership, the "identity recovery insureds" are the current partners.

c. When the "named insured" under this Coverage Part is a corporation or other form of organization, other than those described in a. or b. above, the "identity recovery insureds" are all individuals having an ownership position of 20% or more of the insured entity. However, if and only if there is no one who has such an ownership position, then the "identity recovery insured" shall be:

(1) The chief executive of the insured entity; or

(2) As respects a religious institution, the senior ministerial employee.

d. The legally recognized spouse of any individual described in a., b. or c. above.

An "identity recovery insured" must always be an individual person. The "named insured" under this Coverage Part is not an "identity recovery insured".

13. "Identity theft" means the fraudulent use of "personally identifying information". This includes fraudulently using such information to establish credit accounts, secure loans, enter into contracts or commit crimes.

"Identity theft" does not include the fraudulent use of a business name, d/b/a or any other method of identifying a business activity.

14. "Insured" means:

a. With respect to Insuring Agreement A - Response Expenses any "named insured".

b. With respect to Insuring Agreement B - Defense and Liability:

(1) Any "named insured"; and

(2) Any "employee" or "executive" of a "named insured", but:

(a) Only for the conduct of the "named insured's" business within the scope of his or her employment or duties as an "executive"; and

(b) Such "employee" or "executive" shall not be an "insured" to the extent his or her actions or omissions are criminal, fraudulent, dishonest or constitute an intentional or knowing violation of the law.

c. With respect to Insuring Agreement C - Identity Recovery any "named insured".

15. "Loss" means:

a. With respect to Insuring Agreement A - Response Expenses:

Those expenses enumerated in Section I, A., Paragraph 1.b.

b. With respect to Insuring Agreement B - Defense and Liability:

(1) "Defense costs"; and

(2) "Data compromise liability".

c. With respect to Insuring Agreement C - Identity Recovery, "identity recovery expenses".

16. "Named insured" means the entity or entities shown in the Declarations as a Named Insured.

17. "Personal data compromise" means the loss, theft, accidental release or accidental publication of "personally identifying information" or "personally sensitive information" as respects one or more "affected individuals". If the loss, theft, accidental release or accidental publication involves "personally identifying information", such loss, theft, accidental release or accidental publication must result in or have the reasonable possibility of resulting in the fraudulent use of such information. This definition is subject to the following provisions:

a. At the time of the loss, theft, accidental release or accidental publication, the "personally identifying information" or "personally sensitive information" need not be at the insured premises but must be in the direct care, custody or control of:

(1) You; or

(2) A professional entity with which you have a direct relationship and to which you (or an "affected individual" at your direction) have turned over (directly or via a professional transmission or transportation provider) such information for storage, pro-

HC 102 01 18

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Page 16 of 17

cessing, transmission or transportation of such information.

b. "Personal data compromise" includes disposal or abandonment of "personally identifying information" or "personally sensitive information" without appropriate safeguards such as shredding or destruction, subject to the following provisions:

(1) The failure to use appropriate safeguards must be accidental and not reckless or deliberate; and

(2) Such disposal or abandonment must take place during the time period for which this Coverage Part is effective.

c. "Personal data compromise" includes situations where there is a reasonable cause to suspect that such "personally identifying information" or "personally sensitive information" has been lost, stolen, accidentally released or accidentally published, even if there is no firm proof.

d. All incidents of "personal data compromise" that are discovered at the same time or arise from the same cause will be considered one "personal data compromise".

18. "Personally identifying information" means information, including health information, that could be used to commit fraud or other illegal activity involving the credit, access to health care or identity of an "affected individual" or "identity recovery insured". This includes, but is not limited to, Social Security numbers or account numbers.

"Personally identifying information" does not mean or include information that is otherwise available to the public, such as names and addresses.

19. "Personally sensitive information" means private information specific to an individual the release of which requires notification of "affected individuals" under any applicable law.

"Personally sensitive information" does not mean or include "personally identifying information".

20. "Policy period" means the cumulative total of each individual "coverage term" comprising the period of time from the inception date of this Coverage Part shown in the Declarations to the expiration date shown in the Declarations, or its earlier cancellation or termination date.

21. "Regulatory proceeding" means an investigation, demand or proceeding alleging a violation of law or regulation brought by, or on behalf of, the Federal Trade Commission, Federal Communications Commission or other administrative or regulatory agency, or any federal, state, local or foreign governmental entity in such entity's regulatory or official capacity.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

HC 102 01 18

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PENNSYLVANIA CHANGES

This endorsement modifies insurance provided under the following:

> **CINCINNATI CYBER DEFENSE™ COVERAGE PART**
> **CINCINNATI DATA DEFENDER™ COVERAGE PART**
> **CINCINNATI NETWORK DEFENDER™ COVERAGE PART**

Paragraph **F. Transfer of Your Rights and Duties Under this Policy** in the Common Policy Conditions is deleted in its entirety and replaced by the following:

**F.   Transfer of Your Rights and Duties Under this Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of a sole proprietor who is also the first "named insured".

If you are a sole proprietor and you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

**HC 429 PA 03 16**                    Includes copyrighted material of Insurance
                                       Services Office, Inc., with its permission.

# THE CINCINNATI INSURANCE COMPANY
### A Stock Insurance Company

# CINCINNATI NETWORK DEFENDER™ COVERAGE PART
# DECLARATIONS

**THIS COVERAGE PART PROVIDES CLAIMS-MADE COVERAGE, WHICH APPLIES ONLY TO "CLAIMS" FIRST MADE DURING THE "POLICY PERIOD" OR ANY APPLICABLE EXTENDED REPORTING PERIOD. THE LIMIT OF INSURANCE TO PAY DAMAGES OR SETTLEMENTS WILL BE REDUCED AND MAY BE EXHAUSTED BY "DEFENSE COSTS", AND "DEFENSE COSTS" WILL BE APPLIED AGAINST THE DEDUCTIBLE. IN NO EVENT WILL WE BE LIABLE FOR "DEFENSE COSTS" OR THE AMOUNT OF ANY JUDGMENT OR SETTLEMENT IN EXCESS OF THE LIMIT OF INSURANCE. READ THE ENTIRE POLICY CAREFULLY.**

Attached to and forming part of POLICY NUMBER: **EPP 026 35 19**     Effective Date **07-01-2020**

Named Insured is the same as it appears in the Common Policy Declarations unless another entry is made here.

**Retroactive Date:**    07-01-2017

### Limits of Insurance and Deductible

| | Insuring Agreement | Annual Aggregate | Sublimit | | Deductible | |
|---|---|---|---|---|---|---|
| **A** | Computer Attack | $100,000 | | | $1,000 | 1 |
| | | | Cyber Extortion | $10,000 | $1,000 | 2 |
| | | | Loss of Business | $50,000 | | |
| | | | Public Relations | $50,000 | | |
| **B** | Network Security and Electronic Media Liability | $100,000 | | | $1,000 | |

| **TOTAL ANNUAL PREMIUM** | $242 |
|---|---|

| Optional Supplemental Extended Reporting Period - Term: | Optional Supplemental Extended Reporting Period - Premium: |
|---|---|
| 1 YEAR | 76 |
| 2 YEAR | 152 |
| 3 YEAR | 202 |
| 4 YEAR | 253 |
| 5 YEAR | 278 |
| 6 YEAR | 303 |

FORMS AND/OR ENDORSEMENTS APPLICABLE TO THIS COVERAGE PART:

| HC103 | 01/18 | CINCINNATI NETWORK DEFENDER™ COVERAGE FORM |
|---|---|---|
| HC429PA | 03/16 | PENNSYLVANIA CHANGES |

---

[1] Computer Attack Deductible other than Cyber Extortion
[2] Cyber Extortion Deductible

**HC 503 01 18**

# CINCINNATI NETWORK DEFENDER™ COVERAGE FORM
## TABLE OF CONTENTS

**Coverage Part Provision:**     **Begins on Page:**

Preamble .......................................................................................................................................3

SECTION I - COVERAGES .............................................................................................................3

A. Insuring Agreements ...............................................................................................................3

   1. Insuring Agreement A - Computer Attack ...........................................................................3
   2. Insuring Agreement B - Network Security and Electronic Media Liability ...........................3

B. Exclusions ..............................................................................................................................4

   1. Contractual Liability ...........................................................................................................4
   2. Criminal Investigations or Proceedings .............................................................................4
   3. Deficiency Correction ........................................................................................................4
   4. Extortion ...........................................................................................................................4
   5. Fines or Penalties .............................................................................................................4
   6. Fraudulent, Dishonest or Criminal Acts ............................................................................4
   7. Information Technology Products .......................................................................................4
   8. Infrastructure Failure .........................................................................................................4
   9. Knowledge of Falsity .........................................................................................................4
   10. Non-monetary Relief ........................................................................................................4
   11. Nuclear ...........................................................................................................................4
   12. Patent or Trade Secret Infringement ...............................................................................4
   13. Previously Reported Claims ............................................................................................4
   14. Prior Wrongful Acts .........................................................................................................5
   15. Prior or Pending Litigation ...............................................................................................5
   16. Property Damage or Bodily Injury ....................................................................................5
   17. War .................................................................................................................................5
   18. Willful Complicity .............................................................................................................5

SECTION II - LIMITS OF INSURANCE AND DEDUCTIBLE .............................................................5

SECTION III - DEFENSE AND SETTLEMENT .................................................................................6

SECTION IV - CONDITIONS ...........................................................................................................6

   1. Bankruptcy .......................................................................................................................6
   2. Due Diligence ...................................................................................................................6
   3. Duties in the Event of a Claim or Loss ..............................................................................6
   4. Legal Action Against Us ....................................................................................................7
   5. Liberalization ....................................................................................................................8
   6. Office of Foreign Assets Control (OFAC) Compliance .......................................................8
   7. Other Insurance ................................................................................................................8
   8. Representations ................................................................................................................8
   9. Separation of Insureds ......................................................................................................8
   10. Services ..........................................................................................................................8
   11. Subrogation ....................................................................................................................8
   12. Valuation - Settlement .....................................................................................................9
   13. When We Do Not Renew .................................................................................................9

SECTION V - EXTENDED REPORTING PERIODS ..........................................................................9

SECTION VI - DEFINITIONS ...........................................................................................................9

   1. "Actual cash value" ...........................................................................................................9
   2. "Bodily injury" ...................................................................................................................9
   3. "Business income loss" .....................................................................................................9
   4. "Claim" ............................................................................................................................10
   5. "Computer attack" ...........................................................................................................10
   6. "Computer system" .........................................................................................................10
   7. "Coverage term" .............................................................................................................10

## TABLE OF CONTENTS (CONT'D)

**Coverage Part Provision:**                                                     **Begins on Page:**

**SECTION VI – DEFINITIONS (Cont'd)**..................................................................................10

8.   "Coverage territory"....................................................................................10
9.   "Cyber extortion expenses".........................................................................10
10.  "Cyber extortion threat"..............................................................................11
11.  "Data re-creation costs"..............................................................................11
12.  "Data restoration costs"..............................................................................11
13.  "Defense costs"..........................................................................................11
14.  "Denial of service attack"............................................................................11
15.  "Electronic media incident"..........................................................................11
16.  "Employee".................................................................................................12
17.  "Executive".................................................................................................12
18.  "Extra expense"..........................................................................................12
19.  "Insured".....................................................................................................12
20.  "Interrelated"...............................................................................................12
21.  "Loss".........................................................................................................12
22.  "Malware attack".........................................................................................12
23.  "Named insured".........................................................................................12
24.  "Network security incident".........................................................................12
25.  "Period of restoration".................................................................................13
26.  "Personally identifying information".............................................................13
27.  "Personally sensitive information"...............................................................13
28.  "Policy period"............................................................................................13
29.  "Property damage"......................................................................................13
30.  "Ransomware"............................................................................................13
31.  "Settlement costs".......................................................................................13
32.  "System restoration costs"..........................................................................13
33.  "Third party corporate data".......................................................................14
34.  "Unauthorized access incident"..................................................................14
35.  "Wrongful act"............................................................................................14

# CINCINNATI NETWORK DEFENDER™ COVERAGE FORM

**THIS COVERAGE PART PROVIDES CLAIMS-MADE COVERAGE, WHICH APPLIES ONLY TO "CLAIMS" FIRST MADE DURING THE "POLICY PERIOD" OR ANY APPLICABLE EXTENDED REPORTING PERIOD. THE LIMIT OF INSURANCE TO PAY DAMAGES OR SETTLEMENTS WILL BE REDUCED AND MAY BE EXHAUSTED BY "DEFENSE COSTS", AND "DEFENSE COSTS" WILL BE APPLIED AGAINST THE DEDUCTIBLE. IN NO EVENT WILL WE BE LIABLE FOR "DEFENSE COSTS" OR THE AMOUNT OF ANY JUDGMENT OR SETTLEMENT IN EXCESS OF THE LIMIT OF INSURANCE. READ THE ENTIRE POLICY CAREFULLY.**

Various provisions in this Coverage Part restrict coverage. Read the entire Coverage Part carefully to determine rights, duties and what is and is not covered.

Throughout this Coverage Part the words "you" and "your" refer to the "named insured" shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **VI - Definitions.**

## SECTION I - COVERAGES

### A. Insuring Agreements

Coverage is provided under the following Insuring Agreements for which an Aggregate Limit of Insurance is shown in the Declarations:

**1. Insuring Agreement A - Computer Attack**

a. Coverage under Insuring Agreement **A** - Computer Attack applies only if all of the following conditions are met:

(1) There has been a "computer attack"; and

(2) Such "computer attack" is first discovered by you during the "policy period"; and

(3) Such "computer attack" occurred in the "coverage territory"; and

(4) Such "computer attack" is reported to us as soon as practicable, but in no event more than 60 days after the date it is first discovered by you.

b. If all of the conditions in **a.** above have been met, then we will provide you the following coverages for "loss" directly arising from such "computer attack".

**(1) Cyber Extortion**

We will pay your necessary and reasonable "cyber extortion expenses".

**(2) Data Restoration**

We will pay your necessary and reasonable "data restoration costs".

**(3) Data Re-creation**

We will pay your necessary and reasonable "data re-creation costs".

**(4) System Restoration**

We will pay your necessary and reasonable "system restoration costs".

**(5) Loss of Business**

We will pay your actual "business income loss" and your necessary and reasonable "extra expenses".

**(6) Public Relations**

If you suffer covered "business income loss", we will pay the necessary and reasonable fees and expenses you incur, with our prior written consent, for a professional public relations firm review of and response to the potential impact of the "computer attack" on your business relationships. We will only pay for such fees and expenses when such a public relations firm review and response is reasonably necessary to avert or mitigate material damage to your business relationships from the "computer attack".

**2. Insuring Agreement B - Network Security and Electronic Media Liability**

a. Coverage under Insuring Agreement **B** - Network Security and Electronic Media Liability applies only if all of the following conditions are met:

(1) During the "coverage term" or any applicable Extended Reporting Period, you first receive no-

tice of a "claim" which arises from a "wrongful act" that:

(a) Took place on or after the Retroactive Date shown in the Declarations and before the end of the "policy period"; and

(b) Took place in the "coverage territory"; and

(2) Such "claim" is reported to us as soon as practicable, but in no event more than 60 days after the date it is first received by you.

b. If the conditions listed in **a.** above have been met, then we will pay on behalf of the "insured" the "insured's" necessary and reasonable "defense costs" and "settlement costs" directly arising from the "claim".

c. All "claims" caused by a single "wrongful act" or series of "interrelated" "wrongful acts" will be deemed to have been made at the time that notice of the first of those "claims" is received by you.

## B. Exclusions

This insurance does not apply to "loss" or "claims" based upon, attributable to or arising out of:

### 1. Contractual Liability

An "insured's" assumption of liability by contract or agreement, whether oral or written. However, this exclusion shall not apply to any liability that an "insured" would have incurred in the absence of such contract or agreement.

### 2. Criminal Investigations or Proceedings

Any criminal investigations or proceedings.

### 3. Deficiency Correction

Costs to research or correct any deficiency.

### 4. Extortion

Any threat, extortion or blackmail. This includes, but is not limited to, ransom payments and private security assistance.

This exclusion does not apply to the extent that insurance coverage is provided under **SECTION I – COVERAGES**, Paragraph **A.1.b.(1) Cyber Extortion.**

### 5. Fines or Penalties

Any fines or penalties.

### 6. Fraudulent, Dishonest or Criminal Acts

Any criminal, fraudulent or dishonest act, error or omission, or any intentional or knowing violation of the law by the "insured".

### 7. Information Technology Products

The propagation or forwarding of malware, including viruses, worms, Trojans, spyware and keyloggers in connection with hardware or software created, produced or modified by you for sale, lease or license to third parties.

### 8. Infrastructure Failure

Failure or interruption of or damage to any electrical power supply network or telecommunication network not owned and operated by the "insured" including, but not limited to, the internet, internet service providers, DNS service providers, cable and wireless providers, internet exchange providers, search engine providers, tier 1 internet protocol networks and other providers of telecommunications or internet infrastructure.

### 9. Knowledge of Falsity

Any oral or written publication of material, if done by the "insured" or at the "insured's" direction with knowledge of its falsity.

### 10. Non-monetary Relief

That part of any "claim" seeking any non-monetary relief.

### 11. Nuclear

Nuclear reaction or radiation or radioactive contamination, however caused.

### 12. Patent or Trade Secret Infringement

Any actual or alleged patent or trade secret violation including any actual or alleged violation of the Patent Act, the Economic Espionage Act of 1996, or the Uniform Trade Secrets Act and their amendments.

### 13. Previously Reported Claims

The same facts alleged or contained in any "claim" which has been reported, or in any circumstances of which notice has been given, under any insurance policy of which this Coverage Part is a renewal or replacement.

### 14. Prior Wrongful Acts

Any "wrongful act" first occurring before the Retroactive Date shown in the Declarations or any "claim" arising from a "wrongful act" that first occurred prior to the Retroactive Date shown in the Declarations.

### 15. Prior or Pending Litigation

Any "claim" or other proceeding against an "insured" which was pending or existed prior to the "coverage term", or arising out of the same or substantially the same facts, circumstances or allegations which are the subject of, or the basis for, such "claim" or other proceeding.

### 16. Property Damage or Bodily Injury

"Property damage" or "bodily injury" other than "bodily injury" arising from an "electronic media incident".

### 17. War

a. War, including undeclared or civil war or civil unrest;

b. Warlike action by military force, including action hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

c. Insurrection, rebellion, revolution, usurped power, or action taken by government authority in hindering or defending against any of these.

### 18. Willful Complicity

The "insured's" intentional or willful complicity in a covered "loss" event or your reckless disregard for the security of your "computer system" or data.

## SECTION II - LIMITS OF INSURANCE AND DEDUCTIBLE

### A. Insuring Agreement A - Computer Attack

1. The most we will pay under Insuring Agreement **A** - Computer Attack for Cyber Extortion coverage for "loss" arising from any one "computer attack" is the Cyber Extortion Sublimit stated in the Declarations. This Limit of Insurance is part of, and not in addition to, the Computer Attack Aggregate Limit of Insurance stated in Paragraph **4.** below.

2. The most we will pay under Insuring Agreement **A** - Computer Attack for Loss of Business coverage for "loss" arising from any one "computer attack" is the Loss of Business Sublimit stated in the

Declarations. This sublimit is part of, and not in addition to, the Computer Attack Aggregate Limit of Insurance stated in Paragraph **4.** below.

3. The most we will pay under Insuring Agreement **A** - Computer Attack for Public Relations coverage for "loss" arising from any one "computer attack" is the Public Relations Sublimit stated in the Declarations. This sublimit is part of, and not in addition to, the Computer Attack Aggregate Limit of Insurance stated in Paragraph **4.** below.

4. The Computer Attack Aggregate Limit of Insurance is an annual aggregate limit. This amount is the most we will pay for the total of all "loss" covered under Insuring Agreement **A** - Computer Attack arising out of all "computer attack" events which are first discovered by you during the "coverage term". This limit applies regardless of the number of "computer attack" events first discovered during the "coverage term".

5. A "computer attack" may be first discovered by you in one "coverage term" but it may cause covered "loss" in one or more subsequent "coverage terms". If so, all covered "loss" arising from such "computer attack" will be subject to the Computer Attack Aggregate Limit of Insurance applicable to the "coverage term" when the "computer attack" was first discovered by you.

6. The Computer Attack coverage is subject to the:

a. Computer Attack other than Cyber Extortion; and

b. Cyber Extortion;

deductibles stated in the Declarations. In the event that elements of "loss" from the same "computer attack" include "cyber extortion expenses" as well as other insured expenses or costs, then only the single highest deductible will apply. You shall be responsible for the applicable deductible amount as respects "loss" arising from each "computer attack" covered under this Coverage Part.

### B. Insuring Agreement B - Network Security and Electronic Media Liability

1. Except for post-judgment interest, the most we will pay under Insuring Agreement **B** - Network Security and Electronic Media Liability is the Network Security and Electronic Media Liability Aggregate Limit of Insurance stated in the Declarations.

2. The Network Security and Electronic Media Liability Aggregate Limit of Insurance is an annual aggregate limit. This amount is the most we will pay for the total of all "loss" covered under Insuring Agreement **B** - Network Security and Electronic Media Liability (other than post-judgment interest) arising out of all "claims".

3. The Network Security and Electronic Media Liability Aggregate Limit of Insurance for the Extended Reporting Periods (if applicable) shall be part of, and not in addition to, the Network Security and Electronic Media Liability Aggregate Limit of Insurance for the immediately preceding "coverage term".

4. The Insuring Agreement **B** - Network Security and Electronic Media Liability coverage is subject to the Network Security and Electronic Media Liability Deductible stated in the Declarations. You shall be responsible for the applicable deductible amount as respects "loss" arising from each "claim" covered under this Coverage Part. We may, at our option, pay any part or all of the deductible amount to defend or effect settlement of any "claim" or "loss" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

The Limits of Insurance apply separately to each "coverage term".

## SECTION III - DEFENSE AND SETTLEMENT

The provisions contained within this Section apply only to Insuring Agreement **B** - Network Security and Electronic Media Liability.

1. We will have the right and duty to select counsel and defend the "insured" against any "claim" covered by Insuring Agreement **B** - Network Security and Electronic Media Liability, regardless of whether the allegations of such "claim" are groundless, false or fraudulent. However, we shall have no duty to defend the "insured" against any "claim" seeking damages or other relief not insured by Insuring Agreement **B** - Network Security and Electronic Media Liability.

2. We may, with your written consent, make any settlement of a "claim" which we deem reasonable. If you withhold consent to such settlement, our liability for all "loss" resulting from such "claim" will not exceed the amount for which we could have settled such "claim" plus "defense costs" incurred as of the date we proposed such settlement in writing to you.

3. We shall not be obligated to pay any "loss", or to defend or continue to defend any "claim", after the Insuring Agreement **B** - Network Secu-

rity and Electronic Media Liability Limit of Insurance has been exhausted.

4. We shall pay all interest on that amount of any judgment within the Insuring Agreement **B** - Network Security and Electronic Media Liability Limit of Insurance which accrues:

   a. After entry of judgment; and

   b. Before we pay, offer to pay or deposit in court that part of the judgment within the Insuring Agreement **B** - Network Security and Electronic Media Liability Limit of Insurance or, in any case, before we pay or offer to pay the entire Insuring Agreement **B** - Network Security and Electronic Media Liability Limit of Insurance.

These interest payments shall be in addition to and not part of the Network Security and Electronic Media Liability Limit of Insurance.

## SECTION IV - CONDITIONS

1. **Bankruptcy**

   Your bankruptcy, or the bankruptcy of your estate if you are a sole proprietor, will not relieve us of our obligations under this Coverage Part.

2. **Due Diligence**

   You agree to use due diligence to prevent and mitigate "loss" covered under this Coverage Part. This includes, but is not limited to, complying with, and requiring your vendors to comply with, reasonable and industry-accepted protocols for:

   a. Providing and maintaining appropriate physical security for your premises, "computer systems" and hard copy files;

   b. Providing and maintaining appropriate computer and Internet security; and

   c. Maintaining and updating at appropriate intervals backups of computer data.

3. **Duties in the Event of a Claim or Loss**

   a. If, during the "coverage term", the "insured" first becomes aware of any circumstance that could reasonably be expected to give rise to a "claim", the "insured" may give written notice to us. The notice must be made as soon as practicable, but in no event more than 60 days after the date the circumstance is first discovered by the "insured", must be made during the "coverage term" and must include:

      (1) The specific details, including the date, of the circumstance;

      (2) The alleged injuries or damage sustained or which may be sustained;

(3) The names of potential claimants; and

(4) The manner in which the "insured" first became aware of the circumstance.

Any subsequent "claim" arising out of any circumstance which is the subject of such a written notice will be deemed to have been made at the time written notice in compliance with these requirements was first received by us.

**b.** If a "claim" is brought against any "insured", you must:

(1) Immediately record the specifics of the "claim" and the date received; and

(2) Provide us with written notice, as soon as practicable, but in no event more than 60 days after the date the "claim" is first received by you.

(3) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim";

(4) Authorize us to obtain records and other information;

(5) Cooperate with us in the investigation, settlement or defense of the "claim";

(6) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to you because of "loss" to which this insurance may also apply; and

(7) Not take any action, or fail to take any required action, that prejudices your rights or our rights with respect to such "claim".

**c.** In the event of a "computer attack" covered under Insuring Agreement **A** - Computer Attack, you must see that the following are done:

(1) Notify the police if a law may have been broken.

(2) Notify us as soon as practicable, but in no event more than 60 days after the "computer attack". Include a description of any property involved.

(3) As soon as possible, give us a description of how, when and where the "computer attack" occurred.

(4) As often as may be reasonably required, permit us to:

(a) Inspect the property proving the "computer attack";

(b) Examine your books, records, electronic media and records and hardware;

(c) Take samples of damaged and undamaged property for inspection, testing and analysis; and

(d) Make copies from your books, records, electronic media and records and hardware.

(5) Send us signed, sworn proof of loss containing the information we request to investigate the "computer attack". You must do this within 60 days after our request. We will supply you with the necessary forms.

(6) Cooperate with us in the investigation or settlement of the "computer attack".

(7) If you intend to continue your business, you must resume all or part of your operations as quickly as possible.

(8) Make no statement that will assume any obligation or admit any liability, for any "loss" for which we may be liable, without our prior written consent.

(9) Promptly send us any legal papers or notices received concerning the "computer attack" or "loss".

**d.** We may examine any "insured" under oath, while not in the presence of any other "insured" and at such times as may be reasonably required, about any matter relating to this insurance or the "claim" or "loss", including an "insured's" books and records. In the event of an examination, an "insured's" answers must be signed.

**e.** No "insured" may, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense without our prior written consent.

**4. Legal Action Against Us**

**a.** No person or organization has a right:

(1) To join us as a party or otherwise bring us into a suit asking for damages from an "insured"; or

(2) To sue us under this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a

final judgment against an "insured"; but we will not be liable for damages that are not payable under this Coverage Part, or that are in excess of the applicable Aggregate Limit of Insurance. An agreed settlement means a settlement and release of liability signed by us, the first "named insured" and the claimant or the claimant's legal representative.

b. You may not bring any legal action against us involving "loss":

(1) Unless you have complied with all the terms of this insurance;

(2) Until 90 days after you have filed proof of "loss" with us; and

(3) Unless brought within 2 years from the date you reported the "claim" or "loss" to us.

If any limitation in this condition is prohibited by law, such limitation is amended so as to equal the minimum period of limitation provided by such law.

5. **Liberalization**

If, within 60 days prior to the beginning of this Coverage Part or during the "policy period", we make any changes to any forms or endorsements of this Coverage Part for which there is currently no separate premium charge, and that change provides more coverage than this Coverage Part, the change will automatically apply to this Coverage Part at the latter of:

a. The date we implemented the change in your state; or

b. The date this Coverage Part became effective; and

will be considered as included until the end of the current "policy period". We will make no additional premium charge for this additional coverage during the interim.

6. **Office of Foreign Assets Control (OFAC) Compliance**

Whenever insurance coverage provided by this policy would be in violation of any United States economic or trade sanctions, such insurance coverage shall be null and void.

7. **Other Insurance**

a. If any covered "loss" is covered by any other valid policy, then this Coverage Part shall apply only in excess of the amount of any deductible, retention and limit of insurance under such other policy whether such other policy is stated to be primary, contributory, excess, contingent or otherwise, unless such other policy is written specifically excess of this Coverage Part

by reference in such other policy to this policy's policy number.

b. When this insurance is excess, we will have no duty to defend the "insured" against any "claim" if any other insurer has a duty to defend the "insured" against that "claim". But we will have the right to associate in the defense and control of any "claim" that we reasonably believe is likely to involve the insurance provided under this Coverage Part. If no other insurer defends, we will undertake to do so, but we will be entitled to the "insured's" rights against all those other insurers.

8. **Representations**

You represent that all information and statements contained in any application or questionnaire submitted in connection with this Coverage Part are true, accurate and complete. All such information and statements are the basis for our issuing this Coverage Part and shall be considered as incorporated into and shall constitute a part of this Coverage Part. Misrepresentation or omission of any material fact may be grounds for the rescission of this Coverage Part.

9. **Separation of Insureds**

Except with respect to the applicable Limit of Insurance, and any rights or duties specifically assigned in this Coverage Part or the policy to which it is attached, to the first "named insured", this insurance applies separately to each "insured" against whom "claim" is made.

10. **Services**

The following conditions apply as respects any services provided to you by any service firm provided or paid for in whole or in part under this Coverage Part:

a. The effectiveness of such services depends on your cooperation and assistance.

b. We do not warrant or guarantee that the services will end or eliminate all problems associated with the covered events.

11. **Subrogation**

With respect to any payment under this Coverage Part on behalf of any "insured", we shall be subrogated to the "insured's" rights of recovery to the extent of such payment. The "insured" shall execute all papers required and shall do everything necessary to secure and preserve such rights, including the execution of such documents necessary to enable us to bring suit in the "insured's" name. Any recoveries, less the cost of obtaining them, will be distributed as follows:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

a. To you, until you are reimbursed for any "loss" you sustain that exceeds the sum of the applicable Aggregate Limit of Insurance and the Deductible Amount, if any;

b. Then to us, until we are reimbursed for the payment under this Coverage Part;

c. Then to you, until you are reimbursed for that part of the payment equal to the Deductible Amount, if any.

**12. Valuation - Settlement**

All premiums, Limits of Insurance, Deductible Amounts, "loss" and any other monetary amounts under this Coverage Part are expressed and payable in the currency of the United States of America. If judgment is rendered, settlement is agreed to or another component of "loss" under this Coverage Part is expressed in any currency other than United States of America dollars, payment under this Coverage Part shall be made in United States dollars at the rate of exchange published in *The Wall Street Journal* on the date the final judgment is entered, settlement amount is agreed upon, or the other component of "loss" is due, respectively.

**13. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first "named insured" shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V - EXTENDED REPORTING PERIODS**

The provisions contained within this Section apply only to Insuring Agreement **B** - Network Security and Electronic Media Liability.

1. You shall have the right to the Extended Reporting Periods described in this section, in the event that:

a. You or we cancel this Coverage Part;

b. You or we refuse to renew this Coverage Part; or

c. We renew this Coverage Part on other than a claims-made basis or with a retroactive date later than the Retroactive Date shown in the Declarations.

2. If an event as specified in Paragraph **1.** has occurred, you shall have the right to the following:

a. An Automatic Extended Reporting Period of 90 days after the effective date of cancellation or nonrenewal at no additional premium in which to give to us written no-

tice of a "claim" of which you first receive notice during said Automatic Extended Reporting Period for any "wrongful act" occurring on or after the Retroactive Date shown in the Declarations and before the end of the "policy period" and which is otherwise covered by this Coverage Part; and

b. Upon payment of the additional premium stated in the Declarations, a Supplemental Extended Reporting Period for the term stated in the Supplemental Extended Reporting Period Endorsement will be provided immediately following the effective date of cancellation or nonrenewal in which to give to us written notice of a "claim" of which you first receive notice during said Supplemental Extended Reporting Period for any "wrongful act" occurring on or after the Retroactive Date shown in the Declarations and before the end of the "policy period" and which is otherwise covered by this Coverage Part.

To obtain the Supplemental Extended Reporting Period, you must request it in writing and pay the additional premium due, within 60 days of the effective date of cancellation or nonrenewal. The additional premium for the Supplemental Extended Reporting Period shall be fully earned at the inception of the Supplemental Extended Reporting Period. If we do not receive the written request as required, you may not exercise this right at a later date.

c. The Network Security and Electronic Media Liability Limit for the Extended Reporting Periods shall be part of, and not in addition to, the Network Security and Electronic Media Liability Limit for the immediately preceding "coverage term".

**SECTION VI - DEFINITIONS**

1. "Actual cash value" means replacement cost less a deduction that reflects depreciation, age, condition and obsolescence.

2. "Bodily injury" means bodily harm or injury, sickness, disease, disability, humiliation, shock, fright, mental anguish or mental injury, including care, loss of services or death resulting from any of these at any time.

3. "Business income loss" means the sum of the:

a. Net income (net profit or loss before income taxes) that would have been earned or incurred; and

b. Continuing normal and necessary operating expenses incurred, including "employee" and "executive" payroll,

actually lost by you during the "period of restoration".

4. "Claim":

a. Means a civil proceeding against an "insured" in which damages are alleged arising from a "wrongful act" or a series of "interrelated" "wrongful acts" allegedly committed by an "insured", including any appeal therefrom.

b. "Claim" includes:

(1) An arbitration or alternative dispute resolution proceeding that the "insured" is required to submit to or does submit to with our consent; or

(2) A written demand for money, when such demand could reasonably result in a civil proceeding as described in this definition.

c. Does not include any demand or action brought by or on behalf of someone who is:

(1) Your "executive";

(2) Your owner or part-owner; or

(3) A holder of your securities;

in their capacity as such, whether directly, derivatively, or by class action.

5. "Computer attack" means one of the following involving the "computer system":

a. An "unauthorized access incident";

b. A "malware attack";

c. A "denial of service attack" against a "computer system"; or

d. A "cyber extortion threat".

6. "Computer system" means a computer or other electronic hardware that:

a. Is owned or leased by you and operated under your control; or

b. Is operated by a third party service provider and used for the purpose of providing hosted computer application services to you or for processing, maintaining, hosting or storing your electronic data, pursuant to a written contract with you for such services, but such computer or other electronic hardware operated by such third party shall only be considered to be a "computer system" with respect to the specific services provided by such third party to you under such contract.

7. "Coverage term" means the following individual increment, or if a multi-year "policy period",

increments, of time, which comprise the "policy period" of this Coverage Part:

a. The year commencing on the Effective Date of this Coverage Part at 12:01 AM standard time at your mailing address shown in the Declarations, and if a multi-year "policy period", each consecutive annual period thereafter, or portion thereof if any period is for a period of less than 12 months, constitute individual "coverage terms". The last "coverage term" ends at 12:00 AM standard time at your mailing address shown in the Declarations on the earlier of:

(1) The day the "policy period" shown in the Declarations ends; or

(2) The day the policy to which this Coverage Part is attached is terminated or cancelled.

b. However, if after the issuance of this Coverage Part, any "coverage term" is extended for an additional period of less than 12 months, that additional period of time will be deemed to be part of the last preceding "coverage term".

8. "Coverage territory" means:

a. With respect to Insuring Agreement A - Computer Attack:

Anywhere in the world, but "loss" must involve a "computer system" within the United States (including its territories and possessions), Puerto Rico or Canada.

b. With respect to Insuring Agreement B - Network Security and Electronic Media Liability:

Anywhere in the world, however, "claims" must be brought in the United States (including its territories and possessions), Puerto Rico or Canada.

9. "Cyber extortion expenses" means:

a. The cost of a negotiator or investigator retained by you in connection with a "cyber extortion threat"; and

b. Any amount paid by you in response to a "cyber extortion threat" to the party that made the "cyber extortion threat" for the purposes of eliminating the "cyber extortion threat";

when such expenses are necessary and reasonable and arise directly from a "cyber extortion threat". The payment of "cyber extortion expenses" must be approved in advance by us. We will not pay for "cyber extortion expenses" that have not been approved in ad-

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

vance by us. We will not unreasonably withhold our approval.

10. "Cyber extortion threat" means a demand for money from you based on a credible threat, or series of related credible threats, to:

    a. Launch a "denial of service attack" against the "computer system";

    b. Gain access to a "computer system" and use that access to steal, release or publish "personally identifying information", "personally sensitive information" or "third party corporate data";

    c. Alter, damage or destroy electronic data or software while such electronic data or software is stored within a "computer system";

    d. Launch a "computer attack" against a "computer system" in order to alter, damage or destroy electronic data or software while such electronic data or software is stored within a "computer system";

    e. Cause the "insured" to transfer, pay or deliver any funds or property using a "computer system" without your authorization; or

    f. Inflict "ransomware" on a "computer system".

"Cyber extortion threat" does not include any threat made in connection with a legitimate commercial dispute.

11. "Data re-creation costs":

    a. "Data re-creation costs" means the costs of an outside professional firm hired by you to research, re-create and replace data that has been lost or corrupted and for which there is no electronic source available or where the electronic source does not have the same or similar functionality to the data that has been lost or corrupted.

    b. "Data re-creation costs" also means your actual "business income loss" and your necessary and reasonable "extra expenses" arising from the lack of the lost or corrupted data during the time required to research, re-create and replace such data.

    c. "Data re-creation costs" does not mean costs to research, re-create or replace:

        (1) Software programs or operating systems that are not commercially available; or

        (2) Data that is obsolete, unnecessary or useless to you.

12. "Data restoration costs":

    a. Means the costs of an outside professional firm hired by you to replace electronic data that has been lost or corrupted. In order to be considered "data restoration costs", such replacement must be from one or more electronic sources with the same or similar functionality to the data that has been lost or corrupted.

    b. Does not include costs to research, restore or replace:

        (1) Software programs or operating systems that are not commercially available; or

        (2) Data that is obsolete, unnecessary or useless to you.

13. "Defense costs":

    a. Means reasonable and necessary expenses resulting solely from the investigation, defense and appeal of any "claim" against an "insured". Such expenses may be incurred by us. Such expenses may include premiums for any appeal bond, attachment bond or similar bond. However, we have no obligation to apply for or furnish such bond.

    b. Does not include the salaries or wages of your "employees" or "executives", or your loss of earnings.

14. "Denial of service attack" means an intentional attack against a target computer or network of computers designed to overwhelm the capacity of the target computer or network in order to deny or impede authorized users from gaining access to the target computer or network through the internet.

15. "Electronic media incident" means the display of information in electronic form by you on a website or in an "insured's" email that resulted in an allegation of:

    a. Infringement of another's copyright, title, slogan, trademark, trade name, trade dress, service mark or service name;

    b. Defamation against a person or organization that is unintended;

    c. A violation of a person's right of privacy, including false light and public disclosure of private facts; or

    d. Interference with a person's right of publicity.

HC 103 01 18

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Page 11 of 14

16. "Employee" means any natural person, other than an "executive", who was, now is or will be:

    a. Employed on a full- or part-time basis by you;

    b. Furnished temporarily to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions;

    c. Leased to you by a labor leasing firm under an agreement between you and the labor leasing firm to perform duties related to the conduct of your business, but does not mean a temporary employee as defined in Paragraph **b.**; or

    d. Your volunteer worker, which includes unpaid interns.

17. "Executive" means any natural person who was, now is or will be:

    a. The owner of a sole proprietorship that is a "named insured"; or

    b. A duly elected or appointed:

        (1) Director;

        (2) Officer;

        (3) Managing Partner;

        (4) General Partner;

        (5) Member (if a limited liability company);

        (6) Manager (if a limited liability company); or

        (7) Trustee,

        of a "named insured".

18. "Extra expense" means the additional cost you incur to operate your business during the "period of restoration" over and above the cost that you normally would have incurred to operate your business during the same period had no "computer attack" occurred.

19. "Insured" means:

    a. With respect to Insuring Agreement **A** - Computer Attack any "named insured".

    b. With respect to Insuring Agreement **B** - Network Security and Electronic Media Liability:

        (1) Any "named insured"; and

        (2) Any "employee" or "executive" of a "named insured", but:

            (a) Only for the conduct of the "named insured's" business with-

in the scope of his or her employment or duties as an "executive"; and

            (b) Such "employee" or "executive" shall not be an "insured" to the extent his or her actions or omissions are criminal, fraudulent, dishonest or constitute an intentional or knowing violation of the law.

20. "Interrelated" means all events or incidents that have as a common nexus any:

    a. Fact, circumstance, situation, event, transaction, cause; or

    b. Series of causally connected facts, circumstances, situations, events, transactions or causes.

21. "Loss" means:

    a. With respect to Insuring Agreement **A** - Computer Attack:

    Those expenses enumerated in Section I, **A.**, Paragraph **1.b.**

    b. With respect to Insuring Agreement **B** - Network Security and Electronic Media Liability:

        (1) "Defense costs"; and

        (2) "Settlement costs".

22. "Malware attack" means an attack that damages a "computer system" or data contained therein arising from malicious code, including viruses, worms, Trojans, spyware and keyloggers. This does not mean damage from shortcomings or mistakes in legitimate electronic code or damage from code installed on your "computer system" during the manufacturing process or normal maintenance.

23. "Named insured" means the entity or entities shown in the Declarations as a Named Insured.

24. "Network security incident" means a negligent security failure or weakness with respect to a "computer system" which allowed one or more of the following to happen:

    a. The unintended propagation or forwarding of malware, including viruses, worms, Trojans, spyware and keyloggers. Malware does not include shortcomings or mistakes in legitimate electronic code.

    b. The unintended abetting of a "denial of service attack" against one or more other systems.

    c. The unintended loss, release or disclosure of "third party corporate data".

25. "Period of restoration" means the period of time that begins at the time that the "computer attack" is discovered by you and continues until the earlier of:

    a. The date that all data restoration, data re-creation and system restoration directly related to the "computer attack" has been completed; or

    b. The date on which such data restoration, data re-creation and system restoration could have been completed with the exercise of due diligence and dispatch.

26. "Personally identifying information" means information, including health information, that could be used to commit fraud or other illegal activity involving the credit, access to health care or identity of an individual. This includes, but is not limited to, Social Security numbers or account numbers.

    "Personally identifying information" does not mean or include information that is otherwise available to the public, such as names and addresses.

27. "Personally sensitive information" means private information specific to an individual the release of which requires notification of affected individuals under any applicable law.

    "Personally sensitive information" does not mean or include "personally identifying information".

28. "Policy period" means the cumulative total of each individual "coverage term" comprising the period of time from the inception date of this Coverage Part shown in the Declarations to the expiration date shown in the Declarations, or its earlier cancellation or termination date.

29. "Property damage" means:

    a. Physical injury to or destruction of tangible property including all resulting loss of use; or

    b. Loss of use of tangible property that is not physically injured.

30. "Ransomware" means any software that is used to demand a ransom payment by:

    a. Restricting access to a "computer system"; or

    b. Encrypting data held within a "computer system".

31. "Settlement costs":

    a. Means the following, when they arise from a "claim":

        (1) Damages (including punitive and exemplary damages and the multiple portion of any multiplied damage award), judgments or settlements;

        (2) Attorney's fees and other litigation costs added to that part of any judgment paid by us, when such fees and costs are awarded by law or court order; and

        (3) Pre-judgment interest on that part of any judgment paid by us.

    b. Does not include:

        (1) Civil or criminal fines or penalties imposed by law;

        (2) Taxes; or

        (3) Matters which may be deemed uninsurable under the applicable law.

    c. With respect to punitive, exemplary and multiplied damages, the law of the jurisdiction most favorable to the insurability of those fines, penalties or damages shall control for the purpose of resolving any dispute between us and any "insured" regarding whether the fines, penalties or damages specified in this definition above are insurable under this Coverage Part, provided that such jurisdiction:

        (1) Is where those fines, penalties or damages were awarded or imposed;

        (2) Is where any "personal data compromise" took place for which such fines, penalties or damages were awarded or imposed;

        (3) Is where you are incorporated or you have your principal place of business; or

        (4) Is where we are incorporated or have our principal place of business.

32. "System restoration costs":

    a. Means the costs of an outside professional firm hired by you to do any of the following in order to restore your "computer system" to its pre- "computer attack" level of functionality:

        (1) Replace or reinstall computer software programs;

        (2) Remove any malicious code; and

        (3) Configure or correct the configuration of your "computer system".

    b. Does not include:

        (1) Costs to increase the speed, capacity or utility of your "computer system";

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**(2)** Labor of your "employees" or "executives";

**(3)** Any costs in excess of the "actual cash value" of your "computer system"; or

**(4)** Costs to repair or replace hardware.

**33.** "Third party corporate data" means any trade secret, data, design, interpretation, forecast, formula, method, practice, credit or debit card magnetic strip information, process, record, report or other item of information of a third party not an "insured" under this Coverage Part which is not available to the general public and is provided to the "named insured" subject to a mutually executed written confidentiality agreement or which the "named insured" is legally required to maintain in confidence; however, "third party corporate data" shall not include "personally identifiable information" or "personally sensitive information".

**34.** "Unauthorized access incident" means the gaining of access to a "computer system" by:

   **a.** An unauthorized person or persons; or

   **b.** An authorized person or persons for unauthorized purposes.

**35.** "Wrongful act" means:

   **a.** An "electronic media incident"; or

   **b.** A "network security incident".

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PENNSYLVANIA CHANGES

This endorsement modifies insurance provided under the following:

**CINCINNATI CYBER DEFENSE™ COVERAGE PART
CINCINNATI DATA DEFENDER™ COVERAGE PART
CINCINNATI NETWORK DEFENDER™ COVERAGE PART**

Paragraph **F. Transfer of Your Rights and Duties Under this Policy** in the Common Policy Conditions is deleted in its entirety and replaced by the following:

**F. Transfer of Your Rights and Duties Under this Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of a sole proprietor who is also the first "named insured".

If you are a sole proprietor and you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

## PENNSYLVANIA FINANCIAL RESPONSIBILITY IDENTIFICATION CARD

| X | The Cincinnati Insurance Company | 0244-10677 |
|---|---|---|
| | The Cincinnati Casualty Company | 0244-28665 |
| | The Cincinnati Indemnity Company | 0244-23280 |

P.O. Box 145496, Cincinnati, OH 45250-5496
(513) 870-2000

Name & Address of Insured

HENRY MOLDED PRODUCTS INC

71 N 16TH ST
LEBANON, PA 17042-4506

**POLICY NUMBER**
EBA 026 35 19
**EFFECTIVE DATE** 07-01-2020

**Not Valid More
Than One Year
From Effective Date**

Agency
HOASTER GEBHARD & CO. 37-039
Phone Number 717-274-3360
Applicable with respect to the following Motor Vehicles:

| 1993 | PORSCHE | WP0AA2923PS820136 |
|---|---|---|
| Year | Make | Vehicle Identification Number |

Authorized Representative

### SEE IMPORTANT MESSAGE ON REVERSE SIDE

Form AA 4135 PA
(11/14)

**CONSULT YOUR POLICY FOR ACTUAL COVERAGE IN FORCE
ON SPECIFIC VEHICLES**

**THIS CARD MUST BE CARRIED FOR PRESENTATION ON DEMAND.**
**KEEP THIS CARD IN THE INSURED VEHICLE.**

**WARNING:** Any owner or registrant of a motor vehicle who drives or permits a motor vehicle to be driven in this State without the required financial responsibility may have his or her registration suspended or revoked.

**NOTE - THIS CARD IS REQUIRED WHEN:**
1. You are involved in an auto accident.
2. You are convicted of a traffic offense other than a parking offense that requires a court appearance.
3. You are stopped for violating any provision of the Vehicle Code (75 Pa.C.S.) and requested to produce it by a police officer.

You must provide a copy of this card to the Department of Transportation when you request restoration of your operating privilege and/or registration privilege which was previously suspended or revoked.

**IN CASE OF ACCIDENT:** Report all accidents to your Agent/Company and to the police as soon as possible. Obtain the following information:
1. Name and address of each driver, passenger and witness.
2. Name of Insurance Company and policy number for each vehicle involved.

## PENNSYLVANIA FINANCIAL RESPONSIBILITY IDENTIFICATION CARD

| X | The Cincinnati Insurance Company | 0244-10677 |
|---|---|---|
| | The Cincinnati Casualty Company | 0244-28665 |
| | The Cincinnati Indemnity Company | 0244-23280 |

P.O. Box 145496, Cincinnati, OH 45250-5496
(513) 870-2000

Name & Address of Insured

HENRY MOLDED PRODUCTS INC

71 N 16TH ST
LEBANON, PA 17042-4506

**POLICY NUMBER**
EBA 026 35 19
**EFFECTIVE DATE** 07-01-2020

**Not Valid More
Than One Year
From Effective Date**

Agency
HOASTER GEBHARD & CO. 37-039
Phone Number 717-274-3360
Applicable with respect to the following Motor Vehicles:

| 2005 | FORD | 1FMSU43P85EA84443 |
|---|---|---|
| Year | Make | Vehicle Identification Number |

Authorized Representative

### SEE IMPORTANT MESSAGE ON REVERSE SIDE

Form AA 4135 PA
(11/14)

**CONSULT YOUR POLICY FOR ACTUAL COVERAGE IN FORCE
ON SPECIFIC VEHICLES**

**THIS CARD MUST BE CARRIED FOR PRESENTATION ON DEMAND.**
**KEEP THIS CARD IN THE INSURED VEHICLE.**

**WARNING:** Any owner or registrant of a motor vehicle who drives or permits a motor vehicle to be driven in this State without the required financial responsibility may have his or her registration suspended or revoked.

**NOTE - THIS CARD IS REQUIRED WHEN:**
1. You are involved in an auto accident.
2. You are convicted of a traffic offense other than a parking offense that requires a court appearance.
3. You are stopped for violating any provision of the Vehicle Code (75 Pa.C.S.) and requested to produce it by a police officer.

You must provide a copy of this card to the Department of Transportation when you request restoration of your operating privilege and/or registration privilege which was previously suspended or revoked.

**IN CASE OF ACCIDENT:** Report all accidents to your Agent/Company and to the police as soon as possible. Obtain the following information:
1. Name and address of each driver, passenger and witness.
2. Name of Insurance Company and policy number for each vehicle involved.

## PENNSYLVANIA FINANCIAL RESPONSIBILITY IDENTIFICATION CARD

| X | The Cincinnati Insurance Company | 0244-10677 |
|---|---|---|
| | The Cincinnati Casualty Company | 0244-28665 |
| | The Cincinnati Indemnity Company | 0244-23280 |

P.O. Box 145496, Cincinnati, OH 45250-5496
(513) 870-2000

Name & Address of Insured

HENRY MOLDED PRODUCTS INC

71 N 16TH ST
LEBANON, PA 17042-4506

**POLICY NUMBER**
EBA 026 35 19
**EFFECTIVE DATE** 07-01-2020

**Not Valid More
Than One Year
From Effective Date**

Agency
HOASTER GEBHARD & CO. 37-039
Phone Number 717-274-3360
Applicable with respect to the following Motor Vehicles:

| 2008 | CHEVROL | 1GCCS33E388185920 |
|---|---|---|
| Year | Make | Vehicle Identification Number |

Authorized Representative

**SEE IMPORTANT MESSAGE ON REVERSE SIDE**

Form AA 4135 PA
(11/14)

**CONSULT YOUR POLICY FOR ACTUAL COVERAGE IN FORCE
ON SPECIFIC VEHICLES**

**THIS CARD MUST BE CARRIED FOR PRESENTATION ON DEMAND.**
**KEEP THIS CARD IN THE INSURED VEHICLE.**

**WARNING:** Any owner or registrant of a motor vehicle who drives or permits a motor vehicle to be driven in this State without the required financial responsibility may have his or her registration suspended or revoked.

**NOTE - THIS CARD IS REQUIRED WHEN:**
1. You are involved in an auto accident.
2. You are convicted of a traffic offense other than a parking offense that requires a court appearance.
3. You are stopped for violating any provision of the Vehicle Code (75 Pa.C.S.) and requested to produce it by a police officer.

You must provide a copy of this card to the Department of Transportation when you request restoration of your operating privilege and/or registration privilege which was previously suspended or revoked.

**IN CASE OF ACCIDENT:** Report all accidents to your Agent/Company and to the police as soon as possible. Obtain the following information:
1. Name and address of each driver, passenger and witness.
2. Name of Insurance Company and policy number for each vehicle involved.

## PENNSYLVANIA FINANCIAL RESPONSIBILITY IDENTIFICATION CARD

| X | The Cincinnati Insurance Company | 0244-10677 |
|---|---|---|
| | The Cincinnati Casualty Company | 0244-28665 |
| | The Cincinnati Indemnity Company | 0244-23280 |

**P.O. Box 145496, Cincinnati, OH 45250-5496**
**(513) 870-2000**

Name & Address of Insured

HENRY MOLDED PRODUCTS INC

71 N 16TH ST
LEBANON, PA 17042-4506

**POLICY NUMBER**
EBA 026 35 19
**EFFECTIVE DATE** 07-01-2020

**Not Valid More**
**Than One Year**
**From Effective Date**

Agency
HOASTER GEBHARD & CO. 37-039
Phone Number 717-274-3360
Applicable with respect to the following Motor Vehicles:

| 2019 | MERCEDE | 4JGED7FB0KA135628 |
|---|---|---|
| Year | Make | Vehicle Identification Number |

Authorized Representative

### SEE IMPORTANT MESSAGE ON REVERSE SIDE

Form AA 4135 PA
(11/14)

**CONSULT YOUR POLICY FOR ACTUAL COVERAGE IN FORCE**
**ON SPECIFIC VEHICLES**

**THIS CARD MUST BE CARRIED FOR PRESENTATION ON DEMAND.**
**KEEP THIS CARD IN THE INSURED VEHICLE.**

**WARNING:** Any owner or registrant of a motor vehicle who drives or permits a motor vehicle to be driven in this State without the required financial responsibility may have his or her registration suspended or revoked.

**NOTE - THIS CARD IS REQUIRED WHEN:**
1. You are involved in an auto accident.
2. You are convicted of a traffic offense other than a parking offense that requires a court appearance.
3. You are stopped for violating any provision of the Vehicle Code (75 Pa.C.S.) and requested to produce it by a police officer.

You must provide a copy of this card to the Department of Transportation when you request restoration of your operating privilege and/or registration privilege which was previously suspended or revoked.

**IN CASE OF ACCIDENT:** Report all accidents to your Agent/Company and to the police as soon as possible. Obtain the following information:
1. Name and address of each driver, passenger and witness.
2. Name of Insurance Company and policy number for each vehicle involved.

**PENNSYLVANIA FINANCIAL RESPONSIBILITY IDENTIFICATION CARD**

| X | The Cincinnati Insurance Company | 0244-10677 |
|---|---|---|
| | The Cincinnati Casualty Company | 0244-28665 |
| | The Cincinnati Indemnity Company | 0244-23280 |

P.O. Box 145496, Cincinnati, OH 45250-5496
(513) 870-2000

Name & Address of Insured

HENRY MOLDED PRODUCTS INC

71 N 16TH ST
LEBANON, PA 17042-4506

**POLICY NUMBER**
EBA 026 35 19
**EFFECTIVE DATE** 07-01-2020

**Not Valid More
Than One Year
From Effective Date**

Agency
HOASTER GEBHARD & CO. 37-039
Phone Number 717-274-3360
Applicable with respect to the following Motor Vehicles:

| 2020 | CADILLA | 1GYKNDRS9LZ137017 |
|---|---|---|
| Year | Make | Vehicle Identification Number |

Authorized Representative

**SEE IMPORTANT MESSAGE ON REVERSE SIDE**

Form AA 4135 PA
(11/14)

**CONSULT YOUR POLICY FOR ACTUAL COVERAGE IN FORCE
ON SPECIFIC VEHICLES**

**THIS CARD MUST BE CARRIED FOR PRESENTATION ON DEMAND.**
**KEEP THIS CARD IN THE INSURED VEHICLE.**

**WARNING:** Any owner or registrant of a motor vehicle who drives or permits a motor vehicle to be driven in this State without the required financial responsibility may have his or her registration suspended or revoked.

**NOTE - THIS CARD IS REQUIRED WHEN:**
1. You are involved in an auto accident.
2. You are convicted of a traffic offense other than a parking offense that requires a court appearance.
3. You are stopped for violating any provision of the Vehicle Code (75 Pa.C.S.) and requested to produce it by a police officer.

You must provide a copy of this card to the Department of Transportation when you request restoration of your operating privilege and/or registration privilege which was previously suspended or revoked.

**IN CASE OF ACCIDENT:** Report all accidents to your Agent/Company and to the police as soon as possible. Obtain the following information:
1. Name and address of each driver, passenger and witness.
2. Name of Insurance Company and policy number for each vehicle involved.



**The Cincinnati Insurance Company**
**The Cincinnati Casualty Company**
**The Cincinnati Indemnity Company**

**Policy Number:** EPP 026 35 19

**Effective Date:** 07-01-2020

**Named Insured:** HENRY MOLDED PRODUCTS INC

For professional advice and policy questions or changes, please contact your local independent agency:

HOASTER GEBHARD & CO.
719 QUENTIN RD
LEBANON, PA 17042-6924

717-274-3360

Dear Policyholder:

**Thank you**
Thank you for trusting The Cincinnati Insurance Companies with your commercial insurance coverage. We recognize that locally based independent agents have the working knowledge to help you choose the right insurance company for your needs. Together with your local independent insurance agency, we are committed to providing you with the highest level of service.

Please review your enclosed policy information to verify your coverage details, as well as deductibles and coverage amounts. Should your needs change, your agent is available to review and update your policy.

**Please promptly report claims**
If you experience a policy-related loss, you may report it by contacting your local professional independent agency representing The Cincinnati Insurance Companies or by directly calling us toll-free at **877-242-2544** and providing your policy number and claim-related information.

Sincerely,

Sean M. Givler
Senior Vice President - Commercial Lines

IA 4443 04 14

☒ **The Cincinnati Insurance Company**
☐ **The Cincinnati Casualty Company**
☐ **The Cincinnati Indemnity Company**

# COMMERCIAL LINES DEPARTMENT SPECIAL REQUEST

Date: <u>07-09-2020</u>

Insured: <u>HENRY MOLDED PRODUCTS INC</u>

**Policy Number:** <u>EPP 026 35 19 / EBA 026 35 19</u>

**To Agent:** <u>HOASTER GEBHARD & CO. 37-039</u>

☐ 1. Coverage has been issued subject to satisfactory driver information. Please complete the enclosed form(s) and return promptly.

☒ 2. Please return one signed copy of the enclosed endorsement. IA460 CP1515

☐ 3. Please countersign the enclosed policy and return to the producer of record in the enclosed envelope.

☐ 4. The MVR(s) for _____ has been returned from the state showing the license number is incorrect. Please forward the correct driver's license number(s) or Social Security number (GA, IN, IA, KY, OH, VA).

☐ 5. The state requires us to report the complete VIN. Please supply us with the entire VIN for every vehicle.

☐ 6. Please forward a **signed** Statement of Values. This is required whenever Blanket Insurance or Agreed Valued coverage is written.

☐ 7. A completed _____ application is required. Please submit as soon as possible.

☒ 8. We suggest that you send a letter to the insured making them aware of the endorsement and the consequences of its application.

☐ 9. This policy / endorsement has been issued subject to rate. We have ordered the loss costs, and we will endorse the policy when we receive them.

☐ 10. Please complete and forward the **FA-492**, Actual Loss Sustained Business Income Worksheet. These are required annually.

☐ 11. Please forward a photograph of the building located at _____ .

☐ 12. The property (Loc. Number _____ Item Number _____) doesn't appear to be insured to value. Please advise how you determined the current limits.

☐ 13. Please let us know when the following were updated for each building over 25 years old:

Bldg. _____ Yr. built _____ Electrical _____ Heating _____ Plumbing _____ Roof _____
Bldg. _____ Yr. built _____ Electrical _____ Heating _____ Plumbing _____ Roof _____

☐ 14. Please find enclosed an Excess UM/UIM Selection Form(s) to be completed and signed by the insured.
Forms attached for Commercial Umbrella and any related Personal Umbrella(s): _____

_____

Thank you.

Cordially,

COMMERCIAL LINES DEPARTMENT

MI1302 06 11

The Cincinnati Insurance Companies

**Business Insurance**

# CINCINNATI NETWORK DEFENDER™

Cyber Risk Coverage for Computer Systems



## Protecting your business

Businesses of all sizes depend on computer systems and the proprietary data stored on them to keep operations running smoothly. A computer attack may disrupt your operations, potentially threatening your business relationships, causing lost income and increasing your costs.

To protect your business, consider adequate security for your computer systems and adding Cincinnati Network Defender coverage to your commercial or management liability policy. This insurance provides two important types of cyber risk protection: computer attack coverage and network security liability coverage.

## Responding after a computer attack

Computer attack coverage helps your business recover after a cyberattack and pays for:

- data restoration services to help you replace lost or corrupted data from electronic sources
- data re-creation services to research, recreate and replace lost or corrupted data from non-electronic sources
- system restoration services to replace or reinstall software, remove malicious code and correct the configuration in order to restore your computer system to its pre-attack level of functionality
- cyber extortion expenses you incur to retain an investigator due to an extortion threat against your systems or data, including ransomware, and amounts paid in response to the extortion threat within the limit of insurance
- business income you lose and extra expenses you incur while your system and data recovery activities take place
- public relations services to assist with communications about the computer attack and your response

## Covering your network security and electronic media liability

Network security and electronic media liability coverage pays for defense and settlement costs due to claims brought against you by third parties for alleged damage from a covered cause listed below.
A security failure in your computer system that leads to:

- breach of third-party business data
- unplanned forwarding or replication of malware
- unintentional support of a denial of service attack

For information, coverage availability in your state, quotes or policy service, please contact your local independent agent recommending coverage.



**INSURANCE COMPANIES**

*Everything Insurance Should Be®*

Page 1 of 2
Adv. 715 (1/18)

Your electronic communications that result in:

- defamation
- violation of a person's right of privacy
- interference with a person's right of publicity
- infringement of copyright or trademark

To round out your cyber risk insurance, you can also add Cincinnati Data Defender™ insurance that helps you respond to and recover from a data breach or the theft of personally identifiable information.

## Businesses of all sizes face potential loss from using technology

No matter what size business you operate, you experience the same vulnerability to cyberattacks and network security liability claims as the biggest enterprises. Your daily operations are vulnerable to the types of attacks described in these hypothetical claims examples:

- *A customer claimed that a company sent him a damaging virus, and it cost $30,000 in legal fees to get it resolved.\**
- *A disgruntled former employee hacked the employer's computer system, which resulted in a $25,000 IT bill to repair the damage.\**
- *The costs of defending a network security lawsuit quickly added up to more than $40,000.\**
- *A nasty virus got into a customer's computer system, and it cost a fortune in out-of-pocket expenses and downtime before the system was restored.\**

\* These examples are provided for educational purposes only, and are not intended to illustrate the value of any claim or any particular type of claim. Every claim is adjusted according to its own specific set of facts.

## Policyholder tools and resources

Your Network Defender coverage includes access for no additional charge to *www.eriskhub.com/cic*, a portal that provides you with news, information and resources you can use to help mitigate a hacking event, virus infection or other cyberattack. The eRiskHub also contains an optional section that offers TechQ, a technical support service you can subscribe to for a nominal fee for assistance troubleshooting, diagnosing and fixing common computer problems, including finding and removing viruses.

The first time you visit this portal, please complete new user registration using this information:

### Access code = 12116-868

## Choosing coverage from the right people

Cincinnati's commitment to you is simple. We deliver service from people who know you, your business and your community – your local independent insurance agent and our experienced team of insurance professionals. You can count on your agent and Cincinnati Insurance to be there, giving you the peace of mind you deserve.

Talk to your local independent agent representing Cincinnati Insurance about adding these valuable coverages to protect you and the modern technology used to keep your business running smoothly.

Thank you for trusting your agent and Cincinnati to protect your business.



THE
## CINCINNATI
INSURANCE COMPANIES

*Everything Insurance Should Be®*

For information, coverage availability in your state, quotes or policy service, please contact your local independent agent recommending coverage. This is not a policy. For a complete statement of the coverages and exclusions, please see the policy contract. "The Cincinnati Insurance Companies", "Cincinnati Insurance" and "Cincinnati" refer to member companies of the insurer group providing property and casualty coverages through The Cincinnati Insurance Company or one of its wholly owned subsidiaries – The Cincinnati Indemnity Company or The Cincinnati Casualty Company. Each insurer has sole financial responsibility for its own products. Not all subsidiaries operate in all states. Do not reproduce or post online, in whole or in part, without written permission. © 2018 The Cincinnati Insurance Company. 6200 S. Gilmore Road, Fairfield, OH 45014-5141.

cinfin.com

# BUSINESS INCOME REPORT/WORK SHEET

Date    07-09-2020

Your Name    HENRY MOLDED PRODUCTS INC

Location

This work sheet must be completed on an accrual basis.

The beginning and ending inventories in all calculations should be based on the same valuation method.

## APPLICABLE WHEN THE AGREED VALUE COVERAGE OPTION APPLIES:

I certify that this is a true and correct report of values as required under this policy for the periods indicated and that the Agreed Value for the period of coverage is $ _____ ,based on a Co-insurance percentage of _____ %

Signature    _____

Official Title    _____

## APPLICABLE WHEN THE PREMIUM ADJUSTMENT FORM APPLIES:

I certify that this is a true and correct report of values as required under this policy for the 12 months ended

_____

Signature    _____

Official Title    _____

Agent or Broker    _____

Mailing Address    _____

Case 2:24-cv-00700-DPW Document 89-1 Filed 04/24/24 Page 352 of 520

## BUSINESS INCOME REPORT/WORK SHEET
## FINANCIAL ANALYSIS

| Income and Expenses | 12 Month Period Ending _____ | | Estimated for 12 Month Period Beginning _____ | |
| --- | --- | --- | --- | --- |
| | Manufacturing | Non-Manufacturing | Manufacturing | Non-Manufacturing |
| **A.** Gross Sales | $ _____ | $ _____ | $ _____ | $ _____ |
| **B.** DEDUCT: Finished Stock Inventory (at sales value) at Beginning | - _____ | XXXXXX | - _____ | XXXXXX |
| | _____ | XXXXXX | _____ | XXXXXX |
| **C.** ADD: Finished Stock Inventory (at sales value) at End | + _____ | XXXXXX | + _____ | XXXXXX |
| **D.** Gross Sales Value of Production | $ _____ | XXXXXX | $ _____ | XXXXXX |
| **E.** DEDUCT: Prepaid Freight - Outgoing | - _____ | - _____ | - _____ | - _____ |
| Returns & Allowances | - _____ | - _____ | - _____ | - _____ |
| Discounts | - _____ | - _____ | - _____ | - _____ |
| Bad Debts | - _____ | - _____ | - _____ | - _____ |
| Collection Expenses | - _____ | - _____ | - _____ | - _____ |
| **F.** Net Sales | | $ _____ | | $ _____ |
| Net Sales Value of Production | $ _____ | | $ _____ | |
| **G.** ADD: Other Earnings from your business operations (not investment income or rents from other properties): Commissions or Rents | + _____ | + _____ | + _____ | + _____ |
| Cash Discounts Received | + _____ | + _____ | + _____ | + _____ |
| Other | + _____ | + _____ | + _____ | + _____ |
| **H.** Total Revenues | $ _____ | $ _____ | $ _____ | $ _____ |

|  | | 12 Month Period Ending _____ | | Estimated for 12 Month Period Beginning _____ | |
| Income and Expenses | Manufacturing | Non-Manufacturing | Manufacturing | Non-Manufacturing |
|---|---|---|---|---|
| Total Revenues (Line **H.** from previous page | $ _____ | $ _____ | $ _____ | $ _____ |
| **I.** DEDUCT: Cost of goods sold (see next page for instructions) | - _____ | - _____ | - _____ | - _____ |
| Cost of services purchased from outsiders (not your employees) to resell, that do not continue under contract | - _____ | - _____ | - _____ | - _____ |
| Power, heat and refrigeration expenses that do not continue under contract (if **CP 15 11** is attached) | - _____ | - XXXXXX | - _____ | - XXXXXX |
| All ordinary payroll expenses or the amount of payroll expense excluded (if **CP 15 10** is attached) | - _____ | - XXXXXX | - _____ | - XXXXXX |
| Special deductions for mining properties (see next page for instructions) | - _____ | - _____ | - _____ | - _____ |
| **J.1.** Business Income exposure for 12 months | $ _____ | _____ | _____ | _____ |
| **J.2.** Combined (firms engaged in manufacturing & non-manufacturing operations) | $ _____ | | $ _____ | |

The figures in **J.1.** or **J.2** represent 100% of your actual and estimated Business Income exposure for 12 months

**K.** Additional Expenses:

**1.** Extra Expenses - form **CP 00 30** only (expenses incurred to avoid or minimize suspension of business & to continue operations)        $ _____     $ _____

**2.** Extended Business Income

and Extended Period of
Indemnity - form **CP 00 30** or
**CP 00 32** (loss of Business
Income following resumption
of operations, up to 30 days
or the no. of days selected
under Extended Period of
Indemnity option)                                      +_____    +_____

    **3.** Combined (all amounts in **K.1.**
    and **K.2.**)                          $_____

                                                **"Estimated" column**

    **L.**    Total of **J.** and **K.**                          $_____

The figure in **L.** represents 100% of your estimated Business Income exposure for 12 months, and additional expenses. Using this figure as information, determine the approximate amount of insurance needed based on your evaluation of the number of months needed (may exceed 12 months) to replace your property, resume operations and restore the business to the condition that would have existed if no property damage had occurred.

Refer to the agent or Company for information on available Coinsurance levels and indemnity options. The Limit of Insurance you select will be shown in the Declarations of the policy.

**Supplementary Information**

| | 12 Month Period Ending _____ | | Estimated for 12 Month Period Beginning _____ | |
|---|---|---|---|---|
| | **Manufacturing** | **Non-Manufacturing** | **Manufacturing** | **Non-Manufacturing** |
| **CALCULATION OF COST OF GOODS SOLD** | | | | |
| Inventory at beginning of year (Including raw material and stock in process, but not finished stock, for manufacturing risks) | $_____ | $_____ | $_____ | $_____ |
| Add: The following purchase costs: Cost of raw stock (including transportation charges) | +_____ | XXXXXX | +_____ | XXXXXX |
| Cost of factory supplies consumed | +_____ | XXXXXX | +_____ | XXXXXX |
| Cost of merchandise sold including transportation charges (for manufacturing risks, means cost of merchandise sold but not manufactured by you) | +_____ | +_____ | +_____ | +_____ |
| Cost of other supplies consumed (including transportation charges) | +_____ | +_____ | +_____ | +_____ |
| Cost of goods available for sale | $_____ | $_____ | $_____ | $_____ |
| Deduct: Inventory at end of year (Including raw material and stock in process, but not finished stock, for manufacturing risks) | −_____ | −_____ | −_____ | −_____ |
| Costs of Goods Sold (Enter this figure in Item **I.** on previous page | $_____ | $_____ | $_____ | $_____ |

**CP 15 15 06 95** Copyright, Insurance Services Office, Inc., 1994                             

## CALCULATION OF SPECIAL DEDUCTIONS - MINING PROPERTIES

Royalties, unless specifically included in coverage

$ _____        $ _____

Actual depletion, commonly known as unit or cost depletion (not percentage depletion)

+ _____        + _____

Welfare and retirement fund charges based on tonnage

+ _____        + _____

Hired trucks

+ _____        + _____

Enter this figure in Item I. on previous page

$ _____        $ _____

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PROTECTIVE SAFEGUARDS

Policy Number   EPP 026 35 19

This endorsement modifies insurance provided under the following:

COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
FARM COVERAGE PART

## SCHEDULE

| Loc. Number | Bldg. Number | Protective Safeguards Symbols Applicable | |
|---|---|---|---|
| 1 | 1 | P-1 | |

**Describe any "P-9":**

**A.** The following is added to the:

**Commercial Property Conditions**
**Farm Property Coverage Form, General Conditions**
**Commercial Inland Marine Conditions**

**PROTECTIVE SAFEGUARDS**

1. As a condition of this insurance, you are required to maintain the protective devices or services listed in the **SCHEDULE** of this endorsement.

2. The protective safeguards to which this endorsement applies are identified by the following symbols:

    **"P-1"   Automatic Sprinkler System,** including related supervisory services.

    Automatic Sprinkler System means:

    **a.** Any automatic fire protective or extinguishing system, including connected:

    **(1)** Sprinklers and discharge nozzles;

    **(2)** Ducts, pipes, valves and fittings;

    **(3)** Tanks, their component parts and supports; and

    **(4)** Pumps and private fire protection mains.

    **b.** When supplied from an automatic fire protective system:

    **(1)** Non-automatic fire protective systems; and

    **(2)** Hydrants, standpipes and outlets.

    **"P-2"   Automatic Fire Alarm,** protecting the entire building, that is:

    **a.** Connected to a central station; or

    **b.** Reporting to a public or private fire alarm station.

    **"P-3"   Security Service,** with a recording system or watch clock, making hourly rounds covering the entire building, when the "premises" are not in actual operation.

    **"P-4"   Service Contract** with a privately owned fire department providing fire protection service to the "premises".

    **"P-5"   Automatic Commercial Cooking Exhaust and Extinguishing System** installed on cooking appliances and having the following components:

IA 460 01 16

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Page 1 of 2

a.  Hood;

b.  Grease removal device;

c.  Duct system; and

d.  Wet chemical fire extinguishing equipment.

"P-9"  The protective system described in the **SCHEDULE** of this endorsement.

**B.**  The following is added to the **EXCLUSIONS** section of any Coverage Form within the Commercial Property, Farm or Commercial Inland Marine Coverage Part:

### Failure to Maintain Protective Safeguards

We will not pay for "loss" caused by or resulting from fire, if prior to the fire, you:

1)  Knew of any suspension or impairment in any protective safeguard listed in the **SCHEDULE** of this endorsement and failed to notify us of that fact; or

2)  Failed to maintain in complete working order any protective safeguard listed in the **SCHEDULE** of this endorsement over which you had control.

If part of an Automatic Sprinkler System is shut off due to breakage, leakage, freezing conditions or opening of sprinkler heads, notification to us will not be necessary if you can restore full protection within 48 hours.

Date _____

Signature of Insured _____

HOASTER GEBHARD & CO. 37-039
LEBANON, PA

Includes copyrighted material of Insurance
Services Office, Inc., with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PROTECTIVE SAFEGUARDS

Policy Number  **EPP 026 35 19**

This endorsement modifies insurance provided under the following:

**COMMERCIAL INLAND MARINE COVERAGE PART**
**COMMERCIAL PROPERTY COVERAGE PART**
**FARM COVERAGE PART**

**SCHEDULE**

| Loc. Number | Bldg. Number | Protective Safeguards Symbols Applicable | |
|---|---|---|---|
| 3 | 1 | P-1 | |

**Describe any "P-9":**

A. The following is added to the:

**Commercial Property Conditions**
**Farm Property Coverage Form, General Conditions**
**Commercial Inland Marine Conditions**

**PROTECTIVE SAFEGUARDS**

1. As a condition of this insurance, you are required to maintain the protective devices or services listed in the **SCHEDULE** of this endorsement.

2. The protective safeguards to which this endorsement applies are identified by the following symbols:

   **"P-1"** **Automatic Sprinkler System,** including related supervisory services.

   Automatic Sprinkler System means:

   a. Any automatic fire protective or extinguishing system, including connected:

      **(1)** Sprinklers and discharge nozzles;

      **(2)** Ducts, pipes, valves and fittings;

      **(3)** Tanks, their component parts and supports; and

      **(4)** Pumps and private fire protection mains.

   b. When supplied from an automatic fire protective system:

      **(1)** Non-automatic fire protective systems; and

      **(2)** Hydrants, standpipes and outlets.

   **"P-2"** **Automatic Fire Alarm,** protecting the entire building, that is:

   a. Connected to a central station; or

   b. Reporting to a public or private fire alarm station.

   **"P-3"** **Security Service,** with a recording system or watch clock, making hourly rounds covering the entire building, when the "premises" are not in actual operation.

   **"P-4"** **Service Contract** with a privately owned fire department providing fire protection service to the "premises".

   **"P-5"** **Automatic Commercial Cooking Exhaust and Extinguishing System** installed on cooking appliances and having the following components:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

a. Hood;

b. Grease removal device;

c. Duct system; and

d. Wet chemical fire extinguishing equipment.

"P-9" The protective system described in the **SCHEDULE** of this endorsement.

**B.** The following is added to the **EXCLUSIONS** section of any Coverage Form within the Commercial Property, Farm or Commercial Inland Marine Coverage Part:

**Failure to Maintain Protective Safeguards**

We will not pay for "loss" caused by or resulting from fire, if prior to the fire, you:

1) Knew of any suspension or impairment in any protective safeguard listed in the **SCHEDULE** of this endorsement and failed to notify us of that fact; or

2) Failed to maintain in complete working order any protective safeguard listed in the **SCHEDULE** of this endorsement over which you had control.

If part of an Automatic Sprinkler System is shut off due to breakage, leakage, freezing conditions or opening of sprinkler heads, notification to us will not be necessary if you can restore full protection within 48 hours.

**Date** _____

**Signature of Insured** _____

HOASTER GEBHARD & CO. 37-039
LEBANON, PA

IA 460 01 16

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Page 2 of 2

## PENNSYLVANIA FINANCIAL RESPONSIBILITY IDENTIFICATION CARD

| X | The Cincinnati Insurance Company | 0244-10677 |
|---|---|---|
| | The Cincinnati Casualty Company | 0244-28665 |
| | The Cincinnati Indemnity Company | 0244-23280 |

P.O. Box 145496, Cincinnati, OH 45250-5496
(513) 870-2000

Name & Address of Insured

HENRY MOLDED PRODUCTS INC

71 N 16TH ST
LEBANON, PA 17042-4506

**POLICY NUMBER**
EBA 026 35 19
**EFFECTIVE DATE 07-01-2021**

**Not Valid More
Than One Year
From Effective Date**

Agency
HOASTER GEBHARD & CO. 37-039
Phone Number 717-274-3360
Applicable with respect to the following Motor Vehicles:

| 1993 | PORSCHE | WP0AA2923PS820136 |
|---|---|---|
| Year | Make | Vehicle Identification Number |

Authorized Representative

### SEE IMPORTANT MESSAGE ON REVERSE SIDE

Form AA 4135 PA      CONSULT YOUR POLICY FOR ACTUAL COVERAGE IN FORCE
(11/14)                    ON SPECIFIC VEHICLES

**THIS CARD MUST BE CARRIED FOR PRESENTATION ON DEMAND.**
**KEEP THIS CARD IN THE INSURED VEHICLE.**

**WARNING:** Any owner or registrant of a motor vehicle who drives or permits a motor vehicle to be driven in this State without the required financial responsibility may have his or her registration suspended or revoked.

**NOTE – THIS CARD IS REQUIRED WHEN:**
1. You are involved in an auto accident.
2. You are convicted of a traffic offense other than a parking offense that requires a court appearance.
3. You are stopped for violating any provision of the Vehicle Code (75 Pa.C.S.) and requested to produce it by a police officer.

You must provide a copy of this card to the Department of Transportation when you request restoration of your operating privilege and/or registration privilege which was previously suspended or revoked.

**IN CASE OF ACCIDENT:** Report all accidents to your Agent/Company and to the police as soon as possible. Obtain the following information:
1. Name and address of each driver, passenger and witness.
2. Name of Insurance Company and policy number for each vehicle involved.

## PENNSYLVANIA FINANCIAL RESPONSIBILITY IDENTIFICATION CARD

| X | The Cincinnati Insurance Company | 0244-10677 |
|---|---|---|
| | The Cincinnati Casualty Company | 0244-28665 |
| | The Cincinnati Indemnity Company | 0244-23280 |

**P.O. Box 145496, Cincinnati, OH 45250-5496**
- **(513) 870-2000**

Name & Address of Insured

HENRY MOLDED PRODUCTS INC

71 N 16TH ST
LEBANON, PA 17042-4506

**POLICY NUMBER**
EBA 026 35 19
**EFFECTIVE DATE** 07-01-2021

**Not Valid More
Than One Year
From Effective Date**

Agency
HOASTER GEBHARD & CO. 37-039
Phone Number 717-274-3360
Applicable with respect to the following Motor Vehicles:

| 2005 | FORD | 1FMSU43P85EA84443 |
|---|---|---|
| Year | Make | Vehicle Identification Number |

Authorized Representative

## SEE IMPORTANT MESSAGE ON REVERSE SIDE

Form AA 4135 PA
(11/14)

**CONSULT YOUR POLICY FOR ACTUAL COVERAGE IN FORCE
ON SPECIFIC VEHICLES**

**THIS CARD MUST BE CARRIED FOR PRESENTATION ON DEMAND.**
**KEEP THIS CARD IN THE INSURED VEHICLE.**

**WARNING:** Any owner or registrant of a motor vehicle who drives or permits a motor vehicle to be driven in this State without the required financial responsibility may have his or her registration suspended or revoked.

**NOTE - THIS CARD IS REQUIRED WHEN:**
1. You are involved in an auto accident.
2. You are convicted of a traffic offense other than a parking offense that requires a court appearance.
3. You are stopped for violating any provision of the Vehicle Code (75 Pa.C.S.) and requested to produce it by a police officer.

You must provide a copy of this card to the Department of Transportation when you request restoration of your operating privilege and/or registration privilege which was previously suspended or revoked.

**IN CASE OF ACCIDENT:** Report all accidents to your Agent/Company and to the police as soon as possible. Obtain the following information:
1. Name and address of each driver, passenger and witness.
2. Name of Insurance Company and policy number for each vehicle involved.

## PENNSYLVANIA FINANCIAL RESPONSIBILITY IDENTIFICATION CARD

| X | The Cincinnati Insurance Company | 0244-10677 |
|---|---|---|
|  | The Cincinnati Casualty Company | 0244-28665 |
|  | The Cincinnati Indemnity Company | 0244-23280 |

P.O. Box 145496, Cincinnati, OH 45250-5496
(513) 870-2000

Name & Address of Insured

HENRY MOLDED PRODUCTS INC

71 N 16TH ST
LEBANON, PA 17042-4506

**POLICY NUMBER**
EBA 026 35 19
**EFFECTIVE DATE** 07-01-2021

**Not Valid More
Than One Year
From Effective Date**

Agency
HOASTER GEBHARD & CO. 37-039
Phone Number 717-274-3360
Applicable with respect to the following Motor Vehicles:

| 2008 | CHEVROL | 1GCCS33E388185920 |
|---|---|---|
| Year | Make | Vehicle Identification Number |

Authorized Representative

### SEE IMPORTANT MESSAGE ON REVERSE SIDE

Form AA 4135 PA
(11/14)

**CONSULT YOUR POLICY FOR ACTUAL COVERAGE IN FORCE
ON SPECIFIC VEHICLES**

**THIS CARD MUST BE CARRIED FOR PRESENTATION ON DEMAND.**
**KEEP THIS CARD IN THE INSURED VEHICLE.**

**WARNING:** Any owner or registrant of a motor vehicle who drives or permits a motor vehicle to be driven in this State without the required financial responsibility may have his or her registration suspended or revoked.

**NOTE – THIS CARD IS REQUIRED WHEN:**
1. You are involved in an auto accident.
2. You are convicted of a traffic offense other than a parking offense that requires a court appearance.
3. You are stopped for violating any provision of the Vehicle Code (75 Pa.C.S.) and requested to produce it by a police officer.

You must provide a copy of this card to the Department of Transportation when you request restoration of your operating privilege and/or registration privilege which was previously suspended or revoked.

**IN CASE OF ACCIDENT:** Report all accidents to your Agent/Company and to the police as soon as possible. Obtain the following information:
1. Name and address of each driver, passenger and witness.
2. Name of Insurance Company and policy number for each vehicle involved.

## PENNSYLVANIA FINANCIAL RESPONSIBILITY IDENTIFICATION CARD

| | | |
|---|---|---|
| X | The Cincinnati Insurance Company | 0244-10677 |
| | The Cincinnati Casualty Company | 0244-28665 |
| | The Cincinnati Indemnity Company | 0244-23280 |

P.O. Box 145496, Cincinnati, OH 45250-5496
(513) 870-2000

Name & Address of Insured

HENRY MOLDED PRODUCTS INC

**POLICY NUMBER**
EBA 026 35 19

71 N 16TH ST
LEBANON, PA 17042-4506

**EFFECTIVE DATE** 07-01-2021

**Not Valid More
Than One Year
From Effective Date**

Agency
HOASTER GEBHARD & CO. 37-039
Phone Number 717-274-3360
Applicable with respect to the following Motor Vehicles:

| 2019 | MERCEDE | 4JGED7FB0KA135628 |
|---|---|---|
| Year | Make | Vehicle Identification Number |

Authorized Representative

## SEE IMPORTANT MESSAGE ON REVERSE SIDE

Form AA 4135 PA       **CONSULT YOUR POLICY FOR ACTUAL COVERAGE IN FORCE**
(11/14)       **ON SPECIFIC VEHICLES**

**THIS CARD MUST BE CARRIED FOR PRESENTATION ON DEMAND.
KEEP THIS CARD IN THE INSURED VEHICLE.**

**WARNING:** Any owner or registrant of a motor vehicle who drives or permits a motor vehicle to be driven in this State without the required financial responsibility may have his or her registration suspended or revoked.

**NOTE - THIS CARD IS REQUIRED WHEN:**
1. You are involved in an auto accident.
2. You are convicted of a traffic offense other than a parking offense that requires a court appearance.
3. You are stopped for violating any provision of the Vehicle Code (75 Pa.C.S.) and requested to produce it by a police officer.

You must provide a copy of this card to the Department of Transportation when you request restoration of your operating privilege and/or registration privilege which was previously suspended or revoked.

**IN CASE OF ACCIDENT:** Report all accidents to your Agent/Company and to the police as soon as possible. Obtain the following information:
1. Name and address of each driver, passenger and witness.
2. Name of Insurance Company and policy number for each vehicle involved.

## PENNSYLVANIA FINANCIAL RESPONSIBILITY IDENTIFICATION CARD

| | | |
|---|---|---|
| X | The Cincinnati Insurance Company | 0244-10677 |
| | The Cincinnati Casualty Company | 0244-28665 |
| | The Cincinnati Indemnity Company | 0244-23280 |

P.O. Box 145496, Cincinnati, OH 45250-5496
(513) 870-2000

Name & Address of Insured

HENRY MOLDED PRODUCTS INC

**POLICY NUMBER**
EBA 026 35 19

71 N 16TH ST
LEBANON, PA 17042-4506

**EFFECTIVE DATE** 07-01-2021

**Not Valid More
Than One Year
From Effective Date**

Agency
HOASTER GEBHARD & CO. 37-039
Phone Number 717-274-3360
Applicable with respect to the following Motor Vehicles:

| 2020 | CADILLA | 1GYKNDRS9LZ137017 |
|---|---|---|
| Year | Make | Vehicle Identification Number |

Authorized Representative

### SEE IMPORTANT MESSAGE ON REVERSE SIDE

Form AA 4135 PA
(11/14)

**CONSULT YOUR POLICY FOR ACTUAL COVERAGE IN FORCE
ON SPECIFIC VEHICLES**

**THIS CARD MUST BE CARRIED FOR PRESENTATION ON DEMAND.**
**KEEP THIS CARD IN THE INSURED VEHICLE.**

**WARNING:** Any owner or registrant of a motor vehicle who drives or permits a motor vehicle to be driven in this State without the required financial responsibility may have his or her registration suspended or revoked.

**NOTE - THIS CARD IS REQUIRED WHEN:**
1. You are involved in an auto accident.
2. You are convicted of a traffic offense other than a parking offense that requires a court appearance.
3. You are stopped for violating any provision of the Vehicle Code (75 Pa.C.S.) and requested to produce it by a police officer.

You must provide a copy of this card to the Department of Transportation when you request restoration of your operating privilege and/or registration privilege which was previously suspended or revoked.

**IN CASE OF ACCIDENT:** Report all accidents to your Agent/Company and to the police as soon as possible. Obtain the following information:
1. Name and address of each driver, passenger and witness.
2. Name of Insurance Company and policy number for each vehicle involved.

# THE CINCINNATI INSURANCE COMPANY

**Mailing Address:  P.O. BOX 145496, CINCINNATI, OHIO 45250-5496**
**Home Office:      FAIRFIELD, OHIO  45014-5141**
**(513) 870-2000**

A STOCK INSURANCE COMPANY

# AUTOMOBILE / GARAGE
# RENEWAL CERTIFICATE

**ATTACH THIS CERTIFICATE TO YOUR POLICY**

| POLICY NUMBER | RENEWAL DATE | EXPIRATION DATE |
|---|---|---|
| EBA 026 35 19 | 07-01-2021 | 07-01-2022 |

**NAMED INSURED**
HENRY MOLDED PRODUCTS INC
71 N 16TH ST
LEBANON, PA 17042-4506

**AGENCY**
HOASTER GEBHARD & CO. 37-039
LEBANON, PA

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY UNLESS OTHERWISE SPECIFIED, THE ABOVE NUMBERED POLICY IS RENEWED FOR THE TERM SHOWN ABOVE.

### COVERAGE PROVIDED

| AUTOMOBILE - SEE SCHEDULE | PREMIUM |
|---|---|
| | $REFER TO IA102A |

**FORMS APPLICABLE AT RENEWAL**
IA509     01/12 COMMON POLICY DECLARATIONS
IA102A    09/08 SUMMARY OF PREMIUMS CHARGED
AA505PA   03/10 BUSINESS AUTO COVERAGE PART DECLARATIONS

06-29-2021 15:50

Countersigned _____ By _____
        (Date)                              (Authorized Representative)

This is a true and certified copy of the following
portions of the policy:

Business Auto Coverage

*Jennifer Baker*
Jennifer Baker, Assistant Vice President

**AA 602 PA 07 09**

Includes copyrighted material of ISO
Properties, Inc., with its permission.  EBA 026 35 19        Page 1 of 2

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. CANCELLATION

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. CHANGES

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. EXAMINATION OF YOUR BOOKS AND RECORDS

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. INSPECTIONS AND SURVEYS

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. PREMIUMS

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Includes copyrighted material of ISO Properties, Inc., with its permission.     EBA 026 35 19

# SUMMARY OF PREMIUMS CHARGED

Attached to and forming part of
POLICY NUMBER: EPP 026 35 19 / EBA 026 35 19          Effective Date: 07-01-2021

Named Insured: HENRY MOLDED PRODUCTS INC

### THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE
### PARTS FOR WHICH A PREMIUM CHARGE IS INDICATED

| | |
|---|---|
| Commercial Property Coverage Part     W/EBC | $ 53,659 |
| Commercial General Liability Coverage Part | $ 8,510 |
| Commercial Auto Coverage Part | $ 4,924 |
| Commercial Umbrella / Excess Liability Coverage Part | $ 1,871 |
| DATA DEFENDER COVERAGE PART | $ 87 |
| NETWORK DEFENDER COVERAGE PART | $ 242 |
| CRIME EXPANDED COVERAGE PLUS | $ 125 |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| Terrorism Coverage | $ 489 |
| Installment Charge | $ 17 |
| ANNUAL TOTAL | $ 69,924 |

**PAYMENTS**

| | First Installment | Remaining Installment(s) |
|---|---|---|
| QUARTERLY | 17,481 | 17,481 |

Automobile Coverages, Employers Liability, Employment Practices Liability Coverage, Professional Liability Coverage, Terrorism Coverage and / or Wrongful Acts Coverage, if included in the policy, are subject to Annual Adjustment of rates and premium on each anniversary of the policy.

Commercial Umbrella and Excess Liability, if included in the policy, may be subject to Annual Adjustment of premium on each anniversary. Refer to the Commercial Umbrella or Excess Liability Coverage Part Declarations form to see if this is applicable.

### ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

IA 102 A 09 08

# THE CINCINNATI INSURANCE COMPANY

**Mailing Address:** P.O. BOX 145496, CINCINNATI OHIO  45250-5496
**Home Office:** FAIRFIELD, OHIO 45014-5141
513-870-2000

## BUSINESS AUTO COVERAGE PART DECLARATIONS

**ITEM ONE**
Attached to and forming part of POLICY NUMBER:  __EBA 026 35 19__
Named Insured is the same as it appears in the Common Policy Declarations.

**ITEM TWO** — SCHEDULE OF COVERAGES AND COVERED AUTOS
This coverage part provides only those coverages where a premium or "incl" is shown in the premium column below. The limit of Insurance for each coverage listed is subject to all applicable policy provisions. Each of these coverages will apply only to those "autos" shown as covered "autos". "Autos" are shown as covered "autos" for a particular coverage by the entry of one or more of the symbols from the COVERED AUTO Section of the Business Auto Coverage Form next to the name of the coverage.

| COVERAGES | COVERED AUTOS (Entry of one or more of the symbols from the COVERED AUTOS Section of the Business Auto Coverage Form shows which autos are covered autos) | LIMIT<br>THE MOST WE WILL PAY FOR ANY ONE ACCIDENT OR LOSS | PREMIUM |
|---|---|---|---|
| LIABILITY | 1 | $1,000,000 | INCL |
| PERSONAL INJURY PROTECTION (or equivalent No-fault coverage) | 5 | Separately stated in each P.I.P. endorsement minus $ **NONE**    Ded. **REFER TO CA2237** | INCL |
| ADDED PERSONAL INJURY PROTECTION (or equivalent added No-fault coverage) | 5 | Separately stated in each added P.I.P. endorsement **REFER TO CA2238** | INCL |
| PROPERTY PROTECTION INSURANCE (Michigan only) | | Separately stated in each P. P.I. endorsement minus $        Ded for each accident | |
| AUTO. MEDICAL PAYMENTS | | $ | |
| UNINSURED MOTORISTS | 2 | $ 100,000 | INCL |
| UNDERINSURED MOTORISTS (When not included in Uninsured Motorists Coverage) | 2 | $ **SEE AA4183** | INCL |
| PHYSICAL DAMAGE COMPREHENSIVE COVERAGE | 7, 8 | Actual cash value or cost of repair, Whichever is less minus $ **SEE AA4183** Ded. For each covered auto. But no Deductible applies to loss caused by Fire or lightning. See Item Three for hired or borrowed "autos" | INCL |
| PHYSICAL DAMAGE SPECIFIED CAUSES OF LOSS COVERAGE | | Actual cash value or cost of repair, Whichever is less minus $        Ded. For Each covered auto. For loss caused by mischief or vandalism. See Item Three for hired or borrowed "autos" | |
| PHYSICAL DAMAGE COLLISION COVERAGE | 7, 8 | Actual cash value or cost of repair, Whichever is less minus $ **SEE AA4183** Ded for each covered auto. See Item Three for hired or borrowed "autos". | INCL |
| PHYSICAL DAMAGE INSURANCE TOWING AND LABOR | | $        for each disablement of a private passenger auto | |
| PREMIUM FOR ENDORSEMENTS | | | |
| | | *ESTIMATED TOTAL PREMIUM | INCL |

FORMS AND ENDORSEMENTS CONTAINED IN THIS COVERAGE PART AT ITS INCEPTION:

```
AA4183    02/06   AUTOMOBILE SCHEDULE
AA101     03/06   BUSINESS AUTO COVERAGE FORM
```

AA 505 PA 03 10

Includes copyrighted material of Insurance Services Office, Inc., with its permission.     EBA 026 35 19     **Page 1 of 3**

FORMS AND ENDORSEMENTS CONTAINED IN THIS COVERAGE PART AT ITS INCEPTION:

```
AA4128PA   07/16   IMPORTANT NOTICE AND FIRST PARTY BENEFITS EXTRAORDINARY MEDICAL
                   BENEFITS OPTION SELECTION FORM UNINSURED AND UNDERINSURED MOTORIST
                   PROTECTION OPTION SELECTION FORM
AA2009     01/17   CHANGES - TOWING AND LABOR
AA296      07/12   CHANGES - AUDIO, VISUAL AND DATA ELECTRONIC EQUIPMENT COVERAGE
AA4004     03/06   ADDITIONAL INSURED - DESIGNATED PERSON OR ORGANIZATION
AA4013PA   11/12   PENNSYLVANIA UNDERINSURED MOTORISTS COVERAGE-NONSTACKED
AA4014PA   11/12   PENNSYLVANIA UNINSURED MOTORISTS COVERAGE-NONSTACKED
AA4177     03/06   LESSOR - ADDITIONAL INSURED AND LOSS PAYEE
AA4231     08/08   SUPPLEMENTARY SCHEDULE FOR BUSINESS AUTO--ITEMS FOUR, FIVE, AND SIX
AA4263     04/10   OFFICE OF FOREIGN ASSETS CONTROL (OFAC) COMPLIANCE ENDORSEMENT
AA4337PA   03/21   PENNSYLVANIA CHANGES - BUSINESS AUTO COVERAGE FORM
CA2054     10/01   EMPLOYEE HIRED AUTOS
CA2237     12/92   PENNSYLVANIA BASIC FIRST PARTY BENEFIT
CA2238     07/90   PENNSYLVANIA ADDED AND COMBINATION FIRST PARTY BENEFITS ENDORSEMENT
CA2254     01/87   PENNSYLVANIA-NAMED INDIVIDUALS-BROADENED FIRST PARTY BENEFITS
AA247      03/06   DRIVE OTHER CAR COVERAGE - BROADENED COVERAGE FOR NAMED INDIVIDUALS
AA265      06/20   CINCIPLUS® BUSINESS AUTO XC® (EXPANDED COVERAGE) ENDORSEMENT
```

| IMPORTANT NOTICE: YOUR POLICY   ☒ PROVIDES   ☐ DOES NOT PROVIDE COLLISION COVERAGE ON RENTAL VEHICLES. IF COLLISION COVERAGE IS PROVIDED, PLEASE REFER TO THE PORTION OF YOUR POLICY PROVIDING THIS COVERAGE FOR ANY LIMITATIONS THAT MAY APPLY. |
| --- |

\* This policy may be subject to final audit

# QUICK REFERENCE
# COMMERCIAL AUTO COVERAGE PART
# BUSINESS AUTO COVERAGE FORM
## READ YOUR POLICY CAREFULLY

**DECLARATIONS PAGES**

Named Insured and Mailing Address
Policy Period
Description of Business
Coverages and Limits of Insurance

**SECTION I - COVERED AUTOS**                                              **Beginning on Page**

Description of Covered Auto Designation Symbols.................................................................1
Owned Autos You Acquire After the Policy Begins .............................................................1
Certain Trailers, Mobile Equipment and
Temporary Substitute Autos..............................................................................................2

**SECTION II - LIABILITY COVERAGE**

Coverage..............................................................................................................................2
Who is an Insured ..............................................................................................................2
Coverage Extensions
    Supplementary Payments...............................................................................................2
    Out of State ....................................................................................................................3
Exclusions ...........................................................................................................................3
Limit of Insurance..............................................................................................................5

**SECTION III - PHYSICAL DAMAGE COVERAGE**

Coverage..............................................................................................................................7
Exclusions ...........................................................................................................................7
Limit of Insurance..............................................................................................................8
Deductible............................................................................................................................8

**SECTION IV - BUSINESS AUTO CONDITIONS**

Loss Conditions
    Appraisal for Physical Damage Loss .............................................................................9
    Duties in the Event of Accident, Claim, Suit or Loss....................................................9
    Legal Action Against Us ................................................................................................9
    Loss Payment - Physical Damage Coverages...............................................................9
    Transfer of Rights of Recovery Against Others to Us.................................................10
General Conditions
    Bankruptcy...................................................................................................................10
    Concealment, Misrepresentation or Fraud.................................................................10
    Liberalization ..............................................................................................................10
    No Benefit to Bailee - Physical Damage Coverages..................................................10
    Other Insurance ...........................................................................................................10
    Premium Audit.............................................................................................................10
    Policy Period, Coverage Territory ..............................................................................10
    Two or More Coverage Forms or Policies Issued by Us.............................................11

**SECTION V - DEFINITIONS** ...........................................................................................11

**COMMON POLICY CONDITIONS**
Cancellation
Changes
Examination of Your Books and Records
Inspections and Surveys
Premiums
Transfer of Your Rights and Duties under this Policy

**ENDORSEMENTS (If Any)**

# AUTOMOBILE SCHEDULE

## ITEM    THREE

Attached to and forming a part of Policy Number    EBA 026 35 19    , effective  07-01-2021

The insurance afforded for any automobile is only with respects to such and so many of the coverages as are indicated by specific premium charge or charges indicated.

### POLICY LIMITS
#### State: PA

| | | | |
|---|---|---|---|
| Bodily Injury: | 1,000,000 CSL | Property Damage: | INCLUDED |
| UM | 100,000 (OTHERS) | UIM | 100,000 |
| UM/UIM: | NONSTACKED | | |

Additional First Party Benefits (with WC)

| | | | | | |
|---|---|---|---|---|---|
| Medical Expense: | 100,000 | Funeral Expense: | N/A | Extraordinary Medical: | N/A |
| Work Loss: | 5,000/1,000 | Accidental Death: | N/A | | |

---

**Veh. No.    Vehicle Information**

**1**    1993 PORSCHE GTS S/N WP0AA2923PS820136       Class: 7398    Territory 112
   OTC-COMP DED: 1,000                   Coll Ded: 1,000
                       COST NEW: 82,260    ZIP CODE: 17042

| BI | PD | MP | OTC | COLL | UM | | |
|---|---|---|---|---|---|---|---|
| 355 | INCL | N/A | 52 | 138 | 54 | | |
| AFPB | | | | | | | TOTAL |
| 27 | | | | | | | 626 |

**2**    2005 FORD EXCURSION S/N 1FMSU43P85EA84443       Class: 7398    Territory 112
   OTC-COMP DED: 1,000                   Coll Ded: 1,000
                       COST NEW: 50,270    ZIP CODE: 17042

| BI | PD | MP | OTC | COLL | UM | | |
|---|---|---|---|---|---|---|---|
| 383 | INCL | N/A | 34 | 92 | 54 | | |
| AFPB | | | | | | | TOTAL |
| 27 | | | | | | | 590 |

**3**    2008 CHEVROLET PICKUP S/N 1GCCS33E388185920       Class: 03499    Territory 112
   OTC-COMP DED: 1,000                   Coll Ded: 1,000
                       COST NEW: 21,015    ZIP CODE: 17042

| BI | PD | MP | OTC | COLL | UM | | |
|---|---|---|---|---|---|---|---|
| 566 | INCL | N/A | 24 | 68 | 59 | | |
| AFPB | | | | | | | TOTAL |
| 22 | | | | | | | 739 |

AA 4183 02 06                                Page 1 of 3

Case 24-02-01705-PWD Document 121 Filed 04/24/24 Page 377 of 520

# AUTOMOBILE SCHEDULE

## ITEM THREE (CONTINUED)

**4**  2019 MERCEDES-BENZ BENZ S/N 4JGED7FB0KA135628          Class: 7398    Territory 112
OTC-COMP DED: 1,000                                  Coll Ded: 1,000
                                                     COST NEW: 113,000    ZIP CODE: 17042

| BI | PD | MP | OTC | COLL | UM | | |
|----|----|----|-----|------|----|----|----|
| 425 | INCL | N/A | 153 | 487 | 54 | | |
| AFPB | | | | | | | TOTAL |
| 27 | | | | | | | 1,146 |

**5**  2020 CADILLAC XT5 S/N 1GYKNDRS9LZ137017          Class: 7398    Territory 112
OTC-COMP DED: 1,000                                  Coll Ded: 1,000
                                                     COST NEW: 51,795    ZIP CODE: 17042

| BI | PD | MP | OTC | COLL | UM | | |
|----|----|----|-----|------|----|----|----|
| 427 | INCL | N/A | 85 | 286 | 54 | | |
| AFPB | | | | | | | TOTAL |
| 27 | | | | | | | 879 |

ADDITIONAL INTEREST - DESIGNATED PERSON OR ORGANIZATION     Class:       Territory
OTC-COMP DED: N/A                                    Coll Ded: N/A

| BI | PD | MP | OTC | COLL | UM | | TOTAL |
|----|----|----|-----|------|----|----|----|
| 50 | INCL | | | | | | 50 |

BROAD FORM DRIVE OTHER CAR                                  Class:       Territory
OTC-COMP DED: 500                                   Coll Ded: 500

| BI | PD | MP | OTC | COLL | UM | | |
|----|----|----|-----|------|----|----|----|
| 60 | INCL | | 8 | 38 | 5 | | |
| BRFP | AFPB | | | | | | TOTAL |
| 2 | 30 | | | | | | 143 |

BUSINESS AUTO EXPANDED ENDORSEMENT                          Class:       Territory
OTC-COMP DED: N/A                                   Coll Ded: N/A

| BI | PD | MP | OTC | COLL | UM | | TOTAL |
|----|----|----|-----|------|----|----|----|
| | | | 100 | | | | 100 |

HIRED AND NON-OWNED                                         Class:       Territory
OTC-COMP DED: N/A                                   Coll Ded: N/A

| BI | PD | MP | OTC | COLL | UM | | TOTAL |
|----|----|----|-----|------|----|----|----|
| 447 | INCL | | | | | | 447 |

AA 4183 02 06

Case 4:02-cv-01050-DW Document 392 Filed 04/24/24 Page 378 of 520

# AUTOMOBILE SCHEDULE

## ITEM   THREE   (CONTINUED)

| HIRED AUTO PHYSICAL DAMAGE | LIMIT: 50,000 | | Class: | Territory |
|---|---|---|---|---|
| OTC-COMP DED: 100 | | Coll Ded: 500 | | |

| BI | PD | MP | OTC | COLL | UM | | TOTAL |
|---|---|---|---|---|---|---|---|
| | | | 82 | 122 | | | 204 |

SYMBOLS:

| | | | | |
|---|---|---|---|---|
| BI | -- Bodily Injury | SPEC | -- Specified Perils | |
| PD | -- Property Damage | COLL | -- Collision | |
| MP | -- Medical Payments | UM | -- Uninsured Motorists | |
| OTC | -- Other Than Collision (ACV Coverage applies unless Stated Amount Value is indicated) | UIM | -- Underinsured Motorists | |
| | | PIP | -- Personal Injury Protection | |
| CAC | -- Combined Additional Coverage | T&L | -- Towing and Labor Costs | |
| FT&S | -- Fire, Theft, and Supplemental | RR | -- Rental Reimbursement | |
| AFPB | -- Add First Party Benefits | BRFP | -- Broad First Party Benefits | |

AA 4183 02 06

# BUSINESS AUTO COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to **SECTION V - DEFINITIONS**.

## SECTION I - COVERED AUTOS

ITEM TWO of the Declarations shows the "autos" that are covered "autos" for each of your coverages. The following numerical symbols describe the "autos" that may be covered "autos". The symbols entered next to a coverage on the Declarations designate the only "autos" that are covered "autos".

A. **Description of Covered Auto Designation Symbols**

   **SYMBOL**         **DESCRIPTION**

   1 = ANY "AUTO".

   2 = OWNED "AUTOS" ONLY. Only those "autos" you own (and for Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" you acquire ownership of after the policy begins.

   3 = OWNED PRIVATE PASSENGER "AUTOS" ONLY. Only the private passenger "autos" you own. This includes those private passenger "autos" you acquire ownership of after the policy begins.

   4 = OWNED "AUTOS" OTHER THAN PRIVATE PASSENGER "AUTOS" ONLY. Only those "autos" you own that are not of the private passenger type (and for Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" not of the private passenger type you acquire ownership of after the policy begins.

   5 = OWNED "AUTOS" SUBJECT TO NO-FAULT. Only those "autos" you own that are required to have No-Fault benefits in the state where they are licensed or principally garaged. This includes those "autos" you acquire ownership of after the policy begins provided they are required to have No-Fault benefits in the state where they are licensed or principally garaged.

   6 = OWNED "AUTOS" SUBJECT TO A COMPULSORY UNINSURED MOTORISTS LAW. Only those "autos" you own that because of the law in the state where they are licensed or principally garaged are required to have and cannot reject Uninsured Motorists Coverage. This includes those "autos" you acquire ownership of after the policy begins provided they are subject to the same state uninsured motorists requirement.

   7 = SPECIFICALLY DESCRIBED "AUTOS". Only those "autos" described in ITEM THREE of the Declarations for which a premium charge is shown (and for Liability Coverage any "trailers" you don't own while attached to a power unit described in ITEM THREE).

   8 = HIRED "AUTOS" ONLY. Only those "autos" you lease, hire, rent or borrow. This does not include any "auto" you lease, hire, rent, or borrow from any of your "employees" or partners (if you are a partnership), members (if you are a limited liability company) or members of their households.

   9 = NONOWNED "AUTOS" ONLY. Only those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes "autos" owned by your "employees", partners (if you are a partnership), members (if you are a limited liability company), or members of their households but only while used in your business or your personal affairs.

B. **Owned Autos You Acquire After the Policy Begins**

   1. If Symbols 1, 2, 3, 4, 5, or 6 are entered next to a coverage in ITEM TWO of the Declarations, then you have coverage for "autos" that you acquire of the type described for the remainder of the policy period.

   2. But, if Symbol 7 is entered next to a coverage in ITEM TWO of the Declarations, an "auto" you acquire will be a covered "auto" for that coverage only if:

      a. We already cover all "autos" that you own for that coverage or it replaces

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

an "auto" you previously owned that had that coverage; and

b. You tell us within 30 days after you acquire it that you want us to cover it for that coverage.

## C. Certain Trailers, Mobile Equipment and Temporary Substitute Autos

If Liability Coverage is provided by this Coverage Form, the following types of vehicles are also covered "autos" for Liability Coverage:

1. "Trailers" with a load capacity of 2,000 pounds or less designed primarily for travel on public roads.

2. "Mobile equipment" while being carried or towed by a covered "auto".

3. Any "auto" you do not own while used with the permission of its owner as a temporary substitute for a covered "auto" you own that is out of service because of its:

   a. Breakdown;

   b. Repair;

   c. Servicing;

   d. "Loss"; or

   e. Destruction.

# SECTION II - LIABILITY COVERAGE

## A. Coverage

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

We will also pay all sums an "insured" legally must pay as a "covered pollution cost or expense" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of covered "autos". However, we will only pay for the "covered pollution cost or expense" if there is either "bodily injury" or "property damage" to which this insurance applies that is caused by the same "accident".

We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense". However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

1. **Who is an Insured**

   The following are "insureds":

   a. You for any covered "auto".

   b. Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

      (1) The owner or anyone else from whom you hire or borrow a cov-

ered "auto". This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.

      (2) Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household.

      (3) Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.

      (4) Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company), or a lessee or borrower or any of their "employees", while moving property to or from a covered "auto".

      (5) A partner (if you are a partnership), or a member (if you are a limited liability company), for a covered "auto" owned by him or her or a member of his or her household.

   c. Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

2. **Coverage Extensions**

   a. **Supplementary Payments**

      We will pay for the "insured":

      (1) All expenses we incur.

      (2) Up to $2,000 for the cost of bail bonds (including bonds for related traffic law violations) re-

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

quired because of an "accident" we cover. We do not have to furnish these bonds.

**(3)** The cost of bonds to release attachments in any "suit" against the "insured" we defend, but only for bond amounts within our Limit of Insurance.

**(4)** All reasonable expenses incurred by the "insured" at our request, including actual loss of earnings up to $250 a day because of time off from work.

**(5)** All costs taxed against the "insured" in any "suit" against the "insured" we defend.

**(6)** All interest on the full amount of any judgment that accrues after entry of the judgment in any "suit" against the "insured" we defend, but our duty to pay interest ends when we have paid, offered to pay or deposited in court the part of the judgment that is within our Limit of Insurance.

These payments will not reduce the Limit of Insurance.

**b.** **Out-of-State Coverage Extensions**

While a covered "auto" is away from the state where it is licensed we will:

**(1)** Increase the Limit of Insurance for Liability Coverage to meet the limits specified by a compulsory or financial responsibility law of the jurisdiction where the covered "auto" is being used. This extension does not apply to the limit or limits specified by any law governing motor carriers of passengers or property.

**(2)** Provide the minimum amounts and types of other coverages, such as no-fault, required of out-of-state vehicles by the jurisdiction where the covered "auto" is being used.

We will not pay anyone more than once for the same elements of loss because of these extensions.

**B.** **Exclusions**

This insurance does not apply to any of the following:

**1.** **Expected or Intended Injury**

"Bodily injury" or "property damage" which may reasonably be expected to result from the intentional or criminal acts of the "insured" or which is in fact expected or intended by the "insured", even if the injury or damage is of a different degree or type than actually expected or intended. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**2.** **Contractual**

Liability assumed under any contract or agreement.

But this exclusion does not apply to liability for damages:

**a.** Assumed in a contract or agreement that is an "insured contract" provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

**b.** That the "insured" would have in the absence of the contract or agreement.

**3.** **Workers' Compensation**

Any obligation for which the "insured" or the "insured's" insurer may be held liable under any workers' compensation, disability benefits or unemployment compensation law or any similar law.

**4.** **Employee Indemnification and Employer's Liability**

"Bodily injury" to:

**a.** An "employee" of the "insured" sustained in the "workplace";

**b.** An "employee" of the "insured" arising out of the performance of duties related to the conduct of the "insured's" business; or

**c.** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **a.** or **b.** above.

This Exclusion applies:

**(1)** Whether the "insured" may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

AA 101 03 06

But this exclusion does not apply to "bodily injury" to domestic "employees" not entitled to workers' compensation benefits or to liability assumed by the "insured" under an "insured contract" other than a contract or agreement with a labor leasing firm. For the purposes of the Coverage Form, a domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises.

5. **Fellow Employee**

"Bodily injury" to any fellow "employee" of the "insured" arising out of and in the course of the fellow "employee's" employment or while performing duties related to the conduct of your business.

6. **Care, Custody or Control**

"Property damage" to or "covered pollution cost or expense" involving property owned or transported by the "insured" or in the "insured's" care, custody or control. But this exclusion does not apply to liability assumed under a sidetrack agreement.

7. **Handling of Property**

"Bodily injury" or "property damage" resulting from the handling of property:

   a. Before it is moved from the place where it is accepted by the "insured" for movement into or onto the covered "auto"; or

   b. After it is moved from the covered "auto" to the place where it is finally delivered by the "insured".

8. **Movement of Property by Mechanical Device**

"Bodily injury" or "property damage" resulting from the movement of property by a mechanical device (other than a hand truck) unless the device is attached to the covered "auto".

9. **Operations**

"Bodily injury" or "property damage" arising out of the operation of:

   a. Any equipment listed in Paragraphs 6.b. and 6.c. of the definition of "mobile equipment"; or

   b. Machinery or equipment that is on, attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

10. **Completed Operations**

"Bodily injury" or "property damage" arising out of your work after that work has been completed or abandoned.

In this exclusion, your work means:

   a. Work or operations performed by you or on your behalf; and

   b. Materials, parts or equipment furnished in connection with such work or operations.

Your work includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in Paragraphs a. or b. above.

Your work will be deemed completed at the earliest of the following times:

   (1) When all of the work called for in your contract has been completed.

   (2) When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

   (3) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

11. **Pollutant**

"Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release, escape or emission of "pollutants":

   a. That are, or that are contained in any property that is:

      (1) Being transported or towed by, handled, or handled for movement into, onto or from, the covered "auto";

      (2) Otherwise in the course of transit by or on behalf of the "insured"; or

Includes copyrighted material of Insurance
Services Office, Inc., with its permission.

**(3)** Being stored, disposed of, treated or processed in or upon the covered "auto";

**b.** Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

**c.** After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph **a.** of this exclusion does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

**(1)** The "pollutants" escape, seep, migrate, or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

**(2)** The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraphs **6.b.** and **6.c.** of the definition of "mobile equipment".

However, this exception to Paragraph **a.** does not apply if the fuels, lubricants, fluids, exhaust gases or other similar "pollutants" are intentionally discharged, dispersed or released.

Paragraphs **b.** and **c.** of this exclusion do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

**(1)** The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

**(2)** The discharge, dispersal, seepage, migration, release, emission or escape of the "pollutants" is caused directly by such upset, overturn or damage.

**d.** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:

**(1)** If the "pollutants" are brought on or to the premises, site or location in connection with such operations by such "insured", contractor or subcontractor; or

**(2)** If the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

Subparagraph **d.(1)** does not apply to "bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the fuels, lubricants or other operating fluids are intentionally discharged, dispersed or released, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent to be discharged, dispersed or released as part of the operations being performed by such "insured", contractor or subcontractor.

**12. War**

"Bodily injury" or "property damage" arising directly or indirectly out of:

**a.** War, including undeclared or civil war;

**b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**c.** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**13. Racing**

Covered "autos" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. This

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

AA 101 03 06

insurance also does not apply while that covered "auto" is being prepared for such a contest or activity.

## C. Limit of Insurance

Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for the total of all damages and "covered pollution cost or expense" combined, resulting from any one "accident" is the Limit of Insurance for Liability Coverage shown in the Declarations.

All "bodily injury", "property damage" and "covered pollution cost or expense" resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one "accident".

No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Medical Payments Coverage endorsement, Uninsured Motorists Coverage endorsement or Underinsured Motorists Coverage endorsement attached to this Coverage Part.

## D. Mobile Equipment Subject to Motor Vehicle Insurance Laws

As respects **SECTION II - LIABILITY COVERAGE** any land vehicle, which would qualify as "mobile equipment", except that it is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged, is considered a covered "auto" under **SECTION II - LIABILITY COVERAGE,** irrespective of the Auto Designation Symbols shown for **SECTION II - LIABILITY COVERAGE** in the Declarations.

# SECTION III - PHYSICAL DAMAGE COVERAGE

## A. Coverage

1. We will pay for "loss" to a covered "auto" or its equipment under:

   a. **Comprehensive Coverage**

   From any cause except:

   **(1)** The covered "auto's" collision with another object; or

   **(2)** The covered "auto's" overturn.

   b. **Specified Causes of Loss Coverage**

   Caused by:

   **(1)** Fire, lightning or explosion;

   **(2)** Theft;

   **(3)** Windstorm, hail or earthquake;

   **(4)** Flood;

   **(5)** Mischief or vandalism; or

   **(6)** The sinking, burning, collision or derailment of any conveyance transporting the covered "auto".

   c. **Collision Coverage**

   Caused by:

   **(1)** The covered "auto's" collision with another object; or

   **(2)** The covered "auto's" overturn.

2. **Towing**

   We will pay up to the limit shown in the Declarations for towing and labor costs

incurred each time a covered "auto" of the private passenger type is disabled. However, the labor must be performed at the place of disablement.

3. **Glass Breakage - Hitting a Bird or Animal - Falling Objects or Missiles**

   If you carry Comprehensive Coverage for the damaged covered "auto", we will pay for the following under Comprehensive Coverage:

   a. Glass breakage;

   b. "Loss" caused by hitting a bird or animal; and

   c. "Loss" caused by falling objects or missiles.

   However, you have the option of having glass breakage caused by a covered "auto's" collision or overturn considered a "loss" under Collision Coverage.

4. **Coverage Extensions**

   a. **Transportation Expenses**

   We will also pay up to $20 per day to a maximum of $600 for temporary transportation expense incurred by you because of the total theft of a covered "auto" of the private passenger type. We will pay only for those covered "autos" for which you carry either Comprehensive or Specified Causes of Loss Coverage. We will pay for temporary transportation expenses incurred during the period beginning 48 hours after the theft and ending, regardless of the policy's expiration, when the covered

"auto" is returned to use or we pay for its "loss".

**b. Loss of Use Expenses**

For Hired Auto Physical Damage, we will pay expenses for which an "insured" becomes legally responsible to pay for loss of use of a vehicle rented or hired without a driver, under a written rental contract or agreement. We will pay for loss of use expenses if caused by:

**(1)** Other than collision only if the Declarations indicate that Comprehensive Coverage is provided for any covered "auto";

**(2)** Specified Causes of Loss only if the Declarations indicate that Specified Causes of Loss Coverage is provided for any covered "auto"; or

**(3)** Collision only if the Declarations indicate that Collision Coverage is provided for any covered "auto".

However, the most we will pay for any expenses for loss of use is $20 per day, to a maximum of $600.

**B. Exclusions**

**1.** We will not pay for "loss" caused by or resulting from any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss".

**a. Nuclear Hazard**

**(1)** The explosion of any weapon employing atomic fission or fusion; or

**(2)** Nuclear reaction or radiation, or radioactive contamination, however caused.

**b. War or Military Action**

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

**2.** We will not pay for "loss" to any covered "auto" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. We will also not pay for "loss" to any covered "auto" while that covered "auto" is being prepared for such a contest or activity.

**3.** We will not pay for "loss" caused by or resulting from any of the following unless caused by other "loss" that is covered by this insurance:

**a.** Wear and tear, freezing, mechanical or electrical breakdown; or

**b.** Blowouts, punctures or other road damage to tires.

**4.** We will not pay for "loss" to any of the following:

**a.** Tapes, records, discs or other similar audio, visual or data electronic devices designed for use with audio, visual or data electronic equipment.

**b.** Any device designed or used to detect speed measuring equipment such as radar or laser detectors and any jamming apparatus intended to elude or disrupt speed measurement equipment.

**c.** Any electronic equipment, without regard to whether this equipment is permanently installed, that receives or transmits audio, visual or data signals and that is not designed solely for the reproduction of sound.

**d.** Any accessories used with the electronic equipment described in Paragraph **c.** above.

Exclusions **4.c.** and **4.d.** do not apply to:

**a.** Equipment designed solely for the reproduction of sound and accessories used with such equipment, provided such equipment is permanently installed in the covered "auto" at the time of the "loss" or such equipment is removable from a housing unit which is permanently installed in the covered "auto" at the time of the "loss", and such equipment is designed to be solely operated by use of the power from the "auto's" electrical system, in or upon the covered "auto"; or

**b.** Any other electronic equipment that is:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

(1) Necessary for the normal operation of the covered "auto" or the monitoring of the covered "auto's" operating system; or

(2) An integral part of the same unit housing any sound reproducing equipment described in Paragraph **a.** above and permanently installed in the opening of the dash or console of the covered "auto" normally used by the manufacturer for installation of a radio.

5. We will not pay for "loss" to a covered "auto" due to "diminution in value".

## C. Limit of Insurance

1. The most we will pay for "loss" in any one "accident" is the lesser of:

   a. The actual cash value of the damaged or stolen property as of the time of the "loss"; or

   b. The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality.

2. An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total "loss".

3. If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

## D. Deductible

For each covered "auto", our obligation to pay for, repair, return or replace damaged or stolen property will be reduced by the applicable deductible shown in the Declarations. Any Comprehensive Coverage deductible shown in the Declarations does not apply to "loss" caused by fire or lightning.

# SECTION IV - BUSINESS AUTO CONDITIONS

The following conditions apply in addition to the Common Policy Conditions:

## A. Loss Conditions

1. **Appraisal for Physical Damage Loss**

   If you and we disagree on the amount of "loss", either may demand an appraisal of the "loss". In this event, each party will select a competent appraiser. The two appraisers will select a competent and impartial umpire. The appraisers will state separately the actual cash value and amount of "loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

   a. Pay its chosen appraiser; and

   b. Bear the other expenses of the appraisal and umpire equally.

   If we submit to an appraisal, we will still retain our right to deny the claim.

2. **Duties in the Event of Accident, Claim, Suit or Loss**

   We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

   a. In the event of "accident", claim, "suit" or "loss", you must give us or our authorized representative prompt notice of the "accident" or "loss". Include:

   (1) How, when and where the "accident" or "loss" occurred;

   (2) The "insured's" name and address; and

   (3) To the extent possible, the names and addresses of any injured persons and witnesses.

   b. Additionally, you and any other involved "insured" must:

   (1) Assume no obligation, make no payment or incur no expense without our consent, except at the "insured's" own cost.

   (2) Immediately send us copies of any request, demand, order, notice, summons or legal paper received concerning the claim or "suit".

   (3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit".

   (4) Authorize us to obtain medical records or other pertinent information.

   (5) Submit to examination, at our expense, by physicians of our choice, as often as we reasonably require.

c. If there is "loss" to a covered "auto" or its equipment you must also do the following:

(1) Promptly notify the police if the covered "auto" or any of its equipment is stolen.

(2) Take all reasonable steps to protect the covered "auto" from further damage. Also keep a record of your expenses for consideration in the settlement of the claim.

(3) Permit us to inspect the covered "auto" and records proving the "loss" before its repair or disposition.

(4) Agree to examinations under oath at our request and give us a signed statement of your answers.

### 3. Legal Action Against Us

No one may bring a legal action against us under this Coverage Form until:

a. There has been full compliance with all the terms of this Coverage Form; and

b. Under Liability Coverage, we agree in writing that the "insured" has an obligation to pay or until the amount of that obligation has finally been determined by judgment after trial. No one has the right under this policy to bring us into an action to determine the "insured's" liability.

### 4. Loss Payment - Physical Damage Coverages

At our option we may:

a. Pay for, repair or replace damaged or stolen property;

b. Return the stolen property, at our expense. We will pay for any damage that results to the "auto" from the theft; or

c. Take all or any part of the damaged or stolen property at an agreed or appraised value.

If we pay for the "loss", our payment will include the applicable sales tax for the damaged or stolen property.

### 5. Transfer of Rights of Recovery Against Others to Us

If any person or organization to or for whom we make payment under this Cov-

erage Form has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after "accident" or "loss" to impair them.

## B. General Conditions

### 1. Bankruptcy

Bankruptcy or insolvency of the "insured" or the "insured's" estate will not relieve us of any obligations under this Coverage Form.

### 2. Concealment, Misrepresentation or Fraud

This Coverage Form is void in any case of fraud by you at any time as it relates to this Coverage Form. It is also void if you or any other "insured", at any time, intentionally conceal or misrepresent a material fact concerning:

a. This Coverage Form;

b. The covered "auto";

c. Your interest in the covered "auto"; or

d. A claim under this Coverage Form.

### 3. Liberalization

If within 60 days prior to the beginning of this Coverage Part or during the policy period, we make any changes to any forms or endorsements of this Coverage Part for which there is currently no separate premium charge, and that change provides more coverage than this Coverage Part, the change will automatically apply to this Coverage Part as of the latter of:

a. The date we implemented the change in your state; or

b. The date this Coverage Part became effective; and

will be considered as included until the end of the current policy period. We will make no additional premium charge for this additional coverage during the interim.

### 4. No Benefit to Bailee - Physical Damage Coverages

We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee, regardless of any other provision of this Coverage Form.

**AA 101 03 06**

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Page 9 of 14

**5. Other Insurance**

    **a.** For any covered "auto" you own, this Coverage Form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance. However, while a covered "auto" which is a "trailer" is connected to another vehicle, the Liability Coverage this Coverage Form provides for the "trailer" is:

        **(1)** Excess while it is connected to a motor vehicle you do not own.

        **(2)** Primary while it is connected to a covered "auto" you own.

    **b.** For Hired Auto Physical Damage Coverage, any covered "auto" you lease, hire, rent or borrow is deemed to be a covered "auto" you own. However, any "auto" that is leased, hired, rented or borrowed with a driver is not a covered "auto".

    **c.** Regardless of the provisions of Paragraph **a.** above, this Coverage Form's Liability Coverage is primary for any liability assumed under an "insured contract".

    **d.** When this Coverage Form and any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

**6. Premium Audit**

    **a.** The estimated premium for this Coverage Form is based on the exposures you told us you would have when this policy began. We will compute the final premium due when we determine your actual exposures. The estimated total premium will be credited against the final premium due and the first Named Insured will be billed for the balance, if any. The due date for the final premium or retrospective premium is the date shown as the due date on the bill. If the estimated total premium exceeds the final premium due, the first Named Insured will get a refund.

    **b.** If this policy is issued for more than one year, the premium for this Coverage Form will be computed annually based on our rates or premiums in effect at the beginning of each year of the policy.

**7. Policy Period, Coverage Territory**

Under this Coverage Form, we cover "accidents" and "losses" occurring:

    **a.** During the Policy Period shown in the Declarations; and

    **b.** Within the coverage territory.

The coverage territory is:

    **a.** The United States of America;

    **b.** The territories and possessions of the United States of America;

    **c.** Puerto Rico;

    **d.** Canada; and

    **e.** Anywhere in the world if:

        **(1)** A covered "auto" of the private passenger type is leased, hired, rented or borrowed without a driver for a period of 30 days or less; and

        **(2)** The "insured's" responsibility to pay damages is determined in a "suit" on the merits, in the United States of America, the territories and possessions of the United States of America, Puerto Rico, or Canada or in a settlement we agree to.

We also cover "loss" to, or "accidents" involving, a covered "auto" while being transported between any of these places.

**8. Two or More Coverage Forms or Policies Issued by Us**

If this Coverage Form and any other Coverage Form or policy issued to you by us or any company affiliated with us apply to the same "accident", the aggregate maximum Limit of Insurance under all the Coverage Forms or policies shall not exceed the highest applicable Limit of Insurance under any one Coverage Form or policy. This condition does not apply to any Coverage Form or policy issued by us or an affiliated company specifically to apply as excess insurance over this Coverage Form.

## SECTION V - DEFINITIONS

**A.** "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage".

**B.** "Auto" means:

1. A land motor vehicle, "trailer" or semitrailer designed for travel on public roads; or

2. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**C.** "Bodily injury" means bodily injury, sickness or disease sustained by a person including death resulting from any of these.

**D.** "Covered pollution cost or expense" means any cost or expense arising out of:

1. Any request, demand, order or statutory or regulatory requirement that the "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

2. Any claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "pollutants".

"Covered pollution cost or expense" does not include any cost or expense arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release, escape or emission of "pollutants":

a. That are, or that are contained in any property that is:

(1) Being transported or towed by, handled, or handled for movement into, onto or from the covered "auto";

(2) Otherwise in the course of transit by or on behalf of the "insured";

(3) Being stored, disposed of, treated or processed in or upon the covered "auto"; or

b. Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

c. After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph **a.** above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

(1) The "pollutants" escape, seep, migrate, or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

(2) The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraphs **6.b.** or **6.c.** of the definition of "mobile equipment".

Paragraphs **b.** and **c.** above do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

(1) The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

(2) The discharge, dispersal, seepage, migration, release, escape or emission of the "pollutants" is caused directly by such upset, overturn or damage.

**E.** "Diminution in value" means the actual or perceived loss in market value or resale value which results from a direct and accidental "loss".

**F.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**G.** "Insured" means any person or organization qualifying as an insured in the Who is an Insured provision of the applicable coverage.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

AA 101 03 06

Except with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or "suit" is brought.

**H.** "Insured contract":

**1.** Means:

**a.** A lease of premises;

**b.** A sidetrack agreement;

**c.** An easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another to pay for "bodily injury" or "property damage" to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement;

**f.** That part of any other contract or agreement entered into, as part of your business, pertaining to the rental or lease, by you or any of your "employees", of any "auto". However, such contract or agreement shall not be considered an "insured contract" to the extent that it obligates you or any of your "employees" to pay for "property damage" to any "auto" rented or leased by you or any of your "employees".

**2.** Does not include that part of any contract or agreement:

**a.** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road beds, tunnel, underpass or crossing; or

**b.** That pertains to the loan, lease or rental of an "auto" to you or any of your "employees", if the "auto" is loaned, leased or rented with a driver; or

**c.** That holds a person or organization engaged in the business of transporting property by "auto" for hire harmless for your use of a covered "auto" over a route or territory that person or organization is authorized to serve by public authority.

**I.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" includes supervisors furnished to you by the labor leasing firm. "Leased worker" does not include a "temporary worker".

**J.** "Loss" means direct and accidental loss or damage.

**K.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**1.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**2.** Vehicles maintained for use solely on or next to premises you own or rent;

**3.** Vehicles that travel on crawler treads;

**4.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

**a.** Power cranes, shovels, loaders, diggers or drills; or

**b.** Road construction or resurfacing equipment such as graders, scrapers or rollers.

**5.** Vehicles not described in Paragraphs **1.**, **2.**, **3.**, or **4.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

**a.** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

**b.** Cherry pickers and similar devices used to raise or lower workers.

**6.** Vehicles not described in Paragraphs **1.**, **2.**, **3.**, or **4.** above maintained primarily for purposes other than the transportation of persons or cargo. However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**a.** Equipment designed primarily for:

AA 101 03 06

Includes copyrighted material of Insurance
Services Office, Inc., with its permission.

Page 12 of 14

**(1)** Snow removal;

**(2)** Road maintenance, but not construction or resurfacing; or

**(3)** Street cleaning;

**b.** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**c.** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting or well servicing equipment.

However, "mobile equipment" does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**L.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, petroleum, petroleum products and their by-products, and waste. Waste includes materials to be recycled, reconditioned or reclaimed. "Pollutants" include but are not limited to substances which are generally recognized in industry or government to be harmful or toxic to persons, property or the environment regardless of whether injury or damage is caused directly or indirectly by the "pollutants" and whether:

**1.** The "insured" is regularly or otherwise engaged in activities which taint or degrade the environment; or

**2.** The "insured" uses, generates or produces the "pollutant".

**M.** "Property damage" means damage to or loss of use of tangible property.

**N.** "Suit" means a civil proceeding in which:

**1.** Damages because of "bodily injury" or "property damage"; or

**2.** A "covered pollution cost or expense",

to which this insurance applies, are alleged.

"Suit" includes:

**a.** An arbitration proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the "insured" must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the insured submits with our consent.

**O.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**P.** "Trailer" includes semitrailer.

**Q.** "Workplace" means that place and during such hours to which the "employee" sustaining "bodily injury" was assigned by you, or any other person or entity acting on your behalf, to work on the date of the "accident".

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT

## (Broad Form)

**1.** The insurance does not apply:

**A.** Under any Liability Coverage, to "bodily injury" or "property damage":

**(1)** With respect to which an "insured" under the policy is also an "insured" under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an "insured" under any such policy but for its termination upon exhaustion of its limit of liability; or

**(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**B.** Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazard-

Includes copyrighted material of Insurance
Services Office, Inc., with its permission.

ous properties" of "nuclear facility" by any person or organization.

C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from the "hazardous properties" of "nuclear material", if:

(1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

(2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an "insured"; or

(3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this Exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

"Hazardous properties" include radioactive, toxic or explosive properties;

"Nuclear material" means "source material", "special nuclear material" or "byproduct material";

"Source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

"Waste" means any waste material (a) containing "byproduct material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

(a) Any "nuclear reactor";

(b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

(c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations:

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"Property damage" includes all forms of radioactive contamination of property.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CHANGES - TOWING AND LABOR

This endorsement modifies insurance provided by the following:

**BUSINESS AUTO COVERAGE FORM**

With respect to the coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by this endorsement.

1. **SECTION III - PHYSICAL DAMAGE COVERAGE, A. Coverage, 2. Towing** is deleted in its entirety and replaced with:

   2. **Towing**

      We will pay up to the limit shown in the Declarations for towing and labor costs incurred each time a covered "auto" is disabled. However, the labor must be performed at the place of disablement.

**AA 2009 01 17**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CHANGES - AUDIO, VISUAL AND DATA ELECTRONIC EQUIPMENT COVERAGE

This endorsement modifies insurance provided by the following:

**BUSINESS AUTO COVERAGE FORM**

With respect to the coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by this endorsement.

1. **SECTION III - PHYSICAL DAMAGE COVERAGE, B. Exclusions, 4.** is deleted in its entirety and replaced with:

   4. We will not pay for "loss" to any of the following:

      a. Tapes, records, discs or similar audio, visual or data electronic devices designed for use with audio, visual or data electronic equipment.

      b. Any device designed or used to detect speed-measuring equipment, such as radar or laser detectors, and any jamming apparatus intended to elude or disrupt speed-measuring equipment.

      c. Any electronic equipment, without regard to whether this equipment is permanently installed, that reproduces, receives or transmits audio, visual or data signals.

      d. Any accessories used with the electronic equipment described in Paragraph **c.** above.

      Exclusions **4.c.** and **4.d.** do not apply to equipment designed to be operated solely by use of the power from the "auto's" electrical system that, at the time of "loss", is:

      a. Permanently installed in or upon the covered "auto";

      b. Removable from a housing unit which is permanently installed in or upon the covered "auto";

      c. An integral part of the same unit housing any electronic equipment described in Paragraphs **a.** and **b.** above; or

      d. Necessary for the normal operation of the covered "auto" or the monitoring of the covered "auto's" operating system.

2. **SECTION III - PHYSICAL DAMAGE COVERAGE, C. Limits of Insurance, 1.** is deleted in its entirety and replaced with:

   1. The most we will pay for:

      a. "Loss" to any covered "auto" is the lesser of;

         (1) The actual cash value of the damaged or stolen property as of the time of the "loss"; or

         (2) The cost of repairing or replacing the damaged or stolen property with other property of like kind or quality.

      b. All electronic equipment that reproduces, receives or transmits audio, visual or data signals in any one "loss", is up to $1,000, if, at the time of "loss", such electronic equipment is:

         (1) Permanently installed in or upon the covered "auto" in a housing, opening or other location that is not normally used by the "auto" manufacturer for the installation of such equipment;

         (2) Removable from a permanently installed housing unit as described in Paragraph **b.1.** above; or

         (3) An integral part of such equipment as described in Paragraphs **b.(1)** and **b.(2)** above.

3. **AUDIO, VISUAL AND DATA ELECTRONIC EQUIPMENT COVERAGE ADDED LIMITS**

   The sub-limit in Paragraph **1.b.** above is in addition to the Limit of Insurance shown in the Schedule of the Audio, Visual and Data Equipment Coverage endorsement, if purchased.

AA 296 07 12

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED - DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

**BUSINESS AUTO COVERAGE FORM**

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Endorsement Effective: | Policy Number: | |
|---|---|---|
| 07-01-2021 | EBA 026 35 19 | |
| Named Insured:<br><br>HENRY MOLDED PRODUCTS INC | | |
| Countersigned by: | | |

(Authorized Representative)

The person or organization named in the following schedule is an "insured" to the extent of their liability for the conduct of another "insured" as provided in **SECTION II - LIABILITY COVERAGE, A. Coverage, 1. Who is an Insured,** Paragraph **c.**

**Schedule**

Additional Insured

UNISOURCE WORLDWIDE INC

Address:

6600 GOVERNORS LAKE PKWY
PEACHTREE CORNERS, GA 30071-1114

**AA 4004 03 06**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED - DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

**BUSINESS AUTO COVERAGE FORM**

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Endorsement Effective:<br><br>07-01-2021 | Policy Number:<br>EBA 026 35 19 | |
|---|---|---|
| Named Insured:<br><br>HENRY MOLDED PRODUCTS INC | | |
| Countersigned by: | | |

(Authorized Representative)

The person or organization named in the following schedule is an "insured" to the extent of their liability for the conduct of another "insured" as provided in **SECTION II – LIABILITY COVERAGE, A. Coverage, 1. Who is an Insured,** Paragraph **c.**

**Schedule**

Additional Insured

UNISOURCE WORLDWIDE

Address:

6600 GOVERNORS LAKE PKWY
PEACHTREE CORNERS, GA 30071-1114

**AA 4004 03 06**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PENNSYLVANIA UNDERINSURED MOTORISTS COVERAGE - NONSTACKED

Throughout this endorsement "you" and "your" refer to the organization(s) and a natural person(s) shown as a Named Insured on this endorsement. "You" and "your" do not refer to any other person(s) or organization(s), including but not limited to agents, employees, servants, members, shareholders or independent contractors of any person or organization shown as a Named Insured on this endorsement.

For a covered "auto" licensed or principally garaged in, or "garage operations" conducted in Pennsylvania, this endorsement modifies insurance provided under the following:

**BUSINESS AUTO COVERAGE FORM**
**GARAGE COVERAGE FORM**
**TRUCKERS COVERAGE FORM**
**MOTOR CARRIER COVERAGE FORM**

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by this endorsement.

This endorsement changes the Coverage Form effective on the effective date of the Coverage Form unless another date is indicated below:

| Endorsement Effective:<br><br>07-01-2021 | Policy Number:<br><br>EBA 026 35 19 | |
|---|---|---|
| Named Insured:<br><br>HENRY MOLDED PRODUCTS INC | | |

## A. Coverage

1. We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or operator of an "underinsured motor vehicle" as defined in Paragraph **F.4.** because of "bodily injury":

   a. Sustained by the "insured"; and

   b. Caused by an "accident".

   The owner's or operator's liability for these damages must result from the ownership, maintenance or use of an "underinsured motor vehicle". The "insured" shall be required to prove all elements of the "insureds" claim that are necessary to recover from the owner or operator of the "underinsured motor vehicle".

2. We will pay under this endorsement only if **a.** or **b.** below applies:

   a. The limits of insurance under all applicable liability bonds or policies have been exhausted by payment of judgments or settlements; or

   b. A tentative settlement has been made between an "insured" and a person(s) or organization(s) who may be legally responsible for the "accident", or the insurer or legal representative of such person(s) or organization(s) and we:

      (1) Have been given prompt written notice of such settlement; and

      (2) Advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.

3. Any judgment for damages arising out of a "suit" brought without our written consent to both the "suit" and the judgment is not binding on us.

## B. Who is an Insured

The following are "insureds":

1. If any natural persons are specifically listed as a Named Insured on this endorsement, the following persons are "insureds":

   a. Natural persons specially listed as a Named Insured on this endorsement;

   b. "Family members" of natural persons specifically listed as a Named Insured on this endorsement;

c. Any natural person, but only for injuries that occur while "occupying" an "auto" for which coverage is provided in the Coverage Form or a temporary substitute for such covered "auto". In such case, the covered "auto" must be out of service because of its break down, repair, servicing, "loss" or destruction; and

d. Any natural person, but only for damages he or she is entitled to recover because of "bodily injury" sustained by an "insured" described in Paragraphs **B.1.a.**, **b.** or **c.**

2. If an entity other than a natural person is listed as a Named Insured on this endorsement, and no natural persons are listed as a Named Insured in the endorsement, the following persons are "insureds":

a. Any natural person, but only for injuries that occur while "occupying" an "auto" for which coverage is provided in the Coverage Form or a temporary substitute for such covered "auto". In such case, the covered "auto" must be out of service because of its break down, repair, servicing, "loss" or destruction.

b. Any natural person is an "insured", but only for damages he or she is entitled to recover because of "bodily injury" sustained by an "insured" described in Paragraph **B.2.a.**

## C. Exclusions

This insurance does not apply to any of the following:

1. Any claim settled with the person(s) or organization(s) legally responsible for the "accident" or the insurer or legal representative of such person(s) or organization(s) without our consent.

   However, this Exclusion **(C.1.)** does not apply if such settlement does not adversely affect our rights of recovery under this coverage.

2. The direct or indirect benefit of any insurer or self-insurer under any personal injury protection benefits, disability benefits, pension statutes or similar law except workers' compensation law.

3. "Bodily injury" suffered by any person while operating or "occupying" a "motor vehicle" without a reasonable belief that he or she is entitled to do so. Under no circumstances will a person whose license has been suspended, revoked, or

never issued be held to have a reasonable belief that he or she is entitled to operate a "motor vehicle".

4. Punitive or exemplary damages.

5. "Bodily injury" sustained by an "insured" while the "insured" is operating or "occupying" a "motor vehicle" owned by, furnished to, or available for the regular use of a Named Insured or, if the Named Insured is a natural person, a spouse or a resident relative of such Named Insured, if the "motor vehicle" is not specifically identified in the Coverage Form or is not a newly acquired or replacement "motor vehicle" covered under the terms of the Coverage Form.

6. "Bodily injury" sustained by:

a. An "insured" while the "insured" is operating, "occupying", or when struck by a "motor vehicle" owned by, furnished to, or available for the regular use of a Named Insured that is not a covered "auto" for Underinsured Motorists Coverage under this endorsement.

b. Any "family member" while operating, "occupying", or when struck by a "motor vehicle" owned by furnished to, or available for the regular use of that "family member" that is not a covered "auto" for Underinsured Motorists Coverage under this endorsement.

c. Any "family member" while operating, "occupying", or when struck by any vehicle owned by, furnished to, or available for the regular use of that "family member" that is insured for Underinsured Motorists Coverage on a primary basis under any other Coverage Form or policy.

## D. Limit of Insurance

1. Regardless of the number of policies, covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for all damages including damages claimed by any person or organization for care, loss of services or death due to and arising out of any one "accident" is the limit of **Underinsured Motorists Coverage** shown in the Declarations.

2. No one will be entitled to receive duplicate payments for the same elements of "loss" under this endorsement and any Liability Coverage Form.

AA 4013 PA 11 12

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Page 2 of 5

We will not make a duplicate payment under this endorsement for any element of "loss" for which payment has been made by or for anyone who is legally liable.

We will not pay for any element of "loss" if a person is entitled to receive payment, including medical payments made under any statute, for the same element of "loss" under any personal injury protection benefits, disability benefits, pension statutes, or similar law except workers' compensation law.

### E. Changes in Conditions

The **Conditions** are changed for **Pennsylvania Underinsured Motorists Coverage - Nonstacked** as follows:

1. **Duties in the Event of Accident, Claim, Suit or Loss** is changed by adding the following:

   a. You or any other involved "insured" must promptly send us copies of the legal papers if a "suit" is brought;

   b. You and any other involved "insured" must cooperate with us in the investigation, settlement or defense of the claim or "suit". Cooperation includes, but is not limited to, identifying all parties who may be responsible for the "accident" and all insurers who may be obligated to provide coverage; and

   c. A person seeking Underinsured Motorists Coverage must also promptly notify us in writing of a tentative settlement between the "insured" and a person(s) or organization(s) who may be legally responsible for the "accident", or the insurer or legal representative of such person(s) or organization(s), and allow us 30 days to advance payment to that "insured" in an amount equal to the tentative settlement to preserve our rights against the person(s) or organization(s) who may be legally responsible for the "accident", or the insurer or legal representative of such person(s) or organization(s).

2. **Legal Action Against Us** condition is replaced by the following:

   ### LEGAL ACTION AGAINST US

   a. No lawsuit or action whatsoever or any proceeding in arbitration shall be brought against us for the recovery of any claim under the provisions of the Underinsured Motorists Coverage of this Coverage Form unless the "in-

sured" has satisfied all of the things that "insured" is required to do under the terms and conditions of this endorsement

b. Any claim for "suit" for Underinsured Motorists Coverage must be brought within four (4) years after the date on which the "insured" either settles with, or receives a judgment against, the owner or operator of the "underinsured motor vehicle".

c. Paragraph **2.b.** above does not apply to an "insured" if, within four (4) years after the date on which the "insured" either settles with, or receives a judgment against, the owner or operator of the "underinsured motor vehicle":

   (1) We or the "insured" have made a written demand for arbitration in accordance with the provisions of the endorsement; or

   (2) The "insured" has filed an action for "bodily injury" against the owner or operator of the "underinsured motor vehicle" and such action is:

      (a) Filed in a court of competent jurisdiction; and

      (b) Not barred by the applicable state statute of limitations.

In the event that the four year time limitation identified in this condition does not apply, the applicable state statute of limitations will govern legal action against us under this Coverage Form.

3. **Transfer of Rights of Recovery Against Others to Us** is changed by adding the following:

If we make any payment due to an "accident" involving an "underinsured motor vehicle" and the "insured" recovers from another party in a separate claim or "suit", the "insured" shall hold the proceeds in trust for us and pay us back the amount we have paid less reasonable attorney's fees, costs and expenses incurred by the "insured" to the extent such payment duplicates any amount we have paid under this coverage.

Our rights do not apply under this provision with respect to Underinsured Motorists Coverage if we:

a. Have been given prompt written notice of a tentative settlement between an "insured" and a person(s) or organization(s) who may be legally re-

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

sponsible for the "accident", or the insurer or legal representative of such person(s) or organization(s); and

b. Fail to advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.

If we advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification:

a. That payment will be separate from any amount the "insured" is entitled to recover under the provisions of Underinsured Motorists Coverage; and

b. We also have a right to recover the advanced payment.

4. With respect to an "underinsured motor vehicle", the **Other Insurance Condition** in the Business Auto and Garage Coverage Forms and **Other Insurance Primary and Excess Insurance Provisions** in the Truckers and Motor Carrier Coverage Forms are replaced by the following:

a. If there is other applicable insurance available under more than one Coverage Form or policy, the following priorities of recovery apply:

First — The Underinsured Motorists Coverage applicable to the vehicle the "insured" was "occupying" at the time of the "accident".

Second — The Coverage Form or policy affording Underinsured Motorists Coverage to the "insured" as a Named Insured or "family member".

b. Where there is no applicable insurance available under the first priority, the maximum recovery under all Coverage Forms or policies in the second priority may equal but not exceed the highest applicable limit for any one vehicle under any one Coverage Form or policy affording coverage to an individual Named Insured or "family member".

c. Where there is applicable insurance available under the first priority:

(1) The Limit of Insurance applicable to the vehicle the "insured" was "occupying" under the Coverage Form or policy in the first

priority shall first be exhausted; and

(2) The maximum recovery under all Coverage Forms or policies in the second priority may equal but not exceed the highest applicable limit for any one vehicle under any one Coverage Form or policy affording coverage to an individual Named Insured or "family member".

d. If two or more Coverage Forms or policies have equal priority:

(1) The insurer against whom the claim is first made shall process and pay the claim as if wholly responsible for all insurers with equal priority; and

(2) The insurer thereafter is entitled to recover pro rata contribution from any other insurer on the same level of priority for the benefits paid and the costs of processing the claim.

5. The following Condition is added:

**ARBITRATION**

a. If we and an "insured" do not agree:

(1) Whether that person is legally entitled to recover damages from a party responsible for the "accident"; or

(2) As to the amount of damages, that may be recovered;

the matter may be settled by arbitration. However, disputes concerning coverage under this endorsement may not be arbitrated.

The "insured" and we must mutually agree to arbitrate the disagreements. If the "insured" and we do not agree to arbitrate, then the disagreement will be resolved in a court having competent jurisdiction.

If arbitration is used, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days as to the third arbitrator, either may request that selection be made by a judge of a court having jurisdiction. Each party will:

(1) Pay the expense it incurs; and

(2) Bear the expenses of the third arbitrator equally.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

b. Arbitration shall be conducted in accordance with the Pennsylvania Uniform Arbitration Act. Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to arbitration procedures and evidence will apply. A decision agreed to by two of the arbitrators will be binding as to:

(1) Whether the "insured" is legally entitled to recover damages from a party responsible for the "accident"; and

(2) The amount of damages.

## F. Additional Definitions

As used in this endorsement:

1. "Family member" means a natural person who is related to and is a resident of the same household as a natural person shown as a Named Insured on this endorsement. Such relation may be by blood, marriage, or adoption, and may include a ward or foster child.

2. "Motor vehicle" means a self-propelled vehicle designed for use and principally used on public roads, including an automobile, truck, semi-tractor, motorcycle and bus. "Motor vehicle" also includes a motor home, provided the motor home is not stationary and is not being used as a temporary or permanent residence or office. "Motor vehicle" does not include a trolley, streetcar, "trailer", railroad engine, railroad car, motorized bicycle, golf cart, off-road recreational vehicle, snowmobile, fork lift, aircraft, watercraft, construction equipment, farm tractor or other vehicle designed and principally used for agricultural purposes, mobile home, vehicle traveling on treads or rails, or any similar vehicle.

3. "Occupying" means in, upon, getting in, on, out or off.

4. "Underinsured motor vehicle" means a land "motor vehicle" or "trailer" for which the sum of the limits of all liability bonds or policies that apply at the time of an "accident" do not provide at least the amount an "insured" is legally entitled to recover as damages.

However, an "underinsured motor vehicle" does not include any "motor vehicle":

a. Owned by or furnished or available for your regular use or that of any "family member" or any other "insured".

b. For which liability coverage is afforded under this Coverage Form.

c. Designed for use mainly on public roads while not on public roads.

AA 4013 PA 11 12

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PENNSYLVANIA UNINSURED MOTORISTS COVERAGE - NONSTACKED

Throughout this endorsement "you" and "your" refer to the organization(s) and a natural person(s) shown as a Named Insured on this endorsement. "You" and "your" do not refer to any other person(s) or organization(s), including but not limited to agents, employees, servants, members, shareholders or independent contractors of any person or organization shown as a Named Insured on this endorsement.

For a covered "auto" licensed or principally garaged in, or "garage operations" conducted in Pennsylvania, this endorsement modifies insurance provided under the following:

**BUSINESS AUTO COVERAGE FORM**
**GARAGE COVERAGE FORM**
**TRUCKERS COVERAGE FORM**
**MOTOR CARRIER COVERAGE FORM**

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by this endorsement.

This endorsement changes the Coverage Form effective on the effective date of the Coverage Form unless another date is indicated below:

| Endorsement Effective: | Policy Number: |
|---|---|
| 07-01-2021 | EBA 026 35 19 |
| Named Insured: HENRY MOLDED PRODUCTS INC | |

## A. Coverage

1. We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or operator of:

   a. An "uninsured motor vehicle" as defined in Paragraph **F.4.a.** and **b.** because of "bodily injury":

      1) Sustained by the "insured", and

      2) Caused by an "accident".

   b. An "uninsured motor vehicle" as defined in Paragraph **F.4.c.** because of "bodily injury" sustained by an "insured".

   The owner's or operator's liability for these damages must result from the ownership, maintenance or use of an "uninsured motor vehicle". The "insured" shall be required to prove all elements of the "insureds" claim that are necessary to recover from the owner or operator of the "uninsured motor vehicle".

2. Any judgment for damages arising out of a "suit" brought without our written consent to both the "suit" and the judgment is not binding on us.

3. We will pay under this endorsement only if the limits of insurance under all applicable liability bonds or policies have been exhausted by judgments or settlements.

## B. Who is an Insured

The following are "insureds":

1. If any natural persons are specifically listed as a Named Insured on this endorsement, the following persons are "insureds":

   a. Natural persons specially listed as a Named Insured on this endorsement;

   b. "Family members" of natural persons specifically listed as a Named Insured on this endorsement;

   c. Any natural person, but only for injuries that occur while "occupying" an "auto" for which coverage is provided in the Coverage Form or a temporary substitute for such covered "auto". In such case, the covered "auto" must be out of service because of its break down, repair, servicing, "loss" or destruction; and

   d. Any natural person, but only for damages he or she is entitled to recover because of "bodily injury" sustained by an "insured" described in Paragraphs **B.1.a., b.** or **c.**

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**2.** If an entity other than a natural person is listed as a Named Insured on this endorsement, and no natural persons are listed as a Named Insured in the endorsement, the following persons are "insureds":

 **a.** Any natural person, but only for injuries that occur while "occupying" an "auto" for which coverage is provided in the Coverage Form or a temporary substitute for such covered "auto". In such case, the covered "auto" must be out of service because of its break down, repair, servicing, "loss" or destruction.

 **b.** Any natural person is an "insured", but only for damages he or she is entitled to recover because of "bodily injury" sustained by an "insured" described in Paragraph **B.2.a.**

## C. Exclusions

This insurance does not apply to any of the following:

**1.** Any claim settled with the person(s) or organization(s) legally responsible for the "accident" or the insurer or legal representative of such person(s) or organization(s) without our consent.

 However, this Exclusion (**C.1.**) does not apply if such settlement does not adversely affect our rights of recovery under this coverage.

**2.** The direct or indirect benefit of any insurer or self-insurer under any personal injury protection benefits, disability benefits, pension statutes, or similar law except workers' compensation law.

**3.** "Bodily injury" suffered by any person while operating or "occupying" a "motor vehicle" without a reasonable belief that he or she is entitled to do so.

**4.** Punitive or exemplary damages.

**5.** "Bodily injury" sustained by an "insured" while the "insured" is operating or "occupying" a "motor vehicle" owned by, furnished to, or available for the regular use of a Named Insured or, if the Named Insured is a natural person, a spouse or a resident relative of such Named Insured, if the "motor vehicle" is not specifically identified in the Coverage Form or is not a newly acquired or replacement "motor vehicle" covered under the terms of the Coverage Form.

## D. Limit of Insurance

**1.** Regardless of the number of policies, covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for all

damages including damages claimed by any person or organization for care, loss of services or death due to and arising out of any one "accident" is the limit of **Uninsured Motorists Coverage** shown in the Declarations.

**2.** No one will be entitled to receive duplicate payments for the same elements of "loss" under this endorsement and any Liability Coverage Form.

 We will not make a duplicate payment under this endorsement for any element of "loss" for which payment has been made by or for anyone who is legally liable.

 We will not pay for any element of "loss" if a person is entitled to receive payment, including medical payments made under any statute, for the same element of "loss" under any personal injury protection benefits, disability benefits, pension statutes, or similar law except workers' compensation law.

**3.** Any amount payable for damages under this coverage shall be reduced by:

 **(a)** The amounts paid or payable by or for those liable for "bodily injury" to anyone we protect.

 **(b)** The amount of liability protection paid or payable to anyone we protect.

 **(c)** However, any amount payable under this coverage shall not be reduced by any sums paid under any workers' compensation law.

## E. Changes in Conditions

The **Conditions** are changed for **Pennsylvania Uninsured Motorists Coverage - Nonstacked** as follows:

**1.** **Duties in the Event of Accident, Claim, Suit or Loss** is changed by adding the following:

 **a.** You or any other involved "insured" must promptly notify the police if a hit-and-run driver is involved;

 **b.** You or any other involved "insured" must promptly send us copies of the legal papers if a "suit" is brought; and

 **c.** You and any other involved "insured" must cooperate with us in the investigation, settlement or defense of the claim or "suit". Cooperation includes, but is not limited to, identifying all parties who may be responsible for the "accident" and all insurers who may be obligated to provide coverage.

**2. Legal Action Against Us** condition is replaced by the following:

**LEGAL ACTION AGAINST US**

a. No lawsuit or action whatsoever or any proceeding in arbitration shall be brought against us for the recovery of any claim under the provisions of the Uninsured Motorists Coverage of this Coverage Form unless the "insured" has satisfied all of the things that "insured" is required to do under the terms and conditions of this endorsement.

b. Any claim for "suit" for Uninsured Motorists Coverage must be brought within four (4) years after the date on which the "insured" knows of the uninsured status of the owner or operator of the "uninsured motor vehicle". However, this Paragraph **b.** does not apply to an "insured" if, within four (4) years after the date on which the "insured" knows of the uninsured status of the owner or operator of the "uninsured motor vehicle", we or the "insured" have made a written demand for arbitration in accordance with the provisions of this endorsement.

**3. Transfer of Rights of Recovery Against Others to Us** is changed by adding the following:

If we make any payment due to an "accident" involving an "uninsured motor vehicle" and the "insured" recovers from another party in a separate claim or "suit", the "insured" shall hold the proceeds in trust for us and pay us back the amount we have paid less reasonable attorneys' fees, costs and expenses incurred by the "insured" to the extent such payment duplicates any amount we have paid under this coverage.

**4.** With respect to an "uninsured motor vehicle", the **Other Insurance Condition** in the Business Auto and Garage Coverage Forms and **Other Insurance Primary and Excess Insurance Provisions** in the Truckers and Motor Carrier Coverage Forms are replaced by the following:

a. If there is other applicable insurance available under more than one Coverage Form or policy, the following priorities of recovery apply:

First     The Uninsured Motorists Coverage applicable to the vehicle the "insured" was "occupying" at the time of the "accident".

Second     The Coverage Form or policy affording Uninsured Motorists Coverage to the

"insured" as a Named Insured or "family member".

b. Where there is no applicable insurance available under the first priority, the maximum recovery under all Coverage Forms or policies in the second priority may equal but not exceed the highest applicable limit for any one vehicle under any one Coverage Form or policy affording coverage to an individual Named Insured or "family member".

c. Where there is applicable insurance available under the first priority:

(1) The Limit of Insurance applicable to the vehicle the "insured" was "occupying" under the Coverage Form or policy in the first priority shall first be exhausted; and

(2) The maximum recovery under all Coverage Forms or policies in the second priority may equal but not exceed the highest applicable limit for any one vehicle under any one Coverage Form or policy affording coverage to an individual Named Insured or "family member".

d. If two or more Coverage Forms or policies have equal priority:

(1) The insurer against whom the claim is first made shall process and pay the claim as if wholly responsible for all insurers with equal priority; and

(2) The insurer thereafter is entitled to recover pro rata contribution from any other insurer on the same level of priority for the benefits paid and the costs of processing the claim.

**5. Two or More Coverage Forms or Policies Issued By Us** does not apply.

**6.** The following Condition is added:

**ARBITRATION**

a. If we and an "insured" do not agree:

(1) Whether that person is legally entitled to recover damages from a party responsible for the "accident"; or

(2) As to the amount of damages, that may be recovered;

the matter may be settled by arbitration. However, disputes concerning coverage under this endorsement may not be arbitrated.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

AA 4014 PA 11 12

The "insured" and we must mutually agree to arbitrate the disagreements. If the "insured" and we do not agree to arbitrate, then the disagreement will be resolved in a court having competent jurisdiction.

If arbitration is used, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days as to the third arbitrator, either may request that selection be made by a judge of a court having jurisdiction. Each party will:

(1) Pay the expense it incurs; and

(2) Bear the expenses of the third arbitrator equally.

b. Arbitration shall be conducted in accordance with the Pennsylvania Uniform Arbitration Act. Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to arbitration procedures and evidence will apply. A decision agreed to by two of the arbitrators will be binding as to:

(1) Whether the "insured" is entitled to recover damages from a party responsible for the "accident; and

(2) The amount of damages.

## F. Additional Definitions

As used in this endorsement:

1. "Family member" means a natural person who is related to and is a resident of the same household as a natural person shown as a Named Insured on this endorsement. Such relation may be by blood, marriage, or adoption, and may include a ward or foster child.

2. "Motor vehicle" means a self-propelled vehicle designed for use and principally used on public roads, including an automobile, truck, semi-tractor, motorcycle and bus. "Motor vehicle" also includes a motor home, provided the motor home is not stationary and is not being used as a temporary or permanent residence or office. "Motor vehicle" does not include a trolley, streetcar, "trailer", railroad engine, railroad car, motorized bicycle, golf cart, off-road recreational vehicle, snowmobile, fork lift, aircraft, watercraft, construction equipment, farm tractor or other vehicle designed and principally used for agricul-

tural purposes, mobile home, vehicle traveling on treads or rails, or any similar vehicle.

3. "Occupying" means in, upon, getting in, on, out or off.

4. "Uninsured motor vehicle" means a land "motor vehicle" or "trailer":

a. For which no liability bond or policy applies at the time of an "accident".

b. For which an insuring or bonding company:

(1) Denies coverage;

(2) Is or becomes insolvent; or

(3) Is or becomes involved in insolvency proceedings.

c. That is a hit-and-run vehicle and neither the operator nor owner can be identified. The vehicle or "trailer" must either:

(1) Hit an "insured", a covered "auto" or a vehicle an "insured" is "occupying"; or

(2) Cause an "accident" resulting in "bodily injury" to an "insured" without hitting an "insured", a covered "auto" or a vehicle an "insured" is "occupying".

We will only accept competent evidence which may include the testimony, under oath, of a person making claim under this or similar coverage.

However, an "uninsured motor vehicle" does not include any "motor vehicle":

a. Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer who is or who becomes insolvent and cannot provide the amounts required by that motor vehicle law.

b. Owned by or furnished or available for your regular use or that of any "family member" or any other "insured".

c. For which liability coverage is afforded under this Coverage Form.

d. Designed for use mainly off public roads while not on public roads.

**AA 4014 PA 11 12**

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**Page 4 of 4**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LESSOR - ADDITIONAL INSURED AND LOSS PAYEE

This endorsement modifies insurance provided under the following:

**BUSINESS AUTO COVERAGE FORM**
**BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM**
**GARAGE COVERAGE FORM**
**MOTOR CARRIER COVERAGE FORM**
**TRUCKERS COVERAGE FORM**

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Endorsement Effective: | Policy Number: | |
|---|---|---|
| 07-01-2021 | EBA 026 35 19 | |
| Named Insured: HENRY MOLDED PRODUCTS INC | | |
| Countersigned by: | | |

(Authorized Representative)

**SCHEDULE**

| | |
|---|---|
| Insurance Company   THE CINCINNATI INSURANCE COMPANY<br>Policy Number    EBA 026 35 19<br>Effective Date   07-01-2021 | |
| Expiration Date  07-01-2022 | |
| Named Insured<br><br>Address | |
| Additional Insured (Lessor)<br>Address<br>GM FINANCIAL<br>PO BOX 1617<br>MINNEAPOLIS, MN 55440-1617 | |
| Designation or Description of "Leased Autos"<br>2020  CADILLAC XT5                          1GYKNDRS9LZ137017 | |

| Coverages | Limit of Insurance | | |
|---|---|---|---|
| Liability | $REFER TO AA4183        Each "Accident" | | |
| Comprehensive | ACTUAL CASH VALUE OR COST OF REPAIR WHICHEVER IS LESS; MINUS: $REFER TO AA4183        For Each Covered "Leased Auto" | | |
| Collision | ACTUAL CASH VALUE OR COST OF REPAIR WHICHEVER IS LESS; MINUS: $REFER TO AA4183        For Each Covered "Leased Auto" | | |
| Specified Causes of Loss | ACTUAL CASH VALUE OR COST OF REPAIR WHICHEVER IS LESS; MINUS: $        For Each Covered "Leased Auto" | | |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

## A. Coverage

1. Any "leased auto" designated or described in the Schedule will be considered a covered "auto" you own and not a covered "auto" you hire or borrow.

2. For a "leased auto" designated or described in the Schedule, **Who is an Insured** is changed to include as an "insured" the lessor named in the Schedule. However, the lessor is an "insured" only for "bodily injury" or "property damage" resulting from the acts or omissions by:

   a. You;

   b. Any of your "employees" or agents; or

   c. Any person, except the lessor or any "employee" or agent of the lessor, operating a "leased auto" with the permission of any of the above.

3. The coverages provided under this endorsement apply to any "leased auto" described in the Schedule until the expiration date shown in the Schedule, or when the lessor or his or her agent takes possession of the "leased auto", whichever occurs first.

## B. Loss Payable Clause

1. We will pay, as interest may appear, you and the lessor named in this endorsement for "loss" to a "leased auto".

2. The insurance covers the interest of the lessor unless the "loss" results from fraudulent acts or omissions on your part.

3. If we make any payment to the lessor, we will obtain his or her rights against any other party.

## C. Cancellation

1. If we cancel the policy, we will mail notice to the lessor in accordance with the Cancellation Common Policy Condition.

2. If you cancel the policy, we will mail notice to the lessor.

3. Cancellation ends this agreement.

D. The lessor is not liable for payment of your premiums.

## E. Additional Definition

As used in this endorsement:

"Leased auto" means an "auto" leased or rented to you, including any substitute, replacement or extra "auto" needed to meet seasonal or other needs, under a leasing or rental agreement that requires you to provide direct primary insurance for the lessor.

Includes copyrighted material of ISO Properties, Inc., with its permission.

AA 4177 03 06

# SUPPLEMENTARY SCHEDULE FOR BUSINESS AUTO - ITEMS FOUR, FIVE, AND SIX

Attached to and forming a part of:
Form AA 505 (Business Auto Coverage Part)

EBA  026  35 '19

**NUMBER**

**ITEM FOUR SCHEDULE OF HIRED OR**

**BORROWED COVERED AUTO COVERAGE AND PREMIUMS.**

**LIABILITY COVERAGE--RATING BASIS, COST OF HIRE**

| STATE | ESTIMATED COST OF HIRE FOR EACH STATE | RATE PER EACH $100 COST OF HIRE | PREMIUM |
|---|---|---|---|
|  |  |  |  |
|  |  | TOTAL PREMIUM |  |

Cost of hire means the total amount you incur for the hire of "autos" you don't own (not including "autos" you borrow or rent from your partners or employees or their family members). Cost of hire does not include charges for services performed by motor carriers of property or passengers.

**PHYSICAL DAMAGE COVERAGE**

| COVERAGES | LIMIT OF INSURANCE THE MOST WE WILL PAY DEDUCTIBLE | ESTIMATED ANNUAL COST OF HIRE | RATE PER EACH $100 ANNUAL COST OF HIRE | MINIMUM PREMIUM | PREMIUM |
|---|---|---|---|---|---|
| COMPREHENSIVE | ACTUAL CASH VALUE, COST OF REPAIRS OR $ 5 0 , 0 0 0  WHICHEVER IS LESS MINUS $ 1 0 0  DED. FOR EACH COVERED AUTO, FOR ALL LOSS EXCEPT FIRE OR LIGHTNING |  |  |  | INCL |
| SPECIFIED CAUSES OF LOSS | ACTUAL CASH VALUE, COST OF REPAIRS OR $  WHICHEVER IS LESS MINUS $25 DED. FOR EACH COVERED AUTO, FOR LOSS CAUSED BY MISCHIEF OR VANDALISM |  |  |  |  |
| COLLISION | ACTUAL CASH VALUE, COST OF REPAIRS OR $ 5 0 , 0 0 0  WHICHEVER IS LESS MINUS $ 5 0 0  DED. FOR EACH COVERED AUTO |  |  |  | INCL |
|  |  |  | TOTAL PREMIUM |  | INCL |

**ITEM FIVE SCHEDULE FOR NONOWNERSHIP LIABILITY**

| Named Insured's Business | Rating Basis | Number | Premium |
|---|---|---|---|
| Other than a Social Service Agency | Number of Employees |  |  |
|  | Number of Partners |  |  |
| Social Service Agency | Number of Employees |  |  |
|  | Number of Volunteers |  |  |
|  | TOTAL PREMIUM |  |  |

Contains copyrighted material of Insurance Services Office, Inc., with its permission. Copyright, Insurance Services Office, 1985

AA 4231 08 08

Page 1 of 2

**ITEM SIX SCHEDULE FOR GROSS RECEIPTS OR MILEAGE BASIS—LIABILITY COVERAGE—PUBLIC AUTO OR LEASING RENTAL CONCERNS**

| Estimated Yearly | RATES | | PREMIUMS | | |
|---|---|---|---|---|---|
| | ☐ Per $100 of Gross Receipts ☐ Per Mile | | | | |
| ☐ Gross Receipts | | | | | |
| ☐ Mileage | LIABILITY | AUTO MEDICAL COVERAGE | LIABILITY PAYMENTS | AUTO MEDICAL COVERAGE PAYMENTS | |
| | | | | | |
| | | TOTAL PREMIUMS | | | |
| | | MINIMUM PREMIUMS | | | |

When used as a premium basis:

FOR PUBLIC AUTOS

Gross Receipts means the total amount to which you are entitled for transporting passengers, mail or merchandise during the policy period regardless of whether you or any other carrier originate the transportation. Gross Receipts does not include:

A.   Amounts you pay to railroads, steamship lines, airlines and other motor carriers operating under their own ICC or PUC permits.

B.   Advertising Revenue.

C.   Taxes which you collect as a separate item and remit directly to a governmental division.

D.   C.O.D. collections for cost of mail or merchandise including collection fees.

Mileage means the total live and dead mileage of all revenue producing units operated during the policy period.

FOR RENTAL OR LEASING CONCERNS

Gross receipts means the total amount to which you are entitled for the leasing or rental of "autos" during the policy period and includes taxes except those taxes which you collect as a separate item and remit directly to a governmental division.

Mileage means the total of all live and dead mileage developed by all the autos you leased or rented to others during the policy period.

Contains copyrighted material of Insurance Services Office, Inc., with its permission. Copyright, Insurance Services Office, 1985

AA 4231 08 08

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# OFFICE OF FOREIGN ASSETS CONTROL (OFAC) COMPLIANCE ENDORSEMENT

This endorsement modifies insurance provided under the following:

**BUSINESS AUTO COVERAGE FORM**
**GARAGE COVERAGE FORM**

**SECTION IV - BUSINESS AUTO CONDITIONS, B. General Conditions** of the **BUSINESS AUTO COVERAGE FORM** and **SECTION V - GARAGE CONDITIONS, B. General Conditions** of the **GARAGE COVERAGE FORM** are amended to include the following:

**Office of Foreign Assets Control (OFAC) Compliance**

Whenever insurance coverage provided by this policy would be in violation of any United States economic or trade sanctions, such insurance coverage shall be null and void.

**AA 4263 04 10**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PENNSYLVANIA CHANGES - BUSINESS AUTO COVERAGE FORM

This endorsement modifies insurance provided under the following:

**BUSINESS AUTO COVERAGE FORM**

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. Changes In Covered Autos Liability Coverage**

Paragraph **2.a. Supplementary Payments** is amended to include the following:

Prejudgment interest awarded against the "insured" on the part of the judgment we pay. Any prejudgment interest awarded against the "insured" is subject to the applicable Pennsylvania Rules of Civil Procedure.

**B. Changes In Conditions**

1. Paragraph **2.b.(5)** of the **Duties In The Event Of Accident, Claim, Suit Or Loss** Condition is deleted in its entirety and replaced by the following:

   **(5)** Submit to an independent medical examination when required by a court order issued in accordance with **PA. CONS. STAT. § 1796.**

2. Paragraph **5. Transfer Of Rights Of Recovery Against Others To Us** Condition is amended to include the following:

   If we make any payment due to an "accident" and the "insured" recovers from another party in a separate claim or "suit", the "insured" shall hold the proceeds in trust for us and pay us back the amount we have paid less reasonable attorneys' fees, costs and expenses incurred by the "insured" to the extent such payment duplicates any amount we have paid under this coverage.

3. Paragraph **5. Other Insurance** Condition is amended to include the following:

   If you are a motor vehicle dealer as defined in the Pennsylvania Board of Vehicles Act, 63 Pa. Stat. Ann. § 818.2, then:

   **a.** For any "auto" you own, which is loaned to a customer as a temporary substitute for an "auto" insured under a "customer's private passenger automobile insurance policy" which is out of use because it is being transported, serviced, repaired or inspected, Covered Autos Liability, but only with respect to damages because of "bodily injury" and Physical Damage Coverage provided by this Coverage Form shall be excess in the event of an "accident" or "loss".

   **b.** For any "auto" insured under your "customer's private passenger automobile insurance policy", while it is being transported, serviced, repaired or inspected by you or your "employee":

   **(1)** Covered Autos Liability, but only with respect to damages because of "bodily injury";

   **(2)** Comprehensive Coverage;

   **(3)** Specified Cause Of Loss Coverage; and/or

   **(4)** Collision Coverage;

   provided by this Coverage Form shall be primary in the event of an "accident" or "loss".

4. Paragraph **B. General Conditions** is amended to include the following:

   **9. Constitutionality Clause**

   The premium for, and the coverages of, this Coverage Form have been established in reliance upon the provisions of the Pennsylvania Motor Vehicle Financial Responsibility Law. In the event a court, from which there is no appeal, declares or enters a judgment, the effect of which is to render the provisions of such statute invalid or unenforceable in whole or in part, we shall have the right to recompute the premium payable for the Coverage Form and void or amend the provi-

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

sions of the Coverage Form, subject to the approval of the Insurance Commissioner.

## 10. Conformity Clause

If you are a motor vehicle dealer as defined in the Pennsylvania Board of Vehicles Act, 63 Pa. Stat. Ann. § 818.2, then whenever an "auto" insured under your "customer's private passenger automobile insurance policy" is being transported, serviced, repaired or inspected by you or your "employee":

(1) The provisions of the:

    (a) Covered Autos Liability, but only with respect to damages because of "bodily injury";

    (b) Comprehensive Coverage;

    (c) Specified Cause Of Loss Coverage; and/or

    (d) Collision Coverage;

provided by this Coverage Form are hereby amended to conform to 40 Pa. Stat. Ann. § 991.2007a; and

(2) Pursuant to 40 Pa. Stat. Ann. § 991.2007a, the Limits Of Insurance provided in the Schedule or in the Declarations are hereby increased as needed to an amount equal to the:

    (a) Applicable limit(s);

    (b) Actual cash value; and/or

    (c) Amount necessary to repair or replace the property with other property of like kind and quality;

set forth in the "customer's private passenger automobile insurance policy".

## C. Changes In Definitions

For motor vehicle dealers as defined in the Pennsylvania Board of Vehicles Act, 63 Pa. Stat. Ann. § 818.2, the following definition is added:

"Customer's private passenger automobile insurance policy" means a private passenger automobile insurance policy that:

1. Is currently in effect; and

2. Lists an "auto" owned by your customer or a "customer's auto" in the Declarations.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

AA 4337 PA 03 21

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYEE HIRED AUTOS

This endorsement modifies insurance provided under the following:

**BUSINESS AUTO COVERAGE FORM**
**BUSINESS AUTO PHYSICAL DAMAGE**
**GARAGE COVERAGE FORM**
**MOTOR CARRIER COVERAGE FORM**
**TRUCKERS COVERAGE FORM**

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

## A. Changes in Liability Coverage

The following is added to the **Who is an Insured** Provision:

An "employee" of yours is an "insured" while operating an "auto" hired or rented under a contract or agreement in that "employee's" name, with your permission, while performing duties related to the conduct of your business.

## B. Changes in General Conditions

Paragraph **5.b.** of the **Other Insurance** Condition in the Business Auto, Business Auto Physical Damage and Garage Coverage Forms, Paragraph **5.d.** of the **Other Insurance - Primary and Excess Insurance Provisions** Condition in the Truckers Coverage Form and Paragraph **5.f.** of the **Other Insurance - Primary and Excess Insurance Provisions** in the Motor Carrier Coverage Form are replaced by the following:

For Hired Auto Physical Damage Coverage, the following are deemed to be covered "autos" you own:

**1.** Any covered "auto" you lease, hire, rent or borrow; and

**2.** Any covered "auto" hired or rented by your "employee" under a contract in that individual "employee's" name, with your permission, while performing duties related to the conduct of your business.

However, any "auto" that is leased, hired, rented or borrowed with a driver is not a covered "auto".

**CA 20 54 10 01**                    © ISO Properties, Inc., 2000

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# PENNSYLVANIA BASIC FIRST PARTY BENEFIT

For a covered "auto" licensed or principally garaged in, or "garage operations" conducted in, Pennsylvania, this endorsement modifies insurance provided under the following:

**BUSINESS AUTO COVERAGE FORM**
**GARAGE COVERAGE FORM**
**TRUCKERS COVERAGE FORM**

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Endorsement effective<br>07-01-2021 | Policy No.<br>EBA 026 35 19 |
|---|---|
| Named Insured<br><br>HENRY MOLDED PRODUCTS INC | |
| Countersigned by<br><br> | |

(Authorized Representative)

## SCHEDULE

| Benefits | Limit of Liability<br>(per insured) |
|---|---|
| Medical Expense Benefits | Up to $5,000 |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

## A.  COVERAGE

We will pay the Basic First Party Benefits in accordance with the "Act" to or for an "insured" who sustains "bodily injury" caused by an "accident" arising out of the maintenance or use of an "auto."

### BENEFITS

Subject to the limit shown in the Schedule or Declarations, Basic First Party Benefits consists of Medical Expense Benefits.  These benefits consist of reasonable and necessary medical expenses incurred for an "insured's":

1.  care;

2.  recovery; or

3.  rehabilitation.

This includes remedial care and treatment rendered in accordance with a recognized religious method of healing.

Medical expenses will be paid if incurred within 18 months from the date of the "accident" causing "bodily injury."  If within 18 months from the date of the "accident" causing "bodily injury" it is ascertainable with reasonable medical probability that further expenses may be incurred as a result of the "bodily injury," medical expenses will be paid without limitation as to the time such further expenses are incurred.

## B.  WHO IS AN INSURED

1.  You.

2.  If you are an individual, any "family member."

3.  Any person while "occupying" a covered "auto."

4.  Any person while not "occupying" an "auto" if injured as a result of an "accident" in Pennsylvania involving a covered "auto."

    If a covered "auto" is parked and unoccupied, it is not an "auto" involved in an "accident" unless it was parked in a manner as to create an unreasonable risk of injury.

## C.  EXCLUSIONS

We will not pay First Party Benefits for "bodily injury":

1.  Sustained by any person injured while intentionally causing or attempting to cause injury to himself or herself or any other person.

2.  Sustained by any person while committing a felony.

3.  Sustained by any person while seeking to elude lawful apprehension or arrest by a law enforcement official.

4.  Sustained by any person while maintaining or using an "auto" knowingly converted by that person.  However, this exclusion does not apply to:

    a.  You; or

**CA 22 37 12 92**          Copyright, Insurance Services Office, Inc., 1992          **Page 1 of 3**

Case 2:24-cv-00700-JDW Document 89-21 Filed 04/24/24 Page 415 of 520

**b.** Any "family member".

**5.** Sustained by any person who, at the time of the "accident":

    **a.** Is the owner of one or more currently registered "autos" and none of those "autos" is covered by the financial responsibility required by the "Act"; or

    **b.** Is "occupying" an "auto" owned by that person for which the financial responsibility required by the "Act" is not in effect.

**6.** Sustained by any person maintaining or using an "auto" while located for use as a residence or premises.

**7.** Sustained by a pedestrian if the "accident" occurs outside of Pennsylvania. This exclusion does not apply to:

    **a.** You; or

    **b.** Any "family member".

**8.** Sustained by any person while "occupying":

    **a.** A recreational vehicle designed for use off public roads; or

    **b.** A motorcycle, moped or similar type vehicle.

**9.** Caused by or as a consequence of:

    **a.** Discharge of a nuclear weapon (even if accidental);

    **b.** War (declared or undeclared);

    **c.** Civil war;

    **d.** Insurrection; or

    **e.** Rebellion or revolution.

**10.** From or as a consequence of the following whether controlled or uncontrolled or however caused:

    **a.** Nuclear reaction;

    **b.** Radiation; or

    **c.** Radioactive contamination.

## D. LIMIT OF INSURANCE

**1.** Regardless of the number of covered "autos", premiums paid, claims made, "autos" involved in the "accident" or insurers providing First Party Benefits, the most we will pay to or for an "insured" as the result of any one "accident" is the limit shown in the Schedule or in the Declarations.

**2.** Any amount payable under First Party Benefits shall be excess over any sums paid, payable or required to be provided under any workers' compensation law or similar law.

## E. CHANGES IN CONDITIONS

The CONDITIONS are changed for FIRST PARTY BENEFITS as follows:

**1.** TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US does not apply.

**2.** The following CONDITIONS are added:

### NON-DUPLICATION OF BENEFITS

No person may recover duplicate benefits for the same expenses or loss under this or any other similar automobile coverage including self-insurance.

### PRIORITIES OF POLICIES

We will pay First Party Benefits in accordance with the order of priority set forth by the "Act". We will not pay if there is another insurer at at higher level of priority. The "First" category listed below is the highest level of priority, and the "Fourth" category listed below is the lowest level of priority. The priority order is:

First — The insurer providing benefits to the "insured" as a named insured.

Second — The insurer providing benefits to the "insured" as a family member who is not a named insured under another policy providing coverage under the "Act".

Third — The insurer of the "auto" which the "insured" is "occupying" at the time of the "accident".

Fourth — The insurer providing benefits on any "auto" involved in the "accident" if the "insured" is:

    **a.** Not "occupying" an "auto"; and

    **b.** Not provided First Party Benefits under any other policy.

If two or more policies have equal priority within the highest applicable number in the priority order:

**1.** The insurer against which the claim is first made shall process and pay the claim as if wholly responsible;

**2.** If we are the insurer against whom the claim is first made, our payment to or for an "insured" will not exceed the applicable limit shown in the Schedule or Declarations;

**3.** The insurer thereafter is entitled to recover pro rata contribution from any other insurer for the benefits paid and the costs of processing the claim. If contribution is sought among insurers under the Fourth priority, proration shall be based on the number of involved motor vehicles; and

**4.** The maximum recovery under all policies shall not exceed the amount payable under the policy with the highest dollar limits of benefits.

## F. ADDITIONAL DEFINITIONS

**1.** The definition of "auto" in the DEFINITIONS Section is replaced by the following:

"Auto" means a self-propelled motor vehicle operated or designed for use on public roads. However, "auto" does not include a vehicle operated:

    **a.** By muscular power; or

    **b.** On rails or tracks.

2.  The following are added to the DEFINITIONS Section:

    a.  The "Act" means the Pennsylvania Motor Vehicle Financial Responsibility Law.

    b.  "Family member" means a resident of your household who is:

        (1) Related to you by blood, marriage or adoption; or

        (2) A minor in your custody or in the custody of any other "family member".

    c.  "Occupying" means in, upon, getting in, on, out or off.

**CA 22 37 12 92**     Copyright, Insurance Services Office, Inc., 1992     **Page 3 of 3**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PENNSYLVANIA ADDED AND COMBINATION

# FIRST PARTY BENEFITS ENDORSEMENT

This endorsement modifies insurance provided under the following:

**PENNSYLVANIA BASIC FIRST PARTY BENEFITS**

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Endorsement effective<br>07-01-2021 | Policy No.<br>EBA 026 35 19 | |
|---|---|---|
| Named Insured<br><br>HENRY MOLDED PRODUCTS INC | | |
| Countersigned by<br><br> | | |

(Authorized Representative)

BASIC FIRST PARTY BENEFITS is changed as follows:

## SCHEDULE

As indicated below, Added First Party Benefits or Combination First Party Benefits apply instead of Basic First Party Benefits. The limits of liability shown for the benefits selected below replace the limits of liability shown in the Schedule for Basic First Party Benefits.

| Benefits | Limit of Liability<br>(per insured) | |
|---|---|---|
| ☒ **Added First Party Benefits**<br>Medical Expense Benefits<br>Work Loss Benefits<br><br>Funeral Expense Benefits<br>Accidental Death Benefits | Up to $ _____100,000_____<br>Up to $ _____5,000_ subject to<br>a maximum of $ _____1,000__ per month.<br><br>Up to $ _____<br>$ _____ | |
| ☐ **Combination First Party Benefits**<br>Maximum Total Limit for All Benefits<br>Subject to the following individual limits: | Up to $ _____ | |
| Medical Expense Benefits | No specific dollar amount | |
| Work Loss Benefits | No specific dollar amount | |
| Funeral Expense Benefits | Up to $2,500 | |
| Accidental Death Benefits | $ _____ | |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

## A. COVERAGE

We will pay Added First Party Benefits or Combination First Party Benefits in accordance with the "Act" up to the limits stated in the Schedule or Declarations to or for an "insured" who sustains "bodily injury" caused by an "accident" and arising out of the maintenance or use of an "auto." We will only pay Combination First Party Benefits for expenses or loss incurred within 3 years from the date of the "accident."

In addition to the Medical Expense Benefits described in the Basic First Party Benefits endorsement, Added First Party Benefits and Combination First Party Benefits also consist of:

1. Work Loss Benefits consisting of:

   a. loss of income. Up to 80% of the gross income actually lost by an "insured."

   b. reasonable expenses actually incurred to reduce loss of income by hiring:

      (1) special help, thereby enabling the "insured" to work; or

      (2) a substitute to perform the work a self-employed "insured" would have performed.

   However, Work Loss Benefits do not include:

   a. loss or expected income for any period following the death of an "insured;" or

   b. expenses incurred for services performed following the death of an "insured;" or

   c. any loss of income, or expenses incurred for services performed, during the first 5 working days the "insured" did not work after the "accident" because of the "bodily injury."

2. Funeral Expense Benefits. Actual expenses incurred for an "insured's" funeral or burial if "bodily injury" resulting from the "accident" causes his or her death within 24 months from the date of the "accident."

3. Accidental Death Benefits. A death benefit paid if "bodily injury" resulting from an "accident" causes the death of you or any "family member" within 24 months from the date of the "accident."

## B. EXCLUSIONS

In addition to the exclusions in the Basic First Party Benefits endorsement, the following exclusion also applies.

We will not pay:

Accidental Death Benefits on behalf of any person who intentionally caused or attempted to cause "bodily injury" to himself, herself or any other person.

## C. LIMIT OF INSURANCE

1. Regardless of the number of covered "autos," premiums paid, claims made, "autos" involved in the accident or insurers providing First Party Benefits, the most we will pay to or for an "insured" as the result of any one "accident" is the limit shown in the Schedule or the Declarations. Combination First Party Benefits are subject to a maximum total single limit of liability with individual limits for specific benefits as shown in the Schedule or Declarations.

2. If Combination First Party Benefits are afforded, we will make available at least the minimum limit required by the "Act" for Basic First Party Benefits. This provision will not change our total limit of liability.

## D. CHANGES IN CONDITIONS

In addition to the CONDITIONS applicable to Basic First Party Benefits, the following CONDITION also applies:

**PAYMENT OF ACCIDENTAL DEATH BENEFITS**

The Accidental Death Benefit under this policy will be paid to the executor or administrator of the deceased "insured's" estate. If there is no executor or administrator, benefits shall be paid to:

1. The deceased "insured's" surviving spouse; or

2. If there is no surviving spouse, the deceased "insured's" surviving children; or

3. If there is no surviving spouse or surviving children, the deceased "insured's" estate.

Case 2:24-cv-00700-JDW Document 21 Filed 04/24/24 Page 419 of 520

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PENNSYLVANIA-NAMED INDIVIDUALS-BROADENED FIRST PARTY BENEFITS

This endorsement modifies insurance provided under the following:

**BUSINESS AUTO COVERAGE FORM**
**GARAGE COVERAGE FORM**
**TRUCKERS COVERAGE FORM**

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Endorsement effective<br>07-01-2021 | Policy No.<br>EBA 026 35 19 | |
|---|---|---|
| Named Insured<br><br>HENRY MOLDED PRODUCTS INC | | |
| Countersigned by<br><br> | | |
| (Authorized Representative) | | |

| Name of Individual | Premium | |
|---|---|---|
| DOUGLAS HENRY<br>JUDY WILLIAMS HENRY | INCL<br>INCL | |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

The individual named in the Schedule of this endorsement shall be considered a "named insured" for first party benefits provided under this coverage.

**CA 22 54 01 87**          Copyright, Insurance Services Office, Inc., 1986

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# DRIVE OTHER CAR COVERAGE - BROADENED COVERAGE FOR NAMED INDIVIDUALS

This endorsement modifies insurance provided under the following:

**BUSINESS AUTO COVERAGE FORM**
**GARAGE COVERAGE FORM**

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Endorsement Effective: 07-01-2021 | Policy Number: EBA 026 35 19 | |
|---|---|---|
| Named Insured: HENRY MOLDED PRODUCTS INC | | |
| Countersigned by: | | |

(Authorized Representative)

## SCHEDULE

| Name of Individual | | | |
|---|---|---|---|
| DOUGLAS HENRY JUDY WILLIAMS HENRY | | | |

| Liability | | Auto Medical Payments | |
|---|---|---|---|
| **Limit** REFER TO AA4183 | **Premium** | **Limit** | **Premium** |

| Name of Individual | | | | |
|---|---|---|---|---|
| DOUGLAS HENRY JUDY WILLIAMS HENRY | | | | |

| Uninsured Motorists | | Underinsured Motorists | | Physical Damage | |
|---|---|---|---|---|---|
| | | | | Comp. | Coll. |
| **Limit** REFER TO AA4183 | **Premium** | **Limit** | **Premium** | | |

Note – When uninsured motorists is provided at limits higher than the basic limits required by a financial responsibility law, underinsured motorists is included, unless otherwise noted. If underinsured motorists coverage is provided as a separate coverage, make appropriate entry in the Schedule above.

(Information required to complete this Schedule, if not shown above, will be shown in the Declarations.)

AA 247 03 06

Includes copyrighted material of ISO Properties, Inc., with its permission.

Page 1 of 2

**A.** This endorsement changes only those coverages where a premium is shown in the Schedule.

**B. Changes in Liability Coverage**

1. Any "auto" you don't own, hire, or borrow is a covered "auto" for **Liability Coverage** while being used by any individual named in the Schedule or by his or her spouse while a resident of the same household except:

   a. Any "auto" owned by that individual or by any member of his or her household.

   b. Any "auto" used by that individual or his or her spouse while working in a business of selling, servicing, repairing or parking "autos".

2. The following is added to **Who is an Insured:**

   Any individual named in the Schedule and his or her spouse, while a resident of the same household, are "insureds" while using any covered "auto" described in Paragraph **B.1.** of this endorsement.

**C. Changes in Auto Medical Payments and Uninsured and Underinsured Motorists Coverages**

The following is added to **Who is an Insured:**

Any individual named in the Schedule and his or her "family members" are "insureds" while "occupying" or while a pedestrian when being struck by any "auto" you don't own except:

Any "auto" owned by that individual or by any "family member".

**D. Changes in Physical Damage Coverage**

Any private passenger type "auto" you don't own, hire, or borrow is a covered "auto" while in the care, custody or control of any individual named in the Schedule or his or her spouse while a resident of the same household except:

1. Any "auto" owned by that individual or by any member of his or her household.

2. Any "auto" used by that individual or his or her spouse while working in a business of selling, servicing, repairing or parking "autos".

**E. Additional Definition**

As used in this endorsement:

"Family member" means a person related to the individual named in the Schedule by blood, marriage or adoption who is a resident of the individual's household, including a ward or foster child.

Includes copyrighted material of ISO Properties, Inc., with its permission.

**AA 247 03 06**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CinciPlus®
# BUSINESS AUTO XC®
# (EXPANDED COVERAGE)
# ENDORSEMENT

This endorsement modifies insurance provided by the following:

**BUSINESS AUTO COVERAGE FORM**

With respect to the coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by this endorsement.

**A. Who is an Insured – Amended**

**SECTION II – LIABILITY COVERAGE, A. Coverage, 1. Who is an Insured** is amended by adding the following:

The following are "insureds":

1. Any subsidiary which is a legally incorporated entity of which you own a financial interest of more than 50% of the voting stock on the effective date of this coverage form.

    However, the insurance afforded by this provision does not apply to any subsidiary that is an "insured" under any other automobile liability policy, or would be an "insured" under such policy but for termination of such policy or the exhaustion of such policy's limits of insurance.

2. Any organization that is newly acquired or formed by you and over which you maintain majority ownership.

    The insurance provided by this provision:

    a. Is effective on the date of acquisition or formation, and is afforded for 180 days after such date;

    b. Does not apply to "bodily injury" or "property damage" resulting from an "accident" that occurred before you acquired or formed the organization;

    c. Does not apply to any newly acquired or formed organization that is a joint venture or partnership; and

    d. Does not apply to an insured under any other automobile liability policy, or would be an insured under such a policy but for the termination of such

policy or the exhaustion of such policy's limits of insurance.

3. Any of your "employees" while using a covered "auto" in your business or your personal affairs, provided you do not own, hire or borrow that "auto".

**B. Liability Coverage Extensions – Supplementary Payments – Higher Limits**

**SECTION II – LIABILITY COVERAGE, A. Coverage, 2. Coverage Extensions, a. Supplementary Payments** is amended by:

1. Replacing the $2,000 Limit of Insurance for bail bonds with $4,000 in **(2)**; and

2. Replacing the $250 Limit of Insurance for reasonable expenses with $500 in **(4)**.

**C. Amended Fellow Employee Exclusion**

**SECTION II – LIABILITY COVERAGE, B. Exclusions, 5. Fellow Employee** is modified as follows:

Exclusion **5. Fellow Employee** is deleted.

**D. Hired Auto – Physical Damage**

If hired "autos" are covered "autos" for Liability Coverage, then Comprehensive and Collision Physical Damage Coverages as provided under **SECTION III – PHYSICAL DAMAGE COVERAGE** of this Coverage Part are extended to "autos" you hire, subject to the following:

1. The most we will pay for "loss" to any hired "auto" is $35,000 or the actual cash value or cost to repair or replace, whichever is the least, minus a deductible.

2. The deductible will be equal to the largest deductible applicable to any owned "auto"

Includes copyrighted material of ISO Properties, Inc., with its permission.

AA 265 06 20

for that coverage, or $1,000, whichever is less.

3. Hired Auto - Physical Damage coverage is excess over any other collectible insurance.

4. Subject to the above limit, deductible, and excess provisions we will provide coverage equal to the broadest coverage applicable to any covered "auto" you insured under this policy.

Coverage includes loss of use of that hired auto, provided it results from an "accident" for which you are legally liable and as a result of which a monetary loss is sustained by the leasing or rental concern. The most we will pay for any one "accident" is $1,000.

If a limit for Hired Auto - Physical Damage is shown in the Schedule, then that limit replaces, and is not added to, the $35,000 limit indicated above and the deductibles shown in the Schedule are applicable.

E. **Rental Reimbursement**

**SECTION III - PHYSICAL DAMAGE** is amended by adding the following:

1. We will pay for rental reimbursement expenses incurred by you for the rental of an "auto" because of a "loss" to a covered "auto". Payment applies in addition to the otherwise applicable amount of each coverage you have on a covered "auto". No deductible applies to this coverage.

2. We will pay only for those expenses incurred during the policy period beginning 24 hours after the "loss" and ending, regardless of the policy's expiration, with the lesser of the following number of days:

    a. The number of days reasonably required to repair the covered "auto". If "loss" is caused by theft, this number of days is added to the number of days it takes to locate the covered "auto" and return it to you; or

    b. 30 days.

3. Our payment is limited to the lesser of the following amounts:

    a. Necessary and actual expenses incurred; or

    b. $40 per day.

4. This coverage does not apply while there are spare or reserve "autos" available to you for your operations.

5. We will pay under this coverage only that amount of your rental reimbursement ex-

penses which is not already provided for under **SECTION III - PHYSICAL DAMAGE COVERAGE, A. Coverage, 4. Coverage Extensions.**

F. **Transportation Expense - Higher Limits**

**SECTION III - PHYSICAL DAMAGE COVERAGE, A. Coverage, 4. Coverage Extensions** is amended by replacing $20 per day with $50 per day, and $600 maximum with $1,500 maximum in **Extension a. Transportation Expenses.**

G. **Airbag Coverage**

**SECTION III - PHYSICAL DAMAGE COVERAGE, B. Exclusions, 3.a.** is amended by adding the following:

However, the mechanical and electrical breakdown portion of this exclusion does not apply to the accidental discharge of an airbag. This coverage for airbags is excess over any other collectible insurance or warranty.

H. **Loan or Lease Gap Coverage**

1. **SECTION III - PHYSICAL DAMAGE COVERAGE, C. Limit of Insurance** is deleted in its entirety and replaced by the following, but only for private passenger type "autos" with an original loan or lease, and only in the event of a "total loss" to such a private passenger type "auto":

    a. The most we will pay for "loss" in any one "accident" is the greater of:

        (1) The amount due under the terms of the lease or loan to which your covered private passenger type "auto" is subject, but will not include:

            (a) Overdue lease or loan payments;

            (b) Financial penalties imposed under the lease due to high mileage, excessive use or abnormal wear and tear;

            (c) Security deposits not refunded by the lessor;

            (d) Costs for extended warranties, Credit Life Insurance, Health, Accident or Disability Insurance purchased with the loan or lease; and

            (e) Carry-over balances from previous loans or leases, or

        (2) Actual cash value of the stolen or damaged property.

**b.** An adjustment for depreciation and physical condition will be made in determining actual cash value at the time of "loss".

**2.** **SECTION V - DEFINITIONS** is amended by adding the following, but only for the purposes of this **Loan or Lease Gap Coverage:**

"Total loss" means a "loss" in which the cost of repairs plus the salvage value exceeds the actual cash value.

**I.** **Glass Repair - Waiver of Deductible**

**SECTION III - PHYSICAL DAMAGE COVERAGE, D. Deductible** is amended by adding the following:

No deductible applies to glass damage if the glass is repaired in a manner acceptable to us rather than replaced.

**J.** **Duties in the Event of an Accident, Claim, Suit or Loss - Amended**

**SECTION IV - BUSINESS AUTO CONDITIONS, A. Loss Conditions, 2. Duties in the Event of Accident, Claim, Suit or Loss, a.** is amended by adding the following:

This condition applies only when the "accident" or "loss" is known to:

**1.** You, if you are an individual;

**2.** A partner, if you are a partnership;

**3.** An executive officer or insurance manager, if you are a corporation; or

**4.** A member or manager, if you are a limited liability company.

**K.** **Unintentional Failure to Disclose Hazards**

**SECTION IV - BUSINESS AUTO CONDITIONS, B. General Conditions** is amended by adding the following:

If you unintentionally fail to disclose any hazards existing on the effective date of this Coverage Form, we will not deny coverage under this Coverage Form because of such failure.

**L.** **Mental Anguish Resulting from Bodily Injury**

**SECTION V - DEFINITIONS, C. "Bodily injury"** is deleted in its entirety and replaced by the following:

"Bodily injury" means bodily injury, sickness or disease sustained by a person, including mental anguish and death sustained by the same person that results from such bodily injury, sickness or disease. "Bodily injury" does not include mental anguish or death that does not result from bodily injury, sickness or disease.

# THE CINCINNATI INSURANCE COMPANY

### A Stock Insurance Company

# COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS

Attached to and forming part of POLICY NUMBER:     EPP 026 35 19

Named Insured is the same as it appears on the Common Policy Declarations unless otherwise stated here.

**Loc.**   **(address)**
PER STATEMENT OF VALUES ON FILE
REFER TO IA904

**COVERAGE PROVIDED**

**OPTIONAL COVERAGES**
**Applicable only when an entry is made**

| Item | Coverage | Limits | Coin-surance | Covered Cause Of Loss | Inflation Guard (%) | Replace-ment Cost (x) | Replace-ment Cost Ind. Stock (x) | Agreed Value (x) | Monthly Limit (fraction) | Maximum Period (X) | Extended Period (Days) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | BLANKET BUILDING | 21,795,114 | 100% | SPECIAL | | X | | X | | | |
| | BLANKET BUSINESS PERSONAL PROPERTY | 7,917,054 | 100% | SPECIAL | | | X | X | | | |
| | BLANKET BUSINESS INCOME W/EXTRA EXPENSE (b) | 7,055,500 | 100% | SPECIAL | | | | X | | | |
| 1 | EQUIPMENT BREAKDOWN | | | | | | | | | | |
| 2 | EQUIPMENT BREAKDOWN | | | | | | | | | | |
| 3 | EQUIPMENT BREAKDOWN | | | | | | | | | | |
| 4 | EQUIPMENT BREAKDOWN | | | | | | | | | | |

DEDUCTIBLE: $500.00 unless otherwise stated $    25,000

**MORTGAGE HOLDER**

| Item | Name and Address |
|---|---|
| 1-1 | M&T BANK ISAOA<br>PO BOX 1358<br>BUFFALO, NY 14240-1358 |
| 3-1 | PNC BANK<br>4242 CARLISLE PIKE<br>CAMP HILL, PA 17011-4163 |
| 3-1 | M & T BANK ISAOA<br>PO BOX 1358<br>BUFFALO, NY 14240-1358 |

FORMS AND / OR ENDORSEMENTS APPLICABLE TO THIS COVERAGE PART:

| | | |
|---|---|---|
| CP1515 | 06/95 | BUSINESS INCOME REPORT/WORK SHEET |
| FM101 | 05/16 | BUILDING AND PERSONAL PROPERTY COVERAGE FORM (INCLUDING SPECIAL CAUSES OF LOSS) |
| CP0110 | 07/88 | SOUTH CAROLINA CHANGES--VALUATION |
| FA4013PA | 11/02 | PENNSYLVANIA CHANGES - ACTUAL CASH VALUE |

FM 502 07 08            EPP 026 35 19           Page 1 of 2

FORMS AND / OR ENDORSEMENTS APPLICABLE TO THIS COVERAGE PART:

| | | |
|---|---|---|
| FA4028PA | 11/05 | PENNSYLVANIA CHANGES |
| FA4098 | 01/09 | CINCIPLUS® COMMERCIAL PROPERTY POWER XC+® (EXPANDED COVERAGE PLUS) ENDORSEMENT SUMMARY OF COVERAGE LIMITS |
| FA450 | 05/16 | COMMERCIAL PROPERTY CONDITIONS |
| FA465 | 04/04 | ORDINARY PAYROLL LIMITATION OR EXCLUSION |
| FA480 | 02/16 | LOSS PAYABLE PROVISIONS |
| FA258 | 05/16 | CINCIPLUS® COMMERCIAL PROPERTY POWER XC+® (EXPANDED COVERAGE PLUS) ENDORSEMENT |
| FA260 | 05/16 | MANUFACTURERS' ADDITIONAL COVERAGE |
| FA261 | 05/16 | MANUFACTURERS' OPTIONAL COVERAGE |
| FA245 | 04/20 | EQUIPMENT BREAKDOWN COVERAGE |
| FA213 | 05/16 | BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM |

# BUILDING AND PERSONAL PROPERTY COVERAGE FORM
# (INCLUDING SPECIAL CAUSES OF LOSS)

### TABLE OF CONTENTS

Begins on Page

SECTION A. COVERAGE .................................................................................................................3
  1. Covered Property ..................................................................................................................3
    a. Building .........................................................................................................................3
    b. Outdoor Signs...............................................................................................................3
    c. Outdoor Fences ............................................................................................................3
    d. Business Personal Property...........................................................................................3
  2. Property Not Covered ...........................................................................................................4
    a. Accounts, Deeds, Money or Securities ........................................................................4
    b. Animals.........................................................................................................................4
    c. Automobiles .................................................................................................................4
    d. Contraband...................................................................................................................4
    e. Electronic Data..............................................................................................................4
    f. Excavations, Grading & Backfilling................................................................................4
    g. Foundations .................................................................................................................4
    h. Land, Water or Growing Crops ....................................................................................4
    i. Paved Surfaces..............................................................................................................4
    j. Property While Airborne or Waterborne .....................................................................4
    k. Pilings or Piers..............................................................................................................4
    l. Property More Specifically Insured ..............................................................................4
    m. Retaining Walls............................................................................................................4
    n. Underground Pipes, Flues or Drains.............................................................................4
    o. Valuable Papers & Records and Cost to Research........................................................5
    p. Vehicles or Self-Propelled Machines...........................................................................5
    q. Property While Outside of Buildings ...........................................................................5
  3. Covered Causes of Loss.........................................................................................................5
    a. Covered Causes of Loss................................................................................................5
    b. Exclusions.....................................................................................................................5
    c. Limitations...................................................................................................................11
  4. Additional Coverages...........................................................................................................13
    a. Change in Temperature or Humidity ..........................................................................13
    b. Debris Removal...........................................................................................................13
    c. Fire Department Service Charge..................................................................................14
    d. Fire Protection Equipment Recharge...........................................................................14
    e. Inventory or Appraisal ................................................................................................14
    f. Key and Lock Expense .................................................................................................15
    g. Ordinance or Law .......................................................................................................15
    h. Pollutant Clean Up and Removal ................................................................................16
    i. Preservation of Property..............................................................................................16
    j. Rewards.......................................................................................................................16

# TABLE OF CONTENTS (CONT'D)

| | | | Begins on Page |
|---|---|---|---|
| 5. | | Coverage Extensions | 16 |
| | a. | Accounts Receivable | 17 |
| | b. | Business Income and Extra Expense | 18 |
| | c. | Collapse | 21 |
| | d. | Electronic Data | 22 |
| | e. | Exhibitions, Fairs or Trade Shows | 23 |
| | f. | Fences | 23 |
| | g. | Fungi, Wet Rot, Dry Rot, and Bacteria - Limited Coverage | 23 |
| | h. | Glass | 24 |
| | i. | Newly Purchased, Leased or Constructed Property | 25 |
| | j. | Nonowned Building Damage | 26 |
| | k. | Outdoor Property | 26 |
| | l. | Personal Effects | 26 |
| | m. | Property Off Premises | 27 |
| | n. | Signs | 27 |
| | o. | Trailers (Nonowned Detached) | 27 |
| | p. | Transportation | 27 |
| | q. | Utility Services | 27 |
| | r. | Valuable Papers and Records | 28 |
| | s. | Water Damage, Other Liquids, Powder or Molten Material Damage | 29 |
| SECTION B. LIMITS OF INSURANCE | | | 29 |
| SECTION C. DEDUCTIBLE | | | 29 |
| 1. | | Deductible Examples | 30 |
| 2. | | Glass Deductible | 30 |
| SECTION D. LOSS CONDITIONS | | | 30 |
| 1. | | Abandonment | 30 |
| 2. | | Appraisal | 30 |
| 3. | | Duties in the Event of Loss or Damage | 30 |
| 4. | | Loss Payment | 31 |
| 5. | | Recovered Property | 34 |
| 6. | | Vacancy | 34 |
| | a. | Description of Terms | 34 |
| | b. | Vacancy Provisions | 34 |
| 7. | | Valuation | 34 |
| SECTION E. ADDITIONAL CONDITIONS | | | 35 |
| 1. | | Coinsurance | 35 |
| 2. | | Mortgage Holders | 36 |
| SECTION F. OPTIONAL COVERAGES | | | 36 |
| 1. | | Agreed Value | 37 |
| 2. | | Inflation Guard | 37 |
| 3. | | Replacement Cost | 37 |
| SECTION G. DEFINITIONS | | | 38 |

FM 101 05 16
Includes copyrighted material of Insurance
Services Office, Inc., with its permission.
Page 2 of 40

# BUILDING AND PERSONAL PROPERTY COVERAGE FORM
# (INCLUDING SPECIAL CAUSES OF LOSS)

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to **SECTION G. DEFINITIONS.**

### SECTION A. COVERAGE

We will pay for direct "loss" to Covered Property at the "premises" caused by or resulting from any Covered Cause of Loss.

1. **Covered Property**

   Covered Property, as used in this Coverage Part, means the following types of property for which a Limit of Insurance is shown in the Declarations:

   a. **Building**

      Building, means the building or structure described in the Declarations, including:

      (1) Completed additions;

      (2) Fixtures, including outdoor fixtures;

      (3) Permanently installed:

         (a) Machinery and equipment;

         (b) Building glass, including any lettering and ornamentation;

         (c) Signs attached to a building or structure that is Covered Property;

         (d) Awnings and canopies;

      (4) Personal property owned by you that is used to maintain or service a covered building or its "premises", including:

         (a) Fire extinguishing equipment;

         (b) Outdoor furniture;

         (c) Floor coverings; and

         (d) Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering;

      (5) If not covered by other insurance:

         (a) Additions under construction, alterations and repairs to a covered building;

         (b) Materials, equipment, supplies and temporary structures, on or within 1,000 feet of the "premises", used for making additions, alterations or repairs to a covered building.

   b. **Outdoor Signs**

      Your outdoor signs permanently installed and not attached to a covered building, and located within 1,000 feet of the "premises".

   c. **Outdoor Fences**

      Your outdoor fences.

   d. **Business Personal Property**

      Your Business Personal Property consists of the following property located in or on the building or structure described in the Declarations or in the open (or in a vehicle or portable storage unit) within 1,000 feet of the building or 1,000 feet of the "premises", whichever distance is greater. Your Business Personal Property consists of the following unless otherwise specified in the Declarations or on the **BUSINESS PERSONAL PROPERTY - SEPARATION OF COVERAGE ENDORSEMENT.**

      (1) Furniture;

      (2) Machinery and equipment;

      (3) "Stock";

      (4) All other personal property owned by you and used in your business;

      (5) The cost of labor, materials or services furnished or arranged by you on personal property of others;

      (6) Your use interest as tenant in improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:

         (a) Made a part of the building or structure you occupy but do not own; and

         (b) You acquired or made at your expense but cannot legally remove;

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

FM 101 05 16

(7) Leased personal property used in your business for which you have a contractual responsibility to insure. Such leased property is not considered personal property of others in your care, custody or control;

(8) Personal Property of Others that is in your care, custody or control or for which you are legally liable.

(a) This does not include personal effects owned by you, your officers, your partners, or if you are a limited liability company, your members or your managers, or your employees (including leased and temporary workers), except as provided in **5. Coverage Extensions, l. Personal Effects;**

(b) This does not include property of others for which you are legally liable as:

1) A carrier for hire; or

2) An arranger of transportation, including car loaders, consolidators, brokers, freight forwarders, or shipping associations; and

(9) Sales samples.

2. **Property Not Covered**

Covered Property does not include:

a. **Accounts, Deeds, Money or Securities**

Except as provided in **SECTION A. COVERAGE, 5. Coverage Extensions, a. Accounts Receivable,** Accounts, bills, currency, deeds, food stamps or other evidences of debt, "money", notes or "securities";

b. **Animals**

Animals, unless

(1) Owned by others and boarded by you; or

(2) Owned by you and covered as "stock" while inside of buildings;

and then only as provided in **3. Covered Causes of Loss, c. Limitations.**

c. **Automobiles**

Automobiles held for sale;

d. **Contraband**

Contraband, or property in the course of illegal transportation or trade;

e. **Electronic Data**

Except as provided in **SECTION A. COVERAGE, 5. Coverage Extensions, d. Electronic Data,** "Electronic data". This Paragraph **e.** does not apply to your "stock" of prepackaged software or to "electronic data" which is integrated in and operates or controls the building's elevator, lighting, heating, ventilation, air conditioning or security system.

f. **Excavations, Grading & Backfilling**

The cost of excavations, grading, backfilling or filling;

g. **Foundations**

Foundations of buildings, structures, machinery or boilers, if their foundations are below:

(1) The lowest basement floor; or

(2) The surface of the ground, if there is no basement.

h. **Land, Water or Growing Crops**

Land (including land on which the property is located), water, growing crops or lawns (other than lawns which are part of a vegetative roof);

i. **Paved Surfaces**

Bridges, roadways, walks, patios or other paved surfaces;

j. **Property While Airborne or Waterborne**

Personal property while airborne or waterborne;

k. **Pilings or Piers**

Pilings, piers, bulkheads, wharves or docks;

l. **Property More Specifically Insured**

Property that is covered under another coverage form of this or any other policy in which it is more specifically described, except as provided in **G. Other Insurance** of the **COMMERCIAL PROPERTY CONDITIONS;**

m. **Retaining Walls**

Retaining walls that are not part of any building described in the Declarations;

n. **Underground Pipes, Flues or Drains**

Underground pipes, flues or drains;

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

o. **Valuable Papers & Records and Cost to Research**

Except as provided in **SECTION A. COVERAGE, 5. Coverage Extensions, r. Valuable Papers and Records,** the cost to research, replace or restore the information on "valuable papers and records", including those which exist as "electronic data".

This does not apply to "valuable papers and records" held for sale by you.

p. **Vehicles or Self-Propelled Machines**

Vehicles or self-propelled machines (including aircraft or watercraft) that:

**(1)** Are licensed for use on public roads; or

**(2)** Are operated principally away from the "premises".

This paragraph does not apply to:

**(1)** Vehicles or self-propelled machines or autos you manufacture, process or warehouse;

**(2)** Vehicles or self-propelled machines, other than autos, you hold for sale;

**(3)** Rowboats or canoes out of water and located at the "premises"; or

**(4)** Trailers, but only as provided in **SECTION A. COVERAGE, 5. Coverage Extensions, o. Trailers (Nonowned Detached).**

q. **Property While Outside of Buildings**

The following property while outside of buildings (except as provided in **SECTION A. COVERAGE, 5. Coverage Extensions**):

**(1)** Grain, hay, straw or other crops;

**(2)** Signs, except:

  **(a)** Signs attached to a covered building or structure;

  **(b)** Signs for which a Limit of Insurance is shown in the Declarations.

**(3)** Outdoor fences, except outdoor fences for which a Limit of Insurance is shown in the Declarations;

**(4)** Radio antennas, television antennas or satellite dishes; including their lead-in wiring, masts, and towers; and

**(5)** Trees, shrubs or plants (other than trees, shrubs or plants that are "stock" or part of a vegetative roof).

3. **Covered Causes of Loss**

a. **Covered Causes of Loss**

Covered Causes of Loss means direct "loss" unless the "loss" is excluded or limited in this Coverage Part.

b. **Exclusions**

**(1)** We will not pay for "loss" caused directly or indirectly by any of the following, unless otherwise provided. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss".

  **(a) Ordinance or Law**

  Except as provided in **SECTION A. COVERAGE, 4. Additional Coverages, g. Ordinance or Law,** the enforcement of or compliance with any ordinance or law:

  **1)** Regulating the construction, use or repair of any building or structure; or

  **2)** Requiring the tearing down of any building or structure, including the cost of removing its debris.

  This exclusion applies whether "loss" results from:

  **1)** An ordinance or law that is enforced even if the building or structure has not been damaged; or

  **2)** The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of any building or structure, or removal of its debris, following a direct "loss" to that building or structure.

  **(b) Earth Movement**

  **1)** Earthquake, including tremors and aftershocks and any earth sinking, rising or shifting related to such event;

  **2)** Landslide, including any earth sinking, rising or shifting related to such event;

**FM 101 05 16**

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**Page 5 of 40**

**3)** Mine subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased;

**4)** Earth sinking (other than "sinkhole collapse"), rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface.

But if Earth Movement, as described in **(b)1)** through **4)** above, results in fire or explosion, we will pay for the "loss" caused by that fire or explosion.

**5)** Volcanic eruption, explosion or effusion. But if volcanic eruption, explosion or effusion results in fire, building glass breakage or volcanic action, we will pay for the "loss" caused by that fire, building glass breakage or volcanic action.

Volcanic action means direct "loss" resulting from the eruption of a volcano when the "loss" is caused by:

**a)** Airborne volcanic blast or airborne shock waves;

**b)** Ash, dust or particulate matter; or

**c)** Lava flow.

With respect to coverage for Volcanic Action, all volcanic eruptions that occur within any 168-hour period will constitute a single occurrence.

Volcanic action does not include the cost to remove ash, dust or particulate matter that does not cause direct "loss" to the described property.

This Earth Movement exclusion applies regardless of whether any of the above, in paragraphs **1)** through **5)**, is caused by an act of nature or is otherwise caused.

**(c) Governmental Action**

Seizure or destruction of property by order of governmental authority. However, we will pay for "loss" caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this Coverage Part.

**(d) Nuclear Hazard**

Nuclear reaction or radiation, or radioactive contamination, however caused.

**(e) Utility Services**

**1)** Except as provided in **SECTION A. COVERAGE 5. Coverage Extensions, q. Utility Services**, the failure of power, communication, water or other utility services supplied to the "premises", however caused, if the failure:

**a)** Originates away from the "premises"; or

**b)** Originates at the "premises", but only if such failure involves equipment used to supply the utility service to the "premises" from a source away from the "premises".

Failure of any utility service includes lack of sufficient capacity and reduction in supply. "Loss" caused by a surge of power is also excluded if the surge would not have occurred but for an event causing the failure of power.

However, if the failure or surge of power, or the failure of communication, water, wastewater removal or other utility service results in a Covered Cause of Loss, we will pay for that portion of "loss" caused by that Covered Cause of Loss.

Communication services include but are not limited to

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

service relating to Internet access or access to any electronic, cellular or satellite network.

**(f)  War and Military Action**

1)  War, including undeclared or civil war;

2)  Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

3)  Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**(g)  Water**

1)  Flood, meaning the partial or complete inundation of normally dry land areas due to:

    a)  The unusual or rapid accumulation or runoff of rain or surface waters from any source; or

    b)  Waves, tidal waters, tidal waves (including tsunami); or

    c)  Water from rivers, ponds, lakes, streams, or any other body of water that rises above, overflows from, or is not contained within its natural or man-made boundary;

    and all whether driven by wind or not, including storm surge.

2)  Mudslides or mudflows, which are caused by flooding as defined above in Paragraph **(g)1** above. Mudslide or mudflow involves a river of liquid and flowing mud on the surface of normally dry land areas as when earth is carried by a current of water and deposited along the path of the current;

3)  Water that has entered and then backs up through and is discharged from a sewer, drain, septic system, sump pump system or related equipment; or

4)  Water under the ground surface pressing on, or flowing or seeping through:

    a)  Foundations, walls, floors or paved surfaces;

    b)  Basements, whether paved or not; or

    c)  Doors, windows or other openings.

5)  Waterborne material carried or otherwise moved by any of the water referred to in Paragraphs **(g)1), 3)** or **4)**, or material carried or otherwise moved by mudslide or mudflow as described in Paragraph **(g)2)**.

This exclusion applies regardless of whether any of the above in Paragraphs **(g)1)** through **(g)5)** is caused by an act of nature or is otherwise caused. An example of a situation to which this exclusion applies is the situation where a dam, levee, seawall or other boundary or containment system fails in whole or in part, for any reason, to contain the water.

However, if any of the above, as described in Paragraphs **(g)1)** through **(g)5)**, results in fire, explosion or sprinkler leakage, we will pay for that portion of "loss" caused by that fire, explosion or sprinkler leakage (if sprinkler leakage is a Covered Cause of Loss).

**(h)  "Fungi", Wet Rot, Dry Rot, and Bacteria**

1)  Presence, growth, proliferation, spread or any activity of "fungi", wet or dry rot or bacteria. But if "fungi", wet or dry rot or bacteria results in a "specified cause of loss", we will pay for the "loss" caused by that "specified cause of loss".

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**2)** This exclusion does not apply:

**a)** When "fungi", wet or dry rot or bacteria results from fire or lightning; or

**b)** To the extent that coverage is provided in **SECTION A. COVERAGE, 5. Coverage Extensions, g. "Fungi", Wet Rot, Dry Rot and Bacteria - Limited Coverage** with respect to "loss" from a cause of loss other than fire or lightning.

Exclusions **b.(1)(a)** through **b.(1)(h)** apply whether or not the "loss" event results in widespread damage or affects a substantial area.

**(2)** We will not pay for "loss" caused by or resulting from any of the following:

**(a) Electrical Current**

Artificially generated electrical, magnetic or electromagnetic energy that damages, disturbs, disrupts or otherwise interferes with any:

**1)** Electrical or electronic wire, device, appliance, system or network; or

**2)** Device, appliance, system or network utilizing cellular or satellite technology.

For the purpose of this exclusion, electrical, magnetic or electromagnetic energy includes but is not limited to:

**1)** Electrical current, including arcing;

**2)** Electrical charge produced or conducted by a magnetic or electromagnetic field;

**3)** Pulse of electromagnetic energy; or

**4)** Electromagnetic waves or microwaves.

However, if fire results, we will pay for "loss" caused by that fire.

**(b) Delay or Loss of Use**

Delay, loss of use or loss of market.

**(c) Smoke, Vapor, Gas**

Smoke, vapor or gas from agricultural smudging or industrial operations.

**(d) Miscellaneous Causes of Loss**

**1)** Wear and tear;

**2)** Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

**3)** Smog;

**4)** Settling, cracking, shrinking or expansion;

**5)** Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents or other animals;

**6)** Mechanical breakdown, including rupture or bursting caused by centrifugal force. However, if mechanical breakdown results in elevator collision, we will pay for that portion of "loss" caused by that elevator collision; or

**7)** The following causes of loss to personal property:

**a)** Marring or scratching;

**b)** Except as provided in **SECTION A. COVERAGE, 4. Additional Coverages, a. Change in Temperature or Humidity** and **5. Coverage Extensions, q. Utility Services;**

**i)** Dampness or dryness of atmosphere; and

**ii)** Changes in or extremes of temperature.

However, if an excluded cause of loss listed in **(2)(d)1)** through **7)** results in a "specified cause of "loss" or building glass breakage, we will pay for that portion of "loss" caused by that "specified cause of loss" or building glass breakage.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

(e) **Explosion of Steam Apparatus**

Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control. However, if explosion of steam boilers, steam pipes, steam engines or steam turbines results in fire or combustion explosion, we will pay for that portion of "loss" caused by that fire or combustion explosion. We will also pay for "loss" caused by or resulting from the explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

(f) **Water Seepage**

Continuous or repeated seepage or leakage of water or the presence or condensation of humidity, moisture, or vapor that occurs over a period of 14 days or more.

(g) **Freezing of Plumbing**

Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protection systems) caused by or resulting from freezing, unless:

1) You did your best to maintain heat in the building or structure; or

2) You drained the equipment and shut off the supply if the heat was not maintained.

(h) **Dishonest or Criminal Acts**

Dishonest or criminal acts (including theft) by you, any of your partners, members (if a limited liability company), officers, managers, employees (including leased workers or temporary employees) directors, trustees, or authorized representatives; whether acting alone or in collusion with each other or with any other party; or theft by any person to whom you entrust the property for any purpose, whether acting alone or in collusion with any other party.

This exclusion applies whether or not an act occurs during the hours of operation.

This **Dishonest or Criminal Acts** exclusion does not apply to acts of destruction by your employees (including leased workers or temporary employees) or by authorized representatives; except theft by employees (including leased workers or temporary employees) is not covered.

(i) **Voluntary Parting Under False Pretense**

Voluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

(j) **Exposure to Weather**

Rain, snow, ice or sleet to personal property in the open.

(k) **Collapse**

Collapse, including any of the following conditions of property or any part of the property:

1) An abrupt falling down or caving in;

2) Loss of structural integrity, including separation of parts of the property or property in danger of falling down or caving in; or

3) Any cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion as such condition relates to Paragraph **(k)1)** or **2)** above.

But if collapse results in a Covered Cause of Loss at the "premises", we will pay for "loss" caused by that Covered Cause of Loss.

This exclusion **Collapse** does not apply:

1) To the extent that coverage is provided under the **SECTION A. COVERAGE, 5. Coverage Extensions, c. Collapse**; or

2) To collapse caused by one or more of the following:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**a)** The "specified causes of loss";

**b)** Breakage of building glass;

**c)** Weight of rain that collects on a roof; or

**d)** Weight of people or personal property.

**(l) Pollutants**

Discharge, dispersal, seepage, migration, release, escape or emission of "pollutants" unless the discharge, dispersal, seepage, migration, release, escape or emission is itself caused by any of the "specified causes of loss". But if the discharge, dispersal, seepage, migration, release, escape or emission of "pollutants" results in a "specified cause of loss", we will pay for the "loss" caused by that "specified cause of loss".

This exclusion does not apply to "loss" to glass caused by chemicals applied to the glass.

**m) Loss or Damage to Product**

We will not pay for "loss" to Covered Property consisting of merchandise, goods or other product caused by or resulting from error or omission by any person or entity (including those having possession under an arrangement where work or a portion of the work is outsourced) in any stage of the development, production or use of the product, including planning, testing, processing, packaging, installation, maintenance or repair. This exclusion applies to any effect that compromises the form, substance or quality of the product. But if such error or omission results in a Covered Cause of Loss, we will pay for "loss" caused by that Covered Cause of Loss.

**(n) Neglect**

Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of "loss".

**(3)** We will not pay for "loss" caused by or resulting from any of the following in Paragraphs **(3)(a)** through **(3)(c)**. However, if an excluded cause of loss that is listed in Paragraphs **(3)(a)** through **(3)(c)** results in a Covered Cause of Loss, we will pay for that portion of "loss" caused by that Covered Cause of Loss:

**(a) Weather Conditions**

Weather conditions, but this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in **SECTION A. COVERAGE, 3. Covered Causes of Loss, b. Exclusions, (1)(a)** through **(1)(h)** to produce the "loss".

**(b) Acts or Decisions**

Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

**(c) Defects, Errors, and Omissions**

**1)** An act, error, or omission (negligent or not) relating to:

**a)** Land use;

**b)** Design, specifications, construction, workmanship;

**c)** Planning, zoning, development, surveying, siting, grading, compaction; or

**d)** Maintenance, installation, renovation, repair, or remodeling

of part or all of any property on or off the "premises";

**2)** A defect, weakness, inadequacy, fault, or unsoundness in materials used in construction or repair of part or all of any property, on or off the "premises"; or

**3)** The cost to make good any error in design.

FM 101 05 16

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Page 10 of 40

**(4) Special Exclusions**

The Special Exclusions apply only to **SECTION A. COVERAGE, 5. Coverage Extensions, b. Business Income and Extra Expense**; and if attached to this policy, the following coverage forms: **BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM, BUSINESS INCOME (WITHOUT EXTRA EXPENSE) COVERAGE FORM,** and **EXTRA EXPENSE COVERAGE FORM.**

We will not pay for:

**(a)** Any "loss" caused by or resulting from:

  **1)** Damage or destruction of "finished stock"; or

  **2)** The time required to reproduce "finished stock".

  This Exclusion **(4)(a)** does not apply to Extra Expense.

**(b)** Any "loss" caused by or resulting from damage to radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers.

**(c)** Any increase of "loss" caused by or resulting from:

  **1)** Delay in rebuilding, repairing or replacing the property or resuming "operations", due to interference at the location of the rebuilding, repair or replacement by strikers or other persons; or

  **2)** Suspension, lapse or cancellation of any license, lease or contract. However, if the suspension, lapse or cancellation is directly caused by the "suspension" of "operations", we will cover such "loss" that affects your "Business Income" during the "period of restoration" and any extension of the "period of restoration" in accordance with the terms of the Extended Business Income Additional Coverage and the Extended Period of Indemnity Optional Coverage or any variation of these.

**(d)** Any Extra Expense caused by or resulting from suspension, lapse or cancellation of any license, lease or contract beyond the "period of restoration".

**(e)** Any other indirect "loss".

**c.** **Limitations**

The following limitations apply to all policy forms and endorsements shown on the **COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS**, unless otherwise stated:

**(1) Limitations - Various Types of Property**

  We will not pay for "loss" to property as described and limited in this section. In addition, we will not pay for any "loss" that is a consequence of "loss" as described and limited in this section.

  **(a)** **Steam Apparatus**

  Steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment. But we will pay for "loss" to such equipment caused by or resulting from an explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

  **(b)** **Hot Water Boilers**

  Hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment, other than an explosion.

  **(c)** **Building Interiors**

  The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

    **1)** The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

    **2)** The "loss" is caused by or results from thawing of

snow, sleet or ice on the building or structure.

**(d) Theft of Building Materials**

Building materials and supplies not attached as part of the building or structure, caused by or resulting from theft.

However, this limitation does not apply to:

**1)** Building materials and supplies held for sale by you; or

**2)** "Business Income" coverage or Extra Expense coverage.

**(e) Missing Property**

Property that is missing, where the only evidence of the "loss" is a shortage disclosed on taking inventory, or other instances where there is no physical evidence to show what happened to the property.

**(f) Transferred Property**

Property that has been transferred to a person or to a place outside the "premises" on the basis of unauthorized instructions.

**(g) Vegetative Roofs**

Lawns, trees, shrubs or plants which are part of a vegetated roof, caused by or resulting from:

**1)** Dampness or dryness of atmosphere or of soil supporting the vegetation;

**2)** Changes in or extremes of temperature;

**3)** Disease;

**4)** Frost or hail; or

**5)** Rain, snow, ice or sleet.

**(2) Limitations - Various Property for Specified Causes**

We will not pay for "loss" to the following types of property unless caused by the "specified causes of loss" or building glass breakage:

**(a)** Animals, and then only if they are killed or their destruction is deemed necessary.

**(b)** Contractors equipment, machinery and tools owned by you or entrusted to you, provided such property is Covered Property.

However, this limitation does not apply:

**1)** If the property is located on or within 1,000 feet of the "premises"; or

**2)** To Business Income coverage or to Extra Expense coverage.

**(3) Limitation - Personal Property Theft**

This Limitation does not apply to "Business Income" coverage or to Extra Expense coverage. For each category described in Paragraph **c.(3)(a)** through **(3)(d)** below, the most we will pay for "loss" in any one occurrence of theft to all property in that category, regardless of the types or number of articles for that category that are lost or damaged in that occurrence, are the following special limits:

**(a)** $2,500 for Furs, fur garments and garments trimmed with fur.

**(b)** $2,500 for Jewelry, watches, watch movements, jewels, pearls, precious and semiprecious stones, bullion, gold, silver, platinum and other precious alloys or metals. This limitation does not apply to jewelry and watches worth $100 or less per item.

**(c)** $2,500 for Patterns, dies, molds and forms.

**(d)** $250 for Stamps, tickets, including lottery tickets held for sale, and letters of credit.

These special limits are not additional Limits of Insurance.

**(4) Limitation - System or Appliance Defects**

**(a)** We will not pay the cost to repair any defect to a system or appliance from which water, other liquid, powder or molten material escapes; and

**(b)** We will not pay to replace the substance that escapes as described in Paragraph **c.(4)(a)** above.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

But we will pay the cost to repair or replace damaged parts of fire extinguishing equipment if the damage results in discharge of any substance from an automatic fire protection system, or is directly caused by freezing.

However, this Limitation **c.(4)(a)** does not apply to "Business Income" Coverage or to Extra Expense Coverage.

## 4. Additional Coverages

Unless stated otherwise, **SECTION C. DEDUCTIBLE** does not apply to Paragraph **4. Additional Coverages.**

Unless stated otherwise, these Paragraph **4. Additional Coverages** apply on a per location basis.

### a. Change in Temperature or Humidity

We will pay for direct "loss" to your covered Business Personal Property caused by a change in temperature or humidity or contamination by refrigerant resulting from damage by a Covered Cause of Loss to equipment used for refrigerating, cooling, humidifying, dehumidifying, air conditioning, heating, generating or converting power (including their connections and supply or transmission lines and pipes) when located on the "premises".

This Coverage is included within the Limits of Insurance shown in the Declarations.

### b. Debris Removal

(1) Subject to Paragraphs **b.(2)**, **(3)** and **(4)** of this Additional Coverage, we will pay your expense to remove debris of Covered Property and other debris that is on the "premises", when such debris is caused by or results from a Covered Cause of Loss that occurs during the "coverage term". The expenses will be paid only if they are reported to us in writing within 180 days of the date of direct "loss".

(2) Debris Removal does not apply to costs to:

(a) Extract "pollutants" from land or water;

(b) Remove, restore or replace polluted land or water;

(c) Remove debris of property of yours that is not insured under this Coverage Part, or property in your possession that is not Covered Property;

(d) Remove debris of property owned by or leased to the landlord of the building where your "premises" are located, unless you have a contractual responsibility to insure such property and it is insured under this Coverage Part;

(e) Remove any property that is Property Not Covered, including property addressed under **5. Coverage Extensions, k. Outdoor Property.**

(f) Remove property of others of a type that would not be Covered Property under this Coverage Part;

(g) Remove deposits of mud or earth from the grounds of the "premises".

(3) Subject to the exceptions in Paragraph **b.(4)** below, the following provisions apply:

(a) The most we will pay for the total of direct "loss" plus debris removal expense is the Limit of Insurance applicable to the Covered Property that has sustained "loss".

(b) Subject to Paragraph **b.(3)(a)**, the amount we will pay for debris removal expense is limited to 25% of the sum of the deductible plus the amount that we pay for direct "loss" to the Covered Property that has sustained "loss".

(4) We will pay up to an additional $10,000 for debris removal expense for each "premises", in any one occurrence of direct "loss" to Covered Property, if one or both of the following circumstances apply:

(a) The total of the actual debris removal expense plus the amount we pay for direct "loss" exceeds the Limit of Insurance on the Covered Property that has sustained "loss".

(b) The actual debris removal expense exceeds 25% of the sum of the deductible plus the amount that we pay for direct "loss" to the Covered Property that has sustained "loss".

Therefore, if Paragraph **b.(4)(a)** and/or **(4)(b)** apply, our total payment for direct

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

"loss" and debris removal expense may reach but will never exceed the Limit of Insurance on the Covered Property that has sustained "loss", plus $10,000.

### (5) Examples

The following examples assume that there is no coinsurance penalty.

**Example #1**

| | |
|---|---|
| Limit of Insurance | $90,000 |
| Amount of Deductible | $500 |
| Amount of "Loss" | $50,000 |
| Amount of "Loss" Payable ($50,000 - $500) | $49,500 |
| Debris Removal Expense | $10,000 |
| Debris Removal Expense Payable ($10,000 is 20% of $50,000) | $10,000 |

The debris removal expense is less than 25% of the sum of the "loss" payable plus the deductible. The sum of the "loss" payable and the debris removal expense ($49,500 + $10,000 = $59,500) is less than the Limit of Insurance. Therefore, the full amount of debris removal expense is payable in accordance with the terms of Paragraph **(3)**.

**Example #2**

| | |
|---|---|
| Limit of Insurance | $90,000 |
| Amount of Deductible | $500 |
| Amount of "Loss" | $80,000 |
| Amount of "Loss" Payable ($80,000 - $500) | $79,500 |
| Debris Removal Expense | $30,000 |
| Debris Removal Expense Payable | |
| Basic Amount | $10,500 |
| Additional Amount | $10,000 |

The basic amount payable for debris removal expense under the terms of Paragraph **(3)** is calculated as follows: $80,000 ($79,500 + $500) x .25 = $20,000; capped at $10,500. The cap applies because the sum of the "loss" payable ($79,500) and the basic amount payable for debris removal expense ($10,500) cannot exceed the Limit of Insurance ($90,000).

The additional amount payable for debris removal expense is provided in accordance with the terms of Paragraph **(4)**, because the debris removal expense ($30,000) exceeds 25% of the "loss" payable plus the deductible ($30,000 is 37.5% of $80,000), and because the sum of the "loss" payable and debris removal expense ($79,500 + $30,000 = $109,500) would exceed the Limit of Insurance ($90,000). The additional amount of covered debris removal expense is $10,000, the maximum payable under Paragraph **(4)**. Thus the total payable for debris removal ex-

pense in this example is $20,500; $9,500 of the debris removal expense is not covered.

**c.** <u>**Fire Department Service Charge**</u>

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $5,000 in any one occurrence for your liability, which is determined prior to the direct "loss", for fire department service charges:

**(1)** Assumed by contract or agreement; or

**(2)** Required by local ordinance.

Such limit is the most we will pay regardless of the number of responding fire departments or fire units, and regardless of the number or type of services performed. This Coverage is in addition to the Limits of Insurance shown in the Declarations.

**d.** <u>**Fire Protection Equipment Recharge**</u>

**(1)** We will pay for the expenses you incur to recharge your automatic fire suppression system or portable fire extinguishers when the equipment is discharged:

**(a)** To combat a covered fire to which this insurance applies;

**(b)** As a result of another covered Cause of Loss other than fire; or

**(c)** As a result of an accidental discharge.

**(2)** We will not pay your expenses to recharge fire protection equipment as a result of a discharge during testing or installation.

**(3)** If it is less expensive to do so, we will pay your costs to replace your automatic fire suppression system or portable fire extinguishers rather than recharge that equipment.

The most we will pay in any one occurrence under this Additional Coverage is $25,000. This Coverage is in addition to the Limits of Insurance shown in the Declarations.

**e.** <u>**Inventory or Appraisal**</u>

**(1)** We will pay the necessary expenses you incur to prepare claim information as required by this Coverage Part. Expenses must result from:

**(a)** Taking inventories;

**(b)** Making appraisals; and

**(c)** Preparing a statement of loss and other supporting exhibits.

**(2)** We will not pay for any expenses:

**(a)** Incurred to prove that "loss" is covered;

**(b)** Incurred under **SECTION D. LOSS CONDITIONS, 2. Appraisal;**

**(c)** Incurred for examinations under oath;

**(d)** Billed by and payable to independent or public adjusters; or

**(e)** To prepare claims not covered by this Coverage Part.

The most we will pay for any one occurrence under this Additional Coverage is $10,000. This Coverage is in addition to the shown in the Declarations.

**f.** <u>Key and Lock Expense</u>

**(1)** If a key or master key is lost, stolen, or damaged, we will pay for:

**(a)** The actual expense of the new keys; and

**(b)** The adjustment of locks to accept new keys; or

**(c)** If required, new locks, including the expense of their installation;

but only for locks at buildings or structures covered by this Coverage Part.

**(2)** This Coverage does not apply to keys that were given to former employees.

The most we will pay in any one occurrence under this Additional Coverage is Limit of Insurance $1,000. This Coverage is in addition to the Limit of Insurance shown in the Declarations.

**g.** <u>Ordinance or Law</u>

**(1)** If a covered building or structure sustains direct "loss" from a Covered Cause of Loss, resulting in the enforcement of or compliance with an ordinance or law that is in force at the time of "loss" and regulates the demolition, construction or repair of buildings or structures, or establishes zoning or land use requirements at the "premises", then subject to **SECTION D, LOSS CONDITIONS, 4. Loss Payment,** we will pay:

**(a) Loss of Use of Undamaged Parts of Buildings**

The costs you incur to rebuild at the same "premises" any undamaged portion of your building or structure caused by enforcement of or compliance with an ordinance or law requiring demolition of undamaged parts of the same building or structure. We will only pay the costs to satisfy the minimum requirements of the ordinance or law. Losses and costs incurred in complying with recommended actions or standards that exceed actual requirements are not covered.

**(b) Demolition Costs**

The costs you incur to demolish and clear the site of undamaged parts of the same building or structure as a result of Paragraph g.(1)(a) above.

**(c) Increased Costs of Construction**

**1)** For buildings or structures to which **SECTION F. OPTIONAL COVERAGES, 3. Replacement Cost** applies, the increased costs to comply with the minimum standards of an ordinance or law to:

**a)** Repair or reconstruct damaged portions of that building or structure; and

**b)** Reconstruct or remodel undamaged portions of that building or structure whether or not demolition is required;

However, this increased cost of construction applies only if the building or structure is repaired, reconstructed or remodeled and is intended for occupancy similar to the building or structure it replaces, unless such occupancy is not permitted by zoning or land use ordinance or law.

**2)** For this Paragraph **g.(1)(c)** only, the increased costs to repair or reconstruct the following:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**a)** The cost of excavations, grading, backfilling and filling;

**b)** Foundation of the building;

**c)** Pilings;

**d)** Underground pipes, flues and drains.

The items listed in Paragraphs **g.2)a)** through **g.2)d)** above are deleted from **SECTION A. COVERAGE, 2. Property Not Covered;**

**(2)** We will not pay for:

**(a)** Enforcement of or compliance with any ordinance or law which requires the demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungi", wet or dry rot or bacteria; or

**(b)** The costs associated with the enforcement of or compliance with any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungi", wet or dry rot or bacteria.

**(3)** We will not pay for "loss" due to any ordinance or law that:

**(a)** You were required to comply with before the "loss", even if the building or structure was undamaged; and

**(b)** With which you failed to comply.

**(4)** The terms of this Additional Coverage apply separately to each building or structure covered by this Coverage Part.

The most we will pay under this Additional Coverage is $10,000 per building. This is in addition to the Limit of Insurance shown in the Declarations for the building suffering "loss".

**h.** **Pollutant Clean Up and Removal**

We will pay your expenses to extract "pollutants" from land or water at the "premises" if the discharge, dispersal, seepage, migration, release, escape or emission of the "pollutants" is caused by or results from a Covered Cause of Loss that occurs during the "coverage term". The expenses will be paid only if they are reported to us in writing within 180 days of the date on which the Covered Cause of Loss occurs.

This Additional Coverage does not apply to costs to test for, monitor or assess the existence, concentration or effects of "pollutants". But we will pay for testing which is performed in the course of extracting the "pollutants" from the land or water.

The most we will pay under this Additional Coverage for each "premises" is $10,000 for the sum of all covered expenses arising out of Covered Causes of Loss during each "coverage term". This Coverage is in addition to the Limit of Insurance shown in the Declarations.

**i.** **Preservation of Property**

If it is necessary to move Covered Property from the "premises" to preserve it from imminent "loss" by a Covered Cause of Loss, we will pay for any direct "loss" to that property:

**(1)** While it is being moved or while temporarily stored at another location; and

**(2)** Only if the "loss" occurs within 60 days after the property is first moved.

This Coverage is included within Limit of Insurance shown in the Declarations for such Covered Property.

**j.** **Rewards**

We will pay to provide a reward for information that leads to a conviction for arson, theft, vandalism, or burglary. The conviction must involve a covered "loss" caused by arson, theft, vandalism, or burglary.

The most we will pay for "loss" in any one occurrence under this Additional Coverage is $10,000. This Coverage is in addition to the Limit of Insurance shown in the Declarations.

**5.** **Coverage Extensions**

Unless amended within a particular Coverage Extension, each Extension applies to property located in or on the building described in the Declarations or in the open (or in a vehicle or portable storage unit) within 1,000 feet of the "premises".

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

The limits applicable to the Coverage Extensions are in addition to the Limit of Insurance shown in the Property Declarations. Limits of Insurance specified in these Extensions apply per location unless stated otherwise.

**SECTION E. ADDITIONAL CONDITIONS, 1. Coinsurance,** does not apply to these Coverage Extensions.

**a.** **Accounts Receivable**

**SECTION C. DEDUCTIBLE** does not apply to this Coverage Extension.

(1) When you sustain direct "loss" to your accounts receivable records caused by a Covered Cause of Loss, we will pay:

(a) All amounts due from your customers that you are unable to collect;

(b) Interest charges on any loan required to offset amounts you are unable to collect pending our payment of these amounts;

(c) Collection expenses in excess of your normal collection expenses that are made necessary by the "loss"; and

(d) Other reasonable expenses that you incur to re-establish your records of accounts receivable.

(2) Coverage does not apply to:

(a) Records of accounts receivable in storage away from the "premises"; or

(b) Contraband, or property in the course of illegal transportation or trade.

(3) We will extend coverage to include:

(a) Removal

If you give us written notice within 30 days of removal of your records of accounts receivable because of imminent danger of direct "loss" from a Covered Cause of Loss, we will pay for "loss" while they are:

1) At a safe place away from your "premises"; or

2) Being taken to and returned from that place.

This Removal coverage is included within the Limit of Insurance applicable to this Coverage Extension.

(b) Away From Your Premises

The most we will pay in any one occurrence is $5,000, regardless of the number of locations, for "loss" caused by a Covered Cause of Loss to Accounts Receivable while they are away from your "premises".

This Away From Premises Limit is in addition to the Limit of Insurance applicable to this Coverage Extension.

(4) **SECTION A. COVERAGE, 3. Covered Causes of Loss, b. Exclusions** does not apply to this Coverage Extension, except as follows:

(a) **Exclusion (1)(c) Governmental Action;**

(b) **Exclusion (1)(d) Nuclear Hazard;**

(c) **Exclusion (1)(f) War and Military Action.**

(5) In addition to Paragraph **a.(4)** of this Coverage Extension, we will not pay for "loss" resulting from any of the following:

(a) Dishonest or criminal acts by:

1) You, your partners, employees, directors, trustees or authorized representatives;

2) A manager or a member if you are a limited liability company;

3) Anyone else with an interest in the records of accounts receivable, or their employees or authorized representatives; or

4) Anyone else entrusted with the records of accounts receivable for any purpose.

This Paragraph **a.(5)(a)** applies whether or not such persons are acting alone or in collusion with other persons or such act occurs during the hours of employment.

However, this Paragraph **a.(5)(a)** does not apply to dishonest acts of a carrier for hire or to acts of destruction by your employees. However, theft by employees is still not covered.

(b) Alteration, falsification, concealment or destruction of records of

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

FM 101 05 16

accounts receivable done to conceal the wrongful giving, taking or withholding of "money", "securities" or other property.

This exclusion applies only to the extent of the wrongful giving, taking or withholding.

(c) Bookkeeping, accounting or billing errors or omissions.

(d) Electrical or magnetic injury, disturbance or erasure of "electronic data" that is caused by or results from:

1) Programming errors or faulty machine instructions;

2) Faulty installation or maintenance of data processing equipment or component parts;

3) An occurrence that took place more than 100 feet from your "premises"; or

4) Interruption of electrical power supply, power surge, blackout or brownout if the cause of such occurrence took place more than 100 feet from your "premises".

But we will pay for direct "loss" caused by lightning.

(e) Voluntary parting with any property by you or anyone entrusted with the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

(f) A "loss" that requires any audit of records or any inventory computation to prove its factual existence.

(6) **Determination of Receivables:**

(a) If you cannot accurately establish the amount of accounts receivable outstanding as of the time of direct "loss", the following method will be used:

1) Determine the total of the average monthly amounts of accounts receivable for the 12 months immediately preceding the month in which the direct "loss" occurs; and

2) Adjust that total for any normal fluctuations in the amount of accounts receiv-

able for the month in which the direct "loss" occurred or for any demonstrated variance from the average for that month.

(b) The following will be deducted from the total amount of accounts receivable, however that amount is established:

1) The amount of the accounts for which there is no direct "loss"; and

2) The amount of the accounts that you are able to re-establish or collect; and

3) An amount to allow for probable bad debts that you are normally unable to collect; and

4) All unearned interest and service charges.

The most we will pay for "loss" in any one occurrence under this Coverage Extension is $25,000.

b. **Business Income and Extra Expense**

**SECTION C. DEDUCTIBLE** does not apply to this Coverage Extension.

**(1) Business Income**

We will pay for the actual loss of "Business Income" and "Rental Value" you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct "loss" to property at a "premises" caused by or resulting from any Covered Cause of Loss. With respect to "loss" to personal property in the open or personal property in a vehicle or portable storage unit, the "premises" include the area within 1,000 feet of the building or 1,000 feet of the "premises", whichever is greater.

With respect to the requirements of the preceding paragraph, if you are a tenant and occupy only part of the site at which the "premises" are located, for the purpose of this Coverage Extension only, your "premises" is the portion of the building that you rent, lease or occupy, including:

(a) Any area within the building or on the site at which the "premises" are located if that area ser-

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

vices or is used to gain access to the "premises"; and

**(b)** Your personal property in the open (or in a vehicle or portable storage unit) within 1,000 feet of the building or 1,000 feet of the "premises", whichever is greater.

**(2) Extra Expense**

**(a)** We will pay Extra Expense you sustain during the "period of restoration". Extra Expense means necessary expenses you sustain (as described in Paragraphs **(2)(b), (c)** and **(d)**) during the "period of restoration" that you would not have sustained if there had been no direct "loss" to property caused by or resulting from a Covered Cause of Loss.

**(b)** If these expenses reduce the otherwise payable "Business Income" "loss", we will pay expenses (other than the expense to repair or replace property as described in Paragraph **(2)(c)**) to:

**1)** Avoid or minimize the "suspension" of business and to continue "operations" either:

**a)** At the "premises"; or

**b)** At replacement "premises" or temporary locations, including relocation expenses and costs to equip and operate the replacement location or temporary location; or

**2)** Minimize the "suspension" of business if you cannot continue "operations".

**(c)** We will also pay expenses to:

**1)** Repair or replace property; or

**2)** Research, replace or restore the lost information on damaged "valuable papers and records";

but only to the extent this payment reduces the otherwise payable "Business Income" "loss". If any property obtained for temporary use during the "period of restoration" remains after the resumption of normal

"operations", the amount we will pay under this Coverage will be reduced by the salvage value of that property.

**(d)** Extra Expense does not apply to "loss" to Covered Property as described in the **BUILDING AND PERSONAL PROPERTY COVERAGE FORM**.

**(3) Civil Authority**

When a Covered Cause of Loss causes damage to property other than Covered Property at a "premises", we will pay for the actual loss of "Business Income" and necessary Extra Expense you sustain caused by action of civil authority that prohibits access to the "premises", provided that both of the following apply:

**(a)** Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage; and

**(b)** The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

This Civil Authority coverage for "Business Income" will begin immediately after the time of that action and will apply for a period of up to 30 days from the date of that action.

This Civil Authority coverage for Extra Expense will begin immediately after the time of that action and will end:

**1)** 30 consecutive days after the time of that action; or

**2)** When your "Business Income" coverage ends;

whichever is later.

**(4) Alterations and New Buildings**

We will pay for the actual loss of "Business Income" you sustain and Extra Expense you incur due to direct "loss" at the "premises" caused by or resulting from any Covered Cause of Loss to:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

(a) New buildings or structures, whether complete or under construction;

(b) Alterations or additions to existing buildings or structures; and

(c) Machinery, equipment, supplies or building materials located on or within 1,000 feet of the "premises" and:

   1) Used in the construction, alterations or additions; or

   2) Incidental to the occupancy of new buildings.

If such direct "loss" delays the start of "operations", the "period of restoration" for "Business Income" Coverage will begin on the date "operations" would have begun if the direct "loss" had not occurred.

**(5) Newly Purchased or Leased Locations**

We will pay the actual loss of "Business Income" you sustain and Extra Expense you incur due to direct "loss" to Covered Property at any location you purchase or lease caused by or resulting from a Covered Cause of Loss. This coverage for the Newly Purchased or Leased Locations will end when any of the following first occurs:

(a) This policy expires;

(b) You report values to us;

(c) 90 days pass from the date you acquire or begin to construct the Covered Property.

**(6) Extended Business Income**

(a) For "Business Income" Other Than "Rental Value", if the necessary "suspension" of your "operations" produces a "Business Income" or Extra Expense "loss" payable under this Coverage Part, we will pay for the actual loss of "Business Income" you sustain and Extra Expense you incur during the period that:

   1) Begins on the date property (except "finished stock") is actually repaired, rebuilt or replaced and "operations" are resumed; and

   2) Ends on the earlier of:

      a) The date you could restore your "operations", with reasonable speed, to the level which would generate the business income amount that would have existed if no direct "loss" had occurred; or

      b) 60 consecutive days after the date determined in **b.(6)(a)1** above.

However, Extended Business Income does not apply to loss of "Business Income" sustained or Extra Expense incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the "premises" are located.

Loss of "Business Income" must be caused by direct "loss" at the "premises" caused by or resulting from any Covered Cause of Loss.

(b) For "Rental Value", if the necessary "suspension" of your "operations" produces a "Rental Value" "loss" payable under this Coverage Part, we will pay for the actual loss of "Rental Value" you incur during the period that:

   1) Begins on the date property is actually repaired, rebuilt or replaced and tenantability is restored; and

   2) Ends on the earlier of:

      a) The date you could restore tenant occupancy, with reasonable speed, to the level which would generate the "Rental Value" that would have existed if no direct "loss" had occurred; or

      b) 60 consecutive days after the date determined in **b.(6)(b)1** above.

However, Extended Business Income does not apply to loss of "Rental Value" incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Loss in the area where the "premises" are located.

Loss of "Rental Value" must be caused by direct "loss" at the "premises" caused by or resulting from any Covered Cause of Loss.

**(7) Interruption of Computer Operations**

**(a)** Subject to all provisions of this Coverage Extension, you may extend the insurance that applies to "Business Income" and Extra Expense to apply to a "suspension" of "operations" caused by an interruption in computer operations due to destruction or corruption of "electronic data" as described in **SECTION A. COVERAGE, 5. Coverage Extensions, d. Electronic Data.**

**(b)** Paragraph **b.(7)(a)** does not apply to "loss" sustained or expense incurred after the end of the "period of restoration", even if the amount of insurance stated in Paragraph **b.(7)(c)** has not been exhausted.

**(c)** The most we will pay under Paragraph **b.(7)** of this Coverage Extension is $2,500 for all "loss" sustained and expense incurred in the "coverage term", regardless of the number of interruptions or the number of "premises" or computer systems involved. If loss payment relating to the first interruption does not exhaust this amount, then the balance is available for subsequent interruptions in that "coverage term". A balance remaining at the end of a "coverage term" does not carry over to the next "coverage term". With respect to an interruption that begins in a "coverage term" and continues or results in additional "loss" or expense in a subsequent "coverage term", all "loss" and expense is deemed to be sustained in the "coverage term" in which the interruption began.

This $2,500 coverage for Interruption of Computer Operations does not increase the Limit of Insurance provided in this Coverage Extension.

The most we will pay for "loss" in any one occurrence under this "Business Income" and Extra Expense Coverage Extension is $25,000.

**c. Collapse**

The coverage provided under this Coverage Extension applies only to an abrupt collapse as described and limited in Paragraphs **c.(1)** through **c.(7)** below.

**(1)** For the purpose of this Coverage Extension only, abrupt collapse means an abrupt falling down or caving in of a building or structure or any part of a building or structure with the result that the building or structure or part of the building or structure cannot be occupied for its intended purpose.

**(2)** We will pay for direct "loss" to Covered Property, caused by abrupt collapse of a building or structure or any part of a building or structure insured under this Coverage Part, or that contains Covered property insured under this Coverage Part, if such collapse is caused by one or more of the following:

**(a)** Building or structure decay that is hidden from view, unless the presence of such decay is known or should reasonably have been known to an insured prior to collapse;

**(b)** Insect or vermin damage that is hidden from view, unless the presence of such damage is known or should reasonably have been known to an insured prior to collapse;

**(c)** Use of defective material or methods in construction, remodeling, or renovation if the abrupt collapse occurs during the course of the construction, remodeling, or renovation.

**(d)** Use of defective materials or methods in construction, remodeling, or renovation if the abrupt collapse occurs after construction, remodeling, or renovation is complete but only if the collapse is caused in part by:

**1)** A cause of loss listed in Paragraph **c.(2)(a)** or **c.(2)(b)** of this Coverage Extension;

**2)** One or more of the "specified causes of loss";

3) Breakage of building glass;

4) Weight of people or personal property; or

5) Weight of rain that collects on a roof.

(3) This Coverage Extension does not apply to:

(a) A building or structure or any part of a building or structure that is in danger of falling down or caving in;

(b) A part of a building or structure that is standing, even if it has separated from another part of the building or structure; or

(c) A building or structure that is standing or any part of a building or structure that is standing, even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

(4) With respect to the following property:

(a) Outdoor radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers;

(b) Awnings, gutters and downspouts;

(c) Yard fixtures;

(d) Outdoor swimming pools;

(e) Fences;

(f) Piers, wharves and docks;

(g) Beach or diving platforms; including their appurtenances;

(h) Retaining walls; and

(i) Walks, roadways and other paved surfaces;

if an abrupt collapse is caused by a cause of loss listed in Paragraph c.(2)(a) through c.(2)(d), we will pay for "loss" to that property only if:

(a) Such "loss" is a direct result of the abrupt collapse of a building or structure insured under this Coverage Part; and

(b) The property is Covered Property under this Coverage Part.

(5) If personal property abruptly falls down or caves in and such collapse is **not** the result of abrupt collapse of a building or structure, we will pay for direct "loss" to Covered Property caused by such collapse of personal property only if:

(a) The collapse of personal property was caused by a Cause of Loss listed in c.(2)(a) through c.(2)(d) of this Coverage Extension;

(b) The personal property that collapses is inside a building; and

(c) The property that collapses is not of a kind listed in Paragraph c.(4) above of this Coverage Extension, regardless of whether that kind of property is considered to be personal property or real property.

The coverage stated in this Paragraph c.(5) does not apply to personal property if marring and/or scratching is the only damage to that personal property caused by the collapse.

(6) This Coverage Extension does not apply to personal property that has not abruptly fallen down or caved in, even if the personal property shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

(7) This Coverage Extension shall not increase the Limit of Insurance provided in this Coverage Part.

(8) The term Covered Cause of Loss includes Collapse as described and limited in Paragraphs c.(1) through c.(7).

d. **Electronic Data**

(1) This Coverage Extension does not apply to your "stock" of prepackaged software, or to "electronic data" which is integrated in and operates or controls the building's elevator, lighting, heating, ventilation, air conditioning or security system.

(2) We will pay for the cost to replace or restore "electronic data" which has been destroyed or corrupted by a Covered Cause of Loss that applies to **SECTION A. COVERAGE, 1. Covered Property, d. Business Personal Property**. To the extent that "electronic data" is not replaced or restored, the "loss" will be valued at the cost of replacement of the me-

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

FM 101 05 16

dia on which the "electronic data" was stored with blank media of substantially identical type.

(3) For the purposes of this Coverage Extension only, Covered Causes of Loss include a virus, harmful code or similar instruction introduced into or enacted on a computer system (including "electronic data") or a network to which it is connected, that is designed to damage or destroy any part of the system or disrupt its normal operation. However, there is no coverage for "loss" caused by or resulting from manipulation of a computer system (including "electronic data") by any employee, including a temporary or leased employee, or by an entity retained by you or for you to inspect, design, install, modify, maintain, repair or replace that system or "electronic data".

(4) The most we will pay for all direct "loss" under this Coverage Extension, regardless of the number of "premises" or computer systems involved, is $2,500. This limit is the most we will pay for the total of all direct "loss" arising out of all occurrences that take place in the "coverage term". If loss payment on the first occurrence does not exhaust this amount, then the balance is available for subsequent "loss" sustained in the "coverage term". A balance remaining in a "coverage term" does not carry over to the next "coverage term". With respect to an occurrence which begins in the "coverage term" and continues or results in additional "loss" in a subsequent "coverage term", all "loss" is deemed to be sustained in the "coverage term" in which the occurrence began.

e. **Exhibitions, Fairs or Trade Shows**

We will pay for direct "loss" caused by a Covered Cause of Loss to your Covered Property, including covered property of others, while it is located at exhibitions, fairs or trade shows. This Coverage Extension does not apply while Covered Property is in transit to or from the exhibition, fair or trade show.

The most we will pay for "loss" in any one occurrence is $10,000.

The Limit of Insurance provided under this Coverage Extension does not apply per location.

f. **Fences**

We will pay for direct "loss" caused by a Covered Cause of Loss to your outdoor fences that are located within 1,000 feet of the "premises" and not otherwise insured as Covered Property in this Coverage Part.

The most we will pay for "loss" in any one occurrence under this Coverage Extension is $5,000.

g. **Fungi, Wet Rot, Dry Rot, and Bacteria - Limited Coverage**

(1) The coverage described in Paragraphs **g.(2)** and **g.(3)** of this Coverage Extension only apply when the "fungi", wet or dry rot or bacteria is the result of a Covered Cause of Loss that occurs during the "coverage term" and only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence.

(2) We will pay for "loss" by "fungi", wet or dry rot or bacteria. As used in this Coverage Extension, the term "loss" means:

(a) Direct "loss" to Covered Property caused by "fungi", wet or dry rot or bacteria, including the cost of removal of the "fungi", wet or dry rot or bacteria;

(b) The cost to tear out and replace any part of the building or other property as needed to gain access to the "fungi", wet or dry rot or bacteria; and

(c) The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is a reason to believe that "fungi", wet or dry rot or bacteria are present.

(3) For the coverage described under Paragraph **g.(2)** of this Coverage Extension, the most we will pay for "loss", regardless of the number of claims, is $15,000. This limit is the most we will pay for the total of all "loss" arising out of all occurrences that take place in the "coverage term". With respect to a particular occurrence of "loss" which results in "fungi", wet or dry rot or bacteria, we will not pay more than a total of $15,000 even if the "fungi", wet or dry rot or bacteria continues to be pre-

sent or active, or recurs, in a subsequent "coverage term".

(4) The coverage provided under this Coverage Extension does not increase the applicable Limit of Insurance on any Covered Property. If a particular occurrence results in "loss" by "fungi", wet or dry rot or bacteria, and other "loss", we will not pay more, for the total of all "loss" than the applicable Limit of Insurance on the affected Covered Property.

If there is covered "loss" to Covered Property, not caused by "fungi", wet or dry rot or bacteria, loss payment will not be limited by the terms of this Coverage Extension, except to the extent that "fungi", wet or dry rot or bacteria causes an increase in the "loss". Any such increase in the "loss" will be subject to the terms of this Coverage Extension.

(5) The terms of this Coverage Extension do not increase or reduce the coverage provided under:

(a) **SECTION A. COVERAGE, 5. Coverage Extensions, c. Collapse;**

(b) **SECTION A. COVERAGE, 5. Coverage Extensions, s. Water, Other Liquids, Powder or Molten Material Damage**

(6) The following (6)(a) or (6)(b) apply only if "Business Income", "Rental Value", or Extra Expense Coverage applies to the "premises" and only if the "suspension" of "operations" satisfies all terms and conditions of the applicable "Business Income", "Rental Value", or Extra Expense Coverage.

(a) If the "loss" which resulted in "fungi", wet or dry rot or bacteria does not in itself necessitate a "suspension" of "operations", but such "suspension" is necessary due to "loss" to property caused by "fungi", wet or dry rot or bacteria, then our payment under "Business Income" and/or Extra Expense is limited to the amount of "loss" and/or expense sustained in a period of not more than 30 days. The days need not be consecutive.

(b) If a covered "suspension" of "operations" was caused by "loss" other than "fungi", wet or dry rot or bacteria but remedia-

tion of "fungi", wet or dry rot or bacteria prolongs the "period of restoration", we will pay for "loss" and/or expense sustained during the delay (regardless of when such a delay occurs during the "period of restoration"), but such coverage is limited to 30 days. The days need not be consecutive.

(7) This Coverage Extension does not apply to lawns, trees, plants or shrubs that are part of any vegetative roof.

h. **Glass**

(1) If a Covered Cause of Loss occurs to building glass that is Covered Property, we will also pay necessary expenses you incur to:

(a) Put up temporary plates or board up openings if repair or replacement of damaged glass is delayed;

(b) Repair or replace encasing frames;

(c) Remove or replace obstructions (except expenses to remove or replace window displays); and

(d) Repair or replace alarm tapes.

(2) If you are a tenant at a covered "premises" and:

(a) The building you occupy is not Covered Property; and

(b) You are legally liable for direct "loss" to the building glass in that building;

such building glass, for the purposes of this Paragraph h.(2), is Covered Property. The most we will pay for "loss" in any one occurrence is $5,000. This building glass is subject to the building deductible as described in **SECTION C. DEDUCTIBLE.**

(3) For the purposes of this Coverage Extension only, **SECTION A. COVERAGE, 3. Covered Causes of Loss, b. Exclusions** does not apply except as follows:

(a) **Exclusion (1)(b) Earth Movement;**

(b) **Exclusion (1)(c) Governmental Action;**

(c) Exclusion (1)(d) Nuclear Hazard;

(d) Exclusion (1)(f) War and Military Action;

(e) Exclusion (2)(d)1) Wear and tear; and

(f) As listed in Exclusion (2)(d)2): Rust or other corrosion, hidden or latent defect or any quality in property that causes it to damage or destroy itself.

i. **Newly Purchased, Leased or Constructed Property**

   (1) **Buildings**

   If buildings are Covered Property in this Coverage Part, we will pay for direct "loss" caused by a Covered Cause of Loss to:

   (a) Your new buildings or additions while being built on the "premises";

   (b) Buildings you newly purchase or become newly required to insure by written contract that are:

      1) Intended for use by you as a warehouse; or

      2) Similarly used by you as buildings insured under this Coverage Part.

   The most we will pay for "loss" in any one occurrence to a building under this Coverage Extension is 1,000,000 for each building.

   (2) **Business Personal Property**

   (a) If business personal property is Covered Property in this Coverage Part, we will pay for direct "loss" caused by a Covered Cause of Loss to business personal property you newly purchase or are required to insure by written contract:

      1) While located at buildings described in Paragraph a.(1) of this Coverage Extension; or

      2) While located in a leased building or space therein that you are not required to insure. Such lease must be for a period of 12 consecutive months or longer.

(b) Paragraph a.(2)(a) of this Coverage Extension does not apply to:

   1) Any business personal property covered under **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions, e. Exhibitions, Fairs, or Trade Shows** or **m. Property Off Premises;**

   2) Any business personal property that is covered under **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions, p. Transportation** or is otherwise considered to be in-transit to or from a "premises".

   3) Business personal property of others that is temporarily in your possession in the course of installing or performing work on such property, or temporarily in your possession in the course of your manufacturing or wholesaling activities.

The most we will pay for "loss" in any one occurrence to your Business Personal Property under this Coverage Extension is $500,000 at each building.

(3) **Period of Coverage**

Coverage provided under this Coverage Extension will end when any of the following first occurs:

   (a) This policy expires,

   (b) For buildings described in Paragraph (1)(a) of this Coverage Extension, 90 days pass from the date you begin construction on that part of the building that would qualify as Covered Property;

   (c) For business property described in Paragraph (1)(b) and Paragraph (2)(a)1), 90 days after your purchase or lease;

   (d) For business personal property described in Paragraph (2)(a)2), 90 days from the effective date

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

of the lease of the building space in the building; or

**(e)** You report values to us.

We will charge you additional premium for values reported from the date you lease or purchase the property, or begin construction on that part of the building that would qualify as Covered Property.

**j. Nonowned Building Damage**

If you are a tenant at a covered "premises" and:

**(1)** The building you occupy is not Covered Property; and

**(2)** You are legally liable for direct "loss" to that building;

We will pay for direct "loss" to that building caused by burglary, robbery, theft or attempted theft.

This Coverage Extension does not apply to:

**(1)** Glass, including lettering and ornamentation, and also necessary:

**(a)** Repair or replacement of encasing frames or alarm tapes; and

**(b)** .Expenses incurred to board up openings or remove or replace obstruction.

**(2)** Building materials and equipment removed from the "premises".

This Coverage Extension does not apply if you have purchased other insurance in your name on the building you occupy as required by the lease.

The most we will pay for "loss" in any one occurrence under this Coverage Extension is $25,000.

**k. Outdoor Property**

We will pay for direct "loss" caused by a Covered Cause of Loss to the following types of your Covered Property:

**(1)** Radio antennas, television antennas or satellite dishes (including their lead-in wiring, masts and towers);

**(2)** Trees, shrubs or plants (other than trees, shrubs or plants which are "stock" or part of a vegetative roof), including debris removal ; and

**(3)** If you are a tenant, to your awnings that are attached to a building you occupy;

but only if caused by or resulting from any of the following causes of loss if they are included as Covered Causes of Loss under this Coverage Part:

**(1)** Fire;

**(2)** Lightning;

**(3)** Explosion;

**(4)** Riot or Civil Commotion;

**(5)** Aircraft; or

**(6)** Falling objects.

We will pay for the debris removal expenses of the above type property that are not your Covered Property if such debris is on your "premises" due to the Covered Causes of Loss described in this Coverage Extension. If you are a tenant, we do not pay debris removal expenses for trees, plants or shrubs owned by the landlord or owner of the building you occupy.

No other coverage for debris removal expenses provided in this Coverage Part applies to this Outdoor Property Coverage Extension.

The most we will pay for "loss" in any one occurrence under this Coverage Extension is $5,000, but not more than $1,000 for any one tree, shrub or plant.

**l. Personal Effects**

If business personal property is Covered Property in this Coverage Part, we will pay for direct "loss" caused by a Covered Cause of Loss to personal effects owned by:

**(1)** You, your officers, or your partners, or if you are a limited liability company, your members or your managers; or

**(2)** Your employees (including temporary and leased employees), including tools owned by your employees that are used in your business. However, employee tools are not covered for theft.

This Coverage Extension does not apply to "money" or "securities".

If theft is included as a Covered Cause of Loss under this Coverage Part, then this Coverage Extension has a $500 per occurrence limitation for direct "loss" by theft.

The most we will pay for "loss" in any one occurrence under this Coverage Extension is $10,000.

m. **Property Off Premises**

(1) We will pay for direct "loss" caused by a Covered Cause of Loss to your Covered Property, including covered personal property of others, while it is away from the "premises", if it is:

   (a) Temporarily at a location you do not own, lease or operate; or

   (b) In storage at a location you lease, provided the lease was executed for the first time after the beginning of the current "coverage term".

(2) This Coverage Extension does not apply to Covered Property at exhibitions, fairs, trade show, or in transit.

The most we will pay for "loss" in any one occurrence under this Coverage Extension is $10,000.

The Limit of Insurance provided by this Coverage Extension does not apply per location.

n. **Signs**

We will pay for direct "loss" caused by a Covered Cause of Loss, including debris removal expense, to signs not otherwise insured by this Coverage Part.

The most we will pay for "loss" in any one occurrence under this Coverage Extension is $5,000.

The Limit of Insurance provided by this Coverage Extension does not apply per location.

o. **Trailers (Nonowned Detached)**

(1) If business personal property is Covered Property in this Coverage Part, we will pay for direct "loss" caused by a Covered Cause of Loss to trailers that you do not own, provided that:

   (a) The trailer is used in your business;

   (b) The trailer is temporarily in your care, custody or control at the "premises"; and

   (c) You have a contractual responsibility to pay for "loss" to the trailer.

(2) We will not pay for any direct "loss" that occurs:

   (a) While the trailer is attached to any motor vehicle or motorized conveyance, whether or not the motor vehicle or motorized conveyance is in motion;

   (b) During hitching or unhitching operations, or when a trailer becomes accidentally unhitched from a motor vehicle or motorized conveyance.

(3) This insurance is excess over the amount due, whether you can collect on it or not, from any other insurance covering such property.

(4) This Coverage Extension does not apply to any property inside or on the trailer.

The most we will pay for "loss" in any one occurrence under this Coverage Extension is $5,000.

p. **Transportation**

We will pay for direct "loss" caused by a Covered Cause of Loss to your Covered Property, including covered personal property of others while it is in or on a vehicle, including loading and unloading of the property.

The most we will pay for "loss" in any one occurrence is $10,000.

The Limit of Insurance provided by this Coverage Extension does not apply per location.

q. **Utility Services**

We will pay for:

(1) Direct "loss" to Covered Property at your "premises" except for direct "loss" resulting from the partial or complete failure of Wastewater Removal Services; and

(2) Loss of "Business Income" you sustain and Extra Expenses you incur as provided in **SECTION A. COVERAGE, 5. Coverage Extensions, b. Business Income and Extra Expense;**

caused by or resulting from the partial or complete failure of utility services to the "premises".

The partial or complete failure of the utility services listed below must be caused by direct "loss" caused by a Covered Cause of Loss to the following property:

(1) Power Supply Property, meaning the following types of property supplying

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

FM 101 05 16

electricity, steam or natural gas to the "premises":

   **(a)** Utility generating plants;

   **(b)** Switching stations;

   **(c)** Substations;

   **(d)** Transformers; and

   **(e)** Transmission, distribution, service, or similar lines, excluding all such overhead lines of any type.

**(2)** Water Supply Property, meaning the following types of property supplying water to the "premises":

   **(a)** Pumping stations; and

   **(b)** Water mains.

**(3)** Wastewater Removal Property, meaning a utility system for removing wastewater and sewage from the "premises", other than a system designed primarily for draining storm water. The utility property includes sewer mains, pumping stations and similar equipment for moving the effluent to a holding, treatment or disposal facility, and includes such facilities. Coverage under this Coverage Extension does not apply to interruption in service caused by or resulting from a discharge of water or sewage due to heavy rainfall or flooding.

**(4)** Communication Supply Property, meaning property supplying communication services, including service relating to Internet access or access to any electronic, cellular or satellite network; telephone, radio, microwave or television services to the "premises", such as:

   **(a)** Communication transmission, distribution, service or similar lines, including fiber optic lines, excluding all such overhead lines of any type;

   **(b)** Coaxial cables; and

   **(c)** Microwave radio relays, excluding satellites.

This Coverage Extension does not apply to "loss" to "electronic data", including destruction or corruption of "electronic data".

The most we will pay for all direct "loss" and loss of "Business Income" and Extra Expense in any one occurrence is $25,000.

**r.** **Valuable Papers and Records**

**SECTION C. DEDUCTIBLE** does not apply to this Coverage Extension.

**(1)** Subject to Paragraph **r.(3)** of this Coverage Extension, we will pay necessary costs you incur to research, replace or restore lost or damaged information on "valuable papers and records" that are your property or the property of others in your care, custody or control; resulting from direct "loss" caused by a Covered Cause of Loss.

**(2)** Coverage does not apply to:

   **(a)** Property that cannot be replaced with other property of like kind and quality;

   **(b)** Property held as samples or for delivery after sale;

   **(c)** Property in storage away from the "premises", except as provided in Paragraph **r.(4)(b)** of this Coverage Extension;

   **(d)** Contraband, or property in the course of illegal transportation or trade;

   **(e)** "Valuable papers and records" in the form of "electronic data", including the materials on which the "electronic data" is recorded.

**(3)** The most we will pay for "loss" is the least of the following amounts:

   **(a)** The cost of reasonably restoring the damaged property to its condition immediately before the "loss";

   **(b)** The cost of replacing the damaged property with substantially identical property; or

   **(c)** The actual cash value of the damaged property at the time of "loss".

However, we will not pay for "loss" unless or until the damaged property is actually replaced or restored; and then only if such replacement or restoration occurs within 36 months from the date of direct "loss".

**(4)** We will extend coverage to include:

   **(a)** **Removal**

      If you give us written notice within 30 days of removal of your "valuable papers and records"

because of imminent danger of direct "loss" from a Covered Cause of Loss, we will pay for direct "loss" while they are:

1) At a safe place away from your "premises"; or

2) Being taken to and returned from that place.

This Removal coverage is included within the Limits of Insurance applicable to this Coverage Extension.

**(b) Away From Your Premises**

We will pay up to $5,000 in any one occurrence, regardless of the number of locations, for direct "loss" caused by a Covered Cause of Loss to "valuable papers and records" while they are away from your "premises".

This Away From Premises limit is in addition to the Limit of Insurance applicable to this Coverage Extension.

**(5) SECTION A. COVERAGE, 3. Covered Causes of Loss, b. Exclusions** does not apply to this Coverage Extension except as follows:

**(a) Exclusion (1)(c) Governmental Action;**

**(b) Exclusion (1)(d) Nuclear Hazard; and**

**(c) Exclusion (1)(f) War and Military Action.**

**(6)** In addition to Paragraph **r.(5)** of this Coverage Extension, we will not pay for direct "loss" resulting from any of the following:

**(a)** Dishonest or criminal acts by:

1) You, your partners, employees, directors, trustees or authorized representatives;

2) A manager or a member if you are a limited liability company;

3) Anyone else with an interest in the records of accounts receivable, or their employees or authorized representatives; or

4) Anyone else entrusted with the records of accounts receivable for any purpose.

This Paragraph **r.(6)(a)** applies whether or not such persons are acting alone or in collusion with other persons or such act occurs during the hours of employment.

However, this Paragraph **r.(6)(a)** does not apply to dishonest acts of a carrier for hire or to acts of destruction by your employees. However, theft by employees is still not covered.

**(b)** Errors or omissions in processing or copying. However, we will pay for that portion of direct "loss" caused by resulting fire or explosion if these causes of loss would be covered by this Coverage Part.

**(c)** Electrical or magnetic injury, disturbance or erasure of electronic recordings. But we will pay for direct "loss" caused by lightning.

**(d)** Voluntary parting with any property by you or anyone entrusted with the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

The most we will pay for "loss" in any one occurrence is $25,000.

**s. Water Damage, Other Liquids, Powder or Molten Material Damage**

If a covered direct "loss" to which this insurance applies was caused by or resulted from water or other liquid, powder or molten material damage, we will also pay the cost to tear out and replace any otherwise undamaged part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes.

**SECTION B. LIMITS OF INSURANCE**

The most we will pay for "loss" in any one occurrence is the applicable Limit of Insurance shown in the Declarations, except as amended in **SECTION A. COVERAGE, 3. Covered Causes of Loss, c. Limitations, 4. Additional Coverages**, and **5. Coverage Extensions.**

**SECTION C. DEDUCTIBLE**

Except as otherwise provided; in any one occurrence of direct "loss" we will first reduce the amount of "loss" if required by **SECTION E. ADDITIONAL CONDITIONS, 1. Coinsurance** or **SECTION F. OPTIONAL COVERAGES, 1. Agreed Value.** If the adjusted amount of direct "loss" is less than or equal to the Deductible, we will not pay for that direct "loss". If the adjusted amount of direct "loss" exceeds the Deductible, we will then

subtract the Deductible from the adjusted amount of direct "loss", and will pay the resulting amount or the Limit of Insurance, whichever is less.

When the occurrence involves direct "loss" to more than one item of Covered Property and separate Limits of Insurance apply, the losses will not be combined in determining application of the Deductible. But the Deductible will be applied only once per occurrence.

1.  **Deductible Examples**

    **Example No. 1:**

    (This example assumes there is no coinsurance penalty as outlined in **SECTION E. ADDITIONAL CONDITIONS, 1. Coinsurance**).

    | | |
    |---|---|
    | Deductible: | $250 |
    | Limit of Insurance - Bldg. 1: | $60,000 |
    | Limit of Insurance - Bldg. 2: | $80,000 |
    | "Loss" to Bldg. 1: | $60,100 |
    | "Loss" to Bldg. 2: | $90,000 |

    The amount of "loss" to Bldg. 1 ($60,100) is less than the sum ($60,250) of the Limit of Insurance applicable to Bldg. 1 plus the Deductible.

    The Deductible will be subtracted from the amount of "loss" in calculating the "loss" payable for Bldg. 1:

    $60,100 - $250 = $59,850 "Loss" Payable - Bldg. 1

    The Deductible applies once per occurrence and therefore is not subtracted in determining the amount of "loss" payable for Bldg. 2. "Loss" payable for Bldg. 2 is the Limit of Insurance of $80,000.

    Total amount of "loss" payable: $59,850 + 80,000 = $139,850.

    **Example No. 2:**

    (This example also assumes there is no coinsurance penalty).

    The Deductible and Limits of Insurance are the same as those in Example No. 1:

    "Loss" to Bldg. 1: $70,000 (Exceeds Limit of Insurance plus Deductible)

    "Loss" to Bldg. 2: $90,000 (Exceeds Limit of Insurance plus Deductible)

    "Loss" Payable - Bldg. 1: $60,000 (Limit of Insurance)

    "Loss" Payable - Bldg. 2: $80,000 (Limit of Insurance)

    Total amount of "loss" payable: $140,000.

2.  **Glass Deductible**

    When direct "loss" to the building you occupy only involves building glass, the Deductible for that "loss" will be the lesser of:

    a.  $500; or

    b.  The Deductible shown in the Declarations for that Covered Property.

## SECTION D. LOSS CONDITIONS

The following conditions apply in addition to the **COMMON POLICY CONDITIONS** and the **COMMERCIAL PROPERTY CONDITIONS.**

1.  **Abandonment**

    There can be no abandonment of any property to us.

2.  **Appraisal**

    If we and you disagree on the value of the property, the amount of Net Income and operating expense, or the amount of "loss", either may make written demand for an appraisal of the "loss". In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property, the amount of Net Income and operating expense, and amount of "loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

    a.  Pay its chosen appraiser; and

    b.  Bear the other expenses of the appraisal and umpire equally.

    If there is an appraisal, we still retain our right to deny the claim.

3.  **Duties in the Event of Loss or Damage**

    a.  In the event of "loss" to Covered Property, you must see that the following are done in order for coverage to apply:

        (1) Notify the police if a law may have been broken.

        (2) Give us prompt notice of the "loss". Include a description of the property involved.

        (3) As soon as possible, give us a description of how, when and where the "loss" occurred.

        (4) Take all reasonable steps to protect the Covered Property from further damage. If feasible, set the damaged property aside and in the best possible order for examination. Keep a

FM 101 05 16

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Page 30 of 40

record of your expenses necessary to protect the Covered Property for consideration in the settlement of the claim. This will not increase your limit of insurance. However, in no event will we pay for any subsequent "loss" resulting from a cause of loss that is not a Covered Cause of Loss.

(5) At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of "loss" claimed.

(6) As often as may be reasonably required, permit us to inspect the property proving the "loss" and examine your books and records.

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis and permit us to make copies from your books and records.

(7) Submit a signed sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

(8) Cooperate with us in the investigation or settlement of the claim.

(9) If you intend to continue your business, you must resume all or part of your "operations" as quickly as possible.

b. We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

4. **Loss Payment**

a. In the event of "loss" insured by this Coverage Part, at our option, we will either:

(1) Pay the value of lost or damaged property;

(2) Pay the cost of repairing or replacing the lost or damaged property;

(3) Take all or any part of the property at an agreed or appraised value; or

(4) Repair, rebuild or replace the property with other property of like kind and quality.

We will determine the value of lost or damaged property, or the cost of its repair or replacement, in accordance with the applicable terms of **SECTION D. LOSS CONDITIONS, 7. Valuation** or any applicable provision that amends or supercedes this valuation condition.

b. The cost of repair or replacement does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property, except as provided in **SECTION A. COVERAGE, 4. Additional Coverages, g. Ordinance or Law.**

c. We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

d. We will not pay you more than your financial interest in the Covered Property.

e. We may adjust "losses" with the owners of lost or damaged property, if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.

f. Our payment for "loss" to personal property of others and personal effects will only be for the account of the owner of the property.

g. We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

h. We will pay for insured "loss" within 30 days after we receive the sworn proof of loss if you have complied with all of the terms of this Coverage Part; and

(1) We have reached agreement with you on the amount of "loss"; or

(2) An appraisal award has been made.

i. **Loss Payment - Ordinance or Law.**

With respect to **SECTION A. COVERAGE, 4. Additional Coverages, g. Ordinance or Law:**

(1) **Loss of Use of Undamaged Parts of Building**

When there is a loss in value of an undamaged portion of a building or structure to which this coverage applies, the loss payment for that building, including damaged and undamaged portions, will be determined as follows:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

(a) If **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION F. OPTIONAL COVERAGES, 3. Replacement Cost** applies and the property is repaired or replaced, on the same "premises" or another "premises"; we will not pay more than the lesser of:

   1) The amount you actually spend to repair, rebuild or reconstruct the building, but not for more than the amount it would cost to re-store the building on the same "premises" and to the same height, floor area, style and comparable quali-ty of the original property in-sured; or

   2) The limit of insurance indi-cated in **SECTION A. COVERAGE, 4. Additional Coverages g. Ordinance or Law** for **Loss of Use of Undamaged Parts of Building** for the building that has suffered "loss".

(b) If **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION F. OPTIONAL COVERAGES, 3. Replacement Cost** applies and the property is not repaired or replaced, or if the Replacement Cost Coverage Option does not apply, we will not pay more than the lesser of:

   1) The "actual cash value" of the building at the time of "loss"; or

   2) The limit of insurance indi-cated in **SECTION A. COVERAGE, 4. Additional Coverages, g. Ordinance or Law** for **Loss of Use of Undamaged Parts of Building** for the building that has suffered "loss".

**(2) Demolition Costs**

Loss payment for Demolition Costs will be determined as follows:

We will not pay more than the lesser of the following:

**(a)** The amount you actually spend to demolish and clear the site of the "premises"; or

**(b)** The limit of insurance indicated in **SECTION A. COVERAGE, 4. Additional Coverages, g. Ordinance or Law** for **Demolition Costs** for the building that has suffered "loss".

**(3) Increased Costs of Construction**

Loss payment for **Increased Costs of Construction** will be determined as follows:

**(a)** We will not pay for the increased cost of construction until the property is actually repaired or replaced, at the same "premis-es" or another location and un-less the repairs or replacement are made as soon as reasonably possible after the direct "loss", not to exceed two years. We may extend this period in writing during the two years.

**(b)** If the building is repaired or re-placed at the same "premises", or if you elect to rebuild at an-other "premises", the most we will pay for the **Increased cost of construction** is the lesser of:

   1) The increased cost of con-struction at the same "prem-ises"; or

   2) The limit of insurance indi-cated in **SECTION A. COVERAGE, 4. Additional Coverages, g. Ordinance or Law** for **Increased Costs of Construction** for the building that has suf-fered "loss".

**(c)** If the ordinance or law requires relocation to another location the most we will pay for the in-creased cost of construction is the lesser of:

   1) The increased cost of con-struction at the new loca-tion; or

   2) The limit of insurance indi-cated in **SECTION A. COVERAGE, 4. Additional Coverages, g. Ordinance or Law** for **Increased Costs of Construction** for the building that has suf-fered "loss".

**(4) Proportional Payments**

If the building or structure sustains both direct "loss" that is covered un-

der this Coverage Part and direct "loss" that is not covered under this Coverage Part; and as a result of the direct "loss" in its entirety you are required to comply with the ordinance or law, we will not pay the full amount of direct "loss" otherwise payable under the terms of **SECTION A. COVERAGE, 4. Additional Coverages, g. Ordinance or Law.** Instead, we will pay a proportion of such direct "loss"; meaning the proportion that the covered direct "loss" bears to the total direct "loss".

**j.   Loss Determination - Business Income and Extra Expense**

With respect to **SECTION A. COVERAGE, 5. Coverage Extensions, b. Business Income and Extra Expense,**

**(1)** The amount of "Business Income" and "Rental Value" "loss" will be determined based on:

**(a)** The Net Income of the business before the direct "loss" occurred;

**(b)** The likely Net Income of the business if no direct "loss" had occurred, but not including any Net Income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses;

**(c)** The operating expenses, including payroll expenses, necessary to resume "operations" with the same quality of service that existed just before the direct "loss"; and

**(d)** Other relevant sources of information, including;

**1)** Your financial records and accounting procedures;

**2)** Bills, invoices and other vouchers; and

**3)** Deeds, liens or contracts.

**(2)** The amount of Extra Expense will be determined based on:

**(a)** All expenses that exceed the normal operating expenses that would have been incurred by "operations" during the "period of restoration" if no direct "loss"

had occurred. We will deduct from the total of such expenses:

**1)** The salvage value that remains of any property bought for temporary use during the "period of restoration", once "operations" are resumed; and

**2)** Any Extra Expense that is paid for by other insurance, except for insurance that is written subject to the same plan, terms, conditions and provisions as this insurance; and

**(b)** Necessary expenses that reduce the "Business Income" and "Rental Value" "loss" that otherwise would have been incurred.

**(3) Resumption of Operations**

We will reduce the amount of your:

**(a)** "Business Income" and "Rental Value" "loss", other than Extra Expense, to the extent you can resume your "operations", in whole or in part, by using damaged or undamaged property (including merchandise or "stock") at the "premises" or elsewhere.

**(b)** Extra Expense "loss" to the extent you can return "operations" to normal and discontinue such Extra Expense.

**(4)** If you do not resume "operations", or do not resume "operations" as quickly as possible, we will pay based on the length of time it would have taken to resume "operations" as quickly as possible.

**k.   Party Walls**

A party wall is a wall that separates and is common to adjoining buildings that are owned by different parties. In settling covered losses involving a party wall, we will pay a proportion of the "loss" to the party wall based on your interest in the wall in proportion to the interest of the owner of the adjoining building. However, if you elect to repair or replace your building and the owner of the adjoining building elects not to repair or replace that building, we will pay you the full value of the "loss" to the party wall, subject to all applicable policy provisions all other provisions of this **SECTION D. LOSS CONDITIONS, 4. Loss Payment** including:

**(1)** Limit of Insurance shown in the Declarations;

**(2) SECTION D. LOSS CONDITIONS, 7. Valuation;** and

**(3) SECTION E. ADDITIONAL CONDITIONS, 1. Coinsurance.**

Our payment under the provisions of this paragraph does not alter any right of subrogation we may have against any entity, including the owner or insurer of the adjoining building, and does not alter the terms of **COMMERCIAL PROPERTY CONDITIONS, I. Transfer Of Rights Of Recovery Against Others To Us** in this Coverage Part.

**5. Recovered Property**

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, the property will be returned to you. You must then return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limit of Insurance.

**6. Vacancy**

**a. Description of Terms**

**(1)** As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in **(1)(a)** and **(1)(b)** below:

**(a)** When this Coverage Part is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations.

**(b)** When this Coverage Part is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:

**1)** Rented to a lessee or sublessee and used by them to conduct their customary operations; or

**2)** Used by the building owner to conduct customary operations.

**(2)** Buildings under construction or renovation are not considered vacant.

**b. Vacancy Provisions**

If the building where direct "loss" occurs has been vacant for more than 60 consecutive days before that "loss", we will:

**(1)** Not pay for any "loss" caused by any of the following, even if they are Covered Causes of Loss:

**(a)** Vandalism;

**(b)** Sprinkler leakage, unless you have protected the system against freezing;

**(c)** Building glass breakage;

**(d)** Water damage;

**(e)** Theft; or

**(f)** Attempted theft.

**(2)** Reduce the amount we would otherwise pay for the "loss" by 15% with respect to Covered Causes of Loss other than those listed in **b.(1)(a)** through **b.(1)(f)** of this Loss Condition.

**7. Valuation**

We will determine the value of Covered Property in the event of direct "loss" as follows:

**a.** At "Actual Cash Value" as of the time of direct "loss", except as provided in **b.**, **c.**, **d.**, and **e.** below.

**b.** If the Limit of Insurance for Building satisfies **SECTION E. ADDITIONAL CONDITIONS, 1. Coinsurance**, and the cost to repair or replace the damaged building property is $2,500 or less, we will pay the cost of building repairs or replacement.

The cost of building repairs or replacement does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property. However, the following property will be valued at actual cash value even when attached to the building:

**(1)** Awnings or floor coverings;

**(2)** Appliances for refrigerating, ventilating, cooking, dishwashing or laundering; or

**(3)** Outdoor equipment or furniture.

**c.** "Stock" you have sold but not delivered at the selling price less discounts and expenses you otherwise would have had.

**d.** Glass at the cost of replacement with safety glazing material if required by law.

**e.** Tenant's Improvements and Betterments at:

**(1)** Replacement Cost of the lost or damaged property if you make repairs promptly.

**(2)** A proportion of your original cost if you do not make repairs promptly. We will determine the proportionate value as follows:

**(a)** Multiply the original cost by the number of days from the "loss" or damage to the expiration of the lease; and

**(b)** Divide the amount determined in **(a)** above by the number of days from the installation of improvements to the expiration of the lease.

If your lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure.

**(3)** Nothing if others pay for repairs or replacement.

**(4)** For the purposes of valuation, tenants' improvements and betterments are not considered to be the personal property of others.

## SECTION E. ADDITIONAL CONDITIONS

The following conditions apply in addition to the **COMMON POLICY CONDITIONS** and the **COMMERCIAL PROPERTY CONDITIONS.**

**1. Coinsurance**

If a Coinsurance percentage is shown in the Declarations, the following condition applies.

**a.** We will not pay the full amount of any "loss" if the value of Covered Property at the time of direct "loss" times the Coinsurance percentage shown for it in the Declarations is greater than the Limit of Insurance for the property.

Instead, we will determine the most we will pay using the following steps:

**(1)** Multiply the value of Covered Property at the time of direct "loss" by the Coinsurance percentage;

**(2)** Divide the Limit of Insurance of the property by the figure determined in step **(1)**;

**(3)** Multiply to the total amount of "loss", before the application of any deductible, by the figure determined in step **(2)**; and

**(4)** Subtract the deductible from the figure determined in step **(3)**.

We will pay the amount determined in step **(4)** or the Limit of Insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the "loss" yourself.

**Example No. 1 (Underinsurance):**

| | |
|---|---|
| The value of the property is: | $250,000 |
| The coinsurance percentage is: | 80% |
| The Limit of Insurance is: | $100,000 |
| The Deductible is: | $250 |
| The amount of "loss" is: | $40,000 |

Step (1):

$250,000 X 80% = $200,000 (the minimum amount of insurance to meet your Coinsurance requirements)

Step (2):

$100,000 divided by $200,000 = .50

Step (3):

$40,000 X .50 = $20,000

Step (4):

$20,000 - $250 = $19,750.

We will pay no more than $19,750. The remaining $20,250 is not covered.

**Example No. 2 (Adequate Insurance):**

| | |
|---|---|
| The value of the property is: | $250,000 |
| The coinsurance percentage is: | 80% |
| The Limit of Insurance is: | $200,000 |
| The Deductible is: | $250 |
| The amount of "loss" is: | $40,000 |

Step (1):

$250,000 X 80% = $200,000 (the minimum amount of insurance to meet your Coinsurance requirements)

Step (2):

$200,000 : $200,000 = 1.00

Step (3):

$40,000 X 1.00 = $40,000

Step (4):

$40,000 - $250 = $39,750.

We will pay no more than $39,750 "loss" in excess of the Deductible. No penalty applies.

**b.** If one Limit of Insurance applies to two or more separate items, this condition will apply to the total of all property to which the limit applies.

### Example No. 3:

The values of the property are:

| | |
|---|---|
| Bldg. at Location No. 1: | $75,000 |
| Bldg. at Location No. 2: | $100,000 |
| Personal Property at Location No. 2: | $75,000 |
| | 250,000 |

| | |
|---|---|
| The coinsurance percentage is: | 90% |

The Limit of Insurance for Buildings and Personal Property at Location

| | |
|---|---|
| Nos. 1 and 2 is: | $180,000 |
| The Deductible is: | $1,000 |

The amount of "loss" is:

| | |
|---|---|
| Bldg. at Location No. 2: | $30,000 |
| Personal Property at Location No. 2: | $20,000 |
| | $50,000 |

Step (1):

$250,000 X 90% = $225,000 (the minimum amount of insurance to meet your Coinsurance requirements and to avoid the penalty shown below)

Step (2):
$180,000 : $225,000 = .80

Step (3):
$50,000 X .80 = $40,000

Step (4):

$40,000 - $1,000 = $39,000.

We will pay no more than $39,000. The remaining $11,000 is not covered.

**2. Mortgage Holders**

**a.** The term "mortgage holder" includes trustee.

**b.** We will pay for covered "loss" to buildings or structures to each mortgage holder shown in the Declarations in their order of precedence, as interests may appear.

**c.** The mortgage holder has the right to receive loss payment even if the mortgage holder has started foreclosure or similar action on the building or structure.

**d.** If we deny your claim because of your acts or because you have failed to comply with the terms of this Coverage Part, the mortgage holder will still have the right to receive loss payment if the mortgage holder:

**(1)** Pays any premium due under this Coverage Part at our request if you have failed to do so;

**(2)** Submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgage holder.

All of the terms of this Coverage Part will then apply directly to the mortgage holder.

**e.** If we pay the mortgage holder for any "loss" and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

**(1)** The mortgage holder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

**(2)** The mortgage holder's right to recover the full amount of the mortgage holder's claim will not be impaired.

At our option, we may pay to the mortgage holder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

**f.** If we cancel this policy, we will give written notice to the mortgage holder at least:

**(1)** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

**g.** If we elect not to renew this policy, we will give written notice to the mortgage holder at least ten days before the expiration date of this policy.

## SECTION F. OPTIONAL COVERAGES

If shown as applicable in the Declarations, the following Optional Coverages apply separately to each item.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

1. **Agreed Value**

    a. The Additional Condition, Coinsurance, does not apply to Covered Property to which this Optional Coverage applies. We will pay no more for direct "loss" to that property than the proportion that the Limit of Insurance under this Coverage Part for the property bears to the Limit of Insurance indicated in the most current Statement of Values that applies to this Coverage Part.

    b. If the Agreed Value Optional Coverage is deleted from the policy, the Additional Condition, Coinsurance, is reinstated and this Optional Coverage does not apply.

    c. The terms of this Optional Coverage apply only to "loss" that occurs:

        (1) On or after the effective date of this Optional Coverage; and

        (2) Before the policy expiration date.

    d. This Agreed Value Optional Coverage does not apply to **SECTION A. COVERAGE, 5. Coverage Extensions, b. Business Income and Extra Expense.**

2. **Inflation Guard**

    a. The Limit of Insurance for property to which this Optional Coverage applies will automatically increase by the annual percentage shown in the Declarations.

    b. The amount of increase will be:

        (1) The Limit of Insurance that applied on the beginning of the current "coverage term" or any other Coverage Part change amending the Limit of Insurance, multiplied by

        (2) The percentage of annual increase shown in the Declarations, expressed as a decimal (example: 8% is .08), multiplied by

        (3) The number of days since the beginning of the current "coverage term" or the effective date of the most recent policy change amending the Limit of Insurance, divided by 365. In the event of "loss", this number of days ends at the original date of "loss".

        Example:

        If: The applicable Limit of Insurance is: $100,000

        The Annual percentage increase is: 8%

    The number of days since the beginning of the policy year (or last policy change) is: 146

    The amount of increase is $100,000 X .08 X (146/365) = $3,200

3. **Replacement Cost**

    a. Replacement Cost (without deduction for depreciation) replaces "Actual Cash Value" in **SECTION D. LOSS CONDITIONS, 7. Valuation** of this **BUILDING AND PERSONAL PROPERTY COVERAGE FORM.**

    b. This Optional Coverage does not apply to:

        (1) Personal Property of others, except leased personal property as described in **SECTION A. COVERAGE, 1. Covered Property, d.(7).** The valuation of such leased personal property will be based on the amount for which you are liable under the lease, but not to exceed the replacement cost of the leased item.

        (2) Personal effects;

        (3) Contents of a residence;

        (4) Manuscripts;

        (5) Works of art, antiques or rare articles, including etchings, pictures, statuary, marbles, bronzes, porcelains and bric-a-brac;

        (6) "Stock" unless the Replacement Cost including "Stock" option is shown in the Declarations; or

        (7) Property, that at the time of "loss":

            (a) Is outdated, or obsolete and is stored or not being used; or

            (b) Has no practical value to you.

    c. You may make a claim for "loss" covered by this insurance on an "Actual Cash Value" basis instead of on a replacement cost basis. In the event you elect to have "loss" settled on an "Actual Cash Value" basis, you may still make a claim for the additional coverage this Optional Coverage provides if you notify us of your intent to do so within 180 days after the "loss".

    d. We will not pay on a replacement cost basis for any "loss":

        (1) Until the lost or damaged property is actually repaired or replaced with other property of generally the same construction and used for the same

purpose as the lost or damaged property; and

**(2)** Unless the repairs or replacement have been completed or at least underway within 2 years following the date of "loss".

**e.** We will not pay more for "loss" on a replacement cost basis than the least of:

**(1)** The Limit of Insurance applicable to the lost or damaged property;

**(2)** The cost to replace, on the same "premises", the lost or damaged property with other property:

**(a)** Of comparable material and quality; and

**(b)** Used for the same purpose; or

**(3)** The amount you actually spend that is necessary to repair or replace the lost or damaged property.

**f.** The cost of repair or replacement does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use, or repair of any building or structure except as provided in **SECTION A. COVERAGE, 4. Additional Coverages, g. Ordinance or Law.**

## SECTION G. DEFINITIONS

**1.** "Actual cash value" means replacement cost less a deduction that reflects depreciation, age, condition and obsolescence.

**2.** "Business Income" means the:

**a.** Net Income (net profit or loss before income taxes) that would have been earned or incurred; and

**b.** Continuing normal operating expenses sustained, including payroll.

**3.** "Computer programs" means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data.

**4.** "Coverage term" means the following individual increment, or if a multi-year policy period, increments, of time, which comprise the policy period of this Coverage Part:

**a.** The year commencing on the Effective Date of this Coverage Part at 12:01 A.M. standard time at your mailing address shown in the Declarations, and if a multi-year policy period, each consecutive annual period thereafter, or portion thereof if

any period is for a period of less than 12 months, constitute individual "coverage terms". The last "coverage term" ends at 12:00 A.M. standard time at your mailing address shown in the Declarations on the earlier of:

**(1)** The day the policy period shown in the Declarations ends; or

**(2)** The day the policy to which this Coverage Part is attached is terminated or cancelled.

**b.** However, if after the issuance of this Coverage Part, any "coverage term" is extended for an additional period of less than 12 months, that additional period of time will be deemed to be part of the last preceding "coverage term".

**5.** "Electronic data" means information, facts or "computer programs" stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment.

**6.** "Finished stock" means stock you have manufactured, except "stock" you have manufactured that is held for sale on the "premises" of any retail outlet insured under this Coverage Part.

**7.** "Fungi" means any type or form of fungus, and includes, but is not limited to, any form or type of mold, mushroom or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

**8.** "Loss" means accidental physical loss or accidental physical damage.

**9.** "Money" means:

**a.** Currency, coins and bank notes whether or not in current use; and

**b.** Travelers checks, registered checks and money orders held for sale to the public.

**10.** "Operations" means:

**a.** Your business activities occurring at the "premises"; and

**b.** The tenantability of the "premises", if coverage for "Business Income" including "Rental Value" or "Rental Value" applies.

**11.** "Period of restoration" means the period of time that:

**a.** Begins at the time of direct "loss".

**b.** Ends on the earlier of:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**(1)** The date when the property at the "premises" should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

**(2)** The date when business is resumed at a new permanent location.

**c.** "Period of restoration" does not include any increased period required due to the enforcement of or compliance with any ordinance or law that:

**(1)** Regulates the construction, use or repair, or requires the tearing down of any property; or

**(2)** Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of "pollutants".

**d.** The expiration date of the policy will not cut short the "period of restoration".

**12.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, asbestos, chemicals, petroleum, petroleum products and petroleum by-products, and waste. Waste includes materials to be recycled, reconditioned or reclaimed. "Pollutants" include but are not limited to substances which are generally recognized in industry or government to be harmful or toxic to persons, property, or the environment regardless of whether injury or damage is caused directly or indirectly by the "pollutants" and whether:

**a.** You are regularly or otherwise engaged in activities which taint or degrade the environment; or

**b.** You use, generate or produce the "pollutant".

**13.** "Premises" means the Locations and Buildings described in the Declarations.

**14.** "Rental Value" means "Business Income" that consists of :

**a.** Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred as rental income from tenant occupancy of the "premises" described in the Declarations as furnished and equipped by you, including fair rental value of any portion of the "premises" which is occupied by you; and

**b.** Continuing normal operating expenses incurred in connection with that "premises", including:

**(1)** Payroll; and

**(2)** The amount of charges, which are the legal obligation of the tenant(s) but would otherwise be your obligations.

**15.** "Securities" means negotiable and non-negotiable instruments or contracts representing either "money" or other property and includes:

**a.** Tokens, tickets, revenue and other stamps whether or not in current use; and

**b.** Evidences of debt issued in connection with credit or charge cards, which are not of your own issue; but does not include "money". Lottery tickets held for sale are not "securities" or evidences of debt.

**16.** "Sinkhole collapse" means the sudden settlement or collapse of earth supporting the Covered Property into subterranean voids created by the action of water on a limestone or similar rock formation. This does not include:

**a.** The cost of filling sinkholes;

**b.** Sinking or collapse of land into man-made subterranean cavities; or

**c.** The value of the land.

**17.** "Specified causes of loss" means fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; "sinkhole collapse"; volcanic action; falling objects; weight of snow, ice or sleet; and water damage.

**a.** Falling objects does not include "loss" to:

**(1)** Personal property in the open; or

**(2)** The interior of a building or structure, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object.

**b.** Water damage means:

**(1)** Accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of any part of a system or appliance (other than a sump system including its related equipment and parts) containing water or steam; and

**(2)** Accidental discharge or leakage of water or waterborne material as the direct result of the breaking apart or cracking of a water or sewer pipe that is located off the "premises" and is part of a municipal potable water supply system or municipal sanitary sewer system, if the breakage or cracking is caused by wear and tear.

But water damage does not include "loss" otherwise excluded under the terms of **BUILDING AND BUSINESS PERSONAL PROPERTY, SECTION A. COVERAGE, 3. Covered Causes of Loss, (g) Water.** Therefore, for example, there is no coverage under this Coverage Part in the situation in which discharge or leakage of water results from the breaking apart or cracking of a pipe which was caused by or related to weather-induced flooding, even if wear and tear contributed to the breakage or cracking. As another example, and also in accordance with the terms of the Exclusion **(g) Water,** there is no coverage for "loss" caused by or related to weather-induced flooding which follows or is exacerbated by pipe breakage or cracking attributable to wear and tear.

To the extent that accidental discharge or leakage of water falls within the criteria set forth in **18.b.(1)** or **18.b.(2)** of this definition of "Specified causes of loss", such water is not subject to the provisions of Exclusion **(g) Water.**

18. "Stock" means merchandise held in storage or for sale, raw materials and in-process or finished goods, including supplies used in their packing or shipping.

19. "Suspension" means:

    a. The slowdown or cessation of your business activities; and

    b. That a part or all of the "premises" is rendered untenantable.

20. "Valuable papers and records" means inscribed, printed or written documents, manuscripts or records, including abstracts, books, card index systems, deeds, drawings, films, maps, mortgages, or proprietary information.

    But "valuable papers and records" does not mean "money" or "securities" or "electronic data", including the materials on which the "electronic data" is recorded.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# SOUTH CAROLINA CHANGES--VALUATION

This endorsement modifies insurance provided under the following:

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM**
**BUILDERS' RISK COVERAGE FORM**
**CONDOMINIUM ASSOCIATION COVERAGE FORM**
**STANDARD PROPERTY POLICY**

**SCHEDULE***

| Prem.<br>No. | Bldg.<br>No. | Agreed Value of Buildings | Total Amount of Insurance<br>to be Carried |
|---|---|---|---|
| | | | |

**A.** When this endorsement is attached to the STANDARD PROPERTY POLICY CP 00 99 the term Coverage Part in this endorsement is replaced by the term Policy.

**B.** The following is added to VALUATION Loss Condition:

**1.** For loss or damage to buildings caused by or resulting from fire or lightning, you and we agree that:

**a.** The value of buildings described in this Coverage Part; and

**b.** The total amount of insurance to be carried on the buildings, including this Coverage Part;

are the amounts shown in the Schedule.

**2.** The following applies to the Builders' Risk Coverage Form or the Builders' Risk Changes -- Standard Property Policy, if applicable:

The Agreed Value of Buildings represents the value of the building when it is completed.

*Information required to complete this Schedule, if not shown on this endorsement, will be shown in the Declarations.

**CP 01 10 07 88**        Copyright, ISO Commercial Risk Services, Inc., 1984, 1987

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PENNSYLVANIA CHANGES - ACTUAL CASH VALUE

This endorsement modifies insurance provided under the following:

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM (INCLUDING SPECIAL CAUSES OF LOSS)**

**1. SECTION G. DEFINITIONS, 1. "Actual Cash Value"** is deleted in its entirety and replaced by the following:

1.  "Actual Cash Value" means the amount it would cost to repair or replace Covered Property, at the time of loss or damage, with material of like kind and quality, subject to a deduction for deterioration, depreciation and obsolescence. "Actual cash value" applies to valuation of Covered Property regardless of whether that property has sustained partial or total loss or damage.

    The "actual cash value" of the lost or damaged property may be significantly less than its replacement cost.

**FA 4013 PA 11 02**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PENNSYLVANIA CHANGES

This endorsement modifies insurance provided under the following:

**COMMERCIAL PROPERTY COVERAGE PART**

A.  Exclusion **(1)(d) Nuclear Hazard** in **SECTION A. COVERAGE, 3. Covered Causes of Loss, b. Exclusions** of the **BUILDING AND PERSONAL PROPERTY COVERAGE FORM** is deleted in its entirety and replaced by the following:

**(1)(d) Nuclear Hazard**

Nuclear reaction or radiation, or radioactive contamination, however caused. However, if nuclear reaction or radiation, or radioactive contamination, results in fire, we will pay for the "loss" caused by that fire.

B.  Exclusion **2.d. Nuclear Hazard** in **SECTION E. EXCLUSIONS** of the **MORTGAGE INTEREST COVERAGE FORM** is deleted in its entirety and replaced by the following:

**2.d. Nuclear Hazard**

Nuclear reaction or radiation, or radioactive contamination, however caused. However, if nuclear reaction or radiation, or radioactive contamination, results in fire, we will pay for the "loss" caused by that fire.

FA 4028 PA 11 05

# CinciPlus®

## COMMERCIAL PROPERTY POWER XC+® (EXPANDED COVERAGE PLUS) ENDORSEMENT
### SUMMARY OF COVERAGE LIMITS

This is a summary of the Coverages and the Limits of Insurance provided by the Commercial Property Power XC+®(Expanded Coverage Plus) Endorsement, **FA 258**, in combination with the Commercial Property Coverage Form, **FM101**, which is included in this policy. **No coverage is provided by this summary.** Refer to endorsement **FA 258** and the Commercial Property Coverage Form, **FM 101**, to determine the scope of your insurance protection.

| **Blanket Coverages:** | **Blanket Coverage Limit:** | **Page No. (FA 258):** |
|---|---|---|
| | $150,000 in total for all loss arising from all Blanket Coverages arising from a single occurrence, except as noted otherwise in the form. | |
| Accounts Receivable | | 1 |
| Debris Removal | | 8 |
| Electronic Data Processing Property (EDP): | | 2 |
| Duplicate and Backup Electronic Data | $2,000 in addition to the Blanket Coverage Limit | 3 |
| Newly Acquired EDP | $10,000 in addition to the Blanket Coverage Limit | 3 |
| In Transit or Away From Premises | $10,000 as part of the Blanket Coverage Limit | 4 |
| Worldwide Laptop Coverage | | 4 |
| Ordinance or Law (Increased Construction Costs and Demolition) | | 6 |
| Peak Season | | 8 |
| Personal Property of Others | | 8 |
| Tenant Move Back Expenses | | 7 |
| Valuable Papers and Records | | 6 |

| **Other Coverages** (not subject to Blanket Coverage Limit): | **Limit of Insurance:** | **Page No. (FA 258):** |
|---|---|---|
| Brands and Labels | $25,000 | 11 |
| Business Income and Extra Expense: | $100,000 | 1 |
| Business Income From Dependent Properties | $5,000 (sub-limit, subject to a 24 hour deductible) | 1 |
| Interruption of Computer Operations | $25,000 (sub-limit, subject to a 24 hour deductible) | 2 |

FA 4098 01 09

| Other Coverages (not subject to Blanket Coverage Limit): | Limit of Insurance: | Page No. (FA 258): |
|---|---|---|
| Fine Arts | $25,000 | 5 |
| Fire Department Service Charge | $25,000 | 7 |
| Fire Protection Equipment Recharge | $50,000 | 8 |
| Inflation Guard | 4% on all Building Property referenced in the Declarations | 11 |
| Non-Owned Building Damage: | | 10 |
| Loss caused by theft, burglary or robbery | Up to the Business Personal Property (BPP) Limit of Insurance | 10 |
| Loss by any other Covered Cause of Loss | $25,000 or the BPP Limit of Insurance (whichever is less) | 10 |
| Ordinance or Law (other than Increased Construction Costs and Demolition) | Subject to the Building Limit of Insurance | 6 |
| Outdoor Property | $25,000 ($1,000 for any one tree, shrub or plant) | 7 |
| Paved Surfaces | $20,000 | 8 |
| Personal Effects | $25,000 ($1,000 for loss by theft) | 7 |
| Pollutant Clean Up and Removal | $25,000 | 6 |
| Signs | $10,000 | 7 |
| Temperature Change | $15,000 | 9 |
| Underground Property | Subject to the Building Limit of Insurance | 6 |
| Utility Services – direct and time element | $75,000 | 11 |
| Overhead transmission and distribution lines | $5,000 sublimit at 24 hr waiting period | 11 |
| Water Backup from Sewers, Drains or Sumps | $10,000 | 7 |

FA 4098 01 09

# COMMERCIAL PROPERTY CONDITIONS

This Coverage Part is subject to the following conditions, the Common Policy Conditions and applicable Loss Conditions and Additional Conditions in Commercial Property Coverage Forms.

**A. Concealment, Misrepresentation or Fraud**

This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

1. This Coverage Part;

2. The Covered Property;

3. Your interest in the Covered Property; or

4. A claim under this Coverage Part.

**B. Control of Property**

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage Part at any one or more locations will not affect coverage at any location where, at the time of direct "loss", the breach of condition does not exist.

**C. Insurance Under Two or More Coverages**

If two or more of this policy's coverages apply to the same "loss", we will not pay more than the actual amount of the "loss".

**D. Legal Action Against Us**

No one may bring a legal action against us under this Coverage Part unless:

1. There has been full compliance with all of the terms of this Coverage Part; and

2. The action is brought within 2 years after the date on which the direct "loss" occurred.

**E. Liberalization**

If, within 60 days prior to the beginning of this Coverage Part or during the policy period, we make any changes to any forms or endorsements of this Coverage Part for which there is currently no separate premium charge, and that change provides more coverage than this Coverage Part, the change will be considered as included until the end of the current policy period. We will make no additional premium charge for this additional coverage during the interim.

**F. No Benefit to Bailee**

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

**G. Other Insurance**

1. You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Part. If you do, we will pay our share of the covered "loss". Our share is the proportion that the applicable Limit of Insurance under this Coverage Part bears to the Limits of Insurance of all insurance covering on the same basis.

2. If there is other insurance covering the same "loss", other than that described in 1. above, we will pay only for the amount of covered "loss" in excess of the amount due from that other insurance, whether you can collect on it or not. **However, we will not reimburse any deductible or difference between Actual Cash Value and Replacement Cost valuations.** We will not pay more than the applicable Limit of Insurance.

**H. Policy Period, Coverage Territory**

Under this Coverage Part:

1. We cover "loss" commencing:

    a. During the policy period shown in the Declarations; and

    b. Within the coverage territory.

2. The coverage territory:

    a. The United States of America (including its territories and possessions);

    b. Puerto Rico; and

    c. Canada.

**I. Transfer of Rights of Recovery Against Others to Us**

If any person or organization to or for whom we make payment under this Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after direct "loss" to impair them. But you may waive your rights against another party in writing:

FA 450 05 16

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Page 1 of 2

1. Prior to a direct "loss" to your Covered Property or Covered Income.

2. After a direct "loss" to your Covered Property or Covered Income only if, at time of direct "loss", that party is one of the following:

    a. Someone insured by this insurance;

    b. A business firm:

        (1) Owned or controlled by you; or

        (2) That owns or controls you; or

    c. Your tenant.

This will not restrict your insurance.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

FA 450 05 16

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ORDINARY PAYROLL LIMITATION OR EXCLUSION

This endorsement modifies insurance provided under the following:

**COMMERCIAL PROPERTY COVERAGE PART**

**SCHEDULE**

| Location Number | Building Number | Number of Days Ordinary Payroll Coverage is Provided | Additional Exemptions | |
|---|---|---|---|---|
| | | | Job Classifications | Employees |
| 1 | 1 | 90 | | |

**A. Applicable Coverage Forms**

This endorsement applies to the following Coverage Forms:

**1. BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM,** and

**2. BUSINESS INCOME (WITHOUT EXTRA EXPENSE) COVERAGE FORM**

**B.** Business Income includes "ordinary payroll expenses" only for the number of days shown in the Schedule, or in the Declarations, following the date of direct physical "loss". If no entry is made, "ordinary payroll expenses" are excluded.

**C.** In determining the operating expenses for the policy year for Coinsurance purposes, payroll expenses will not include "ordinary payroll expenses", except for "ordinary payroll expenses" incurred during the number of days shown in the Schedule, or in the Declarations. If the "ordinary payroll expenses" for the policy year vary during the year, the period of greatest "ordinary payroll expenses" will be used.

**D.** "Ordinary payroll expenses" means payroll expenses for all your employees except:

**1.** Officers;

**2.** Executives;

**3.** Department managers;

**4.** Employees under contract; and

**5.** Additional Exemptions, shown in the Schedule or in the Declarations as:

**a.** Job Classifications; or

**b.** Employees.

"Ordinary payroll expenses" include:

**(1)** Payroll;

**(2)** Employee benefits, if directly related to payroll;

**(3)** FICA payments you pay;

**(4)** Union dues you pay; and

**(5)** Workers compensation premiums.

FA 465 04 04

Includes copyrighted material of ISO Commercial Risk Services, Inc., with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

**COMMERCIAL PROPERTY COVERAGE PART**

## SCHEDULE

| Loc | Bldg | Loss Payee Name and Address: | Applicable Clause (Enter B, C, D or E): |
|-----|------|------------------------------|-----------------------------------------|
| 1 | 1 | | B |

WELLS FARGO
C/O: LEASE INSURANCE SERVICES
PO BOX 979284
MIAMI, FL 33197-9284

**A.** Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

For the purposes of this endorsement only, the following are added to **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION D. LOSS CONDITIONS, 4. Loss Payment**, as indicated in the Schedule of this endorsement.

**B. Loss Payable**

For Covered Property in which both you and a Loss Payee shown in the Schedule of this endorsement have an insurable interest, we will:

1. Adjust losses with you; and

2. Pay any claim for "loss" jointly to you and the Loss Payee, as interests may appear.

**C. Lender's Loss Payable**

1. The Loss Payee shown in the Schedule of this endorsement is a creditor, including a mortgageholder or trustee, whose interest in Covered Property is established by such written instruments as:

   **a.** Warehouse receipts;

   **b.** A contract for deed;

   **c.** Bills of lading;

   **d.** Financing statements; or

   **e.** Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

   **a.** We will pay for covered "loss" to each Loss Payee in their order of precedence, as interests may appear.

   **b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

   **c.** If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Part, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

      **(1)** Pays any premium due under this Coverage Part at our request if you have failed to do so;

      **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of this Coverage Part will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any "loss" and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

**(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

**(2)** The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

**a.** 10 days before the effective date of cancellation if we cancel for your non-payment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**D. Contract of Sale**

**1.** The Loss Payee shown in the Schedule of this endorsement is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest we will:

**a.** Adjust losses with you; and

**b.** Pay any claim for "loss" jointly to you and the Loss Payee, as interests may appear.

**3.** For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**E. Building Owner Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule of this endorsement is the owner of the building in which you are a tenant.

**2.** We will adjust losses to the building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenants' improvements and betterments with you, unless the lease provides otherwise.

FA 480 02 16

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Page 2 of 2

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

**COMMERCIAL PROPERTY COVERAGE PART**

### SCHEDULE

| Loc | Bldg | Loss Payee Name and Address: | Applicable Clause (Enter B, C, D or E): |
|-----|------|------------------------------|------------------------------------------|
| 1 | 1 | | B |

MANUFACTURERS AND TRADERS TRUST COMPANY
PO BOX 15210
50 N 5TH ST 3RD FL
READING, PA 19612-5210

**A.** Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

For the purposes of this endorsement only, the following are added to **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION D. LOSS CONDITIONS, 4. Loss Payment**, as indicated in the Schedule of this endorsement.

**B. Loss Payable**

For Covered Property in which both you and a Loss Payee shown in the Schedule of this endorsement have an insurable interest, we will:

**1.** Adjust losses with you; and

**2.** Pay any claim for "loss" jointly to you and the Loss Payee, as interests may appear.

**C. Lender's Loss Payable**

**1.** The Loss Payee shown in the Schedule of this endorsement is a creditor, including a mortgageholder or trustee, whose interest in Covered Property is established by such written instruments as:

**a.** Warehouse receipts;

**b.** A contract for deed;

**c.** Bills of lading;

**d.** Financing statements; or

**e.** Mortgages, deeds of trust, or security agreements.

**2.** For Covered Property in which both you and a Loss Payee have an insurable interest:

**a.** We will pay for covered "loss" to each Loss Payee in their order of precedence, as interests may appear.

**b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Part, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

**(1)** Pays any premium due under this Coverage Part at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of this Coverage Part will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any "loss" and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

**(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

**(2)** The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

**a.** 10 days before the effective date of cancellation if we cancel for your non-payment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**D. Contract of Sale**

**1.** The Loss Payee shown in the Schedule of this endorsement is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest we will:

**a.** Adjust losses with you; and

**b.** Pay any claim for "loss" jointly to you and the Loss Payee, as interests may appear.

**3.** For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**E. Building Owner Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule of this endorsement is the owner of the building in which you are a tenant.

**2.** We will adjust losses to the building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenants' improvements and betterments with you, unless the lease provides otherwise.

FA 480 02 16

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

**COMMERCIAL PROPERTY COVERAGE PART**

## SCHEDULE

| Loc | Bldg | Loss Payee Name and Address: | Applicable Clause (Enter B, C, D or E): |
|---|---|---|---|
| 1 | 1 | | B |

M&T BANK
50 N 5TH ST
READING, PA 19601-3417

**A.** Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

For the purposes of this endorsement only, the following are added to **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION D. LOSS CONDITIONS, 4. Loss Payment**, as indicated in the Schedule of this endorsement.

**B. Loss Payable**

For Covered Property in which both you and a Loss Payee shown in the Schedule of this endorsement have an insurable interest, we will:

**1.** Adjust losses with you; and

**2.** Pay any claim for "loss" jointly to you and the Loss Payee, as interests may appear.

**C. Lender's Loss Payable**

**1.** The Loss Payee shown in the Schedule of this endorsement is a creditor, including a mortgageholder or trustee, whose interest in Covered Property is established by such written instruments as:

**a.** Warehouse receipts;

**b.** A contract for deed;

**c.** Bills of lading;

**d.** Financing statements; or

**e.** Mortgages, deeds of trust, or security agreements.

**2.** For Covered Property in which both you and a Loss Payee have an insurable interest:

**a.** We will pay for covered "loss" to each Loss Payee in their order of precedence, as interests may appear.

**b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Part, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

**(1)** Pays any premium due under this Coverage Part at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

(3) Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of this Coverage Part will then apply directly to the Loss Payee.

d. If we pay the Loss Payee for any "loss" and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

(1) The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

(2) The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

3. If we cancel this policy, we will give written notice to the Loss Payee at least:

a. 10 days before the effective date of cancellation if we cancel for your non-payment of premium; or

b. 30 days before the effective date of cancellation if we cancel for any other reason.

4. If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

D. Contract of Sale

1. The Loss Payee shown in the Schedule of this endorsement is a person or organization you have entered a contract with for the sale of Covered Property.

2. For Covered Property in which both you and the Loss Payee have an insurable interest we will:

a. Adjust losses with you; and

b. Pay any claim for "loss" jointly to you and the Loss Payee, as interests may appear.

3. For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

E. Building Owner Loss Payable Clause

1. The Loss Payee shown in the Schedule of this endorsement is the owner of the building in which you are a tenant.

2. We will adjust losses to the building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

3. We will adjust losses to tenants' improvements and betterments with you, unless the lease provides otherwise.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

**COMMERCIAL PROPERTY COVERAGE PART**

## SCHEDULE

| Loc | Bldg | Loss Payee Name and Address: | Applicable Clause (Enter B, C, D or E): |
|---|---|---|---|
| 1 | 1 | | C |

WELLS FARGO EQUIPMENT FINANCE
C/O: INSURANCE SERVICE CENTER
PO BOX 979126
MIAMI, FL 33197-9126

**A.** Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

For the purposes of this endorsement only, the following are added to **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION D. LOSS CONDITIONS, 4. Loss Payment**, as indicated in the Schedule of this endorsement.

**B. Loss Payable**

For Covered Property in which both you and a Loss Payee shown in the Schedule of this endorsement have an insurable interest, we will:

**1.** Adjust losses with you; and

**2.** Pay any claim for "loss" jointly to you and the Loss Payee, as interests may appear.

**C. Lender's Loss Payable**

**1.** The Loss Payee shown in the Schedule of this endorsement is a creditor, including a mortgageholder or trustee, whose interest in Covered Property is established by such written instruments as:

    **a.** Warehouse receipts;

    **b.** A contract for deed;

    **c.** Bills of lading;

    **d.** Financing statements; or

    **e.** Mortgages, deeds of trust, or security agreements.

**2.** For Covered Property in which both you and a Loss Payee have an insurable interest:

    **a.** We will pay for covered "loss" to each Loss Payee in their order of precedence, as interests may appear.

    **b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

    **c.** If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Part, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

        **(1)** Pays any premium due under this Coverage Part at our request if you have failed to do so;

        **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

(3) Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of this Coverage Part will then apply directly to the Loss Payee.

d. If we pay the Loss Payee for any "loss" and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

(1) The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

(2) The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

3. If we cancel this policy, we will give written notice to the Loss Payee at least:

a. 10 days before the effective date of cancellation if we cancel for your non-payment of premium; or

b. 30 days before the effective date of cancellation if we cancel for any other reason.

4. If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**D. Contract of Sale**

1. The Loss Payee shown in the Schedule of this endorsement is a person or organization you have entered a contract with for the sale of Covered Property.

2. For Covered Property in which both you and the Loss Payee have an insurable interest we will:

a. Adjust losses with you; and

b. Pay any claim for "loss" jointly to you and the Loss Payee, as interests may appear.

3. For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**E. Building Owner Loss Payable Clause**

1. The Loss Payee shown in the Schedule of this endorsement is the owner of the building in which you are a tenant.

2. We will adjust losses to the building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

3. We will adjust losses to tenants' improvements and betterments with you, unless the lease provides otherwise.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

**COMMERCIAL PROPERTY COVERAGE PART**

## SCHEDULE

| Loc | Bldg | Loss Payee Name and Address: | Applicable Clause (Enter B, C, D or E): |
|-----|------|------------------------------|-----------------------------------------|
| 1 | 1 | | C |

WELLS FARGO FINANCIAL
PO BOX 979284
MIAMI, FL 33197-9284

**A.** Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

For the purposes of this endorsement only, the following are added to **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION D. LOSS CONDITIONS, 4. Loss Payment**, as indicated in the Schedule of this endorsement.

**B. Loss Payable**

For Covered Property in which both you and a Loss Payee shown in the Schedule of this endorsement have an insurable interest, we will:

1. Adjust losses with you; and

2. Pay any claim for "loss" jointly to you and the Loss Payee, as interests may appear.

**C. Lender's Loss Payable**

1. The Loss Payee shown in the Schedule of this endorsement is a creditor, including a mortgageholder or trustee, whose interest in Covered Property is established by such written instruments as:

   **a.** Warehouse receipts;

   **b.** A contract for deed;

   **c.** Bills of lading;

   **d.** Financing statements; or

   **e.** Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

   **a.** We will pay for covered "loss" to each Loss Payee in their order of precedence, as interests may appear.

   **b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

   **c.** If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Part, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

      **(1)** Pays any premium due under this Coverage Part at our request if you have failed to do so;

      **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

FA 480 02 16

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Page 1 of 2

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of this Coverage Part will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any "loss" and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

**(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

**(2)** The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

**a.** 10 days before the effective date of cancellation if we cancel for your non-payment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**D. Contract of Sale**

**1.** The Loss Payee shown in the Schedule of this endorsement is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest we will:

**a.** Adjust losses with you; and

**b.** Pay any claim for "loss" jointly to you and the Loss Payee, as interests may appear.

**3.** For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**E. Building Owner Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule of this endorsement is the owner of the building in which you are a tenant.

**2.** We will adjust losses to the building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenants' improvements and betterments with you, unless the lease provides otherwise.

FA 480 02 16

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

**COMMERCIAL PROPERTY COVERAGE PART**

**SCHEDULE**

| Loc | Bldg | Loss Payee Name and Address: | Applicable Clause (Enter B, C, D or E): |
|-----|------|------------------------------|------------------------------------------|
| 1 | 1 | | B |

MANUFACTURERS & TRADERS TRUST COMPANY
PO BOX 1358
BUFFALO, NY 14240-1358

**A.** Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

For the purposes of this endorsement only, the following are added to **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION D. LOSS CONDITIONS, 4. Loss Payment**, as indicated in the Schedule of this endorsement.

**B. Loss Payable**

For Covered Property in which both you and a Loss Payee shown in the Schedule of this endorsement have an insurable interest, we will:

1. Adjust losses with you; and

2. Pay any claim for "loss" jointly to you and the Loss Payee, as interests may appear.

**C. Lender's Loss Payable**

1. The Loss Payee shown in the Schedule of this endorsement is a creditor, including a mortgageholder or trustee, whose interest in Covered Property is established by such written instruments as:

   a. Warehouse receipts;

   b. A contract for deed;

   c. Bills of lading;

   d. Financing statements; or

   e. Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

   a. We will pay for covered "loss" to each Loss Payee in their order of precedence, as interests may appear.

   b. The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

   c. If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Part, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

      (1) Pays any premium due under this Coverage Part at our request if you have failed to do so;

      (2) Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

FA 480 02 16 — Includes copyrighted material of Insurance Services Office, Inc., with its permission. — Page 1 of 2

(3) Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of this Coverage Part will then apply directly to the Loss Payee.

d. If we pay the Loss Payee for any "loss" and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

(1) The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

(2) The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

3. If we cancel this policy, we will give written notice to the Loss Payee at least:

a. 10 days before the effective date of cancellation if we cancel for your non-payment of premium; or

b. 30 days before the effective date of cancellation if we cancel for any other reason.

4. If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**D. Contract of Sale**

1. The Loss Payee shown in the Schedule of this endorsement is a person or organization you have entered a contract with for the sale of Covered Property.

2. For Covered Property in which both you and the Loss Payee have an insurable interest we will:

a. Adjust losses with you; and

b. Pay any claim for "loss" jointly to you and the Loss Payee, as interests may appear.

3. For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**E. Building Owner Loss Payable Clause**

1. The Loss Payee shown in the Schedule of this endorsement is the owner of the building in which you are a tenant.

2. We will adjust losses to the building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

3. We will adjust losses to tenants' improvements and betterments with you, unless the lease provides otherwise.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

FA 480 02 16

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART

### SCHEDULE

| Loc | Bldg | Loss Payee Name and Address: | Applicable Clause (Enter B, C, D or E): |
|---|---|---|---|
| 3 | 1 | | B |

MANUFACTURERS AND TRADERS TRUST COMPANY
PO BOX 15210
50 N 5TH ST 3RD FL
READING, PA 19612-5210

**A.** Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

For the purposes of this endorsement only, the following are added to **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION D. LOSS CONDITIONS, 4. Loss Payment,** as indicated in the Schedule of this endorsement.

**B. Loss Payable**

For Covered Property in which both you and a Loss Payee shown in the Schedule of this endorsement have an insurable interest, we will:

1. Adjust losses with you; and

2. Pay any claim for "loss" jointly to you and the Loss Payee, as interests may appear.

**C. Lender's Loss Payable**

1. The Loss Payee shown in the Schedule of this endorsement is a creditor, including a mortgageholder or trustee, whose interest in Covered Property is established by such written instruments as:

   a. Warehouse receipts;

   b. A contract for deed;

   c. Bills of lading;

   d. Financing statements; or

   e. Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

   a. We will pay for covered "loss" to each Loss Payee in their order of precedence, as interests may appear.

   b. The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

   c. If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Part, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

      (1) Pays any premium due under this Coverage Part at our request if you have failed to do so;

      (2) Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

FA 480 02 16

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Page 1 of 2

(3) Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of this Coverage Part will then apply directly to the Loss Payee.

d. If we pay the Loss Payee for any "loss" and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

(1) The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

(2) The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

3. If we cancel this policy, we will give written notice to the Loss Payee at least:

a. 10 days before the effective date of cancellation if we cancel for your non-payment of premium; or

b. 30 days before the effective date of cancellation if we cancel for any other reason.

4. If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**D. Contract of Sale**

1. The Loss Payee shown in the Schedule of this endorsement is a person or organization you have entered a contract with for the sale of Covered Property.

2. For Covered Property in which both you and the Loss Payee have an insurable interest we will:

a. Adjust losses with you; and

b. Pay any claim for "loss" jointly to you and the Loss Payee, as interests may appear.

3. For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**E. Building Owner Loss Payable Clause**

1. The Loss Payee shown in the Schedule of this endorsement is the owner of the building in which you are a tenant.

2. We will adjust losses to the building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

3. We will adjust losses to tenants' improvements and betterments with you, unless the lease provides otherwise.

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# CINCIPLUS®
# COMMERCIAL PROPERTY POWER XC+®
# (EXPANDED COVERAGE PLUS) ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART

**The insurance coverage and Limits of Insurance provided by this endorsement are excess of, and apply in addition to, any similar or identical coverage provided by any other endorsement attached to this Coverage Part, or by any other Coverage Part forming a part of the policy of insurance of which this Coverage Part forms a component.**

## SCHEDULE

| Blanket Coverage Limit | $150,000 |
|---|---|
| Applicable only to those coverages subject to the Blanket Coverage Limit, as indicated in this endorsement | |

## A. Accounts Receivable

For the purposes of this endorsement only:

1. In **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions, a. Accounts Receivable**, the second paragraph in **(3)(b) Away From Your Premises** is deleted in its entirety and replaced by the following:

   This limit of insurance for Away From Your Premises coverage is not included within the Blanket Coverage Limit and is separate and in addition to the Blanket Coverage Limit.

2. In **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions, a. Accounts Receivable**, the last paragraph is deleted in its entirety and replaced by the following:

   The most we will pay for loss in any one occurrence under this Accounts Receivable Coverage Extension is the Blanket Coverage Limit as provided in Section **Y** of this endorsement.

## B. Business Income and Extra Expense

For the purposes of this endorsement only, in **BUILDING AND PERSONAL PROPERTY**

COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions, b. Business Income and Extra Expense is modified as follows:

1. **Business Income From Dependent Properties**

   a. For **Business Income from Dependent Properties** only, Paragraph **b.(1)** is deleted in its entirety and replaced by the following:

   (1) **Business Income From Dependent Properties**

   We will pay for the actual loss of "Business Income" you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct "loss" to "dependent property" caused by or resulting from any Covered Cause of Loss.

   However, coverage under this endorsement does not apply when the only "loss" to "dependent property" is "loss" to "electronic data", including destruction or corruption of "electronic data". If the "dependent property" sustains "loss" to

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

"electronic data" and other property, coverage under this endorsement will not continue once the other property is repaired, rebuilt, or replaced.

**b. Limit of Insurance for Dependent Properties**

The most we will pay for loss in one occurrence under **Business Income From Dependent Properties** is $5,000. This Limit of Insurance is included within, and is not in addition to, the Limit of Insurance for the "Business Income" and Extra Expense Coverage Extension.

**c. Loss Determination for Dependent Properties**

For **Business Income from Dependent Properties** only, the following is added:

**Resumption of Operations**

We will reduce the amount of your:

(1) "Business Income" loss, other than Extra Expense, to the extent you can resume "operations", in whole or in part, by using any other available

    (a) Source of materials; or

    (b) Outlet for your products.

(2) Extra Expense loss to the extent you can return "operations" to normal and discontinue such Extra Expense.

**d. Definitions**

**SECTION G. DEFINITIONS** is amended to include the following definitions:

(1) "Dependent property" means property operated by others whom you depend on to:

    (a) Deliver materials or services to you, or to others for your account (Contributing Locations). But any property which delivers the following services is not a Contributing Location with respect to such services:

        1) Water Supply services;

        2) Power Supply services; or

        3) Communication supply services, including services relating to internet access or access to any electronic network;

    (b) Accept your products or services;

    (c) Manufacture products for delivery to your customers under contract of sale; or

    (d) Attract customers to your business.

(2) The "Period of restoration" Definition, with respect to "dependent property", is replaced by the following:

"Period of restoration" means the period of time that:

    (a) Begins 24 hours after the time of direct "loss" caused by or resulting from any Covered Cause of Loss at the "premises" of the "dependent property"; and

    (b) Ends on the date when the property at the "premises" of the "dependent property" should be repaired, rebuilt or replaced with reasonable speed and similar quality.

"Period of restoration" does not include any increased period required due to the enforcement of any ordinance or law that:

    (a) Regulates the construction, use or repair, or requires the tearing down of any property; or

    (b) Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

The expiration date of this Coverage Part will not cut short the "period of restoration".

The most we will pay is the **Business Income From Dependent Properties** sublimit of insurance. This Limit of Insurance is included within, and is not in addition to, the Limit of Insurance for the

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

"Business Income" and Extra Expense Coverage Extension.

**2. Interruption of Computer Operations**

**a.** For **Interruption of Computer Operations** only, all references to $2,500 in **b. Business Income and Extra Expense,** Paragraph **(7)(c)** are deleted and replaced by $25,000.

**b.** **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION G. DEFINITIONS** is amended as follows:

With respect to a "suspension" of "operations" caused only by an interruption in computer operations due to the destruction or corruption of "electronic data" as described in **SECTION A. COVERAGE, 5. Coverage Extensions, d. Electronic Data,** Paragraph **a.** of Definition **11.** "Period of restoration" is deleted and replaced by the following:

**a.** Begins 24 hours after the time of direct "loss".

**3. Business Income and Extra Expense Revised Limits of Insurance**

The last paragraph is deleted in its entirety and replaced by the following:

The most we will pay for loss in any one occurrence under this "Business Income" and Extra Expense Coverage Extension is $100,000.

**C. Electronic Data Processing Property**

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions** is amended by adding the following:

**Electronic Data Processing Property**

**(1) Covered Property**

You may extend the Coverage provided by this Coverage Part to apply to direct "loss" to Covered Property consisting of your:

**(a)** Data processing equipment;

**(b)** Air conditioning and other electrical equipment, used exclusively with your data processing equipment;

**(c)** Programming documentation and instruction manuals;

**(d)** "Electronic data", but only as excess over what is valid and collectible under **SECTION A. COVERAGE, 5. Coverage Extensions, d. Electronic Data;**

**(e)** Media, meaning materials on which "electronic data" is recorded, such as magnetic tapes, disc packs, paper tapes and cards, floppy discs and compact discs used in processing units; and

**(f)** Property of others in your care, custody or control that is similar to property described in **(1)(a)** through **(e)** above.

**(2) Property Not Covered**

This Coverage Extension does not apply to:

**(a)** Accounts, records, documents and other "valuable papers and records" unless they are programming documentation or instruction manuals.

However, we will cover these items once they are converted to "electronic data" form.

**(b)** "Electronic data" or media that cannot be replaced with similar property of equal quality.

**(c)** Your property that you have rented or leased to someone else and that property is not at your "premises".

**(d)** Any machine or apparatus that is used for research, medical, diagnostic, surgical, dental or pathological purposes.

**(e)** "Production equipment".

**(3) Exclusions**

**(a)** **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 3. Covered Causes of Loss, b. Exclusions** does not apply except as follows:

1) Exclusion **(1)(c)** Governmental Action;

2) Exclusion **(1)(d)** Nuclear Hazard;

3) Exclusion **(1)(f)** War and Military Action;

4) Exclusion **(2)(b)** Delay or Loss of Use;

FA 258 05 16

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Page 3 of 13

5) Exclusion (2)(d) Miscellane-ous Causes of Loss, 1) Wear and tear;

6) Exclusion (2)(h) Dishonest or Criminal Acts;

7) Exclusion (3)(b) Acts or De-cisions; and

8) Exclusion (3)(c) Defects, Er-rors and Omissions.

(b) In addition to Paragraph (3)(a) of this Coverage Extension, we will not pay for the following:

Hidden or latent defect, gradual de-terioration, and depreciation. How-ever, if direct "loss" by a Covered Cause of Loss results, we will pay for that resulting "loss".

**(4) Duplicate and Backup "Electronic Da-ta"**

We will pay for direct "loss" resulting from any of the Covered Causes of Loss to duplicate and backup "electronic data" that you store at a "premises" not de-scribed in the Declarations providing such "electronic data" is not covered by another policy. The most we will pay for loss in any one occurrence is $2,000. This Limit of Insurance is in addition to the other limits provided by this Cover-age Extension.

**(5) Newly Purchased Electronic Data Processing Property**

**BUILDING AND PERSONAL PROP-ERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Exten-sions, i. Newly Purchased, Leased or Constructed Property** is deleted in its entirety and replaced by the following:

(a) We will pay for direct "loss" from a Covered Cause of Loss to newly purchased or leased Covered Property described in Paragraph (1) of this Coverage Extension while at:

1) Locations that are newly pur-chased or leased;

2) Your newly constructed build-ings or additions at a "premis-es"; or

3) Any "premises" described in the Declarations.

(b) Insurance under this Coverage Ex-tension for such newly acquired property, or Covered Property al-ready insured by this Coverage Ex-tension which is moved to a newly

acquired location, will end when any of the following first occurs:

1) This Coverage Part expires;

2) 90 days pass from the date you acquire your new property or move Covered Property to a newly acquired location; or

3) You report values to us.

The most we will pay for loss in any one occurrence is $10,000. This Limit of In-surance is in addition to the other limits provided by this Coverage Extension.

**(6) In Transit or Away From Premises**

**SECTION A. COVERAGE, 5. Coverage Extensions, e. Exhibitions, Fairs or Trade Shows, m. Property Off Prem-ises** and **p. Transportation** are deleted in their entirety and replaced by the fol-lowing:

(a) You may extend the insurance pro-vided by this Coverage Extension to apply to Covered Property as de-scribed in Paragraph (1):

1) While in or on a vehicle, includ-ing loading and unloading; or

2) While at a location that is not your "premises".

(b) This **In Transit or Away From Premises** coverage does not apply per location.

The most we will pay for loss in any one occurrence is $10,000. This Limit of In-surance is not in addition to the other limits provided by this Coverage Exten-sion.

**(7) Worldwide Laptop Coverage**

(a) You may extend the insurance pro-vided by this Coverage Extension to apply to your laptops, notebooks and similar highly portable personal computers, including their periph-erals and accessories, while such specific Covered Property is:

1) In your or your employee's care, custody and control;

2) Not located at a "premises" you own or lease; and

3) Not located in the coverage ter-ritory stated in Paragraph 2. of the Commercial Property Con-dition **H. Policy Period, Cov-erage Territory**, provided that location is not under a United

States Department of State trade or travel restriction at the time of "loss".

**(b)** This **Worldwide Laptop Coverage** does not apply per location.

**(8) Electronic Data Processing Property Deductible**

**SECTION C. DEDUCTIBLE** is amended to include the following:

We will not pay for direct "loss" in any one occurrence unless the amount of "loss" exceeds the Deductible shown in the Declarations. We will then pay the amount of "loss" in excess of the Deductible, up to the Limit of Insurance provided by this Coverage Extension.

However, direct "loss" caused by or resulting from any of the following Causes of Loss will have the greater of the Deductible shown in the Declarations or $1,000 as the applicable deductible:

**a.** "Loss" caused by faulty construction, error in design or processing, or service or work upon the data processing system;

**b.** "Loss" resulting in mechanical breakdown, short circuiting, blowout, or other electrical damage, unless caused by lightning; or

**c.** "Loss" caused by or resulting from interruption of power supply, power surge, blackout or brownout.

**(9) Electronic Data Processing Property Valuation**

**SECTION D. LOSS CONDITIONS, 7. Valuation** is deleted in its entirety and replaced by the following:

**7.** <u>**Valuation of Electronic Data Processing Property**</u>

In the event of direct "loss", we will determine the value of Covered Property as described in Paragraph **(1)** of this Coverage Extension as follows:

**a.** Except for "electronic data":

**(1)** If you repair or replace this Electronic Data Processing property within a reasonable time following the direct "loss", the property will be valued at the full cost of repair or replacement.

However, the most we will pay is the least of the following:

**(a)** The actual cost to repair or restore the property with materials of like kind and quality;

**(b)** The cost of replacing that property with property of similar quality and function;

**(c)** The amount you actually and necessarily spend to repair or replace the property; or

**(d)** The Limit of Insurance applicable to the property.

**(2)** If you do not repair or replace this property within a reasonable time following a direct "loss", the most we will pay will be the least of the following:

**(a)** "Actual cash value" of the property;

**(b)** "Actual cash value" of repairs with material of like kind and quality; or

**(c)** The Limit of Insurance applicable to the property.

We reserve the right to repair or replace the property or to pay for the property in money.

In the event of "loss", the value of property will be determined at the time of direct "loss".

**b.** For "electronic data":

We will not pay more than the actual reproduction costs of your "electronic data". If you do not replace or reproduce your "electronic data" following the "loss", the most we will pay is the cost of blank media as described in Paragraph **C.(1)(e)** of this Coverage Extension.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**FA 258 05 16**

**(10) Electronic Data Processing Property Additional Definition**

The following definition is added to **SECTION G. DEFINITIONS** of the **BUILDING AND PERSONAL PROPERTY COVERAGE FORM:**

"Production equipment" means any machinery and related components, including any integrated or dedicated computer system, which is used, or can be used, to produce or process other tangible property.

The most we will pay in total for all loss in any one occurrence for coverages described in Paragraphs **C.(1), (6),** and **(7)** is the Blanket Coverage Limit as provided in Section **Y.** of this endorsement.

**D. Fine Arts**

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions** is amended to include the following:

Fine Arts

**(1)** We will pay for direct "loss" to paintings, etchings, pictures, tapestries, art glass windows, and other bona fide works of art of rarity, historical value, or artistic merit. The direct "loss" must be caused by or result from a Covered Cause of Loss.

**(2)** **SECTION D. LOSS CONDITIONS, 7. Valuation** is deleted in its entirety and replaced by the following:

We will determine the value of Covered Property in the event of direct "loss" at the market value at the time of "loss".

The most we will pay for loss in any one occurrence under this Coverage Extension is $25,000.

**E. Ordinance or Law**

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 4. Additional Coverages, g. Ordinance or Law,** the last paragraph is deleted in its entirety and replaced by the following:

The most we will pay for loss in any one occurrence under Paragraph **(a) Loss of Use of Undamaged Parts of the Building** is the Limit of Insurance shown in the **COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS** as applicable to the covered building or structure sustaining "loss". This

Coverage is included within, and not in addition to, that applicable Limit of Insurance.

The most we will pay for all loss in any one occurrence under Paragraph **(b) Demolition Costs** and Paragraph **(c) Increased Costs of Construction** is the Blanket Coverage Limit as provided in Section **Y** of this endorsement per building or structure sustaining loss. This is an additional Limit of Insurance applicable to the building or structure sustaining loss.

**F. Pollutant Clean Up and Removal**

For the purposes of this endorsement only, in **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 4. Additional Coverages, h. Pollutant Clean Up and Removal,** the last paragraph is deleted in its entirety and replaced by the following:

The most we will pay for each "premises" under this Pollutant Clean Up and Removal Coverage Extension is $25,000. This limit includes the sum of all covered expenses arising out of Covered Causes of Loss during each "coverage term". This is in addition to the Limits of Insurance shown in the **COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS.**

**G. Underground Property**

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions** is amended to include the following:

Underground Property

**(1)** We will pay for direct "loss" resulting from any of the Covered Causes of Loss to:

**(a)** Foundations of covered buildings, structures, machinery or boilers, if their foundations are below the lowest basement floor or the surface of the ground if there is no basement; and

**(b)** Underground pipes, flues or drains if they are attached to Covered Property.

**(2)** **SECTION A. COVERAGE, 2. Property Not Covered, g. Foundations** is deleted in its entirety and replaced by the following:

**g. Foundations**

Foundations of buildings, structures, machinery or boilers, if their foundations are below:

(1) The lowest basement floor; or

(2) The surface of the ground, if there is no basement;

except as provided in **SECTION A. COVERAGE, 5. Coverage Extensions.**

(3) **SECTION A. COVERAGE, 2. Property Not Covered, n. Underground Pipes, Flues or Drains** is deleted in its entirety and replaced by the following:

**n. Underground Pipes, Flues or Drains**

Underground pipes, flues or drains, except as provided in **SECTION A. COVERAGE, 5. Coverage Extensions.**

The most we will pay for loss in any one occurrence is the Limit of Insurance shown in the **COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS** as applicable to the covered building or structure incurring direct "loss". This Coverage is included within, and not in addition to, that applicable Limit of Insurance.

**H. Valuable Papers and Records**

For the purposes of this endorsement only:

1. In **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions, r. Valuable Papers and Records,** the second paragraph in **(4)(b) Away From Your Premises** is deleted in its entirety and replaced by the following:

   This limit of insurance for **Away From Your Premises** coverage is not included within the Blanket Coverage Limit and is separate and in addition to the Blanket Coverage Limit.

2. In **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions, r. Valuable Papers and Records,** the last paragraph is deleted in its entirety and replaced by the following:

   The most we will pay for loss in any one occurrence under this Valuable Papers and Records Coverage Extension is the Blanket Coverage Limit as provided in Section **Y** of this endorsement.

**I. Water Backup Discharged from Sewers, Drains, Septic or Sump Pump Systems**

For the purposes of this endorsement only:

(1) **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 3. Covered Causes of Loss, b. Exclusions, (1)(g) Water, Paragraph 3)** is deleted in its entirety and replaced by the following:

3) Except as provided in **SECTION A. COVERAGE, 5. Coverage Extensions, Water Backup Discharged from Sewers, Drains, Septic or Sump Pump Systems,** water that has entered and then backs up through and is discharged from a sewer, drain, septic system, sump pump system or related equipment; or

(2) **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 3. Covered Causes of Loss, b. Exclusions, (1)(g) Water, Paragraph 5)** is deleted in its entirety and replaced by the following:

5) Except as provided in **SECTION A. COVERAGE, 5. Coverage Extensions, Water Backup Discharged from Sewers, Drains, Septic or Sump Pump Systems,** waterborne material carried or otherwise moved by any of the water referred to in Paragraph **1), 3)** or **4)**, or material carried or otherwise moved by mudslide or mudflow as described in Paragraph **(g)2).**

(3) **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions,** is amended to include the following:

**Water Backup Discharged From Sewers, Drains, Septic or Sump Pump Systems**

We will pay for "loss" caused by or resulting from water or waterborne material that has entered and then backs up through and is discharged from a sewer, drain (including roof drains and related fixtures), septic system, sump pump system or related equipment.

(4) **SECTION C. DEDUCTIBLE** is amended by adding the following:

**Water Backup Deductible**

We will not pay for "loss" in any one occurrence caused by or resulting from water or waterborne material which backs up through and is discharged from a sewer, drain, septic system, sump pump system or related equipment, until the amount of "loss" exceeds the De-

ductible shown in the Declarations, or $1,000, whichever is greater. We will then pay the amount of "loss" in excess of that deductible, up to the applicable limit indicated in Paragraph **(5)** of this Coverage Extension.

**(5)** The most we will pay for loss in any one occurrence under this Water Backup Discharged from Sewers, Drains, Septic or Sump Pump Systems Coverage Extension is $10,000, including any "Business Income", "Rental Value" and Extra Expense loss.

**J. Fire Department Service Charge**

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 4. Additional Coverages, c. Fire Department Service Charge** is deleted in its entirety and replaced by the following:

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $25,000 in any one occurrence for Fire Department Service Charge for your liability, which is determined prior to direct "loss", for fire department service charges:

**(1)** Assumed by contract or agreement; or

**(2)** Required by local ordinance.

This Coverage is in addition to the Limits of Insurance shown in the **COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS** and applies per location. Such limit is the most we will pay regardless of the number of responding fire departments or fire units, and regardless of the number or type of services performed.

**K. Signs**

For the purposes of this endorsement only, in **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions, n. Signs,** the second paragraph is deleted in its entirety and replaced by the following:

The most we will pay for loss in any one occurrence under this Sign Coverage Extension is $10,000.

**L. Outdoor Property**

For the purposes of this endorsement only, in **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions, k. Outdoor Property,** the last paragraph is deleted in its entirety and replaced by the following:

The most we will pay for loss in any one occurrence under this Outdoor Property Coverage Extension is $25,000, but not more than $1,000 for any one tree, shrub, or plant.

**M. Personal Effects**

For the purposes of this endorsement only, in **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions, I. Personal Effects,** the last two paragraphs are deleted in their entirety and replaced by the following:

If theft is included as a Covered Cause of Loss under this Coverage Part, then this Personal Effects Coverage Extension has a $1,000 per occurrence limitation for direct "loss" by theft.

The most we will pay for loss in any one occurrence under this Personal Effects Coverage Extension is $25,000.

**N. Tenant Move Back Expenses**

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions** is amended to include the following:

**Tenant Move Back Expenses**

**(1)** We will reimburse you for expenses you pay for Covered Move Back Costs of your tenants who temporarily vacate a portion of the building at a "premises". The vacancy must have occurred while the portion of the building rented by your tenant could not be occupied due to direct "loss" to your Covered Property caused by or resulting from a Covered Cause of Loss during the "coverage term". The move back must be completed within 60 calendar days after the portion of the building rented by your tenant has been repaired or rebuilt and is ready for occupancy.

**(2)** Covered Move Back Costs means only documented, reasonable and necessary costs of:

**(a)** Packing, insuring and transporting business personal property;

**(b)** Re-establishing electric utility and communication services, less refunds from discontinued services;

**(c)** Assembling and setting up fixtures and equipment; or

**(d)** Unpacking and re-shelving stock and supplies.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**(3)** If your tenants have valid and collectible insurance for Covered Move Back Costs, we will pay only for the amount of Covered Move Back Costs in excess of the amount payable from such other insurance.

The most we will pay for loss in any one occurrence under this Tenant Move Back Expenses Coverage Extension is the Blanket Coverage Limit as provided in Section **Y** of this endorsement.

**O. Peak Season**

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions** is amended to include the following:

**Peak Season**

**1.** In the event that the limit of insurance stated in the Declarations for Business Personal Property is insufficient to fully insure a covered "loss" due to a Peak Season Demand for your inventory, we will pay up to the Blanket Coverage Limit as provided in Section **Y** of this endorsement.

**2.** Peak Season Demand means a temporary (90 consecutive days or less) increase in your inventory to meet a seasonal demand as verified by:

**a.** Your previous inventory records for that historical period of time; and

**b.** Custom and practice in your industry.

**P. Personal Property of Others**

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions** is amended to include the following:

**Personal Property of Others**

In the event that the limit of insurance stated in the **COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS** for Business Personal Property is insufficient to fully insure a covered "loss" to both your Covered Personal Property and property described in Paragraph (8) of **SECTION A. COVERAGE, 1. Covered Property, d. Business Personal Property,** we will pay up to the Blanket Coverage Limit in any one occurrence as provided in Section **Y** of this endorsement for such property.

**Q. Debris Removal**

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions** is amended to include the following:

In the event that the limits of insurance stated in **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 4. Additional Coverages, b. Debris Removal** are insufficient to fully cover a "loss" insured thereunder, we will pay up to the Blanket Coverage Limit in any one occurrence as provided in Section **Y** of this endorsement.

**R. Fire Protection Equipment Recharge**

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 4. Additional Coverages, d. Fire Protection Equipment Recharge,** the last paragraph is deleted and replaced by the following:

The most we will pay for loss in any one occurrence under this Fire Protection Equipment Recharge Coverage Extension is $50,000. This Coverage is in addition to the Limits of Insurance shown in the **COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS.**

**S. Paved Surfaces**

For the purposes of this endorsement only:

**1.** **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 2. Property Not Covered, i. Paved Surfaces** is deleted in its entirety and replaced by the following:

Except as provided in **4. Additional Coverages, Paved Surfaces,** bridges, roadways, walks, patios or other paved surfaces.

**2.** **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 4. Additional Coverages** is amended to include the following:

**Paved Surfaces**

We will pay for direct "loss" resulting from any of the Covered Causes of Loss to bridges, roadways, walks, patios or other paved surfaces.

The most we will pay for loss in any one occurrence under this Paved Surfaces Coverage Extension is $25,000.

**T. Temperature Change**

For the purposes of this endorsement only, BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions is amended to include the following:

<u>Temperature Change</u>

**(1) Coverage**

**(a)** BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 1. Covered Property is deleted in its entirety and replaced by the following:

Covered Property means "perishable stock" located in a building at a "premises".

**(b)** BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 2. Property Not Covered is deleted in its entirety and replaced by the following:

Covered Property does not include:

**"Perishable Stock" Not in Buildings**

"Perishable stock" located on buildings, in or on vehicles, or otherwise in the open.

**(2) Covered Causes of Loss**

BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 3. Covered Causes of Loss, a. Covered Causes of Loss is deleted in its entirety and replaced by the following:

**a. Covered Causes of Loss**

Covered Causes of Loss means direct "loss" from "temperature change" to Covered Property unless "loss" is excluded or limited in this Coverage Part.

**(3) Excluded Causes of Loss**

**(a)** BUILDING AND PERSONAL PROPERTY COVERAGE FORM SECTION A. COVERAGE, 3. Covered Causes of Loss, b. Exclusions does not apply to this Coverage Extension, except as follows:

**(1)** Exclusion (1)(b) Earth Movement;

**(2)** Exclusion (1)(c) Governmental Action;

**(3)** Exclusion (1)(d) Nuclear Hazard;

**(4)** Exclusion (1)(f) War and Military Action;

**(5)** Exclusion (1)(g) Water; or

**(6)** Exclusion (1)(h) "Fungi", Wet Rot, Dry Rot, and Bacteria.

**(b)** In addition to Paragraph (3)(a) of this Coverage Extension, we will not pay for direct "loss" caused by or resulting from any of the following:

**1)** The disconnecting of any heating, refrigerating, cooling or humidity control system from the source of its power;

**2)** The deactivation of electrical power caused by the manipulation of any switch or other device (on "premises") used to control the flow of electrical power or current;

**3)** The inability of an Electrical Utility Company or other power source to provide sufficient power due to:

**a)** Lack of fuel; or

**b)** Governmental order;

**4)** The inability of a power source at the "premises" to provide sufficient power due to the lack of generating capacity to meet demand; or

**5)** Breaking of any glass that is a permanent part of any heating, refrigeration, cooling or humidity control unit.

**(4) Limits of Insurance**

BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION B. LIMITS OF INSURANCE is deleted in its entirety and replaced by the following:

**SECTION B. LIMITS OF INSURANCE**

**a.** The most we will pay for all direct "loss" in any one occurrence under this Temperature Change Coverage Extension is $15,000, including any "Business Income", "Rental Value", and Extra Expense loss.

**b.** The Limit of Insurance for Temperature Change is not an additional amount of insurance and will not increase the Limit of Insurance shown

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

in the Declarations for Business Personal Property or "stock".

**(5) Duties in the Event of Loss**

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION D. LOSS CONDITIONS, 3. Duties in the Event of Loss or Damage, a.(2)** is deleted in its entirety and replaced by the following:

**(2)** All claims under this Temperature Change Coverage Extension should be reported immediately upon occurrence. Include a description of the damaged "perishable stock". All damaged "perishable stock" must be available for inspection and verification.

**(6) Coinsurance**

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION E. ADDITIONAL CONDITIONS, 1. Coinsurance** does not apply to the coverage provided by this endorsement.

**(7) Definitions**

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION G. DEFINITIONS** is amended to include the following definitions:

"Perishable stock" means personal property:

**a.** Preserved and maintained under controlled conditions; and

**b.** Susceptible to "loss" if the controlled conditions change.

"Temperature change" means:

**a.** The fluctuation or total interruption of electrical power, either on or off "premises", resulting from conditions beyond your control.

**b.** Mechanical breakdown or mechanical failure of any refrigerating or cooling apparatus or equipment (on "premises") including the blowing of any fuse, fuses, or circuit breakers, only while such equipment is at the "premises".

**c.** Contamination by refrigerant.

**d.** Damage due to the freezing of "perishable stock" that is not meant to be frozen resulting from the faulty operation of any stationary heating plant, when such "perishable stock" is contained within a building at the "premises".

**U. Nonowned Building Damage**

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions, j. Nonowned Building Damage** is deleted in its entirety and replaced by the following:

If you are a tenant, you may extend the insurance provided by this Coverage Part for Business Personal Property to direct "loss" that occurs to the building at a "premises" you occupy but do not own.

This Coverage Extension applies only if your lease makes you legally responsible for that part of the building sustaining "loss".

This Coverage Extension does not apply to:

**(1)** Glass, including lettering and ornamentation, and also necessary:

**(a)** Repair or replacement of encasing frames or alarm tapes; and

**(b)** Expenses incurred to board up openings or remove or replace obstruction.

**(2)** Building materials and equipment removed from the "premises".

The most we will pay for loss in any one occurrence under this Nonowned Building Damage Coverage Extension is:

**(1)** The actual "loss" sustained up to the applicable Limit of Insurance for Business Personal Property for direct "loss" caused by theft, burglary or robbery, or the attempt of the foregoing; or

**(2)** The applicable Limit of Insurance for Business Personal Property or $25,000, whichever is less, for "loss" caused by any other Covered Cause of Loss, not referenced in Paragraph **U.(1)** above.

**V. Inflation Guard**

For the purposes of this endorsement only, the **COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS** is amended to show 4% for Inflation Guard in the OPTIONAL COVERAGES - Inflation Guard column for each scheduled Building Property. If an Inflation Guard percentage is already indicated on the **COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS** for that Building property, this percentage is excess of that Inflation Guard percentage for that Building property.

**W. Brands and Labels**

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY**

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**COVERAGE FORM, SECTION A. COVER-AGE, 5. Coverage Extensions** is amended to include the following:

**Brands and Labels**

If branded or labeled merchandise that is Covered Property is damaged by a Covered Cause of Loss, we may take all or any part of the property at an agreed or appraised value. If so, you may:

(1) Stamp "salvage" on the merchandise or its containers, if the stamp will not physically damage the merchandise; or

(2) Remove the brands or labels, if doing so will not physically damage the merchandise. You must re-label the merchandise or its containers to comply with the law.

The most we will pay for loss in any one occurrence under this Brands and Labels Coverage Extension is $25,000.

**X. Utility Services**

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVER-AGE, 5. Coverage Extensions, q. Utility Services** is deleted in its entirety and replaced by the following:

**q. Utility Services**

We will pay for:

(1) Direct "loss" to Covered Property at your "premises" except for direct "loss" resulting from the partial or complete failure of Wastewater Removal Services; and

(2) Loss of "Business Income", "Rental Value" and Extra Expenses as provided in **SECTION A. COVERAGE, 5. Coverage Extensions, b. Business Income and Extra Expense;**

caused by or resulting from the partial or complete failure of utility services to the "premises".

The partial or complete failure of the utility services listed below must be caused by direct "loss" caused by a Covered Cause of Loss to the following property:

(1) Power Supply Property, meaning the following types of property supplying electricity, steam or natural gas to the "premises":

(a) Utility generating plants;

(b) Switching stations;

(c) Substations;

(d) Transformers; and

(e) Transmission, distribution, service, or similar lines, including all such overhead lines of any type, except as modified in Paragraph **X.(6)** below;

(2) Water Supply Property, meaning the following types of property supplying water to the "premises":

(a) Pumping stations; and

(b) Water mains.

(3) Wastewater Removal Property, meaning a utility system for removing wastewater and sewage from the "premises", other than a system designed primarily for draining storm water. The utility property includes sewer mains, pumping stations and similar equipment for moving the effluent to a holding, treatment or disposal facility, and includes such facilities. Coverage under this Coverage Extension does not apply to interruption in service caused by or resulting from a discharge of water or sewage due to heavy rainfall or flooding.

(4) Communication Supply Property, meaning property supplying communication services, including service relating to Internet access or access to any electronic, cellular, or satellite network; telephone, radio, microwave, or television services to the "premises", such as:

(a) Communication transmission, distribution, service, or similar lines, including fiber optic lines, including all such overhead lines of any type, except as modified in Paragraph **X.(6)** below;

(b) Coaxial cables; and

(c) Microwave radio relays, excluding satellites.

(5) This Coverage Extension does not apply to direct "loss" to "electronic data", including destruction or corruption of "electronic data".

(6) When "loss" from the partial or complete interruption of utility services to a "premises" is caused solely by "loss" to overhead lines of any type:

(a) The most we will pay in any one occurrence for direct "loss" and loss of "Business Income", "Rental Value" and Extra Expense is $5,000. This Limit of Insurance is part of, not in addition to, the Limit of Insurance provided by this Utility Services Coverage Extension; and

(b) For loss of "Business Income", "Rental Value" and Extra Expense, **SECTION G. DEFINITIONS, 11.** Period of restoration, Paragraph **a.** is deleted in its entirety and replaced by the following:

   **a.** Begins:

   (1) 24 hours after the time of direct "loss" for "Business Income" and "Rental Value" Coverage; or

(2) Immediately after the time of direct "loss" for Extra Expense Coverage.

The most we will pay for all direct "loss" and loss of "Business Income", "Rental Value" and Extra Expense in any one occurrence under this Utility Services Coverage Extension is $75,000.

**Y. Blanket Coverage Limit**

We will pay up to the Limit of Insurance stated in the Schedule of this endorsement in total in any one occurrence for the sum of all "loss" insured under coverages provided in this endorsement which are subject to the Blanket Coverage Limit. You may apportion this Limit among these coverages as you choose.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# MANUFACTURERS' ADDITIONAL COVERAGE

This endorsement modifies insurance provided under the following:

**COMMERCIAL PROPERTY COVERAGE PART**

**A. Manufacturers' Selling Price**

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION D. LOSS CONDITIONS, 7. Valuation**, Paragraph **c.** is deleted in its entirety and replaced by the following:

**c.** We will determine the value of "finished stock" you manufacture at the selling price as if no "loss" occurred, less discounts and expenses you otherwise would have had.

**B. Replacement Cost Valuation of Stock**

1. If the Replacement Cost Optional Coverage is shown in the Declarations as being applicable to business personal property, then the Including "stock" option is also applicable, whether or not the Including "stock" option is indicated in the Declarations.

2. **SECTION D. LOSS CONDITIONS, 7. Valuation** is amended to include the following:

   We will determine the value of "stock" in process at the cost of the raw materials used in the manufacture of the "stock" in-process, plus allocated labor costs, plus provable allocated expense costs.

**C. Marring or Scratching**

1. **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 3. Covered Causes of Loss, b. Exclusions, (2)(d) Miscellaneous Causes of Loss, 7),** Paragraph **(a)** is deleted in its entirety and replaced by the following:

   **(a)** Marring or scratching, except to the extent provided in **SECTION A. COVERAGE, 5. Coverage Extensions, Marring or Scratching.**

2. **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions** is amended by adding the following:

   <u>Marring or Scratching</u>

   We will pay for direct "loss" to Covered Property caused by or resulting from marring or scratching.

The most we will pay for "loss" in any one "coverage term" under this Coverage Extension is $10,000.

**D. Theft of Patterns, Dies, Molds and Forms**

In **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 3. Covered Causes of Loss, c. Limitations, (3) Limitation - Personal Property Theft,** Part **(c)** is deleted in its entirety.

**E. Personal Property While Airborne or Waterborne**

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 2. Property Not Covered, j. Property While Airborne or Waterborne** is deleted in its entirety.

**F. Fire Protection Equipment Recharge**

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 4. Additional Coverages, d. Fire Protection Equipment Recharge** is deleted in its entirety and replaced by the following:

**d.** <u>Fire Protection Equipment Recharge</u>

We will pay for your actual expenses to recharge your:

**(1)** Portable fire extinguishers used to combat a covered fire to which this insurance applies; or

**(2)** Automatic fire suppression system at the "premises" when leakage or discharge occurs. The leakage or discharge must be caused by or result from a Covered Cause of Loss.

This Coverage is in addition to the Limits of Insurance shown in the Declarations.

If CinciPlus® Commercial Property XC+® (Expanded Coverage Plus) Endorsement **FA 250** or CinciPlus® Commercial Property Power XC+® (Expanded Coverage Plus) Endorsement **FA 258** is attached to this Coverage Part, Paragraph **R. Fire Protection Equipment Recharge** in these endorsements is deleted in its entirety.

**FA 260 05 16**

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# MANUFACTURERS' OPTIONAL COVERAGE

This endorsement modifies insurance provided under the following:

**COMMERCIAL PROPERTY COVERAGE PART**

### A. Personal Effects

For the purposes of this endorsements only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions, l. Personal Effects** is deleted in its entirety and replaced by the following:

**l. Personal Effects**

If business personal property is Covered Property in this Coverage Part, we will pay for direct "loss" caused by a Covered Cause of Loss to:

Personal effects owned by:

**(1)** You, your officers, or your partners, or if you are a limited liability company, your members or your managers; or

**(2)** Your employees (including temporary and leased employees), including tools owned by your employees that are used in your business.

This Coverage Extension does not apply to "money" or "securities".

The most we will pay for "loss" in any one occurrence under this Coverage Extension is $10,000.

If CinciPlus® Commercial Property XC® (Expanded Coverage) Endorsement **FA 237,** CinciPlus® Commercial Property XC+® (Expanded Coverage Plus) Endorsement **FA 250,** CinciPlus® Commercial Property Power XC® (Expanded Coverage) Endorsement **FA 257,** or Cinci-Plus® Commercial Property Power XC+® (Expanded Coverage Plus) Endorsement **FA 258** is attached to this Coverage Part, the following paragraph in **M. Personal Effects** of these endorsements is deleted in its entirety:

If theft is included as a Covered Cause of Loss under this Coverage Part, then this Coverage Extension has a $1,000 per occurrence limitation for "loss" by theft.

### B. Theft of Precious Alloys and Metals

For the purposes of this endorsements only, in **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 3. Covered Causes of Loss, c. Limita-** tions, **(3) Limitation - Personal Property Theft,** Paragraph **(b)** is deleted in its entirety and replaced by the following:

**(b)** $2,500 for jewelry, watches, watch movements, jewels, pearls, precious and semiprecious stones. This limitation does not apply to jewelry and watches worth $100 or less per item. $25,000 for bullion, gold, silver, platinum and other precious alloys or metals.

### C. Resultant Loss to Parts

For the purposes of this endorsements only:

**1.** **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 4. Additional Coverages** is amended by adding the following:

**Resultant Loss to Parts**

We will pay the reduction in value of the remaining parts of "stock" in process of manufacture when the reduction is caused by direct "loss" from a Covered Cause of Loss to other parts of "stock" in process of manufacture at the "premises" and the remaining parts cannot be used in conjunction with other "stock".

The most we will pay for "loss" in any one occurrence under this Additional Coverage is $25,000. This Coverage is in addition to the Limit of Insurance shown in the Declarations.

**2.** In **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 3. Covered Causes of Loss, b. Exclusions,** Paragraph **(2)(b)** is deleted in its entirety and replaced by the following:

**(b) Delay or Loss of Use**

Except to the extent provided in **SECTION A. COVERAGE, 4. Additional Coverages, Resultant Loss to Parts,** delay, loss of use or loss of market.

### D. Exhibitions, Fairs or Trade Shows

For the purposes of this endorsements only, the limit in **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions, e.**

FA 261 05 16

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Page 1 of 3

**Exhibitions, Fairs or Trade Shows** is increased from $10,000 to $25,000.

**E. Property Off Premises**

For the purposes of this endorsements only, the limit in **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions, m. Property Off Premises** is increased from $10,000 to $25,000.

**F. Transportation**

For the purposes of this endorsements only, the limit in **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions, p. Transportation** is increased from $10,000 to $25,000.

**G. Underground Property**

For the purposes of this endorsements only:

1. **BUILDING AND PERSONAL PROPER-TY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions** is amended by adding the following:

   **Underground Property**

   We will pay for direct "loss" resulting from a Covered Cause of Loss to the following:

   **(1)** Foundations of buildings, structures, machinery or boilers, if their foundations are below:

   **(a)** The lowest basement floor; or

   **(b)** The surface of the ground, if there is no basement;

   **(2)** Underground pipes, flues or drains.

   The most we will pay for "loss" in any one occurrence under this Coverage Extension is $10,000.

2. **BUILDING AND PERSONAL PROPER-TY COVERAGE FORM, SECTION A. COVERAGE, 2. Property Not Covered, g. Foundations** is deleted in its entirety and replaced by the following:

   **g. Foundations**

   Except to the extent provided in **SECTION A. COVERAGE, 5. Coverage Extensions, Underground Property,** foundations of buildings, structures, machinery or boilers, if their foundations are below:

   **(1)** The lowest basement floor; or

   **(2)** The surface of the ground, if there is no basement.

3. **BUILDING AND PERSONAL PROPER-TY COVERAGE FORM, SECTION A. COVERAGE, 2. Property Not Covered, n. Underground Pipes, Flues or Drains**

is deleted in its entirety and replaced by the following:

   **n. Underground Pipes, Flues or Drains**

   Except to the extent provided in **SECTION A. COVERAGE, 5. Coverage Extensions, Underground Property,** underground pipes, flues or drains.

**H. Contract Penalty Expense**

For the purposes of this endorsements only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVER-AGE, 4. Additional Coverages** is amended by adding the following:

**Contract Penalty Expense**

We will pay the contractual penalties you are required to pay to your customers as a result of any clause in your contracts for failure to timely deliver your product according to the contract terms. The penalties must solely result from direct "loss" by a Covered Cause of Loss to Covered Property.

The most we will pay in any one "coverage term" for penalties for all contracts under this Additional Coverage is $10,000. This Coverage is in addition to the Limits of Insurance shown in the Declarations.

**I. Artificially Generated Electrical Current**

For the purposes of this endorsements only:

1. **BUILDING AND PERSONAL PROPER-TY COVERAGE FORM, SECTION A. COVERAGE, 4. Additional Coverages** is amended by adding the following:

   **Artificially Generated Electrical Current**

   We will pay for direct "loss" to Covered Property caused by or resulting from artificially generated electrical current, including electrical arcing. The most we will pay for "loss" in any one occurrence under this Additional Coverage is $10,000. This Coverage is in addition to the Limits of Insurance shown in the Declarations.

2. **BUILDING AND PERSONAL PROPER-TY COVERAGE FORM, SECTION A. COVERAGE, 3. Covered Causes of Loss, b. Exclusions,** Paragraph (2)(a) is deleted in its entirety and replaced by the following:

   **(a) Electrical Current**

   Except to the extent provided in **SECTION A. COVERAGE, 4. Additional Coverages, Artificially Generated Electrical Current,** artificially generated electrical, magnetic or electromagnetic energy that damag-

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

FA 261 05 16

es, disturbs, disrupts, or otherwise interferes with any:

**1)** Electrical or electronic wire, device, appliance, system, or network; or

**2)** Device, appliance, system, or network utilizing cellular or satellite technology.

For the purpose of this exclusion, electrical, magnetic or electromagnetic energy includes but is not limited to:

**1)** Electrical current, including arcing;

**2)** Electrical charge produced or conducted by a magnetic or electromagnetic field;

**3)** Pulse of electromagnetic energy; or

**4)** Electromagnetic waves or microwaves.

However, if fire results, we will pay for "loss" caused by that fire.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EQUIPMENT BREAKDOWN COVERAGE

This endorsement modifies insurance provided under the following:

**COMMERCIAL PROPERTY COVERAGE PART**

**A. COVERAGE**

1. **BUILDING AND PERSONAL PROPER-TY COVERAGE FORM, SECTION A. COVERAGE** is amended by adding the following:

   We will pay for direct "loss" to Covered Property caused by or resulting from an "accident" at the "premises".

2. **BUILDING AND PERSONAL PROPER-TY COVERAGE FORM, SECTION A. COVERAGE, 3. Covered Causes of Loss, b. Exclusions** is amended by:

   a. Adding the following to **(1)(e) Utility Services, (1)(g) Water 1), (2)(a) Electrical Current, (2)(d) Miscella-neous Causes of Loss, (2)(j) Expo-sure to Weather, (3)(a) Weather Conditions, (3)(b) Acts or Deci-sions,** and **(3)(c) Defects, Errors, and Omissions:**

      However, this exclusion does not ap-ply if the causes of loss are caused by, or result from, an "accident" to Covered Property at the "premises".

   b. Deleting in its entirety **(2)(e) Explo-sion of Steam Apparatus.**

3. **BUILDING AND PERSONAL PROPER-TY COVERAGE FORM, SECTION A. COVERAGE, 3. Covered Causes of Loss, c. Limitations** is amended by:

   a. Deleting in its entirety **(1)(a) Steam Apparatus** and **(1)(b) Hot Water Boilers.**

   b. Adding the following:

      The following limitations apply only to "loss" covered by this endorsement. The sublimits provided in Paragraphs **(1), (2)** and **(3)** below are included within, and are not in addition to, the Limit of Insurance shown in the Dec-larations as applicable to the Covered Property. These limits, or the appli-cable Limit of Insurance shown in the Declarations as applicable to the Covered Property, whichever is less, apply. These limits apply to direct "loss" only.

      (1) **Ammonia Contamination Limi-tation**

         If Covered Property is contami-nated by ammonia as a result of an "accident" to Covered Proper-ty at the "premises", the most we will pay for this kind of loss, in-cluding salvage expense, is $100,000 per location.

      (2) **Data, Media and Software Res-toration**

         If "electronic data" is destroyed or corrupted as a result of an "accident" to covered equipment, the most we will pay for the ex-penses incurred by you for the restoration of that "electronic da-ta" is $100,000 for all loss sus-tained in the "coverage term", regardless of the number of "ac-cidents" or the number of "prem-ises" involved.

      (3) **"Hazardous Substance" Limi-tation**

         The following applies despite the operation of **BUILDING AND PERSONAL PROPERTY COV-ERAGE FORM, SECTION A. COVERAGE, 3. Covered Caus-es of Loss, b. Exclusions, (1)(a) Ordinance or Law.**

         If Covered Property is damaged, contaminated or polluted by a "hazardous substance" other than ammonia as a result of an "accident" to Covered Property at the "premises", the most we will pay for any additional ex-penses incurred by you for clean up, repair, replacement or dis-posal of that property is $100,000. As used here, addi-tional expenses mean expenses incurred beyond those for which we would be liable if no "hazard-ous substance" had been in-volved.

4. For the purposes of this endorsement on-ly, **BUILDING AND PERSONAL PROP-ERTY COVERAGE FORM, SECTION A.**

**FA 245 04 20**

Page 1 of 4

**COVERAGE, 5. Coverage Extensions, g. Fungi, Wet Rot, Dry Rot, and Bacteria – Limited Coverage,** Paragraph **(3)** is deleted in its entirety and replaced by the following:

(3) For the coverage described under Paragraph **g.(2)** of this Coverage Extension, the most we will pay for loss, regardless of the number of claims, is $100,000. This limit is the most we will pay for the total of all loss arising out of all occurrences that take place in the "coverage term". With respect to a particular occurrence of "loss" which results in "fungi", wet or dry rot or bacteria, we will not pay more than a total of $100,000 even if the "fungi", wet or dry rot or bacteria continues to be present or active, or recurs, in a subsequent "coverage term".

**B. ADDITIONAL COVERAGES**

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 4. Additional Coverages** is amended as follows:

1. Paragraph **a. Change in Temperature or Humidity** is deleted in its entirety.

2. The following are added:

   a. **Drying Out**

   If electrical equipment included in Covered Property requires "drying out" as a result of a "flood", the reasonable expense incurred for the "drying out" will be covered.

   b. **Expediting Expenses**

   With respect to "loss" covered by this endorsement, and with respect to your damaged Covered Property, we will pay the reasonable extra cost to:

   (1) Make temporary repairs;

   (2) Expedite permanent repairs; and

   (3) Expedite permanent replacement.

   c. **Non-Owned Utility Service Equipment**

   We will pay for indirect loss resulting from an "accident" to non-owned utility equipment described in **E. Definitions, 1.a.(7)** but we will not pay for any expense to repair or replace direct "loss" to non-owned utility equipment that:

   (1) You do not own, lease or rent; or

   (2) That is not in your care custody and control.

   These Additional Coverages are included within, and not in addition to, the Limits of Insurance shown in the Declarations. All other terms and conditions of this Coverage Part, including deductibles, apply to these Additional Coverages.

**C. DEDUCTIBLE**

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION C. DEDUCTIBLE** is amended by adding the following:

The deductible applicable to "loss" covered by this endorsement is $500, or the deductible indicated in the Declarations as being applicable to the lost or damaged Covered Property, whichever is greater.

**D. ADDITIONAL CONDITIONS**

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION E. ADDITIONAL CONDITIONS** is amended by adding the following:

**Suspension**

Whenever any covered equipment is found to be in, or exposed to, a dangerous condition, any of our representatives may immediately suspend the insurance against "loss" from an "accident" to that covered equipment. This can be done by delivering or mailing a written notice of suspension to:

1. Your last known address; or

2. The address where the covered equipment is located.

Once suspended in this way, your insurance can be reinstated only by written notice from us.

If we suspend your insurance, you will get a pro rata refund of premium for that covered equipment. However, the suspension will be effective even if we have not yet made or offered a refund.

**E. DEFINITIONS**

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION G. DEFINITIONS** is amended by adding the following:

**1.a.** "Accident" means a sudden and accidental breakdown of the following covered equipment:

   (1) Any boiler;

FA 245 04 20

(2) Any fired or unfired pressure vessel subject to vacuum or internal pressure other than the static pressure of its contents;

(3) Any piping and its accessory equipment;

(4) Any refrigeration or air conditioning system;

(5) Any mechanical or electrical machine or apparatus used for the generation, transmission or utilization of mechanical or electrical power; or

(6) Any "production machinery".

(7) Equipment of a type described in definition **a.(1)** through **(6)** above which you do not own, lease or rent and is not in your care, custody or control that is on or within one mile of a covered "location", and is supplying you with electricity, gas, water, steam, heat, refrigeration, air conditioning or communication services.

At the time the breakdown occurs, it must become apparent by physical damage that the covered equipment or part thereof requires repair or replacement.

When the covered equipment or part thereof experiencing a problem is "electronic circuitry" that suddenly loses its ability to function as designed or intended with no apparent physical damage, we will concede physical damage has occurred if the covered equipment or part thereof can be restored to normal operation by replacing one or more "electronic circuitry" components.

**b.** None of the following is an "accident":

(1) Depletion, deterioration, corrosion or erosion;

(2) Wear and tear;

(3) Leakage at any valve, fitting, shaft seal, gland packing, joint or connection;

(4) The functioning of any safety or protective device;

(5) The breakdown of any structure or foundation supporting covered equipment or any of its parts;

(6) Any condition that can be reasonably remedied by normal maintenance such as:

(a) Replacing expendable parts;

(b) Recharging batteries; or

(c) Rebooting, reloading or up-dating software or firmware; or

(7) Any condition caused by or related to:

(a) Incompatibility of covered equipment or part thereof with any software or equipment installed, introduced or networked within the prior 30 days; or

(b) Programming error, programming limitation, computer virus, malicious code, loss of data, loss of access, or other condition within or involving data or media of any kind.

**c.** None of the following are covered equipment:

(1) Any sewer piping, underground gas piping, or piping forming a part of a sprinkler system;

(2) Water piping other than boiler feed water piping, boiler condensate return piping or water piping forming a part of a refrigeration or air conditioning system;

(3) Insulating or refractory material;

(4) Vehicle, elevator, escalator, conveyor, hoist or crane;

(5) Felt, wire, screen, swing hammer, grinding disc, cable, chain, belt, rope or nonmetallic part;

(6) Die, mold, extrusion plate, cutting blade or any part or tool subject to periodic replacement for production or maintenance purposes;

(7) Penstock, draft tube or well casing; or

(8) Excavation or construction equipment or any equipment mounted thereon.

**d.** If a strike, riot, civil commotion, act of sabotage or vandalism results in an "accident", this insurance applies. However, the War and Military Action Exclusion and the conditions of this Coverage Part still apply.

**2.** "Drying out" means restoration of electrical equipment to service following a "flood" by removal of excess moisture from that equipment including:

**a.** Application of heat or controlled electrical current, circulation of air, or use of dehumidification equipment, after rinsing the electrical equipment with clean fresh water if necessary to flush away "flood" debris;

FA 245 04 20

b. "Drying out" can be done in place or equipment can be disconnected and removed to a repair facility for drying if necessary.

c. "Drying out" does not include or apply to:

(1) Replacement or repair of any electrical equipment or parts thereof; or

(2) Any expense related to deconstruction, demolition, or reconstruction of any building component, structure or part thereof to gain access to electrical equipment.

3. "Electronic circuitry" means microelectronic components, including but not limited to circuit boards, integrated circuits, computer chips and disk drives.

4. "Flood" means a general and temporary condition of partial or complete inundation of normally dry land areas due to:

a. The overflow of inland or tidal waters;

b. The unusual or rapid accumulation or runoff of surface waters from any source; or

c. Mudslides or mudflows, which are caused by flooding as defined above in Paragraph

4.b. For the purposes of this Covered Cause of Loss, a mudslide or mudflow involves a river of liquid and flowing mud on the surface of normally dry land areas as when earth is carried by a current of water and deposited along the path of the current.

All flooding in a continuous or protracted event will constitute a single "flood".

5. "Hazardous substance" means a substance declared to be hazardous to health by a governmental agency.

6. "Production machinery" means:

a. Production or process machine or apparatus that processes, forms, cuts, shapes, grinds or conveys raw material, material in process or finished products, and the computers and their peripherals that control or operate such a machine or apparatus.

b. Machine or apparatus used for research, medical, diagnostic, surgical, dental or pathological purposes, and computers and their peripherals that control or operate such a machine or apparatus.

# BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to **SECTION F. DEFINITIONS.**

## SECTION A. COVERAGE

Coverage is provided as described and limited below for one or more of the following options for which a Limit of Insurance is shown in the Declarations:

**a.** "Business Income" including "Rental Value".

**b.** "Business Income" other than "Rental Value".

**c.** "Rental Value".

If option **a.** above is selected, the term "Business Income" will include "Rental Value". If option **c.** above is selected, the term "Business Income" will mean "Rental Value" only.

If Limits of Insurance are shown under more than one of the above options, the provisions of this Coverage Part apply separately to each.

**1. Business Income**

    **a.** We will pay for the actual loss of "Business Income" you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct "loss" to property at "premises" which are described in the Declarations and for which a "Business Income" Limit of Insurance is shown in the Declarations. The "loss" must be caused by or result from a Covered Cause of Loss. With respect to "loss" to personal property in the open (or personal property in a vehicle or portable storage unit), the "premises" include the area within 1,000 feet of the building or 1,000 feet of the "premises", whichever distance is greater.

    **b.** With respect to the requirements set forth in the preceding paragraph, if you are a tenant and occupy only part of the site at which the "premises" are located, for the purposes of this Coverage Part only, your "premises" is the portion of the building which you rent, lease or occupy, including:

        **(1)** Any area within the building or on the site at which the "premises" are lo-

cated if that area services or is used to gain access to the described "premises".

        **(2)** Your personal property in the open (or in a vehicle or portable storage unit) within 1,000 feet of the building or 1,000 feet of the "premises", whichever distance is greater.

**2. Extra Expense**

    **a.** Extra Expense coverage is provided at the "premises" described in the Declarations only if the Declarations show that "Business Income" coverage applies at that "premises".

    **b.** Extra Expense means necessary expenses you sustain (as described in Paragraphs **2.c., d.** and **e.**) during the "period of restoration" that you would not have sustained if there had been no direct "loss" to property caused by or resulting from a Covered Cause of Loss.

    **c.** If these expenses reduce the otherwise payable "Business Income" "loss", we will pay expenses (other than the expense to repair or replace property as described in Paragraph **2.d.**) to:

        **(1)** Avoid or minimize the "suspension" of business and to continue "operations" either:

            **(a)** At the "premises"; or

            **(b)** At replacement "premises" or temporary locations, including relocation expenses and costs to equip and operate the replacement location or temporary location; or

        **(2)** Minimize the "suspension" of business if you cannot continue "operations".

    **d.** We will also pay expenses to:

        **(1)** Repair or replace property; or

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**(2)** Research, replace or restore the lost information on damaged "valuable papers and records";

but only to the extent this payment reduces the otherwise payable "Business Income" "loss". If any property obtained for temporary use during the "period of restoration" remains after the resumption of normal "operations", the amount we will pay under this Coverage Form will be reduced by the salvage value of that property.

**e.** Extra Expense as described in Paragraphs **2.a.** thru **2.d.** does not apply to "loss" to Covered Property as described in the **BUILDING AND PERSONAL PROPERTY COVERAGE FORM**.

**3. Covered Causes of Loss**

See **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 3. Covered Causes of Loss.**

**4. Limitation for Electronic Data**

**a.** Coverage for "Business Income" does not apply when a "suspension" of "operations" is caused by destruction or corruption of "electronic data", or any "loss" to "electronic data", except as provided under **SECTION A. COVERAGE, 5. Additional Coverages, d. Interruption of Computer Operations.**

**b.** Coverage for Extra Expense does not apply when action is taken to avoid or minimize a "suspension" of "operations" caused by destruction or corruption of "electronic data", or any "loss" to "electronic data", except as provided under **SECTION A. COVERAGE, 5. Additional Coverages, d. Interruption of Computer Operations.**

**c.** This Limitation does not apply when "loss" to "electronic data" involves only "electronic data" which is integrated in and operates or controls a building's elevator, lighting, heating, ventilation, air conditioning or security system.

**5. Additional Coverages**

The Additional Coverages in Paragraphs **5.a.** through **5.e.** are included within and not additional "Business Income" and Extra Expense Limits of Insurance.

**a. Alterations and New Buildings**

We will pay for the actual loss of "Business Income" you sustain and necessary Extra Expense you sustain due to direct "loss" at the "premises" caused by or re-

sulting from any Covered Cause of Loss to:

**(1)** New buildings or structures, whether complete or under construction;

**(2)** Alterations or additions to existing buildings or structures; and

**(3)** Machinery, equipment, supplies or building materials located on or within 1,000 feet of the "premises" and:

**(a)** Used in the construction, alterations or additions; or

**(b)** Incidental to the occupancy of new buildings.

If such direct "loss" delays the start of "operations", the "period of restoration" for "Business Income" coverage will begin on the date "operations" would have begun if the direct "loss" had not occurred.

**b. Civil Authority**

When a Covered Cause of Loss causes direct damage to property other than Covered Property at the "premises", we will pay for the actual loss of "Business Income" you sustain and necessary Extra Expense you sustain caused by action of civil authority that prohibits access to the "premises", provided that both of the following apply:

**(1)** Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage; and

**(2)** The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

Civil Authority coverage for "Business Income" will begin immediately after the time of the first action of civil authority that prohibits access to the "premises" and will apply for a period of up to 30 consecutive days from the date on which such coverage began.

Civil Authority coverage for Extra Expense will begin immediately after the time of the first action of civil authority that prohibits access to the "premises" and will end 30 consecutive days after the date of that action; or when your Civil Authority coverage for "Business income" coverage ends, whichever is later.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**c.** **Extended Business Income**

**(1)** **"Business Income" Other Than "Rental Value"**

If the necessary "suspension" of your "operations" produces a "Business Income" "loss" payable under this Coverage Part, we will pay for the actual loss of "Business Income" you sustain during the period that:

**(a)** Begins on the date property (except "finished stock") is actually repaired, rebuilt or replaced and "operations" are resumed; and

**(b)** Ends on the earlier of:

**(i)** The date you could restore your "operations", with reasonable speed, to the level which would generate the "Business Income" amount that would have existed if no direct "loss" had occurred; or

**(ii)** 60 consecutive days after the date determined in **c.(1)(a)** above.

However, Extended Business Income does not apply to loss of "Business Income" sustained as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the "premises" are located.

Loss of "Business Income" must be caused by direct "loss" at the "premises" caused by or resulting from any Covered Cause of Loss.

**(2)** **"Rental Value"**

If the necessary "suspension" of your "operations" produces a "Rental Value" loss payable under this Coverage Part, we will pay for the actual loss of "Rental Value" you sustain during the period that:

**(a)** Begins on the date property is actually repaired, rebuilt or replaced and tenantability is restored; and

**(b)** Ends on the earlier of:

**(i)** The date you could restore tenant occupancy, with reasonable speed, to the level which would generate the "Rental Value" that would have existed if no direct "loss" had occurred; or

**(ii)** 60 consecutive days after the date determined in **c.(2)(a)** above.

However, Extended Business Income does not apply to loss of "Rental Value" sustained as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the "premises" are located.

Loss of "Rental Value" must be caused by direct "loss" at the described "premises" caused by or resulting from any Covered Cause of Loss.

**d.** **Interruption of Computer Operations**

**(1)** Subject to all provisions of this Additional Coverage - **Interruption of Computer Operations**, you may extend the insurance that applies to "Business Income" and Extra Expense to apply to a "suspension" of "operations" caused by an interruption in computer operations due to destruction or corruption of "electronic data" due to a Covered Cause of Loss. This Additional Coverage - **Interruption of Computer Operations** does not apply when "loss" to "electronic data" only involves "loss" to "electronic data" which is integrated in and operates or controls a building's elevator, lighting, heating, ventilation, air conditioning or security system.

**(2)** The Covered Causes of Loss include a virus, harmful code or similar instruction introduced into or enacted on a computer system (including "electronic data") or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for an interruption related to manipulation of a computer system (including "electronic data") by any employee, including a temporary or leased employee, or by an entity retained by you or for you to inspect, design, install, maintain, repair or replace that system.

**(3)** The most we will pay under this Additional Coverage - **Interruption of Computer Operations** is $2,500 for all "loss" sustained and expense sustained in any "coverage term", regardless of the number of interruptions or the number of "premises", locations or computer systems involved. If loss payment relating to the first interruption does not exhaust this

Includes copyrighted material of Insurance
Services Office, Inc., with its permission.

amount, then the balance is available for "loss" or expense sustained as a result of subsequent interruptions in that "coverage term". A balance remaining at the end of a "coverage term" does not increase the amount of insurance in the next "coverage term". With respect to any interruption which begins in one "coverage term" and continues or results in additional "loss" or expense in that subsequent "coverage term", all "loss" and expense is deemed to be sustained in the "coverage term" in which the interruption began.

**(4)** This Additional Coverage - **Interruption in Computer Operations** does not apply to "loss" sustained or expense sustained after the end of the "period of restoration", even if the amount of insurance stated in Paragraph **d.(3)** of this Additional Coverage has not been exhausted.

**e. Ingress and Egress**

We will pay for the actual loss of "Business Income" you sustain and necessary Extra Expense you sustain caused by the prevention of existing ingress or egress at a "premises" shown in the Declarations due to direct "loss" by a Covered Cause of Loss at a location contiguous to such "premises". However, coverage does not apply if ingress or egress from the "premises" is prohibited by civil authority.

Ingress and egress coverage for "Business Income" will begin immediately after the time of the direct "loss" and will continue for a period up to 30 consecutive days.

Ingress and egress coverage for Extra Expense will begin at time of the direct "loss" and will continue for 30 consecutive days or whenever your Ingress and Egress "business income" coverage ends, whichever occurs first.

**6. Coverage Extension**

The limit applicable to the Coverage Extension is in addition to the Limit of Insurance. **SECTION D. ADDITIONAL CONDITION, 1. Coinsurance** does not apply to this Coverage Extension.

**Newly Purchased or Leased Locations**

**a.** You may extend your "Business Income" and Extra Expense coverages to apply to property located at:

**(1)** New buildings or additions while being built on a "premises";

**(2)** Buildings you newly purchase or become required to insure by written contract; or

**(3)** Leased buildings or space therein that you are not required to insure. Such lease must be for a period of 12 consecutive months or longer.

This does not apply to property situated at trade shows, fairs or exhibitions.

**b.** The most we will pay in total for "Business Income" and Extra Expense "loss" under this Coverage Extension is $100,000 at each location described in Paragraph **6.a.**

**c.** Insurance under this Coverage Extension will end when any of the following first occurs:

**(1)** This policy expires;

**(2)** 90 days pass from the date you begin construction on that part of the building that would qualify as Covered Property;

**(3)** 90 days pass from the date you purchase, lease, or become contractually required to insure property described in Paragraphs **6.a.(2)** and **(3)**; or

**(4)** You report values to us when you acquire your new building or business personal property.

We will charge you additional premium for values reported from the date you purchase or lease the property or begin construction on that part of the building that would qualify as Covered Property.

## SECTION B. LIMITS OF INSURANCE

The most we will pay for "loss" in any one occurrence is the applicable Limit of Insurance shown in the Declarations.

## SECTION C. LOSS CONDITIONS

The following conditions apply in addition to the **COMMON POLICY CONDITIONS** and the **COMMERCIAL PROPERTY CONDITIONS.**

**1. Appraisal**

If we and you disagree on the amount of "Business Income" or Extra Expense "loss", either may make written demand for an appraisal of the "loss". In this event, each party will select a competent and impartial appraiser.

The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separate-

ly the amount of "Business Income" or Extra Expense "loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

**2.** **Duties in the Event of Loss**

**a.** You must see that the following are done in the event you have a "Business Income" or Extra Expense "loss":

**(1)** Notify the police if a law may have been broken.

**(2)** Give us prompt notice of the direct "loss". Include a description of the property involved.

**(3)** As soon as possible, give us a description of how, when, and where the direct "loss" occurred.

**(4)** Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent "loss" resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

**(5)** As often as may be reasonably required, permit us to inspect the property proving the "loss" and examine your books and records.

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

**(6)** Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

**(7)** Cooperate with us in the investigation or settlement of the claim.

**(8)** If you intend to continue your business, you must resume all or part of

your "operations" as quickly as possible.

**b.** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

**3.** **Loss Determination**

**a.** The amount of "Business Income" "loss" will be determined based on:

**(1)** The Net Income of the business before the direct "loss" occurred;

**(2)** The likely Net Income of the business if no direct "loss" had occurred, but not including any Net Income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses;

**(3)** The operating expenses, including payroll expenses, necessary to resume "operations" with the same quality of service that existed just before the direct "loss"; and

**(4)** Other relevant sources of information, including:

**(a)** Your financial records and accounting procedures;

**(b)** Bills, invoices and other vouchers; and

**(c)** Deeds, liens or contracts.

**b.** The amount of Extra Expense will be determined based on:

**(1)** All expenses that exceed the normal operating expenses that would have been sustained by "operations" during the "period of restoration" if no direct "loss" had occurred. We will deduct from the total of such expenses:

**(a)** The salvage value that remains of any property bought for temporary use during the "period of restoration", once "operations" are resumed; and

**(b)** Any Extra Expense that is paid for by other insurance, except for insurance that is written subject to the same plan, terms, conditions and provisions as this insurance; and

(2) Necessary expenses that reduce the "Business Income" "loss" that other-wise would have been incurred.

c. **Resumption of Operations**

We will reduce the amount of your:

(1) "Business Income" "loss", other than Extra Expense to the extent you can resume your "operations", in whole or in part, by using damaged or undam-aged property (including merchan-dise or stock) at the "premises" or elsewhere.

(2) Extra Expense "loss" to the extent you can return "operations" to normal and discontinue such Extra Expense.

d. If you do not resume "operations", or do not resume "operations" as quickly as possible, we will pay based on the length of time it would have taken to resume "operations" as quickly as possible.

4. **Loss Payment**

We will pay for insured "loss" within 30 days after we receive the sworn proof of loss, if you have complied with all of the terms of this Coverage Part and:

a. We have reached agreement with you on the amount of "loss"; or

b. An appraisal award has been made.

## SECTION D. ADDITIONAL CONDITION

1. **Coinsurance**

If a Coinsurance percentage is shown in the Declarations, the following condition applies in addition to the **COMMON POLICY CONDITIONS** and the **COMMERCIAL PROPERTY CONDITIONS.**

We will not pay the full amount of any "Business Income" "loss" if the Limit of Insurance for "Business Income" is less than:

a. The Coinsurance percentage shown for "Business Income" in the Declarations; times

b. The sum of:

(1) The Net Income (Net Profit or Loss before income taxes), and

(2) Operating expenses, including pay-roll expenses,

that would have been earned or incurred (had no direct "loss" occurred) by your "operations" at the "premises" for the 12 months following the inception, or last previous anniversary date, of this Cover-age Part (whichever is later).

Instead, we will determine the most we will pay using the following steps:

1. Multiply the Net Income and operating expense for the 12 months following the inception, or last previous anniversary date, of this Coverage Part by the Coin-surance percentage;

2. Divide the Limit of Insurance for the de-scribed "premises" by the figure deter-mined in Step **1.**; and

3. Multiply the total amount of "loss" by the figure determined in Step **2.**

We will pay the amount determined in Step **3.** or the limit of insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

In determining operating expenses for the purpose of applying the Coinsurance condi-tion, the following expenses, if applicable, shall be deducted from the total of all operat-ing expenses:

1. Prepaid freight - outgoing;

2. Returns and allowances;

3. Discounts;

4. Bad debts;

5. Collection expenses;

6. Cost of raw stock and factory supplies consumed (including transportation charges);

7. Cost of merchandise sold (including transportation charges);

8. Cost of other supplies consumed (includ-ing transportation charges);

9. Cost of services purchased from outsid-ers (not employees) to resell, that do not continue under contract;

10. Power, heat and refrigeration expenses that do not continue under contract (if Form **CP 15 11** is attached);

11. All payroll expenses or the amount of payroll expense excluded (if Form **FA 465** is attached); and

12. Special deductions for mining properties (royalties unless specifically included in coverage; actual depletion commonly known as unit or cost depletion - not per-centage depletion; welfare and retirement fund charges based on tonnage; hired trucks).

**Example No. 1 (Underinsurance):**

When:    The Net Income and operating expenses for the 12 months follow-

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

ing the inception, or last previous anniversary date of this Coverage Part at "premises" would have been $400,000.

| The Coinsurance percentage is | 50% |
|---|---|
| The Limit of Insurance Is | $150,000 |
| "Business Income" "loss" is | $80,000 |

Step 1: $400,000 X 50% = $200,000 (the minimum amount of insurance to meet your Coinsurance requirements)

Step 2: $150,000 ÷ $200,000 = .75

Step 3: $ 80,000 X .75 = $60,000

We will pay no more than $60,000. The remaining $20,000 is not covered.

### Example No. 2 (Adequate Insurance):

When: The Net Income and operating expenses for the 12 months following the inception, or last previous anniversary date of this Coverage Part at the "premises" would have been $400,000.

| The Coinsurance percentage is | 50% |
|---|---|
| The Limit of Insurance Is | $200,000 |
| "Business Income" "loss" is | $80,000 |

The minimum amount of insurance to meet your Coinsurance requirement is $200,000 ($400,000 x 50%). Therefore, the Limit of Insurance in this example is adequate and no penalty applies. We will pay no more than $80,000 (amount of "loss").

This condition does not apply to Extra Expense.

## SECTION E. OPTIONAL COVERAGES

If shown as applicable in the Declarations, the following Optional Coverages apply separately to each item.

1. **Maximum Period of Indemnity**

   a. **SECTION D. ADDITIONAL CONDITIONS, 1. Coinsurance** does not apply to this Coverage Part at the "premises" to which this Optional Coverage applies.

   b. · The most we will pay in total for "Business Income" and Extra Expense "loss" is the lesser of:

      (1) The amount of "Business Income" and Extra Expense "loss" sustained during the 120 days immediately following the beginning of the "period of restoration"; or

      (2) The Limit of Insurance shown in the Declarations.

2. **Monthly Limit of Indemnity**

   a. **SECTION D. ADDITIONAL CONDITIONS, 1. Coinsurance** does not apply to this Coverage Part at the "premises" to which this Optional Coverage applies.

   b. The most we will pay for "Business Income" "loss" in each period of 30 consecutive days after the beginning of the "period of restoration" is:

      (1) The Limit of Insurance; multiplied by

      (2) The fraction shown in the Declarations for this Optional Coverage.

### Example:

When: The "Business Income" Limit of Insurance is $120,000

The fraction shown in the Declarations for this Optional Coverage is 1/4

The most we will pay for "loss" in each period of 30 consecutive days is: $120,000 X 1/4 = $30,000.

If, in this example, the actual amount of "Business Income" "loss" is:

| Days | 1-30 | $40,000 |
|---|---|---|
| Days | 31-60 | 20,000 |
| Days | 61-90 | 30,000 |
| | | $90,000 |

We will pay:

| Days | 1-30 | $30,000 |
|---|---|---|
| Days | 31-60 | 20,000 |
| Days | 61-90 | 30,000 |
| | | $80,000 |

The remaining $10,000 is not covered.

3. **Business Income Agreed Value**

   a. To activate this Optional Coverage:

      (1) A Business Income Report/Work Sheet must be on file with the Company and must show financial data for your "operations":

         (a) During the 12 months prior to the date of the Work Sheet; and

         (b) Estimated for the 12 months immediately following the inception of this Optional Coverage.

      (2) The Declarations must indicate that the Business Income Agreed Value Optional Coverage applies. The "Business Income" Limit of Insurance indicated on the Declarations should

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

be at least equal to the Agreed Value, which is determined by:

(a) The Coinsurance percentage shown in the Declarations; multiplied by

(b) The amount of Net Income and Operating Expenses for the following 12 months you report on the Work Sheet.

b. Except as noted in c. below, the **ADDITIONAL CONDITION Coinsurance** is suspended until the expiration date of this Coverage Part.

c. We will reinstate the **ADDITIONAL CONDITION Coinsurance** automatically if you do not submit a new Work Sheet and Agreed Value:

(1) When you request a change in your "Business Income" Limit of Insurance; or

(2) When you request the coinsurance percentage be changed on the Work Sheet.

d. If the "Business Income" Limit of Insurance is less than the Agreed Value, we will not pay more of any loss than the amount of loss multiplied by:

(1) The "Business Income" Limit of Insurance; divided by

(2) The Agreed Value.

**Example:**

When: The Limit of Insurance is $100,000

The Agreed Value is $200,000

"Business Income" "loss" is $80,000

Step (a): $100,000 ÷ $200,000 = .50

Step (b): .50 X $80,000 = $40,000

We will pay $40,000. The remaining $40,000 is not covered.

4. **Extended Period of Indemnity**

In **SECTION A. COVERAGE, 5. Additional Coverages, c. Extended Business Income**, the number "60" in Subparagraphs **(1)(b)** and **(2)(b)** is replaced by the number shown in the Declarations for this Optional Coverage.

## SECTION F. DEFINITIONS

1. "Business Income" means the:

a. Net income (Net Profit or Loss before income taxes) that would have been earned or incurred; and

b. Continuing normal operating expenses sustained, including payroll.

2. "Computer programs" means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data.

3. "Coverage term" means the following individual increment, or if a multi-year policy period, increments, of time, which comprise the policy period of this Coverage Part:

a. The year commencing on the Effective Date of this Coverage Part at 12:01 A.M. standard time at your mailing address shown in the Declarations, and if a multi-year policy period, each consecutive annual period thereafter, or portion thereof if any period is for a period of less than 12 months, constitute individual "coverage terms". The last "coverage term" ends at 12:00 A.M. standard time at your mailing address shown in the Declarations on the earlier of:

(1) The day the policy period shown in the Declarations ends; or

(2) The day the policy to which this Coverage Part is attached is terminated or cancelled.

b. However, if after the issuance of this Coverage Part, any "coverage term" is extended for an additional period of less than 12 months, that additional period of time will be deemed to be part of the last preceding "coverage term".

4. "Electronic data" means information, facts or "computer programs" stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment.

5. "Finished stock" means stock you have manufactured.

"Finished stock" also includes whiskey and alcoholic products being aged, unless there is a coinsurance percentage shown for "Business Income" in the Declarations.

"Finished stock" does not include stock you have manufactured that is held for sale on the "premises" of any retail outlet insured under this Coverage Part.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

6 "Loss" means accidental physical loss or accidental physical damage.

7. "Operations" means:

a. Your business activities occurring at the "premises"; and

b. The tenantability of the "premises", if coverage for "Business Income" including "Rental Value" or "Rental Value" applies.

8. "Period of restoration" means the period of time that:

a. Begins at the time of direct "loss".

b. Ends on the earlier of:

(1) The date when the property at the "premises" should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

(2) The date when business is resumed at a new permanent location.

c. "Period of restoration" does not include any increased period required due to the enforcement of or compliance with any ordinance or law that:

(1) Regulates the construction, use or repair, or requires the tearing down of any property; or

(2) Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of "pollutants".

d. The expiration date of the Coverage Part will not cut short the "period of restoration".

9. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, asbestos, chemicals, petroleum, petroleum products and petroleum by-products, and waste. Waste includes materials to be recycled, reconditioned or reclaimed. "Pollutants" include but are not limited to substances which are generally recognized in industry or government to be harmful or toxic to persons,

property, or the environment regardless of whether injury or damage is caused directly or indirectly by the "pollutants" and whether:

a. You are regularly or otherwise engaged in activities which taint or degrade the environment; or

b. You use, generate or produce the "pollutant".

10. "Premises" means the Locations and Buildings described in the Declarations.

11. "Rental Value" means "Business Income" that consists of:

a. Net income (Net Profit or Loss before income taxes) that would have been earned or incurred as rental income from tenant occupancy of the "premises" described in the Declarations as furnished and equipped by you, including fair rental value of any portion of the "premises" which is occupied by you; and

b. Continuing normal operating expenses incurred in connection with that "premises", including:

(1) Payroll; and

(2) The amount of charges, which are the legal obligation of the tenant(s) but would otherwise be your obligations.

12. "Suspension" means:

a. The slowdown or cessation of your business activities; and

b. That a part or all of the "premises" is rendered untenantable if coverage for "Business Income" including "Rental Value" or "Rental Value" applies.

13. "Valuable papers and records" means inscribed, printed or written documents, manuscripts or records, including abstracts, books, card index systems, deeds, drawings, films, maps, mortgages, or proprietary information. But "valuable papers and records" does not mean "money" or "securities", or "electronic data", including the materials on which the "electronic data" is recorded.

Paul W. Minnich, Esquire
Direct Dial Number: (717) 852-4976
E-mail: pminnich@barley.com

December 16, 2021

**VIA E-MAIL ONLY – Christine_Snyder@CINFIN.com**

Christine A. Snyder
Cincinnati Insurance Company
PO Box 9333
Syracuse, NY 13290

    **Re:    Claim 3759306 – Henry Molded Products, Inc.**

Dear Ms. Snyder:

    I wanted to follow up with you regarding certain outstanding matters.

    First, we have not heard back from you regarding the issue of damages caused by cleaning solutions utilized by Bamcor and/or Belfor which was discuss at our November 12, 2021 meeting. You had raised a concern that the issue was raised at our first meeting following the discovery of the issue rather than when the problem was discovered approximately two weeks earlier. However, over a month has passed since the issue was raised and samples of the damage were provided and we have not received any update. Please let us know the status of your investigation.

    Second, we had raised the issue of the demonstrated productivity gains which our client has been able to achieve which have not been factored into the business interruption claim. We believe that it is clear that the actual productivity which was lost must be considered to appropriately adjust the claim and we would ask that you reconsider the previous summary rejection of our position in this regard.

    Third, as we approach January 31, 2022, we believe that the Period of Restoration which you identified should be reconsidered. The Period of Restoration was unilaterally set without regard to the supply chain and logistics issues which have impacted virtually every sector of the economy. We would ask that you identify the basis for your determination of the January 31, 2022 expiration of the Period of Restoration and also whether it will be reconsidered in any respect based on events which have arisen subsequent to it being initially determined.

                           Sincerely,

                           Paul W. Minnich

PWM:ddb:9009397.1
cc:    Douglass Henry, via e-mail