**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| HENRY MOLDED PRODUCTS, INC., | : | Civil No. 1:24-CV-00705 |
| Plaintiff, | : | |
| v. | : | |
| THE CINCINNATI INSURANCE COMPANY, | : | |
| Defendant. | : | Judge Jennifer P. Wilson |

# MEMORANDUM

This is an insurance coverage dispute. Henry Molded Products, Inc. ("HMP") held a commercial property insurance policy ("the policy") from the Cincinnati Insurance Company ("CIC"). (Doc. 35-2, ¶ 1.) A fire damaged the property covered by the policy. (*Id.* ¶ 2.) HMP sued CIC in state court to contest CIC's handling of its fire-related claims, and CIC removed the case to this court. (Doc. 1, pp. 1–4.)[1] CIC's motion for partial summary judgment, Doc. 35, is now before the court. For the reasons that follow, the court will grant in part and deny in part CIC's motion.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

HMP builds and sells molded paper pulp packaging products. (*See* Doc. 37, p. 87.) Its headquarters and one of its manufacturing plants (collectively, "the property") are in Lebanon, Pennsylvania. (*Id.*) The policy CIC issued to HMP

[1] For ease of reference, the court uses the page numbers from the CM/ECF header.

covered the property, and the policy became effective on July 1, 2020 and expired on July 1, 2023. (Doc. 35-2, ¶ 1.) On June 27, 2021, a fire damaged the property and HMP's equipment. (*Id.* ¶¶ 2–3.) Since then, CIC has issued claim payments to HMP "totaling $8,181,703.30 for damage to Business Personal Property, Building/Machinery Equipment, and for loss of Business Income and Extra Expense." (*Id.* ¶ 3.) HMP challenges CIC's administration of the policy and disputes some of CIC's claim determinations. (Doc. 13, ¶¶ 101–145.) Three specific aspects of CIC's claim adjudication process are at issue here, *see id.*, so the court provides a brief factual background of each and highlights additional relevant facts below in its analysis.

The first dispute is about equipment. The fire damaged a pair of HMP's production lines; the court refers to them as "Lines 4 and 5." (*See* Doc. 35-2, ¶ 4.) Instead of repairing Lines 4 and 5, HMP replaced them at a cost of $3,783,385.95. (*Id.* ¶ 7.) But Cincinnati only "issued replacement cost value payments totaling $1,518,696.00 to Plaintiff to repair production lines 4 and 5 consistent with the policy." (*Id.* ¶ 10.) The parties dispute whether Lines 4 and 5 could be repaired or if their complete replacement was necessary. (*See id.* ¶¶ 4–6, 10; Doc. 37, ¶¶ 8–11.)

The second dispute is about CIC's calculation of HMP's lost business income. The policy covers the actual loss of business income HMP sustained

during the "period of restoration." (Doc. 35-4, pp. 52–53.) The period of restoration begins when the property is lost and ends when the property either "should be repaired, rebuilt or replaced with reasonable speed and similar quality" or "when business is resumed at a new permanent location." (*Id.* at 72–73.) CIC maintains that the period of restoration spanned seven months: from June 27, 2021 to January 31, 2022. (*See* Doc. 35-2, ¶ 15.) CIC mistakenly extended that period for three months and paid HMP for business income losses suffered during those added months anyway, although HMP argues CIC's calculation of its business income losses are inaccurate. (*See id.* ¶ 16; Doc. 37, ¶ 16.)

Third, the parties dispute former CIC Senior Complex Property Claims Specialist Chrstine Snyder's ("Snyder") handling of HMP's claims and CIC's general conduct in administering the policy. HMP generally alleges that Snyder accused HMP officials, including its president, Douglas Henry ("Henry"), of "business misconduct" and "impugn[ed] their credibility and moral character." (Doc. 37, ¶ 21.) It also alleges CIC acted in bad faith in administering the policy by intentionally delaying payments, making self-interested coverage decisions, and failing to explain its claim determinations. (*Id.*) CIC claims Henry could not identify Snyder's specific statements or actions that could indicate bad faith or animosity. (Doc. 35-2, ¶ 22.)

HMP sued CIC in state court in 2023. (Doc. 1, p. 1.) CIC removed the case to federal court on April 24, 2024. (Doc. 1.) HMP filed a second amended complaint, the operative complaint here, on May 15, 2024. (Doc. 13.) The second amended complaint brings two counts; Count I raises a breach of contract claim, Doc. 13, ¶¶ 101–124, and Count II raises a bad faith claim under 42 Pa. Cons. Stat. § 8371 ("bad faith claim"), *id.* ¶¶ 125–45. CIC moved for partial summary judgment on November 26, 2025. (Doc. 35.) CIC filed a brief in support of that motion, Doc. 36, HMP filed a brief in opposition, Doc. 38, and CIC filed a reply, Doc. 40. Therefore, CIC's motion is ripe for disposition.

## Jurisdiction and Venue

The court has jurisdiction under 28 U.S.C. § 1332(a)(1) because the parties are citizens of different states and the amount in controversy exceeds $75,000. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events at issue in this case occurred in the Middle District of Pennsylvania.

## Standard of Review

A court may grant a motion for summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is material if resolution of the dispute "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is

not precluded by "[f]actual disputes that are irrelevant or unnecessary." *Id.* "A dispute is genuine if a reasonable trier-of-fact could find in favor of the nonmovant' and 'material if it could affect the outcome of the case." *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 300 (3d Cir. 2012)).

In reviewing a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288 (3d Cir. 2018) (citing *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 538 (3d Cir. 2006)). The court may not "weigh the evidence" or "determine the truth of the matter." *Anderson*, 477 U.S. at 249. Instead, the court's role in reviewing the facts of the case is "to determine whether there is a genuine issue for trial." *Id.*

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The non-moving party must then oppose the motion, and in doing so "'may not rest upon the mere allegations or denials of [its] pleadings' but, instead, 'must set forth specific facts showing that

there is a genuine issue for trial. Bare assertions, conclusory allegations, or suspicions will not suffice.'" *Jutrowski*, 904 F.3d at 288–89 (quoting *D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 268–69 (3d Cir. 2014)).

Summary judgment is appropriate where the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 287 (1968)).

## DISCUSSION

CIC argues it is entitled to summary judgment on two portions of HMP's breach of contract claim and HMP's bad faith claim. (Doc. 36, pp. 3–15.) The court addresses each in turn.

### A. The Court Will Deny CIC's Motion for Summary Judgment on Portions of HMP's Breach of Contract Claim.

The two portions of HMP's breach of contract claim on which CIC moves for summary judgment relate to the repair or replacement of Lines 4 and 5 and the

"period of restoration" under which CIC covered HMP's lost business income. (Doc. 36, pp. 4–8.) First, CIC paid HMP the cost of repairing Lines 4 and 5, but HMP claims CIC owes it the cost of replacing them. (*See* Doc. 35-2, ¶ 10; Doc. 38, pp. 5–8.) CIC argues the record indisputably shows that Lines 4 and 5 were repairable, so it properly executed its right to either repair or replace lost property under the policy by only paying HMP the repair cost. (Doc. 36, pp. 4–6; Doc. 40, pp. 2–3; Doc. 35-4, p. 65.) HMP argues the record contains evidence that Lines 4 and 5 were irreparable, so summary judgment on the issue of whether CIC breached the policy by refusing to pay for full replacement, and not just repairs, is inappropriate. (Doc. 38, pp. 4–8.)[2]

Second, HMP claims CIC failed to adequately cover its lost business income under the policy because CIC improperly calculated the amount of those losses and the "period of restoration" for which they would be covered. (Doc. 38, pp. 8–12.) CIC argues that its determinations were accurate, reasonable, and based on estimates provided by HMP's "own consultants' findings." (Doc. 40, pp. 4–5; Doc. 36, pp. 6–8.) HMP argues that the relevant terms in the policy are ambiguous and should therefore be construed against CIC; it also claims that there are disputes

[2] The parties appear to agree that "if the lines could have been repaired, Cincinnati does not owe more than the cost of repairs" under the policy. (Doc. 40, p. 2.)

of material fact as to whether CIC's period of restoration and the business income amount it ultimately paid are correct or reasonable. (Doc. 38, pp. 8–12.)

The elements of a breach of contract claim under Pennsylvania law are: "(1) the existence of a contract, including its essential terms; (2) a breach of the contract; and (3) resultant damages." *Doe v. Univ. of Scis.*, 961 F.3d 203, 211 (3d Cir. 2020) (quoting *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.*, 137 A.3d 1247, 1258 (Pa. 2016)) (cleaned up). In insurance disputes under Pennsylvania law, the insured party must make a prima facie showing that the policy covers their claim; then, the insurer must prove "the applicability of any exclusions or limitations on coverage." *Ultimate Hearing Sols. II, LLC v. Twin City Fire Ins. Co.*, 513 F. Supp. 3d 549, 556 (E.D. Pa. 2021) (first quoting *State Farm Cas. Co. v. Estate of Mehlman*, 589 F.3d 105, 111 (3d Cir. 2009); and then quoting *Koppers Co. v. Aetna Cas. & Sur. Co.*, 98 F.3d 1440, 1446 (3d Cir. 1996)) *aff'd sub nom. Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131 (3d Cir. 2023).

The parties do not dispute that the policy is a contract. (*See generally* Doc. 35-4 (providing the terms of the policy).) However, they disagree about whether CIC breached the contract by paying for repairs instead of replacements and incorrectly calculating HMP's lost business income. (*See* Doc. 36, pp. 3–8; Doc. 38, pp. 4–12.) At their core, these disputes are about the application of specific

policy provisions to the events at issue, and whether the record demonstrates that a reasonable juror could find that CIC breached those provisions.

After carefully considering the plain language of the policy, and the parties' arguments, the court finds that disputes of material fact preclude it from granting CIC's motion for summary judgment as to the two portions of HMP's breach of contract claim at issue. Evaluating the facts and construing all reasonable inferences in the light most favorable to HMP, a reasonable fact-finder could determine that CIC breached the policy by paying for repairs to instead of replacement of Lines 4 and 5 because Lines 4 and 5 were ultimately irreplaceable, and by setting an unreasonable period of restoration or calculating HMP's lost business income as it did. *See Lichtenstein*, 691 F.3d at 300. Therefore, the court will deny CIC's motion for partial summary judgment on HMP's breach of contract claim.

### B. The Court Will Grant CIC's Motion for Partial Summary Judgment on HMP's Bad Faith Claim.

CIC also moves for summary judgment on HMP's bad faith claim. (Doc. 36, pp. 8–14.) There, HMP alleges CIC lacked a reasonable basis to deny its claim for the property, income, and extra expenses HMP lost as a result of the fire. (Doc. 13, ¶¶ 127–145.) Apart from CIC's adjudication of specific claims, HMP also alleges that CIC generally mishandled its claims by, for example, unnecessarily delaying the claims process. (*See id.* ¶¶ 138–39.)

Pennsylvania law provides a statutory cause of action against insurers who act in bad faith toward an insured. 42 Pa. Cons. Stat. § 8371; *Gibson v. State Farm Mut. Auto. Ins. Co.*, 994 F.3d 182, 191 (3d Cir. 2021). An insurer acts in bad faith by unreasonably denying benefits while knowing of or recklessly disregarding its lack of a reasonable basis for denial; however, acting negligently, exercising poor judgment, or aggressively protecting its own interests does not make an insurer liable for bad faith. *Post v. St. Paul Travelers Ins. Co.*, 691 F.3d 500, 523–24 (3d Cir. 2012) (first quoting *UPMC Health Sys. v. Metro. Life Ins. Co.*, 391 F.3d 497, 506 (3d Cir. 2004); then quoting *Terletsky v. Prudential Prop. & Cas. Ins. Co.,* 649 A.2d 680, 688 (Pa. Super. Ct. 1994); and then quoting *O'Donnell ex rel. Mitro v. Allstate Ins. Co.*, 734 A.2d 901, 910 (Pa. Super. Ct. 1999)).

To establish a bad faith claim, an insured "must demonstrate 'by clear and convincing evidence, (1) that the insurer did not have a reasonable basis for denying benefits under the policy and (2) that the insurer knew or recklessly disregarded its lack of a reasonable basis in denying the claim.'" *Gibson*, 994 F.3d at 191 (quoting *Rancosky v. Wash. Nat'l Ins. Co.*, 170 A.3d 364, 377 (Pa. 2017)). "The first prong is an 'objective inquiry' determining 'whether a reasonable insurer would have denied payment of the claim under the facts and circumstances presented.' The second requires proof that the insurer's denial was more than 'mere negligence or bad judgment.'" *Leccese v. Allstate Prop. & Cas. Ins. Co.*,

630 F. Supp. 3d 628, 637 (E.D. Pa. 2022) (first quoting *Rancosky*, 170 A.3d at 377; and then quoting *Terletsky*, 649 A.2d at 688) (citation modified). The plaintiff satisfies the clear and convincing evidence standard by showing the evidence is "so clear, direct, weighty and convincing as to enable a clear conviction, without hesitation, about whether or not the defendants acted in bad faith." *J.C. Penney Life Ins. Co. v. Pilosi*, 393 F.3d 356, 367 (3d Cir. 2004) (quoting *Bostick v. ITT Hartford Group, Inc.,* 56 F. Supp. 2d 580, 587 (E.D. Pa. 1999)).

Bad faith and breach of contract claims are separate causes of action, so unless the bad faith claim is based entirely on the denial of coverage, the failure of the breach of contract claim does not preclude a bad faith claim. *Ultimate Hearing*, 513 F. Supp. 3d at 564; *Kohler v. Selective Fire & Cas. Ins. Co.*, 632 F. Supp. 3d 649, 663 (M.D. Pa. 2022) (citing *Ultimate Hearing Sols.*, 513 F. Supp. 3d at 564) ("Because Plaintiff's bad faith claim is not based solely on denial of coverage, it does not ride on the success of the breach of contract claim."). A bad faith claim focuses on "the *manner* in which insurers discharge their duties of good faith and fair dealing during the pendency of an insurance claim, not whether the claim is eventually paid." *Wolfe v. Allstate Prop. & Cas. Ins. Co.*, 790 F.3d 487, 499 (3d Cir. 2015) (quoting *Berg v. Nationwide Mut. Ins. Co.,* 44 A.3d 1164, 1178 (Pa. Super. Ct. 2012)). And an insurer may act in bad faith by delaying, failing to investigate properly, or not communicating with the insured. *Ultimate Hearing*,

513 F. Supp. at 564 (quoting *Frog, Switch & Mfg. Co., Inc. v. Travelers Ins. Co.*, 193 F.3d 742, 751 n.9 (3d Cir. 1999)) (citing *Kosierowski v. Allstate Ins. Co.*, 51 F. Supp. 2d 583, 588 (E.D. Pa. 1999)); *Gold v. State Farm Fire & Cas. Co.*, 880 F. Supp. 2d 587, 597 (E.D. Pa. 2012) (quoting *Hollock v. Erie Ins. Exch.,* 842 A.2d 409, 415 (Pa. Super. Ct. 2004) (en banc)) (recognizing that an insurer may base a bad faith claim on an insurer's investigative process); *Condio v. Erie Ins. Exch.*, 899 A.2d 1136, 1142 (Pa. Super. Ct. 2006) (noting that bad faith "encompasses a wide variety of objectionable conduct").

The insured faces a "commensurately high" burden in opposing a motion for summary judgment on a bad faith claim. *J.C. Penney*, 393 F.3d at 367. Conversely, an insurer can win on a bad faith claim by showing "evidence of a reasonable basis" for its "actions or inaction." *Gibson*, 994 F.3d at 191.

CIC argues it is entitled to summary judgment on HMP's bad faith claim because it "had a reasonable basis for its coverage decisions and acted reasonably at all times." (Doc. 36, p. 10.) It investigated HMP's loss soon after the fire, interviewed HMP personnel, and retained experts to evaluate the damage. (Doc. 36, pp. 10–11; Doc. 35-8, pp. 35–36; Doc. 35-14, p. 8.) CIC notes that it "continued to adjust the claim" even after HMP sued it, and it issued "coverage position letters" to HMP that explained CIC's claim adjudication reasoning. (Doc. 36, p. 11.) It then explains that it did not unreasonably underpay HMP's claim,

specifically as to the repair or replacement of Lines 4 and 5, because a dispute over claim valuation cannot form the basis of a bad faith claim and in deciding to pay the cost of repairs instead of replacement, CIC relied on opinions from contractors and experts. (*Id.* at 11–12.)

CIC offers two additional arguments in its brief in support of its motion for summary judgment. First, it argues HMP's bad-faith claims related to Snyder's conduct are unsupported, and even if they were proven, they would amount to negligence, not bad faith. (*Id.* at 12.) It avers that Henry could not identify specific comments Snyder made or actions she took that would support a finding of bad faith. (*Id.*) Second, CIC asserts that it did not act in bad faith because it relied on experts' opinions in making its claim determinations. (*Id.* at 13–14.)

In response, HMP points out that its statutory bad faith claim exists independently of the various components of its breach of contract claim. (Doc. 38, pp. 12–13.) It claims that even if its breach of contract claim fails, its bad-faith claim is based on more than coverage denials and should survive summary judgment. (*Id.* at 13.) It cites a long list of allegations from its complaint, such as its assertion that CIC unnecessarily delayed the claim investigation process, as examples of bad-faith conduct. (*Id.* at 13–14.) And it argues that CIC and Snyder's "hostility" and "ill will" in their handling of HMP's claim support HMP's

bad faith claim, even if CIC ultimately relied on expert opinions in adjudicating CIC's coverage. (*Id.* at 14–15.)

In reply, CIC notes that HMP did not cite evidence from the record supporting its bad faith claim in its brief in opposition to CIC's motion for partial summary judgment, so it cannot meet its heavy burden required for its bad faith claim to progress past summary judgment. (Doc. 40, p. 5.) Instead, HMP only cites its complaint, and during his deposition, Henry was vague as to specific instances of improper conduct from Snyder and CIC. (*Id.* at 5–7.) CIC also argues that an insurer's rudeness or animosity, delay in handling a claim, and refusal to toll the policy's suit limitation period or grant extensions to file a complaint do not qualify as bad faith. (*Id.* at 7–9.)

The court will grant CIC's motion for partial summary judgment on the bad faith claim for three reasons. First, CIC can defeat a bad faith claim at the summary judgment stage by putting forth a reasonable basis for its actions or omissions. *Gibson*, 994 F.3d at 191. CIC explains its consideration of HMP's claims under the policy and cites record evidence explaining its investigation process and how it informed HMP of its decisions. (*See*, *e.g.*, Doc. 36, pp. 10–14 ("[CIC] promptly inspected the loss event within days of the fire, interviewed [HMP's] employees and principals, and retained multiple third-party experts to assist in the evaluation."); (*see* Doc. 35-5, pp. 1–8 (providing a statement of loss

that explained why specific invoices were not paid and requesting additional documentation of loss); Doc. 35-14, pp. 8–10 (providing Snyder's deposition testimony that she relied on "several experts" in evaluating HMP's claim and further testimony about the process of adjudicating HMP's claim); Doc. 35-8, pp. 35–36 (providing Henry's deposition testimony that Snyder frequently visited the HMP facility shortly after the fire).) Thus, CIC provides an explanation of a claim investigation and adjudication process that provided a reasonable basis for its coverage decisions. *See Leccese*, 630 F. Supp. 3d at 637 (finding an insurer's investigation of a claim to be "objectively reasonable" where it "began its investigation soon after the loss, sent communications to the insured within four days of the damage, interviewed [one of the insureds], referred the matter to legal counsel and, after receiving legal counsel's opinion, issued a denial" citing specific policy provisions).

In its brief in opposition, HMP makes no attempt to explain why CIC's investigation, claim-handling process, or ultimate decisions are objectively unreasonable such that they could support a finding of bad faith. (Doc. 38, pp. 12–15.) So it does not carry its "commensurately high" burden at summary judgment to show that it could prove, by clear and convincing evidence, that CIC lacked a reasonable basis for its coverage decisions or other actions. *J.C. Penney*, 393 F.3d at 367; *see Cantaloupe, Inc. v. Axis Ins. Co.*, 703 F. Supp. 3d 621, 631 (E.D. Pa.

2023) ("[The insured] has not drawn the Court's attention to any 'clear and convincing' evidence demonstrating that [the insurer] did *not* have a reasonable basis to deny its claim.").

HMP may attempt to rely on its discussion of its breach of contract claims to support its bad faith arguments; after all, one of the policy provisions involved in the parties' dispute requires CIC to pay out lost business income over a period of restoration during which property could be repaired, rebuilt, or replaced with "reasonable" speed and similar quality. (*See* Doc. 38, pp. 8–9; Doc. 35-4, pp. 72–73.) But whether CIC incorrectly denied or adjusted coverage under the policy and whether it acted in bad faith are different issues. *Leccese*, 630 F. Supp. 3d at 637 (quoting *Bostick*, 56 F. Supp. 2d at 587) ("[E]ven if a coverage denial is ultimately determined to be meritless 'bad faith cannot be found where the insurer's conduct is in accordance with a reasonable but incorrect interpretation of the insurance policy and the law.'"). And an insurer does not act in bad faith by "investigating and litigating legitimate issues of coverage." *Post*, 691 F.3d at 523 (quoting *J.C. Penney*, 393 F.3d at 368). HMP has offered no factual rebuttal to CIC's argument that it acted reasonably in investigating and adjudicating HMP's claim even if it ultimately reached the incorrect coverage determination, so it has not identified a dispute of material fact as to whether CIC had a reasonable basis for its actions, let alone that CIC knew or actively disregarded a lack of a reasonable basis.

Second, HMP provides no explanation as to why its allegations amount to bad faith. HMP argues that its bad faith claim extends beyond CIC's specific coverage decisions into its "broader conduct in handling the claim." (Doc. 38, p. 13.) It cites a list of allegations of CIC's apparent bad faith from its second amended complaint that include "[d]ecision-making driven by self interest rather than good faith evaluation," "[d]elayed payment of documented, substantiated losses," and "[e]ngaging in aggressive and unsubstantiated personal attacks through claims representative Christine Snyder." (*Id.* at 13–14.) It is true that courts consider the definition of bad faith under 42 Pa. Cons. Stat. § 8371 to be broad. *See Gold*, 880 F. Supp. 2d at 597 (quoting *Hollock*, 842 A.2d at 415). But HMP's allegations of bad faith are conclusory, and it points to no authority suggesting that an insurer's general animosity or unspecified delays qualify as grounds for finding bad faith. *See Hamm v. Allstate Prop. & Cas. Ins. Co.*, 908 F. Supp. 2d 656, 673 (W.D. Pa. 2012) (explaining that, although the court did not condone an insurer's "discourteous" behavior, the insured "failed to point to any authority that this asserted insensitivity constitutes bad faith"). Apart from pointing to non-specific instances of delay, "personal attacks" and other CIC conduct, HMP offers no explanation of how CIC's conduct amounts to bad faith. Therefore, it again fails to identify a dispute of material fact that would preclude summary judgment on its bad faith claim.

Third, HMP cites no record evidence to support its bad faith arguments. (Doc. 38, pp. 12–15.) It pulls the relevant allegations about CIC's alleged bad faith directly from its second amended complaint and only references the record generally without specific citations. (*Id.*) Therefore, HMP has not highlighted any evidence that supports a finding of bad faith, let alone a finding of bad faith by clear and convincing evidence. *See Cantaloupe*, 703 F. Supp. 3d at 631. In opposing CIC's motion for partial summary judgment, HMP cannot "rest upon the mere allegations or denials of [its] pleadings." *Jutrowski*, 904 F.3d at 288 (quoting *Central Dauphin*, 765 F.3d at 268–69). Instead, it must "set forth specific facts showing that there is a genuine issue for trial. Bare assertions, conclusory allegations, or suspicions will not suffice." *Id.* Here, HMP merely reproduces allegations from the operative complaint and makes general statements about Snyder's conduct without reference to actual evidence. (Doc. 38, pp. 12–15.) So the court will grant CIC's motion for summary judgment on HMP's bad faith claim.

## CONCLUSION

For the reasons explained above, the court will deny CIC's motion for partial summary judgment as to HMP's breach of contract claim and will grant the motion as to HMP's bad faith claim. An order follows.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated: September 21, 2026